

PLAINTIFF'S DEPOSITION
EXHIBIT
6
PENGAD 800-631-6989



CLE000160

# GENERAL POLICE ORDER

No. 40-76          HEADQUARTERS          June 18, 19 76

SUBJECT: TIME KEEPING PROCEDURES APPLICABLE TO ALL
RESTRICTED DUTY PERSONNEL

TO ALL MEMBERS OF THE DEPARTMENT

Effective June 19, 1976 there shall be no short-hour restricted duty status, i.e.: less than eight (8) hours per day.

No overtime may be credited to members on short-hour restricted duty or accumulated by them from and after April 9, 1976 unless they actually worked more than 40 hours in a work week.

All overtime earned prior to April 9, 1976 shall be retained by the individual members.

Personnel formerly on short-hour restricted duty status, prior to June 19, 1976, shall not be subject to depletion of Sick, Overtime, Furlough or Holiday time (S, O.T., F, H) for any portions of daily duty tours not worked.

Henceforth, members shall be regarded either as completely incapable of duty performance and carried on Sick Leave, or they shall be placed on full, eight (8) hour daily duty in either a Restricted Duty or Regular Duty capacity.

This directive shall supersede and rescind the provisions of Chief's Memorandum dated March 15, 1976 titled "TIME KEEPING PROCEDURES APPLICABLE TO ALL RESTRICTED DUTY "SHORT HOURS" PERSONNEL", and General Police order 14-76.

CLE000161

## GENERAL POLICE ORDER

NO. 40-76       HEADQUARTERS June 18 19 76

SUBJECT: TIME KEEPING PROCEDURES APPLICABLE TO ALL
RESTRICTED DUTY PERSONNEL

(2)

All of the foregoing is based upon a Law Department
ruling.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

CLE000162

## GENERAL POLICE ORDER

NO. 39-76          HEADQUARTERS June 17          19 76

SUBJECT: IDENTIFICATION CARDS REQUIRED AT CENTRAL

POLICE HEADQUARTERS.

TO THE MEMBERS OF THE DEPARTMENT

All officers and members, while within Central Police Headquarters, 1300 Ontario, shall display their Photo Identification Cards on their outermost garment whether in or out of uniform. Alligator clips and a punching die for placing holes in Identification Cards are presently available at the Photo Lab, Third district, 2001 Payne Avenue.

Civilian employees, assigned to Central Police Headquarters, will also be issued Photo Identification Cards with clips and shall be bound by the same rules.

Commanding Officers of Bureaus, Districts, Divisions and Units shall cause compliance with this order by requiring inspections of the officers and members of their command for proper clips and clip holes for their ID Cards. Identification Cards that are not properly punched shall be collected and taken to the Photo Lab for punching and issuance of clips on a Platoon or Unit basis between the hours of 8:00 A.M. and 4:00 P.M, Monday through Friday.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

## GENERAL POLICE ORDER

NO. 38-76                    HEADQUARTERS June 11 , 19 76

SUBJECT: WASHING OF POLICE VEHICLES-LOCATIONS

NEW CONTRACT

TO THE MEMBERS OF THE DEPARTMENT

Effective June 11, 1976, three car wash locations shall be utilized by various Districts, Bureaus, and Divisions as follows:

Pearl Brookpark Car Wash Inc., 5133 Pearl Road, Cleveland, will wash sedans and station wagons assigned to the 1st and 2nd Districts and such other vehicles that originate at these Districts or are assigned to such general location for duty. The hours for washing police vehicles shall be Monday thru Friday, 8:30 A.M. to 5:30 P.M.

Freeway Auto Wash Inc., 7211 Carnegie Avenue, Cleveland, will wash sedans and station wagons assigned to the 4th and 5th Districts and such other vehicles that originate at these Districts or are assigned to such general location for duty. The hours for washing police vehicles shall be Monday thru Saturday, 8:00 A.M. to 6:00 P.M., and Sunday 8:00 A.M. to 2:00 P.M.

CLE000164

## GENERAL POLICE ORDER

No. 38-76    HEADQUARTERS    June 11    76    19

SUBJECT: WASHING OF POLICE VEHICLES-LOCATIONS

NEW CONTRACT

(2)

Mr Magic Auto Wash, at 1851 Carnegie Avenue, Cleveland, will wash sedans and station wagons assigned to the 3rd and 6th Districts and those cars emanating from the Central Headquarters Building. The hours for washing police vehicles shall be Monday thru Thursday, 8:00 A.M. to 6:00 P.M., and Sunday, 8:00 A.M. to 1:30 P.M. Please note the difference in days at this location.

Vehicles are to be washed no more than once each week.

General Police Order 6-75 is hereby rescinded.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

CLE000165

## GENERAL POLICE ORDER

No. 37-76          HEADQUARTERS          June 7          19 76

SUBJECT: TRANSPORTING OF COMMUNICABLE DISEASE
PATIENTS AND DECONTAMINATION OF VEHICLE

TO THE MEMBERS OF THE DEPARTMENT

Effective immediately the following procedure shall
be employed by personnel when they transport or
become exposed to persons suspected of, or found to
be suffering from a communicable disease or one of
the minor childhood contagion diseases.

Exposure to any of the below listed contagious
diseases may be a health hazard to personnel:

      Chicken Pox or Varicella

      Diptheria or Membranous Croup

      German Measles or Rubella

      Viral or Infectious Hepatitis

      Measles or Rubeola

      Mumps or Parotitis Epidemic

      Scarlet Fever or Scarlatina

      Small Pox or Variola

      Spinal Meningitis or Cerebro-spinal Fever

      Syphilis or Lues VD

      Tuberculosis of Koch's Disease or TB

      Typhoid Fever or Enteric Fever

CLE000166

## GENERAL POLICE ORDER

No. 37-76                    HEADQUARTERS                    June 7          76 19

SUBJECT: TRANSPORTING OF COMMUNICABLE DISEASE

PATIENTS AND DECONTAMINATION OF VEHICLE

- 2 -

Whooping Cough or Pertussis

Contagious deseases may be spread by personal contact with a patient, or by contact with or ingestion of blood, excreta, vomitus, sputum or droplets produced by the coughing or sneezing of the patient. Therefore, no person known to be infected with any of the above, shall be transported in any police vehicle, unless, attendant medical or surgical emergency exists that requires immediate transportation of the patient to a hospital, or where the nature of regular police duties necessitates such transportation. Non-emergency patients suffering with a Communicable Disease shall be referred to the Emergency Room of Metropolitan General Hospital.

Dr. Godofredo Domingo, Medical Director of the Safety Department Medical Bureau, advised, that police vehicles used to transport patients suffering with a communicable or contagious disease, should be thoroughly washed with soap and water, preferably by the conveying crew and aired out for approximately one (1) hour prior to being returned to service.

Vehicles and equipment which cannot be washed with soap and water should be aired out for a period of approximately two to three hours. Linen used to transport the patient shall be exchanged at the hospital. Blankets, shall be placed in one of the plastic bags that have been supplied to the

CLE000167

## GENERAL POLICE ORDER

No. 37-76     HEADQUARTERS     June 7     19 76

SUBJECT: TRANSPORTING OF COMMUNICABLE DISEASE

PATIENTS AND DECONTAMINATION OF VEHICLES

- 3 -

Districts by the Medical Inspection Unit, and marked "Used in Handling Communicable Disease", and returned to the Medical Inspection Unit. Doctor Domingo further advises, that cellblocks used to contain prisoners suffering with communicable diseases should be decontaminated in the same manner.

Personnel shall immediately notify a Medical Bureau Physician upon confirmation by the attending physician that a patient transported by them is suffering with a communicable disease. The Medical Bureau Physician will prescribe proper counteractant treatment that may be required.

The scheduled physician "On Call" shall be consulted during the hours the Safety Department Medical Bureau is closed.

Whenever personnel are exposed to, or transport patients suffering with a communicable or contagious disease, they shall complete a Form 71-1 report as soon as practical, detailing all particulars associated with the exposure. Including the persons involved, the nature of the disease, the disposition of the patient, prisoner, etc., whether the person

CLE000168

---

## GENERAL POLICE ORDER

No. 37-76                     HEADQUARTERS  June 7            19 76

SUBJECT: TRANSPORTING OF COMMUNICABLE DISEASE

PATIENTS AND DECONTAMINATION OF VEHICLE

- 4 -

was incarcerated in any of our jails and whether proper decontamination and counteractant measures have been followed. These reports shall be forwarde through channels to the Safety Department Medical Bureau.

General Police Order 12-62 is hereby rescinded.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

## GENERAL POLICE ORDER

NO. 36-76     HEADQUARTERS     May 25     19 76

SUBJECT PROPER GATHERING, PRESERVATION, AND SUBMISS-

ION OF TRACE EVIDENCE IN SEX CRIME CASES

TO THE MEMBERS OF THE DEPARTMENT

Trace evidence is often one of the most important
factors in the investigation of a sex crime case.
Types of evidence such as semen, blood, urine,
fibers, hair, and dirt are most prevalent in crimes
of this nature, and must be forwarded to the Police
Laboratory in a proper manner without delay. The
following procedures shall standardize and control
the proper gathering, preservation, and submission
of trace evidence in sex crime cases:

1. Initial officers arriving on the scene shall
   obtain all clothing, soiled bedding, towels, and
   other materials either worn or used by the victim
   and/or suspect. Each item shall be wrapped
   separately in clean paper or inserted in clean
   paper bags. To preclude contamination, under no
   circumstances shall such evidence be inserted in
   plastic bags.

2. If the incident took place in an auto, initial
   observation shall be made for stained upholstery
   or seats, discarded cloths, and other materials.
   When the vehicle is to be processed, the Vehicle
   Processing Form 71-1081 shall be completed,
   specifically indicating what type of trace
   evidence the vehicle is to be processed for, and
   the most likely area in the vehicle in which it
   might be found.

CLE000170

# GENERAL POLICE ORDER

NO. 36-76          HEADQUARTERS  May 25          76

SUBJECT: PROPER GATHERING, PRESERVATION, AND SUBMISS-

ION OF TRACE EVIDENCE IN SEX CRIME CASES
(2)

3. In the event of an apprehension, the suspect's clothing shall be forwarded to the Police Laboratory for examination. In all cases, officers submitting evidence shall notify receiving personnel in the SIU of the specific crime involved, and the nature of the evidence. Copies of all pertinent reports shall accompany such evidenct to the Police Laboratory.

4. Following completion of the victim's examination by hospital personnel, the sheet from the cot on which the patient was undressed and examined should be submitted to the Police Laboratory by investigating officers for trace evidence analysis.

5. In the event of apparent scratches, bruises, or other marks of violence on either victim or suspect, the Bureau of Criminal Investigation shall be notified to arrange for color photographs to be taken of the injuries.

6. In all cases, standardized crime scene processing procedures are to be followed by either SIU or Evidence Technician personnel; fingerprint search, sufficient photographs, and other evidence gathering as circumstances require.

Commanding Officers shall cause compliance with this order.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

CLE000171

## GENERAL POLICE ORDER

No. 35-76         HEADQUARTERS    May 24      19 76

SUBJECT: ACKNOWLEDGEMENT OF RECEIPT OF GENERAL POLICE

ORDERS, DEPARTMENTAL NOTICES, AND MEMORANDUMS.

TO THE MEMBERS OF THE DEPARTMENT

Within 48 hours of receipt of a General Police Order,
Departmental Notice or Memorandum, every Commanding
Officer shall receipt a copy of same and return the
receipted copy to the Chief's Office.

By order of,


LLOYD F. GAREY
CHIEF OF POLICE

**GENERAL POLICE ORDER**

No. 33-76        HEADQUARTERS May 21        19 76

SUBJECT: PROCEDURE FOR THE HANDLING AND DISPOSITION

OF STOLEN, LOST, OR  OTHER DISPLACED LICENSE
PLATES.

TO THE MEMBERS OF THE DEPARTMENT

The following procedures shall govern the handling
of stolen, lost, and other displaced license plates
that come into the possession of members of the
Department:

1. Complete and attach a Property Tag-Form #60-3
   and make the necessary entry in the District or
   Unit Property Book.

2. Check the status and obtain a listing of the
   plates by computer inquiry, utilizing the
   District or Unit Computer Terminal.

3. When a listing is available, and the owner is a
   local resident, the member who recovers the
   plates shall notify the owner.

4. Notification shall be made by telephone. If this
   means fails, or if a long distance telephone call
   would be involved, the member shall cause
   notification to the listed owner by completing a
   postal card - Form #71-2102B - which shall be
   turned in to his Division, District, or Unit
   Headquarters for forwarding to the Mail Center
   for mailing. The member completing Form # 71-
   2102B shall place his name and rank or badge
   number in the lower left hand corner just above
   the number C of C 71-2102B.

## GENERAL POLICE ORDER

NO. 33-76                          HEADQUARTERS May 21 _____19 76

SUBJECT: PROCEDURE FOR THE HANDLING AND DISPOSITION OF STOLEN, LOST, OR OTHER DISPLACED LICENSE PLATES.

(2)

5. The member shall inquire as to whether replacement plates have been obtained. If none have been obtained, and the owner intends to pick up the plates at the District or Unit, they may be held there for a period of up to three days. When returned to the owner, a receipt shall be obtained in the Property Book. In other cases, they shall be forwarded to the Property Unit without delay. If replacement plates have been obtained, the plates in police possession shall not be returned; instead, they shall be forwarded to the Property Unit with other unclaimed plates, and a receipt obtained in the Property Book.

6. Every thirty days, personnel of the Property Unit shall destroy all plates which have been in their possession for thirty days, except those plates which are being held in evidence. Property Unit personnel shall forward a list of all destroyed plates to:

Administrative Assistant
License Plate Division
Bureau of Motor Vehicles
4300 Kinberly Parkway
Columbus, Ohio 43227

CLE000174

# GENERAL POLICE ORDER

NO. 33-76                        HEADQUARTERS May 21        76 19

SUBJECT: PROCEDURE FOR THE HANDLING AND DISPOSITION

OF STOLEN, LOST, OR OTHER DISPLACED LICENSE
PLATES.

(3)

Prior to destroying these plates, a final check shall be made in the computer for changes in status. If a change is noted, the proper report shall be made, and the entry removed from the computer. The list of plates destroyed shall state the date of destruction, and whether one or two plates. A copy of the list shall be retained for a period of three years, as a record of action taken.

7. The Officer In Charge of the Motor Vehicle Section, Tow Unit, shall accept and account for all license plates from vehicles that have been junked, impounded, AAA towed, or otherwise disposed of through the Division of Police, which plates shall have been immediately forwarded to the Motor Vehicle Section by the disposing agency. He shall cause the numbers of such license plates and any other pertinent data to be entered in a ledger maintained in his office for that purpose. He shall cause such plates to be properly tagged and forwarded to the Property Room, for storage and eventual appropriate disposition.

CLE000175

## GENERAL POLICE ORDER

NO. 33-76                    HEADQUARTERS  May 21        19 76

SUBJECT: PROCEDURE FOR THE HANDLING AND DISPOSITION

OF STOLEN, LOST, OR OTHER DISPLACED LICENSE
PLATES.

(4)

Commanding Officers shall instruct all members
under their command to comply with the procedures
contained in this General Police Order.

General Police Orders  30-72 and 34-72 are hereby
rescinded.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

CLE000176

## GENERAL POLICE ORDER

NO. 34-76          HEADQUARTERS          May 21          19 76

SUBJECT: INVESTIGATIVE REPORT POLICY & SUPPLEMENTARY

PROCEDURES: INJURY TO PERSON - DAMAGE TO
PROPERTY - CITY PROPERTY INVOLVED

TO THE MEMBERS OF THE DEPARTMENT

To standardize investigative reporting of Injury to
Person and Damage to Property incidents involving
City Property, the following policy and supplemen-
tary procedures shall be followed:

A. Whenever a citizen complains of non-traffic
   property damage or personal injury sustained on
   City property, the blue Form C of C 71-1077
   shall be completed in accordance with General
   Police Order 20-72, and arrangements shall be
   made for proper photographs to be taken.

B. In all motor vehicle accident reports involving
   City vehicles, the OH-4 Crash Report and any
   necessary supplementary reports shall be
   completed in accordance with General Police
   Order 20-74. In all cases, photographs must be
   taken of all vehicles involved, even though the
   vehicles may have been moved, and despite the
   extent of damage.

C. Whenever the Communications Control Center/
   Radio Dispatch Office is notified that a victim
   of injury involving City Property has been
   conveyed to or is present at a hospital
   Emergency Room, a Zone Car shall be dispatched
   to complete the Form 1077.

## GENERAL POLICE ORDER

NO.  34-76          HEADQUARTERS  May 21          19 76

SUBJECT :  INVESTIGATIVE REPORT POLICY  & SUPPLEMENTARY

PROCEDURES: INJURY TO PERSON - DAMAGE TO
PROPERTY - CITY PROPERTY INVOLVED.
(2)

D. Each Police District shall maintain a Photo
   Request Book in which all requests for photo-
   graphs shall be logged. The Office In Charge of
   the District Station shall be responsible for
   directing photography assignments to the
   respective District Accident Investigations Cars
   and Evidence Technician Cars. Form C of C 71-20
   Photographic Information for Law Department shall
   be completed by the officers taking the photo-
   graphs, and the negatives shall be forwarded
   with the completed form to the SIU Photo Lab
   upon completion of the assignment.

At all times, police officers shall adhere to the
following principles:

1. Never offer an opinion as to whether or not the
   claim is moral or legal.

2. Never take a position as to whether or not the
   claim will be paid.

3. Never offer an opinion as to the legal or moral
   liability of the City of Cleveland in any given
   situation.

CLE000178

## GENERAL POLICE ORDER

NO. 34-76    HEADQUARTERS May 21 , 19 76

SUBJECT: <u>INVESTIGATIVE REPORT POLICY & SUPPLEMENTARY</u>

PROCEDURES: INJURY TO PERSON - DAMAGE TO
PROPERTY - CITY PROPERTY INVOLVED.

(3)

Photo Request Books shall be forwarded to each
District station.

Adequate supplies of Form C of C 71-20 are avail-
able at the Supply Unit.

Commanding Officers shall cause compliance with
this order.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

CLE000179

## GENERAL POLICE ORDER

NO. 32-76          HEADQUARTERS May 17          76

SUBJECT: PROCEDURE RE: DEATH OF ACTIVE OR RETIRED

MEMBER. USE OF FORM C OF C 71-78D, FAMILY
DEATH NOTICE. SUPPLEMENT TO G.P.O. 10-76

TO THE MEMBERS OF THE DEPARTMENT

Whenever information is received that an active or
retired member of the Cleveland Police Department
has died, the member receiving the information shall
obtain the name and address of the "Next of Kin"
and telephone this information to the deceased
member's unit or assignment. If infeasible, or the
deceased is retired member, then this information
shall be telephoned to the residing or nearest
district to the residence of the "Next of Kin".

A superior officer of the Unit or District notified
shall promptly make a personal visit to the "Next
of Kin", make appropriate inquiries and complete a
Form C of C 71-78D. Completed form 78D's shall be
forwarded through channels to the Chief's Office.
The Superior Officer shall notify the "Next of Kin"
that as a matter of policy the Police Department
will furnish a Honor Guard and Pallbearers. Should
the family plan other arrangements, or if specific
pallbearers are requested, this information shall be
entered in the "Remarks" section on the form. The
names of the specific pallbearers shall be noted on
the back of the form.

Military funerals will be performed for members
killed in the line of duty and for members in good
standing of the American Legion. (Dues not more
than one (1) year in arrears.)

CLE000180

## GENERAL POLICE ORDER

NO. 32-76      HEADQUARTERS      May 17     19 76

SUBJECT: PROCEDURE RE: DEATH OF ACTIVE OR RETIRED MEMBER. USE OF FORM C OF C 71-78D, FAMILY DEATH NOTICE. SUPPLEMENT TO G.P.O. 10-76

(2)

Following his personal visit to the "Next of Kin", the Superior Officer shall notify the Record Room and cause a representative teletype to be sent.

DEATH NOTICE

A "Death Notice" shall be sent if initially only meager details are available. The "Notice" should contain the deceased member's name, address, age, assignment, (if active), time and place of death. The "Notice" shall include a notation to the attention of the Officer-in-charge of the Funeral Detail.

DEATH AND FUNERAL NOTICE

A "Death and Funeral Notice" shall be sent if at the time of the initial visit arrangements for the interment have been made and are known, or when known following the teletyping of a "Death Notice". The "Death and Funeral Notice" shall additionally include the time and place where the remains may be viewed, services (if any) and place of interment. The teletype shall also include the names of the specific members the "Next of Kin" requested to act as pall-bearers, and if the deceased is a member of the American Legion whether a military funeral is desired.

CLE000181

## GENERAL POLICE ORDER

No. 32-76    HEADQUARTERS    May 17    76    19____

SUBJECT: PROCEDURE RE: DEATH OF ACTIVE OR RETIRED
MEMBER. USE OF FORM C OF C 71-78D, FAMILY
DEATH NOTICE. SUPPLEMENT TO G.P.O. 10-76

(3)

The Officer-in-charge of the Funeral Detail will
cause the necessary teletypes to be sent regarding
the reporting time, place and uniform to be worn by
the Funeral Detail.

On any occasion members act in concert at a funeral,
such activity shall be coordinated through, and
under the direction of the Officer-in-charge of the
Funeral Detail.

Whenever a member notifies his Superior Officer that
he will be off duty due to a death in his immediate
family, such Superior Officer shall cause a "FAMILY
DEATH NOTICE" to be teletyped acknowledging the
death. The "NOTICE" shall include the deceased's
name and relationship to the member and the time and
location of the funeral arrangements.

Departmental Notice 71-213 is hereby rescinded.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

# GENERAL POLICE ORDER

NO. 31-76      HEADQUARTERS      May 14   76   19

SUBJECT: SUPPLEMENT TO GPO 37-75 - SUPPLEMENTARY SICK LEAVE PROCEDURES AND SUPERVISORY CONTROLS

TO THE MEMBERS OF THE DEPARTMENT

Effective this date a structured report form 'Weekly Supervisors' Sick Visitations" shall be used for the weekly report required by GPO 37-75 - Supplementary Sick Leave Procedures and Supervisory Controls.

In its completion:

     a) An entry should be made for each member on sick leave and shall contain the symbol S, V, F, or H as applicable. If the member was on duty on any day of the period, the space shall be left blank.

     b) The "Number of members visited by Superior Officers" shall reflect the total number of individuals visited during the 7 day period, 7:00 AM to 7:00 AM on successive Sundays. Each member shall be counted only once and multiple visits to one person shall not be included in the tabulation.

     c) When a member is confined in a hospital, the dates of confinement shall be indicated in the "Visited by or Confined" column.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

CLE000183

## GENERAL POLICE ORDER

NO. 30-76          HEADQUARTERS May 3,          19 76

SUBJECT: ROTATIONAL PLATOON SHIFT CHANGES

TO THE MEMBERS OF THE DEPARTMENT

In order to provide a more equitable shift rotation
within the Department, the next regular monthly
shift rotation shall be effected on May 16, 1976,
instead of June 1, 1976.

On June 1, 1976, all platoons again shall effect
the normal shift changes, as scheduled for the
first day of each month.

Hereafter, there shall be two shift changes during
the month of May every year, in order to continue
the rotational process.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 29-76          HEADQUARTERS April 23,        1976

SUBJECT: AMENDMENT TO GPO 19-76 -- DEPARTMENTAL

REORGANIZATION

TO THE MEMBERS OF THE DEPARTMENT

Paragraph four of GPO 19-76, commencing with "The Mounted Unit.........", shall be deleted and replaced by the following.

The Bureau of the Task Force is hereby established to replace the Task Force with the Bureau of Patrol. It shall be composed of the following Units:

Tactical Unit

Foot Patrol Unit

Mounted Unit

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

CLE000185

## GENERAL POLICE ORDER

No. 28-76          HEADQUARTERS April 23,    1976

SUBJECT: BUREAU OF CRIMINAL INVESTIGATION --

ASSIGNMENT AND PROCEDURE POLICIES AND
RESPONSIBILITIES

TO THE MEMBERS OF THE DEPARTMENT

The General Investigation Section of the Bureau of
Criminal Investigation shall be staffed to provide
a minimum of two detectives per platoon in each
District.

When District personnel are available they shall be
assigned with detectives and shall function as an
investigative team with the Detective member assuming
coach-trainer responsibilities.

Patrol Bureau Sector Supervisors and Platoon
Commanders shall have the authority and respons-
ibility for proper and thorough investigations of
all crimes that occur within their assigned areas
during their duty tours.  Supervisory authority for
follow-up, special or otherwise protracted invest-
igations, shall lie with the Bureau of Criminal
Investigation.

The Bureau of Criminal Investigation shall reduce
the numbers of detectives in specialized units to
the minimum number required.  They shall be utilized
for the investigation of more serious crimes, invest-
igations of a protracted nature and those of great
public interest.

Office staffs and record keeping functions of
specialized units  and throughout the BCI shall be

CLE000186

## GENERAL POLICE ORDER

NO. 28-76          HEADQUARTERS  April 23,  1976

SUBJECT:  BUREAU OF CRIMINAL INVESTIGATION --

ASSIGNMENT AND PROCEDURE POLICIES AND
RESPONSIBILITIES

Page Two

consolidated.  The number of personnel assigned to
such duties shall be reduced to the absolute
minimum and, as far as possible, restricted duty
personnel shall be used and assigned to all such
duties.

The Homicide Unit shall investigate all assault
type felonies, including all shootings and
cuttings, in addition to all homicides.

In addition to their present duties, the Juvenile
Unit shall exercise staff supervision and inspection
of City-wide Curfew Law Violations and enforcement,
and shall forward reports to the Bureau of
Inspection and Chief's Office.

By order of


LLOYD F. GAREY
CHIEF OF POLICE

CLE000187

## GENERAL POLICE ORDER

No. 27-76          HEADQUARTERS April 23,      1976

SUBJECT: AMENDMENT TO GPO 16-75, COMMANDING AND

SUPERVISORY RESPONSIBILITIES AND DUTIES --
CONDUCT, DISCIPLINE AND PERFORMANCE

TO THE MEMBERS OF THE DEPARTMENT

Individual performance evaluation will be required
monthly on all officers and members with specialized
assignments.

Included shall be the arrest record, detailed
description of types of duties performed, unique or
special ability to perform the function and the
quality level of his work.

Non or sub-standard performers shall be transferred
or reassigned to positions and duties more suited
to their abilities, competence, attitude and
application to duty.

By order of,


LLOYD F. GAREY
CHIEF OF POLICE

CLE000188

*Sgt. Breasley*

GENERAL POLICE ORDER 26-76

April 23, 1976

SUBJECT: MOTOR VEHICLE SECTION -- VEHICLE IMPOUND UNIT, TOW UNIT,
PROCEDURES

TOW PROCEDURE - General Provisions

The following vehicles are subject to Police Towing:
a) Illegally parked vehicles.
b) Abandoned vehicles on public and private property.
c) Vehicles to be processed.
d) Vehicles found in a hazardous position.
Vehicles associated with crimes and requiring either scientific processing
for evidence or special examination to determine the vehicle identification
number (VIN) are subject to pickup and impoundment for processing. All such
requests must be approved by the officer's supervisor. Refer to General
Police Order 2-72, Vehicle Processing procedure.

The following vehicles shall be subject to AAA tow unless Police necessity
requires different handling or a Police tow:
a) Recovered stolen vehicles.
b) Suspected stolen vehicles.
c) Vehicles located for the owner.
d) Damaged or Abandoned vehicles after accidents.
e) Arrests and pickups.
f) Vehicles left unattended due to the incapacity of the driver.
(Noncriminal sudden illness or death.)

The Vehicle Impound Unit shall have the final authority to dispatch the
proper tow.

REQUEST FOR TOWS

Effective immediately, all tow requests with the exception of requests for
tows of "abandoned junk vehicles" shall be made via radio channel seven in
the following manner:
1) The requesting officer shall notify his assigned radio dispatcher
of his intention to tow a vehicle.
2) If the officer has an assigned portable transceiver he shall turn
it on to his assigned channel to maintain communication with C.C.C.
during such time as his car radio is switched to channel 7.
3) The officer shall then switch his car radio to channel 7 and
request his tow, supplying the following information.
a) Car number requesting the tow.
b) Exact location.
c) Year, make, model, license number and vehicle identification
number.
d) Reason for the tow.
e) Name and badge or rank of the requesting officer.
f) Any requirement for special equipment, such as heavy duty
wreckers, dollys, etc.
4) Officers not equipped with channel 7 shall make such requests to
C.C.C. via their assigned channel.
5) The Vehicle Impound Unit will then relay the tow request to the
AAA or dispatch a Police tow truck as required.
6) Upon arrival of the tow and PRIOR TO THE COMPLETION OF THE
ASSIGNMENT the officer shall notify the Vehicle Impound Unit of
the Police tow truck number or AAA garage towing the vehicle,
the owner's name, address, phone number and will inform the V.I.U.
of the fact that the owner has been notified.

CLE000189

OFFICERS NOT EQUIPPED WITH CHANNEL SEVEN SHALL TELEPHONE THE VEHICLE
IMPOUND UNIT UPON ARRIVAL OF THEIR TOW.

7) Whenever an officer or member causes a vehicle to be towed and
fails to notify the owner, he shall complete an Auto Theft
Record form C of C 71-1 stating the reason such notification
has not been made and forward the original and one copy to the
Vehicle Impound Unit.

8) Members requesting AAA or process tows shall remain on the
scene until the tow truck arrives unless required to leave by
reason of dire Police necessity.

In the case of AAA tows:

General Police Order 4-73, AAA TOW PROCEDURE, shall remain in effect,
except items 1 through 4 which shall be replaced by the foregoing. All
reference to the Auto Theft Records Unit shall be changed to read Vehicle
Impound Unit.

In the case of process tows:

General Police Order 2-72, VEHICLE PROCESS PROCEDURE, shall remain in
effect, except that all record keeping responsibilities shall be tran-
sferred to the Vehicle Impound Unit.

Requests for tows of "abandoned junk vehicles":

1) All requests for tows of "abandoned junk vehicles" shall be
forwarded to the TOW UNIT.

MOTOR VEHICLE THEFT INVESTIGATION AND REPORTING PROCEDURES:

General Police Order 29-74 shall be amended as follows:

1) All reference to the Auto Theft Records Unit shall be changed
to read Vehicle Impound Unit.

2) Locate reports shall be telephoned to the Report Center as an
RC-1, "Locate/Motor Vehicle". Upon being found, the title of the
RC-1 report shall be changed to "Locate/Motor Vehicle - Recovered"
or such other title as circumstances may require.

3) Locate reports shall be made only with the approval of the Officer
supervisor and shall not be made in the event that any other RC-1
report is made in connection with the incident, e.g. missing
person with motor vehicle involved.

4) Officers shall continue to note on recovery reports if "special
parts" are missing from a recovered vehicle, however, no additional
investigation shall be conducted to determine the identification
number of such parts nor shall any entry be made into the computer
system.

5) Officers making reports of stolen motor vehicles shall instruct
victims that they will be notified upon recovery of the vehicle and
further that NO information as to the status of the vehicle will be
released by telephone inquiry.

DUTIES OF THE VEHICLE IMPOUND UNIT

The VEHICLE IMPOUND UNIT shall:
1) Be responsible for dispatching tows.
2) Exclusively maintain all records of towed vehicles.
3) Maintain a daily log of all vehicles towed or caused to be towed by the
Cleveland Police Department. The log shall include the make, year, license
number and VIN of each vehicle, as well as the disposition of the vehicle.
4) Accept and record on the daily log, reports of vehicles repossessed by

5) Not require a call back from the AAA as to the VIN or condition of impounded vehicles as all such information shall be obtained from the officer requesting the tow.

6) Require Police tow trucks to report the lot number and code number of all vehicles towed to City owned impound lots.

7) Check through the computer system every towed or repossessed vehicle for a want record.

8) Enter into the Cleveland Police Department's computer system a record of every vehicle towed or caused to be towed by the Department.

9) Maintain a list of salvage yards approved by the Director of Public Safety and shall order tows for "abandoned junk vehicles" from said list.

10) Shall issue releases for impounded vehicles between the hours of 8:00 A.M. and 8:00 P.M. daily. Such releases shall be issued upon presentation of a valid certificate of title by the owner. The owner of the vehicle may, by notarized letter, authorize an agent to obtain the release.

11) Be exclusively responsible for disposing of unclaimed impounded vehicles in accordance with law.

12) Dispose of all unclaimed vehicles impounded in lots maintained by the City of Cleveland only by auction.

13) Furnish a copy of the Daily Log to the National Automobile Theft Bureau.

14) Take any other action necessary to expedite the towing, impoundment and disposition of vehicles as required by the Department.

DUTIES OF THE RECORD FILE SECTION

The Record File Section, in addition to it's prescribed duties, shall:

1) Process all motor vehicle theft reports and file a "computer entry" card by VIN, when available, and license number when the VIN is not available.

2) Make RC-1 "Locate/Motor Vehicle" reports and enter such reports into the Cleveland Police Department computer only.

3) Maintain a file of lost or stolen license plates.

4) Maintain a file of reports from used car dealers as required by law.

5) Not accept telephone communications from theft victims nor insurance companies, but shall require all such communications to be made in person or by mail.

6) Cease to make computer entries on "special parts".

7) The officer on duty at the Record File Section Shall:
   a) Accept all communications pertaining to motor vehicle theft records from other law enforcement agencies and release any requested information upon verification of the legitimacy of the inquiry.
   b) Make or cause to be made reports on vehicles stolen in Cleveland but recovered by other law enforcement agenices. Such reports shall be verified by requiring the recovering agency to send a teletype to this Department. Such teletypes shall be filed with the recovery report and no such recovery report shall be filed without the verifying teletype.
   c) NOTIFY the owner of any vehicle reported stolen in Cleveland but recovered by another law enforcement agency.

DUTIES OF THE TOW UNIT

Operations of the TOW UNIT shall be amended as follows:

1) Tow trucks shall operate on channel 7 and receive their assignments from the radio dispatcher in the Vehicle Impound Unit.

(3)

2) The Commanding Officer of the Tow Unit shall cause members of the "Junk Detail" to investigate reports of abandoned vehicles. Upon verification that a vehicle is in fact abandoned, the assigned officer shall complete a Tow Requisition or the necessary affidavit and photographs as required by law for "abandoned junk vehicles".

3) The Tow Unit shall forward such completed forms to the Vehicle Impound Unit for dispatch of the proper tow.

4) The Tow Unit shall discontinue making computer entries, as all such duties shall now be the responsibility of the Vehicle Impound Unit.

5) The Tow Unit shall cooperate with the Vehicle Impound Unit to the fullest extent to expedite tow requests.


By order of

*Lloyd F. Garey*

LLOYD F. GAREY
CHIEF OF POLICE

CLE000192

## GENERAL POLICE ORDER

NO. 26-76          HEADQUARTERS April 23,          1976

SUBJECT: MOTOR VEHICLE SECTION -- VEHICLE IMPOUND
UNIT, TOW UNIT -- PROCEDURES

TO THE MEMBERS OF THE DEPARTMENT

There is hereby established, within the Bureau of
Services and Communications, Division of Services,
a MOTOR VEHICLE SECTION consisting of a VEHICLE
IMPOUND UNIT and a TOW UNIT.  The Tow Unit of the
Bureau of Traffic is hereby transferred to the
Bureau of Services and Communications -- Motor
Vehicle Section.

The Vehicle Impound Unit shall be responsible for
dispatching tow trucks and maintaining records of
all vehicles towed, impounded and salvaged by
authority of the Cleveland Police Department.  It
shall be the duty of the Vehicle Impound Unit to
properly dispose of all unclaimed impounded vehicles
and "abandoned junk vehicles" in accordance with
the laws of the State of Ohio and the City of
Cleveland.

There is hereby established a radio SERVICE CHANNEL
on UHF, CHANNEL SEVEN.  Effective immediately, radio
Channel Seven shall be utilized for all Vehicle
Impound Unit and tow functions, and all tow infor-
mation shall be transmitted on Channel Seven.

All motor vehicle theft record keeping and
processing shall be the responsibility of the
Record File Section.

## GENERAL POLICE ORDER

No. 26-76     HEADQUARTERS April 23, 1976

SUBJECT: MOTOR VEHICLE SECTION -- VEHICLE IMPOUND UNIT, TOW UNIT -- PROCEDURES

### Page Two

Officers and members of the Department will be provided with revised written orders governing towing and motor vehicle theft reporting procedures which shall be an integral part of this order. Commanding Officers shall familiarize members of their command with these orders and cause full compliance with same.

All previous General Police Orders and Departmental Notices, or parts thereof which may be in conflict, are hereby rescinded.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

# GENERAL POLICE ORDER

No. 25-76          HEADQUARTERS April 23,          1976

SUBJECT: AMENDMENT TO GPO 20-74 --"ACCIDENT

INVESTIGATION REPORTING PROCEDURE"

TO THE MEMBERS OF THE DEPARTMENT

Effective April 24, 1976, the OH 4 and OH 5 Traffic
Crash Report forms and related reports and state-
ments shall be forwarded to the Accident Follow-up
and Case Preparation Unit.

The distribution of the copies shall be made by the
Accident Follow-up and Case Preparation Unit, after
their review by that Unit for completeness and
adequacy of investigation, as outlined in GPO 20-74.

By order of,


LLOYD F. GAREY
CHIEF OF POLICE

CLE000195

## GENERAL POLICE ORDER

NO. 24-76      HEADQUARTERS April 23, 19 76

SUBJECT:   TRAFFIC ACCIDENTS -- VIOLATION ENFORCEMENT

TO THE MEMBERS OF THE DEPARTMENT

In the investigation of traffic accident cases, in every instance where a violation exists based on physical evidence and/or witness information, action shall be taken by investigating officers. A citation shall be issued or a physical arrest shall be made, depending upon the condition of the violator or other circumstances present at the time.

When a physical arrest is made or a citation issued, the arrest section of the Crash Report Form shall contain the name of the person arrested or cited, and the charge, together with the Court appearance date. General Police Order 59-75, "NEW OHIO UNIFORM TRAFFIC TICKET (MOVING TRAFFIC CITATION)", shall govern the procedure relative to the issuance of citations and arrests in traffic cases.

Whenever a citation is issued, the OH 4 Crash Report Form shall be supplemented by statements of principals and witnesses. In damage accidents or minor personal injury cases, the short form 71-1-E will suffice. In serious cases and accidents involving police vehicles, the long statement, Form 71-26, shall be used.

Whenever a driver involved in a traffic accident is physically arrested and charged with an offense, one of the investigating officers shall consult with the Accident Follow-up - Case Preparation Unit who shall assist the officer in obtaining the proper

## GENERAL POLICE ORDER

No. 24-76        HEADQUARTERS April 23, 1976 19___

SUBJECT: TRAFFIC ACCIDENTS -- VIOLATION ENFORCEMENT

Page Two

affidavit and warrant, Attendance in Court will be governed by GPO 37-75 "MUNICIPAL COURT PROSECUTION PROCEDURES".

If the driver at fault is under 18 years of age and the circumstances warrant, a juvenile citation shall be issued. The date of the Juvenile Court Hearing will be set by the Juvenile Court. An extra copy of the OH 4 Crash Report Form shall be made and accompany the Juvenile Citation to the Data Processing Unit.

Proper enforcement action must be taken when pedestrians involved in traffic accidents are either intoxicated or violating the pedestrian ordinances.

Vehicular Homicide, Driving While Intoxicated, Reckless Driving, and Drag Racing are among those situations that may require a physical arrest.

General Police Order 3-68 is hereby rescinded.

By order of,


LLOYD F. GAREY
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 23-76          HEADQUARTERS April 23, _____ 1976

SUBJECT: SUPPLEMENTARY DUTIES -- BUREAU OF THE

TASK FORCE

TO THE MEMBERS OF THE DEPARTMENT

The Task Force shall assume the responsibility and provide traffic control at special events throughout the City and at the Convention Center and the Stadium, as occasioned by the seasonal activity and other circumstances.

The Task Force shall share traffic control responsibilities during the Rush Hour periods in the Downtown area and elsewhere, as needed.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

CLE000198

## GENERAL POLICE ORDER

No. 22-76      HEADQUARTERS April 23, 1976

SUBJECT: BUREAU OF PATROL -- AREA AND DISTRICT

SUPPLEMENTARY SUPERVISORY AND OPERATIONAL
RESPONSIBILITIES

TO THE MEMBERS OF THE DEPARTMENT

Area and District Commanders shall be responsible
for traffic control activities within their areas
of command. They shall assume all traffic flow,
traffic enforcement and accident investigation
responsibilities. They shall comply fully with
procedures, orders and rules controlling police
traffic activity. With respect to traffic enforce-
ment, they shall concentrate upon the dangerous
types of violations.

All supervisory and patrol personnel shall be
responsible for expeditious traffic flow with
strict accountability by subordinates to be
required by District Commanding Officers and Patrol
Captains. When not on other assignments, Zone Car
personnel shall patrol during Rush Hours and any
other occasions of heavy traffic flow and shall take
an active part in maintaining proper movement and
flow of traffic.

Zone Car personnel and/or Beat personnel shall be
assigned to traffic post duties during these periods
and conditions of heavy traffic, as needed and
commensurate with other demands for police service.
No uniform personnel shall be permitted to take
lunch breaks or to be out of service making reports
or performing other functions not requiring immedi-
ate attention during these periods.

# GENERAL POLICE ORDER

No. 22-76          HEADQUARTERS          April 23,    1976    19___

SUBJECT: BUREAU OF PATROL -- AREA AND DISTRICT

SUPPLEMENTARY SUPERVISORY AND OPERATIONAL
RESPONSIBILITIES

Page Two

Considering the numbers of violations committed,
a reasonable amount of traffic citation, arrest and
parking ticket issuance productivity shall be
required from all uniform personnel.  Failure to
do so or sub-standard performance shall be
considered noncompliance and/or neglect and be the
subject of disciplinary action.  Failure of
Superior Officers to require such performance or
to take corrective or disciplinary action shall
be considered neglect of duty and subject to
charges.

At least one Traffic Enforcement Car shall be
assigned to each District under the supervision of
a Sector Lieutenant.  The members assigned shall
enforce traffic laws and ordinances within the
assigned district and shall serve as a back up
accident investigation car. Each such Traffic
Enforcement Car may be equipped with a radar unit
and shall utilize it as appropriate and necessary
for effective enforcement.  Duty hours of enforce-
ment cars shall be determined by traffic enforce-
ment needs.

Solo motorcycles shall be assigned to each District.
Generally, the manning of solo motorcycles will
receive last priority.  They shall engage in the
enforcement of traffic laws and ordinances and

## GENERAL POLICE ORDER

No. 22-76          HEADQUARTERS  April 23,    1976

SUBJECT:  BUREAU OF PATROL -- AREA AND DISTRICT

SUPPLEMENTARY SUPERVISORY AND OPERATIONAL
RESPONSIBILITIES

Page Three

other selective enforcement responsibilities as may
become necessary.  It is essential that manpower
be utilized to its fullest and that all zone cars
receive first consideration and be manned at all
times in accordance with new zone designations and
platoon duty tour and roll call schedule.

Additional patrol coverage will be provided by the
assignment of two evidence cars in each district
whenever possible.  Each will be assigned to a
Sector and will handle radio assignments when not
occupied in crime scene evidence gathering duties.
They will be subject to all types of assignments,
but generally shall be assigned to minor complaints.
A Sergeant shall be assigned to one of the two
evidence cars, unless none is available for this
purpose.

An Accident Investigation Car shall be assigned to
each District to be operational on the first and
second platoons.  At least one Accident Invest-
igation Car shall be operational on the third pla-
toon in each of Patrol Bureau Areas A and B. When
not on active patrol, the members assigned shall
investigate all traffic accidents occurring within
the assigned district.  Accidents shall be promptly
and thoroughly investigated as provided for in
accident investigation reporting procedures.  The

## GENERAL POLICE ORDER

NO. 22-76          HEADQUARTERS April 23,        1976

SUBJECT: BUREAU OF PATROL -- AREA AND DISTRICT

SUPPLEMENTARY SUPERVISORY AND OPERATIONAL
RESPONSIBILITIES

Page Four

investigation shall include photographs, measure-
ments and statements in all fatal and serious non-
fatal accidents in addition to all accidents which
are likely to involve the City of Cleveland in
litigation, District Commanding Officers and Patrol
Captains shall be responsible for the safekeeping,
maintenance and inspection of equipment.  In addit-
ion to the specifically designated accident invest-
igation cars, all zone car personnel shall perform
accident investigation duties whenever they are
so assigned or encounter an accident during routine
patrol.  Accident cars with cameras and other
special equipment shall be assigned to serious
nonfatals and fatals whenever possible and shall
assist zone cars when the latter must be so
assigned because of accident crew unavailability.

District Commanders shall discontinue assignment
of personnel to special crime and auto details.
District Vice Details shall continue to function.
On weekends after utilization of manpower for
patrol, traffic and accident cars, District
Commanders may field a special crime detail during
the hours and in areas where they are needed based
upon their analysis of the incidence of crimes.
Within the manpower limitations stated, these also
may be implemented at other times and additional
deployment would be justified on Friday and

CLE000202

## GENERAL POLICE ORDER

NO. 22-76          HEADQUARTERS April 23,          1976

SUBJECT:          BUREAU OF PATROL -- AREA AND DISTRICT

SUPPLEMENTARY SUPERVISORY AND OPERATIONAL
RESPONSIBILITIES

Page Five

Saturday when crime rates are high and when more
manpower should be available. In no case may
these squads be maintained continually or on a
daily basis or without specific justification.

In cooperation with the Bureau of Criminal Investi-
gation Commander, on a rotation basis, District
Commanders shall assign a district officer in plain
clothes with one general duty detective in order
to enable a maximum number of detective crews to be
in service particularly on weekends and at other
times when there is a need for additional detective
investigative squads and when the personnel is
available.

Roll Calls shall be scheduled as follows:

        First Platoon...7:00 AM and 8:00 AM

        Second Platoon..3:00 PM and 4:00 PM

        Third Platoon..11:00 PM and 12:00 Midnight

The odd number cars shall report for the first
roll call and even number cars for the second roll
call. This schedule shall rotate every six months.
The next change will take place July 1, 1976. One
evidence car shall stand each roll call.

CLE000203

## GENERAL POLICE ORDER

No. 22-76          HEADQUARTERS April 23,          1976

SUBJECT: BUREAU OF PATROL -- AREA AND DISTRICT

SUPPLEMENTARY SUPERVISORY AND OPERATIONAL
RESPONSIBILITIES

Page Six

The duty hours of district supervisory officers,
Captains, Lieutenants, Sergeants, and Officers in
Charge of Stations shall be without variation:

First Platoon.....9:00 AM to 5:00 PM

Second Platoon....5:00 PM to 1:00 AM

Third Platoon.....1:00 AM to 9:00 AM

Excepted shall be Sergeants assigned to zone cars
and to evidence cars and Vice Sergeants.

Supervisors shall, therefore, overlap two platoons,
ensuring availability of supervisors and enabling
more adequate supervision during platoon shift
changes. Each supervisory shift shall supervise
the off-duty relief process of the platoon to which
assigned and shall hold roll call for the oncoming
platoon.

Uniform district patrol personnel shall not return
to the station for relief or report off duty
earlier than ten minutes before completion of their
prescribed tour of duty.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

CLE000204

## GENERAL POLICE ORDER

No. 21-76          HEADQUARTERS          April 23          76
                                                           19

SUBJECT:  ZONE BOUNDARIES AND ZONE PATROL

DISTRIBUTION, AMENDMENT TO GPO 7-73

TO THE MEMBERS OF THE DEPARTMENT

Effective April 24, 1976, the six police districts
will be divided into 62 zones and divided as follows:

SECTOR 1

District 1..... 111, 112, 113, 114

District 2..... 211, 212, 213, 214, 215, 216

District 3..... 311, 312, 313, 314

District 4..... 411, 412, 413, 414, 415, 416, 417

District 5..... 511, 512, 513, 514, 515

District 6..... 611, 612, 613, 614, 615

SECTOR 2

District 1..... 121, 122, 123, 124

District 2..... 221, 222, 223, 224, 225

District 3..... 321, 322, 323, 324, 325

District 4..... 421, 422, 423, 424, 425, 426, 427

District 5..... 522, 523, 524, 525, 526

District 6..... 621, 622, 623, 624, 625

## GENERAL POLICE ORDER

NO. 21-76          HEADQUARTERS          April 23     19 76

SUBJECT: ZONE BOUNDARIES AND ZONE PATROL
DISTRIBUTION, AMMENDMENT GPO 7-73

(2)

Current Zone changes are limited to the Second and
Fifth Districts only.

A verbal description of the zone boundaries in these
two districts is as follows:

ZONE BOUNDARIES FOR DISTRICT 2

211  From the Lake south on West 65th Street to Bridge
Avenue, east on Bridge Avenue to Randall, north
on Randall to West 44th Street, continuing north
on West 44th Street to Franklin Blvd., west on
Franklin Blvd. to West 45th Street, north on
West 45th Street on a northerly line to the lake.

212  From the Lake on a southerly line with West 44th
Street to Franklin Blvd., east on Franklin Blvd.
to West 44th Street, south on West 44th Street
to Randall, then continuing south on Randall to
Bridge Avenue, east on Bridge Avenue and
continuing on an easterly line to the Cuyahoga
River.

213  From the Cuyahoga River on a westerly line to
Bridge Avenue, continuing west on Bridge Avenue
to Fulton Road, south on Fulton Road to Train
Avenue, east on Train Avenue to the intersection
of Scranton Road and Fairfield Avenue, continuing
east on Fairfield Avenue to West 14th Street,
then north on West 14th Street continuing on a
northerly line to the Cuyahoga River.

## GENERAL POLICE ORDER

No. 21-76  HEADQUARTERS  April 23  19 76

SUBJECT: ZONE BOUNDARIES AND ZONE PATROL

DISTRIBUTION, AMENDMENT TO GPO 7-73
(3)

214 From the Cuyahoga River on a southerly line to West 14th Street, continuing south on West 14th Street to Clark Avenue, east on Clark Avenue to the Cuyahoga River.

215 From the intersection of West 65th Street and Bridge Avenue, south to Clark Avenue, east on Clark Avenue to Fulton Road, north on Fulton Road to Bridge Avenue, west on Bridge Avenue to West 65th Street.

216 From the intersection of Fulton Road and Clark Avenue, east on Clark Avenue to West 14th Street, north on West 14th Street to Fairfield Avenue, west on Fairfield Avenue to Train Avenue, continuing west on Train Avenue to Fulton Road, south on Fulton Road to Clark Avenue.

221 From the intersection on West 65th Street and Clark Avenue, south on West 65th Street to Storer Avenue, east on Storer Avenue to Fulton Road, south on Fulton Road to Woodbridge Avenue, east on Woodbridge Avenue to West 25th Street, north on West 25th Street to Clark Avenue, west on Clark Avenue to West 65th Street.

CLE000207

## GENERAL POLICE ORDER

NO. 21-76      HEADQUARTERS April 23 19 76

SUBJECT: ZONE BOUNDARIES AND ZONE PATROL

DISTRIBUTION, AMMENDMENT TO GPO 7-73

(4)

223 From the Cuyahoga River west on Clark Avenue to West 25th Street, south on West 25th Street to Big Creek, east on a line coinciding with the centerline of Big Creek to the Cuyahoga River, then north on a line coinciding with the centerline of the Cuyahoga River.

222 Zone boundaries remain the same.

224 Zone boundaries remain the same.

225 Zone boundaries remain the same.

ZONE BOUNDARIES FOR DISTRICT 5

511 From East 55th Street and Superior Avenue, south on East 55th Street to Lexington Avenue, east on Lexington Avenue to East 79th Street, north on East 79th Street to Superior Avenue, west on Superior Avenue to East 55th Street.

513 From East 105th Street and Superior Avenue, south on East 105th Street to Euclid Avenue, east on Euclid Avenue to Cornell Avenue, on Cornell Avenue to Murray Hill Road, from Murray Hill Road continuing on Edgehill Road to the City limits, following the City limits north to Superior Avenue.

CLE000208

## GENERAL POLICE ORDER

No. 21-76          HEADQUARTERS____April 23____19 76

SUBJECT: ZONE BOUNDARIES AND ZONE PATROL

DISTRIBUTION, AMENDMENT TO GPO 7-73

(5)

514 From East 55th Street and Lexington Avenue,
south on East 55th Street and Euclid Avenue,
east on Euclid Avenue to East 79th Street,
north on East 79th Street to Lexington Avenue,
west on Lexington Avenue to East 55th Street.

Zones 512, 515, 522, 523, 524, 525 and 526
boundaries will remain the same.

Zones 516 and 521 are deleted from the district zone
map.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

CLE000209

## GENERAL POLICE ORDER

NO. 20-76                    HEADQUARTERS          April 23,        76

SUBJECT: BUREAU OF TRAFFIC CONTROL -- OFFICE OF THE
TRAFFIC COMMISSIONER

TO THE MEMBERS OF THE DEPARTMENT

The responsibilities and duties of the office of the
Traffic Commissioner shall include:

(1) The determination of the general city-wide
vehicular and pedestrian traffic control needs
of the City of Cleveland with respect to
traffic direction and flow, traffic enforcement
and accident investigation.

(2) Analysis of general traffic conditions and
police activities and planning for proper and
effective personnel deployment and enforcement.

(3) Inspections and observation of all daily police
traffic control activities shall be conducted
and reported to the Chief of Police together
with definitive and detailed recommendations
to achieve safe, expeditious and effective
traffic control and enforcement. The location,
time and types of violations that cause acci-
dents and conditions and problems that hamper
traffic flow shall be identified and effective
control measures developed. Fulfillment of
traffice responsibilities and the adequacy of
District enforcement, accident investigation
and case preparation and prosecution duties
must be assessed properly. Enforcement must
be prioritized with primary emphasis upon
violations that present the greatest loss of
life and serious injury hazard followed by the
traffic flow and property damage aspects.

CLE000210

# GENERAL POLICE ORDER

No. 20-76  HEADQUARTERS April 23 19 76

SUBJECT: BUREAU OF TRAFFIC CONTROL -- OFFICE OF THE

TRAFFIC COMMISSIONER

(2)

(4) Analysis and planning for all special events and emergencies and the completion and distribution of the Unusual Activity Report.

(5) Responsibility for the function of the Traffic Complaint Unit and Accident Follow-up - Case Preparation Unit and the duty performance of the personnel assigned.

(6) In cooperation and conjuction with Area, District and Task Force Commanders, to take such immediate action as may be necessary to handle traffic situations of an urgent or emergency nature. Such action shall be the subject of comprehensive written reports to the Office of the Chief.

(7) Implementation of the Snow Parking Ban either directly or through the Operations Officer who shall have said responsibility between 5:00 PM and 9:00 AM and twenty-four hours a day on Saturdays, Sundays and Holidays when the Traffic Commissioner is off duty.

(8) Cooperation with the Division of Traffic Engineering and Parking.

CLE000211

## GENERAL POLICE ORDER

No. 20-76          HEADQUARTERS April 23 19 76

SUBJECT: BUREAU OF TRAFFIC CONTROL -- OFFICE OF THE TRAFFIC COMMISSIONER

(3)

(9) The Traffic Commissioner shall make and forward all reports and recommendations to the Chief of Police. He shall make monthly reports along with such other interim and special reports as may become necessary and required as the result of special, emergency, seasonal or any other unusual or extraordinary traffic control needs. He shall not be absent from duty or leave the City on a normal duty day without the express permission of the Chief of Police, or in his absence, the Deputy Chief or other designated Staff Officer.

The Traffic Complaint Unit shall receive traffic complaints and complete the Complaint Form 2098 and provide for distribution of copies. Traffic complaints of a nonemergency nature shall be accepted directly over Public Telephone Lines 621-1298 and 621-1299, 8:00 AM to 5:00 PM. The 2098 Form shall be completed and forwarded without delay to the District of occurrence. A copy must be forwarded to the Complaint Unit of the Bureau of Inspection. This procedure shall not be used for complaints or incidents that require immediate or early dispatch of police units. Communications Control Center personnel shall receive these latter complaints and dispatch police units to handle them as quickly as possible and as required.

The Accident Follow-up - Case Preparation Unit shall include the following duties and responsibilities:

## GENERAL POLICE ORDER

NO. 20-76      HEADQUARTERS April 23 19 76

SUBJECT: BUREAU OF TRAFFIC CONTROL -- OFFICE OF THE

TRAFFIC COMMISSIONER

(4)

(1) Processing of OH 4 traffic crash reports and other related reports.

(2) Assisting the District and other uniform personnel in the presentation of cases to the Prosecutor and the presentation in Court.

(3) Processing the DL-15 Form Reports.

(4) Follow-up investigations in all fatal and serious nonfatal cases and presentations of such cases to the Prosecutor for rulings and necessary affidavits.

(5) Follow-up accident cases involving the City of Cleveland property which are likely to involve the City of Cleveland in litigation.

(6) Processing of all hit-skip cases, and investigation where necessary and required and the presentation of such cases to the Prosecutor for rulings and in Court.

(7) The review of accident reports for adequacy and completeness of the investigation and information as recorded on the OH 4 and OH 5 reports.

By order of ,

LLOYD F. GAREY
CHIEF OF POLICE

CLE000213

## GENERAL POLICE ORDER

NO. 19-76                    HEADQUARTERS                    April 23        76
                                                                        19____

SUBJECT : DEPARTMENTAL REORGANIZATION

TO THE MEMBERS OF THE DEPARTMENT

The following reorganization of the Division of
Police shall become effective Saturday, April 24,
1976.

The Bureau of Traffic, as presently constituted, is
hereby abolished and replaced with the Bureau of
Traffic Control under the command of the Commissioner
of Traffic as authorized and appointed under
Ordinance Section 1.340201.

Within the Bureau of Traffic Control, there shall
be a Traffic Commissioner's Office, Traffic Complaint
Unit and Accident Follow-up and Case Preparation
Unit. The responsibilities and duties of the Bureau
of Traffic Control shall be delineated in a separate
order.

The Mounted Unit shall be placed within the Task
Force in the Bureau of Patrol.

The Auto Records Unit is hereby deleted from the
organizational structure of the Bureau of Criminal
Investigation. A Motor Vehicle Section is establis-
ed in the Division of Services, with subdivisions
of Vehicle Impound Unit and Tow Unit.

General Police Order 13-76 shall be amended, placing
the Handgun Registration Unit within the Division
of Services, Record File Section.

CLE000214

---

## GENERAL POLICE ORDER

NO. 19-76          HEADQUARTERS____April 23,____19 76

SUBJECT : ____DEPARTMENTAL REORGANIZATION_____

(2)

A Building Security Unit is hereby established
within the Division of Services, Detention Section,
to provide security in the Central Police Head-
quarters Building.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

CLE000215

## GENERAL POLICE ORDER

No. 18-76      HEADQUARTERS _____ April 21 ___, 19 76

SUBJECT: SUPPLEMENTARY TIME KEEPING PROCEDURES

(G.P.O. 61-75)

TO THE MEMBERS OF THE DEPARTMENT

In furtherance of G.P.O. 14-76, regarding short
hours RD timekeeping, the daily entries on the form
1030 shall reflect the number of hours not worked
followed by the symbol for time classification to
which it shall be debited.

Eg: -4S  -2  -4F  or -2H  (in red)

At the end of each month, Commanding Officers shall
forward to the Medical Unit a separate form 1030,
containing the time records of members affected.

The Medical Director will include the sick time
balance on the Surgical form 4 when the member is
placed on short hours RD.

When all time balances are depleted, the Commanding
Officer shall cause reports to be forwarded to the
Medical Bureau and the Chief's Office.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

## GENERAL POLICE ORDER

NO. 17-76                    HEADQUARTERS April 15         19 76

SUBJECT: CRIMINAL VEHICLE REGISTRATION FILE (CVRF)

REISSUE OF G.P.O. 12-69

TO THE MEMBERS OF THE DEPARTMENT

With the displaying of the new 1976 Ohio License
plates, it is desirous to re-establish the
Criminal Vehicle Registration File (CVRF).

Commanding Officers shall have members under their
command comply with G.P.O. 12-69 titled "Criminal
Vehicle Registration File (CVRF)".

Copies of G.P.O. 12-69 attached.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 12-69          HEADQUARTERS  March 28    69  19

SUBJECT: CRIMINAL VEHICLE REGISTRATION FILE

(3)

Booking Officers at the various Districts shall be responsible for submitting a Form 32-A on each prisoner booked for investigation in connection with a felony, when the necessary information is available. The submission of such Form 32-A shall be noted on the arrest card in the space provided for the suspect's auto.

Detective Division personnel investigating arrests of persons with CPD records shall be responsible for submitting Form 32-A cards whenever the necessary information can be obtained.

Supplies of Form 32-A shall be forwarded to Districts and Bureaus by the Mail Unit.

By order of,

PATRICK L. GERITY
CHIEF OF POLICE

CLE000218

## GENERAL POLICE ORDER

NO. __12-69__          HEADQUARTERS_____ March 28 __69__ 19__

SUBJECT : CRIMINAL VEHICLE REGISTRATION FILE - (CVRF)

(2)

Officers shall submit the data by the use of Form C of C 71-32A card. The information required on the 32-A is self-explanatory. The form shall be filled in as completely and accurately as possible and signed by the officer submitting the card.

Officers shall submit a Form 32-A every time an individual with a CPD record is observed in the possession of a vehicle, regardless of who owns the vehicle.. Whenever possible, the officer shall verify the data by checking the individual's identification and the vehicle's registration. Obviously, officers making such verification shall also determine if either the individual or the vehicle is wanted at the time.

At the completion of each tour of duty, all Form 32-A cards completed by the officer shall be placed in a sealed envelope, addressed to CVRF and deposited in the Traffic Citation collection box which is available to the officer. Personnel assigned to units not having such collection boxes shall deposit Form 32-A cards at the nearest box. (For example, the Detective Division will deposit at the 3rd District).

Officers shall make entry in their duty reports of each Form 32-A submitted.

## GENERAL POLICE ORDER

No. 12-69        HEADQUARTERS      March 28    19 69

SUBJECT: CRIMINAL VEHICLE REGISTRATION FILE - (CVRF)

TO THE MEMBERS OF THE DEPARTMENT

The Cleveland Police Department computer has now been programmed to establish a CRIMINAL VEHICLE REGISTRATION FILE (CVRF). The purpose of CVRF is to make available information on any and all vehicles owned or operated by known felons in the Cleveland area.

In the future, an officer making inquiry with the Computer Center (by phone or by radio) will be informed if the vehicle being checked is owned by or operated by an individual with a C.P.D. record. In addition, officers may check on an individual with a C.P.D. record if information is desired on vehicles owned or operated by the individual.

Typical responses received from CVRF may be as follows:

> Received by an officer who has requested a check on a license number:
>
> "Ohio Lic/AA 0000 - No stolen record - Operated by (or owned by) Richard Roe -CPD #000 000."
>
> Received by an officer who has requested a check for a suspects vehicle:
>
> "CPD #000 000 - Operates (or owns) 66 Ford Cv - Whi/Blu - Ohio Lic/AA 0000."

It shall be the responsibility of every officer to gather the information for CVRF.

## GENERAL POLICE ORDER

NO. 16-76          HEADQUARTERS April 14     76
                                          19

SUBJECT: AMENDMENT TO G.P.O. 16-75, COMMANDING AND

SUPERVISORY RESPONSIBILITIES AND DUTIES-
CONDUCT, DISCIPLINE AND PERFORMANCE

TO THE MEMBERS OF THE DEPARTMENT

A Superior Officer shall check zone cars into the
station at the completion of their tour of duty
and shall prepare and submit a structured report
indicating each car's arrival time.

District Captains and Sector Supervisors shall
make an entry in their daily duty reports indicating
that they have examined the daily zone car duty
reports as required by G.P.O. 16-75.

They shall include a brief summary of the results
of their analysis.


                              By order of,


                              LLOYD F. GAREY
                              CHIEF OF POLICE

CLE000221

## GENERAL POLICE ORDER

15-76                                              April 9         76

No._____              HEADQUARTERS_____19___

CURFEW ORDINANCE VIOLATIONS-ENFORCEMENT &

SUBJECT:_____
         PROSECUTION

(3)

Full enforcement shall require that juvenile complaints be filed upon all juveniles found violating the curfew.

Parents or guardians shall be issued a Minor Misdemeanor Citation as provided for in G.P.O. 63-75.

Commanding Officers shall designate a Superior Officer to keep records of all such citations issued and to verify that the waiver is paid or the recipient appears in court.

The designated Superior Officer shall expedite warrant and physical arrest procedures in all cases of non-appearance.

The policy of issuing warnings to the juveniles and their parents shall be discontinued since it obviously has not been an adequate deterrent.

Commanding Officers of line Bureaus, Districts and Units shall be responsible for compliance with the provisions of this order which shall be accomplished by the normal on street supervision of Superior Officers and by their examination of Duty Reports and the results that should be produced by this type of Police action.

By order of,

LLOYD F, GAREY
CHIEF OF POLICE

## GENERAL POLICE ORDER

NO. **15-76**  HEADQUARTERS **April 9** 19 **76**

SUBJECT: CURFEW ORDINANCE VIOLATIONS-ENFORCEMENT & PROSECUTION

(2)

UNLESS accompanied by a parent, guardian or some responsible person over the age of 21 years or a member of <u>his</u> family 18 years or older.

NOTE: If the child is out with a neighborhood friend, that friend must be over 21 years of age; however, if he is out with a member of his family then the age requirement is only 18 years or over.

B. It shall be unlawful for a parent or guardian of a minor to allow such child upon the streets or sidewalks unless accompanied as required.

Penalties under Section 13.2508:

1st Offense, fine of not less than $10.00 nor more than $25.00.

Subsequent Offenses-fine of not more than $50.00

Full enforcement of this ordinance must be undertaken as the most effective means of combating the problem of rising juvenile crime and delinquency rates. Besides curtailing the disorderly and criminal activities of groups of juveniles, to whom particular attention must be directed, juveniles will be better protected from adult offenses against them.

CLE000223

## GENERAL POLICE ORDER

No. 15-76                              HEADQUARTERS                      April 9          19 76

SUBJECT: CURFEW ORDINANCE VIOLATIONS-ENFORCEMENT & PROSECUTION

TO THE MEMBERS OF THE DEPARTMENT

All members are hereby directed to enforce the Curfew Ordinance Section 13.2507. Its provisions declare that both the minor and parent or guardian are liable for violations and subject to prosecution.

In brief these provisions are:

A. It shall be unlawful for any minor

    1) Of 12 years of age or under

        a) To be upon the streets or sidewalks or in a park or any other public place, during the period from darkness to dawn.

    2) Of 13 years of age to 16 years of age, inclusive

        a) To be upon the streets or sidewalks or in a park or any other public place between the hours of 11:00 P.M. to 5:00 A.M.

    3) Of 17 years of age

        a) To be upon the streets or sidewalks or in a park or any other public place between midnight and 5:00 A.M.

## GENERAL POLICE ORDER

NO. 14-76                     HEADQUARTERS          April 9          76 19

SUBJECT: SHORT HOUR RESTRICTED DUTY REGULATIONS

TO THE MEMBERS OF THE DEPARTMENT

Effective immediately there shall be no short hour restricted duty status (less than '8' hours per day), except under extraordinary medical circumstances; and, then, only under the following conditions as set forth by the Director of Public Safety:

The balance of time not worked on each such day shall be charged to the member's Sick Time, Overtime, Holidays or Furlough Days, in that order, until no balance of time exists. When this time is completely expended his salary shall be based on the number of hours he works each week.

While on such conditional short hour restricted duty status, no overtime (O.T.) may be accumulated.

While on said status, all Furlough time, including the 5th week, shall be taken and used during the year. There shall be no conversion to overtime.

All Holidays (H days) shall be taken on the holiday, or at some other time during the year, if the holiday coincides with a regular vacation day.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

CLE000225

**GENERAL POLICE ORDER**

13-76                                       April 7         76

NO.——————— HANDGUN REGISTRATION PROCEDURES ————19——
                    HEADQUARTERS

SUBJECT : ————————————— (2) ——————————————

4. The "Fee Receipt Book" shall be used when fee money is transferred to Central and to the City Treasury, and a signature obtained in it for each such transfer.

5. Upon approval the I.D. Card and registration Card shall be completed and with the application forms correspondingly and sequentially numbered.

6. The Cards shall be returned to the District Station for notification and photographing of the applicant. At this time the applicant shall be instructed to bring the handgun with him, unloaded and securely wrapped, to enable verification of serial number and other information by police personnel. Duplicate cards with photos shall be returned to the Central Headquarters Registration Unit and permanently filed.

7. Applications disapproved shall be processed by the Central Handgun Registration Unit personnel who shall notify such applicants, confiscate illegal firearms, and initiate other investigations that may be required.

Copies of the Ordinance shall be distributed to District Commanders who shall cause police personnel under his command to be instructed on all aspects of said ordinances necessary to fulfill their responsibilities and that of the Police Department.

Commanding Officers shall be responsible for full compliance by members of his command.

                    By order of: LLOYD F. GAREY
                              CHIEF OF POLICE

CLE000226

# GENERAL POLICE ORDER

NO. 13-76          HEADQUARTERS     April 7    19 76

SUBJECT: HANDGUN REGISTRATION PROCEDURES

TO THE MEMBERS OF THE DEPARTMENT

Effective Friday, April 9, 1976, a Handgun Registration Unit shall be established in the Bureau of Criminal Investigation with the responsibility of implementing City Ordinances Sections 11.2301 through 11.2313, maintaining all necessary records as required therein, and performing other related duties, including coordination of all registration activities of the separate Districts.

General procedures shall be as follows:

1. District Stations and the Central Headquarters Registration Unit will be equipped with the necessary photographic equipment and forms to register handguns.

2. The forms "Application for Handgun Owner's Identification Card" and "Application for Handgun Registration Card" shall be completed in duplicate, either printed in ink or typed, with the assistance of police personnel who shall require that they be signed legible, accurate and complete.

3. Assigned fees, $5.00 for each I.D. Card and $1.00 for each Registration Card, shall be collected, recorded on the application form and in a receipt book, and with the original forms forwarded to Central Headquarters daily, Monday through Friday. The copies shall be kept on file at the District Station. The applicant shall be informed that he will be notified by phone upon completion of application processing

CLE000227

## GENERAL POLICE ORDER

NO. __12-76__         HEADQUARTERS _____ March 22 ____ 76

SUBJECT: __ADOPTION OF THE PR-24 BATON__

TO THE MEMBERS OF THE DEPARTMENT

A new style baton, known as the PR-24 Baton, shall now be authorized as a substitute for the standard issue baton. Due to its different design, many new defensive and offensive techniques, not possible with the standard baton, can be learned with minimal training. This baton in the hands of an untrained officer could not be used to its full potential and would be both a hindrance and liability to him.

Therefore, no officer shall be permitted to carry the PR-24 baton before he has received certified training and this information is entered in his personnel jacket. Certified instructors are now available within the department and training will be conducted through the Police Academy.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

CLE000228

## GENERAL POLICE ORDER

No. 11-76     HEADQUARTERS March 19 76

SUBJECT: OHIO LAW ENFORCEMENT EMERGENCY RADIO NETWORK (LEERN)

USE OF "LEERN USE REPORT" FORM.

(2)

Copies of the Ohio LEERN handbook are distributed by
Radio Technicians upon installation of the radios
This brochure shall remain in the assigned vehicle
in order that members can familiarize themselves
with its contents.

Jack E. McCormick, Chairman of the Law Enforcement
Communications Committee, has requested that all
participating agencies submit a "LEERN Use Report"
Form after each situation requiring utilization of
the LEERN radio. These reports are needed to provide
a continuing evaluation of the system, in order to
justify the continuation, improvement and expansion
of the LEERN system.

Therefore, all personnel utilizing the LEERN System,
shall complete in duplicate a "LEERN Use Report"
form after each separate incident and forward them
to the Chief's Office for mailing. Frank and complete
imput on the use of the system is requested.

"LEERN Use Report" forms are now available at the
Police Supply Unit.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

CLE000229

# GENERAL POLICE ORDER

11-76                                        March 19          76
NO._____            HEADQUARTERS_____19___

SUBJECT : OHIO LAW ENFORCEMENT EMERGENCY RADIO NETWORK (LEERN)
_____

USE OF "LEERN USE REPORT" FORM.

TO THE MEMBERS OF THE DEPARTMENT

Police vehicles are now being equipped with new Ohio
Law Enforcement Emergency Radio Network (LEERN) radios
Currently, sixteen (16) vehicles are equipped, an
additional eight-three (83) will be equipped to
complete the program.

The LEERN System will provide emergency communications
betweed police departments or cars throughout the
State of Ohio on a common frequency. This system
shall only be used when regular channels of commun-
ications are not adequate to successfully complete
the operations. Some of these activities (but not
restricted to) which require immediate cooperation
of mobile units of more than one operating agency
are as follows:

        1. Civil Disorders.
        2. Riots.
        3. Disasters.
        4. Apprehension of suspects leaving
           the City.
        5. Transporting prisoners within
           the State.

The primary objective of LEERN is to provide an open
channel for emergency communications. Therefore,
members shall keep this channel free from all
unnecessary traffic. When broadcasting, all commun-
ications shall be in clear language, concise and to
the point. Identification shall be as follows:
LEERN, Cleveland Car#_____, then state message. When
signing off, the following message is required:
Cleveland Car #____, KU4924.

CLE000230

## GENERAL POLICE ORDER

No. **10-76**  HEADQUARTERS **March 15** 19**76**

SUBJECT: PROCEDURE ON DEATH OF AN ACTIVE POLICE OFFICER

TO THE MEMBERS OF THE DEPARTMENT

To lend a more personal touch and standardize the procedure for attendance at wakes and funerals, the following procedures will be implemented on the death of an active officer of the Cleveland Police Department, unless the widow or other surviving relative declines.

In every instance, whether the death occurs on duty or off duty, one member of the deceased's unit shall be assigned to attend the wake and funeral. He will be available to the family to identify those members of the department paying their last respects and provide appropriate assistance and advice concerning pension, insurance, and other benefits. The family may request a specific officer be assigned, regardless of unit.

In addition to the Funeral Detail provided by Rule 74, the following officers shall be detailed to attend the funeral in full uniform:

Officers Killed in the line of duty:

1. As many superior officers and patrolman of his unit as deemed feasible.

2. All inspectors and Deputy Inspectors.

3. The Mounted Unit and/or the Motorcycle Unit shall provide an escort.

4. A Military Funeral will be conducted by the personnel of the Funeral Detail.

## GENERAL POLICE ORDER

NO. 10-76          HEADQUARTERS  March 15    19 76

SUBJECT: PROCEDURE ON DEATH OF AN ACTIVE POLICE

OFFICER

(2)

Other deaths of officers:

| | |
|---|---|
| Patrolmen: | Three members of his unit (patrolmen) and two of the officer's immediate supervisors. |
| Sergeant: | Two members of his unit and two of the officer's immediate supervisors. |
| Lieutenant: | Two members of his unit and two of the officer's immediate supervisors. |
| Captain: | Two members of his unit plus his immediate supervisor and each of of the six District Commanding Officers. |
| Deputy Inspector: | All Deputy Inspectors and Inspectors |
| Inspector: | All Deputy Inspectors and Inspectors |

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

CLE000232

## GENERAL POLICE ORDER

NO. 9-76      HEADQUARTERS March 5 , 19 76

SUBJECT: USE OF NEW FORM #2098-COMPLAINT INFORMATION

TO THE MEMBERS OF THE DEPARTMENT

New Form #2098 has been printed and is available
for distribution at the supply room.

Commencing March 5, 1976, this Form shall be used
throughout the police department for recording and
processing general complaints directed to the
department which require action by a departmental
unit but do not require the immediate or early
dispatch of a unit.

It shall not be used for recording of complaints
against personnel which shall continue to be
handled by the use of Form #2096.

It shall not be used to handle complaints or
Incidents requiring immediate or early dispatch of
units, which shall continue to be handled by prompt
notification of the CCC.

It shall not eliminate the requirement under
previous orders of the prompt notification of the
Chief's Office or Bureau or District Commanders of
serious or hazardous situations requiring prompt
action.

Whenever an officer receives a complaint requiring
action by the department but not the immediate or
early dispatch of a unit, he shall fill out Form
#2098 in duplicate listing only the imformation
above the heavy black line and shall forward
through channels, the original to the District,
Bureau or Unit required to handle the complaint,

## GENERAL POLICE ORDER

No. 9-76     HEADQUARTERS     March 5,  19 76

SUBJECT: USE OF NEW FORM #2098-COMPLAINT INFORMATION

(2)

The copy to the Complaint Unit of the Bureau of Inspection.

The District, Bureau or Unit receiving the original copy, or if the complaint was originally received at the District, Bureau or Unit which will handle the complaint, shall fill out the remainder of the Form and shall make as many copies as deamed necessary.

In every case, a copy shall be forwarded to the Complaint Unit at the time it is received.

The space in the upper left hand corner shall list the District, Bureau or Unit which will handle the complaint. Complaints shall be numbered consecutively in the space in the upper right hand corner (File No.---) begining with No. 1 at the start of each year.

Normally, ten days shall be allowed for completion in the Answer Due____ column. However, this may be extended if circumstances require it.

Dates and times of visits shall be listed on the reverse side of the form along with the action taken with final disposition or result of the investigation. The Officer investigating the complaint shall sign it in the space provided. The Sector Lieutenant or Investigating Officer's immediate superior shall review the results and disposition of the investigation and if satisfied

CLE000234

## GENERAL POLICE ORDER

NO. 9-76     HEADQUARTERS March 5, 19 76

SUBJECT: USE OF NEW FORM #2098-COMPLAINT INFORMATION

(3)

that it has been properly handled shall sign the Form in the space provided.

Upon completion of the assignment, a copy of the Form listing the disposition and signed by the supervising officer shall be sent through channels to the Complaint Unit so that it may close its file on the complaint.

Copies of the complaint shall be kept at the District, Bureau or Unit handling same and the Complaint Unit for a period of six months, at which time they may be purged. However, serious or important complaints, or those that may recur, Form #2098's that may be used as evidence such as in vice padlock actions, and any Form 1"s or written reports made in connection with the complaints shall be retained in the files as long as needed.

The Complaint Unit shall daily provide to the Chief's Office a copy of serious or important complaints or such complaints as the Chief's Office has designated.

Any orders or parts of orders in conflict are hereby rescinded.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

CLE000235

## GENERAL POLICE ORDER

No. 8-76                    HEADQUARTERS__March 5          76

SUBJECT SUPPLEMENT TO G.P.O. 3-73 VEHICLE FUEL

ACCOUNTING SYSTEM

TO THE MEMBERS OF THE DEPARTMENT

When forwarding Form 1 reports requesting the
replacement of a lost or damaged gas card, the
mutilated or damaged gas card shall be  sent
along with the report through proper channels
to the Vehicle Section, Division of Administrative
Services.

By order of

LLOYD F. GAREY
CHIEF OF POLICE

CLE000236

---

## GENERAL POLICE ORDER

7-76                                    March 3            76

NO._____          HEADQUARTERS_____19___

USE OF REVISED IDENTIFICATION FORM C OF C

SUBJECT : 71-42

---

TO THE MEMBERS OF THE DEPARTMENT

Effective immediately, a new revised identification
Form, C of C 71-42, shall be placed into use. It
shall replace the currently used Form 42.

The revised Form 42 shall continue to be issued to
victims or witnesses whenever a suspect in a crime
had been seen clearly enough to be identified. The
issuing officer shall complete the form in duplicate
for each person directed to view photos. The original
shall be issued to the victim or witness and the
copy shall be turned over to the investigating
Detectives or forwarded to the General Duty Office
of the Bureau of Criminal Investigation (BCI) where
it shall remain as a file copy.

When photos are viewed at the S.I.U., the assigned
member reviewing the Form 42 shall enter on the
reverse side of the Form, the date and time  of
viewing, the names of the suspects picked with CPD
numbers, any comments on the surety of identification
and sign his name and rank. The Form shall then be
returned to the General Duty Office of the B.C.I..

Whenever suspects are mentioned or described in the
RC-1 Crime Reports, a statement such as "Form 42
issued", or "Form 42 not issued", shall be included
in the report.

These Forms are presently available at the Supply
Unit.

By order of,
LLOYD F. GAREY
CHIEF OF POLICE

## GENERAL POLICE ORDER

NO. 6-76          HEADQUARTERS   March 2          76

SUBJECT: PROCEDURE WHEN INVESTIGATING ACCIDENTS

INVOLVING EMERGENCY MEDICAL SERVICE (EMS) VEHICLES.

TO THE MEMBERS OF THE DEPARTMENT

Insurance coverage requirements on the Emergency Medical Service (EMS) make it mandatory that the City forward accident reports to the Insurance Company without delay.

To assist in the fulfillment of these requirements the following procedure shall be followed.

1.) All accident reports involving EMS vehicles shall be completed as soom as possible and forwarded to the Mail Center without delay.

2.) Photographs are to be taken at the scene, even if the accident appears to be minor. Photographs of both City and civilian vehicles are necessary. Measurements and statements shall be included as part of the accident investigation.

All reports are to be forwarded to the Mail Center and from there immediately to the Accident Investigation Unit. Copies of all reports shall then be forwarded, without delay, by the A.I.U. to the Law Department, City Hall.

Commanding Officers shall be responsible that all members under their command are apprised of this procedure.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

# GENERAL POLICE ORDER

No. 5-76        HEADQUARTERS February 13 19 76

SUBJECT: NEW BOOKING PROCEDURE

TO THE MEMBERS OF THE DEPARTMENT

In compliance with the Federal Court Ruling (Class Action Case #C 73-425) of January 12, 1976, the following changes to the in-house booking of arrested persons shall become effective immediately.

All Bureau of Patrol District Stations and the Bureau of Criminal Investigation shall book all original arrests and subsequent charges of prisoners in one "Booking Registry".

The use of the large white "Blotter" with its separate "Index" shall be discontinued.

The "Cleveland Police Booking Registry" shall be used for recording both arrests and charges. New books have been ordered for future use with the above name printed on the fromt cover. This book will have a self contained Alphabetical Index, (same as our Golden Rule Book). The "Golden Rule Book" (G.R. Book) is suitable for this purpose until the new books become available at the Supply Unit.

Proper information shall be entered under each structured column of this book.

The title of the crime for which a person is arrested shall be accurately described under the "Offense" column of the registry...ie...Robbery, Burglary, Rape, P.L., Shoplifting, etc. The use of the word "Investigation", or its abbreviation, under the "Offense" column SHALL NOT be used. The term "INVESTIGATION" does not properly describe the

## GENERAL POLICE ORDER

NO. 5-76        HEADQUARTERS February 13, 19 76

SUBJECT: NEW BOOKING PROCEDURE

(2)

offense for which the person was arrested.

The time, date, location, name of victim and/or complainant and a brief description of the crime shall be entered under the "Remarks" column.

One of the following three (3) entries shall be recorded under the "Released By" column:

1. The title of the crime or offense for which the arrested person is charged, followed by the time and date charged.

2. Straight Release, followed by the time and date released.

3. Sent to Detective Bureau, followed by the time and date sent.

The Warrant and Suspect Unit shall continue to use the traditional large white "Blotter" with its separate "Index" from which the Court Docket is made daily.

All orders and parts of orders in conflict are hereby rescinded.

By order of

LLOYD F. GAREY
CHIEF OF POLICE

CLE000240

# GENERAL POLICE ORDER

No. 3-76    HEADQUARTERS February 6 19 76

SUBJECT: EQUIPMENT INSPECTIONS - COMMANDING OFFICER

RESPONSIBILITIES

TO THE MEMBERS OF THE DEPARTMENT

Effective February 8, 1976, monthly inspection of equipment at the Ordnance Section shall be replaced by semi-annual inspections, in addition to which there shall be monthly inspection and cleaning of shotguns at the Outdoor Range on the occasion of each vehicle's attendance thereat for target practice. The Ordnance Section Shall cause schedules for the semi-annual inspections to be teletyped.

Medical equipment inspection shall continue to be made monthly on weekdays between 8:00 A.M. and 2:00 P.M. at the Medical Inspection Center in the basement at Central Station, according to a schedule to be teletyped each month.

Commanding Officers of Bureaus, Districts and Divisions shall include in their Monthly Activity Reports required under G.P.O. 16-75, a report on the fulfillment of these inspections responsibilities and those related to police vehicles and medical and ordnance equipment at district and bureau stations including the inspections called for in G.P.O. 41-75. They shall include a status report on the presence and condition of all such equipment.

In these monthly activity reports, all equipment must be reported as intact and in good working order as of the last day of each month, and it must be stated that all required inspections have been made throughout the month; or,

CLE000241

## GENERAL POLICE ORDER

NO. 3-76          HEADQUARTERS February 6    19 76

SUBJECT: EQUIPMENT INSPECTION - COMMANDING OFFICER

RESPONSIBILITIES.

(2)

if this is not the case and equipment is either missing or unserviceable, full details must be included together with a statement that the proper investigation is being conducted. In the latter case, of course, full reports must be forthcoming without delay.

G.P.O. 19-64 is hereby rescinded.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 4-76

HEADQUARTERS February 6 19 76

SUBJECT: PLACEMENT AND MAINTENANCE OF BARRICADES AND LANTERNS AT DANGEROUS CONDITIONS ON PUBLIC PROPERTY - PROCEDURES

TO THE MEMBERS OF THE DEPARTMENT

Whenever barricades and/or lanterns are needed to safeguard a dangerous condition on public property, the district C.C.C. dispatcher shall be notified.

The district C.C.C. dispatcher shall notify the nearest Service Department Yard of the dangerous condition and request the placement of barricades and/or lanterns. An updated list of telephone numbers of Service Department Yards providing barricades and lanterns on a 24 hour basis, is on file at the C.C.C.

When circumstances warrant, personnel shall remain on the scene until the arrival of a Service Department Crew.

Commanding Officers of Districts, shall cause a record to be maintained, of locations where barricades and lanterns are placed, until the barricades and lanterns are removed. This record shall be updated daily from information supplied by field personnel.

Bureau of Patrol personnel shall make periodic checks of these locations, within their respective areas of patrol, to insure the barricades are in place, and lanterns lighted during hours of darkness. Entries of such inspections shall be inserted in their daily duty reports.

General Police Order 46-56 and Notice dated 4-22-59, are hereby rescinded.

By order of
LLOYD F. GAREY

CLE000243

## GENERAL POLICE ORDER

NO. 2-76          HEADQUARTERS, January 15, 1976

SUBJECT: REVISED AND SUPPLEMENTARY RADIO CALL

NUMBERS(AMENDMENT TO G.P.O. 13-71 and 8-73)

TO THE MEMBERS OF THE DEPARTMENT

A revised list of radio call numbers, principally
effecting the Bureau of Inspection and Administrative
Services and Task Force has been prepared and shall
be distributed to the various units requiring them.

All other call numbers shall remain unchanged.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

CLE000244

## THE CALENDAR

The following measures will be on their passage at next meeting:

### ORDINANCES

Ord. No. 1695-65.

By Messrs. Katalinas, Pilch, Sinkiewicz, Gaines, Leo Jackson and M. Morris Jackson.

An emergency ordinance to supplement The Codified Ordinances of the City of Cleveland by enacting new Chapter 54, Sections 3.5401 to 3.5415, inclusive, thereof relating to littering on public and private property and penalties therefor.

Whereas, this ordinance constitutes an emergency measure providing for the immediate preservation of the public property and health by reason of the emergency which exists in the City of Cleveland in that public and private property is being littered with paper, trash, dirt and other debris and in order to eliminate this problem which depreciates property values and creates a health hazard to all citizens, provisions must be made to facilitate enforcement; now, therefore,

Be it ordained by the Council of the City of Cleveland:

Section 1. That The Codified Ordinances of the City of Cleveland be and they are hereby supplemented by enacting new Chapter 54, Sections 3.5401 to 3.5415, inclusive, to read as follows:

### CHAPTER 54
### Anti Litter Ordinance

Section 3.5401. Definitions.

For the purpose of this Chapter the following terms, phrases, words, and their derivations shall have the meaning given herein. When not inconsistent with the context, words used in the present tense include the future, words used in the plural number include the singular number, and words used in the singular number include the plural number. The word "Shall" is always mandatory and not merely directory:

(1) "Commercial Handbill" is any printed or written matter, any sample or devise, dodger, circular, leaflet, pamphlet, paper, booklet, or any other printed or otherwise reproduced original or copies of any matter of literature:

(a) Which advertises for sale any merchandise, product, commodity, or thing; or

(b) Which directs attention to any business or mercantile or commercial establishment, or other activity, for the purpose of either directly or indirectly promoting the interest thereof by sales; or

(c) Which directs attention to or advertises any meeting, theatrical performance, exhibition, or event of any kind, for which an admission fee is charged for the purpose of private gain or profit.

(2) "Garbage" is putrescible animal and vegetable wastes resulting from the handling, preparation, cooking and consumption of food.

(3) "Litter" is "garbage", "refuse", and "rubbish" as defined herein and all other waste material which, if thrown or deposited as herein prohibited, tends to create a danger to public health, safety and welfare.

(4) "Non-commercial Handbill" is any printed or written matter, any sample, or device, dodger, circular, leaflet, pamphlet, newspaper, magazine, paper, booklet, or any other printed or otherwise reproduced original or copies of any matter of literature not included in the aforesaid definitions of a commercial handbill.

(5) "Park" is a park, reservation, playground, beach, recreation center or any other public area in the City, owned or used by the City and devoted to active or passive recreation.

"(6) "Public property" or "public place" is all property owned, operated or controlled by any governmental agency, including but not limited to streets, sidewalks, tree-lawns, parks, playgrounds, parking lots, schools, libraries, post office, municipal transit facilities and other public lands and buildings."

(7) "Private property" or "private place" is all property not included in the aforesaid definition of "public property" including, but not limited to vacant land or to any land, building or other structure designed or used for residential, commercial, business, industrial, institutional or religious purposes; together with any yard, grounds, walk, driveway, fence, porch, steps, vestibule, mailbox and other structure appurtenant thereto."

(8) "Refuse" is all putrescible and nonputrescible solid wastes (except body wastes), including garbage, rubbish, ashes, street cleanings, dead animals, abandoned automobiles, and solid market and industrial wastes.

(9) "Rubbish" is nonputrescible solid wastes consisting of both combustible and non-combustible wastes, such as paper, wrappings, dirt, cigarettes, cardboard, tin cans, yard clippings, leaves, wood, glass bedding, crockery and similar materials.

(10) "Vehicle" is every devise in, upon, or by which any person or property is or may be transported or drawn upon a highway.

### Section 3.5402. Litter on Public Property.

No person shall throw or deposit litter in or upon any streets, sidewalk or other public place within the City except in public receptacles or in authorized receptacles for collection.

### Section 3.5403. Placement of Litter in Receptacles so as to Prevent Scattering.

Persons placing litter in public receptacles or in private receptacles shall do so in such a manner as to prevent it from being carried or deposited by the elements upon any street, sidewalk, or other public

"Section 3.540301. Upsetting Public or Private Receptacles.

No person shall upset a public or private receptacle designed or used for the deposit of litter or cause or permit its contents to be deposited or strewn in or upon public or private property."

CLE000245

**Section 3.5404. Sweeping Litter into Gutters Prohibited.**

No person shall throw, deposit or sweep into any gutter, sidewalk, street or other public place within the City the accumulation of litter from any building or lot or from any public or private sidewalk or driveway. Persons owning or in control of occupying property shall keep the sidewalk in front of their premises free of litter.

**Section 3.5405. Litter Thrown by Persons in Vehicles.**

No person, while a driver or passenger in a vehicle, shall throw or deposit litter upon any street or other public place within the City, or upon private property.

**Section 3.5406. Truck Loads Causing Litter.**

No person shall drive or move any truck or other vehicle within the City unless such vehicle is so loaded as to prevent any load, contents or litter from being blown or deposited upon any street, alley or other public place.

**Section 3.5407. Litter in Parks.**

No person shall throw or deposit litter in any park within the City except in public receptacles and in such a manner that the litter will be prevented from being carried or deposited by the elements upon any part of that park or upon any street or other public or private property. Where public receptacles are not provided, all such litter shall be carried away from the park by the person responsible for its presence and properly disposed of elsewhere.

**Section 3.5408. Litter in Lakes and Fountains.**

No person shall throw or deposit litter in any fountain, pond, or any other body of water or natural watercourse in a park or elsewhere within the City.

**Section 3.5409. Throwing or Distributing Handbills in Public Places.**

No person shall throw or deposit any commercial or non-commercial handbill in or upon any sidewalk, street or other public place within the City. Nor shall any person hand out or distribute or sell any commercial handbill in any public place. Provided, however, that it shall not be unlawful on any sidewalk, street, or other public place unless specifically prohibited by the controlling governmental agency for any person to hand out or distribute, without charge to the receiver thereof, any non-commercial handbill to any person willing to accept it, and provided further that the person making said distribution shall not hamper nor interfere with pedestrian or vehicular traffic.

**Section 3.5410. Placing Commercial and Non-Commercial Handbills on Vehicles.**

No person shall throw or deposit any commercial or non-commercial handbill in or upon any vehicle. Provided, however, that it shall not be unlawful in any public place unless specifically prohibited by the controlling governmental agency for a person to hand out or distribute without charge to the receiver thereof, a non-commercial handbill to any occupant of a vehicle who is willing to accept it.

**Section 3.5411. Litter on Occupied Private Property.**

No person shall throw or deposit any litter on any occupied private property except in properly maintained receptacles. The owner or person in control of private property must provide sufficient private receptacles for collection of litter. No person shall deposit litter in said receptacles in such a manner that it will be carried or deposited by the elements upon private property or any sidewalk, street or other public place.

**Section 3.5412. Owner to Maintain Premises Free of Litter.**

The owner, occupant, or person in control of any private property shall at all times maintain the premises free of litter except that which is contained in receptacles for collection.

**Section 3.5413. Litter on Vacant Lands.**

No person shall throw or deposit litter on any open or vacant private property within the City whether owned by such person or not.

**Section 3.5414. Penalty.**

Whoever violates any of the provisions of this Chapter shall be guilty of a misdemeanor and upon conviction thereof shall be fined not less than ten dollars ($10.00) nor more than fifty dollars ($50.00).

**Section 3.5415. Waiver.**

Notwithstanding the penalty provisions of Section 3.5414, any person who has violated any of the provisions of this Chapter, upon executing before and filing with the Clerk of the Municipal Court, Criminal Branch, an instrument waiving the formal issuance of an affidavit and warrant, together with the reading of such affidavit and the right to be present personally at the trial of such action, and further waiving the right to appeal and error and authorizing a plea of guilty to be entered and the defendant submitted

to the mercy of the Court, and upon depositing within forty-eight (48) hours after citation, with said Clerk, the sum of two dollars and fifty cents ($2.50) and the costs of Court or depositing within seventy-two (72) hours after citation, with said Clerk, the sum of four dollars and fifty cents ($4.60), and the costs of Court, may be fined said respective amounts by the Court; provided, however, that for the first 14 days after the effective date of this ordinance a warning notice shall be issued to any person violating any provisions of this ordinance and no cost shall be assessed and for the next thirty days subsequent thereto the sum to be deposited shall be a total of $1.00.

**Section 2.** That this ordinance is hereby declared to be an emergency measure and, provided it receives the affirmative vote of two-thirds of all the members elected to Council, it shall take effect and be in force immediately upon its passage and approval by the Mayor; otherwise it shall take effect and be in force from and after the earliest period allowed by law.

CLE000246

## GENERAL POLICE ORDER

NO. 1-76          HEADQUARTERS          January 2          19 76

SUBJECT: CODIFIED ORDINANCES SECTIONS 19.9108

"SOLICITING", 19.9109 "PROSTITUTION".

TO THE MEMBERS OF THE DEPARTMENT

Effective October 15, 1975, Municipal Codified
Ordinance Sections 19.9108" Soliciting" and
19.9109 "Prostitution" have been amended, and now
stipulate, 1) a mandatory three day's imprisonment
and 2) the elements of "Soliciting", forbids the
solicitation of paid sexual activity, whether the
solicitor is the one buying or selling his or her
favors, and reads:

19.9108 Soliciting
    A) No person shall solicit another to
       engage with such other person in sexual
       activity for hire. This section forbids
       the solicitation of paid sexual activity,
       whether the solicitor is the one buying
       or selling his or her favors.
    B) Whoever violates this section is guilty
       of soliciting, a misdemeanor of the
       third degree. At least three days
       imprisonment is mandatory under this
       section, notwithstanding any other
       ordinance of this chapter.

19.9109 Prostitution
    A) No person shall engage in sexual
       activity for hire.
    B) Whoever violates this section is guilty
       of prostitution, a misdemeanor of the
       third degree. At least three days
       imprisonment is mandatory under this

CLE000247

## GENERAL POLICE ORDER

NO. 1-76                    HEADQUARTERS January 2          19 76

SUBJECT: CODIFIED ORDINANCES SECTIONS 19.9108

"SOLICITING", 19.9109 "PROSTITUTION".

(2)

section, notwithstanding any other
ordinance of this chapter.

Therefore, when personnel have cause to enforce
Section 19.9108, "Soliciting", and sufficient
evidence is disclosed for a chargeable offense,
the Prosecutor is to be consulted to determine the
feasibility of charging both participants.

Commanding Officers shall cause implementation and
full compliance with the provisions of these
ordinances.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

# GENERAL POLICE ORDER

NO. 63-75          HEADQUARTERS  December 18, 1975

SUBJECT: ADOPTION OF THE NEW PARKING AND MINOR

MISDEMEANOR TICKET

TO THE MEMBERS OF THE DEPARTMENT

Effective 12:01 A.M., Friday, December 19, 1975 use of the present "Parking Violation" ticket shall be discontinued and a revised "Notice"/"Citation" ticket adopted in its place. New ticket books shall be distributed by the Supply Unit and the old ticket books collected and returned there for final accounting.

A permanent record of books received and issued shall be maintained by the Supply Unit and by the receiving Units. Commanding Officers shall be responsible for proper distribution and record keeping at the Unit level.

Detailed instructions for completion of the new tickets have been separately printed for individual distribution. These shall be considered and integral part of this order.

General Police Orders 22-72, 12-71, 39-68 and 24-67 are hereby rescinded.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

CLE000249

# GENERAL POLICE ORDER

NO. 62-75          HEADQUARTERS          December 5          75
                                                              19

SUBJECT: NEW BEAT PATROL DUTY REPORT

TO THE MEMBERS OF THE DEPARTMENT

To supplement the needs of the department, a new "Beat Duty Report", Form C of C 71-3 has been prepared, primarily for utilization by the Task Force Motorized Foot Patrol Unit. However, the form may be implemented by any unit utilizing scooter patrols. Supplies are now available at the supply unit.

The format of the form C of C 71-3, closely resembles that of the Form C of C 71-ZC-1 Rev. (Zone Car Dury Report) and entries shall be inserted accordingly. Statistical entries required at the bottom of the report shall be completely and accurately filled. When a required entry fails to apply to a particular unit or a zero entry would be made, a dash (-) shall be inserted in the space provided for such entry.

By order of,

LLOYD F. GAREY
CHEIF OF POLICE

CLE000250

# GENERAL POLICE ORDER

NO. __61-75__          HEADQUARTERS _____ December 1, __ 19 __75__

SUBJECT : __REVISED TIME KEEPING PROCEDURES__

TO THE MEMBERS OF THE DEPARTMENT

Effective December 1, 1975, a revised time keeping procedure shall be placed in effect. The full context of this procedural order shall be issued to each member. Commanding Officers shall cause distribution to all members and obtain necessary payroll sheet receipts.

General Police Orders 14-66, 39-71, 42-71, 5-72, 17-72, 15-74 and 47-75 are hereby rescinded.

By order of

LLOYD F. GAREY
CHIEF OF POLICE

CLE000251

## GENERAL POLICE ORDER

NO. 60-75                    HEADQUARTERS November 25 75 19

SUBJECT: DETOXIFICATION CENTER - PLACEMENT OF ALCOHOLICS

TO THE MEMBERS OF THE DEPARTMENT

Section 2935.33 (C) of the Ohio Revised Code gives a police officer the authority to place in a detoxification center, a person who is an alcoholic or is suffering from acute alcohol intoxication with that persons consent.

The Salvation Army has established such a Detoxification Center at their Harbor Light complex located at 1710 Prospect Avenue (6th floor), phone number 621-3388. This Detoxification facility has received accreditation from the Cleveland Hospital Board and has a service agreement with Metropolitan General Hospital.

This program is designed to divert chronic alcoholics suffering from intoxication to treatment facilities in lieu of arrest.

Procedures for placing such persons in a Detoxification Center have been printed for individual distribution throughout the department and shall constitute the substance of this order.

In addition to being an integral part of this order, the applicable portions of Section E-4 shall be considered as an amendment to G.P.O. 29-75.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

CLE000252

*Sgt. Brearey*

GPO    60-75                                    November 25, 1975
SUBJECT: DETOXIFICATION CENTER - PLACEMENT OF ALCOHOLICS

A. Section 2935.33 (C) of the Ohio Revised Code gives a Police
   Officer the authority to place in a Detoxification Center a
   person who is an alcoholic or is suffering from acute alcohol
   intoxication, with that person's consent.

B. The Salvation Army has established such a Detoxification Center
   at their Harbor Light complex located on the 6th floor, 1710
   Prospect Avenue, phone 621-3388.  This detoxification facility
   has received accreditation from the Cleveland Hospital Board
   and has a service agreement with Metropolitan General Hospital.

C. This program is designed to divert chronic alcoholics suffering
   from intoxication to treatment facilities in lieu of arrest.

D. PROCEDURES:

   Police Officers may take any male or female over 18 years of age
   to the detoxification and treatment facility instead of effecting
   an arrest.  The following conditions shall be required:

   1. There must be a bed available at the detoxification facility.
      The Officer should contact the Communications Control Center
      by radio or the Detoxification Center by telephone to determine
      whether space is available.

   2. The Police Officer shall have reason to believe that an indivi-
      dual is an alcoholic and is suffering from acute alcohol intoxi-
      cation.

   3. The individual shall have committed no offense other than
      drunkenness.

   4. The individual is not violent or abusive at the time of contact.

   5. The individual consents to entering the detoxification facility.

   An adequate frisk shall be made for dangerous or deadly weapons
   before placing the individual into the police vehicle.

   This is an essential precaution and, unless incident to arrest or
   connected with a criminal situation as prescribed by the United
   States Supreme Court, consent must first be obtained.

E. DETERMINING ELIGIBILITY:

   1. A limited number of beds requires that each Police Officer use
      careful judgement in determining who is eligible for detoxifi-
      cation services.  The services should be reserved for acutely
      intoxicated individuals and not for the "occasional" drunk.  The
      following criteria should be considered in determining the extent
      of intoxication and eligibility for detoxification services.

CLE000253

Page Two

    (a) Breath odor of alcohol; an unsteadiness or staggering gait; slurred speech; nervous tremors; easily provoked; watery, red eyes; disheveled clothing; evidence of bladder or bowel incontinence; vomiting; not mentally alert

    (b) Past arrests for drunkenness and offenses related to drunkenness.

2. Prior to asking an individual if he would accept treatment, the Officer should obtain a want check via radio. If subject is not wanted, then the Officer should check with the Communications Control Center by radio or telephone 621-3388 to ascertain whether a bed is available at the Detoxification Center. The Center will keep the CCC informed relative to the availability of beds.

3. After deciding that an individual is acutely intoxicated, and providing he is not violent or abusive, he should be informed that he can obtain medical service, proper care, hot food and a bed. Then he should be asked whether he wishes to avail himself of these facilities, and informed that, even if he decides to accept, he will still be free to leave the Center, later, without fear of arrest.

4. If the individual refuses treatment, the Officer must decide whether or not to arrest. If the decision is made to arrest, normal arrest procedures shall be followed, except that under "remarks" on the arrest card, the Officer must give one of the following reasons for the arrest:

    (a) No bed is available.
    (b) Offender refused to go to the Center.
    (c) Offender was violent or abusive.
    (d) Added charges.
    (e) Offender was not acutely intoxicated.

This information will be used to evaluate the need for additional beds at the Center after the initial period of operation.

No Officer will use the threat of arrest to induce or coerce individuals to accept treatment. The possibility of arrest will not be mentioned until after the individual has refused treatment.

5. If the intoxicated individual is unconscious and cannot be revived, or if he appears to be seriously injured (broken leg, profuse bleeding, etc.) and has the medical symptoms of severe alcohol intoxication, e.g.: incoherence, hallucinations, excessive tremors, or difficulty in breathing, the Officer will not take him to the Detoxification Center but will immediately have him transported to the closest hospital emergency room. The individual need not be placed under arrest.

CLE000254

Page Three

## F. THE DETOXIFICATION FACILITY

1. If the decision is made to transport an individual to the detoxification facility, he will convey same to the rear entrance of the Detoxification Center which is located on Caton Court off East 18th Street and is equipped with a buzzer to summon Detoxification Center personnel. An aide will open the door and provide a wheel chair for the individual, if needed. The Officers shall accompany the aide and the patient to the 6th floor Admission's Office.

   NOTE: If the gate to Caton Court is locked, use the next gate south on East 18th Street. It is equipped with a buzzer and monitored by closed circuit television. The gate will be opened by Salvation Army aides monitoring television.

2. The Police Officer will provide the Center's admission personnel with the information necessary to complete the Officer's section of the patient's admitting form. Information shall include the date, time and place of contact, name and home address of patient, if known, and an appropriate description of the patient's appearance at the time of contact. Also describe any injuries and the manner received, if known. The Officer shall thoroughly search the patient for personal property and shall complete a property report, jointly with the Center's staff.

3. After signing the admitting form, the Officer may leave the patient in the custody of the Detoxification Center's staff. The arresting Officer will be given a copy of this report for filing at the District.

4. The Daily Duty Report entry shall consist of "Referral" to the Detoxification Center" along with the individual's name.

5. Exceptions are Juvenile Offenders.

   Juveniles found to be acutely intoxicated shall be handled according to present procedures.

By order of,

*Lloyd F. Garey*

LLOYD F. GAREY
CHIEF OF POLICE

ks

## GENERAL POLICE ORDER

No. 59-75        HEADQUARTERS        October 31        75
                                                        19

SUBJECT : THE NEW OHIO UNIFORM TRAFFIC TICKET

(MOVING TRAFFIC CITATION) -- PROCEDURES & INSTRUCTIONS

TO THE MEMBERS OF THE DEPARTMENT:

Effective October 31, 1975, a new Uniform Traffic Ticket shall be adopted and placed into service within the Cleveland Police Department. Detailed regulations, procedures and instructions, comprising the total substance of this order, have been separately prepared for individual distribution. Commanding Officers shall be responsible for said distribution and shall obtain proper signature receipts.

Old "Notice to Appear" tickets shall be collected by all Units and returned through the Data Processing Unit for final accounting, and then forwarded to the Supply Unit.

Old ticket returns shall be accompanied by reports from the Units providing information on the ticket supplies received and quantity used, those unaccounted for, if any, and quantity returned.

Books of new tickets shall be distributed by the Supply Unit. Commanding Officers shall be responsible for proper distribution and record keeping at the Unit level.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

CLE000256

SERGT. BREARS'Y

GPO # 59-75                                    October 31, 1975

SUBJECT:  THE NEW OHIO UNIFORM TRAFFIC TICKET (MOVING TRAFFIC CITATION)

1.      The Supreme Court of Ohio has amended its "Rules of Practice
and Procedure in Traffic Cases for all Courts Inferior to Common
Pleas".  The amended rules are styled as the "Ohio Traffic Rules"
and are effective immediately.  In conformance with the new pro-
cedure an amended "Ohio Uniform Traffic Ticket" has been adopted.

2.      The new "Ohio Uniform Traffic Ticket" is a four (4) part form
composed of no carbon required (NCR) paper.  The form shall be
distributed thusly:
        (a) The first sheet (White) shall be the Court Record.
        (b) The second sheet (Yellow) shall be the Abstract of Court
            Record for the Bureau of Motor Vehicles.
        (c) The third sheet (Green) shall be the Enforcement Agency
            Record.
        (d) The fourth sheet (Pink) shall be the Defendant's Copy.

3.      Instructions for completing the new Ohio Uniform Traffic
Ticket have been separately printed for individual distribution,
these shall be considered an integral part of this order.

4.      The new "Ohio Uniform Traffic Ticket" shall be completed for
both adult and juvenile traffic violators.  Additionally, in
juvenile cases a "Juvenile Traffic Offense Citation" shall be
completed in duplicate.  The original and copy shall be attached
to the traffic ticket without folding, and forwarded via the
"locked box", to the Data Processing Unit.

5.      It should be noted, the former procedure requiring a Superior
Officer, acting in his capacity as a Deputy Clerk of Courts, sign
the affidavit portion of the ticket has been eliminated from the
new form.  The Ohio Supreme Court has ruled that the issuing
officer's signature alone, on the traffic ticket, qualifies the
ticket as a affidavit.  No further action is necessary.  (See
exception - paragraph 14).  This procedure also applies to the
Juvenile Traffic Offense Citation.

6.      The Storeroom Unit shall be responsible for stocking and
issuing traffic ticket books.  Each Unit obliged to perform any
type of traffic enforcement shall obtain a supply of traffic
ticket books from the Storeroom.  A permanent record of these
transactions shall be maintained by the Storeroom and by the Unit
receiving traffic ticket books.

7.      The Form #302-255 Inter-Office Envelopes shall continue to be
used for mailing the tickets to the Data Processing Unit via the
locked box located at the following Headquarters:  Each of the six
(6) Police Districts, Accident Investigation, Motorcycle Unit,
Hopkins Airport, Tactical Unit and Troop A.

CLE000257

Page 2.

8.      Each officer shall be responsible for all traffic ticket books issued to him. Upon receiving a traffic ticket book, the receiving officer shall immediately complete the "Book Receipt" and forward it via the locked box to Data Processing.

9.      Each morning, prior to 9:30 A.M., with exception of Sunday and Holidays, the locked boxes shall be forwarded to the Data Processing Unit. This procedure must be followed in order that the Data Processing Unit has sufficient time to publish the daily docket. The Data Processing Unit shall receipt for the contents of the locked box in a book presented for that purpose. In Juvenile Citation cases the Data Processing Unit shall retain the copies needed for that Unit and shall forward to Juvenile Court the Court Record (White Sheet) and the Abstract of the Court Record (Yellow Sheet) of the Uniform Traffic Ticket, together with the original and copy of the Juvenile Traffic Offense Citation.

10.     The Data Processing Unit shall establish a system of accountability of "tickets" received, in order that proper controls are maintained. When the last "ticket" of a book is issued, it shall be forwarded together with the "Officers Ledger of Violations", to the Data Processing Unit. Prior to forwarding, the "ledger" must be signed by a Superior Officer beneath line #20, indicating an accounting has been made of all 20 tickets. In the event a "Ticket" must be voided, for any reason, a Form #1 of explanation must be made without delay and forwarded accompanying the voided ticket to the Data Processing Unit. Additionally, a Superior Officer shall affix his signature on the Officers Ledger on the line of the voided ticket. Reason for voiding shall be restricted to torn and mutilated tickets and those which for other critical reasons are not presentable to the Court. Thus Lost, Missing, or Voided tickets may result in both official court action as well as Departmental charges being preferred.

11.     When an offender has been cited, he is to receive the Defendant's copy (Pink) of the ticket. The remaining three (3) copies shall be retained as a unit and presented to a Superior Officer for examination and approval. The Superior Officer shall initial the bottom of the ticket indicating that he has examined the ticket and it has been properly completed.

12.     If a traffic ticket has been issued and found to be in error by the Superior Officer as to the violation cited, improper court appearance date, etc., it shall be incumbent upon the issuing officer to rectify such error and also contact the offender to advise him of the change.

13.     When a traffic violator is arrested and physically booked, a traffic ticket shall be completed and signed by the arresting officer. The violator's copy shall be served on the Defendant and the Court Record original and the Abstract Court Record copy shall be attached to the booking slip and forwarded to the Court. The Enforcement Agency copy shall be forwarded to the Data Processing Unit via the "locked box". Additionally, the

CLE000258

Page 3.

(Cont. 13)

notation, "Booked at ____ District", shall be written across the top of the ticket, above all other printing or writing.

14. When the Prosecutor must be consulted, as in the cases of arrests for Driving While Intoxicated, Reckless Driving, Vehicle Homicide, Drag Racing, etc., the notation "Case to Prosecutor--- For Record Purposes Only", shall be written along the side of the Traffic Ticket. Compliance with this procedure is necessary, since the Traffic Ticket is used to inform the Ohio Bureau of Motor Vehicles of the traffic arrest and further to preclude the possibility of a dual affidavit being issued by the Court.

15. Whenever a ticket is issued to a violator for operating a Motor Vehicle without a operator's license, the listed owner's name, if not the same, shall be placed in the "Description of Offense" section and if other suitable identification i.e., credit cards, etc., cannot be produced by the violator, he shall be held for bail.

16. All adult traffic violators, excluding those persons booked, shall be scheduled for court appearance fourteen (14) calendar days from the date of issuance, except Sunday, when the violator shall be scheduled for the fifteenth (15) calendar day after the issuance. All Traffic court cases are to be scheduled for 9:00 A.M. in Court Room #1 before the Traffic Court Referee.

17. There will be NO COURT on the following days: Sunday, New Years Day, Memorial Day, Independence Day, Labor Day, Thanksgiving and Christmas. Therefore, Traffic tickets, which would have normally been scheduled for any of the aforementioned days, shall be scheduled for the following court date.

The following General Police Orders and Training Bullentins are Rescinded:

GPO 1-75, 30-71, 26-71, 12-71, 9-69, 8-69, 5-69, 37-68, 24-67, 27-66, 9-60, 33-50 and portions of GPO 39-68 pertaining to "Notice of Appear" (Moving Traffic Citation).

Training Bulletin #9.01

By order of,

*Lloyd F. Garey*

LLOYD F. GAREY
CHIEF OF POLICE

CLE000260

GPO   59-75                              October 31, 1975
INSTRUCTIONS FOR COMPLETING THE NEW OHIO UNIFORM TRAFFIC TICKET


With a view toward insuring uniformity, and to provide legible and
comprehensive information for the Court and other agencies, it is
necessary that all personnel who are involved in the issuance of a
Ohio Uniform Traffic Ticket follow the instructions contained herein.

The new Ohio Uniform Traffic Ticket shall be completed for both adult
and juvenile traffic violators.  Additionally, in juvenile cases a
Juvenile Traffic Offense Citation shall be completed in duplicate.

The new Ohio Uniform Traffic Ticket shall be completed by the issuing
officer in the following manner:

1.   The Uniform Traffic Ticket is printed on NCR (no carbon requir-
     ed) paper.

2.   All entries shall be printed, except for signatures of issuing
     officers, using a ball point pen with either black or blue
     black ink.

3.   Where a "check mark" is required in a block to specify a defi-
     nite entry an "X" shall be used.

4.   Municipal Court - Juvenile Court - Check the appropriate block,
     the Court in which the violator is to appear.

5.   NAME - Insert name as given on the drivers license.  In cases
     where the operator does not have a drivers license, then the
     listed owners name shall be written in the space allotted in
     #_____ "Description of Offense".

6.   STREET - (a) Insert the address of the violator, as shown on his
     drivers license.

7.   CITY - STATE - Insert the name of the City and State as well as
     the ZIP CODE of the violator.

8.   LICENSE NUMBER - Insert the drivers license number of the
     violator.

9.   LICENSE ISSUED - MONTH & YEAR - Insert the month and year of
     issuance of the violator's license.

10.  EXPIRES BIRTHDATE 19__ STATE_____ - Complete year of expira-
     tion and insert State of issuance.

11.  SOCIAL SECURITY NO. - Insert Social Security number.

12.  BIRTHDATE, MO. - DAY - YEAR - Abbreviate using at least first
     three letters of the month.  Insert day and year.

13.  SEX - Insert "M" for male and "F" for female.

14.  HEIGHT - Insert in feet and inches.

CLE000261

Page 2.

15.  WEIGHT - Insert as shown on drivers license or if obvious difference, present weight.

16.  HAIR - Insert color as shown on drivers license or from observation.

17.  EYES - Insert color as shown on drivers license or from observation.

18.  LICENSE TYPE - OPERATOR - CHAUFFEUR - PROBATIONARY - TEMPORARY PERMIT - Check the appropriate block.

19.  LICENSE RESTRICTION - Insert yes or no as shown on drivers license.

20.  CORR. LENS - HAND CONT. - POW STEER. - AUTO. DRIVE - DAYLITE ONLY - Check appropriate block.

21.  In the section "To Defendant, Complaint", the blank spaces shall be filled out as follows:

    a.  ON - Insert day of the week, abbreviate using first 3 letters.

    b.  THE - Insert date of violation.

    c.  DAY OF - Insert month or abbreviation therefor.

    d.  19___ - Complete year.

    e.  AT - Insert time of violation, A.M. or P.M..

    f.  YOU UNLAWFULLY OPERATED - Check the appropriate block as to the type of vehicle - Passenger - Commercial - Bus - Cycle.

    g.  YR. - Insert year of make of the vehicle.

    h.  MAKE - Insert the Manufacture's name or abbreviate by using at least four letters.

    i.  BODYTYPE - Insert body design, such as:  Sedan, Coach, 1 Ton Truck, etc..

    j.  COLOR - Insert color of the vehicle, 2-Tone vehicles insert the body color before the top color.

    k.  LIC. - Insert license number.

    l.  STATE - Insert State of issuance, abbreviate when necessary.

    m.  UPON PUBLIC HIGHWAY, NAMELY - Insert the name of the Street or Avenue upon which the violation occurred.

    n.  AT - Insert the exact location of the violation.

CLE000262

Page 3.

o.  MP – This abbreviation represents Mile Post.  Normally these
signs are not found within our municipality but should they
be posted, insert in this block the numbers displayed on the
sign.

22.  NATURE OF VIOLATION:  In this section only one type of violation
shall be checked as a separate ticket is required for each
violation.  The Nature of Violation or Offense section shall be
filled in by checking the appropriate block, i.e. improper turn,
stop sign, etc..

23.  DESCRIPTION OF OFFENSE – Briefly describe the offense.

24.  IN VIOLATION OF SEC. NO. – Insert section number and check the
appropriate box "Cod. Ord. of Cleveland" or "Ohio Revised Code".

25.  SEAT BELTS – Check YES or NO.

NOTE:  The condition section shall be filled out as follows:

26.  PAVEMENT – Check the appropriate block for the condition of the
road.

27.  VISIBILITY – Check the appropriate blocks that best describe
the weather conditions.

28.  TRAFFIC – Check the appropriate blocks that best describe the
traffic condition.

29.  AREA – Check the appropriate blocks that describes the area.

30.  ROAD SURFACE – Check the appropriate block which describes the
road surface.  Include the width of the roadway in feet, the
number of lanes and if divided, check the block DIVIDED.

31.  ACCIDENT – Check appropriate blocks.  The line ACC. REP. No,____
shall be left blank by the issuing officer.  The Accident
Report number shall be filled in at a later date by the Accident
Investigation Unit.

32.  In the "TO DEFENDANT: SUMMONS" section, the blank spaces shall
be filled in as follows:

a.  You are summoned and ordered to appear at the – after these
words print "Municipal".

b.  COURT – after this word print "of Cleveland, Room 1".

c.  AT – After this word write 9:00 A.M..

d.  M. – After this letter print in the month and write in the
date when the violator must appear in court.

e.  19__ – after these numerals complete by putting in the
appropriate last two digits of the year.

CLE000263

Page 4.

(If the violator is a Juvenile do not fill in 32 a,b,c,d & e)

    f.   THIS SUMMONS SERVED PERSONALLY ON THE DEFENDANT ON - After these words print in the month and write in the date the summons was issued upon the violator.

    g.   19___ - After these numerals complete by putting in the appropriate last two digits of the current year.

    h.   ISSUING-CHARGING LAW ENFORCEMENT OFFICER - On the line above the issuing officer shall sign his full name and insert his badge number, unit, post & district in the appropriate boxes provided for same.

33.   After the citation has been completed by the issuing officer he shall have the violator sign the citation in the place designated, on the right side of the citation and printed lengthwise to the ticket as follows:

    a.   ADDRESS - The violator is to write in his present address if different from the address shown on his driver's license.

    b.   NAME - The violator shall write in his signature as it appears on the driver's license or other means of identification.

    c.   OCCUPATION - The violator shall write in the name of his present place of employment.

    d.   PHONE - The violator shall write in his home telephone number and if he has no home phone, then the telephone number of his place of employment.

        NOTE:  On the reverse side of the Defendant's Copy there is a section PERSONAL APPEARANCE REQUIRED.  This box shall be checked when an unusual situation existed, such as; speeding in a school zone, speeding in a residential area, any violation resulting in an accident etc..  It shall also be checked when the offense may not be processed by the VIOLATIONS Bureau as listed on the ticket.

JUVENILE TRAFFIC OFFENSE CITATION

A Juvenile Traffic Offense Citation shall be completed (in duplicate) in each case of a Juvenile Offender being cited.  This form is required for use by the Juvenile Court and shall be completed as outlined on the following page.  (Compare with attached copy)

GPO  59-75                                      October 31, 1975
INSTRUCTIONS FOR COMPLETING THE JUVENILE TRAFFIC OFFENSE CITATION

1.  ALIAS  -  Shall have printed in the alias of the defendant, if any.

2.  MARRIED  -  Print Yes-Married, No-Unmarried.

3.  AGE  -  Write in actual age.

4.  SCHOOL  -  Print in name of school attending.

5.  GRADE  -  Write in grade attended at school.

6.  EMPLOYER  -  Print in name and address of employer, if employed.

7.  OWNER OF CAR  -  Print in name and address of the owner of the vehicle operated.

8.  NO. OF OCCUPANTS  -  Write in number of occupants including the driver.  Thus, there shall always be at least a number one (1) in this section.

9.  WITH OWNER CONSENT  -  Place "X" in box if operated with owner's consent.

10.  WITHOUT CONSENT  -  Place "X" in box if operated without consent of owner.

11.  NAME OF FATHER (Natural)  -  Print in the name of natural father.

12.  PHONE NUMBER  -  Write in telephone number of natural father.

13.  LIVING  -  Place "X" in box if natural father is living.

14.  DECEASED  -  Place "X" in box if natural father is deceased.

15.  ADDRESS  -  Print in address of natural father.

16.  NAME OF MOTHER (Natural)  -  Print in name of natural mother.

17.  PHONE NO.  -  Write in telephone number of natural mother.

18.  LIVING  -  Place "X" in box if natural mother is living.

19.  DECEASED  -  Place "X" in box if natural mother is deceased.

20.  ADDRESS  -  Print in address of natural mother.

21.  MARITAL STATUS OF PARENTS  -  Place "X" in appropriate block if Divorced, Legal Separation, other separation or if re-married. If living together and married print in "Married" to the right of this section of blocks.

22.  GUARDIAN  -  Print in name of legal guardian and if foster parent so explain in parenthesis as (Foster Father) or (Foster Mother).

CLE000265

Page 2.

23. PHONE NO. - Write in telephone number of guardian or foster parent.

24. ADDRESS - Print in address of guardian or foster parent.

25. ISSUING OFFICER (s) - Print name and rank or badge number of officer (s) issuing citation.

26. ASSIGNED TO (UNIT) - Print in Unit of assignment and vehicle call number.

27. RELEASED OR PLACE OF DETENTION - Print in disposition of violator, such as: released to father, mother, guardian, or self-recognizance and if detained print in "Detention Home" or "County Jail."

28. HAVE PARENTS OR GUARDIAN BEEN NOTIFIED THAT JUVENILE IS BEING DETAINED - Place "X" in appropriate block - Yes, They have been notified - No, They have not been notified.

29. IN THE MATTER OF - On this line print in the full name of the accused.

30. NO. - In this section write in the ticket number.

31. AFTER "YOUR PETITIONER" - Print in the name of the arresting officer who is to sign the affidavit on the form.

32. AFTER "HONOR THAT" - Print in the name of the accused.

33. AFTER "ABOUT THE AGE OF" - Write in actual age in years as of last birthdate.

34. AFTER "X", BEFORE PETITIONER - Write in name of the arresting officer who is to sign the affidavit on the form. Be certain the same officer's name appears in both after "YOUR PETITIONER" and in this section.

35. The section beginning with "THE STATE OF OHIO CUYAHOGA COUNTY" shall be filled in only by the Superior officer designated as a Deputy Clerk and then signed by both the Petitioner and the Deputy Clerk.

36. ABOVE "SIGNED" - The accused juvenile shall sign his name at the time of the issuance of the "Notice to Appear."

37. ABOVE "ADDRESS" - The accused juvenile shall write in his home address.

CLE000266

## JUVENILE TRAFFIC OFFENSE CITATION

| ALIAS | | | MARRIED | AGE |
|---|---|---|---|---|
| 1 | | | 2 | 3 |

| SCHOOL | | GRADE |
|---|---|---|
| 4 | | 5 |

| EMPLOYER | ADDRESS |
|---|---|
| 6 | |

| OWNER OF CAR | ADDRESS |
|---|---|
| 7 | |

| NO. OF OCCUPANTS | | 9 ☐ WITH OWNER CONSENT |
|---|---|---|
| 8 | 10 | ☐ WITHOUT CONSENT |

| NAME OF FATHER (NATURAL) | PHONE NO. | 13 | ☐ LIVING |
|---|---|---|---|
| 11 | 12 | 14 | ☐ DECEASED |

| ADDRESS |
|---|
| 15 |

| NAME OF MOTHER (NATURAL) | PHONE NO. | 18 | ☐ LIVING |
|---|---|---|---|
| 16 | 17 | 19 | ☐ DECEASED |

| ADDRESS |
|---|
| 20 |

**Marital Status of Parents**
21 ☐ DIVORCED ☐ OTHER SEPARATION
☐ LEGAL SEPARATION ☐ RE-MARRIED

| GUARDIAN | PHONE NO. |
|---|---|
| 22 | 23 |

| ADDRESS |
|---|
| 24 |

| Issuing Officer(s) | Assigned to (Unit) |
|---|---|
| 25 | 26 |

| RELEASED OR PLACE OF DETENTION |
|---|
| 27 |

| IMPORTANT: HAVE PARENTS OR GUARDIAN BEEN NOTIFIED THAT JUVENILE IS BEING DETAINED? | YES | NO |
|---|---|---|
| | 28 | 28 |

| THE STATE OF OHIO CUYAHOGA COUNTY } SS | THE JUVENILE COURT OF CUYAHOGA COUNTY PETITION |
|---|---|
| IN THE MATTER OF 29 | No. 30 |

Your petitioner, _____ 31
a responsible person, and resident of said County, respectfully represents unto your
Honor that _____ 32

_____ a child of about the age of _____ 33 _____ years,
now within the said County, is a Juvenile Traffic Offender in this Offense described
on Ticket Section on reverse side.

Your petitioner therefore prays this Honorable Court to inquire into the alleged
Juvenile Traffic Offense of the said minor and of the truth of the matters herein
contained, in pursuance of the Statute in such cases made and provided; and make
such order in the premises as to this Honorable Court may seem meet and proper.

x _____ 34
Petitioner

| THE STATE OF OHIO CUYAHOGA COUNTY } SS |
|---|

that _____ has read the above petition by _____ being duly sworn says
_____ signed,
and knows the contents thereof and that the same is true according to the best of
35 _____ knowledge and belief.

SUBSCRIBED AND SWORN TO BEFORE ME BY THE SAID PETITIONER THIS

_____ DAY OF _____ , 19 _____

| PETITIONER | DEPUTY CLERK |
|---|---|

**CLEVELAND POLICE DEPARTMENT**
The undersigned Juvenile promises to present this TRAFFIC OFFENSE CITATION to
his/her PARENTS or GUARDIAN. The Juvenile together with parents or guardian
will be required to appear, for hearing, before
CUYAHOGA COUNTY JUVENILE COURT, CEDAR
AVE. AT E. 22nd ST., CLEVELAND, OHIO 44115
upon notification by the Juvenile Court Authorities.

| 36 | 37 |
|---|---|
| SIGNED | ADDRESS |

CLE000267

4  STATE OF OHIO    CUYAHOGA COUNTY
☐ IN THE CLEVELAND MUNICIPAL COURT
☐ IN THE CUYAHOGA COUNTY JUVENILE COURT

TICKET OR NUMBER  702001
CASE NO.
CERT (F) NO.

NAME _____ 5 _____
STREET _____ 6a _____
CITY STATE _____ 7 _____
LICENSE NO. _____ 8 _____

9 LICENSE ISSUED MO. ___ YR. ___ EXPIRES BIRTHDATE 19 10 STATE _____
SOCIAL SEC. NO. 11 _____ BIRTHDATE MO. 12 DAY ___ YR. ___

| SEX 13 | HEIGHT 14 | WEIGHT 15 | HAIR 16 | EYES 17 | 18 ☐ | LICENSE TYPE |
|---|---|---|---|---|---|---|
| | | | | | | ☐ OPER. |
| | | | | | | ☐ CHAUF. |
| | | | | | | ☐ PROB. |
| | | | | | | ☐ T.P. |

19 LICENSE RESTRICTION _____
20 ☐ CORR. LENS  ☐ HAND CONT.  ☐ POWER STEER  ☐ AUTO DRIVE  ☐ DAY LITE ONLY
☐ OTHER _____  21  TO DEFENDANT, COMPLAINT

ON a THE b DAY OF c 19 d AT e M. YOU
UNLAWFULLY OPERATED f ☐ A VEHICLE  ☐ PASS. ☐ COMM. g ☐ SINGLE MAKE h
BODY TYPE i ☐ COLOR j ☐ BUS  LIC. k STATE l
UPON PUBLIC HIGHWAY, NAMELY m AT n

Present Address 33a

IN THE CITY OF CLEVELAND, IN CUYAHOGA COUNTY AND STATE OF OHIO, AND DID THEN AND THERE COMMIT THE FOLLOWING OFFENSE:

22

| NATURE OF VIOLATION | | | | |
|---|---|---|---|---|
| ☐ SPEED | ☐ Unreasonable for conditions ( ___ MPH in ___ MPH. zone) ☐ Unable to stop in assured clear distance ahead | | | |
| | ☐ Radar  ☐ Electric Timer | ☐ Mechanical Timer | ☐ Moving Clock | |
| ☐ IMPROPER TURN | ☐ Left  ☐ Right | ☐ No signal  ☐ Wrong lane | ☐ U-Turn  ☐ Prohibited | |
| ☐ DISOBEYED TRAFFIC SIGNAL OR DEVICE | ☐ Stop sign  ☐ Red light | ☐ Yield sign | | |
| ☐ IMPROPER PASSING | ☐ At intersection  ☐ Curve | ☐ Hill  ☐ No passing zone | ☐ Cut in  ☐ On right | |
| ☐ IMPROPER LANE USAGE  ☐ Change of course | ☐ Cut out | ☐ Lane straddling | | |
| ☐ FAILED TO YIELD RIGHT OF WAY | ☐ FOLLOWING TOO CLOSELY | ☐ OPERATED WITHOUT REGARD TO SAFETY (DESCRIBE BELOW) | | |

DESCRIPTION OF OFFENSE 23

FACE OF COURT RECORD

IN VIOLATION OF SEC. No. 24
☐ COD. ORD OF CLEVELANDS
☐ OHIO REVISED CODE
Street lights  Yes ☐  No ☐

| CONDITIONS | | | | |
|---|---|---|---|---|
| PAVEMENT 26 | ☐ Dry | ☐ Wet | ☐ Snow | ☐ Ice |
| VISIBILITY 27 | ☐ Clear  ☐ Cloudy | ☐ Rain  ☐ Snow | ☐ Fog  ☐ Dusk | ☐ Night  ☐ Dawn |
| TRAFFIC 28 | ☐ Crossing  ☐ Oncoming  ☐ Same direction | ☐ Light  ☐ Heavy  ☐ Moderate | ☐ None  ☐ Pedestrian | |
| AREA 29 | ☐ Rural  ☐ Residential | ☐ Business  ☐ Industrial | ☐ School | |
| ROAD SURFACE 30 | ☐ Asphalt  ☐ Concrete | ☐ Gravel  ☐ Dirt  Width  Ft. No. of lanes | ☐ Brick | ☐ Divided |
| Accident Acc. 31 Rep. No. | ☐ Yes  ☐ No  ☐ Almost caused | ☐ Property damage  ☐ Injury  ☐ Fatal | ☐ Vehicle  ☐ Fixed object  ☐ Pedestrian | |

32  TO DEFENDANT  SUMMONS

You are summoned and ordered to appear at the ___ a ___ Court
___ b ___ at c M. d
19 e ___ If you fail to appear at this time and place you may be arrested.

This summons served personally on the defendant on ___ f ___
19 g ___

The issuing-charging law enforcement officer states under the penalties of perjury and falsification that he has read the above complaint and that it is true. h

| Issuing-Charging Law Enforcement Officer | Badge No. | Unit | Prec. | Dist. |
|---|---|---|---|---|
| | | | | |

CLE000268

## GENERAL POLICE ORDER

NO. 58-75      HEADQUARTERS    October 22, 19 75

SUBJECT: POSITION OF DEPUTY CHIEF -- ASSIGNMENT

TO THE MEMBERS OF THE DEPARTMENT:

By authority of the Director of Public Safety, the position of Deputy Chief of Police within the Division of Police is hereby reinstituted.

Inspector Steve Szereto is hereby conferred with this title and in that capacity shall command the Bureau of Inspection and Administrative Services and the Bureau of Services and Communications.

The Division of Communications and the Division of Services shall remain under the command of Deputy Inspectors, Deputy Inspector James Birmingham and Deputy Inspector Alexander Kozak, respectively.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

## GENERAL POLICE ORDER

NO. 57-75       HEADQUARTERS       October 21   19 75

SUBJECT: ASSEMBLIES INVOLVING THE MARCHING UNIT AND/OR FUNERAL DETAIL

TO THE MEMBERS OF THE DEPARTMENT:

All members participating in assemblies in which the Marching Unit, or any of its component parts, and/or the Funeral Detail are involved shall be subject to the direction and coordination of the Officer in Charge of the Marching Unit and Funeral Detail in respect to those aspects involving parades formations, presentations or similar proceedings or functions, and in respect to dress, equipment and appearance.

Employee organizations, the FOP, CPPA, and the Shield Club that wish to participate in any such assembly shall, prior to the date of occurrence, provide the OIC of the Marching Unit and Funeral Detail with any information he deems necessary to integrate them into the overall plan and all members of these groups participating shall be subject to his directions and coordination.

Copies of all Unusual Activity and other information reports relating to assemblies that may involve the Marching Unit and/or the Funeral Detail shall be forwarded without delay to the OIC of the Marching Unit and Funeral Detail, and, whenever a shortage of time is a consideration, he shall be contacted by phone or in person and given the necessary information. The OIC is presently assigned to the Inspection Unit - Police Line 411.

By order of,
LLOYD F. GAREY
CHIEF OF POLICE

# GENERAL POLICE ORDER

NO. 56-75                    HEADQUARTERS October 17 19 75

SUBJECT: DEPARTMENTAL ORGANIZATION -- STRUCTURE

REVISION

TO THE MEMBERS OF THE DEPARTMENT:

The Bureau of Patrol shall be divided into Area, A, comprised of Districts 1, 2 and 3, and Area B, Districts 4, 5 and 6. Each shall be under the Command of a full Inspector who shall be responsible for all aspects of Police operation, the responsibilities set forth in Rule 2 and 3 of the Manual of Rules and all provisions of General Police Orders relative to responsibility and accountability.

Headquarters of Area A shall be at the Second District and Area B at the Sixth District.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 55-75                    HEADQUARTERS October 17     , 75

SUBJECT: REVISIONS TO GPO 25-75 -- DRESS AND

PERSONAL APPEARANCE CODE

TO THE MEMBERS OF THE DEPARTMENT:

Sections B-7 and B-8 of the GPO 25-75 -- Dress and
Personal Appearance Code -- shall be revised to
read as follows:

B-7  Mustaches shall be kept neatly trimmed and
     shall not extend below the upper lip.   Nor
     shall they be excessively thick or bushy, nor
     extend past the facial crease lines beyond the
     corners of the mouth which provide natural
     terminal lines to fix the width of the mustache.
     They shall not be styled, treated, or pointed
     so that the ends curl or protrude away from
     the contour of the face or extend upward higher
     than the lowest part of the nose.

B-8  The face shall be clean shaven. Beards and
     chin goatees are prohibited, except that an
     unobtrusive, wispy goatee, located in the
     area of the chin cavity, shall be permitted.

                         By order of,

                         LLOYD F. GAREY
                         CHIEF OF POLICE

CLE000272

## GENERAL POLICE ORDER

No. 54-75          HEADQUARTERS  October 17   , 19 75

SUBJECT: STATE HOSPITAL SERVICE DISTRICTS

TO THE MEMBERS OF THE DEPARTMENT:

Effective October 20, 1975, the Service Areas that
determine which State Hospital bears the responsibility
to accept patients will be changed.

The 10 North District for Mental Health Services
(which includes Cuyahoga, Lorain, Lake and Geauga
Counties) is divided into service areas. Each State
Hospital serves specific catchment areas.

CLEVELAND PSYCHIATRIC INSTITUTE (CPI) will service
all individuals residing in geographic areas WEST
of the Cuyahoga River as well as Lorain County.
All individuals whose primary diagnosis is drug
dependence will also be evaluated for admission at
C.P.I.

FAIR HILL MENTAL HEALTH CENTER (FMHC) will service
all individuals residing in geographic areas EAST
of the Cuyahoga River as well as Lake and Geauga
counties.

HAWTHORNDEN STATE HOSPITAL (HSH) will service all
out of state residents, transients and individuals
evaluated as needing long term psychiatric care and
treatment.

SAGAMORE HILLS CHILDREN'S HOSPITAL (SHCH) will
service all children and adolescents (17 years or
below)residing in District 10 North.

CLE000273

## GENERAL POLICE ORDER

No. 54-75        HEADQUARTERS _____ October 17 _____ 19 75

SUBJECT: STATE HOSPITAL SERVICE DISTRICTS

(2)

The booklet titled "Directory of Psychiatric Facil-
ities in Cuyahoga County" relative to Service Areas
and distributed per Departmental Notice 70-180 shall
be amended to conform with this change.

Members shall maintain the present procedure when
conveying an irrational person to the nearest
General Hospital Emergency Ward. When the resident
Doctor decides that the person should be taken to a
State Mental Hospital, members shall transport him
to the institution which serves the person's
residential  Service Area.

G.P.O. 21-73 is hereby recended.


By order of,


LLOYD F. GAREY
CHIEF OF POLICE

CLE000274

# GENERAL POLICE ORDER

NO. 53-75          HEADQUARTERS October 14 19 75

SUBJECT: PRESERVATION OF RADIO TAPES RECORDS

TO THE MEMBERS OF THE DEPARTMENT:

Whenever a Police Vehicle is involved in an accident while on an EMERGENCY ASSIGNMENT, the Officer-In-Charge of the Radio Room shall be notified as soon as possible so that the tapes can be preserved as evidence for any possible claims or lawsuits that may be incurred by the City.

It shall be the responsibility of the Supervisory Officer investigating the accident to notify the Officer-In-Charge of the Radio Room.

It shall be the responsibility of the Officer-In-Charge of the Radio Room to notify the Law Department that the tapes, with information regarding the accident, are available.

By order of,

Lloyd F. Garey
Chief of Police

## GENERAL POLICE ORDER

No. 52-75          HEADQUARTERS     October 10    '75

SUBJECT: MONTHLY TARGET PRACTICE-REVISED PROCEDURES

TO THE MEMBERS OF THE DEPARTMENT

The procedures governing monthly target practice shall be revised as follows:

Every member of the department shall attend monthly target practice except when

    (a) specifically excused by the Chief of Police,

    (b) working the 3rd platoon while assigned to rotating shifts,

    (c) on furlough during 4 weeks within a calendar month.

Attendance at prescribed courses of training at the Outdoor Range constitutes compliance with this order.

Whenever a member fails to attend monthly target practice, the officer-in-charge of the Unit of Arms shall notify the member's commanding officer and the Complaint Unit of the Bureau of Inspection and Administrative Services, in writing.

The member's commanding officer shall than ascertain if any of the above exceptions apply.

If no exceptions apply, the member's commanding officer shall be responsible for initiating appropriate disciplinary action.

CLE000276

## GENERAL POLICE ORDER

No. 52-75          HEADQUARTERS          October 10 19 75

SUBJECT: MONTHLY TARGET PRACTICE-REVISED PROCEDURES

(2)

Commanding Officers shall familiarize the member's
under their command with the provisions of this
order and cause compliance.

G.P.O. 3-51 is hereby rescinded.


By order of,

LLOYD F. GAREY
CHIEF OF POLICE

CLE000277

## GENERAL POLICE ORDER

NO. 51 - 75     HEADQUARTERS    October 10  19  75

SUBJECT: __DISCONTINUED USE OF GREY UNIFORM SHIRTS__

TO THE MEMBERS OF THE DEPARTMENT:

Effective immediatly Officers and Members of the Department shall discontinue wearing the Grey Uniform Shirt.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

CLE000278

## GENERAL POLICE ORDER

**No.** 50-75          **HEADQUARTERS** October 7, 19 75

**SUBJECT:** DISTRICT TIRE REPAIR SERVICE

TO THE MEMBERS OF THE DEPARTMENT

Whenever District Stations have tires in need of repair, the Officer in charge assigned on the first platoon shall so notify the Mounted Unit on line 323 or 324. The Mounted Unit shall supply a truck and driver to deliver these tires to the East 49St. Tire repair shop.

Districts shall keep a record of all tires sent in for repair in the current District Vehicle Mainten-ance Book and shall require the driver's signature for each tire he picks-up for delivery to the tire shop. Similarly, the driver shall maintain a ledger in which each tire transaction shall be recorded. The record shall include, a list of tires identified by vehicle number, the date picked-up and the date the tire was returned and the signatures of the person receiving the tires at the repair shop and of the Officer in charge upon their return.

The Tire shop will notify the Mounted Unit whenever they have repaired tires for return.

For purposes of identification ALL tires delivered to the tire shop for repair, shall be tagged with a property tag containing the vehicle call number, code number, mileage and the assigned unit.

By order of,


LLOYD F. GAREY
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 49-75　　　　HEADQUARTERS　October 3　75
19

SUBJECT: CUSTODIAL CARE OF SUSPECTS SUBJECT TO GUNSHOT

RESIDUE AND/OR TRACE METAL DETECTION TESTS.

TO THE MEMBERS OF THE DEPARTMENT

When it is determined that a suspect is to be
given a gunshot residue test or a trace metal
detection test, the Forensic Laboratory or Identi-
fication Unit of the S.I.U. shall be notified
immediately on line 312 or 327 respectively.

If no response is obtained from either line, the
officer in charge of the Detective Bureau shall be
notified on line 361 and it shall be his responsi-
bility to arrange for the availability of the
appropriate lab personnel.

The suspect shall then be brought, without
unnecessary, delay to the Forensic Laboratory
where the tests will be conducted.

Every effort should be made to protect the suspect's
hands from contamination.

He shall not be fingerprinted or confined in a cell
prior to the test and he shall not be permitted to
wash or wipe his hands or touch any metal object.

If the Forensic Laboratory personnel are not
immediately available, the suspect shall be held
at the Detective Bureau pending their arrival.

If the suspect requires medical attention, the
hospital staff should be apprised of the necessity
of protecting his hands from contamination.

CLE000280

## GENERAL POLICE ORDER

No. 49-75                    HEADQUARTERS October 3      75
                                                    19

SUBJECT: CUSTODIAL CARE OF SUSPECTS SUBJECT TO GUNSHOT

RESIDUE AND/OR TRACE METAL DETECTION TESTS.

(2)

Plastic bags may be utilized for this purpose.

In the case of a deceased suspect, the Morgue
attendant shall be requested to have the hands
bagged and the Morgue forensic personnel shall
be requested to conduct the tests.

Upon completetion of tests, if the suspect is
under  arrest, the Forensic Laboratory personnel
shall fingerprint the suspect, or have it done,
in compliance with G.P.O. 9-59 and/or 22-64.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

CLE000281

## GENERAL POLICE ORDER

No. 48-75      HEADQUARTERS September 22   75 ,19

SUBJECT: DEAD BODY INVESTIGATION PROCEDURE

SECURITY OF PROPERTY

TO THE MEMBERS OF THE DEPARTMENT:

In a memorandum to this department, County Coroner, Samuel R. Gerber, has defined conduct and responsibilities of Police Officers at the scene of deaths which by law are reportable to the Coroner.

All members are advised that Dr. Gerber's memorandum shall be the controlling procedure when DEAD BODY INVESTIGATIONS are made. As an integral part of this order, Dr. Gerber's memorandum has been reproduced in its entirety in sufficient quantities for distribution to the Districts, Bureaus and Units. These shall be used for instructional purposes and retained in unit files as a permanent reference.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 47-75 _____          HEADQUARTERS September 19    75

SUBJECT: SUPPLEMENTARY OVERTIME REGULATIONS

TO THE MEMBERS OF THE DEPARTMENT

Supplemental to G.P.O. 14-66 and G.P.O. 15-74, the following time keeping procedures shall become effective immediately:

Vacation days worked shall no longer be indicated by an 8 hour OT symbol. Instead a vertical line shall be drawn through the V symbol, indicating that the member worked on that day. When the V days are made up at a later day, it shall be indicated by the V symbol being entered in the column of the day it was taken. Total V days taken shall be balanced against the V days due, at the end of the year, the difference converted into plus or minus overtime and the figure inserted in the appropriate column.

The last paragraph of GPO 15-74 shall be amended to read:

Cases where the overtime appears excessive or where vacation days are worked and not made up at the end of the month shall be listed in the monthly report on overtime made by Commanding Officers of each District and Bureau and Division, together with an explanation and the remedial action taken.

GPO 14-66 - the basic time keeping procedures, shall be updated and copies reissued to all members, in the near future.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

## GENERAL POLICE ORDER

NO. 46-75          HEADQUARTERS          September 17,   75
                                                         19

SUBJECT: AAA TOWING

TO THE MEMBERS OF THE DEPARTMENT

Members experiencing unnecessary delay in the
arrival of AAA TOW TRUCKS shall submit the de-
tails of the delay on a Form I report and for-
ward through channels.

A copy shall be forwarded to the Auto Bureau for
investigation to enable corrective action by the
AAA Club.

                    BY ORDER OF,


                    LLOYD F. GAREY
                    CHIEF OF POLICE

CLE000284

## GENERAL POLICE ORDER

No. 45-75 _____          HEADQUARTERS September 17, __75__

SUBJECT : CONFIDENTIALITY OF COMPUTERIZED INFORMATION

TO THE MEMBERS OF THE DEPARTMENT

Members are advised that computerized information, obtained through Police terminals, is provided for the exclusive official use of Police Officers, and its security, privacy and confidentiality must be constantly maintained.  This information shall not be furnished to anyone for whom it is not intended.

Telephone requests for computerized information from foreign police agencies shall not be honored until the identification of the caller is verified. Such requests shall be answered by a return tele- phone call to the Agency of the person making the request, unless prior arrangements have been made to answer the request by other means, i.e. tele- type, telegram or letter, etc.  In every event the answer shall be directed to the Agency of the person making the request.

Telephone requests for computerized information originating from local area Police Departments and members of this Department shall not be honor- ed until the Officer identifies himself by giving his name, rank and Unit of assignment, or, if from another Police Department, the name of that

## GENERAL POLICE ORDER

No. 45-75                    HEADQUARTERS    SEPTEMBER 17,    75    19

SUBJECT: CONFIDENTIALITY OF COMPUTERIZED INFORMATION

Page -2-

Department.  If any doubt exists as to the val-
idity of the request, the caller shall be inform-
ed the information will be telephoned to his Unit
or Department as the case may be.

Violation of the confidentiality of computerized
or other police information shall be the subject
of Departmental charges.

By Order of,

LLOYD F. GAREY
CHIEF OF POLICE

CLE000286

# GENERAL POLICE ORDER

NO. 44-75                                    HEADQUARTERS September 17    75
19___

SUBJECT: EXPENDED TEAR GAS PROJECTILES AND
GRENADES "RECOVER AFTER USE".

TO THE MEMBERS OF THE DEPARTMENT

Whenever a member of the department has the oc-
casion to use Gas Shells or Grenades, they shall
retrieve all exploded shells or duds after the
incident, and return them to the Ordinance Unit
for deactivation.

Unrecovered duds are extremely dangerous especial-
ly in the hands of children or other persons un-
aware of the explosive nature of the projectiles
and the potential for serious bodily injury.

Commanding Officers shall apprise all members
under his command of the above information.

By order of,


LLOYD F. GAREY
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 43-75          HEADQUARTERS  September 15, 1975

SUBJECT: PROCEDURE TO ASSURE ADEQUACY OF REPORTS

TO THE MEMBERS OF THE DEPARTMENT

Whenever a report is requested or required of a
member and is found to be unresponsive or lacking
necessary information, a copy shall be returned
with explicit instructions as to the deficiency
and specific information needed, or the specific
questions that must be answered.

The original of said report, bearing a notation of
said instructions, shall be receipted with the
member's full signature and a statement of acknowl-
edgement and understanding. It shall then be
retained and forwarded with the entire file of
reports compiled in the matter, or immediately if
required.

Whenever reports made in connection with any invest-
igation require corrections, they shall never be
returned but, rather, must be retained as part of
the file along with the later amended reports.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

# GENERAL POLICE ORDER

No. 42-75          HEADQUARTERS  September 12 ,19 75

SUBJECT: SUPPLEMENT TO GPO 18-71  DIVISION AND

DISTRICT LEVEL DISCIPLINARY PROCEDURES

TO THE MEMBERS OF THE DEPARTMENT

Commanding Officers desiring to take Division and
District level disciplinary action as provided for
in GPO 18-71 shall submit all reports with such
request to the Chief of Police for his approval or
other decision.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

CLE000289

## GENERAL POLICE ORDER

NO. 41-75                     HEADQUARTERS  September 11, 19 75

SUBJECT: DAILY SUPERVISORY INSPECTION OF VEHICLES

AND EQUIPMENT

TO THE MEMBERS OF THE DEPARTMENT

Effective immediately, each Bureau, District and Division Commander shall designate a Sergeant or Lieutenant on the 1st Platoon to make daily inspections of all vehicles and all ambulance and ordnance equipment on them. This Superior Officer shall be responsible for the operableness and cleanliness of same by causing the necessary and proper care and maintenance.

As an inspectional and supervisory aid, the Medical Inspection Center and Ordnance Section shall forward copies of their inspection reports to the Districts and Divisions when inspections reveal deficiencies needing correction. Bureaus, Districts and Divisions shall maintain complete and detailed records of the results of inspections in order to ensure proper corrective action.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

# GENERAL POLICE ORDER

No. 40-75        HEADQUARTERS___ September 11 __19 75

SUBJECT : MANDATORY CHANNELS OF COMMUNICATION

TO THE MEMBERS OF THE DEPARTMENT

All communications and the transmittal of information shall be effected through proper channels.

This shall require initial contact by the member with his immediate Superior Officer.

Important matters that require further notification or higher decisions beyond the level of the immediate field supervisor or the Officer in Charge of a Unit shall require the permission of the member's immediate superior to pass through the ascending order of rank to the Commanding Officer and Bureau Commander, and, if indicated and required by the circumstances, to the Chief of Police. This includes all written and oral reports and requests.

Exceptions are the specific provisions of the Rules and Regulations and the General Police Orders, such as GPO 19-75 and its authorization to route transfer requests directly to the Chief, and emergency situations when the proper authority in the chain of command is not available, in which latter case another Superior Officer of equal, or the next higher, rank may be asked.

The Chief or designated Acting Chief, alone may authorize the initiation of business or visits with the Office of the Mayor, Director of Public Safety, or any other public official at his office or City Hall.

CLE000291

## GENERAL POLICE ORDER

NO. 40-75      HEADQUARTERS     September 11   19 75

SUBJECT: MANDATORY CHANNELS OF COMMUNICATION

(2)

Excepted are emergency situations when the Chief or Acting Chief are unavailable. In this case the Operations Officer, the member's Commanding Officer or the Bureau Commanding Officer shall be contacted.

Such Operations Officer or Commanding Officer shall use his best judgement and discretion in making his decision. Lacking any emergency, he shall await the availability of the Chief.

The issuance of teletype messages that affect the operation of the Department shall be subject to the same controls.

General Police Order 18-68 is hereby rescinded.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 39-75                HEADQUARTERS_____ September 8 __ 19__ 75

SUBJECT : ___CORRECTION TO GPO 38-75 ~ SUPPLEMENTARY

SUPERVISORY PROCEDURES FOR COMMUNICATIONS
CONTROL CENTER (CCC) RADIO DISPATCHERS &
LINE PERSONNEL

TO THE MEMBERS OF THE DEPARTMENT

The last paragraph of GPO 38-75 shall read as
follows;

The District Commander shall be notified and
summoned to duty for all important and serious
matters requiring a superior officer of higher
rank than Platoon Captain or Sector Lieutenant.

The word "Platoon" shall be inserted in place of
"Patrolman".

By order of

LLOYD F. GAREY
CHIEF OF POLICE

## GENERAL POLICE ORDER

NO. 38-75                                    HEADQUARTERS                September 5      75
                                                                                          19

SUBJECT: SUPPLEMENTARY SUPERVISORY PROCEDURES FOR COMMUNICATIONS CONTROL CENTER (CCC) RADIO DISPATCHERS AND LINE PERSONNEL

TO THE MEMBERS OF THE DEPARTMENT

In the Communication Control Center, procedures shall be revised as follows:

Two Radio Dispatchers shall be assigned to each Dispatch Console. They shall be responsible for proper assignment dispatching and for maintaining accurate status information and records on field Units and personnel subject to their assignment dispatching.

One Dispatcher shall perform the Radio dispatching function while the other assists him by obtaining needed information and by maintaining their status board current and accurate. Each team may alternate their respective functions and duties. Patrolman may be utilized for these duties when necessary.

A Radio Log of all Radio assignments dispatched and dispositions received, with accurate time entries, shall be maintained. Both the microphone dispatcher and the assistant may make the entries as other preoccupation and convenience dictates and permits. Both shall sign the log. The required Log form is structured and the type and manner of entries are self explanatory. A separate Dispatch Log Report shall be made for each Platoon.

There shall be a Sergeant assigned to Districts 1,2,3 and Traffic and another to Districts 4,5,and 6.

## GENERAL POLICE ORDER

NO. 38-75          HEADQUARTERS September 5        19 75

SUBJECT: SUPPLEMENTARY SUPERVISORY PROCEDURES FOR

COMMUNICATIONS CONTROL CENTER (CCC) RADIO
DISPATCHERS AND LINE PERSONNEL

(2)

They shall receive and handle all telephone
communication at the Dispatch Consoles. When
necessary, in the absence of a Field Supervisor,
the Sergeant shall take charge of the microphone
and direct the activities of field Units to the
extent possible, utilizing and being guided by
the information supplied by Line personnel on the
scene. A Sector Supervisor, or other Field
Supervisors, shall assume ultimate control and
responsibility for field operations when available
on the scene.

Supervisory officers in the CCC shall continually
monitor the performance of members with respect
to proper and legible log entries. Original log
Report forms shall be forwarded to the Chief's
Office with copies to the Inspection Bureau and
to the respective Districts and Line Units which
shall be picked up by District mail cars each day.
Other Line Units shall arrange for early pick up
and delivery to their various Unit Headquarters.
Courier vehicles shall properly receipt for
Dispatch Log Reports picked up at the CCC. The officer in
Charge of District Stations and other Units shall
maintain a record, properly listing the daily
receipt of Dispatch Log Reports from the CCC. Any
default or failure of delivery shall be investigated
by the Supervisory Officer in Charge and the
Commanding Officer shall be notified.

# GENERAL POLICE ORDER

No. 38-75                    HEADQUARTERS September 5        75
                                                          19

SUBJECT: SUPPLEMENTARY SUPERVISORY PROCEDURES FOR

COMMUNICATIONS CONTROL CENTER (CCC) RADIO
DISPATCHERS AND LINE PERSONNEL
(3)

It is important and essential that log reports be
delivered to the District or Unit prior to the
next tour of duty of the personnel involved.

Commanding Officers shall cause Captains and
Sector Supervisors to utilize the logs comparing
the entries with duty report entries and with
their supervisory observations of patrol activities
and assignment handling.

Any discrepancies or irregularities, unwarranted
delays in responding to assignments or reporting
dispositions, or excessive amounts of times spent
on assignments, or any inaccuracies shall be the
subject of inquiry and investigations. Charges
shall be preferred for serious, or repeated
violations.

The Operations Officer on the 2nd and 3rd Platoon on
Saturday and Sunday, and whenever otherwise so
directed by the Chief or his designee, shall
headquarter and station himself at the C.C.C. from
which he shall supervise and command the operations
of the department. Direct field supervision by him
shall be limited to serious emergencies such as
major disasters and civil disorders.

CLE000296

## GENERAL POLICE ORDER

No. 38-75          HEADQUARTERS          September 5    75
                                                        19

SUBJECT: SUPPLEMENTARY SUPERVISORY PROCEDURES FOR

COMMUNICATIONS CONTROL CENTER (CCC) RADIO
DISPATCHERS AND LINE PERSONNEL
(4)

The District Commander shall be notified and
summoned to duty for all important and serious
matters requiring a superior officer of higher
rank than patrolman, Captain, or Sector Lieutenant.


By order of,

LLOYD F. GAREY
CHIEF OF POLICE

CLE000297

## GENERAL POLICE ORDER

No. 37-75          HEADQUARTERS September 4, 19 75

SUBJECT: SUPPLEMENTARY SICK LEAVE PROCEDURES AND
SUPERVISORY CONTROLS

TO THE MEMBERS OF THE DEPARTMENT

GPO 3-70 and DN 75-125 are rescinded and their
provisions are combined with some additional
measures in order to correct some deficiencies in
Sick Leave procedures and supervisory checks of
those on sick leave. A copy shall be issued to
each member.

Rule 32 of the Manual of Rules  remains  the con-
trolling Sick Leave procedure, supplemented by
GPO 9-52 which prescribes the use and manner of
completion of specified sick report forms.

Copies of GPO 9-52 will be forwarded to Bureaus,
Districts and Units for use in the instruction
of personnel whose complete familiarization shall
be the responsibility of Commanding Officers.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 36-75      HEADQUARTERS    August 26     19 75

SUBJECT: TITLING WATERCRAFT THEFTS

TO THE MEMBERS OF THE DEPARTMENT

Stolen boats shall be titled, Grand Theft, Watercraft (if value is $150.00 or more) or Petty Theft, Watercraft (if value is under $150.00).

Watercraft that are the subject of a police investigation and which are not turned over to the owner are to be towed by Police tow to the impound lots as is done with motor vehicles. In the event the boat does not have a trailer, call the Ports and Harbors office, Ext. 350 or 553, and they will make arrangements to use the police boat trailer for temporary hauls.

Copies of all such investigations involving watercrafts shall be forwarded to the Ports and Harbors Unit for further investigation.

By order of

LLOYD F. GAREY
CHIEF OF POLICE

CLE000299

# GENERAL POLICE ORDER

No. 35-75                    HEADQUARTERS September 4,    75

SUBJECT: MUNICIPAL COURT MISDEMEANOR PROSECUTION

PROCEDURES

TO THE MEMBERS OF THE DEPARTMENT

The rules of the Criminal Branch of the Municipal
Court have been amended as they relate to "Misde-
meanor Procedure".

This General Police Order in its total content has
been printed for individual distribution throughout
the Department and as such constitutes the substance
of this order.

GPO 35-75 as previously teletyped on August 20, 1975
shall be discarded and replaced with the printed
copies of same.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

CLE000300

## GENERAL POLICE ORDER

No. 9-52                     HEADQUARTERS  January 30, 1952

SUBJECT:  NEW PROCEDURE AND MANNER FOR MEMBERS
          REPORTING SICK OR INJURED WHILE ON DUTY
          AND WHILE NOT ON DUTY.

Inspector Timothy Costello,
Executive Officer.

The following procedure will be effective
Friday, February 1, 1952, for members reporting
as sick or injured.

Any member of this Department reporting Sick
or Injured while he is not on duty shall advise
the Officer in Charge of the District, Bureau,
or Unit to which he is assigned prior to the
commencement of his tour of duty.

The member so reporting Sick or Injured shall
be prepared to furnish the following information
to the Officer in Charge: Name, Rank or Number,
Pay-roll or X number, his hours of duty, Residence
Address and whether or not he will report at the
Office of the Surgeon of Police the day he reports
Sick or Injured, or if after the regular hours at
the Surgeon's Office, the next morning.

The Officer in Charge of the District, Bureau
or Unit to which such member is assigned will
note such answers on Police Form, Surg. 3 " DIS-
ABILITY REPORT ", ( pink in color ) in duplicate,
also noting the hour, day, month, year and
district, together with any other information
concerning the illness or injury that he may have
knowledge of as indicated on the Form.

C-O-N-T-I-N-U-E-D

## GENERAL POLICE ORDER

NO. 9-52  HEADQUARTERS January 30, 1952.

SUBJECT: NEW PROCEDURE AND MANNER FOR MEMBERS REPORTING SICK OR INJURED WHILE ON DUTY AND WHILE NOT ON DUTY.

Page  2

This Officer in Charge will then immediately telephone this information exactly as it is noted on Police Form Surg. 3 to the office of the Police Surgeon during the hours that office is open. When the Police Surgeon's Office is closed such information shall be telephoned at the first hour the office is open. In any event the original copy of Police Form Surg. 3 shall be forwarded to the Police Surgeon's office by the next regular departmental mail.

The member so reporting himself Sick or Injured shall remain at his usual place of residence until the Assistant Police Surgeon calls on him, excepting when such member reports that he will call at the Police Surgeon's Office that day. He will not be permitted to leave his residence to go to his own private physician or for any other reason, except as above noted, or, if in the event his private physician has visited him and has ordered immediate hospitalization in an emergency case. In any event, the Police Surgeon's Office should be immediately advised through the channel above outlined.

Should any member desire the services of his private physician, the Assistant Police Surgeon will provide him with one ( 1 ) copy of Police Form, Surg. 5 " ATTENDING PHYSICIAN'S CERTIFICATE OF DISABILITY ", ( white in color ) and one ( 1 )

C-O-N-T-I-N-U-E-D

CLE000302

## GENERAL POLICE ORDER

No. 9-52                 HEADQUARTERS  January 30, 1952.

SUBJECT:  NEW PROCEDURE AND MANNER FOR MEMBERS REPORTING SICK OR INJURED WHILE ON DUTY AND WHILE NOT ON DUTY.

### Page  3

copy of Police Form, Surg. 6, " ATTENDING PHYSI-CIAN'S CERTIFICATE OF RELEASE FROM TREATMENT ", ( blue in color ).

The Sick or Injured member will take both Police Forms ( Surg. 5 and 6 ) to his private physician and have him fill out and sign Police Form, Surg. 5.  The member shall then deliver this completed Police Form, Surg. 5, either in person or by messenger, to the office of the Police Surgeon the same day.

When the private or attending physician releases such sick or injured member from treat-ment, he shall then be requested to fill out and sign Police Form, Surg. 6.

The member thus released from treatment by his private physician shall then personally take such completed Police Form, Surg. 6, to the office of the Police Surgeon who will make his own exami-nation of such member and then, if in his judg-ment, such member is fit for duty he shall fill out and sign Police Form, Surg. 4 " DUTY ORDERS " ( green in color ).

The member so ordered to report for duty shall take this completed Police Form, Surg. 4 to the Officer in Charge of the District, Bureau or Unit to which he is assigned on or before the day and hour noted on this Police Form, Surg. 4.

C O N T I N U E D

CLE000303

## GENERAL POLICE ORDER

No. 9-52                    HEADQUARTERS January 30, 1952

SUBJECT: NEW PROCEDURE AND MANNER FOR MEMBERS REPORTING SICK OR INJURED WHILE ON DUTY AND WHILE NOT ON DUTY.

### Page 4

The Assistant Police Surgeon shall report in writing to the Police Surgeon on each member he visits, giving all available particulars of the illness or injury and whether the sick or injured member is to report to the Police Surgeon's Office or whether he has elected to consult his private physician.

Members reporting sick or injured while on duty will, whenever possible, be required to go to the Police Surgeon's Office before going to their homes if the illness or injury occurs during the hours the Police Surgeon's Office is open. If the Police Surgeon's Office is closed, the same procedure should be followed as if such members reported sick or injured while not on duty.

When a member reports sick or injured while on duty and reports to the Police Surgeon's office, a Police Form, Surg. 2 " CERTIFICATE OF EXCUSE FROM DUTY " ( yellow in color ) will be filled out and signed by the Police Surgeon or his Assistant and forwarded to the office of the District, Bureau or Unit to which the sick or injured member is assigned.

No member who has been on Sick Leave is to be permitted to resume active duty until he presents the completed Police Form, Surg. 4, to the Officer in Charge of the District, Bureau or Unit to which he is assigned.

## GENERAL POLICE ORDER

NO. 9-52                    HEADQUARTERS  January 30, 1952

SUBJECT:  NEW PROCEDURE AND MANNER FOR MEMBERS REPORTING SICK OR INJURED WHILE ON DUTY AND WHILE NOT ON DUTY.

Page 5

District, Bureau or Unit offices will establish a file for these reports and all forms pertaining to the same illness or injury of each member are to be clipped together.

A preliminary supply of Police Forms, Surg. 3 " DISABILITY REPORT " will be furnished to each command. Further supplies are to be obtained from the Police Department Store Room. This Police Form, Surg. 3 is the only form that will need to be stocked at District, Bureau or Unit Headquarters.

Samples of the other Police Forms, Surg. 2, 4, 5, and 6 will be forwarded for the purposes of information only and will not be stocked at any Headquarters except the Office of the Police Surgeon.

The above procedure need not be followed where a member is seriously injured while in the performance of duty or where he becomes ill during his tour of duty and has to be hospitalized. In such event the Office of the Police Surgeon should be immediately advised during its office hours and, if after office hours, effort should be made to contact the Police Surgeon elsewhere if such action is deemed to be necessary or desirable.

C-O-N-T-I-N-U-E-D

## GENERAL POLICE ORDER

No. 9-52                    HEADQUARTERS January 30, 1952₁₉

SUBJECT: NEW PROCEDURE AND MANNER FOR MEMBERS
REPORTING SICK OR INJURED WHILE ON DUTY
AND WHILE NOT ON DUTY.

### Page 6

Previous Orders as to the manner and pro-
cedure for members to report Sick or Injured
and those Orders providing for Superior Officers
to visit personally and report on members report-
ing Sick or Injured are hereby rescinded.

By Order of,

Frank W. Story,
Chief of Police.

Teletype

## GENERAL POLICE ORDER

NO. 34-75          HEADQUARTERS          August 14, 19 75

SUBJECT PUBLIC INFORMATION RELEASE RESPONSIBILITIES

TO THE MEMBERS OF THE DEPARTMENT

The Officer in Charge of the Record Section and
Officer in Charge of the Detective Bureau, or their
designees, shall have responsibilities to release
public information to the principals named as owners
or victims in original RC-1 crime and incident
reports, or to their authorized agents, and to the
news media representatives. Upon inquiry and proper
identification, information that is or will be
contained upon an RC-1 report regarding any specific
incident and such other information as may be
authorized by the Chief, shall be made available to
the news media.

Whenever major crimes and other newsworthy incidents
occur and are brought to the attention of the
Department, investigating officers shall notify the
Record Room of those basic details which would
normally be included in the original RC-1 report.
This shall be done as soon as possible after the
basic information is gathered and as duty responsi-
bilities permit. Police service remains the primary
responsibility and as such must receive priority
and official police attention, first.

In felony matters, the Officer in Charge of the
Detective Bureau shall also be notified and provided
with the same basic details. The Sector Supervisor,
the Captain in Charge, and the Operations Officer
shall be responsible for the proper completion of
these notifications to the Record Room and Detective
Bureau.

CLE000307

## GENERAL POLICE ORDER

No. 34-75          HEADQUARTERS August 14,          75
                                              19___

SUBJECT: PUBLIC INFORMATION RELEASE RESPONSIBILITIES

(2)

Investigating officers in the field or at the various
Districts or Units may release the same information
to the media. Limitations are set forth in GPO 26-75
and Rules 41, 47, and 97 and shall govern the actions
of all members.  A member's response of a flat
refusal to an inquiry based on Departmental Rules
and Orders which he alleges prohibit the release of
all information is improper and in itself a viola-
tion of the Rules and Orders.

GPO 26-75 shall be read together with this order and
Commanding Officers shall be responsible for the
proper and adequate instruction of all their
personnel and for the proper police action for any
violations of Rules or Orders in this regard.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

CLE000308

## GENERAL POLICE ORDER

NO. **33-75**        HEADQUARTERS _____ August 7, 19 75

SUBJECT : **SUPERVISORY & COMMAND RESPONSIBILITIES**

SUPPLEMENT TO GPO 16-75

TO THE MEMBERS OF THE DEPARTMENT

Any deficiency in police operations in any Bureau, District, Division or Unit, that is attributable to shortages of personnel, vehicles or other equipment, or to inadequacy of procedures, shall be noted by Superior Officers and Commanding Officers and shall be the subject of a Form #1 report.

Said report shall not be complete and the supervisory and command responsibilities will not have been fulfilled, unless some corrective action has been undertaken and the nature of such action included in the report in complete detail.

Normal supervisory activity and corrective or disciplinary action in matters of personnel performance and conduct shall be handled in accordance with existing Rules, GPOs and Procedures.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

CLE000309

## GENERAL POLICE ORDER

No. 32-75

HEADQUARTERS, August 6 19 75

SUBJECT: SUPPLEMENT TO GPO 45-71 (OPERATIONS OFFICER)

TO THE MEMBERS OF THE DEPARTMENT

It shall be the duty of the Operations Officer to ensure that all police matters of major importance involving on-duty or off-duty members of the Department, major crimes, missing juveniles, crimes involving prominent persons, disorders, disasters, and other police incidents of a serious nature which should be brought to the attention of the Chief of Police are entered properly on the "Items of Interest" report which is kept at the Communications Control Center and are made up under the direction of the Officer in Charge of the C.C.C.

The Officer-in-Charge of the C.C.C. of the 1st Platoon shall ensure that the "Items of Interest" reports are delivered to the Chief's Office as early as possible each day the Chief's Office is open.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

CLE000310

## GENERAL POLICE ORDER

No. 31-75              HEADQUARTERS       August 4      19 75

SUBJECT: MISDEMEANOR ARREST PROCEDURE -- FORM #1
REQUIRED

TO THE MEMBERS OF THE DEPARTMENT

In misdemeanor arrests without a warrant, members shall complete a Form #1 report containing all of the facts connected with the areest. One legible copy of the Form #1 report shall be attached to the Booking Card and forwarded with it to Central Station where Court Officers shall remove and deliver same to the Office of the Police Prosecutor.

These reports are needed to provide the Prosecutors with all the necessary information, sufficiently in advance of the trial, to enable proper case preparation and effective prosecution.

This procedure shall <u>not</u> relieve members of the requirement to consult with the Police Prosecutor before the trial to obtain a proper affidavit, and this must still be done.

Exceptions to this procedure shall be arrests for Driving While Intoxicated (DWI) and other traffic cases, Shoplifting and Disorderly Conduct (Intoxication), <u>unless</u> there are extenuating circumstances, the details of which the Prosecutor should be made aware. These arrest categories with unusual circumstances would then require completion and delivery of Form #1 reports as in other cases.

## GENERAL POLICE ORDER

No. 31-75  HEADQUARTERS_____ August 4  75
19___

SUBJECT: MISDEMEANOR ARREST PROCEDURE -- FORM #1
REQUIRED

(2)

In consulting with the Prosecutor in these cases, members shall present a copy of the OH-4 Crash Report and/or Urinalysis Report or the RC-1 Crime Report, as applicable, instead of the Form #1 report. Further prosecution of these cases shall be conducted according to existing procedures in GPOs 29-75, 4-72, and 4-66.

Copies of reports submitted to the Prosecutor, and Form #1 reports used as the Officer's statement in felony cases, must be complete, concise and legible.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

CLE000312

## GENERAL POLICE ORDER

No. 30-75                HEADQUARTERS        August 4        75
                                                          19___

SUBJECT: PROPER DISTRIBUTION & UTILIZATION OF POLICE

VEHICLES-LOANER VEHICLE TO THE BUREAU OF PATROL

TO THE MEMBERS OF THE DEPARTMENT

The effective operation of the Bureau of Patrol depends upon
the availability of Police vehicles on a 24 hour basis.
During the hours of the 2nd and 3rd Platoon, their vehicle
needs must be met by making available those vehicles not
normally in use.

Therefore, the Traffic Bureau and the Detective Bureau shall
provide a list of all vehicles available for use by District
Zone personnel on the 2nd and 3rd Platoons. This shall
include all vehicles not in use when there is a shortage in
the Bureau of Patrol and none shall be allowed to remain idle.
This information shall be transmitted to the Operations
Office at the C.C.C. Headquarters as early as possible each
day.

Officers-in-Charge at the District shall communicate their
needs to the C.C.C., and the Operations Officer, or his
designee, shall apportion all available vehicles among the
Districts.

The Bureau of Patrol shall be responsible for the proper
care, use and cleanliness and prompt return of all vehicles
borrowed from another Bureau. They shall exercise good
judgement in the operation of all vehicles and shall be held
responsible under Rule 76 for any damages or failure to
maintain them in a clean and serviceable condition.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

## GENERAL POLICE ORDER

N₂29-75 _____        **HEADQUARTERS** _July 31_ _____ 7 5
_19____

**SUBJECT:** INTOXICATION ARREST PROCEDURE

TO THE MEMBERS OF THE DEPARTMENT

Effective August 1, 1975, in order to facilitate
proper presentation of Disorderly Conduct(Intoxi-
cations) cases in Municipal Court, the following
shall apply:

Persons arrested for "Disorderly Conduct" (Intoxi-
cation) MC 19.10103 (B) shall be booked at District
Stations or the Jail Unit, if arrested in the 3rd
District.

The arresting Officer shall furnish the specific
circumstances and details of the arrest to the
Booking Officer for proper completion of the Booking
Card and Affidavit Form. If more than one (1)
person is arrested at a particular location, at the
same time, the manes of these other persons shall
also be included on each Booking Card.

The "Disorderly Conduct" (Intoxication) Affidavit
Form shall be completed in the following manner:

Entries by Arresting Officer

1. Complete name of person arrested.
2. Day, Month and Year.
3. Insert "Cleveland".
4. Complete name of person arrested.
5. Encircle the number corresponding to the elements
   of the offense.
6. Complete signature of arresting officer with
   badge number.

CLE000314

## GENERAL POLICE ORDER

No. 29-75         HEADQUARTERS         July 31,      75
                                                     19

SUBJECT: INTOXICATION ARREST PROCEDURE

(2)

Entries made by Deputy Clerk (Sergeant or Lieutenant)

7. Day, Month and Year.
8. Complete signature of Deputy Clerk with rank.

*NOTE - This affidavit shall be completed only for
        cases of "Disorderly Conduct" (Intoxication)
        MC 19.10103 (B), a Minor Misdemeanor.
        "Disorderly Conduct" (Intoxication) a Misde-
        meanor of the 4th Degree with aggravated
        circumstances, and regular Disorderly
        Conduct, shall require the arresting Officer
        to consult with a Police Prosecutor to
        obtain an affidavit.

The completed Affidavit Form shall be presented to
a Superior Officer Deputy Clerk for his signature,
Prior to affixing his signature, the Superior
Officer shall examine the Booking Card and the
Affidavit Form for completeness and accuracy.

The Affidavit Form shall be attached to the Booking
Card and forwarded to the Jail Unit together with
the prisoner. The Jail Unit shall forward the
affidavit to the Court Unit for processing.

Officers of the Court Unit shall convey the affidavit
and the copy of the Booking slip to the Prosecutor's
Office for a Prosecutor's signature, and then to the
Clerk's Office for the issuance of a warrant. The
Affidavit, the copy of the Booking slip and Warrant
shall then be presented in Court.

CLE000315

## GENERAL POLICE ORDER

NO. 29-75        HEADQUARTERS July 31, 19 75

SUBJECT: INTOXICATION ARREST PROCEDURE

### (3)

The blank Affidavit Forms shall remain in the
District Station or Jail Unit and shall not be
distributed to individual officers or kept in
patrol cars. Deputy Clerks shall be responsible
for the distribution of the Affidavit Forms as
needed. Blank forms will be available at the Court
Unit until 3:00 P.M. each court day.

Departmental personnel shall discontinue using the
"Information for Municipal Court" Form C of C 71-2
as this form is no longer used by the Municipal
Court judges.

Copies of this order shall be distributed to each
member.

General Police Order 138-51 is hereby rescinded.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

CLE000316

GENERAL POLICE ORDER 29-75

SUBJECT:  INTOXICATION ARREST PROCEDURE                    July 31,1975

TO THE MEMBERS OF THE DEPARTMENT

E  ective August 1, 1975, in order to facilitate proper presentation of Disorderly Conduct
(Intoxications) cases in Municipal Court, the following shall apply:

Persons arrested for "Disorderly Conduct" (Intoxication) MC 19.1010 (B) shall be booked at
District Stations or the Jail Unit, if arrested in the 3rd District.

The arresting Officer shall furnish the specific circumstances and details of the arrest to
the Booking Officer for proper completion of the Booking Card and Affidavit form.  If more
than one (1) person is arrested at a particular location, at the same time, the names of
these other persons shall also be included on each Booking Card.

The "Disorderly Conduct" (Intoxication) Affidavit Form shall be completed in the following
manner:

ENTRIES by ARRESTING OFFICER

:    Complete name of person arrested.
2.   Day, Month and Year.
3.   Insert "Cleveland".
4.   Complete name of person arrested.
5.   Encircle the number corresponding to the elements of the offense.
6.   Complete signature of arresting officer with badge number.

ENTRIES MADE by DEPUTY CLERK (Sergeant or Lieutenant)

7.   Day, Month and Year.
8.   Complete signature of Deputy Clerk with rank.

*NOTE – This affidavit shall be completed only for cases of "Disorderly Conduct" (Intoxication)
         MC 19.1010 (B), a Minor Misdemeanor.  "Disorderly Conduct" (Intoxication) a Misde-
         meanor of the 4th Degree with aggravated circumstances, and regular Disorderly Conduct,
         shall require the arresting officer to consult with a Police Prosecutor to obtain an
         affidavit.

The completed Affidavit Form shall be presented to a Superior Officer Deputy Clerk for his
signature.  Prior to affixing his signature, the Superior Officer shall examine the Booking
Card and the affidavit Form for completeness and accuracy.

The Affidavit Form shall be attached to the Booking Card and forwarded to the Jail Unit to-
gether with the prisoner.  The Jail Unit shall forward the affidavit to the Court Unit for
processing.

Officers of the Court Unit shall convey the affidavit and the copy of the Booking slip to the
Prosecutor's Office for a Prosecutor's signature, and then to the Clerk's Office for the
issuance of a warrant.  The Affidavit, the copy of the Booking slip and Warrant shall then be
presented in Court.

The blank Affidavit Forms shall remain in the District Station or Jail Unit and shall not be
di  ributed to individual officers or kept in patrol cars.  Deputy Clerks shall be responsible
for the distribution of the Affidavit Forms as needed.  Blank forms will be available at the
Court Unit until 3:00 PM each court day.

(Continued)

CLE000317

Page 2

Departmental personnel shall discontinue using the "Information for Municipal Court" Form C of C 71-2 as this form is no longer used by the Municipal Cou judges.

Copies of this order shall be distributed to each member.

General Police Order 138-51 is hereby rescinded.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

CLE000318

CLE0000319

Sgt. Brearly

CITY OF CLEVELAND

vs.

CLEVELAND
MUNICIPAL COURT

COMPLAINT FOR
DISORDERLY CONDUCT
B

M.C. 19.10103
M.M.

Attorney

*****NOTE: TO BE ATTACHED TO COPY OF GPO - 29-75 (INTOXICATION ARREST PROCEDURE******

**COMPLAINT FOR DISORDERLY CONDUCT - B-M.C. 19.10103**

**THE STATE OF OHIO**
**CUYAHOGA COUNTY** ss.       **IN THE CLEVELAND MUNICIPAL COURT**
**CITY OF CLEVELAND**

The undersigned complainant, being duly sworn, states that on or about the _____ day of

_____ ,19___, within _____, Ohio,

_____ did, while voluntarily intoxicated either
                    defendant

of the following:

(1) In a public place or in the presence of two or more persons, engage in conduct likely to be offensive or to cause inconvenience, annoyance, or alarm to persons of ordinary sensibilities, which conduct the offender, if he were not intoxicated, should know is likely to have such effect on others.

(2) Engage in conduct or create a condition which presents a risk of physical harm to himself or another, or to the property of another.

_____
                                    (complainant)

Sworn to and signed in my presence this _____ day of _____

19 _____, at Cleveland, Ohio

**HERBERT R. WHITING**                    HELEN J. LYONS, CLERK
**Prosecuting Attorney, City of Cleveland, Ohio**       Cleveland, Municipal Court

BY _____          BY _____
        Assistant Prosecutor                        Deputy

CLE000320

## GENERAL POLICE ORDER

28-75                                    July 25, 1975

No._____          HEADQUARTERS_____19___

SUBJECT: DEPUTY CLERK OF COURT STATUS FOR LIEUTENANTS AND SERGEANTS

TO THE MEMBERS OF THE DEPARTMENT

All Lieutenants and Sergeants in the Department shall be sworn in as Deputy Clerks of Municipal Court.

Forthcoming procedures will require arresting officers, making Disorderly Conduct (Intoxication) arrests, to complete a sworn affidavit and it will be required that this be done before a Deputy Clerk of Court. This procedure will also be required in some other misdemeanor violations for which the yet to be implemented all purpose misdemeanor ticket will be used.

Present Deputy Clerk status applies only to the Uniform Traffic Ticket and will not apply to the new procedure.

Eileen Gallagher, Deputy Clerk of Municipal Court, will administer the oath in Court Room #3 according to the following schedule. All Lieutenants and Sergeants, except those on annual furlough, shall report to the Court Officer who will record the date of their deputization. Currently furloughed members shall arrange for their deputization upon their return to duty.

     Tuesday, July 29, 1975 at 8:00 AM or 4:00 PM
     Thursday, July 31, 1975 at 8:00 AM or 4:00 PM

Bureaus, Districts and Units shall arrange for scheduling and the notification of Superior officers in these ranks.    By order of,
                              LLOYD F. GAREY
                              CHIEF OF POLICE

CLE000321

# GENERAL POLICE ORDER

No. **27-75**          HEADQUARTERS **July 19,1975** 19___

SUBJECT: PROPER CONDUCT IN THE PERFORMANCE OF
POLICE DUTIES AND OBEDIENCE TO ORDERS

TO THE MEMBERS OF THE DEPARTMENT

All members are expressly directed to give full
compliance to Rules 39, 70, 77-1-2-3, 78, 99-2
and 100-5.

No member may refuse to report on any police
related matter or other matter required by,or in
connection with,any Rule of the Manual of Rules,
any General Police Order, any Departmental Notice
or Memorandum, or when required by any police
investigation, arrest, or other police action or
activity, except under some circumstances when he
is suspected or accused of a specific criminal
act and it would actually constitute a violation
of his right not to incriminate himself.

There is no other justification for refusal on
advice of, or in order to consult with, legal
counsel as an exercise of the right against self
incrimination.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

CLE000322

## GENERAL POLICE ORDER

26-75                                    July 18, 1975

No._____          HEADQUARTERS_____19____

SUBJECT: UNAUTHORIZED AND PROHIBITED COMMENTS, COMMUNICATIONS AND INTERVIEWS

TO THE MEMBERS OF THE DEPARTMENT

All members are expressly directed to give full compliance to Rule 41, Rule 47 and Rule 97.

These rules shall be interpreted to mean that public interviews and comments and other written or oral communications on police matters or other Departmental information require the authorization of the Chief of Police. This includes contacts with all agencies, public and private, as well as individual persons. This shall include police agencies and the news media.

Needless to say, authorization will be dependent upon the nature of the information sought or offered, and nothing violative of the rules or detrimental and not in the best interests of law enforcement or the Cleveland Police Department or it's members or objectives, will be permitted to be divulged or made the subject of comment.

Victims and other principals connected with specific crime reports and members of the news media may be given the information contained in official RC-1 reports, that which is considered information of public record. Members may release no other investigative information or other witness identities or information such as would be contained in Supplementary or Form #1 information-reports.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

CLE000323

## GENERAL POLICE ORDER

No. 25-75                    HEADQUARTERS July 16,        75

SUBJECT: AMENDMENT TO GPO 41-72 - - DRESS AND
PERSONAL APPEARANCE CODE

TO THE MEMBERS OF THE DEPARTMENT

Section B--Personal Appearance and Grooming Regu-
lations--of GPO 41-72 is hereby rescinded and, in
order to minimize the need for interpretation,
shall be replaced with a more specific and defini-
tive Section B as follows:

B. Personal Appearance and Grooming Regulations:

The following standards shall be in effect for
male police officers:

1. Hair shall be kept neatly groomed and its
   length and bulk shall not be excessive nor
   present a ragged, unkempt or extreme appear-
   ance.

2. No hair style shall interfere with the wear-
   ing or proper positioning of the uniform
   cap. Hair may not cover the forehead and
   may never be visible on the forehead while
   the uniform cap is worn.

3. Hair shall be evenly tapered on the sides
   and back. The hair outline shall follow
   the contour of the ear and no hair shall
   fall over the ears or touch the collar
   except for the closely cut hair at the
   back of the neck.

CLE000324

## GENERAL POLICE ORDER

No. 25-75

HEADQUARTERS July 16, 19 75

SUBJECT: AMENDMENT TO GPO 41-72 --DRESS AND PERSONAL APPEARANCE CODE

Page Two

4. Sideburns shall be kept neatly trimmed and their bulk shall not be excessive.

5. Mutton-chop sideburns are prohibited and the base of the sideburns shall be a clean shaven horizontal line.

6. Sideburns shall not exceed one inch in width nor extend below the lobe of the ear.

7. Mustaches shall be kept neatly trimmed and shall not extend below the upper lip. Nor shall they be excessively thick or bushy, nor extend laterally beyond the corners of the mouth nor be styled, treated, or pointed so that the ends curl or protrude away from the contour of the face or extend upward higher than the lowest part of the nose.

8. The face shall be clean shaven. Bears and goatees are prohibited.

9. Male officers may not wear unusual body adornments or jewelry such as earrings, combs, etc.

The following standards shall be in effect for female police officers:

1. No hair style shall interfere with the wearing or proper positioning of the uniform cap.

## GENERAL POLICE ORDER

No. 25-75            HEADQUARTERS July 16,          75

SUBJECT : AMENDMENT TO GPO 41-72--DRESS AND PERSONAL
APPEARANCE CODE

Page Three

2. The hair shall not extend downward below the lower edge of the shirt collar and longer hair shall be worn up when on duty.

3. Hair styles that obscure the vision are prohibited.

4. Moderate use of facial makeup is permissible for uniform wear.  Heavy makeup is prohibited.

5. Female officers may not wear unusual body adornments or jewelry such as earrings, combs, etc. while on duty in uniform.

The following standards shall apply to both male and female officers:

1. Jewelry while on duty shall be conservative and limited to rings, watches, lapel pins, tie clasps and cuff links.

2. Civilian dress, when permitted while on duty, shall be of a conservative style, designed for safety and freedom of movement.  Extreme or eccentric styles are prohibited.

The above regulations shall apply to all police officers whether assigned to uniformed or civilian dress duty.

CLE000326

## GENERAL POLICE ORDER

NO. 25-75                                    HEADQUARTERS                     July 16,                    75  19

SUBJECT: AMENDMENT TO GOP 41-72--DRESS AND PERSONAL
APPEARANCE CODE

Page Four

Exceptions to the dress code and personal appearance regulations shall be permitted only when required for police purposes and must be authorized by Commanding Officers and then only with the express approval of the Chief of Police.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

ks: TELETYPE

CLE000327

## GENERAL POLICE ORDER

No. 24-75          HEADQUARTERS___ July 14 _____ 19 75

SUBJECT: SAFE DRIVING – COMPUTER MOBILE TERMINAL
          OPERATIONS PROCEDURE
TO THE MEMBERS OF THE DEPARTMENT

Safe driving of police vehicles is essential for
the safety of the public and of members of the De-
partment. All members are to operate police vehicle
in a safe and courteous manner.

Members driving police vehicles are not to use the
computer mobile terminal or call messages on its
display screen while the vehicle being driven is
moving. Only the passenger member shall use the
terminal during vehicle movement when such usage
can be done safely. One-man mobile terminal equippe
vehicles shall use the mobile terminal only when
the vehicle is not moving.

Commanding officers shall instruct members of their
command in safe driving and the safe use of compute
mobile terminals.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

rs:TELETYPE

CLE000328

# GENERAL POLICE ORDER

No. 23-75           HEADQUARTERS  July 8           19 75

SUBJECT: AMENDMENT TO PROCEDURES FOR DAILY SICK CALL AND MEDICAL TREATMENT OF MEMBERS BY THE SAFETY DEPARTMENT MEDICAL BUREAU

TO THE MEMBERS OF THE DEPARTMENT

Procedures governing Sick Call and other visits to the Medical Bureau for treatment or examination shall be amended as follows:

Whenever required, all members shall report to the Medical Bureau between 8:00 AM and 10:30 AM on the days that it is open. This includes members reporting for "Sick Call", those already on sick leave who are fulfilling their obligation to report for treatment or return to duty examinations; and, those who are reporting for "Restricted Duty" rechecks.

Members reporting after 10:30 AM will be regarded as not having reported as ordered and shall be subject to disciplinary action. When there is an extenuating circumstance, such as members delayed attending court, sudden illness or sudden minor injury, the member is to call the receptionist prior to 10:30 AM.

Physicians shall be at the Medical Bureau between 8:00 AM and 12 Noon daily except Saturday, Sunday and Holidays. Members requiring emergency treatment of injuries shall report during these hours to the Medical Bureau, except in those cases of severe injuries requiring immediate treatment at the nearest Hospital Emergency Room.

General Police Order 38-71 is hereby rescinded.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

CLE000329

## GENERAL POLICE ORDER

No. 22-75                    HEADQUARTERS_____June 30, 1975_____19___

SUBJECT: __Special Attention to Playgrounds, School Yards and__
__Residential areas__

TO THE MEMBERS OF THE DEPARTMENT

Members are hereby directed to give special attention to
playgrounds, school yards and residential areas.  Large
groups of rowdies have been frequenting these areas and have
become a constant source of annoyance and concern to residents

Commanding Officers will, therefore, cause these areas to be
inspected as frequently as possible by members of their
command and take whatever enforcement action that is needed.

Ordinance 7.032801 authorizes the Commissioner of Recreation
to determine the hours during which any recreational facility
of the City of Cleveland shall be closed to the public use
and shall post appropriate signs indicating such hours; and
that no unauthorized persons shall be or remain on or in
any of said areas during such hours.

Members shall observe the hours indicated on such posted
signs and enforce the provisions of the ordinance.  Violators
shall be warned and dispersed; flagrant violators shall be
arrested and charged.

Where no signs at city recreational facilities are evident,
members shall prepare a Form 1 report to be forwarded to the
Chief's Office who will provide for notifying the Commiss-
ioner of Recreation of lack of signs at those facilities.

General Police Order 24-72 of May 11, 1972 is hereby
rescinded.

By order of,

Lloyd F. Garey
LLOYD F. GAREY
CHIEF OF POLICE

lpw:TSIFTYPE

# GENERAL POLICE ORDER

No. 21-75                    HEADQUARTERS   June 30, 1975   19

SUBJECT: OHIO REVISED CODE, SECTION 4511.13 C-2, RIGHT TURN
         PERMITTED ON RED LIGHT

TO THE MEMBERS OF THE DEPARTMENT

As of July 1, 1975 Ohio Revised Code 4511.13 C-2, permits a
right turn after stopping for a red traffic light unless
such a turn is prohibited by local ordinance.

If a "NO RIGHT TURN" sign does not appear at the intersection
a right turn on red may be made but only after making a
complete stop. While so stopped the driver of a vehicle must
observe the following three conditions at the intersection
prior to making a right turn:

1) To yield the right of way to traffic approaching from
   the left on the roadway to be entered.

2) Yield the right of way to vehicles approaching from the
   opposite direction making a left turn on a "Left Turn"
   green arrow control.

3) Yield the right of way to pedestrians crossing the
   intersection in a crosswalk. Pedestrians are controlled
   by traffic signals and have the right of way over
   vehicles making right turns.

Where no turn on red is permitted, each intersection
controlled by a traffic signal must be posted with a "NO
TURN ON RED" sign.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

tpw:TELETYPE

CLE000331

## GENERAL POLICE ORDER

No. 20-75                    HEADQUARTERS                    June 25 _____ 75 19__

SUBJECT: COMPUTER TERMINAL TRAINING - GENERAL PROCEDURES
AND REGULATIONS FOR OPERATION AND USE

( PAGE 3 )

3) When a reported stolen vehicle license is observed moving, broadcast for confirmation as soon as possible Use caution. Use professional judgement. Stop the vehicle and detain the occupants. Get confirmation.

4) Read computer messages completely. Persons wanted and stolen vehicles are described. Types of license plates are given.

5) Do not detain persons reported wanted for minor offenses by other jurisdictions for an unreasonable length of time while waiting for confirmation from the Warrant & Suspect Unit. A reasonable time in the absence of unusual conditions is approximately ten minutes. When confirmation is received from the Warrant & Suspect Unit the person wanted is to be booked before release to police officers of the jurisdiction of want.

6) Learn to use computer information files to assist you in all phases of your police duties.

7) Do not transmit any messages to any other law enforcement agency which require manuel intervention by the agency receiving the message. All such messages shall be sent by the Detective Bureau.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

# GENERAL POLICE ORDER

NO. 20-75     HEADQUARTERS     June 25     75     19

SUBJECT: COMPUTER TERMINAL TRAINING - GENERAL PROCEDURES
AND REGULATIONS FOR OPERATION AND USE

## ( PAGE 2 )

Training officers shall provide individual training
in the operation, understanding of computer messages,
and care of computer hardware. They shall, after
training each officer, test the understanding of the
officer trained by examination.

When the instructed officer demonstrates his under-
standing of computer terminal usage, the instructor
shall certify that the officer has been trained and
qualified to use the computer mobile terminal for
information.

Officers receiving training shall certify their
receiving of this training and their understanding
of computer mobile terminal operation, its information,
messages, and care of its hardware.

Members shall be governed by the following rules of
computer operation:

1) Do not use the computer terminal for information
until you have been instructed in the computer
operation and in understanding response messages.

2) Do confirm all active responses - hits - with the
Auto Theft Unit (vehicles); with the Warrant &
Suspect Unit (persons); and with the Message Center
for articles of property, boats, guns and securities.

CLE000333

## GENERAL POLICE ORDER

No. 20-75      HEADQUARTERS June 25      7-5

SUBJECT COMPUTER TERMINAL TRAINING - GENERAL PROCEDURES

AND REGULATIONS FOR OPERATION AND USE

TO THE MEMBERS OF THE DEPARTMENT

Computer mobile terminals are being installed in Department police cars. Members of the Department shall be trained in computer mobile terminal operations and information responses. No member of the Department shall use computer mobile terminal response information until he has been certified for its usage.

To provide this training, Commanding Officers of each District and Unit to be assigned computer mobile terminals shall designate a training officer for each platoon under his command. Commanding Officers of each platoon shall supervise the training program within his platoon. The training officer designated shall be a superior officer or an officer whose past experience with computer mobile terminals can be utilized for effective training. All members of the platoon shall receive this training.

Training officers designated by their commanding officers shall attend an Instructor's training class to be held at the Police Academy. Three classes will be held, one on Monday, June 30, 1975 at 9:00 A.M. for designated trainers, first platoon; one on Monday June 30, 1975 at 4 P.M. for designated trainers, second platoon and one on Tuesday, July 1, 1975 at 4 P.M. for designated instructors assigned to the second platoon during July. Each class will last about four hours.

## GENERAL POLICE ORDER

No. 19-75      HEADQUARTERS     June 5    75   19____

SUBJECT: RECOMMENDATION FOR TRANSFER OR REASSIGNMENT

TO THE MEMBERS OF THE DEPARTMENT

Commanding Officers desiring the assignment of certain personnel to their commands or to special assignments shall submit such requests in writing, identifying the individual or individuals, together with the type of assignment for which the request is made, the reason therefore and the work performance record and qualifications of said individual. Establishment of sustained special assignment details shall be similarly handled.

Superior Officers may make recommendations for the reassignment or transfer of members which shall be forwarded in writing through his Commanding Officer. They shall include a summary of the individual's work performance record, attitude and qualifications.

Any requests for transfer, special assignment or expressions of dissatisfaction with treatment accorded them by their Superior Officers shall be reported on a Form #1 report. These reports shall be forwarded to the Chief's Office for consideration and determination. Such reports shall not require a Superior Officer's approving signature and may be forwarded in a sealed envelope in the Administrative Unit's "Locked Box", or through regular departmental mail. The content of the reports will be considered confidential and used only in determining assignments fairly and in a manner that will serve the best interests of the Department.

CLE000335

## GENERAL POLICE ORDER

NO. 19-75       HEADQUARTERS       June 5    19 75

SUBJECT: RECOMMENDATION FOR TRANSFER OR REASSIGNMENTS

Page (2)

Such reports shall include:

    1. Date of appointment

    2. Number of years in current assignment

When the report is a request for a transfer or special assignment, additionally include:

    3. Reason for request

    4. New assignment preferred and qualifications

General Police Order 14-70  and Departmental Notice 73-50 are hereby rescinded.

           By order of

           LLOYD F. GAREY
           CHIEF OF POLICE

CLE000336

## GENERAL POLICE ORDER

No. 18-75          HEADQUARTERS  June 4,          75 , 19

SUBJECT: COMPUTER MOBILE TERMINALS

TO THE MEMBERS OF THE DEPARTMENT

On June 4, 1975 the Radio Repair Unit, East 49th Street and Harvard Avenue will begin installation of computer mobile terminals in Departmental patrol vehicles. Each vehicle will receive a Kustom-MCT-10 computer mobile terminal, a Kustom MP10 mobile printer, and a Kustom DR10 digital radio. Each of these units of hardware has an identifying serial number. Each computer terminal has an identification key which is inserted in the back of the terminal.

At the time equipment is installed into a police vehicle, the officer receiving the equipment shall sign for the equipment received. He shall then notify the Officer-in-Charge of his District or Unit of assignment that he has received the equipment, identified by serial number. He shall record the computer equipment received in his duty report. The equipment is to be signed for on the duty reports of each succeeding platoon.

Officers-in-Charge of Districts and Units shall maintain a computer hardware log book. This book shall record all transactions of receiving, delivery, and exchanging of computer terminals, digital radios, and computer printers. The log book shall contain the date, the type of equipment, serial number, what transaction occurred, and the verifying signature. The log book shall at all times record the current location of computer hardware.

CLE000337

---

## GENERAL POLICE ORDER

No. 18-75          HEADQUARTERS          JUNE 4, 75

SUBJECT: COMPUTER MOBILE TERMINALS

– 2 –

The computer terminal, digital radio, and printer
is to remain with the vehicle of initial instal-
lation but shall be removed from the vehicles in
the event of the following conditions:

1. CAR IS TAKEN OUT OF SERVICE – In this event
   the officers last assigned to the car shall
   remove the computer terminal, digital radio
   and printer and return it to his District or
   Unit Headquarters.  The Officer-in-Charge of
   the District or Unit shall log the receipt of
   the equipment, sign the log entry and provide
   for the safe storage of the equipment.  When
   the equipment is returned to service, the
   Officer receiving the equipment shall sign the
   log to record his receiving of the equipment.

2. MAINTENANCE – In the event of equipment mal-
   function, the computer, terminal, digital radio,
   and printer unit is to be taken to the Radio
   Repair Unit for repairs.  Radio Repair Unit
   personnel will log the receipt of the equip-
   ment received and equipment exchanged.  The
   Officer delivering the computer equipment or
   receiving a replacement shall obtain a receipt
   from Radio Repair Unit personnel for all equip-
   ment delivered or exchanged.  The receipt shall
   contain the date, time, the type of equipment,
   the serial number of the equipment, the trans-
   action and the signature of the person of the

CLE000338

## GENERAL POLICE ORDER

No. 18-75          HEADQUARTERS          June 4, 19 75

SUBJECT: COMPUTER MOBILE TERMINALS

- 3 -

Radio Repair Unit receiving or exchanging the
equipment. He shall notify his Officer-in-Charge
of the transaction, enter the transaction on his
duty report, and deliver the receipt to the Officer-
in-Charge of his District or Unit. The Officer-
in-Charge of the District or Unit shall log the
transaction into the log book and file the receipt
of exchange or delivery in a file kept for this
purpose.

3. <u>EXCHANGE WITHIN THE UNIT</u> - in the event a vehi-
   cle's computer equipment is in need of mainte-
   nance and the District or Unit of his assign-
   ment has on site spare computer equipment, the
   malfunctional equipment can be exchanged with-
   in the District or Unit. The exchange of
   equipment shall be logged by the Officer-in-
   Charge.

All Districts and Units shall take monthly inven-
tory on the last day of the month of all computer
hardware equipment received and shall report by
Form 1 report to the Chief's Office on the result
of each inventory taken.

Computer mobile equipment is constructed to with-
stand normal operating conditions. However, as in
all sophisticated electronic equipment, the equip-
ment can be severly damaged by careless handling.
When it is necessary to remove computer equipment,
care must be maintained that it is removed accord-
ing to instructions members will have received and

CLE000339

## GENERAL POLICE ORDER

No. 18-75      HEADQUARTERS     June 4,    19 75

SUBJECT: COMPUTER MOBILE TERMINALS

— 4 —

that they are not dropped. All members shall be
certain that in the event their vehicle is to
receive a battery boost by jumping a power source
from another vehicle or other power source, the
computer terminal and radios must be shut off.

Computer terminals can be wiped clean by a damp
paper towel or unabrasive cloth. Care shall be
given to prevent any liquid from seeping into the
keyboard area of the terminal.

Computer hardware log books are available at the
Supply Unit for each District and Unit receiving
mobile terminals.

By order of,


LLOYD F. GAREY,
CHIEF OF POLICE

TELETYPE

## GENERAL POLICE ORDER

No. 17-75          HEADQUARTERS          June 3,          75
                                                          19

SUBJECT: VICE ENFORCEMENT PROCEDURES

TO THE MEMBERS OF THE DEPARTMENT

It is the policy of this Department to vigorously
enforce all laws and ordinances dealing with gam-
bling, liquor, prostitutuion or other vice activity
and it is the duty of all officers and members of
the Department, regardless of assignment to assist
in this function when opportunity warrants it.

The efforts of the Department shall be concen-
trated on a permanent solution of the problem
rather than a temporary alleviation of complaints.
Continued arrests, harassment or attention direct-
ed at persons or locations that persist in violat-
ing the law are wasteful of police manpower di-
verting it from concentration on the total crime
problem.

Officers directly charged with the responsibility
of eliminating such complaints shall direct their
efforts to making use of all Department procedures,
laws and ordinances which will best serve the pur-
pose in permanently enjoining such operations. It
shall be their duty to make follow-up inspections
of vice complaint locations after the original
complaint has been answered and to take appropri-
ate action for all further violations.

Where several arrests have been made at a location
and the owners or operators continue their illegal
activity, a report shall be made requesting a
"Padlock Warning Letter" be sent by the Chief's
Office to the owner of the property via registered
mail.

CLE000341

## GENERAL POLICE ORDER

No. __17-75__          HEADQUARTERS _____ June 3,_____ 19 __75__

SUBJECT : ___ VICE ENFORCEMENT PROCEDURES _____

Page Two

Should illegal activity continue or arrests be
made subsequent to the forwarding of the "Padlock
Warning Letter", the County Prosecutor shall be
consulted with the view of taking legal action
through the courts to padlock the place.

The Bureau of Inspection shall make inspections
and maintain such records as shall insure that
the above procedures are properly carried out.

By order of,


LLOYD F. GAREY
CHIEF OF POLICE

ks:TELETYPE

CLE000342

## GENERAL POLICE ORDER

No. 16-75          HEADQUARTERS  June 3          75

SUBJECT: COMMANDING AND SUPERVISORY RESPONSIBILITIES
AND DUTIES -- CONDUCT, DISCIPLINE AND
PERFORMANCE

TO THE MEMBERS OF THE DEPARTMENT

Bureau and District Commanders, all Inspectors and
Deputy Inspectors shall be bound by the following
regulations:

The Command responsibility requires that one's
immediate superior be completely informed as to his
general whereabouts. This shall include his regular
duty tour and all other time. During off duty hours,
Inspectors and Deputy Inspectors shall be available
to the extent that they can be reached by telephone
within several hours. If they will be unavailable
for a longer period of time, their Superior must be
notified in advance and the latter shall arrange for
another command officer to fill his responsibility.

The Commanding Officer of Bureaus and Districts shall
be notified by the Operations Officer or other ranking
officer on duty, in the event of a major incident
that significantly affects the area of his command.
This shall include civil disasters, street and school
disorders of serious proportions, serious or major
crimes of public importance, or those affecting
important personages or a number of people or having
potentially widespread effects; serious police
personnel incidents involving death, danger of death
or serious injury, or the integrity, reputation or
image of the Department or its members.

### GENERAL POLICE ORDER

No. 16-75          HEADQUARTERS June 3                75
                                                      19

SUBJECT: COMMANDING AND SUPERVISORY RESPONSIBILITIES
         AND DUTIES -- CONDUCT, DISCIPLINE AND
         PERFORMANCE

                        Page (2)

In these instances, the Chief of Police shall also
be notified except when obviously unnecessary, in
which case the matter must be the subject of a
written report, delivered to the Chief's Office by
the following morning. Inspectors and Deputy
Inspectors shall cause proper action to be taken,
and shall personally respond to the scene when
necessary.

Inspectors and Deputy Inspectors normally shall be
on duty in their respective assignments, Monday
through Friday. In addition to the morning Chief's
Office Roll Call, they shall report daily to their
immediate Superior at 4:00 P.M. from their offices,
unless specifically precluded by an ongoing and
essential duty function which shall be reported in
detail on the daily Duty Report. All important police
matters and incidents shall be reported at this time.

During their tours of duty, they shall conduct all
necessary business within their assignments. They
shall remain therein except for reasons of police
necessity which must be reflected in the daily Duty
Report.

Inspectors and Deputy Inspectors shall be subject to
all Rules and Regulations and General Police Orders
and they shall be responsible for conditions within
their assignments with respect to effective police

CLE000344

## GENERAL POLICE ORDER

16-75                                            June 3          75

NO._____                    HEADQUARTERS_____19___

COMMANDING AND SUPERVISORY RESPONSIBILITIES

SUBJECT : _____
AND DUTIES -- CONDUCT, DISCIPLINE AND
PERFORMANCE

Page (3)

operations and effective supervisory activity which
shall be performed in the prescribed manner.

Commanding Officers shall effect the assignment of
their personnel efficiently and equitably with regular
rotation in specialized assignments and citizen's
dress details in the Bureau of Patrol, a minimum of
every 6 months, and, in the Detective Bureau on an
annual basis, except by authorized exception. All
special personnel assignments shall require the
approval of the Chief of Police.

Commanding Officers shall make comprehensive, clear
monthly reports of the results of the police
activities of their command. These reports shall
constitute a performance and status report, addressed
to the fulfillment of their specific police respon-
sibilities. This includes crime and arrest activity,
vice, response time, police-community relations, and
the performance of the personnel in his command.

Commanding Officers shall be governed by all Rules
and Regulations, General Police Orders, Departmental
Notices and Memoranda directed to them. They shall
cause full compliance by all subordinates. Non-com
pliance with the Rules and Regulations, General
Police Orders and prescribed Departmental Procedures
shall be the subject of corrective or disciplinary
action. Continuing and repeated violations shall be
considered a failure of supervision and the

## GENERAL POLICE ORDER

No. 16-75                 HEADQUARTERS June 3        75 19

SUBJECT: COMMANDING AND SUPERVISORY RESPONSIBILITIES
AND DUTIES -- CONDUCT, DISCIPLINE AND
PERFORMANCE

Page (4)

Superior Officers shall be subject to disciplinary
action. Superior Officers shall be responsible for
the conduct and performance of their subordinates.

Zone and other patrol units that are placed out of
service for lack of personnel or lack of vehicles
shall be fully explained. Time off or accumulated
time shall be granted only after the requirements
of Police duty assignments are considered and satisfied.

Overtime accumulation by all personnel shall be
restricted to the absolute minimum and all Superior
and Commanding Officers shall be responsible for close
supervision and strict compliance with this limitation.

All overtime earned must be certified as proper and
necessary for the effective operations of the Bureau,
District, Division or Unit. Exceptional cases, in
which the overtime appears excessive, shall be
explained.

Overtime shall be limited to those instances and to
the amount of time required to handle emergencies;
to complete essential police assignments or investi-
gations which extend beyond a normal duty tour and
that cannot be completed by other members who are on
a regular duty tour; for official court appearances
as witnesses in criminal prosecutions or in civil
cases as witnesses for the city or in support of said
member's official on-duty police actions; and to
attend authorized meetings.

## GENERAL POLICE ORDER

No. 16-75                    HEADQUARTERS    June 3    75    19

SUBJECT: COMMANDING AND SUPERVISORY RESPONSIBILITIES

AND DUTIES -- CONDUCT, DISCIPLINE AND
PERFORMANCE

Page (5)

Superior Officers of the rank of Captain and above
shall be subject to the same limitations. Addi-
tionally, officers of these ranks who normally work
the regular business days of each week shall be
limited to said regular work schedule. Any deviation
shall be only upon written request and with the
express permission of the Commanding Officers of the
Bureau and Divisions. Bureau Commanders shall grant
these exceptions only when extraordinary supervisory
or administrative duties are specifically enumerated
and justified as essential.  This may never include
routine duty functions such as the examination of
reports or general discussions with subordinates on
routine police matters. The Reports containing these
requests shall be forwarded to the Chief's Office.

Only authorized uniform and equipment shall be worn
and used and only as prescribed. Uniform caps shall
be worn at all times in public by members in uniform.
Officers shall be courteous in all their contacts
with the public. They shall be impartial and pro-
fessional in all their public actions and conduct and
shall wear their badges at all times when in uniform,
providing name and rank or badge number to anyone who
requests same.

CLE000347

## GENERAL POLICE ORDER

NO. 16-75     HEADQUARTERS     June 3     19 75

SUBJECT: COMMANDING AND SUPERVISORY RESPONSIBILITIES

AND DUTIES -- CONDUCT, DISCIPLINE AND
PERFORMANCE

Page (6)

All officers shall remain within the territory to
which they are assigned, unless required by police
necessity to leave it. They shall not congregate
around restaurants during lunch periods. No more
than one crew shall remain in, or in front of, one
restaurant. Officers shall not idly congregate
anywhere and shall not loiter in or around police
buildings. All police business shall be conducted
with dispatch, in order to keep the maximum number
of police vehicles on duty at all times. Zone cars
shall call back assignment dispositions to radio
without delay.

Zone cars shall not return to District Stations for
relief earlier than fifteen (15) minutes before the
end of a duty tour. A Superior Officer of the platoon
reporting off duty shall call the roll of his
retiring platoon.

Superior Officers shall closely examine duty reports
daily, for any unwarranted delay in responding to
radio assignments or in reporting dispositions to the
Communications Control Center. The primary respon-
sibility for this supervisory activity lies with
Captains and the respective Sector Lieutenants.
Superior Officers shall investigate all radio assign-
ments which appear to involve an excessive amount of
time, either in responding or handling. These should
be observed by direct field supervision and by Duty
Report examinations, since one method serves as a

CLE000348

## GENERAL POLICE ORDER

No. __16-75__          HEADQUARTERS __June 3__ __1975__

SUBJECT COMMANDING AND SUPERVISORY RESPONSIBILITIES
AND DUTIES -- CONDUCT, DISCIPLINE AND
PERFORMANCE
                    Page (7)

check upon the other. All performance of police
duties shall be closely observed by all Superior
Officers, again by observation and active patrol
and by report analysis.

District Commanding Officers and Platoon Captains
shall cause Sector Supervisors to respond to all
radio assignments which may need their attention
without the necessity of assignment  by  the
Communications Control Center.

Revised copies of the Rules and Regulations will soon
be issued to all members. This will be followed in
the near future by the first general Procedural
Manual.

All members will be required to familiarize them-
selves with these basic manuals. Without a working
knowledge of their provisions, no officer can
function properly and render proper police service.
Together with the foregoing Conduct, Discipline and
Performance directive, they represent essential
measures and perhaps the final means and opportunity
for this Department and its members to unite in a
sincere effort to reverse current crime trends,
become most responsive to the public safety needs of
the community and achieve a mutual state of respect,
understanding and cooperation with them.

                    By order of,
                    LLOYD F. GAREY
                    CHIEF OF POLICE

CLE000349

## GENERAL POLICE ORDER

NO. 15-75          HEADQUARTERS          May 30, 19 75

SUBJECT: ENFORCEMENT OF CURFEW ORDINANCE VIOLATIONS

TO THE MEMBERS OF THE DEPARTMENT

All members are hereby directed to enforce the Curfew Ordinance Section 13.2507. Its provisions declare that both the minor and parent or guardian are liable for violations and subject to prosecution.

In brief these provisions are:

A.  It shall be unlawful for any minor --

    1)  of 12 years of age or under

        a)  to be upon the streets or sidewalk or in a park or any other public place, during the period from darkness to dawn.

    2)  of 13 years of age to 16 years of age, inclusive

        a)  to be upon the streets or sidewalks or in a park or any other public place between the hours of 11:00 PM to 5:00 AM

    3)  of 17 years of age

        a)  to be upon the streets or sidewalks or in a park or any other public place between midnight and 5:00 AM

CLE000350

## GENERAL POLICE ORDER

No. __15-75__          HEADQUARTERS __May 30,__ ____ 19 __75__

SUBJECT: ENFORCEMENT OF CURFEW ORDINANCE VIOLATIONS

Page Two

UNLESS accompanied by a parent, guardian or some responsible person over the age of 21 years or a member of his family 18 years or older.

> NOTE: If the child is out with a neighborhood friend, that friend must be over 21 years of age; however, if he is out with a member of his family then the age requirement is only 18 years or over.

B. It shall be unlawful for a parent or guardian of a minor to allow such child upon the streets or sidewalks unless accompanied as required.

Penalties under Section 13.2508:

> 1st Offense – fine of not less than $10.00 nor more than $25.00.
>
> Subsequent Offenses – fine of not more than $50.00.

Full enforcement of this Ordinance must be undertaken as the most effective means of combating the problem of rising juvenile crime and delinquency rates. Besides curtailing the disorderly and criminal activities of groups of juveniles, to whom particular attention must be directed, juveniles will be better protected from adult offenses against them.

CLE000351

## GENERAL POLICE ORDER

No. 15-75        HEADQUARTERS May 30,       19 75

SUBJECT ENFORCEMENT OF CURFEW ORDINANCE VIOLATIONS

Page Three

Commanding Officers of line Bureaus, Districts and Units shall be responsible for compliance with the provisions of this order which shall be accomplished by the normal onstreet supervision of Superior Officers and by their examination of Duty Reports and the results that should be produced by this type of Police action.

By order of,

LLOYD F. GAREY
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 14-75          HEADQUARTERS  May 30          75

SUBJECT FOOT PATROL UNIT

TO THE MEMBERS OF THE DEPARTMENT

Effective June 1, 1975, a Foot Patrol Unit shall be established within the Task Force in the Bureau of Patrol.

Sixty-six (66) beats have been established throughout the City. Personnel assigned to this Unit shall patrol these beats in an alert and conspicuous manner, making as many citizen contacts as possible. They shall seek out all possible sources of information and concentrate upon the prevention of crimes of violence and breaking and entering, and on the full enforcement of the curfew laws.

Roll Calls shall be conducted at the Dirtrict Stations by the Superior Officers assigned. They shall be responsible for supervision of the personnel of the Unit. Superior Officers shall be assisted in this capacity by regular District supervisory officers. If it becomes necessary, the latter shall assume full supervisory responsibilities upon notification by the Task Force Office.

Foot Patrol Supervisors shall be responsible for the arrival of personnel on their beats. Public transportation may be used when available. Under no circumstances shall private autos be used for this purpose.

Communications must be maintained with the District Headquarters and the Communications Control Center. Therefore, each beat shall be assigned a transceiver. Beat officers shall make hourly duty calls which

CLE000353

## GENERAL POLICE ORDER

NO. 14-75          HEADQUARTERS May 30          75
                                                (9

SUBJECT: FOOT PATROL UNIT

Page (2)

shall be recorded on a ring sheet at the District
Headquarters.

Beat Duty Reports shall be completed by each patrol-
man for each tour of duty and all activities
carefully recorded in accordance with controlling
General Police Orders. Duty Report originals and the
Duty Ring Sheet shall be forwarded to the Office of
Bureau of Patrol.

All personnel assigned to this Unit are expressly
directed to act courteously and professionally in
all their contacts with the public and to accept
complaints and to complete reports, themselves,
unless there are suspects or other circumstances
that require the assistance of other police units.

                        By order of,

                        LLOYD F. GAREY
                        CHIEF OF POLICE

CLE000354

## GENERAL POLICE ORDER

No. 13-75  HEADQUARTERS May 30  75
19

SUBJECT: COMPLAINT INVESTIGATION PROCEDURES

TO THE MEMBERS OF THE DEPARTMENT

Citizens'complaints concerning improper police
conduct or police service shall be received by the
officer-in-charge at the District, Bureau or Unit
Headquarters where lodged, regardless of origin, and
the Complaint Form 71-2096 shall be completed in
triplicate.

Members in the field may refer the complainant to the
nearest District, Bureau or the Complaint Unit; or,
if required for the convenience  of the complainant,
 shall complete the Complaint Form 71-2096.   The
complaint form shall be given to his officer-in-charge
for proper investigation. The member receiving the complaint
shall enter his actions on his duty sheet.

There will be a direct telephone line, 696-8181, at
the Chief's Office Complaint Unit to receive calls
concerning improper police conduct or service. This
Unit will be in operation 8:00 A.M. to 5:00 P.M.,
Monday through Friday, and at other times, complaints
on this line will be answered by the officer-in-charge
 of the Communications Control Center who will complete
 the necessary Complaint Form 71-2096.

When further investigation is necessary, it must be
thorough and all possible information of both physical
and witness types of evidence must be gathered. The
quantity  and credibility of evidence are the factors
that either substantiate or refute the allegations
contained in the complaint, therefore, all possible
evidence must be collected.  In addition to the

CLE000355

## GENERAL POLICE ORDER

NO. 13-75          HEADQUARTERS____ May 30 ___,19 75

SUBJECT: COMPLAINT INVESTIGATION PROCEDURES

Page (2)

interviews of the complainant and witnesses necessary
to conduct the investigation, the resolution of any
complaint requires notification of the complainant
that the internal departmental investigation is
completed with one of the following conclusions:

    (1) There may be basis for further departmental
        action which has been, or will be, undertaken.

    (2) Evidence is insufficient to support his
        allegations.

    (3) His complaint is unfounded.

This notification should not be made when it would
interfere with a pending or intended legal action,
either criminal or civil.

At the conclusion of the investigation, Commanding
Officers of the Districts and Bureaus shall examine
the reports of the investigation to determine whether
this necessary contact and notification of the com-
plainant has been made before forwarding them to the
Complaint Unit.

Distribution of Complaint Forms 71-2096 shall be as
follows:

    (1) The original and one copy shall be sent to
        the Complaint Unit forthwith. The Complaint
        Unit shall act in the capacity of a control
        and coordinating unit for all complaints.

CLE000356

## GENERAL POLICE ORDER

No. 13-75          HEADQUARTERS  May 30          75

SUBJECT: COMPLAINT INVESTIGATION PROCEDURES

Page (3)

(2) One copy shall be retained and used as a basis for investigation if the complaint is against the personnel or concerning the service of the administrative unit receiving the complaint. If the complaint is against the personnel or concerning the service of another administrative unit, one copy need only be retained in a file for complaints taken by that administrative unit.

(3) In cases where the complaint is against the personnel or concerning the service of another administrative unit, other than where received, the Complaint Unit will assign the investigation to the appropriate unit and shall forward a copy of the Complaint Form 71-2096 to that unit.

This procedure in no way relieves a Superior Officer of his responsibilities as set forth in the Manual of Rules.

GPO 15-68 is hereby rescinded.

By order of,


LLOYD F. GAREY
CHIEF OF POLICE

**GENERAL POLICE ORDER**

No. 12-75      HEADQUARTERS May 30    75
19

SUBJECT: DEPARTMENTAL REORGANIZATION

TO THE MEMBERS OF THE DEPARTMENT

The following reorganization of the Division of

Police will become effective June 1, 1975:

The Bureau of Inspection, Bureau of Staff Operations
and Impact Task Force are hereby deleted from the
organizational structure of the Division of Police.

A Bureau of Inspection and Administrative Services
and a Bureau of Services and Communications are
hereby established.

The BUREAU OF INSPECTION AND ADMINISTRATIVE SERVICES
shall include:

    (A) DIVISION OF EXTERNAL AFFAIRS
        (1) Community Relations Unit
        (2) Labor Relations Unit
        (3) Auxiliary Police Unit

    (B) DIVISION OF INTERNAL AFFAIRS
        (1) Field Inspection Unit
        (2) Special Investigation Unit
        (3) Complaint Unit
        (4) Internal Security Unit
        (5) Planning and Research Unit
        (6) Federal Grants Unit
        (7) Police Academy
        (8) Ordnance Section
        (9) Vehicle Section

CLE000358

## GENERAL POLICE ORDER

No. __12-75__          HEADQUARTERS_____ May 30   75
                                                    19____

SUBJECT: DEPARTMENTAL REORGANIZATION

Page (2)

The BUREAU OF SERVICES AND COMMUNICATIONS shall
include:

        (A) DIVISION OF SERVICES
            (1) Record File Section
            (2) Detention Section
            (3) Record Process Section
            (4) Property Section

        (B) DIVISION OF COMMUNICATIONS
            (1) Radio Dispatch Section
            (2) Telephone Exchange
            (3) Superintendent of Transmission Control

The Task Force remains in the BUREAU OF PATROL and
now includes:

        (A) Tactical Unit
        (B) Foot Patrol Unit

The Ports and Harbors Unit and Airport Unit also
remain in the BUREAU OF PATROL under the command of
the Coordinator of the BUREAU OF PATROL.

                        By order of,


                        LLOYD F. GAREY
                        CHIEF OF POLICE

CLE000359

## GENERAL POLICE ORDER

NO. 11-75     HEADQUARTERS May 2 19 75

SUBJECT: SUPPLEMENT TO GPO 3-75 -- SECONDARY EMPLOYMENT
REGULATIONS

TO THE MEMBERS OF THE DEPARTMENT:

City owned facilities shall be excepted  with

regard to the prohibition against employment

of a member in a manner which would constitute

indirect involvement in the sale or dispensation

of alcoholic beverages for consumption on the

premises.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

CLE000360

---

## GENERAL POLICE ORDER

No. 10-75        HEADQUARTERS April 18    19 75

SUBJECT: ENFORCEMENT OF CURFEW ORDINANCE VIOLATIONS

-3-

Commanding Officers of line Bureaus, Districts and Units shall be responsible for compliance with the provisions of this order which shall be accomplished by the normal on street supervision of Superior Officers and by their examination of Duty Reports and the results that should be produced by this type of Police action.

This order supersedes and rescinds GPO 31-68.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

CLE000361

## GENERAL POLICE ORDER

10-75                                   April 18      75

No._____           HEADQUARTERS_____19__

ENFORCEMENT OF CURFEW ORDINANCE VIOLATIONS

SUBJECT : _____

- 2 -

NOTE: If the child is out with a neighborhood friend, that friend must be over 21 years of age; however, if he is out with a member of his family then the age requirement is only 18 years or over.

B. It shall be unlawful for a parent or guardian of a minor to allow such child upon the streets or sidewalks unless accompanied as required.

Penalties under Section 13.2508:

1st Offense, fine of not less than $10.00 nor more than $25.00

Subsequent Offenses-fine of not more than $50.00

Full enforcement of this Ordinance must be under-taken as the most effective means of combating the problem of rising juvenile crime and delinquency rates. Besides curtailing the disorderly and criminal activities of groups of juveniles, to whom particular attention must be directed, juveniles will be better protected from adult offenses against them.

(Continued on page 3)

CLE000362

## GENERAL POLICE ORDER

NO. 10- 75      HEADQUARTERS April 18    75 19

SUBJECT: ENFORCEMENT OF CURFEW ORDINANCE VIOLATIONS

TO THE MEMBERS OF THE DEPARTMENT

All members are hereby directed to enforce the
Curfew Ordinance Section 13.2507. Its provisions
declare that both the minor and parent or guardian
are liable for violations and subject to prosecution.

In brief these provisions are:

  A. It shall be unlawful for any minor

    1. Of 12 years of age or under

      a) To be upon the streets or sidewalks or
        in a park or any other public place,
        during the period from darkness to
        dawn.

    2. Of 13 years of age to 16 years of age,
      inclusive

      a) To be upon the streets or sidewalks or
        in a park or any other public place
        between the hours of 11:00 P.M. to
        5:00 A.M.

    3. Of 17 years of age

      a) To be upon the streets or sidewalks or
        in a park or any public place between
        midnight and 5:00 A.M.

    UNLESS accompanied by a parent, guardian or
some responsible person over the age of 21 years or
a member of his family 18 years or older.

CLE000363

## GENERAL POLICE ORDER

No. __9-75__        HEADQUARTERS _____ March 27, ____ 75
                                                          19____

SUBJECT : _____ SUPPLEMENT TO TRAINING BULLETIN 12.2
           (GPO 29-71) "INSTRUCTIONS FOR PERSONAL
           PORTABLE RADIO"
                              (2)

TO THE MEMBERS OF THE DEPARTMENT

7. To remove battery from pocket, move battery
   forward to clear spring clips, then upward and
   out. Very little force is required.

For Battery Charger service, call Technical
Control lines 289 or 593. Commanding Officers
shall apprise members who are responsible for the
care and maintenance of this equipment regarding
the preceding instructions.


                              By Order of

                              GERALD J. RADEMAKER
                              CHIEF OF POLICE

CLE000364

## GENERAL POLICE ORDER

NO. 9-75          HEADQUARTERS____ March 27, 19 75

SUBJECT: SUPPLEMENT TO TRAINING BULLETIN 12.2
(GPO 29-71)"INSTRUCTIONS FOR PERSONAL
PORTABLE RADIO"

TO THE MEMBERS OF THE DEPARTMENT

The following is an amendment to training bulletin
12.2 (GPO 29-71) pertaining to the care and proper
use of the Hallicrafter Battery Chargers for
Personal-Portable Radios. This amendment will
replace the section titled "Battery Chargers" on
Page 2 of Training Bulletin 12.2.

1. The Officer-in-Charge of the Station shall be
   responsible for the charging, checking and
   distribution of batteries.
2. REMOVE BATTERIES FROM PORTABLE RADIOS to provide
   better cooling and prevent damage to radios.
3. Insert battery into charger pocket with arrow
   to the rear, and make sure retaining spring
   clips are holding battery against contact pins
   at the base of the socket.
4. Fast charge RED lamp should be on, re-check
   after 45 minutes - GREEN lamp should be on
   indicating trickle charge and at this point the
   RED lamp should be off.
5. Leave battery in pocket for about eight (8)
   hours (do not exceed (8) hours), to permit the
   trickle charge rate to fully charge the battery.
6. (45) minute check - If the RED lamp is on, this
   indicates bad battery or malfunctioning charger.
   Remove battery and try another pocket, if RED
   lamp goes out this indicates a bad charger.
   Block out (stuff paper) into the original pocket
   of the charging unit. If RED lamp stays on this
   indicates a defective battery - remove battery
   and mark accordingly.

CLE000365

# GENERAL POLICE ORDER

NO. 8-75                    HEADQUARTERS                    March 27, 75
                                                                    19

SUBJECT: MESSAGE RECORDING REPORT MAKING PROCEDURE-
SUPPLEMENT TO GPO 31-72

TO THE MEMBERS OF THE DEPARTMENT

A new model message recording system has been
installed in the Report Center at Central Police
Station.

This new model has caused some problems for
members of the Department when calling in reports.

Page 8 of the Training Bulletin attached to GPO
31-72 has been reprinted and copies will be dis-
tributed to all members of the Department.  It
contains instructions on the proper procedure to
follow when calling in reports and shall replace
Page 8 of the Training Bulletin.

Commanding Officers shall acquaint all members
under their command with the new procedures in the
paragraphs titled "Message Recorder Tone" and
"Disconnects" on the new page 8 which shall
become a permanent part of the Training Bulletin
of GPO 31-72.


                              GERALD J. RADEMAKER
                              CHIEF OF POLICE

CLE000366

-8-

G.P.O. 31-72                    REVISED

### TELEPHONIC DICTATION INSTRUCTIONS

JBT LINES        Priority------------------------------------------621-1620
(Coin Return)
                 District 1 -----------621-1628   District 4------621-1638
                 District 2 -----------621-1631   District 5------621-1642
                 District 3 -----------621-1634   District 6------621-1646

ASSISTANCE       621-9996 or Police Line 341 shall be called if there are any
                 questions or problems with telephoning in a report.

PROCEDURE        1. Have RC-1 field copy available for reference.
                 2. Dial the appropriate number.
                 3. Listen for recorder tone as the signal to begin report.
                 4. Start report by giving name, rank, car number and
                    title of report. Example: This is Patrolman Jones in
                    Car 321. I have a Housebreaking & Larceny.
                 5. Continue dictating from notes taken on the RC-1 field
                    copy. Start at Item 1 and continue from beginning to
                    end. The report will be typed EXACTLY as you dictate it.
                    Spell out all names and technical or medical terms.
                 6. When completed, say "End Of Report" and hang up.

        Note:    It is important that you speak directly and distinctly into
                 the telephone.

MESSAGE          1. "When the recorder is activated, you will hear a brief
RECORDER            tone. Begin to talk immediately after the tone disappears.
TONES               You will not hear the familiar talk down tone as in the
                    past."
                 2. "You will hear a brief tone when you have one minute left
                    on the tape. At the end of the recording you will hear a
                    high pitched tone. The operator will interrupt and change
                    the belt, after the high pitched tone. When you hear the
                    activation tone on the new tape, begin to talk again and
                    complete your report."
                 3. "As you will no longer hear the familiar talk down tone,
                    speak clearly and distinctly into the phone in a normal
                    conversational voice."

DISCONNECTS      You will be disconnected from the Message Recorder for the
                 following reasons:

                 1. "If you pause for more than 26 seconds, you will hear a
                    single tone. You must resume talking within 13 seconds
                    or you will be disconnected."
                 2. "If you tap the telephone cradle or button to signal
                    the operator."
                 3. It is impossible to get the operator on one of these special
                    dictation numbers.

IF YOU ARE       1. Hang up.
DISCONNECTED     2. Dial again and redictate the report from the beginning.

IF YOU ARE       Call 621-9996 or Police Line 341 for assistance.
DISCONNECTED
MORE THAN ONCE

## GENERAL POLICE ORDER

No. 7-75        HEADQUARTERS      March 14,   75   19

SUBJECT: SUPPLEMENT TO GPO 29-74 -- MOTOR VEHICLE
THEFT INVESTIGATION AND REPORTING PROCEDURES
BUSINESS ADDRESSES AND PHONE NUMBERS TO BE
INCLUDED.

TO THE MEMBERS OF THE DEPARTMENT:

In General Police Order 29-74 on Page Two under
"Heading of RC-1 Report", items 3 and 4 shall be
modified by the addition of -- "both residence
and business".

On Page Six, the headings of "Motor Vehicle
Recovery" RC-1 Reports shall be similarly
modified in items 4 and 5.

If the person making the report is not the owner
of the vehicle, their business address shall also
be included.


By order of,

LLOYD GAREY, INSPECTOR
ACTING CHIEF OF POLICE

CLE000368

# GENERAL POLICE ORDER

NO. 6-75      HEADQUARTERS      March 14, 19 75

SUBJECT: WASHING OF POLICE VEHICLES-LOCATIONS

(NEW CONTRACT)

TO THE MEMBERS OF THE DEPARTMENT:

Effective March 17, 1975, three car wash

locations will be utilized by the various

Districts, Bureaus and Divisions as follows;

PEARL BROOKPARK CAR WASH, INC. 5133 Pearl Rd.,
Cleveland, will wash sedans and station wagons
assigned to the 1st and 2nd Districts and such
other vehicles that originate at these Districts
or are assigned to such general location for
duty.

     Monday thru Friday - 8:30 A.M. to 5:30 P.M.

MR. MAGIC AUTO WASH, INC. 1851 Carnegie Ave.,
Cleveland, will wash sedans and station wagons
assigned to the 3rd District and those cars
emanating from the Traffic Bureau, Central
Station and the Amstan Building (except Impact
Cars).

     Monday thru Thursday- 8:00 A.M. to 6:00 P.M.
     Sunday              - 8:00 A.M. to 1:30 P.M.

(Continued on page 2)

CLE000369

## GENERAL POLICE ORDER

No. 6-75          HEADQUARTERS_____ March 14, 19 75

SUBJECT: WASHING OF POLICE VEHICLES - LOCATIONS
                                            (NEW CONTRACT)

-2-

FAIRHILL AUTO WASH, 2150 Fairhill Rd., Cleveland will wash sedans and station wagons assigned to the 4th, 5th and 6th Districts and such other vehicles that originate at these Districts or are assigned to such general location for duty. This will include all Impact cars.

Monday thru Thursday - 8:00 A.M. to 6:00 P.M.
Friday and Saturday  - 8:00 A.M. to 8:00 P.M.
Sunday               - 8:00 A.M. to 4:00 P.M.

Vehicles are to be washed no more than once each week.

No Department of Public Safety vehicles are to be washed after March 16, 1975 at Super Clean Car Wash, 14709 Kinsman Rd.

GENERAL POLICE ORDER 17-71 is hereby rescinded.

LLOYD GAREY, INSPECTOR
ACTING CHIEF OF POLICE

# GENERAL POLICE ORDER

NO. **5-75**          HEADQUARTERS **February 19,** 19 **75**

SUBJECT: **POLICEWOMEN INVESTIGATORS**

TO THE MEMBERS OF THE DEPARTMENT

Policewomen investigative teams will be available on a 24 hour basis to assist in the investigation of all rapes and suspected rapes, and crimes and other incidents involving juvenile victims and juvenile suspects.

They are headquartered at the Juvenile Unit, (2nd District), with telephone extensions 518, 519, 520, 547 and 548. Their Radio Call numbers are 9305 and 9306.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

## GENERAL POLICE ORDER

No.___4-75___          HEADQUARTERS___February 10,___ 19 75

SUBJECT : COMPUTER INFORMATION ASSISTANCE TO BE
INCLUDED IN ARREST BOOKING CARDS

TO THE MEMBERS OF THE DEPARTMENT:

Effective February 11, 1975 all arrest booking cards,
Forms 125, 126 and 127 shall include in capital letters
following "Details of Offense" section of Forms 125 and
126 and following the "Held in Connection With" section
of Form 127, the following notations in all arrests:

1) C A:     This notation shall be used to report that
            information from computer files assisted
            in the arrest process or decisions.

2) M C A:   This notation shall be used to report that
            information from computer files obtained
            by usage of police vehicle mobile terminals
            assisted in the arrest process or decision.

3) N C A:   This notation shall be used to report an
            arrest in which computer information
            files did not assist in the arrest process
            or decision.  Include in this category
            computer want checks with negative
            results.

(Continued on Page Two)

CLE000372

## GENERAL POLICE ORDER

NO. 4-75            HEADQUARTERS February 10, 19 75

SUBJECT: COMPUTER INFORMATION ASSISTANCE TO BE
INCLUDED IN ARREST BOOKING CARDS

(Page Two)

Booking Officers shall request and receive this
information from arresting officers at the time of
booking and shall include the notations on the booking
card.  Whenever an arrested person is charged after an
initial booking on Form 127, the computer assisted
notation shall be entered on the charge card as
obtained from the initial booking card.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

CLE000373

## GENERAL POLICE ORDER

No. __3-75__          HEADQUARTERS __February 6,__ 19 __75__

SUBJECT: SECONDARY EMPLOYMENT REGULATIONS

TO THE MEMBERS OF THE DEPARTMENT

Gainful secondary employment by members of the Division of Police, including all self employment, shall be permitted only with the written approval of the Chief of Police and the Director of Public Safety.

All said secondary or part time employment shall be subject to "Secondary Employment Regulations" which are separately printed for issuance to each member.

Commanding Officers shall cause the distribution of the regulations, the Roll Call instruction necessary for thorough familiarization and full compliance. Pay roll sheets shall be receipted by each member.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

CLE000374

*Sgt Breary*

GPO   3-75                                    February 6, 1975
SUBJECT:  SECONDARY EMPLOYMENT REGULATIONS

Gainful secondary employment by members of the Division of Police,
including all self employment, shall be permitted only with the
written approval of the Chief of Police and the Director of Public
Safety, and in accordance with the following regulations:

It may not conflict or interfere in any way with their employment
in the Division of Police.

It shall not be of such a nature, be so demanding or involve the
individual's primary police employment, so as to:

    a. Tire and reduce the individual's efficiency while on duty.

    b. Result in visits or telephone calls while on duty.

    c. Result in duty time lost or diverted to other activity
       nor in any preoccupation while on duty.

It shall not involve illegal activity nor any activity or conduct
that is incompatible or which constitutes a conflict of interest
with the police responsibility and function.

All said employment shall be limited to a maximum of 20 hours a
week, which may be accumulated at the rate of not more than 8 hours
on a regular V day nor more than 4 hours on any working day.  This
limitation shall not apply during the individual's annual furlough
period.  When more than one secondary employer is involved, the
combined total cannot exceed these limits.

The rate of pay shall be at least equal to the individual's Cleveland
Police pay rate.

Regulation police uniforms may be authorized for private police
employment within the city limits but may never be worn for employ-
ment of this type outside the city.

No restricted duty personnel may engage in any outside employment.
A member with previously authorized part time employment, whose
duty status becomes restricted, must immediately terminate any such
employment and forthwith submit a Form #1 report with complete
information on such termination.

No secondary employment or business is permitted which directly or
indirectly involves the sale or dispensation of intoxicating liquor.
No member may be employed in any capacity within or in front of a
business establishment which dispenses any alcoholic beverages,
for consumption on the premises, nor under such conditions as to
make him available to render a police service or quell a disturbance
on said premises.

CLE000375

Page Two

Requests shall be made by Form #1 and endorsed with the recommendation of the member's Commanding Officer. Original and two copies shall be forwarded to the Office of the Chief. Upon receiving final approval from the Director of Public Safety, the individual must complete an outside employment card which must be approved by the individual's Superior Officer and forwarded to the Chief's Office within 3 days after notification of said approval.

Part time employment of temporary duration, not to exceed one week, which becomes available upon very short notice with insufficient time to secure written authorization under standard procedures, may be approved by telephone through the Chief's Office. In these cases, the written request shall be submitted to the individual's Superior Officer who shall initiate the telephone request and shall then follow the standard procedures to obtain the written permission needed for documentation and the permanent record.

All Form #1 requests shall contain the following information:

1. Name, rank and badge number.
2. Date of appointment.
3. Present assignment.
4. Name and address of proposed employer.
5. Exact nature of work to be performed.
6. Address and type of place where employment will be performed.
7. Whether Cleveland Police uniform, another uniform or plain clothes will be worn.
8. The maximum number of hours per day or week. When more than one secondary employer is involved, days of the week and number of hours per week for each must be specified.
9. The hourly rate of pay.
10. Approximate period or duration of employment.
11. Statement of regular duty status, ie: Not on restricted duty of any kind.
12. Union affiliation, if any.
13. Statement that there is no involvement with the sale or dispensation of intoxicating liquor, nor police duty or other type of work on, or in front of, such premises or other business establishment dispensing any alcoholic beverages for consumption on the premises.

Upon termination of any employment, a Form #1 notification must be forwarded to the Chief's Office.

Members, while so engaged in secondary employment, shall be governed by all rules and regulations of the Division of Police, City of Cleveland, in personal conduct. They shall cooperate with all on-duty officers in the enforcement of laws and ordinances and shall give immediate and full compliance to all lawful orders of Superior Officers. Violation of any of the foregoing provisions shall be grounds for immediate termination of any permission to engage in secondary employment and the subject of departmental charges.

General Police Orders 21-50, 41-54, 14-60, 54-63 and 17-64 and all previous orders that conflict in any way with the foregoing are hereby rescinded.

LG

CLE000376

## GENERAL POLICE ORDER

No. 2-75                    HEADQUARTERS    January  8,  75    19

SUBJECT: CIVIL ACTIONS INVOLVING MEMBERS OF THE DEPARTMENT

TO THE MEMBERS OF THE DEPARTMENT

Whenever a member is served with a summons in a civil action against him or the Police Department, or both, he shall forward the original copy to the Chief's Office with a short Form #1 report to identify the incident and containing the information on the date, time and place of said service.  This shall be done forthwith in order that the Law Department may be apprised of these basic facts.

Other reports containing the detailed circumstances of the incident shall then be forwarded to the Chief's Office within 5 days with a Form #1 report as required by GPO 38-70.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 1-75          HEADQUARTERS          January 8, 19 75

SUBJECT: TRAFFIC COURT PROCEDURE

TO THE MEMBERS OF THE DEPARTMENT

Effective January 1, 1975 all Traffic Arrests including
accident citations, physical arrests and regular traffic
tickets shall be scheduled for initial appearance in
Court Room No. 1 before the Traffic Court Referee.

On all Traffic Citations, Court Room No. 1 shall be
circled.

All traffic court cases are to be scheduled for 9:00 A.M.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

CLE000378

## GENERAL POLICE ORDER

NO. 31-74       HEADQUARTERS       December 26, 19 74

SUBJECT : PREPROMOTION PHYSICAL EXAMINATIONS

TO THE MEMBERS OF THE DEPARTMENT

The Director of Public Safety has ordered that at the time of certification and prior to promotion to higher rank, all members of the Division of Police must arrange for a physical examination at the Department of Public Safety Medical Bureau, and that in every case said members must be physically able to perform any regular duty assignment on a full eight (8) hour basis.

Rule 32 provides for these examinations and for the recommendation of the Medical Director who must certify said competency.

All members shall comply with this directive.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

CLE000379

# GENERAL POLICE ORDER

NO. _____ 30-74 _____   HEADQUARTERS _____ December 10, 74 _____ 19 _____

SUBJECT: _____ AMENDMENT TO G.P.O. 2-67, PROCEDURES _____
IN EVALUATING STOLEN PROPERTY

TO THE MEMBERS OF THE DEPARTMENT

As of January 1, 1975 additional types and values of property are requested by the F.B.I. Uniform Crime Reporting Committee, and are listed as follows:

A.  Currency, Notes, Etc.
B.  Jewelry and Precious Metals
C.  Clothing and Furs.
D.  Locally Stolen Motor Vehicles
E.  Office Equipment
F.  Televisions, Radios, Cameras, Etc.
G.  Firearms
H.  Household Goods
I.  Consumable Goods
J.  Livestock
K.  Miscellaneous

The identified items include both stolen and recovered property.  In any report each item of property or group of items must be identified and given a dollar value.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

CLE000380

# GENERAL POLICE ORDER

NO. 29-74          HEADQUARTERS November 25, 19 74

SUBJECT: MOTOR VEHICLE THEFT INVESTIGATION AND
REPORTING PROCEDURES

TO THE MEMBERS OF THE DEPARTMENT

Effective November 25, 1974, Motor Vehicle Theft or Motor
Vehicle Recovery investigations shall be conducted in accord-
ance with the procedures established by this order. The entire
context of which has been separately printed for individual
distribution.

A new structured Form #1 report "Auto Theft Record
Information Form" shall be completed whenever personnel
recover a suspected stolen motor vehicle that needs further
investigation or when personnel are unable to notify the
owner of a recovered stolen motor vehicle.

A completed sample copy of the Form is attached together
with sample print outs of a computer entry and response.

Commanding Officers shall cause the distribution of the
order and the Roll Call instruction necessary to assure the
thorough familiarization of each member.

GENERAL POLICE ORDERS 3-74, 26-73, 14-73, 3-72,
22-68 and 23-65 are hereby rescinded.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

## GENERAL POLICE ORDER

NO. 28-74                    HEADQUARTERS_____ November  19, 19 74

SUBJECT: ADDENDUM TO GPO 39-70 - SUPPLEMENTARY
RADIO ASSIGNMENTS AND DISPATCHING
RESPONSIBILITIES, PROCEDURES AND DUTIES.

TO THE MEMBERS OF THE DEPARTMENT

GPO 28-74 - ADDENDUM TO GPO 39-70 - SUPPLE-
MENTARY RADIO ASSIGNMENTS AND DISPATCHING
RESPONSIBILITIES, PROCEDURES AND DUTIES
shall become effective immediately and copies
forwarded to all Districts, Bureaus, Divisions and
Units.

Commanding Officers shall cause all personnel to be
fully instructed and to give full compliance.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

CLE000382

GPO 28-74                                    November 19, 1974
SUBJECT:  ADDENDUM TO GPO 39-70 - SUPPLEMENTARY RADIO ASSIGNMENTS
          AND DISPATCHING RESPONSIBILITIES, PROCEDURES AND DUTIES

The following shall be an addendum to GPO 39-70 and shall not
alter or eliminate any of the original provisions of the order.

While these provisions basically apply to the internal operations
of the CCC, field units are also affected and they shall give
careful attention to those provisions that apply to their operation.

### A. RESPONSIBILITY OF CCC MEMBERS

THE PRIMARY RESPONSIBILITY OF THE COMMUNICATIONS CONTROL CENTER IS
TO RECEIVE COMPLAINTS AND ASSIGN THEM TO RADIO EQUIPPED PERSONNEL
AS SOON AS POSSIBLE.  It is the responsibility of all officers and
civilians assigned to the Division to perform their duties in such
a manner as will best accomplish this purpose.  Sergeants assigned
to the Complaint or Dispatch Unit shall perform their supervisory
functions on a continuous basis.  Lieutenants in charge of platoons
shall make frequent inspections of all operations in the Radio Room
and shall check conditions at the dispatch consoles at least once
each hour.  The Officer in Charge of the Division of Communications
shall make such inspections as will insure compliance with provisions
of the order.

### B. PERSONNEL SUBJECT TO RADIO DISPATCH

Radio equipped personnel subject to radio dispatch shall include all
Bureau of Patrol cars, including evidence and special crime cars,
all Task Force cars, all Traffic cars, solo and three wheeler motor-
cycles, mounted men, beat men equipped with portable radios, and
General Duty Detective cars.  This shall not eliminate the respon-
sibility of any radio car to respond to a serious incident, parti-
cularly when there is difficulty in obtaining a car for the assignment.

### C. DUTIES OF DISPATCHERS--DISPATCH
### SUPERVISORS AND FIELD UNITS

1. Radio assignments shall be dispatched as they are received; how-
   ever, urgent emergencies shall receive priority when they involve
   hazards to life and limb, crimes in progress or when they have
   just occurred with suspects on the scene, in the nearby vicinity
   or fleeing and susceptible to apprehension.  These shall be
   assigned immediately to ANY radio car that is available.  If none
   are open, a car shall be taken off a less important assignment
   for this purpose, or dispatched from another District, if within
   a reasonable distance.

2. As far as possible, cars shall be assigned to incidents within
   their own specialty which they are best equipped to handle; however,
   traffic and evidence cars shall be assigned other complaints when
   no zone cars are available.  Task Force cars shall be concen-
   trated on street crimes, felonies and serious incidents and shall

be assigned other complaints only when other possibilities have been exhausted. Detective cars shall be concentrated on felony complaints.

3. Radio cars subject to dispatch shall operate on the frequency of the District in which they are assigned. If necessary to go into another District, they shall notify the Radio and switch to the channel of such District. Radio cars with duties which require operation in more than one District shall receive and broadcast on the frequency of the District in which they are at the time. Radio shall communicate with such cars by multi-channel transmission (simulcasts).

4. An all channel simulcast shall be made for all crimes in progress or those in which suspects may still be in the vicinity or escaping in a manner which provides some opportunity for appre-hension.

5. Disturbances, fights, cars blocking drives, and similar incidents require prompt attention as well as crimes. To insure that they receive such attention, they shall be broadcast singly, not grouped together with nonurgent assignments, such as information, routine parking complaints and the like.

6. No assignments shall be held for the following relief and no cars are to be held in reserve.

7. Cars on assignments for protracted periods of time, or at District stations, hospitals, etc., shall be polled for availability.

8. Assignments originating within the Department, such as equipment checks, shop trips, lunch, etc., shall take second priority to citizen complaints. The number of cars permitted out of service for such purpose shall be restricted to the minimum, consistent with the conditions prevailing at the time.

9. Evidence cars shall restrict their trips to the S.I.U. to one trip with accumulated evidence, as far as possible, rather than a trip after each process. If the District evidence car is unavailable for an assignment, one may be sent from another District or the S.I.U. vehicle can be dispatched.

10. Broadcasts shall be for specific cars and "any car" broadcasts shall be avoided as much as possible.

11. Sergeants assigned to supervise dispatchers shall make sure the daily lineup of cars in service, as well as cars used as substi-tutes, is provided by the Districts and Divisions immediately after Roll Call. They shall handle telephone conversations, as far as possible, to insure that dispatchers remain constantly in radio contact with field units. They shall use the Hotline, 611 to 698 telephone extension series, to give assignments to cars if unable to make radio contact at Roll Calls. They shall cover the adjacent console, if the Sergeant assigned is absent for any reason.

11. In the event of the occurrence of a serious incident invol-
    ving multiple dispatching of cars, the Officer in Charge of
    the CCC or the platoon Lieutenant shall assume the active
    direction of the dispatching function. He shall coordinate
    and cooperate with the field supervisor in charge at the scene.
    When necessary, he shall direct all cars responding to switch
    to a selected frequency.

12. DISPATCH TICKETS.
    A dispatch ticket shall be made on each assignment, including
    lunch, and shall be properly filled out and time stamped for
    each assignment.

    Complaint clerks shall obtain adequate information from each
    complainant. This shall include the exact address of the
    incident and the complainant's name and telephone number which
    shall be entered on the front of the ticket. They shall time
    stamp the front of the dispatch ticket, after the information
    has been received, and send it to the dispatch console without
    delay.

    Dispatchers shall both announce and stamp the time the broad-
    cast was acknowledged by the car, and the time the disposition
    was called back, on the front of the dispatch ticket. Any other
    broadcasts shall be time stamped on the back of the ticket.

    Cars shall give their location when responding to an assignment
    and dispatchers shall enter the location on the front of the
    ticket.

    When members fail to answer the third broadcast of a message
    within 10 minutes, the dispatcher shall notify the radio super-
    visor (platoon Lieutenant or Officer in Charge) through the
    dispatch Sergeant, who shall promptly notify the Officer in
    Charge of the District, Bureau or Unit to which such personnel
    are assigned. The name of the officer who was notified shall
    be written on the dispatch ticket.

    Cars failing to call back dispositions shall also be the subject
    of investigation by the CCC. If they fail to call back the
    disposition before going off duty, the same procedure as above
    shall be followed--the Officer in Charge of the District, Bureau
    or Unit to which such personnel are assigned shall be notified
    and the name of the officer notified shall be written on the
    dispatch ticket.

## GENERAL POLICE ORDER

NO. 27-74          HEADQUARTERS September 30, 19 74

SUBJECT: MONTHLY ACTIVITIES REPORT - DISTRICT
PLAIN CLOTHES UNITS - SPECIAL
INVESTIGATION UNIT

TO THE MEMBERS OF THE DEPARTMENT

District Plain Clothes Squads, together with the Special
Investigation Unit shall forward a report of their activities
each month through channels to the Chief's Office with a
copy forwarded to the Bureau of Inspection.

The report shall list the number of arrests in each category
of vice, the addresses where the arrests were made and
whether they were for court or investigation.  It shall also
list the number of citations issued and locations, and
padlock actions initiated and the current status of the
padlock actions.

The Special Investigation Unit shall review these reports
and make a separate evaluation report with the view of
identifying present or potential problems and make
recommendations for their resolution.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

CLE000386

## GENERAL POLICE ORDER

No. __26-74__          HEADQUARTERS___September 17,__ 19__74__

SUBJECT : __BUREAU OF INSPECTION -- SUPPLEMENTARY PROCEDURES__

TO THE MEMBERS OF THE DEPARTMENT

In furtherance of the effective implementation of GPO 18-74 and the operation of the Bureau of Inspection, a form has been devised to report irregularities to the various Bureaus, Divisions, Districts and Units to cause appropriate corrective action.  Detailed instruction shall be forwarded.

Commanding Officers shall cause compliance in every respect.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

GPO  26-74                                      September 17, 1974
SUBJECT:  BUREAU OF INSPECTION -- SUPPLEMENTARY PROCEDURES

### USE OF THE "IRREGULARITY OBSERVED" FORM

The blue "IRREGULARITY OBSERVED" form was developed for use by the
Bureau of Inspection basically as a tool for improving the perfor-
mance of the police department.  Its main function is to bring to
the attention of the officer involved and his superiors any non-
compliance with departmental procedures and regulations.

It is not to be considered as a disciplinary device (although
disciplinary action may be recommended in serious violations) but
rather as a means of improving efficiency of the officers involved,
by providing instruction, training and follow-up inspections.

The form is self-explanatory.  The officers involved in the Irregu-
larity and their immediate superior will be listed in the space
provided in the upper left-hand corner.  The officer assigned for
answer will be listed in the upper right-hand corner and he will
also be required to sign his name in the lower right-hand corner.
The manner of answering will be according to the boxes checked.  If
the box (Discribe corrective action taken in this space) is checked,
the answer shall be made on the lines provided on the form, using
the reverse side of the form if needed.  If the box (Forward Form 1
reports of investigation and action taken) is checked, then the
answer shall be made on separate Form 1 reports.

Use of the form does not and is not intended to alter or eliminate
any of the present disciplinary procedures.  However, it does provide
an alternative action for many minor infractions which do not warrant
lengthy investigations and multiple reports.  In these cases, usually
all that will be needed will be an interview with the officers
involved to verify the accuracy of the complaint.

It has been said by recognized authorities on police organization
that the basic function of a police supervisor is to improve the
performance of his subordinates.  Therefore, the officer assigned for
answer will in most cases be the immediate superior of the officers
committing the infraction, thus permitting him to exercise his
authority in this respect.

"Corrective action taken" by the supervisor may take the form of
instruction in the proper procedures; recommendation for retraining;
followup inspections to insure that the infraction is not repeated;
or disciplinary action if warranted by the seriousness of the violation.

"IRREGULARITY OBSERVED" forms will be filed in the office of the
Bureau of Inspection.  Repeated violations by the same officer will
be brought to the attention of his Commanding Officer for whatever
action he deems proper.

# GENERAL POLICE ORDER

NO. 25-74          HEADQUARTERS          August 26, 74
                                                    19

SUBJECT: AMENDMENT TO GPO 20-74 -- ACCIDENT IN-
vestigation reporting procedures.

TO THE MEMBERS OF THE DEPARTMENT

The provisions of GPO 20-74 which state that
"Cars shall not be dispatched to routine damage
accidents. The drivers shall be courteously
advised to report to the nearest District Station
where District Officer personnel shall fill out
the accident report form", is rescinded.

The former policy and procedure shall be rein-
stated and the Communications Control Center
shall dispatch an A.I.U. or Zone Car-, in that
order of priority, whenever they receive a re-
port of an accident.

As required by Rule 77-(1)-(2)and Rule 80-(1) of
the Manual of Rules, whenever a member receives
an assignment of this nature by whatever means,
or whenever an accident has occurred and the
principals request that an accident report be
made, either at a District Station or anywhere
in the field, it shall be his responsibility and
duty to complete an accident investigation report.

Further, whenever an accident is reported at any
District Station, the report shall be courteously
taken irrespective of the location of occurrence.
None shall be referred or sent to any other
District Station or other Unit Office. GPO 24-74
is hereby rescinded.

                    By order of,

                    GERALD J. RADEMAKER,
                    CHIEF OF POLICE.

## GENERAL POLICE ORDER

NO. 24-74          HEADQUARTERS          August 23, 74

SUBJECT: SUPPLEMENT TO GPO 20-74 -- ACCIDENT IN-
VESTIGATION REPORTING PROCEDURES

TO THE MEMBERS OF THE DEPARTMENT:

GPO 20-74 requires that "Cars shall not be dis-
patched to routine damage accidents" by the
Communications Control Center and that "The
drivers shall be courteously advised" (by the
Communications Control Center personnel) "to
report to the nearest District station where
District office personnel shall fill out the
accident report form."

This does not relieve any member of the obliga-
tion to comply with Rule 77-(1)-(2) and Rule 80-
(1) of the Manual of Rules. Therefore, whenever
a member receives an assignment of this nature
by whatever means, or whenever he comes upon a
scene of an accident, or whenever an accident
has occurred and the principals request that an
accident report be made, either at a District
Station or anywhere in the field, it shall be
his responsibility and duty to complete an
accident investigation report.

Further, whenever an accident is reported at any
District Station, the report shall be courteou-
sly taken irrespective of the location of occurr-
ence. None shall be referred or sent to any
other District Station or other Unit office.

By order of,

LLOYD GAREY, INSPECTOR
ACTING CHIEF OF POLICE.

CLE000390

## GENERAL POLICE ORDER

No. 23-74 . HEADQUARTERS August 16, 1974

SUBJECT: NEW CLEVELAND GENERAL OFFENSE CODE & COMPARISON CHARTS

TO THE MEMBERS OF THE DEPARTMENT

The Codified Ordinances of the City of Cleveland have been supplemented with the enactment of a "Part Nineteen (19) General Offense Code", Chapter One (1) thru Fourteen (14), Sections 19.1101 thru 19.14103.

Copies of the General Offense Code have been printed in their entirety for distribution to all Units. These shall be kept in the Unit Headquarters Office for reference purposes.

The General Offense Code Sections conform with Statutes of the new Ohio Revised Code. Henceforth, applicable Municipal Section numbers shall be used when booking misdemeanor violators.

A Crime Title and Offense Chart, comparing the new Ohio Revised Code Statutes with the General Offense Code Sections, has been printed for distribution to each member for reference purposes.

Commanding Officers shall cause proper distribution.

By order of,

LLOYD GAREY, INSPECTOR
ACTING CHIEF OF POLICE.

CLE000391

___22-74___  GENERAL POLICE ORDER  August 12, 1974

No.___ __INTOXICATION ARREST BOOKING PROCEDURE--__ _19___
ORDINARY INTOXICATION/TRAFFIC INTOXICATION

TO ALL MEMBERS OF THE DEPARTMENT

Effective immediately, the following revised proce-
dure shall be used when booking suspected drivers
and/or passengers found under the influence of alcohol
for "Disorderly Conduct".

Unless booked directly under T.O. 9.1302, "Driving
While Intoxicated", suspected drivers and intoxicated
passengers shall be booked under the new Municipal
General Offense Code, Section 19.10103 B(2)
"Disorderly Conduct", adding the notation ("Traffic
Intoxication") in parenthesis following the charge.
This notation will direct the case to Traffic Court
Room #1.
Preceding the initial court appearance, a subject
booked under Section 19.10103 B(2), "Disorderly
Conduct" (Traffic Intoxication) may still be charged
with T.O. 9.1302, "D.W.I." when a complainant signs
the affidavit, or additional evidence is obtained to
provide the arresting officers with probable cause to
believe the subject was in fact the driver.

Ordinary Intoxication arrests shall be booked under
the new Municipal General Offense Code, Section
19.10103 B(1), "Disorderly Conduct", adding the
notation ("Intoxication").

General Police Order 10-74 is hereby rescinded.=

By order of,

Gerald J. Rademaker,
Chief of Police.

## GENERAL POLICE ORDER

No. 21-74        HEADQUARTERS_____August  7,    74
                                                          19____

SUBJECT: BACK-BOARDS AVAILABLE AT DISTRICT
STATIONS

TO THE MEMBERS OF THE DEPARTMENT

Due to the lack of sufficient storage area in patrol station
wagons, back-boards required to transport victims with
back injuries have been re-distributed to the District
Stations.

Whenever members have need of a back-board they shall
notify the radio dispatcher of their requirement and request
that he check with Fire Rescue on the availability of Fire
Rescue Squads that may be dispatched to the scene.  When
Fire Rescue is unable to respond, the radio dispatcher
shall dispatch another Zone Car or Traffic Car to the
nearest District Station and pick up the back-board and
convey it to the scene of the injury.

Members must be cognizant of the fact, that precluding
another critical injuries in which life is in jeopardy,
proper handling and transporation is of prime concern
rather than speed and make-shift methods when attending
to back injuries.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

CLE000393

## GENERAL POLICE ORDER

No. 20-74      HEADQUARTERS July 5,    19 74

SUBJECT: ACCIDENT INVESTIGATION REPORTING
PROCEDURES -- USE OF FORM OH-4 & OH-5

TO THE MEMBERS OF THE DEPARTMENT

Effective immediately, General Police Order 6-74,
"Accident Investigation Reporting Procedures"-- Use of
Forms OH-4 & OH-5, and supplemental General Police
Orders 9-74 and 11-74 are hereby rescinded.

As a part of this order, revised procedures have been
prepared, the complete context of which has been
separately printed for distribution to individual members.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

GPO 20-74                                          July 5, 1974
SUBJECT:  ACCIDENT INVESTIGATION REPORTING PROCEDURES--USE OF
          FORMS OH-4 & OH-5

Effective immediately, General Police Order 6-74, "Accident
Investigation Reporting Procedures--Use of Forms OH-4 & OH-5,
and supplemental General Police Orders 9-74 and 11-74 are
hereby rescinded and the following revised procedure shall
govern Motor Vehicle Accident Investigations and the completion
of the State of Ohio Traffic Crash Report Forms OH-4 and OH-5.

Procedural guidelines enumerated in the State of Ohio, Depart-
ment of Highway Safety Manual, "Traffic Crash Report Procedures",
for completion of Traffic Crash Report Form OH-1 shall be
followed when completing the OH-4.  The content of the Form OH-1
and the OH-4 are identical.  The Form OH-4 shall be filled out
in _triplicate_ (Completed Sample Copy attached).  Care should be
taken in the placement of the carbon to assure that both sides
of the first sheet is an original.

The _original_ shall be kept for departmental files.  The _first
carbon copy_ shall be delivered daily to the Mail Center for
mailing to The Ohio Department of Highway Safety, 240 Parsons
Avenue, Columbus, Ohio  43205.  The _second carbon copy_ shall be
forwarded to the Statistics Unit.

Distribution of copies shall be made by the Accident Investigation
Unit.

Though self explanatory, the form requires particular attention
to the following items as illustrated on Page 7 of the Traffic
Crash Report Procedure Manual, and the addition of several
features presently not provided for in the new form:

1)  "Date of Report" shall be inserted in Item #1 (Local Report No.).

2)  Item #5 (Reporting Agency) - Insert "Cleveland Police Depart-
    ment OHCLP-00".

3)  The form requires the insertion of five (5) different time
    elements, i.e. time of crash-Item #6, time police received
    the call, time dispatched-Item #71.

    Each of these times shall be designated in Military Time,
    i.e. 00:01 through 24:00.  (See Page 9 of the procedure manual.

    At the time the Radio Dispatcher broadcasts the assignment to
    a car, he shall also broadcast the time Radio received the
    call of the accident.

4)  Item #9 (Crash Type) - Check all applicable boxes, more than
    one may be used.  If an injury requires confinement, PRINT
    "CONFINED" at the top of Item #9.

Page Two

5) Items #14 thru #16 - OUr present accident location reporting procedure shall continue to apply, i.e., "On Euclid at East 9th St.", "On Lorain at 6705", "On Superior at Addison".

6) Item #18 (Photo Reference) - Only if photos are taken - Insert name of most seriously injured. If no injuries insert the name of the #1 Driver.

7) Item #19 (Unit No. 1) - Insert type of traffic units involved i.e., "2 MV, MV & F.O., or MV & PED."

8) Item #27 (Occupation) - Name of employer shall be included. If student, name of school attended.

9) Item #32 (Circle damaged area) - If no visible damage, circle area of impact.

10) Item #50 & #72 (Injured taken to) - Insert name of hospital or Doctor's Office and whether confined or released.

11) Item #57 (Unit No. 2) - When more than two units are involved in the crash, use additional OH-4 Forms and renumber the units as No. 3, No. 4, etc..

    Also a fixed object, i.e., a hydrant, pole or fence, etc., shall be identified and inserted on the line titled "Driver", in Item #57. The location of the fixed object shall be inserted on the line titled "Address of Driver" in Item #57.

12) Item #67 (Restraints in Use) - If a vehicle is equipped with an air cushion, check block designating "other", for the proper vehicle and print "AIR CUSHION" following the word "other", and add the VIN number directly under the words, "none installed". Following the VIN number, state whether the air cushion deployed.

13) Item #71 (Other Investigation) - Insert "See Rev." and enter the location of the additional investigation on the lines adjacent to the diagram section. When the further investigation is conducted at a hospital, enter the name of the hospital and that of the attending physician, and if injuries result in confinement, whether relatives and Record Room have been notified. (See Rule 80-3, Manual of Rules)

14) Item #71 (Total Time) - Disregard the requested information and substitute the investigating car's number in the block.

15) Item #74 (Officer's I.D.) - Insert officers' signature and badge numbers. Adjacent blocks shall be used if additional space is needed.

CLE000396

Page Three

16) Item #75 (Checked By) - Report must bear approving Superior Officer's signature or initials on all three copies.

17) City Property accident reports shall have the notation, "CITY PROPERTY" printed in the top right and right side margins.

18) Item AA (Other Investigation Notes) on the backside of the OH-4 - Insert the name, charge, (Ordinance Number), and court date of the person cited or arrested.

Further use of this section, and Items BB (Vehicle Damage) and CC (Skidmark Data), is not required as such information is normally included in Form 10 Supplementary Reports.

The C of C 71-10 Supplementary Report shall also be used in lieu of the OH-2, "TRAFFIC CRASH REPORT ADDENDUM". OH-4 and OH-5 State Crash Forms are the only new forms being adopted by the Department. Witness Statement Forms and Supplementary Form 10s shall continue to be used as in the past.

The OH-5, "SUPPLEMENT" Form (Pink color), shall be submitted to the State whenever it is determined that material corrections or supplemental data to the OH-4 is available.
EXAMPLE: Victim initially reported as "injured", later expires.

Report making responsibilities and Radio Dispatching procedures on accident complaints shall be as follows:

The Communications Control Center shall dispatch an accident or uniform patrol car and the officers assigned shall investigate the following types of accidents:

1)  Accidents involving personal injury or death.

2)  Accidents involving disabled vehicles.

3)  Accidents involving a Hit-Skip driver.

4)  Accidents involving City Property.

5)  Accidents involving a reported intoxicated driver.

Cars shall not be dispatched to routine damage accidents. The drivers shall be courteously advised to report to the nearest District Station where District office personnel shall fill out the accident report form.

Division Commanding Officers shall cause full compliance with these instructions.

General Police Orders 6-74, 9-74 and 11-74 are hereby rescinded.

CLE000398

**STATE OF OHIO**
**TRAFFIC CRASH REPORT**

City Property

**OH-4** (Rev. 5/73)

LOCAL XX  Date of Report
ASSIGNED
Apr. 29, 1974

☐ OH-2
☐ OH-3
☐ OH-5

— BMV ONLY —

— DEPT. OF HIGHWAY SAFETY ONLY —

Confined
☐ FATAL
☒ INJURY
☐ PROP. DAMAGE
☐ P.D. UNDER $150

FILE NO. FOR LOCAL USE
(LEAVE BLANK)

REPORTING AGENCY
Cleveland Police Dept.

OH
OHCLP-00

TIME OF CRASH
14:45

DAY
Mon.

DATE OF CRASH
4 MO. 29 DAY 74 YR.

CRASH OCCURRED IN (CITY, VILLAGE, TOWNSHIP)
Cleveland, Ohio

IN (COUNTY)
Cuyahoga

☐ ON PRIV. PROP.
☐ HITSKIP

ON ROUTE, CO. OR TWP. ROAD, STREET ADDRESS
Lakeside Ave.

TP IS US SR CR TR CS PR OT
☐ ☐ ☐ ☐ ☐ ☐ ☒ ☐

AT JUNCTION OR INTERSECTION WITH
East 18th Street

— STATE USE —
ALCOHOL
☐ YES ☐ NO ☐ N.S.

☐ MILES  ☐ FEET  W⟨S E⟩ OF

MILEPOST, JUNCTION, INTERSECTION, BRIDGE, ETC.

PHOTO REFERENCE
R. Jones

TYPE Crash

| | DRIVER — LAST | FIRST | MIDDLE | SEX | DATE OF BIRTH | | | AGE | SOCIAL SECURITY NUMBER | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| TOTAL UNITS INVOLVED **2** | Jones | Robert | E. | M | 12 MO. | 25 DAY | 57 YR. | 16 | 278 | 19 | 7442 |

ADDRESS — NUMBER  STREET  CITY  STATE
4228 West 56th St. Cleve.,Oh.

PHONE, IF AVAILABLE
661-4016

OCCUPATION
Student J.Marshall

CIRCLE DAMAGED AREAS

OPERATOR LICENSE NO.
Pr-41228

STATE
OH

TYPE OF LICENSE
☐ Operator
☒ Chauffeur

☐ Spcl. End.
☐ Temporary
☐ Med. Restd.

☐ Probationary
☐ Motorcycle
☐ Other

TERMS OF RESTRICTION
☐ 3 yr.  ☐ 6 mon.
☐ 1 yr.  ☐ 4 yr.

OWNER — LAST  FIRST  MIDDLE
Jones  Edward  J.

ADDRESS — NUMBER  STREET  CITY  STATE  PHONE
(Same)                                   (Same)

VEHICLE YEAR
1963

MAKE
Ford

MODEL NAME
F 100

COLOR
Blk

BODY STYLE
Truck

VEHICLE DIR.
N S E (W)

ODOMETER READING
86,000

LIC. NO.
A-14-Y3

STATE
Ohio

YEAR
74

NAME OF INSURANCE COMPANY/AGENT
Allstate

INSURANCE
OWNER ☒  UNKNOWN ☐
DRIVER ☐  NONE ☐

VEHICLE
DRIVEN ☐
HAULED ☒

NAME OF WRECKER
G & M

INJURED TAKEN TO
Charity
Confined

BY WHOM
211

DAMAGE  NONE  OVER $150  UNDER $150
PROPERTY ☐  ☐  ☐
VEHICLE ☐  ☒  ☐

ALCOHOL TEST GIVEN
☐ NO  ☒ YES

TYPE
Urine

RESULTS

☐ CITY ORD.
☐ STATE CODE

ORD. OR CODE NUMBER
9.1302

ORD. DESCRIPTION
DWI

MV & FO

UNIT NO. 1

| DRIVER — LAST | FIRST | MIDDLE | SEX | DATE OF BIRTH | AGE | SOCIAL SECURITY NUMBER |
|---|---|---|---|---|---|---|
| Muny Light Pole #15622 | | | | MO. DAY YR. | | |

ADDRESS — NUMBER  STREET  CITY  STATE
Lakeside Ave & E.18 St. NW Corner

PHONE, IF AVAILABLE

OCCUPATION

CIRCLE DAMAGED AREAS

OPERATOR LICENSE NO.
STATE  TYPE OF LICENSE
☐ Operator
☐ Chauffeur

☐ Spcl. End.
☐ Temporary
☐ Med. Restd.

☐ Probationary
☐ Motorcycle
☐ Other

TERMS OF RESTRICTION
☐ 3 yr.  ☐ 6 mon.
☐ 1 yr.  ☐ 4 yr.

OWNER — LAST  FIRST  MIDDLE
City of Cleveland

ADDRESS — NUMBER  STREET  CITY  STATE  PHONE
601 Lakeside Ave Cleve., Oh. 694-2000

VEHICLE YEAR
19

MAKE  MODEL NAME  COLOR  BODY STYLE
VEHICLE DIR. N S E W  ODOMETER READING  LIC. NO.  STATE  YEAR

NAME OF INSURANCE COMPANY/AGENT
INSURANCE
OWNER ☐  UNKNOWN ☐
DRIVER ☐  NONE ☐

VEHICLE
DRIVEN ☐
HAULED ☐

NAME OF WRECKER  INJURED TAKEN TO  BY WHOM

TRAIN ☐
VEH. ☐
PED. ☐
OP. ☐
ANIMAL ☒

DAMAGE  NONE  OVER $150  UNDER $150
PROPERTY ☐  ☐  ☐
VEHICLE ☐  ☒  ☐

ALCOHOL TEST GIVEN
☐ NO  ☐ YES

TYPE  RESULTS

☐ CITY ORD.
☐ STATE CODE

ORD. OR CODE NUMBER  ORD. DESCRIPTION

UNIT NO. 2

| OCC. 1 UNIT ☐ | NAME — LAST | FIRST | MIDDLE | AGE | DATE OF BIRTH | | |
|---|---|---|---|---|---|---|---|
| | Smith | John | B | 28 | 6 MO. | 10 DAY | 55 YR. |

ADDRESS — NUMBER  STREET  CITY  STATE
1289 Memphis Ave., Cleve., Oh

PHONE
351-6523

SEX
M

INJURY SEVERITY
| | DR. OR /PED | OCCUPANT |
| | 1 2 | 1 2 3 4 |
| Fatal | 1 ☐ ☐ | ☐ ☐ ☐ ☐ |
| Incapacitating injury | 2 ☒ ☐ | ☒ ☐ ☐ ☐ |
| Visible signs of injury | 3 ☐ ☐ | ☐ ☐ ☐ ☐ |
| Claimed injury | 4 ☐ ☐ | ☐ ☐ ☐ ☐ |
| No claimed injury | 5 ☐ ☐ | ☐ ☐ ☐ ☐ |

OCC. 2 UNIT ☐  NAME — LAST  FIRST  MIDDLE  AGE  DATE OF BIRTH
MO. DAY YR.

WIT. ☐  ADDRESS — NUMBER  STREET  CITY  STATE  PHONE  SEX

RESTRAINTS IN USE
| | | |
| Seat belt | 1 ☐ | |
| Harness and seat belt | 2 ☐ | |
| Shoulder harness | 3 ☐ | |
| None in use | 4 ☐ | |
| Other Air Cush. | 5 ☒ | |
| None installed Vin#1835L66X1 Deploye | 6 ☐ | |

OCC. 3 UNIT ☐  NAME — LAST  FIRST  MIDDLE  AGE  DATE OF BIRTH
MO. DAY YR.

WIT. ☐  ADDRESS — NUMBER  STREET  CITY  STATE  PHONE  SEX

POSITION
| | | |
| Front left | 1 ☒ | |
| Front center | 2 ☐ | |
| Front right | 3 ☐ | |
| Back left | 4 ☐ | |
| Back center | 5 ☐ | |
| Back right | 6 ☐ | |
| Other | 7 ☐ | |

OCC. 4 UNIT ☐  NAME — LAST  FIRST  MIDDLE  AGE  DATE OF BIRTH
MO. DAY YR.

WIT. ☐  ADDRESS — NUMBER  STREET  CITY  STATE  PHONE  SEX

CONDITION (PED/DR)
| | | |
| Apparently normal | 1 ☐ | |
| Sick | 2 ☐ | |
| Fatigued | 3 ☐ | |
| Apparently asleep | 4 ☐ | |
| Physical defect | 5 ☐ | |
| Apparently drinking | 6 ☐ | |
| Intoxicated | 7 ☒ | |
| Apparent drug usage | 8 ☐ | |

| | RECEIVED CALL | DISPATCHED | ARRIVED SCENE | CLEARED SCENE | OTHER INVESTIGATION | TOTAL TIME |
|---|---|---|---|---|---|---|
| TIME POLICE: | 14:50 | 14:53 | 15:00 | 16:20 | See Rev | Car No. |

INJURED TAKEN TO
OCC 1  Confined Charity

BY WHOM
211

OCC 3

INJURED TAKEN TO  BY WHOM

OFFICER'S I.D.
Miller 110

EJECTION
| | | |
| Total | 1 ☐ | |
| Partial | 2 ☐ | |
| Not ejected | 3 ☒ | |
| Trapped | 4 ☐ | |

OCC 2  OCC 4

CHECKED BY —
Sgt. Gray

STATE OF OHIO                                          TRAFFIC CRASH REPORT

REPORT NO. (LOCAL)

**CONTOUR**
1. ☒ Straight, level
2. ☐ Straight, grade
3. ☐ Straight, hillcrest
4. ☐ Curve, level
5. ☐ Curve, grade
6. ☐ Curve, hillcrest

**LIGHT CONDITIONS**
1. ☒ Daylight
2. ☐ Dawn or dusk
3. ☐ Dark—no lights
4. ☐ Dark but lighted
5. ☐ Other

**WEATHER**
1. ☒ No adverse weather condition
2. ☐ Rain
3. ☐ Snow
4. ☐ Fog
5. ☐ Other

**ROAD CONDITIONS**
1. ☒ Dry
2. ☐ Wet
3. ☐ Snow or ice
4. ☐ Mud or sand
5. ☐ Other

**ROAD SURFACE**
1. ☒ Asphalt
2. ☐ Concrete
3. ☐ Gravel
4. ☐ Other

NO. LANES __4__     ROAD WIDTH __36 ft.__

**LOCATION**
1. ☒ Street or highway intersection
2. ☐ Alley or driveway
3. ☐ Railroad crossing
4. ☐ Subway (underpass)
5. ☐ Subway (underpass)
6. ☐ Bridge or culvert (spans 20' and over)
7. ☐ Bridge or culvert (spans 20' and under)
8. ☐ Interchange
9. ☐ Non intersection

**TYPE OF CRASH**
(Two Moving Motor Vehicles)

01. ☐ Head-on
02. ☐ Rear-end
03. ☐ Sideswipe
04. ☐ Angle
05. ☐ Turning

(One Moving MV and —)

06. ☐ Parked motor vehicle
07. ☐ Pedestrian
08. ☐ Animal
09. ☐ Train
10. ☐ Pedalcycles
11. ☐ Other non-motor vehicle
12. ☒ Fixed object
13. ☐ Other object
14. ☐ Motorcycle

(One MV Only)

15. ☐ Overturning
16. ☐ Other non-collision

**CAUSATIVE FACTORS**
UNIT 1 2
01. ☐ Failure to yield
02. ☐ Ran stop signal
03. ☐ Driving wrong way
04. ☐ Improper passing
05. ☐ Improper turning
06. ☐ Recklessness
07. ☒ OMVI
08. ☐ Driving too slow
09. ☐ Traffic signal violation
10. ☐ Left of center
11. ☐ Stopped or parked illegally
12. ☐ Excessive speed
13. ☐ Following too close
14. ☐ Other
15. ☐ View obstruction
16. ☐ None
17. ☐ Vehicle defects
18. ☐ Road defects

**PEDESTRIAN ACTION**
01. ☐ In crosswalk
02. ☐ Crossing other than crosswalk
03. ☐ Walking with traffic
04. ☐ Walking against traffic
05. ☐ Working or playing in roadway
06. ☐ Entering or leaving vehicle
07. ☐ On highway but not in roadway
08. ☐ Off highway
09. ☐ Other
10. ☐ Working on car

**INTENDED DRIVER ACTION**
UNIT 1 2
01. ☒ Going straight
02. ☐ Changing lanes
03. ☐ Passing
04. ☐ Turning right
05. ☐ Turning left
06. ☐ Stopped to turn
07. ☐ Parking
08. ☐ Unparking
09. ☐ Parked
10. ☐ Backing
11. ☐ Stopped in traffic
12. ☐ U-Turn
13. ☐ Merging onto freeway
14. ☐ Exiting from freeway
15. ☐ Other

**TYPE OF UNIT**
UNIT 1 2
01. ☐ Passenger car
02. ☒ Truck
03. ☐ Bus
04. ☐ Motorcycle
05. ☐ Passenger car w/trailer
06. ☐ House vehicle
07. ☐ Tractor and semi trailer
08. ☐ School bus
09. ☐ Motor scooter or motor bicycle
10. ☐ Bicycle
11. ☐ Unlicensed farm vehicle
12. ☐ Rail
13. ☐ Animal
14. ☐ Taxi
15. ☐ Public safety vehicle
16. ☐ Recreational vehicle
17. ☐ Other
18. ☐ Truck w/trailer

**DEFECTS**
UNIT 1 2
1. ☐ Brakes
2. ☐ Lights
3. ☐ Steering
4. ☐ Tires
5. ☐ Other
6. ☒ None

**SPEED**

| UNIT | STATED | POSTED |
|------|--------|--------|
| 1 | 20 | 25 |
| 2 | | |

**FIXED ROADSIDE OBJECT STRUCK**
UNIT 1 2
1. ☒ Light or utility pole
2. ☐ Tree
3. ☐ Sign, signal or support
4. ☐ Guard rail
5. ☐ Fence
6. ☐ Tree
7. ☐ Ditch or embankment
8. ☐ Bridge or culvert
9. ☐ None

**TRAFFIC CONTROL**
UNIT 1 2
1. ☐ Traffic officer
2. ☐ Stop sign
3. ☐ Yield sign
4. ☐ Railroad signal
5. ☐ Traffic signal
6. ☒ None

**OCCURRENCE**
UNIT 1 2
1. ☐ On roadway
2. ☒ Off roadway
3. ☐ On other roadway (divided highway)

**TYPE TRANSMISSION**
UNIT 1 2
1. ☐ Automatic
2. ☒ Manual

**DRIVER EDUCATION**
UNIT 1 2
☒☐ Yes   1 2
☐☐ Not known

**MOTORCYCLE ENGINE SIZE**
UNIT 1 2
1. ☐☐ Light (up to 100 cc)
2. ☐☐ Medium (101 to 349 cc)
3. ☐☐ Heavy (over 350 cc)

**ACCIDENT DESCRIPTION TO INCLUDE POINT OF IMPACT:**

Vehicle #1 operating West on Lakeside Ave.

Struck Muny Light Pole #15622 Located on Northwest corner of East 18th St.

and Lakeside Ave.

Point of Impact: Pole located on tree lawn on Northwest corner.

Injured attended by:

Dr. Dearborn - Charity Hosp.

Record Rm & Relatives Notified

— OTHER INVESTIGATION NOTES —

(Name) Robert E. Jones

(Charge) T.O. 9.1302

(Court Date) Juvenile Court

**DIAGRAM (Show all lanes, label all units)**



Muny Pole #15622

Stop Sign

INDICATE NORTH BY ARROW

Lakeside Ave

Stop Sign

East 18th St.

**VEHICLE DAMAGE**
UNIT 1 2
☐☐ Slight
☐☐ Moderate
☐☐ Severe
☐☐ Demolished
☐☐ Est. $
☐☐ Est. $

**SKIDMARK DATA**

| | UNIT 1 | UNIT 2 |
|------|--------|--------|
| R.F. | | |
| L.F. | | |
| R.R. | | |
| L.R. | | |
| % Gr. | | |

CLE000400

# STATE OF OHIO
## TRAFFIC CRASH REPORT

OH-1 (Rev. 5/73)

LOCAL REPORT NO ①

② OH-2 OH-3 OH-5

③

④

— BMV ONLY —  — DEPT. OF HIGHWAY SAFETY ONLY —

☐ FATAL
☐ INJURY
☐ PROP. DAMAGE
☐ P.D. UNDER $100
☐ ON PRIV. PROP
☐ HITSKIP ⑨

FILE NO. LOCAL USE ⑩

REPORTING AGENCY ⑤ OH

TIME OF CRASH ⑥  DAY ⑦  DATE OF CRASH ⑧ MO. DAY YR.

CRASH OCCURRED IN (CITY, VILLAGE, TOWNSHIP) ⑫

IN COUNTY OF ⑬

ON ROUTE, CO OR TWP. ROAD, STREET ADDRESS ⑭

OT CS IS US IR CR TR PR TP ⑮

AT JUNCTION OR INTERSECTION WITH ⑯

— STATE USE —
ALCOHOL
☐ YES ☐ NO ☐ N.S. ⑪
Type Crash

☐ MILES ☐ FEET  N S E W  OF  MILEPOST, JUNCTION, INTERSECTION, BRIDGE, ETC. ⑰

PHOTO REFERENCE ⑱

TOTAL UNITS INVOLVED ⑲

## UNIT NO. 1

DRIVER — LAST ⑳ FIRST MIDDLE SEX ㉑ DATE OF BIRTH ㉒ MO. DAY YR. AGE ㉓ SOCIAL SECURITY NUMBER ㉔

ADDRESS — NUMBER STREET ㉕ CITY STATE PHONE, IF AVAILABLE ㉖ OCCUPATION ㉗ CIRCLE DAMAGED AREAS ㉜

OPERATOR LICENSE NO. ㉘ STATE ㉙ TYPE OF LICENSE ☐ Operator ☐ Chauffeur  ☐ Spcl. End. ☐ Temporary ☐ Med. Restd.  ☐ Probationary ☐ Motorcycle ☐ Other  TERMS OF RESTRICTION ㉚ ☐ 3 yr. ☐ 6 mon. ☐ 1 yr. ☐ 4 yr.

OWNER — LAST ㉝ FIRST MIDDLE ADDRESS — NUMBER STREET ㉞ CITY STATE PHONE ㉟

VEHICLE YEAR 19 ㊱ MAKE ㊲ MODEL NAME ㊳ COLOR ㊴ BODY STYLE ㊵ VEHICLE DIR. N E S W ㊶ ODOMETER READING ㊷ LIC. NO. ㊸ STATE ㊹ YEAR ㊺

NAME OF INSURANCE COMPANY/AGENT ㊻ INSURANCE ☐ OWNER ☐ DRIVER ㊼ ☐ UNKNOWN ☐ NONE VEHICLE ☐ DRIVEN ☐ HAULED ㊽ NAME OF WRECKER ㊾ INJURED TAKEN TO ㊿ BY WHOM �51

DAMAGE NONE PROPERTY ☐ VEHICLE ☐ �52 ☐ OVER $100 ☐ OVER $100 ALCOHOL TEST GIVEN ☐ YES ☐ NO �53 RESULTS, IF KNOWN TYPE ☐ CITY ORD. ☐ STATE CODE �54 ORD. OR CODE NUMBER �55 ORD. DESCRIPTION �56

## UNIT NO. 2

㊵⑦

DRIVER — LAST FIRST MIDDLE SEX DATE OF BIRTH MO. DAY YR. AGE SOCIAL SECURITY NUMBER

ADDRESS — NUMBER STREET CITY STATE PHONE, IF AVAILABLE OCCUPATION CIRCLE DAMAGED AREAS

OPERATOR LICENSE NO. STATE TYPE OF LICENSE ☐ Operator ☐ Chauffeur  ☐ Spcl. End. ☐ Temporary ☐ Med. Restd.  ☐ Probationary ☐ Motorcycle ☐ Other  TERMS OF RESTRICTION ☐ 3 yr. ☐ 6 mon. ☐ 1 yr. ☐ 4 yr.

OWNER — LAST FIRST MIDDLE ADDRESS — NUMBER STREET CITY STATE PHONE

VEHICLE YEAR 19 MAKE MODEL NAME COLOR BODY STYLE VEHICLE DIR. N S E W ODOMETER READING LIC. NO. STATE YEAR

TRAIN ☐ VEH. ☐ PED. ☐ PROP ☐

NAME OF INSURANCE COMPANY/AGENT INSURANCE ☐ OWNER ☐ DRIVER ☐ UNKNOWN ☐ NONE VEHICLE ☐ DRIVEN ☐ HAULED NAME OF WRECKER INJURED TAKEN TO BY WHOM

DAMAGE NONE PROPERTY ☐ VEHICLE ☐ ☐ OVER $100 ☐ OVER $100 ALCOHOL TEST GIVEN ☐ YES ☐ NO RESULTS, IF KNOWN TYPE ☐ CITY ORD. ☐ STATE CODE ORD. OR CODE NUMBER ORD. DESCRIPTION

OCC. 1 UNIT ㊹ ㉘ NAME — LAST ㊹ FIRST MIDDLE ㊵⑨ AGE ㊵⓪ DATE OF BIRTH ㊶① MO. DAY YR.

WIT. ☐

ADDRESS — NUMBER STREET ㊶② CITY STATE PHONE ㊶③ SEX ㊶④

OCC. 2 UNIT ☐ NAME — LAST FIRST MIDDLE AGE DATE OF BIRTH MO. DAY YR.

WIT. ☐

ADDRESS — NUMBER STREET ㊶⑤ CITY STATE PHONE SEX

OCC. 3 UNIT ☐ NAME — LAST FIRST MIDDLE AGE DATE OF BIRTH MO. DAY YR.

WIT ☐

ADDRESS — NUMBER STREET CITY STATE PHONE SEX

OCC. 4 UNIT ☐ NAME — LAST FIRST MIDDLE AGE DATE OF BIRTH MO. DAY YR.

ADDRESS — NUMBER STREET CITY STATE PHONE SEX

**INJURY SEVERITY**  DR. DR./PED  OCCUPANT
1 2  1 2 3 4  ㊶⑥
Fatal
Incapacitating injury
Visible signs of injury
Claimed injury
No claimed injury

**RESTRAINTS IN USE**  ㊶⑦
Seat belt
Harness and seat belt
Shoulder harness
None in use
Other
None installed

**POSITION**  ㊶⑧
Front left
Front center
Front right
Back left
Back center
Back right
Other

**CONDITION (PED/DR)**  ㊶⑨
Apparently normal
Sick
Fatigued
Apparently asleep
Physical defect
Apparently drinking
Intoxicated
Apparent drug usage

**EJECTION**  ㊸⓪
Total
Partial
Not ejected
Trapped

TIME POLICE: RECEIVED CALL ㊶① DISPATCHED ARRIVED SCENE CLEARED SCENE OTHER INVESTIGATION TOTAL TIME

OCC 1 INJURED TAKEN TO ㊶② BY WHOM ㊶③ OCC 3 INJURED TAKEN TO BY WHOM OFFICER ㊶④

OCC 2 OCC. 4 CHECKED ㊶⑤

CLE000401

STATE OF OHIO  TRAFFIC CRASH REPORT

REPORT NO. (LOCAL) (A)

**CONTOUR** (B)
1 ☐ Straight, level
2 ☐ Straight, grade
3 ☐ Straight, hillcrest
4 ☐ Curve, level
5 ☐ Curve, grade
6 ☐ Curve, hillcrest

**LIGHT CONDITIONS** (C)
1 ☐ Daylight
2 ☐ Dawn or dusk
3 ☐ Dark—no lights
4 ☐ Dark but lighted
5 ☐ Other

**WEATHER** (D)
1 ☐ No adverse weather condition
2 ☐ Rain
3 ☐ Snow
4 ☐ Fog
5 ☐ Other

**ROAD CONDITIONS** (E)
1 ☐ Dry
2 ☐ Wet
3 ☐ Snow or ice
4 ☐ Mud or sand
5 ☐ Other

**ROAD SURFACE** (G)
1 ☐ Asphalt
2 ☐ Concrete
3 ☐ Gravel
4 ☐ Other

**LOCATION** (I)
1 ☐ Street or highway intersection
2 ☐ Alley or driveway
3 ☐ Railroad crossing
4 ☐ Bridge (over 20' span)
5 ☐ Subway (underpass)
7 ☐ Bridge or culvert (spans 20' and under)
8 ☐ Interchange
9 ☐ Non-intersection

NO. LANES (F)    ROAD WIDTH (K)

**TYPE OF CRASH** (K)
(Two Moving Motor Vehicles)
01 ☐ Head on
02 ☐ Rear end
03 ☐ Sideswipe
04 ☐ Angle
05 ☐ Turning

(One Moving MV and —)
06 ☐ Parked motor vehicle
07 ☐ Pedestrian
08 ☐ Animal
09 ☐ Train
10 ☐ Pedalcycles
11 ☐ Other non-motor vehicle
12 ☐ Fixed object
13 ☐ Other object
14 ☐ Motorcycle

(One MV Only)
15 ☐ Overturning
16 ☐ Other non-collision

**CAUSATIVE FACTORS** (L)
UNIT 1 2
01 ☐☐ Failure to yield
02 ☐☐ Ran stop signal
03 ☐☐ Driving wrong way
04 ☐☐ Improper passing
05 ☐☐ Improper turning
06 ☐☐ Recklessness
07 ☐☐ OMVI
08 ☐☐ Driving too slow
09 ☐☐ Traffic signal violation
10 ☐☐ Left of center
11 ☐☐ Stopped or parked illegally
12 ☐☐ Excessive speed
13 ☐☐ Following too close
14 ☐☐ Other
15 ☐☐ View obstruction
16 ☐☐ None
17 ☐☐ Vehicle defects
18 ☐☐ Road defects

**PEDESTRIAN ACTION** (M)
UNIT 1 2
01 ☐☐ In crosswalk
02 ☐☐ Crossing other than crosswalk
03 ☐☐ Walking with traffic
04 ☐☐ Walking against traffic
05 ☐☐ Working or playing in roadway
06 ☐☐ Entering or leaving vehicle
07 ☐☐ On highway but not in roadway
08 ☐☐ Off highway
09 ☐☐ Other
10 ☐☐ Working on car

**INTENDED DRIVER ACTION** (N)
UNIT 1 2
01 ☐☐ Going straight
02 ☐☐ Changing lanes
03 ☐☐ Passing
04 ☐☐ Turning right
05 ☐☐ Turning left
06 ☐☐ Stopped to turn
07 ☐☐ Parking
08 ☐☐ Unparking
09 ☐☐ Parked
10 ☐☐ Backing
11 ☐☐ Stopped in traffic
12 ☐☐ U-Turn
13 ☐☐ Merging onto freeway
14 ☐☐ Exiting from freeway
15 ☐☐ Other

**TYPE OF UNIT** (O)
UNIT 1 2
01 ☐☐ Passenger car
02 ☐☐ Truck
03 ☐☐ Bus
04 ☐☐ Motorcycle
05 ☐☐ Passenger car w/trailer
06 ☐☐ House vehicle
07 ☐☐ Tractor and semi-trailer
08 ☐☐ School bus
09 ☐☐ Motor scooter or motor bicycle
10 ☐☐ Bicycle
11 ☐☐ Unlicensed farm vehicle
12 ☐☐ Rail
13 ☐☐ Animal
14 ☐☐ Taxi
15 ☐☐ Public safety vehicle
16 ☐☐ Recreational vehicle
17 ☐☐ Other
18 ☐☐ Truck w/trailer

**DEFECTS** (J)
UNIT 1 2
1 ☐☐ Brakes
2 ☐☐ Lights
3 ☐☐ Steering
4 ☐☐ Tires
5 ☐☐ Other
6 ☐☐ None

**SPEED** (P)
UNIT | STATED | POSTED
1
2

**FIXED ROADSIDE OBJECT STRUCK** (T)
UNIT 1 2
1 ☐☐ Light or utility pole
2 ☐☐ Bridge or culvert
3 ☐☐ Sign, signal or support
4 ☐☐ Guard rail
5 ☐☐ Fence
6 ☐☐ Tree
7 ☐☐ Ditch or embankment
8 ☐☐ Other
9 ☐☐ None

**OCCURRENCE** (S)
UNIT 1 2
1 ☐☐ On roadway
2 ☐☐ Off roadway
3 ☐☐ On other roadway (divided highway)

**TRAFFIC CONTROL** (U)
UNIT 1 2
1 ☐☐ Traffic officer
2 ☐☐ Stop sign
3 ☐☐ Yield sign
4 ☐☐ Railroad signal
5 ☐☐ Traffic signal
7 ☐☐ Other
8 ☐☐ None

**TYPE TRANSMISSION** (Q)
UNIT 1 2
1 ☐☐ Automatic
2 ☐☐ Manual

**DRIVER EDUCATION** (R)
UNIT 1 2
☐☐ Yes    1 2
☐☐ No    ☐☐ Not known

**MOTORCYCLE ENGINE SIZE** (V)
UNIT 1 2
1 ☐☐ Light (up to 100 c
2 ☐☐ Medium (101 to 349 cc)
3 ☐☐ Heavy (over 350 cc)

ACCIDENT DESCRIPTION TO INCLUDE POINT OF IMPACT: (W)

**DIAGRAM (Show all lanes, label all units)** (X)

(◯) INDICATE NORTH BY ARROW

— OTHER INVESTIGATION NOTES — (AA)

**VEHICLE DAMAGE** (BB)
UNIT 1 2
☐☐ Slight
☐☐ Moderate
☐☐ Severe
☐☐ Demolished
☐☐ Est. $
☐☐ Est. $

**SKIDMARK DATA** (CC)
| | UNIT 1 | UNIT 2 |
|---|---|---|
| R.F. | | |
| L.F. | | |
| R.R. | | |
| L.R. | | |
| % Gr. | | |

## GENERAL POLICE ORDER

NO. **19-74**     HEADQUARTERS_____     June 28, 19__ **74**

SUBJECT: AMENDMENT TO GPO 26-72 "NEW REVISED DUTY REPORT" -- USE OF NEW FORM C of C 71-2133 "OUT OF SERVICE VEHICLE AND EQUIPMENT REPORT"

TO THE MEMBERS OF THE DEPARTMENT

Effective July 1, 1974, when vehicles are out of service, equipment inspection shall be recorded on the new Form C of C 71-2133 - "Out of Service Vehicle and Equipment Report".

In addition to the other information presently required, this form provides for an entry for those cars which are in the shop and has provisions for recording Evidence Technician equipment.

Each space must contain an entry and a dash (-) shall be used when an item of equipment is inapplicable to the Unit.

All such inspections by each Officer in Charge shall be recorded on one Form C of C 71-2133, in duplicate. The form shall be signed by the inspecting officer and the approving Officer in Charge. The original shall be forwarded to Central with the Daily Duty Reports and the copy retained for Unit files.

Any equipment shortage or unreported damage to vehicle shall be the subject of an immediate investigation and reports. The fact of these investigations shall be noted in the "Damage" portion of the Form ZC-1 or, if the vehicle is out of service, under the "Remarks" portion of the Form 71-2133.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

## GENERAL POLICE ORDER

NO. __18--74__          HEADQUARTERS_____19____          June  21,    74

SUBJECT : _____ DIVISION OF POLICE REORGANIZATION _____

TO THE MEMBERS OF THE DEPARTMENT

The Division of Basic Patrol, Criminal Investigation and Traffic shall be designated the Bureau of Patrol, Bureau of Criminal Investigation and Bureau of Traffic and each shall include current subdivisions in the form of the Districts and Specialized Units as now constituted.

There shall be a Bureau of Staff Operations which shall include the Division of Services, Division of Communications and the Division of External Affairs.

The Division of Services and Communications each shall retain their present subdivisions.  The Division of External Affairs shall include the Community Relations Unit, Labor Relations Unit and the Auxiliary Police Unit.

There is hereby established a Bureau of Inspection which shall be under the command of an Inspector of Police, accountable directly to the Chief of Police.

It shall be the function of the Bureau of Inspection and the responsibility of its commanding officer to conduct such inspections and investigations as are necessary to maintain proper police operations and personnel performance.

The Bureau of Inspection shall include a Field Inspection Unit, a Special Investigation Unit, a Complaint Unit and an Internal Security Unit.

(Continued on Page Two)

CLE000404

# GENERAL POLICE ORDER

NO. 18-74      HEADQUARTERS_____19____    June 21, 74

SUBJECT: DIVISION OF POLICE REORGANIZATION

(Page Two)

The Central Vice Enforcement Unit shall be abolished and vice enforcement in the various Districts shall be the exclusive responsibility of the District Commanders who shall be accountable to the Chief of Police through the Commander of the Bureau of Patrol.

All portions of the former organizational structure as outlined in the Organization Chart of April 23, 1973 and related General Police Orders which conflict with the foregoing organizational structure are hereby rescinded.

A new organizational chart shall be issued as part of this order.

This order contains the duties of the Bureau of Inspection and has been separately perpared for distribution to all administrative units.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

CLE000405

## GENERAL POLICE ORDER

NO. 17-74      HEADQUARTERS _____ June 11, 19 74

SUBJECT : MISSING PERSONS UNIT -- REPORT PROCEDURES

TO THE MEMBERS OF THE DEPARTMENT

A Missing Persons Unit has been established in the Division of Criminal Investigation -- Police Line 320.

This Unit shall review copies of all original Missing Person RC-1 Reports and shall be responsible for the maintenance of a file of all active missing persons.

Members of the Division of Police shall make Missing Person and Missing Person Returned or Located reports to the Report Center in accordance with the procedures set forth in the separate and detailed procedural order issued under this subject.

Commanding Officers shall cause a copy of this to be distributed to each member in his Division or District.

GPOs 8-65, 10-65 and 28-73 are hereby rescinded.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

CLE000406

## GENERAL POLICE ORDER

No. 16-74          HEADQUARTERS          May  8,  19 74

SUBJECT: CONFISCATION  OF  DANCE  HALL  INSPECTOR
BADGES

TO THE MEMBERS OF THE DEPARTMENT

Director of Public Safety, James T. Carney, advises that
complaints have been received by his office of special
policeman working parking lots and contrary to regulations
are wearing Dance Hall Badges and the regular Police
Uniform, making it impossible to identify them as private
policeman.

Dance Hall badges are to be worn only when assigned
specifically to a hall for a dance or wedding, etc.

Therefore, at the request of Director Carney, members
encountering special policeman wearing Dance Hall Badges,
while working parking lots, shall confiscate the badge and
forward it to the Office of the Safety Director, together with
a Form 1 report describing the circumstances causing
the confiscation.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 15-74  HEADQUARTERS May 3, 19 74

SUBJECT: SUPPLEMENTARY OVERTIME REGULATIONS

TO THE MEMBERS OF THE DEPARTMENT

Overtime accumulation by all personnel shall be restricted to the absolute minimum and all Superior and Commanding Officers shall be responsible for close supervision and strict compliance with this limitation.

Overtime shall be limited to those instances and to the amount of time required to handle emergencies; to complete essential police assignments or investigations which extend beyond a normal duty tour and that cannot be completed by other members who are on a regular duty tour; for official court appearances as witnesses in criminal prosecutions or in civil cases as witnesses for the city or in support of said member's official on duty police actions; and to attend authorized meetings.

Superior Officers of the rank of Captain and above shall be subject to the same limitations. Additionally, officers of these ranks who normally work the regular business days of each week shall be limited to said regular work schedule. Any deviation shall be only upon written request and with the express permission of the Commanding Officers of the Divisions. Division Commanders shall grant these exceptions only when extraordinary supervisory or administrative duties are specifically enumerated and justified as essential.

(Continued on Page Two)

CLE000408

## GENERAL POLICE ORDER

NO. __15-74__          HEADQUARTERS_____  May 3, __19__ 74

SUBJECT: __SUPPLEMENTARY OVERTIME REGULATIONS__

(Page Two)

This may never include routine duty functions such as the examination of reports or general discussions with subordinates on routine police matters. These reports shall be forwarded to the Chief's Office.

The Commanding Officers of each District and Division shall personally review the overtime accumulated by the individual members of his command. At the end of each month he shall submit a report, stating that he has done so, and that said overtime was necessary for the efficient operation of his District or Division.

Exceptional cases in which the overtime appears excessive shall be listed in the report together with an explanation and the remedial action taken thereon.

GPO's 6-72 and 18-72 are hereby rescinded.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

## GENERAL POLICE ORDER

NO. 14-74          HEADQUARTERS          April 19, 19 74

SUBJECT: SUPPLEMENT TO G.P.O. 7-73 - "ZONE
BOUNDARIES AND ZONE PATROL DISTRIBUTION"

TO THE MEMBERS OF THE DEPARTMENT

General Police Order 7-73 which designates zone boundar-
ies and zone patrol distribution requires that on the 1st and
2nd platoon the odd number cars shall report for the first
Roll Call and even number cars for the second Roll Call.

Effective May 1, 1974, and for the rest of this year 1974,
this procedure shall be reversed with the even number
cars reporting for the first Roll Call and the odd number
cars for the second Roll Call.

Hereafter, and commencing January 1, 1975, this schedule
shall be rotated every six months.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

## GENERAL POLICE ORDER

NO. 13-74     HEADQUARTERS _____ April  12,  19 74

SUBJECT : SUPPLEMENT TO GPO 12-70 - "FIREARM SEIZURE REPORTING PROCEDURE" -- RECORD CHECK & FIREARM COMPUTER CHECKS.

(Page Two)

When the NCIC check reveals that the weapon was stolen or lost and reported by another city or state, this fact shall be properly noted on the Firearm Seizure report.  It shall be further investigated by Detective Division personnel assigned to the case, or by the Lab member processing such weapon.

By  order of,

GERALD  J.  RADEMAKER
CHIEF  OF  POLICE

CLE000411

# GENERAL POLICE ORDER

No. 13-74          HEADQUARTERS_____ April  12,___19__74

SUBJECT : __SUPPLEMENT TO GPO 12-70 - "FIREARM____
SEIZURE REPORTING PROCEDURE" -- RECORD
CHECK & FIREARM COMPUTER CHECKS

TO THE MEMBERS OF THE DEPARTMENT

A revised Firearm Seizure Report, C of C Form 71-43 Rev.,
has been prepared for use by all Districts, Divisions and
Units of Line Operation.

The officer recovering the weapon shall be responsible for
making record checks on the owner of firearms, the person
from whom such firearms were taken, and upon the weapon
itself.  Two (2) record checks shall be made on persons,
and two (2) record checks on the weapon, i.e.: Record
Room, Detective Division Identification Records Unit and
Computer (NCIC).

All property with serial numbers which come into the
custody of the Department should be routinely checked
through NCIC by the officer making the recovery.

If the firearm check reveals the weapon to have been stolen
in Cleveland, an RC-1 Recovery Report shall be made, using
the complaint number of the report in which such firearm
was reported stolen or lost.  A line is included on the new
form to note that such report was made.  The Recovery
Report will generate a cancellation of the weapon from
NCIC at the Message Center.

(Continued on Page Two)

CLE000412

---

### GENERAL POLICE ORDER

No. **12-74**                HEADQUARTERS_____      April 5, 19**74**

SUBJECT: JUVENILE COMPLAINT CLEAN-UP REPORTS --
AMENDMENT TO GPO 35-72 -- "JUVENILE
ARREST, DETENTION, COMPLAINT FILLING
AND REPORTING PROCEDURES -- JUVENILE
COURT LIAISON OFFICER"

TO THE MEMBERS OF THE DEPARTMENT

The Juvenile Arrest, Court and Reporting procedures are
hereby amended to place the responsibility for completion
of "Clean-up" Reports upon the Juvenile Unit.

The new procedures for doing so shall be contained in the
revision of the first two paragraphs of Item #7 of General
Police Order 35-72 which have been printed for distribution
to individual members of the Department.

Commanding Officers shall cause each member to receive
a copy.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

GPO  12-74                                        April 5, 1974

JUVENILE COMPLAINT CLEAN-UP REPORTS -- AMENDMENT TO
GPO 35-72 -- "JUVENILE ARREST, DETENTION, COMPLAINT
FILING AND REPORTING PROCEDURES--JUVENILE COURT
LIAISON OFFICER"

The first two paragraphs of Item #7 of GPO 35-72 shall
be amended to read as follows:

7.  Upon receipt of the properly completed reports,
    the Liaison Officer will proceed with the filing.
    Upon completion of the Juvenile Court complaint
    filing process, the Liaison Officer shall forward
    the proper report form to the Juvenile Unit
    containing the date of the filing and date of
    the court hearing with the notation "Filed on for
    H.B. & L." or "Filed on for A & B", etc.  It shall
    then be the responsibility of the Juvenile Unit to
    make the proper Clean-up Report, using the original
    Complaint Number, and to forward it to the Report
    Center.

This change shall not alter the clean-up reporting respon-
sibilities of any other Units within the Detective Division.

CLE000414

# GENERAL POLICE ORDER

NO. 11-74      HEADQUARTERS April 4, 19 74

SUBJECT: SUPPLEMENT TO GPO 6-74 - "ACCIDENT INVESTIGATION REPORTING PROCEDURES" -- (CITY PROPERTY)

TO THE MEMBERS OF THE DEPARTMENT

General Police Order 6-74, "Accident Investigation Reporting Procedures" requires an on scene investigation of all accidents involving city property.

Upon receiving Moving Violation accident complaints, Communication Control Center personnel shall determine if city property is involved. If so, they shall dispatch an accident or uniform patrol car which shall complete an investigation and report.

The notation "City" shall be added on the OH-4 Report Form in the space provided for designating the type of accident involved (Item #9 in the numbered instructional form).

A fixed object (hydrant, pole, fence, etc.) shall be identified and entered in the Unit #2 space (Item #57) on the line titled "Driver".

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

## GENERAL POLICE ORDER

NO. 10-74  HEADQUARTERS  March 29, 19 74

SUBJECT: INTOXICATION ARREST, BOOKING PROCEDURE--
ORDINARY INTOXICATION/TRAFFIC INTOXICATION

(Page Two)

Ordinary Intoxication arrests shall be handled in the same
manner, and shall be booked under O.R.C. 2917.11B,
"Disorderly Conduct", Adding the notation "(Intoxication)".

Ohio Revised Code sections shall be used until the new
Municipal General Offense Code is adopted by the City of
Cleveland.  At that time members of the Department shall
be instructed in the use of the new Municipal Code and the
change in booking procedure.

Departmental Notice 65-143 is hereby rescinded.

By order of,

GERALD  J.  RADEMAKER
CHIEF  OF  POLICE

# GENERAL POLICE ORDER

**No.** 10-74          **HEADQUARTERS** March 29, 19 74

**SUBJECT:** INTOXICATION ARREST, BOOKING PROCEDURE -
ORDINARY INTOXICATION/TRAFFIC INTOXICATION

TO THE MEMBERS OF THE DEPARTMENT

Effective immediately, personnel shall discontinue booking
suspected drivers and/or passengers found under the
influence of alcohol for Traffic Intoxication, M.C.13.1516.
M.C.13.1516 has been ruled in conflict with the new Ohio
State Revised Code, and therefore not applicable. Here-
after, the following procedure shall apply:

Unless booked directly under T.O. 9.1302, "Driving While
Intoxicated", suspected drivers, and intoxicated passengers
shall be booked under Ohio Revised Code Section 2917.11B-2,
"Disorderly Conduct", adding the notation, "Traffic Intoxi-
cation" in parenthesis following the charge. This notation
will direct the case to Traffic Court Room #1. Preceding
the initial court appearance, a subject booked under O.R.C.
2917.11B-2, "Disorderly Conduct" (Traffic Intoxication),
may still be charged with T.O. 9.1302. "D.W.I.", when a
complainant signs the affidavit, or additional evidence is
obtained to provide the arresting officers with probable
cause to believe the subject was in fact the driver.

(Continued on Page Two)

CLE000417

## GENERAL POLICE ORDER

NO. 9-74     HEADQUARTERS March 29, 19 74

SUBJECT: SUPPLEMENT TO GPO 6-74, ACCIDENT
INVESTIGATION REPORT PROCEDURES.
(AIR CUSHION INFORMATION)

TO THE MEMBERS OF THE DEPARTMENT

Members completing Traffic Crash Reports (OH-4) in
which a vehicle was equipped with an air cushion shall
include the following information inserted under the
heading "Accident Description".

    1) Which Vehicle was so equipped?

    2) Did the air cushion deploy?

    3) VIN number of equipped auto.

Seperior Officers approving these reports shall cause
full compliance.

            By order of,

            GERALD J. RADEMAKER
            CHIEF OF POLICE

CLE000418

# GENERAL POLICE ORDER

No. __8-74__          HEADQUARTERS _____ February 27, 19 __74__

SUBJECT: __POLICE UNIFORM REGULATIONS__

TO THE MEMBERS OF THE DEPARTMENT

By order of the Director of Public Safety, members
shall wear articles of Cleveland Police Department
uniform clothing only while officially on duty or
assignments, while travelling directly to and from
duty tours and assignments and while properly engaged
in part time employment in uniform.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

CLE000419

## GENERAL POLICE ORDER

No. __7-74__          HEADQUARTERS____ February  8, ₁₉ 74

SUBJECT: __USE OF FORM DL-15 (REQUEST FOR DRIVER__
              LICENSE EXAMINATION)

TO THE MEMBERS OF THE DEPARTMENT

Members encountering drivers believed to be incapable of
operating a motor vehicle safely, due to a physical or
mental condition, shall report the information on a Ohio
Bureau of Motor Vehicles Form DL-15, "Request for
Driver License Examination or Recertification".

The DL-15 form shall not be used to report traffic law
convictions.  It is designed only to report physical or
mental conditions of drivers when such conditions are
likely to make such driver a poor risk insofar as driving
an automobile is concerned; or where the driver of an
automible was involved in an traffic violation where his
conduct or action had no other reasonable explanation.

The form shall be made out in duplicate, signed by the
member and the approving Superior Officer (per sample
form) and forwarded to the Officer-in-Charge of the
Accident Investigation Unit.

The DL-15 shall be reviewed at the A.I.U. and, if found
correct, delivered to the Commissioner of Traffic for
his approval.

The copy shall be retained in the A.I.U. files, and the
original forwarded to the Bureau of Motor Vehicles,
Columbus, Ohio.

CLE000420

## GENERAL POLICE ORDER

NO. 7-74                    HEADQUARTERS February 8, 19 74

SUBJECT: USE OF FORM DL-15 (REQUEST FOR DRIVER LICENSE EXAMINATION)

(Page Two)

Supplies of the DL-15 form are available at the A.I.U.

A detailed instruction sheet has been prepared for individual distribution and it shall be considered an integral part of this order.

Memorandum 23-56 is hereby rescinded.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

CLE000421

GPO 7-74                                    February 8, 1974
PROCEDURE FOR USE OF FORM DL-15 (REQUEST FOR DRIVER LICENSE
                                                    EXAMINATION)

Whenever a member believes that a licensed driver is incapable
of operating a motor vehicle safely for reasons of poor physical
condition, poor eyesight, epilepsy, poor driving ability, being
habitual drunkards or narcotics addiction, he shall complete a
State of Ohio, Bureau of Motor Vehicles Form DL-15.

Under Section 4507.20 of the Revised Code, the Registrar of the
Bureau of Motor Vehicles has the authority to order a complete
driver's license examination of drivers concerning whom evidence
of any of the foregoing deficiencies indicates his inability to
operate a motor vehicle safely. The re-examination to determine
driver fitness and future license status falls within the purview
of the Bureau of Motor Vehicles.

The "Reason for Request" section shall be completed by checking
the appropriate entry as follows:

Physical.......To indicate physical disability or defect.
Vision.........For eyesight deficiency.
Driving........When there is evidence of poor driving ability
               based upon and verified by police investigation
               or observation.
Epilepsy.......When there is evidence to support the allegation,
               such as a history of the disease or witness
               statements describing the symptoms of a seizure,
               combined with erratic driving behavior, or the
               officer's personal observation of same. A
               physician's statement should be attached to the
               report.
Black Out or
 Dizzy Spell...Same basis as epilepsy.
Habitual
 Drunkard......Submit list of convictions relative to intoxication
               arrests. Also any commitments to hospitals or
               institutions due to the usage of intoxicants.
Narcotic.......Submit list of convictions for narcotics and
               commitments to institutions because of addiction.
Other..........Indicate here any reason for which a report of
               incompetence is being submitted which is not
               specifically provided for on the report.
Report of
 Incident.....The basis for any one of the foregoing, "Reason for
               Request", shall be described in this section. Give
               date, time, place and details of the occurrence,
               police action taken at the time and the descriptive
               information required to support the specific reason
               for the request for re-examination.

The report must be legible and either typed or filled out with ball
point pen. The Accident Investigation Unit shall forward the
original to the Bureau of Motor Vehicles, License Division, Columbus,
Ohio and retain the copy in their Unit files.

CLE000422

FORM # DL 15

### STATE OF OHIO
### DEPARTMENT OF HIGHWAY SAFETY

BUREAU OF MOTOR VEHICLES          COLUMBUS, OHIO  43216

### REQUEST FOR
### DRIVER LICENSE EXAMINATION
### OR RECERTIFICATION

Name __Donald_____Edmund_____Wasel_____
          First                   Middle                  Last

Address __1706 East 117th St. Cleveland Ohio 44127__
          Number & Street          City          State

DOB: __6/16/19____ SOC. SEC. # __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_____

OPR. LIC. # __TR397062_____ RESTRIC. LIC. # _____

CHAUF. LIC. #_____ TEMP. PERMIT # _____

MAKE OF CAR __Pont.__ LIC. PLATE __AY768__ STATE__Ohio___

REASON FOR REQUEST:

PHYSICAL _X_ VISION ____ DRIVING ____ EPILEPSY ____ DIZZY SPELL_____

HABITUAL DRUNKARD ____ NARCOTIC ____ OTHER_____

REPORT OF INCIDENT: _The above male operated his_
          _vehicle south east through a parking_
          _lot at 6565 Broadway and stated that_
          _he blacked out.  He struck nine cars_
          _and a pedestrian._

(MUST BE REVIEWED AND SIGNED BY HEAD OF AGENCY REPORTING)
          APPROVED BY _George E. Robertson_
          TITLE __Commissioner of Traffic__
          DEPARTMENT __Cleveland Police Dept.__
BMV 09-152    CITY __Cleveland, Ohio_____
          DATE SUBMITTED __10-24-73, remake 11-19-73_

MAIL TO: BUREAU OF MOTOR VEHICLES-DEPT. 9 COLUMBUS 43216, OHIO

## GENERAL POLICE ORDER

No. 6-74          HEADQUARTERS   February 4, 19 74

SUBJECT: ACCIDENT INVESTIGATION REPORTING
PROCEDURES -- USE OF FORMS OH-4 & OH-5

TO THE MEMBERS OF THE DEPARTMENT

Effective Tuesday, February 5, 1974, members shall
discontinue using the "Motor Vehicle Accident Report",
Form 1B. Henceforth, all traffic accident reports shall
be recorded on the new State of Ohio, "TRAFFIC CRASH
REPORT", Form OH-4.

The complete context of this order, containing the
necessary detailed instructions setting forth report making
responsibilities and Radio dispatching procedures on
accident complaints, has been separately printed for
distribution to individual members.

Commanding Officers shall cause each member to receive
a copy of this order together with the Traffic Crash Report
Manual provided by the State.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

CLE000424

GPO 6-74                                        February 4, 1974
ACCIDENT INVESTIGATION REPORTING PROCEDURES--USE OF FORMS OH-4 & OH-5

Effective Tuesday, February 5, 1974, members shall discontinue using the "Motor Vehicle Accident Report", Form 1B. Henceforth, all traffic accident reports shall be recorded on the new State of Ohio, "TRAFFIC CRASH REPORT", Form OH-4.

Supplies of the OH-4 Form and additional copies of the State of Ohio, Department of Highway Safety Manual, titled, "TRAFFIC CRASH REPORT PROCEDURES", are available at the Supply Unit.

Supplies of the instructional manual have been distributed to all Units. Commanding Officers shall cause each member of their command to be issued one of these manuals.

Procedural guidelines enumerated in the TRAFFIC CRASH REPORT manual for the completion of TRAFFIC CRASH REPORT Form OH-1 shall be followed when completing the OH-4. The content of the Form OH-1 and the Form OH-4 are identical. The Form OH-4 shall be filled out in triplicate. (completed Sample Copy attached)

The original shall be kept for departmental files. The first carbon copy shall be delivered daily to the Mail Center for mailing to The Ohio Department of Highway Safety, 240 Parsons Avenue, Columbus, Ohio 43205. The second carbon copy shall be forwarded to the Statistics Unit.

Distribution of copies shall be made by the Accident Investigation Unit.

The new form is self explanatory. However, particular attention shall be given to the following specific points as illustrated on Page 7 of the manual:

    (1) The form requires the insertion of five (5) different
        time elements.
            a) Time of crash (Point #6 on the illustration)
            b) Time police received the call (Point #71)
            c) Time dispatched (Point #71)
            d) Time arrived on the scene (Point #71)
            e) Time cleared scene (Point #71)

Each of these times shall be designated in MILITARY TIME, i.e., 00:01 through 24:00 (see Page 9 of procedure manual).

At the time the Radio dispatcher broadcasts the assignment to a car, he shall also broadcast the time Radio received the call of the accident.
    (2) Point (#5), (Reporting Agency) - Insert "Cleveland Police
        Department OHCLP-00"
    (3) Point (#9), (Crash Type) - Check all applicable boxes, more
        than one may be used.
    (4) Points (#14 through #16) - Our present accident location
        reporting procedure shall continue to apply, i.e., "On
        Euclid at East 9th St.", "On Superior at Addison" or "On
        Lorain at 6705".

(5) Point (#57) - If more than two units are involved in the crash, use additional OH-4 Forms and renumber the units as #3 or #4, etc.

(6) Point (#75) - Approving Superior Officer's signature or initials.

(7) Point (AA) - "Other Investigation Notes" on the backside of the OH-4 shall be used to insert the name, charge (ordinance number) and court date of the person cited or arrested.

Further use of this section, and Sections (BB) and (CC), is not required as such information is normally included in Form #10 Supplementary Reports.

The C of C 71-10, Supplementary Report, shall also be used in lieu of the OH-2, "TRAFFIC CRASH REPORT ADDENDUM". OH-4 and OH-5 State Crash Forms are the only new forms being adopted by the Department. Witness Statement Forms and Supplementary Form #10s shall continue to be used as in the past.

The OH-5, "SUPPLEMENT" Form (pink color), shall be submitted to the State whenever it is determined that material corrections or supplemental data to the OH-4 is available. EXAMPLE: Victim initially reported as "injured" later expires.

Report making responsibilities and Radio dispatching procedures on accident complaints shall be as follows:

The Communications Control Center shall dispatch an accident or uniform patrol car and the officers assigned shall investigate the following types of accidents:

(1) Accidents involving personal injury or death.

(2) Accidents involving disabled vehicles.

(3) Accidents involving a Hit-Skip driver.

(4) Accidents involving City property.

(5) Accidents involving a reported intoxicated driver.

Cars shall not be dispatched to routine damage accidents. The drivers shall be courteously advised to report the the nearest District Station, where District office personnel shall fill out the accident report form.

Division Commanding Officers shall cause full compliance with these instructions.

CLE000426

*Chet.*

# STATE OF OHIO
## TRAFFIC CRASH REPORT

**OH-4** (Rev. 5/73)

| | | |
|---|---|---|
| LOCAL REPORT NO. (leave blank) | ☐ OH-2 ☐ OH-3 ☐ OH-5 — BMV ONLY — — DEPT. OF HIGHWAY SAFETY ONLY — | ☐ FATAL ☒ INJURY ☒ PROP. DAMAGE ☐ P.D. UNDER $100 ☐ ON PRIV. PROP. ☐ HITSKIP |

FILE NO. (Leave Blank) — LOCAL USE

| REPORTING DEPT. | | TIME OF CRASH | DAY | DATE OF CRASH |
|---|---|---|---|---|
| Cleveland Police Dept.  OHCLP-00 | OH | 14:45 | Tues. | 1 MO. 29 DAY 74 YR. |

| CRASH OCCURRED IN (CITY, VILLAGE, TOWNSHIP) | IN COUNTY OF |
|---|---|
| Cleveland, Ohio | Cuyahoga |

| ON ROUTE, CO. OR TWP. ROAD, STREET ADDRESS | CT CS IS US SR CR TR PR TP ☐ ☐ ☒ ☐ ☐ ☐ ☐ ☐ ☐ | AT JUNCTION OR INTERSECTION WITH | — STATE USE — ALCOHOL |
|---|---|---|---|
| Lakeside Ave. | | East 18 St. | ☐ YES ☐ NO ☐ N.S. |

| ☐ MILES  N ☐ FEET  W — E  of  S | MILEPOST, JUNCTION, INTERSECTION, BRIDGE, ETC. | PHOTO REFERENCE J. Smith | _____TYPE Crash |
|---|---|---|---|

## SAMPLE

**TOTAL UNITS INVOLVED:** 2

### UNIT NO. 1

| DRIVER — LAST | FIRST | MIDDLE | SEX | DATE OF BIRTH | AGE | SOCIAL SECURITY NUMBER |
|---|---|---|---|---|---|---|
| Jones | Robert | E. | M | 2 MO. 10 DAY 44 YR. | 29 | 280  14  7010 |

| ADDRESS — NUMBER  STREET  CITY | PHONE, IF AVAILABLE | OCCUPATION | CIRCLE DAMAGED AREAS |
|---|---|---|---|
| 4228 West 56 St. Cleve., Ohio | 661-4016 | Cab Dr. | |

| OPERATOR LICENSE NO. | STATE | TYPE OF LICENSE | | TERMS OF RESTRICTION |
|---|---|---|---|---|
| L-414680 | Oh | ☒ Operator ☐ Chauffeur | ☐ Spcl. End. ☐ Temporary ☐ Med. Restd. | ☐ Probationary ☐ Motorcycle ☐ Other | ☐ 3 yr. ☐ 6 mon. ☐ 1 yr. ☐ 4 yr. |

| OWNER — LAST | FIRST | MIDDLE | ADDRESS — NUMBER  STREET  CITY  STATE | PHONE |
|---|---|---|---|---|
| (Same) | | | (Same) | (Same) |

| VEHICLE YEAR 19 | MAKE | MODEL NAME | COLOR | BODY STYLE | VEHICLE DIR. | ODOMETER READING | LIC. NO. | STATE | YEAR |
|---|---|---|---|---|---|---|---|---|---|
| 71 | Olds | F 85 | Blu | 2 dr. | N S E ⓦ | 42,000 | YC-303 | Ohio | '73 |

| NAME OF INSURANCE COMPANY/AGENT | INSURANCE | VEHICLE | NAME OF WRECKER | INJURED TAKEN TO | BY WHOM |
|---|---|---|---|---|---|
| Hartford | OWNER ☐ UNKNOWN ☐ DRIVER ☐ | DRIVEN ☐ HAULED ☒ | G.&M. | Charity | Car 7341 |

| DAMAGE | NONE | ALCOHOL TEST GIVEN | RESULTS, IF KNOWN | ORD. OR CODE NUMBER | ORD. DESCRIPTION |
|---|---|---|---|---|---|
| PROPERTY VEHICLE ☒ | ☐ OVER $100 ☒ OVER $100 | ☐ YES ☒ NO  TYPE | ☐ CITY ORD. ☐ STATE CODE | none | none |

### UNIT NO. 2

| DRIVER — LAST | FIRST | MIDDLE | SEX | DATE OF BIRTH | AGE | SOCIAL SECURITY NUMBER |
|---|---|---|---|---|---|---|
| Brown | Julius | A. | M | 12 MO. 25 DAY 23 YR. | 50 | 278  19  7442 |

| ADDRESS — NUMBER  STREET  CITY  STATE | PHONE, IF AVAILABLE | OCCUPATION | CIRCLE DAMAGED AREAS |
|---|---|---|---|
| 1289  East 33 St., Cleve. Ohio | 861-3002 | Plumber | |

| OPERATOR LICENSE NO. | STATE | TYPE OF LICENSE | | TERMS OF RESTRICTION |
|---|---|---|---|---|
| H-41228 | Oh | ☒ Operator ☐ Chauffeur | ☐ Spcl. End. ☐ Temporary ☐ Med. Restd. | ☐ Probationary ☐ Motorcycle ☐ Other | ☐ 3 yr. ☐ 6 mo. ☐ 1 yr. ☐ 4 yr. |

| OWNER — LAST | FIRST | MIDDLE | ADDRESS — NUMBER  STREET  CITY  STATE | PHONE |
|---|---|---|---|---|
| (Same) | | | (Same) | (Same) |

| VEHICLE YEAR 19 | MAKE | MODEL NAME | COLOR | BODY STYLE | VEHICLE DIR. | ODOMETER READING | LIC. NO. | STATE | YEAR |
|---|---|---|---|---|---|---|---|---|---|
| 63 | Ford | F 100 | Blk. | Truck | N S E ⓦ | 86,000 | A-14-Y3 | Ohio | '73 |

☒ TRAIN VEH. ☐ PED. ☐ PRDP. ☐ ANIMAL

| NAME OF INSURANCE COMPANY/AGENT | INSURANCE | VEHICLE | NAME OF WRECKER | INJURED TAKEN TO | BY WHOM |
|---|---|---|---|---|---|
| Allstate | OWNER ☒ UNKNOWN ☐ DRIVER ☐ | DRIVEN ☐ HAULED ☐ | G.& M, | | |

| DAMAGE | NONE | ALCOHOL TEST GIVEN | RESULTS, IF KNOWN | ORD. OR CODE NUMBER | ORD. DESCRIPTION |
|---|---|---|---|---|---|
| PROPERTY VEHICLE ☒ | ☐ OVER $100 ☒ OVER $100 | ☒ YES ☐ NO  TYPE Urine | ☒ CITY ORD. ☐ STATE CODE | 9.1302 | DWI |

### OCCUPANTS / WITNESSES

| OCC. 1 UNIT ☒  WIT. ☐ | NAME — LAST | FIRST | MIDDLE | AGE | DATE OF BIRTH | |
|---|---|---|---|---|---|---|
| | Smith | John | B. | 28 | 6 MO. 10 DAY 55 YR. | |
| | ADDRESS — NUMBER  STREET  CITY  STATE | | | PHONE | | SEX |
| | 1289 Memphis Ave.,Cleve.,Oh. | | | 351-6523 | | M |

| OCC. 2 UNIT ☐  WIT. ☐ | NAME — LAST | FIRST | MIDDLE | AGE | DATE OF BIRTH | |
|---|---|---|---|---|---|---|
| | | | | | MO. DAY YR. | |
| | ADDRESS — NUMBER  STREET  CITY  STATE | | | PHONE | | SEX |

| OCC. 3 UNIT ☐  WIT. ☐ | NAME — LAST | FIRST | MIDDLE | AGE | DATE OF BIRTH | |
|---|---|---|---|---|---|---|
| | | | | | MO. DAY YR. | |
| | ADDRESS — NUMBER  STREET  CITY  STATE | | | PHONE | | SEX |

| OCC. 4 UNIT ☐  WIT. ☐ | NAME — LAST | FIRST | MIDDLE | AGE | DATE OF BIRTH | |
|---|---|---|---|---|---|---|
| | | | | | MO. DAY YR. | |
| | ADDRESS — NUMBER  STREET  CITY  STATE | | | PHONE | | SEX |

**INJURY SEVERITY**

| | DR./PED | OCCUPANT 1 2 3 4 |
|---|---|---|
| Fatal | 1 | |
| Incapacitating injury | 2 | |
| Visible signs of injury | 3 ☒ | |
| Claimed injury | 4 | |
| No claimed injury | 5 | |

**RESTRAINTS IN USE**

| | | |
|---|---|---|
| Seat belt | 1 | |
| Harness and seat belt | 2 | |
| Shoulder harness | 3 | |
| None in use | 4 ☒ | |
| Other | 5 | |
| None installed | 6 | |

**POSITION**

| | | |
|---|---|---|
| Front left | 1 ☒ | |
| Front center | 2 | |
| Front right | 3 | |
| Back left | 4 | |
| Back center | 5 | |
| Back right | 6 | |
| Other | 7 | |

**CONDITION (PED/DR)**

| | | |
|---|---|---|
| Apparently normal | 1 | |
| Sick | 2 | |
| Fatigued | 3 | |
| Apparently asleep | 4 | |
| Physical defect | 5 | |
| Apparently drinking | 6 | |
| Intoxicated | 7 | |
| Apparent drug usage | 8 | |

| TIME POLICE: | RECEIVED CALL 14:50 | DISPATCHED 14:53 | ARRIVED SCENE 15:00 | CLEARED SCENE 16:20 | OTHER INVESTIGATION | TOTAL TIME |
|---|---|---|---|---|---|---|

| OCC. 1 | INJURED TAKEN TO Charity | BY WHOM Car 314 | OCC. 3 | INJURED TAKEN TO | BY WHOM |
|---|---|---|---|---|---|
| OCC. 2 | | | OCC. 4 | | |

OFFICERS *R. Miller*
Miller #110

CHECKED BY *A.f.S. Lieut*

**EJECTION**

| | | |
|---|---|---|
| Total | 1 | |
| Partial | 2 | |
| Not ejected | 3 | |
| Trapped | 4 | |

CLE000427

**SAMPLE COPY**

STATE OF OHIO

**TRAFFIC CRASH REPORT**

S A M P L E (left margin)

S A M P L E (right margin)

REPORT NO. (LOCAL)

(leave blank)

**LOCATION**

1 [X] Street or highway intersection
2 ☐ Alley or driveway
3 ☐ Railroad crossing
4 ☐ Bridge (over 20' span)
5 ☐ Subway (underpass)
6 ☐ Bridge or culvert (spans 20' and under)
7 ☐
8 ☐ Interchange
9 ☐ Non-intersection

**CONTOUR**

1 [X] Straight, level
2 ☐ Straight, grade
3 ☐ Straight, hillcrest
4 ☐ Curve, level
5 ☐ Curve, grade
6 ☐ Curve, hillcrest

**LIGHT CONDITIONS**

1 [X] Daylight
2 ☐ Dawn or dusk
3 ☐ Dark—no lights
4 ☐ Dark but lighted
5 ☐ Other

**WEATHER**

1 [X] No adverse weather condition
2 ☐ Rain
3 ☐ Snow
4 ☐ Fog
5 ☐ Other

**ROAD CONDITIONS**

1 [X] Dry
2 ☐ Wet
3 ☐ Snow or ice
4 ☐ Mud or sand
5 ☐ Other

**ROAD SURFACE**

1 ☐ Asphalt
2 [X] Concrete
3 ☐ Gravel
4 ☐ Other

NO. LANES    4

ROAD WIDTH    36'

**TYPE OF CRASH**
(Two Moving Motor Vehicles)

01 ☐ Head-on
02 [X] Rear-end
03 ☐ Sideswipe
04 ☐ Angle
05 ☐ Turning

(One Moving MV and —)

06 ☐ Parked motor vehicle
07 ☐ Pedestrian
08 ☐ Animal
09 ☐ Train
10 ☐ Pedalcycles
11 ☐ Other non-motor vehicle
12 ☐ Fixed object
13 ☐ Other object
14 ☐ Motorcycle

(One MV Only)

15 ☐ Overturning
16 ☐ Other non-collision

**CAUSATIVE FACTORS**  UNIT 1  2

01 ☐ Failure to yield
02 ☐ Ran stop signal
03 ☐ Driving wrong way
04 ☐ Improper passing
05 ☐ Improper turning
06 ☐ Recklessness
07 ☐ OMVI
08 ☐ Driving too slow
09 ☐ Traffic signal violation
10 ☐ Left of center
11 ☐ Stopped or parked illegally
12 ☐ Excessive speed
13 [X] Following too close
14 ☐ Other
15 ☐ View obstruction
16 [X] None
17 ☐ Vehicle defects
18 ☐ Road defects

**PEDESTRIAN ACTION**

01 ☐ In crosswalk
02 ☐ Crossing other than crosswalk
03 ☐ Walking with traffic
04 ☐ Walking against traffic
06 ☐ Working or playing in roadway
07 ☐ Entering or leaving vehicle
08 ☐ On roadway but not on roadway
09 ☐ Off highway
10 ☐ Working on car

**INTENDED DRIVER ACTION**  UNIT 1  2

01 [X] Going straight
02 ☐ Changing lanes
03 ☐ Passing
04 ☐ Turning right
05 ☐ Turning left
06 [X] Stopped to turn
07 ☐ Parking
08 ☐ Unparking
09 ☐ Parked
10 ☐ Backing
11 ☐ Stopped in traffic
12 ☐ U-Turn
13 ☐ Merging onto freeway
14 ☐ Exiting from freeway
15 ☐ Other

**TYPE OF UNIT**  UNIT 1  2

01 [X] Passenger car
02 [X] Truck
03 ☐ Bus
04 ☐ Motorcycle
05 ☐ Passenger car w/trailer
06 ☐ House vehicle
07 ☐ Tractor and semi-trailer
08 ☐ School bus
09 ☐ Motor scooter or motor bicycle
10 ☐ Bicycle
11 ☐ Unlicensed farm vehicle
12 ☐ Rail
13 ☐ Animal
14 ☐ Taxi
15 ☐ Public safety vehicle
16 ☐ Recreational vehicle
17 ☐ Other
18 ☐ Truck w/trailer

**DEFECTS**  UNIT 1  2

1 ☐ Brakes
2 ☐ Lights
3 ☐ Steering
4 ☐ Tires
5 ☐ Other
6 [X] None

**SPEED**

| UNIT | STATED | POSTED |
|------|--------|--------|
| 1 | 0 | 25 |
| 2 | 20 | 25 |

**OCCURRENCE**  UNIT 1  2

1 [X] On roadway
2 ☐ Off roadway
3 ☐ On other roadway (divided highway)

**FIXED ROADSIDE OBJECT STRUCK**  UNIT 1  2

1 ☐ Light or utility pole
2 ☐ Bridge or culvert
3 ☐ Sign, signal or support
4 ☐ Guard rail
5 ☐ Fence
6 ☐ Tree
7 ☐ Ditch or embankment
8 ☐ Other
9 [X] None

**TRAFFIC CONTROL**  UNIT 1  2

1 ☐ Traffic officer
2 [X] Stop sign
3 ☐ Yield sign
4 ☐ Railroad signal
5 ☐ Traffic signal
6 ☐ Other
7 ☐
8 ☐ None

**MOTORCYCLE ENGINE SIZE**  UNIT 1  2

1 ☐ Light (up to 100 cc)
2 ☐ Medium (101 to 349 cc)
3 ☐ Heavy (over 350 cc)

**TYPE TRANSMISSION**  UNIT 1  2

1 [X] Automatic
2 [X] Manual

**DRIVER EDUCATION**  UNIT 1  2

1 ☐ Yes
2 [X] No
☐ Not known

ACCIDENT DESCRIPTION TO INCLUDE POINT OF IMPACT:

No.1 Vehicle operated West on Lakeside Avenue, stopped to make left

turn at East 18 St. was struck from rear by No.2 Vehicle also operated

West on Lakeside Avenue.

Point of impact : Centerlane, westbound of Lakeside Avenue at intersection

of East 18 St.

**DIAGRAM (Show all lanes, label all units)**

STOP SIGN

INDICATE NORTH BY ARROW

LAKESIDE AVE.

1 2 (units)

STOP SIGN

EAST 18 ST.

**—OTHER INVESTIGATION NOTES—**

(Name)    Julius Brown

(Charge)    T.0.9.1302

(Court Date) 1-30-74

**VEHICLE DAMAGE**  UNIT 1  2

☐ Slight
☐ Moderate
☐ Severe
☐ Demolished
☐ Est. $
☐ Est. $

**SKIDMARK DATA**

| | UNIT 1 | UNIT 2 |
|------|--------|--------|
| R.F. | | |
| L.F. | | |
| R.R. | | |
| L.R. | | |
| % Gr. | | |

CLE000428

## GENERAL POLICE ORDER

NO. 5-74   HEADQUARTERS  January 29, 19 74

SUBJECT: BOOKING FORMS TO INCLUDE  DATE AND
TIME OF ARREST

TO THE MEMBERS OF THE DEPARTMENT

Effective immediately, whenever a member makes an
arrest, the date and time of the initial arrest shall be
included on all booking forms (C of C 71-125, 71-126 and
71-127) on Line (8) "Arrested At:".

EXAMPLE:

ARRESTED AT: (LOCATION)  (DATE)  (TIME)

This will provide the date and time of the actual arrest to
the Courts for their use in applying the provision of
2945.71, "Time Within Which Hearing Or Trial Must Be
Held".

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

CLE000429

## GENERAL POLICE ORDER

NO.____4-74____          HEADQUARTERS____January 29,__19__74

SUBJECT: MISDEMEANOR ARREST PROCEDURES --
REVISION OF GPO 17-68

TO THE MEMBERS OF THE DEPARTMENT

New O.R.C. 2935.03 authorizes an officer to arrest without
a warrant upon reasonable ground to believe that an offense
of violence or a theft offense has been committed and to
detain the person whom he has reasonable cause to believe
to be guilty of the violation, until a warrant can be obtained.
This increases the number of misdemeanor offenses for
which arrest may be made upon reasonable cause without a
warrant and without requiring the commission of the crime
in the officer's presence.

Misdemeanor Arrest Procedures as set forth in GPO 17-68
are hereby revised to include these offenses.  The complete
context of this order has been printed for individual
distribution and Commanding Officers shall cause said
distribution to all members.

GPO 17-68 is hereby rescinded.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

GPO  4-74                                    January 29, 1974
MISDEMEANOR ARREST PROCEDURES -- REVISION OF GPO 17-68

Under Revised Code 2935.03, effective January 1, 1974, an officer
may arrest upon reasonable cause and without viewing the commission
of the following misdemeanors:

OFFENSE OF VIOLENCE

1.   Assault
2.   Aggravated menacing
3.   Menacing
4.   Arson
5.   Riot
6.   Inducing Panic
7.   Carrying Concealed Weapons


THEFT OFFENSES

8.   Tampering with coin machines
9.   Petty Theft
10.  Unauthorized use of a vehicle
11.  Unauthorized use of property
12.  Passing bad checks
13.  Misuse of credit cards
14.  Making or using a slug
15.  Defrauding a livery or hostelry
16.  Tampering with records
17.  Securing writings by deception
18.  Personating an officer (2913.44)
19.  Defrauding creditors
20.  Receiving stolen property
21.  Cheating

Reasonable cause requires belief by the officer that the offense
was committed by the suspect and must be based on the same amount
of credible evidence that would be necessary for the complainant
to obtain a warrant.

In Assault cases, for example, an allegation unsupported by other
physical evidence of injury or witness information would not justify
an arrest under this section.

In a Theft case, the possession of the stolen property by the suspect
and/or eyewitness statements would provide the reasonable grounds for
arrest.

Further, whenever possible, the arresting officer shall obtain a
short written statement from the victim containing assurances of his
intention to prosecute, in order to substantiate the officer's action.

CLE000431

- 2 -

The following is a copy of Ohio Revised Code 2935.03 as it appears under the caption, "Arrest Without Warrant For Misdemeanor".

2935.03  ARREST WITHOUT WARRANT FOR MISDEMEANOR

A sheriff, deputy sheriff, marshal, deputy marshal or police officer shall arrest and detain a person found violating a law of this state or an ordinance of a municipal corporation, until a warrant can be obtained.

When there is reasonable ground to believe that an offense of vio- lence, or a theft offense as defined in Section 29213.01 of the Revised Code  has been committed, a sheriff, deputy sheriff, marshal, deputy marshal, or police officer may arrest without a warrant any person whom he has reasonable cause to believe is guilty of the violation, and detain him until a warrant can be obtained.

A constable, within the limits of the township in which said constable has been appointed or elected, shall arrest and detain a person found by him in the commission of a misdemeanor, either in violation of a law of this state or an ordinance of a village, until a warrant can be obtained.

The general rules of arrests in the first paragraph of Revised Code 2935.03 must still be applied to all other misdemeanors.

The arrest provisions in this new section (RC 2935.03) parallel those of the shoplifting arrest law (RC 2935.041) which still remains in effect.

Shoplifting arrests shall continue to be handled as outlined in GPO 4-66 and as amended in GPO 4-72 relating to amended investigation arrest booking procedures.

In addition, the provisions of GPO 1-74 relating to misdemeanor arrests for a theft crime where the prisoner has a prior arrest record for theft shall be booked for investigation in connection with ORC 2913-02 B- Grand Theft, if the offender has previously been convicted of a theft offense of any kind.

Copies of this order shall be forwarded to the Districts for distribution by Commanding Officers.

General Police Order #17-68 is hereby rescinded.


LG

## GENERAL POLICE ORDER

NO. **3-74**    HEADQUARTERS **January 28,** 19 **74**

SUBJECT: SUPPLEMENT TO GPO 2-72 - VEHICLE PROCESSING PROCEDURE

TO THE MEMBERS OF THE DEPARTMENT

When a stolen auto is recovered, members shall ascertain from the Report Center the title of the theft report. If the theft report reveals that the vehicle contained valuable cargo it shall be processed in accordance with GPO 2-72.

By order of,

GERALD  J.  RADEMAKER
CHIEF  OF  POLICE

CLE000433

## GENERAL POLICE ORDER

NO. __2-74__         HEADQUARTERS _____ January 25, 19__ 74

SUBJECT : ___ AMENDMENTS TO THE MANUAL OF RULES

TO THE MEMBERS OF THE DEPARTMENT

By the authority of James T. Carney, Director of Public
Safety, the Manual of Rules of the Department of Public
Safety, Division of Police shall be revised as follows:

Under ORGANIZATION--PERSONNEL

Section 1

The order of rank in the Division of Police shall be as
follows:

(1) Chief of Police
(2) Assistant Chief
(3) Inspectors
(4) Deputy Inspectors
(5) Captains
(6) Lieutenants
(7) Sergeants
(8) Patrolmen

No person holding any of the above ranks in the
Department of Public Safety shall perform any work
which is of the same nature as, or included within, the
duties of other classified employees of the City, except
such as is immediately essential to the performance of
the duties of such rank as is necessarily incidental
thereto.

(Continued on Page Two)

CLE000434

## GENERAL POLICE ORDER

No. 2-74          HEADQUARTERS  January 25, 19 74

SUBJECT: AMENDMENTS TO THE MANUAL OF RULES

(Page Two)

Section IX -- Deputy Chief amended to:

### Section IX

### ASSISTANT CHIEF

The Chief of Police shall designate an Inspector to serve in the capacity of Assistant Chief and he shall perform such duties as are assigned by the Chief. During the absence of the Chief of Police, the Assistant Chief shall serve in the capacity of Acting Chief.

Effective January 25, 1974, the rank of Deputy Chief shall be abolished.

These revisions shall become effective January 26, 1974 and copies shall be distributed to all members.

GPO 20-70 is hereby rescinded.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

## GENERAL POLICE ORDER

NO. **1-74**     HEADQUARTERS **January 11, 19 74**

SUBJECT: **THEFT ARRESTS - SECOND AND SUBSEQUENT OFFENDER INVESTIGATION AND BOOKING PROCEDURES**

TO THE MEMBERS OF THE DEPARTMENT

Whenever a member makes a misdemeanor arrest for a theft crime he shall obtain a record check on such offender at both the Record Room and the Detective Division Identification Records Unit.

Prisoners found to have a prior arrest record for theft shall be booked for investigation in connection with O. R. C. Section 2913.02(B) under which it is a Grand Theft felony offense, if the offender has been previously convicted of a theft offense of any kind.

The information on the prior record shall be included in the RC-1 crime report and proper notation typed on the Pink Investigation Arrest Card Form 127 which shall be forwarded to the Detective Division for disposition of such prisoners.

This procedure is necessary to permit further investigation and to assure proper case preparation and that the proper amount of bail can be set by the court. It shall not affect the physical arrest procedure, even if prior record of conviction is known at the time that the offender is taken into custody. The actual arrest must be made in accordance with the limitations imposed by the degree of the crime involved at the time, that is, whether it is a felony or misdemeanor. The ultimate decision for the more serious felony charge lies with the prosecutor and shall be based upon documentary proof of prior conviction.

By Order of,
GERALD J. RADEMAKER
CHIEF OF POLICE

# GENERAL POLICE ORDER

NO. 28-73             HEADQUARTERS December 31, 19 73

SUBJECT : MISSING PERSONS UNIT -- PROCEDURES

(Page Two)

The Juvenile Unit, Policewomen's Unit, and the Districts shall continue to maintain Missing Person records and files, and have a specific investigative responsibility as follows:

Juvenile Unit -- Missing Male Minors

Policewomen's Unit -- Missing Female Minors

The six Police Districts -- All Missing Persons residing or reported missing from their respective Districts.

Bi-monthly checks shall continue to be made by the Districts, for which purpose they shall receive lists of Missing Persons from the Missing Persons Unit. A Missing Person Returned report or a Supplementary Form 10 report, in triplicate, shall be made on each such Missing Person.

This order shall be considered a supplement to GPO 8-65 and 10-65 which shall remain in effect.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

# GENERAL POLICE ORDER

No. 28-73          HEADQUARTERS      December 31, 19 73

SUBJECT: MISSING PERSONS UNIT -- PROCEDURES

TO THE MEMBERS OF THE DEPARTMENT

There shall be a Missing Persons Unit in the Division of Criminal Investigation, Police Line 320.

This Unit shall be responsible for the maintenance of a file of active Missing Person Reports.

The Officer in Charge shall cause proper reports to be made, shall evaluate Missing Person reports, and shall determine whether there is need for further or special investigation in any individual case. He shall cause such additional investigation to be made by proper notification of the Commanding Officers of the Detective and Patrol Division. He shall keep the Chief's Office advised of serious cases that involve criminality or physical danger to small children.

The Missing Persons Unit shall review copies of all original Missing Persons R.C.#1 reports. All copies of each follow-up Supplementary report shall be forwarded to the Missing Persons Unit which shall forward copies of follow-up reports to the District or Unit concerned.

(Continued on Page Two)

CLE000438

## GENERAL POLICE ORDER

NO. **27-73**    HEADQUARTERS_____ December 28, 19__ 73

SUBJECT: AMENDMENT TO GPO 31-72 and 14-73 "MESSAGE RECORDING REPORT SYSTEM" and ADOPTION OF NEW OHIO REVISED CRIMINAL CODE REPORT TITLES

(Page Two)

GPO 20-73, "Supplement to GPO 31-72", shall be amended by substituting "Police Officer" for "Patrolman" when making applicable Report Titles.

Personnel shall continue to consult with Superior Officers on all felonies and whenever in doubt of a particular Report Title.

Other material prepared for individual distribution includes "Selected Statutes" outlined in element form and a condensed printout of selected Statutes designed for use as a pocket reference.

Commanding Officers shall be responsible for the distribution of one copy to each member.

By order of,


GERALD J. RADEMAKER
CHIEF OF POLICE

# GENERAL POLICE ORDER

NO. 27-73          HEADQUARTERS December · 28, 19 73

SUBJECT: AMENDMENT TO GPO 31-72 and 14-73 "MESSAGE RECORDING REPORT SYSTEM" AND ADOPTION OF NEW OHIO REVISED CRIMINAL CODE REPORT TITLES

TO THE MEMBERS OF THE DEPARTMENT

Commencing 12:01 AM, January 1, 1974, Report Titles contained on Page 4 of General Police Order 31-72, "Message Recording Report System" shall be amended and new crime report titles which conform to the New Ohio Revised Criminal Code shall be placed into effect.

As part of this order, a list of new Report Titles has been prepared for individual distribution to all members. It also lists the former offense or Report Title most closely related to the new Title, plus other important essential factors and circumstances.

In addition to those listed, anyother violation of a Statute or Ordinance may be used as the Report Title.

Whenever property of any value is stolen during the commission of a homicide or rape, it shall be listed in the report and a total value assigned.

Wherever "Auto" is mentioned in GPO 31-72 and its amendment GPO 14-73, the term "Motor Vehicle" shall be substituted.

Procedure as outlined in GPO 5-65, "Juvenile Complaint Report" and its supplement GPO 25-67, and GPO 11-73, "Information on "Drugs Involved" to be Included in Reports" continue in effect and shall be followed when making RC#1 Reports.

(Continued on Page Two)

CLE000440

## GENERAL POLICE ORDER

NO. 26-73                  HEADQUARTERS_____ December 5,  73

SUBJECT: <u>PROCEDURE USED IN HANDLING PROBABLE</u>
<u>AUTO THEFTS</u>

TO THE MEMBERS OF THE DEPARTMENT

The Radio Dispatch Unit will assign complaints of probable
Motor Vehicle thefts to cars by immediately giving the license
number, if known, and a description of the vehicle.

Radio Dispatchers shall determine from questioning the
complainant that the theft was probable and that it occurred
recently, within 8-12 hours.

Members must realize that the assignment of the investiga-
tion of the complaint by the dispatchers does not constitute
an auto theft report.

Members observing the described vehicle are to be very
cautious for their own protection while at the same time
considering the probability that the complaint might not in
fact be legitimate.

When the investigation is completed and a Stolen Auto Report
is to be made, the reporting officers shall broadcast Auto
Theft Report information, including year, make, model,
color of car, license number and description of active
suspects, if known.  This information shall be simulcasted
by the Communication Control Center.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

CLE000441

## GENERAL POLICE ORDER

No. 25-73          HEADQUARTERS          November 1, 19 73

SUBJECT : WITNESS FOR DEFENSE - SUBPOENA REQUIRED

TO THE MEMBERS OF THE DEPARTMENT

In every instance, in any criminal prosecution of any kind, no member of the Department shall be witness for the defense except on subpoena lawfully issued.

This shall also apply to depositions and civil cases wherein either the City of Cleveland, or this Department, or any member of this Department is the defendant. No member shall give a deposition or be a witness for the plaintiff without a subpoena.

The member shall submit a Form #1 report containing all information relative to the time of service and the testimony required, if known.

The member's Commanding Officer shall, forthwith, cause notification of the Prosecutor handling the case, or the Law Department in civil cases, in order to obtain proper advice and direction before the member gives testimony.

The member's Form #1 report together with the original subpoena, or Notice of Deposition, that was served upon him shall be forwarded to the Chief's Office.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

CLE000442

C OF C 302-214

# CITY OF CLEVELAND
### INTER-OFFICE CORRESPONDENCE

All Directors, Commissioners and
Appointing Authorities

*Date*    October 18, 1973

*From*  Philip S. Hamilton
Director of Personnel

*Subject*    Subpoenas

Chief Rademaker:

PLEASE MAKE THE FOLLOWING INFORMATION AVAILABLE TO YOUR EMPLOYEES

Any employee who is issued a subpoena for either a court appear-
ance or deposition must immediately contact his immediate super-
visor, who must inturn contact our Chief Counsel, Mr. Malcolm
Douglas at 694-2692 or Assistant Director of Law, Richard B. Mills
at 694-2670.

This is important and must be followed through in the interest of
the taxpayers of the City of Cleveland.

PH/MM/ah

CLE000443

## GENERAL POLICE ORDER

No. ___24-73___          HEADQUARTERS___ September 11, 19 73

SUBJECT: ___CLARIFICATION OF GPO 36-72 (AMENDMENT &
SUPPLEMENT TO COMMUNICATIONS CONTROL
CENTER RADIO PROCEDURES)

TO THE MEMBERS OF THE DEPARTMENT.

GPO 36-72 which amends and supplements the original
Communications Control Center GPO 39-70 only supplants
and deletes the sentence "A radio dispatcher is assigned
to each Police District and is responsible for the control
of members, employees and vehicles assigned to radio
dispatch in that district."

The balance of the paragraph beginning with "The dispatcher
receives...." through "....forwarded to data processing."
shall remain in effect.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 23-73          HEADQUARTERS          September  5,  19 73

SUBJECT: PERSONNEL IDENTIFICATION CARDS

TO THE MEMBERS OF THE DEPARTMENT

New Identification Cards, bearing the color photograph of the member, shall be issued as standard equipment.

Thereafter, any loss or mutilation shall be reported by Form #1 containing a request for replacement in accordance with Rule 82. The member shall deliver the report to the Headquarters Staff Personnel Office, pay a 50¢ replacement fee and, then, report to the photo Unit for a new photo and card.

Upon promotion to higher rank, personnel shall be re-photographed and issued a new card and no fee or report shall be required.

Initial photographing shall commence on September 10, 1973. Divisions, Districts and Units shall be notified by the Photo Unit of the date and time to report to the Photo Laboratory.

Commanding Officers will make every effort to have all members of their command present at their appointed time.

Personnel shall be photographed wearing clothing usually worn on duty, without headgear.

GPO 9-64 and prior Memos governing re-ordering personnel identification cards are hereby rescinded.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

CLE000445

## GENERAL POLICE ORDER

No. 22-73          HEADQUARTERS_____ August  31,  19 73

SUBJECT: PROCEDURE BEFORE A CUSTODIAL

INTERROGATION

(Page Three)

G. P. O. 6-69 is hereby rescinded.

By order of

GERALD  J.  RADEMAKER
CHIEF  OF  POLICE

CLE000446

## GENERAL POLICE ORDER

NO. **22-73**  HEADQUARTERS **August 31, 19 73**

SUBJECT: <u>PROCEDURE BEFORE A CUSTODIAL</u>
INTERROGATION

TO THE MEMBERS OF THE DEPARTMENT

New laminated "Advice of Constitutional Rights" cards shall
be distributed to all members of the Department. They shall
be carried at all times while on duty and whenever attending
court as a witness in a criminal case. These cards shall be
used by members when they advise suspects of their
constitutional rights before a custodial interrogation and
shall also serve as a reference document in court.

<u>Custodial Interrogation</u> is defined as questioning initiating
with a law enforcement officer <u>AFTER</u> an individual is
<u>TAKEN</u> into <u>CUSTODY</u>, or in a significant way, his freedom
of action is restricted.

<u>The following shall be READ to the Suspect:</u>

1) You have the right to remain silent.
2) Anything you say can and will be used against you in
   court.
3) You have the right to consult with a lawyer before
   answering any questions, and to have a lawyer with you
   during any questioning.
4) If you cannot afford a lawyer, one will be provided
   for you, free of cost, if you want one.

(Continued on Page Two)

CLE000447

## GENERAL POLICE ORDER

NO. 22-73      HEADQUARTERS_____ August 31, 73 19___

SUBJECT : _____ PROCEDURE BEFORE A CUSTODIAL _____
INTERROGATION

(Page Two)

### WAIVERS

1) Do you understand your rights, as I have explained them?
2) Are you willing to talk with officers without consulting a lawyer, or having a lawyer present with you?

### INSTRUCTIONS

1) Read all four warnings to the suspect.
2) Obtain both waivers, clearly and expressly, before interrogating the suspect.
3) If at any time the suspect wants a lawyer, or no longer desires to answer questions, the interrogation must terminate.

Accomplishment of these legal requirements is necessary to make his answers and statement admissible.

The new cards will be forwarded by the Mail Center and distributed to all members of the Department to replace all the old cards. The cards shall be receipted for on the accompanying payroll sheet. Completed payroll sheets shall be returned to the Chief's Office.

(Continued on Page Three)

CLE000448

## GENERAL POLICE ORDER

No. 21-73          HEADQUARTERS August 14, 19 73

SUBJECT : NEW STATE HOSPITAL SERVICE AREAS

TO THE MEMBERS OF THE DEPARTMENT

Effective August 15, 1973, the Service Areas that determine
which State Hospital bears the responsibility to accept
patients will be changed due to the closing of Cleveland
State Hospital, 4455 Turney Road.

The resident address of the patient determines his Service
Area. Therefore, mental patients who reside West of the
Cuyahoga River shall be conveyed to Cleveland Psychiatric
Institute, 1708 Aiken Ave., Telephone 661-6200. Those
who reside East of the Cuyahoga River shall be conveyed to
Fairhill Mental Health Center, 12200 Fairhill Road, Tele-
phone 421-1340; an exception are patients residing in patrol
zones 324, 325, 414 and 415 who shall be conveyed to
Hawthornden State Hospital, Sagamore Road, Northfield,
Ohio, Telephone 467-7131. Members shall call the nearest
State Hospital or Communications Control Center regarding
any questions pertaining to the Service Area of a specific
address.

The booklet titled "Directory of Psychiatric Facilities in
Cuyahoga County" relative to Service Areas and distributed
per Departmental Notice 70-180 shall be amended to conform
with this change.

(continued on page two)

CLE000449

## GENERAL POLICE ORDER

NO. 21-73          HEADQUARTERS August  14, 19 73

SUBJECT: NEW STATE HOSPITAL SERVICE AREAS

(page two)

Members shall maintain the present procedure when
conveying an irrational person to the nearest General
Hospital Emergency Ward.  When the resident Doctor
decides that the person should be taken to a State Mental
Hospital, members shall transport him to the institution
which serves the person's residential Service Area.

By order of,

GERALD  J.  RADEMAKER
CHIEF  OF  POLICE

## GENERAL POLICE ORDER

No. 20-73          HEADQUARTERS  July 20, 19 73

SUBJECT: SUPPLEMENT TO G. P. O. 31-72 MESSAGE
RECORDING REPORT SYSTEM

TO THE MEMBERS OF THE DEPARTMENT

The following reports shall be made whenever a sworn
member of the Department is injured, either on or off duty,
in all of the following types of incidents which shall also
serve as the titles of all future reports, as applicable:

1) Injury to Patrolman while on duty. (Heart Attack)

2) Injury to Patrolman while off duty. (Heart Attack)

3) Injury to Patrolman while off duty. (Performing a
Police Function)

4) Injury to Patrolman while on duty. (Inhalation of
Toxic Fumes and Gases)

As in all reports, the body of the report shall contain
complete details of the incident that caused the injury or
information of any other related incident which could be
the proximate cause.

In every case a Supervisor's Report of Employee Injured,
E. A. C. Form 3, shall be made by the Superior Officer
assigned to the investigation, in accordance with G. P. O.
6-68.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

## GENERAL POLICE ORDER

NO. 19-73                    HEADQUARTERS_____ July 18, ___19 73

SUBJECT: PRETRIAL DISCOVERY RIGHTS OF DEFENSE
ATTORNEYS AND COURTS IN CRIMINAL CASES

TO THE MEMBERS OF THE DEPARTMENT

In a letter to this Department, County Prosecutor John
T. Corrigan has defined the legal rights of defense
attorneys and courts to statements, reports and other
items in criminal cases.  His letter, as a part of
this order, shall be considered an integral part of
criminal case preparation procedures and all members
shall comply with its provisions.

Copies shall be forwarded to all Divisions, Districts,
and Units.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 18-73                HEADQUARTERS                June  26,        19  73

SUBJECT : SUPPLEMENT  TO  GPO  3-73,  VEHICLE  FUEL
ACCOUNTING  SYSTEM

Page  Two

The completed form shall be forwarded to the Bureau of
Motor Vehicles through the Division of Patrol.

The soft copy of the originals of the fuel and lube tickets
now being retained by the drivers of the police vehicles
shall be filed in monthly sequence at the District Head-
quarters. At the end of each month they shall be tallied
and used to verify the monthly meter and stick readings
and a report of this account sent with the monthly tally
form.

Commanding Officers of the Division of Patrol and
District Commanding Officers shall cause full compliance.

By order of,

LLOYD GAREY, INSPECTOR
ACTING CHIEF OF POLICE

CLE000453

# GENERAL POLICE ORDER

NO. 18-73          HEADQUARTERS  June 26,          19 73

SUBJECT: SUPPLEMENT TO GPO 3-73, VEHICLE FUEL
ACCOUNTING SYSTEM

TO THE MEMBERS OF THE DEPARTMENT

Effective July 1, 1973 all District Stations with gasoline
pumps shall make an accounting of all gasoline and oil de-
livered to the station and the total disbursement during each
month, together with the amount on hand at the end of the
month.

The yellow form, titled "Daily Disbursement Record", shall
be utilized and the first report shall be made for the month
of June, 1973. The procedure shall be as follows:

On the last day of each month the Officer-in-Charge of the
station on the 3rd Platoon shall take the necessary meter
and stick readings and shall record them in the lower left
hand portion of the form titled "Gasoline and Fuel Oil Sum-
mary". The amount used shall then be calculated and put in
the "Amount Used" column. These meter and stick reading
figures shall also be recorded for use on the next month's
report.

All gasoline and oil delivered to the station during the month
shall be recorded in the body of the report form in the space
provided for and formerly used to record disbursements of
gasoline to police vehicles. These figures shall be placed
under the appropriate column headings and shall be signed
by the Officer-in-Charge.

In the top right hand portion of the form the District gas
station number and the time period (month) covered by the
report shall be entered and signed by the Officer-in-Charge.

CLE000454

## GENERAL POLICE ORDER

NO. 17-73                    HEADQUARTERS_____ June 18, ____19 73

SUBJECT : HELPING HAND HALFWAY HOME INC. --
ARREST PROCEDURES

(Page Two)

The members of the Warrant & Suspect Unit so notified
shall immediately notify, via telephone, the agency having
custody of the prisoner that a "holder" be placed on such
prisoner.  The Warrant & Suspect Officer making the phone
call will then complete the structured form letter (a
detainer-holder) and send it to the agency having custody
of the prisoner.

For Federal prisoners, it shall be sent to the Federal
Marshall's Office, Old Federal Building, Public Square
(44114), Attention: Mr. Robert Wagner.

For State prisoners, it shall be sent to the Adult Parole
Authority Office, 736 West Superior Avenue (44113),
Attention: Mr. Don Carrol, Furlough Section.

All HHHH inmates carry identification cards signed by
Reverend Redding.

Members of the Warrant & Suspect Unit shall keep an up to
date file on personnel administering this program and
their phone numbers.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

## GENERAL POLICE ORDER

**No.** __17-73__        **HEADQUARTERS**_____ June 18, ____ **19** __73__

**SUBJECT:** ___HELPING HAND HALFWAY HOME INC.--___

ARREST PROCEDURES

TO THE MEMBERS OF THE DEPARTMENT

The penal system of the Federal Government and of the State of Ohio have begun a program in which prisoners are placed in the Helping Hand Halfway Home, Inc. at 1827 East 63rd Street under the control and supervision of Reverend James Redding. Although still prisoners, they may come and go with the approval of Reverend Redding.

If one of these prisoners commits a crime or violation, he shall be arrested and charged in accordance with standard existing procedures. Reverend Redding shall then be notified.

If it is learned that one of these prisoners is wanted on an existing warrant for an offense which occurred prior to his placement in the HHHH and no new offense is involved, he shall NOT be arrested. Instead, the procedure shall be as follows:

1)      Check with the office of the HHHH (791-1155 or 791-5095) during business hours, or at other times call the home directly (431-2212) to determine if he is currently under this program.

2)      Immediately notify the Warrant & Suspect Unit that the suspect is a prisoner in this program.

3)      Release the prisoner.

CLE000456

# GENERAL POLICE ORDER

NO. 16-73          HEADQUARTERS          June 14          73
                                                      19

SUBJECT: POLICE PERSONNEL RECORD SYSTEM (PPRS)

Page Two

After the initial corrections are completed, Unit
records must be maintained accurate and current.
Therefore, whenever the data on an individual member
changes in any way, he shall submit a Form #1 report
containing the new information. Administrative unit
commanders shall the cause a designated officer to
remove said individual's data sheet from the files,
make the necessary changes by interlineating the
obsolete information, and entering the new information
above it. The officer in charge making the corrections
shall sign his name to verify the authenticity of the
change. The Form #1 containing the new information
shall be marked with the notation "Records changed to
reflect new information" with the officer making the
change signing his name after such notation. The
Form #1 shall then be sent by departmental mail to
the Personnel Unit, which shall cause a corrected
data sheet to the generated and returned to the
administrative unit to replace the old data sheet.

Members wishing to provide future additional informa-
tion relative to any change in educational level, occu-
pational skills, and language skills shall submit a
Form #1 report. A new data sheet containing the
information will then be sent to the Unit.

By order of,
GERALD J. RADEMAKER
CHIEF OF POLICE

CLE000457

# GENERAL POLICE ORDER

No. 16-73                                    HEADQUARTERS                June 14      73
                                                                                    19

SUBJECT : POLICE PERSONNEL RECORD SYSTEM(PPRS)

TO THE MEMBERS OF THE DEPARTMENT

Relevant Cleveland Police Personnel Records infor-
mation has been computerized and will be printed out
to provide the Headquarters Staff Personnel Unit and
each Administrative Unit with a data sheet on each
member.

The Unit Copies will be delivered in a 3 ring binder
in which they shall be maintained as the basic
personnel record for use as a reference source to
satisfy informational needs as they arise in
connection with police operations and assignments.
The Personnel Unit Copy will be retained by the
Personnel Unit.

Each administrative unit shall cause each member to
review his Unit Copy for accuracy.  If all information
is correct, the member shall sign the data sheet and
it shall be returned to the Binder File.  If correc-
tions are necessary, they shall be made on the Unit
Copy and signed by the member in the upper right
hand corner and then forwarded to the Personnel
Unit within three (3) days.  When the address or
telephone number must be changed or corrected, a
Form #1 report is also required and must accompany
the Unit Copy to the Personnel Unit.  The Personnel
Unit shall arrange for a new Unit Copy reflecting the
changes and shall forward it to the administrative
unit.

CLE000458

---

## GENERAL POLICE ORDER

NO. 15-73      HEADQUARTERS     June 8, 19 73

SUBJECT: EQUIPMENT BAD ORDER REPORT FORM
C of C 71-130---PROCEDURES

Page Two

failure. Also, if at the time of malfunction the remote microphone or the earphone was being used, they shall be sent along with the Portable Radio, but not otherwise.

Unless there is a replacement vehicle available for their use to enable them to remain in service, the passenger officer shall be reassigned to other on-the-street or similar essential police duty whenever a Zone or Mobile Patrol vehicle must be taken to East 49th Street Shop for repairs. It shall be the responsibility of the officers assigned to the vehicle to notify their District Officer in Charge and he shall make this reassignment for the balance of their tour of duty or until the car is returned.

Commanding Officers shall cause strict compliance with this order.

General Police Orders 41-56, 20-68, Memos 48-58, 106-58, and Departmental Notice 71-147 are hereby rescinded.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

CLE000459

# GENERAL POLICE ORDER

NO. 15-73          HEADQUARTERS          June 8,          73
                                                          19

SUBJECT: EQUIPMENT BAD ORDER REPORT FORM
C of C 71-130---PROCEDURES

TO THE MEMBERS OF THE DEPARTMENT

Effective June 11, 1973, the revised C of C 71-130
"Equipment Bad Order Report" shall be placed into
usage throughout the Department and the use of the
present C of C 71-130 Motor Vehicle--Bad Order
Report and the Portable Transceiver Bad Order
Report shall be discontinued.  Forms are available
at the Supply Unit.

This new form shall be used for all requests of
service or repair of Motor Vehicles, Radios and
Portable Transceivers and their accessories.

It shall be completed in duplicate, briefly
describing the nature of service required.  The
original shall remain with the vehicle or other
equipment requiring the repairs, and the copy shall
be retained at the Unit Headquarters.

In completing the form, unmarked vehicles shall be
identified by both call number and license number.
Other required information and the manner of
completion are self explanatory.

Whenever Portable Radios are taken to East 49th
Street Shop for repairs, they shall be complete with
the same antenna and battery in use at the time of

CLE000460

## GENERAL POLICE ORDER

NO.  14-73          HEADQUARTERS  June  1,  19  73

SUBJECT:  AMENDMENT  TO  MESSAGE  RECORDING

REPORT SYSTEM (GPO 31-72)

(Page Two)

All Foreign Stolen Autos Recovered, Combination Auto Theft and Recovery reports, and all Follow Up reports shall be connected to a message recorder. These reports will be produced on Standard RC-1 Report Forms. After the RC-1 is produced, these will be handled in the same manner as any other crime or accident in accordance with procedures in the original GPO 31-72.

Detailed procedures are separately printed for individual distribution and are part of this order.

By order of,

GERALD  J.  RADEMAKER
CHIEF  OF  POLICE

CLE000461

## GENERAL POLICE ORDER

NO. __14-73__                    HEADQUARTERS___June   1,_____ 19 73

SUBJECT : AMENDMENT  TO  MESSAGE  RECORDING
REPORT SYSTEM (GPO 31-72)

TO  THE  MEMBERS  OF  THE  DEPARTMENT

Effective June 5, 1973, the Message Recording Report
System as established by GPO 31-72 shall be revised in
two basic ways: (Change over will occur at about 10:00 AM)

1.  All calls to the Report Center for the purpose of
making a report will be made on Police Line 561 or
coin return Line 621-1620 regardless of the subject
matter of the report or the assignment of the
Reporting Officer.  They will be answered by a
Report Center Clerk who will assign a Complaint
Number and will route calls to message recording
devices in accordance with priority needs, unless
the report is an Auto Theft or a locally reported
Stolen Auto Recovered.  These will be handled by
direct person to person dictation as outlined in the
next paragraph.

2.  Auto Thefts and local Stolen Auto Recoveries will be
immediately transferred to the Message Center
Computer Terminal Operator who will receive all the
information and immediately enter it into the computer
and complete the report in one simultaneous operation.
These reports will be produced on a new form -- not
on the standard RC-1 Form.

(Continued on Page Two)

CLE000462

GPO 14-73                                          June 5, 1973
SUBJECT:  AMENDMENT TO MESSAGE RECORDING REPORT SYSTEM (GPO 31-72)


The Message Recording Report System shall be revised as follows:

1.   All calls to the Report Center for the purpose of making a
     report will be made on Police Line 561 or coin return Line 621
     1620 regardless of the subject matter of the report or the
     assignment of the Reporting Officer.  They will be answered by
     a Report Center Clerk who will assign a Complaint Number and
     will route calls to message recording devices in accordance
     with priority needs, unless the report is an Auto Theft or a
     locally reported Stolen Auto Recovered.  These will be handled
     by direct person to person dictation.

2.   "Auto Theft", local "Stolen Auto Recovered", and local "Stolen
     Auto Recovered and Arrest" reports will be transferred (immedi-
     ately) to the Message Center Computer Terminal Operator who will
     receive all the information and immediately enter it into the
     computer and complete the report in one simultaneous operation.
     These reports will be produced on a new form -- not on the
     standard RC-1 Form.

     Exceptions to this revised reporting procedure are:

          a)   Foreign Stolen Auto Recoveries.
          b)   Foreign Stolen Auto Recoveries with Arrests.
          c)   Combination Auto Theft and Recovery Reports.
          d)   All Follow-up Reports.

     These will continue to be connected to a message recorder and
     will be produced on standard RC-1 Report Forms.

     After the RC-1 is typed, they will be handled in the same manner
     as any other crime or incident report in accordance with pro-
     cedures in the original GPO 31-72.

In all cases the Reporting Officer shall provide:

1.   His name, rank or number, and assignment.
2.   Complete title of the report.
3.   Name and address of the complainant, victim or company.
4.   Address of occurrence.

The Report Center Clerk who answers the call will assign a Complaint
Number and the Reporting Officer shall include this Complaint Number
when dictating the report.

"Auto Theft" and local "Stolen Auto Recovered" report calls will be
transferred to the Computer Terminal Operator who will receive all
the information and immediately enter it into the Computer and complete
the report on a new form in original and 3 copies.  These copies will
be forwarded from the Report Center to the Record Room Crime files,
Auto Theft Unit, Data Processing Unit and to the District or Unit to
enable examination there for accuracy and completeness.

CLE000463

Page Two

For an immediate and essential verification of basic information, an additional report, titled "Auto Theft Recovery Verification", will be transmitted to the Reporting Officer's District or Unit Computer Terminal as soon as the Auto Theft Recovery information is completely entered into the Computer Files and the Auto Theft or Recovery reports are produced for distribution.

The Reporting Officer shall examine the Verification report for accuracy and if it is correct, sign it and forward it to the Report Center through his Officer in Charge. If the information on the Verification report form is NOT correct, the Reporting Officer must call the Report Center Computer Terminal Operator immediately and make the correction.

Commanding Officers of Districts and Officers in Charge of Units having computer terminals shall provide for the removal of computer transmitted Verification reports. He shall provide for their verification by the Reporting Officers and, when completed, for their being forwarded to the Report Center.

The Auto Theft and Recovery reports will contain more complete information than the Verification report. If there is an error or ommission found, a "Correction" ro "Additional" must be called to the Report Center. Since error in the vehicle description, license, or VIN number would have already been corrected on the Verification Form, this information would be called into a message recorder and later transcribed and attached to the original reports.

The direct dictation to the Computer Terminal Operator of the Auto Theft or locally Stolen Auto Recovery report must follow the sequence provided in the Auto Theft and Recovery Reporting Guide attached as a part of this order. To facilitate and expedite reporting, this guide or information outline will be reproduced on a card for the individual officer's retention as a reference.

When reporting Foreign Auto Theft Recovery reports, the name of the agency originating the stolen report shall be given as the name of the complainant to the person answering the call and in the "Victim" section of the RC-1 report. Personnel of the Auto Theft Records Unit shall notify the orginating agency of the recovery.

All members of the Department are reminded that report accuracy is essential. Auto Theft and Recovery information dictated directly to the Message Center Computer Terminal Operator will be directly entered into Department, State and Federal computer files.

Commanding Officers shall instruct members under their command of the Department's Report Recording System as explained in GPO 31-72 and this Order, and cause compliance with their provisions.

LG

CLE000464

## AUTO THEFT AND RECOVERY REPORTING GUIDE FOR DIRECT COMPUTER TERMINAL ENTRIES

Auto Theft and Stolen Auto Recovery reports dictated to the Message Center Computer Operators as explained in GPO 14-73 shall be dictated in the following sequence of information.  An asterisk denotes basic information essential to the computer terminal entry.

STOLEN VEHICLE                              RECOVERED VEHICLE

LICENSE NUMBER*                             LICENSE OR VIN NUMBER*
STATE*                                      RECOVERY ZONE
YEAR PLATE*                                 CONDITION OF VEHICLE*
REPORT DATE*                                RECOVERY VALUE
VIN NUMBER*  (SERIAL NUMBER)                RELEASE OR HOLD*
COMPLAINT NUMBER*                           REASON FOR HOLD
OWNER'S LAST NAME*                          SUSPECTS -- ARRESTS
FIRST NAME                                  HOW ASSIGNMENT RECEIVED*
MIDDLE INITIAL                              TIME RECEIVED*
OWNER'S TITLE                               DATE RECEIVED*
OWNER'S ADDRESS*                            ADDRESS RECOVERED*
CITY*                                       OFFICER BADGE NUMBER*
PHONE NUMBER*                               DATE RECOVERED*
PERSONAL PROPERTY IN VEHICLE BY CATEGORY    COMPLAINT NUMBER*
VALUE OF PROPERTY                           MISCELLANEOUS INFORMATION
OFFICER BADGE NUMBER*                       EQUIPMENT INTACT OR MISSING
CAR NUMBER*                                 PERSONAL PROPERTY
VEHICLE CONDITION                           CONDITION OF IGNITION SYSTEM
RELEASE OR HOLD                             OWNER NOTIFIED?  BY WHOM?*
REASON FOR HOLD                             WHAT TOW LOT*
HOW ASSIGNMENT RECEIVED*
TIME RECEIVED*
DATE RECEIVED*
ADDRESS STOLEN*
TIMES AND DATES OF OCCURRENCE*
YEAR OF VEHICLE*
MAKE*
MODEL
STYLE
COLOR
LICENSE TYPE*  (DEALER PLATE, ETC.)
MISCELLANEOUS INFORMATION
REPORTED BY:  NAME AND ADDRESS
AGE, RACE, SEX
BUSINESS PHONE
EQUIPMENT ON VEHICLE:  RADIO, HEATER, SPARE TIRE, AIR CONDITIONING
DOORS AND IGNITION LOCKED
UNUSUAL FEATURES OR DAMAGED PARTS
ITEMIZED PERSONAL PROPERTY
INSURED?  COMPANY'S NAME
SUSPECTS
AREA SEARCH CONDUCTED?
INTERVIEW--IF NOT, WHY?
ANY OTHER REMARKS

COMPLAINT NO.

INQUIRY: hh3248

*NEOPIN* 73.110 16.10 V
QV
LIC/IHI3248        740II NO RECORD

RECORD TYPE, LIC. NO., STATE, YEAR LIC. EXPIRES, CENSUS TRK., ZONE, REPORT DATE, VIN NO., COMPLAINT NO.

v ev-1.s.hh3248.oh.74.u4.526.042073.1a30f241488.18391.

OWNER L. NAME, FIRST, MIDDLE INT., TITLE, ADDR., CITY, PHONE.

doe.john.h.jr.1234 main st.ohclp00.1231234

*NEOPIN* 73.110 16.12 V
EV1 COMPLETE
PIN/000212263   LIC/IHI3248        VIN/1A30F241488

PIN NO. 3 BLANK FLDS, PER. PROP., VALUE, TOT. VAL., OFFICER, CAR, VEH. COND.

v ev-3.212263....o.00140.03140.1955.526.r.

REL-HOLD, REASON, 2 BLANK FLDS, NOW REC., TIME, DATE, MISC. INFOR.

r....r.16.042073

*NEOPIN* 73.110 16.14 V
EV3 COMPLETED

PIN NO., ADDR STOLEN, CITY, TIMES AND DATES OF OCCURRENCE,

v ev-4.212263.e90§carnegie.ohclp00.12.042073.15.042073.

YEAR OF VEH., MAKE, MODEL, STYLE, COLOR, LIC. TYPE, 2 BLANK FIELDS, MISC. INFOR.

71.ford.gal.2d.blk/red.pc...equip with radio,heater, and spare insured by
w d calihand inc, toured area unable to locate, doors and ignition locked
owner has keys, no suspects, personal property:tape deck, fm radio, 40 tapes
*NEOPIN* 73.110 16.16 V
EV4 COMPLETE
IHI3248

CLE000466

## GENERAL POLICE ORDER

NO. __13-73__    HEADQUARTERS __May 3,__ 19__73__

SUBJECT: PREGNANCY DUTY ASSIGNMENT AND LEAVES --
NEW RULE 57 - SECTION 8A

(Page Two)

Upon either giving birth to a child or sustaining a
miscarriage (or other termination of pregnancy), the
policewoman shall have the right to return to work once
her physician approves her return and the Medical
Director determines that she is physically fit to return
to either regular or restricted duty. In any event, the
policewoman must return to work not later than nine
months from the date of delivery, miscarriage or
other termination of pregnancy.

The member shall have the right to appeal to the
Cleveland Civil Service Commission any determination of
the Medical Director that pertains to:

(a) A leave of absence; or

(b) An order that she may not return to work.

GPOs 17-58 and 10-73 are rescinded and the foregoing
shall constitute the new Rule 57 - Section 8 A.

By order of,

GERALD  J.  RADEMAKER
CHIEF  OF POLICE

## GENERAL POLICE ORDER

NO. 13-73          HEADQUARTERS  May 3, 19 73

SUBJECT: PREGNANCY DUTY ASSIGNMENT AND LEAVES--
NEW RULE 57 - SECTION 8A

TO THE MEMBERS OF THE DEPARTMENT

When a policewoman becomes pregnant and receives
medical confirmation of the pregnancy, she shall report
the fact forthwith to the Chief of Police through regular
channels.

The Medical Director shall be advised and after consulta-
tion with the member's private physician, shall make duty
status determination of regular or restricted duty when
and as he deems them appropriate and necessary.

Again after consultation with the policewoman's private
physician, the Medical Director may make further
determination that she is physically unable to continue on
either regular or restricted duty and order an off duty
status.  The policewoman may then expend accumulated
sick time, overtime due and any unused furlough time to
which she is entitled.

When all such accumulated time due is exhausted, she
shall be placed on leave of absence without pay (I.C.).

(Continued on Page Two)

CLE000468

## GENERAL POLICE ORDER

No. 12-73    HEADQUARTERS   April 19,    19 73

SUBJECT: ENFORCEMENT OF LOOSE LOAD VIOLATIONS

TO THE MEMBERS OF THE DEPARTMENT

Complaints are being lodged from various parts of the City to the effect that vehicles hauling dirt, sand, and other loose material are being improperly loaded, overloaded, and uncovered causing this loose material to be dropped or strewn upon the street. These parctices are in violation of Traffic Code Sections 9.1702, 9.1703 and 9.1704. Violators shall be issued a Notice to Appear (Moving Citation).

Effective immediately Commanding Officers of the Bureau of Basic Patrol and Bureau of Traffic shall see to it that all members under their command are familiar with and strictly enforce these ordinances throughout the City with the view of preventing and eliminating the littering of our streets.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

CLE000469

## GENERAL POLICE ORDER

No. 11-73                    HEADQUARTERS        April  18,    19 73

SUBJECT SUPPLEMENT TO G. P. O. 31-72 -- INFORMATION
ON "DRUGS INVOLVED" TO BE INCLUDED IN
REPORTS

(Page  Two)

added to others listed in GPO 31-72 on Page 7 under
"Changes to Original Reports" section "B".

When a consolidated crime clean-up report is made, and
drugs were involved in any manner in the crimes, such
information shall be included in the body of the report with
the notation "Drug Involved" included after the title of the
report.  The Record Room shall include a copy of such
reports with the files of each crime cleaned up.  In addition
to the usual distribution, two copies of such reports shall
be forwarded to the Data Processing Unit.

Drugs shall be interpreted to include opium and its
derivatives such as morphine and heroin; cocaine;
marijuana; hashish; amphetamines; methedrine;
methaphetamines; barbiturates; hullucinogens such as
LSD and STP; glue sniffing; or any other chemical or
substance known to have a mind altering effect.

By order of,

GERALD  J.  RADEMAKER
CHIEF  OF  POLICE

## GENERAL POLICE ORDER

No. 11-73       HEADQUARTERS____ April 18, ,73

SUBJECT: SUPPLEMENT TO G. P. O.  31-72 --INFORMATION
ON "DRUGS INVOLVED" TO BE INCLUDED IN
REPORTS

TO THE MEMBERS OF THE DEPARTMENT

Members investigating any crime, whether felony or
misdemeanor, shall make diligent inquiry into the circum-
stances involved to determine whether addictive or mind-
altering drugs were involved in any manner and shall detail
the facts in the body of the RC-1 report under a subtitle
"Drug Involved".  The notation "Drug Involved" shall also
be included in the heading as part of the subject of the
RC-1 report.

The investigating officer shall endeavor to ascertain whether
the crime was committed by a user, pusher or dealer;
whether the victim of the crime is a user, pusher or dealer;
the type, quantity and approximate value of the drugs involved;
or whether the crime was committed to obtain money to
purchase drugs.

When a follow-up investigation of any crime reveals that
drugs were involved in any manner, a supplementary RC-1
report shall be telephoned into the Message Recording
System as a "Change of Title".  The original report shall be
identified by original Title and Complaint Number.  The new
Title shall be supplied, consisting of the original crime
title followed by the words "Drug Involved".  The information
shall then be supplied relative to the involvement of drugs
in the commission of the crime.  This category shall be

(Continued on Page Two)

## GENERAL POLICE ORDER

No. __10-73__          HEADQUARTERS_____April 3,____19_73_

SUBJECT: ___AMENDMENT TO RULE 57 - SECTION 8A___
PREGNANCY LEAVES OF ABSENCE

TO THE MEMBERS OF THE DEPARTMENT

Rule 57 - Section 8A of the Manual of Rules of the
Division of Police shall be amended to read as
follows.

"When a policewoman is aware she has become pregnant,
she shall immediately report this fact to the Chief of
Police through regular channels, together with a request
for a leave of absence, without pay, beginning 4 months
after the probable date of the beginning of the pregnancy
and until 3 months after the child is born.

In the event of a still birth or the death of the infant
prior to its attaining the age of 3 months, or in the
event of a miscarriage, she may return to duty upon
the Police Surgeon's certifying that she is capable of
performing the regular duties of a policewoman in the
Division of Police".

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

## GENERAL POLICE ORDER

NO. 9-73    HEADQUARTERS March 30, 19 73

SUBJECT: DEPARTMENTAL ORGANIZATION STRUCTURE
REVISION

TO THE MEMBERS OF THE DEPARTMENT

Effective April 1, 1973, the Cleveland Police Department's organizational structure in effect December 2, 1972 shall be revised by the transfer of the Police Academy from the Division of Administrative Services to Headquarters Staff.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

CLE000473

## GENERAL POLICE ORDER

NO. 8-73      HEADQUARTERS_____ March 15, ___19 73

SUBJECT: REVISED AND SUPPLEMENTARY RADIO CALL NUMBERS (AMENDMENT TO GPO 13-71)

TO THE MEMBERS OF THE DEPARTMENT

On March 15, 1973 the revised and additional radio call numbers assigned to Division of Patrol and Administrative Staff and Command Vehicles shall become effective and placed into usage.

A list of the new radio call numbers shall be distributed.

All other radio call numbers shall remain unchanged.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

GPO  7-73                                    MARCH 14, 1973
SUBJECT:  ZONE BOUNDARIES AND ZONE PATROL DISTRIBUTION

Effective March 15, 1973, the six police districts will be
divided into 62 zones and divided as follows:

### SECTOR #1

| District 1 | - | 111, 112, 113, 114 |
| District 2 | - | 211, 212, 213, 214 |
| District 3 | - | 311, 312, 313, 314 |
| District 4 | - | 411, 412, 413, 414, 415, 416, 417 |
| District 5 | - | 511, 512, 513, 514, 515, 516 |
| District 6 | - | 611, 612, 613, 614, 615 |

### SECTOR #2

| District 1 | - | 121, 122, 123, 124 |
| District 2 | - | 221, 222, 223, 224, 225. |
| District 3 | - | 321, 322, 323, 324, 325 |
| District 4 | - | 421, 422, 423, 424, 425, 426, 427 |
| District 5 | - | 521, 522, 523, 524, 525, 526 |
| District 6 | - | 621, 622, 623, 624, 625 |

Zone boundary lines shall be as designated on the "District and
Zone Map" of the City of Cleveland and as specified in the
separate verbal description issued as part of this order.

A two man station wagon will be assigned to patrol each zone on
a 24 hour basis except during the 3rd Platoon hours of 3:30 AM -
7:00 AM., at which time one half of the 3rd Platoon (30 patrol
vehicles) will be reassigned to a 4th Platoon with duty hours of
7:30 PM - 3:30 AM.  This will provide added coverage during the
hours of peak work load.

The 4th Platoon patrol vehicles shall be assigned the following
numbers and,until 12:00 MN, shall patrol areas of two or three
zones as designated on the "4th Platoon Patrol Area Map":

| District 1 | - | 141, 142, 143, 144 |
| District 2 | - | 241, 242, 243, 244 |
| District 3 | - | 341, 342, 343, 344 |
| District 4 | - | 441, 442, 443, 444, 445, 446, 447 |
| District 5 | - | 541, 542, 543, 544, 545, 546 |
| District 6 | - | 641, 642, 643, 644, 645 |

CLE000475

Page Two

At 12:00 MN the remaining 3rd Platoon patrol vehicles will go
into service.  At this time the 4th Platoon patrol vehicles will
leave the larger patrol areas and will complete their tours of
duty to 3:30 AM as a regular zone car of the 3rd Platoon in the
proper zone contained within the 4th Platoon patrol area.  (Example -
Car 141 covering Zone 111.)  This will provide full zone car coverage
between 12:00 MN and 3:30 AM.

Whenever regularly assigned 2nd Platoon zone cars are occupied,
radio assignments shall be given to the 4th Platoon back up cars.

From 3:30 AM to 8:00 AM, the regular 3rd Platoon zone cars shall
assume the patrol responsibility for the same larger patrol area
that was covered by the 4th Platoon car between 7:30 PM to 12:00 MN.

A 3rd Platoon supervisory officer shall be assigned to supervise
the 4th Platoon vehicles and he shall conduct their 7:30 PM Roll
Call.

The 4th Platoon cars will not stand the 12:00 MN Roll Call but will
remain on patrol until 3:30 AM, thus providing continuity of zone
coverage.

Additional patrol coverage will be provided by two Evidence Cars in
each district; each will be assigned to a Sector and will handle
radio assignments when not occupied in crime scene/evidence gathering
duties.  They will be subject to all types of assignments but will
be concentrated upon minor complaints.

It is essential that manpower be utilized to its fullest and that
all zone cars be manned and in service at all times in accordance
with the new zone designations and work schedules.

Roll Calls shall be scheduled as follows:

                1st Platoon  -  7:00 AM and 8:00 AM
                2nd Platoon  -  3:00 PM and 4:00 PM
                3rd Platoon  -  12:00 MN
                4th Platoon  -  7:30 PM

On the  1st Platoon and 2nd Platoon, the odd number cars shall report
for the first Roll Call and even number cars for the second Roll Call.
One Evidence Car shall stand each Roll Call.

This arrangement will provide the following number of basic patrol
vehicles during the various time periods of the day:  (Plus 12
Evidence Cars at all times)

|  |  |  | ZONE | EVIDENCE | TOTAL |
|---|---|---|---|---|---|
| 7:00 AM | - | 7:30 PM | 62 cars | 12 | 74 |
| 7:30 PM | - 12:00 MN | - | 92 cars | 12 | 104 |
| 12:00 MN | - | 3:30 AM | 62 cars | 12 | 74 |
| 3:30 AM | - | 7:00 AM | 32 cars | 12 | 44 |

CLE000476

Page Three

The present priority assignment system shall be abolished.
Radio assignments will be dispatched as they are received.
Urgent emergencies involving hazards to life and limb, and
crimes with suspects on or near the scene where they might
be apprehended, shall receive priority and shall be immediately
assigned to a zone car which shall be taken off another assign-
ment, if necessary.

The regular Task Force will patrol in high crime areas in all
Districts and handle special police problems as they arise.

The Impact Task Force will become operational on April 23, 1973
and will provide additional coverage of 24 cars and 156 men on a
two platoon basis.  They will be assigned to areas in accordance
with the "Impact Patrol Area Map".

### FOURTH PLATOON PATROL AREAS

```
141 = 111 + 112
142 = 113 + 114
143 = 121 + 122
144 = 123 + 124

241 = 211 + 212
242 = 213 + 214
243 = 221 + 222 + 223
244 = 224 + 225

341 = 311 + 312
342 = 313 + 314
343 = 321 + 322
344 = 323 + 324 + 325

441 = 411 + 412
442 = 413 + 416
443 = 414 + 415 + 417
444 = 421 + 422
445 = 423
446 = 424 + 425
447 = 426 + 427

541 = 511 + 514
542 = 512 + 515
543 = 513 + 516
544 = 521 + 522
545 = 523 + 524
546 = 525 + 526

641 = 611 + 612
642 = 613 + 614
643 = 615 + 621
644 = 622 + 624
645 = 623 + 625
```

CLE000478

## GENERAL POLICE ORDER

NO. __6-73__          HEADQUARTERS __February 26, 19 73__

SUBJECT: SUPPLEMENT TO GPO 41-72 --

DRESS AND PERSONAL APPEARANCE CODE

TO THE MEMBERS OF THE DEPARTMENT

No unauthorized emblem or insignia of any kind shall be
worn or displayed upon any part of the Cleveland Police
uniform, nor worn on any item of wearing apparel by
any member or employee while on duty.

Buckles on uniform belts shall be plain and shall bear
no emblem or insignia.

By order of,

LLOYD GAREY, INSPECTOR
ACTING CHIEF OF POLICE

CLE000479

## GENERAL POLICE ORDER

No. 5-73    HEADQUARTERS  February 20, 19 73

SUBJECT: WORKMEN'S COMPENSATION CLAIM CASES

TO THE MEMBERS OF THE DEPARTMENT

Though members of the Department are not violating the law when, as attorneys, they represent other members of the Department in Workmen's Compensation cases, the Law Department ruled that the Director of Public Safety may prohibit any member of the Department from engaging in legal activities which are adverse to the monetary interests of the city.

Therefore, the Director of Public Safety has ordered that no member of the Safety Department may represent another city employee in Workmen's Compensation claims.

Members presently representing widows and retirees in cases of this type may handle them to their conclusion provided they identify these persons in a report submitted to the Chief's Office for forwarding to the Director's Office.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

## GENERAL POLICE ORDER

NO. __4-73__      HEADQUARTERS___February 8, 19 73

SUBJECT: __AAA TOW PROCEDURES__

TO THE MEMBERS OF THE DEPARTMENT

A revised AAA Tow Report Form 174 shall be utilized effective February 9, 1973.

Complete AAA tow procedures have been printed as an integral part of this order for individual distribution to all members.

All members shall comply with these provisions.

Commanding and Superior Officers shall be responsible for causing said compliance and shall provide the necessary supervision and instructions at Roll Calls and in the field to assure thorough familiarization and proper implementation of these procedures.

GPOs 34-69, 15-70, 40-71 and 27-72 are hereby rescinded.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

SECTION 13.191602.  REPORT OF CONDITION
OF MOTOR VEHICLE TAKEN INTO CUSTODY.

(a)  It shall be the responsibility and duty of the police
officer who orders a motor vehicle to be taken into custody and
towed by private towing agencies from the scene where found to
make a report of the general condition of the vehicle and a list
of its contents found in and about the interior; such report shall
be made in quadruplicate at the time such order or request to tow
is made upon forms prescribed by the Division of Police,  The
original and one copy of the report shall be kept in the files of
the Division of Police, one copy shall be delivered to the person
who is to tow the vehicle and one copy shall be delivered to the
owner of the vehicle at the time of relase.  The person who tows
the vehicle shall sign all copies of the report prior to removing
the vehicle from the scene.  Provided, however, that in the case
of junk, abandoned or stripped vehicles, and in the case of vehicles
towed away under the emergency snow ban ordinance or in the case
of vehicles towed to City of Cleveland lots, it shall not be necessary
that the police officer remain at the scene until the arrival of the
towing agency; provided further, that in the case of urgent police
necessity, the officer may leave the scene, but shall return imme-
diately after disposition of the emergency, or if the vehicle has
been towed away, he shall go immediately to the towing agency,
reinspect the vehicle and obtain the signature of the tow truck
operator or the agency representative.

(b)  No person shall remove tires, parts, equipment or anything
of value from a motor vehicle taken into tow.

(c)  Whoever violates the provisions of subsection (b) of this
section shall be guilty of a misdemeanor, and upon conviction shall
be fined not less than One Hundred Dollars ($100) nor more than Five
Hundred Dollars ($500), or imprisoned not less than three months nor
more than one year or both.

(d)  The tow truck operator and the agency which he represents
shall then be held responsible for the safe keeping of said vehicle
until such time as it is reclaimed by the owner.

If the vehicle is not maintained in the same condition as when
received or has had anything detached or removed from it, said towing
agency shall be liable and shall compensate the owner accordingly.

(e)  A conviction under this section or failure to fulfill this
responsibility to properly safe keep said vehicle or to compensate
for damage or loss shall result in the forfeiture of said agency's
right and authority to conduct any further towing transaction for
the Division of Police of the City of Cleveland.

Passed June 26, 1972

Effective June 29, 1972

CLE000483

GPO  4-73                              February 8, 1973
SUBJECT:   AAA TOW PROCEDURE


TOW PROCEDURE (AAA) GENERAL PROVISIONS

1.  The following vehicles shall be subject to AAA tows unless
    police necessity requires different handling or a police tow.

        a) Recovered stolen autos.
        b) Suspected stolen autos.
        c) Auto located for owner.
        d) Arrests and pickups.
        e) Damaged or abandoned vehicles after accidents.
        f) Vehicles left unattended due to incapacity of
           driver.  (Sudden illness or death noncriminal)

2.  Requests for AAA tows shall be made via radio and shall include:

        a) Car number requesting AAA tow.
        b) Locations.
        c) Year, make, model, license number and condition
           (no wheels - dolly requested) of the vehicle.
        d) Reason for tow (accident, arrest, etc.)
        e) Name and badge number or rank of requesting
           officer.
        f) If the vehicle to be towed is other than a
           passenger car or a small truck, then the type
           of vehicle must be stated so that the proper
           towing truck can be dispatched.

3.  The radio dispatcher will then relay the tow request infor-
    mation to the Auto Theft Records Unit (ATRU).  The ATRU will
    then order the tow from the AAA.

4.  Except for recovered stolen autos, after the arrival of the
    tow truck, the member who requested the tow must then telephone
    the ATRU for verification of the details of the tow.  In cases
    of recovered stolen autos, the ATRU will obtain the details
    from the copy of the RC#1 report.

5.  Members causing AAA tows shall remain on the scene until the
    tow truck arrives, unless required to leave for reasons of
    urgent police necessity.

6.  Members shall inspect the vehicle to be towed and shall record
    the general condition and complete the inventory list on the
    Auto Tow Report Form 174.

7.  The Tow Truck Operator must sign all copies of the Form 174
    before the vehicle is released to him for towing unless the
    member ordering the tow is required to leave the scene before
    his arrival.

CLE000484

Page Two

8. If required to leave the vehicle for another higher priority
   police assignment, such as a crime in progress or one in
   which life or serious injury is a hazard, the member shall
   either return to the scene; or, if the vehicle has been
   already towed, he shall go to the towing agency, reinspect
   the vehicle, complete the Form 174 and have the tow driver
   or towing agency representative sign the form.

9. The Auto Tow Report, Form 174, is structured to provide
   all information necessary to properly handle and record the
   tow transaction. It shall be completely filled out in every
   instance except for complaint numbers which may not be
   available at the time.

   It is a quadruplicate multicolored form. The original (white)
   shall be filed in the Auto Theft Records Unit. The first
   copy (yellow) is the owner's copy and shall be forwarded with
   the original to the ATRU. The owner will receive this copy
   when he obtains a release for his auto. The second copy (green)
   shall be retained by the member's Unit ordering the tow. The
   third copy (pink) shall be given to the tow truck driver when
   he signs the forms and removes the vehicle from the scene.

10. All accessories and property left in the vehicle shall be
    entered on the form.

11. Exclusive of vehicle accessories, all property items which can
    be easily removed from the vehicle, such as jewelry, cameras,
    radios, TVs, tape recorders, golf clubs, suitcases, clothing,
    and/or other valuables, shall be removed from the vehicle prior
    to towing and transferred to the District Headquarters where it
    shall be tagged, entered in the Property Book and forwarded to
    the Property Unit, where the owner may claim same.

    This shall not apply when the property can be turned over to
    the owner at the scene or when the owner orders his own tow in
    which case the responsibility for safekeeping of the property
    never shifts to the officer.

12. Valuables removed for safekeeping from a recovered stolen auto
    shall be listed in the stolen auto recovery report, RC#1.
    Items removed from all other towed vehicles shall be listed on
    the Form 174; or, when necessary, on a separate Form #1 report,
    together with the circumstances which necessitated the removal.
    An original and one copy of the Form #1 report shall be forwarded
    to the ATRU, together with their copies of the Form 174.

Page Three

13. The "Property in Vehicle" section shall be properly checked as to the type of report (either RC#1 or Form #1) which was used to list the property items removed from the vehicle. If no property is found in the vehicle, the word "None" shall be written across the lines in the "Property in Vehicle" section.

14. When the owner or driver personally orders a tow, the investigating officers shall list the owner's name and address, and shall identify the vehicle by make, model and license number on the Form 174. The owner or operator shall then be asked to sign the "Private Tow Personally Ordered by Owner on Scene" portion of the Form 174. In these cases, all copies of the report shall be retained at the Unit Headquarters for one year.

15. The officer ordering the tow shall notify the owner by personal notification or by telephone and shall check the method of notification used on the Form 174. If unable to effectuate notification, he shall forward a Form #1 report to the ATRU providing information relative to notification efforts and reasons for failure to notify the owner.

ATRU personnel shall make daily checks of the Form 174 to determine the method of owner notification. When notification has not been made by the officer ordering the tow, ATRU personnel shall make notification by post card (Form 71-2102) and shall maintain a separate file on such notifications. The Officer in Charge of the ATRU shall be responsible for daily checks of the post card file and for re-notification.

16. In every case, a Superior Officer shall examine and approve the Auto Tow Reports that are turned into the Unit Headquarters for completeness (include VIN) before filing and forwarding, and shall affix his signature. These reports shall then be forwarded to the ATRU via the next mail run.

LG

CLE000487

## GENERAL POLICE ORDER

NO. 3-73                    HEADQUARTERS_____,19____    January  31,    73

SUBJECT: VEHICLE FUEL ACCOUNTING SYSTEM

TO THE MEMBERS OF THE DEPARTMENT

Effective February 1, 1973, the City of Cleveland, Office of Budget and Management, will initiate a new VEHICLE FUEL ACCOUNTING SYSTEM for all city vehicles. As an integral part of the system, plastic identification cards for all police vehicles and cards for each member have been prepared.

These vehicle and personnel cards will be distributed to all Divisions, Districts and Units on or before January 31, 1973. Each member shall receipt for his identification card by signing the payroll sheet provided. Completed payroll sheets shall be returned to:

> VEHICLE SECTION
> DIVISION OF SERVICES
> EAST 49th STREET YARDS

Vehicle identification cards shall be kept on the respective vehicles in plastic pouches which shall be permanently affixed to the inside of the glove compartment.

Commanding Officers shall cause implementation and full compliance with the provisions of this order.

A detailed instruction sheet has been prepared for individual distribution.

By order of,

GERALD  J.  RADEMAKER
CHIEF  OF  POLICE

CLE000488

GPO 3-73                                                January 31, 1973
SUBJECT:  VEHICLE FUEL ACCOUNTING SYSTEM

Effective February 1, 1973 a new Vehicle Fuel Accounting System
shall become operational, utilizing a data recording device and
plastic I.D. cards to record fuel and oil disbursements on new
Fuel and Lube tickets.

The Daily Disbursement Record fuel form shall be discontinued.

I.D. cards are provided for each vehicle and each member of the
Department. Both must be used in recording the fuel information.
Each vehicle I.D. card shall be stored in its plastic pouch which
shall be affixed within the glove compartment. Motorcycles shall
store the I.D. card in any protected area, such as storage trunk
or saddle bags. Security of the driver's personal identity card
shall be the responsibility of each individual member.

Cards for new members and replacements for lost or mutilated cards
shall be requested by Form #1 report, through channels, to the
Vehicle Section of the Division of Services.


PROCEDURE:

Both the vehicle and the member's plastic I.D. card together with
the Fuel and Lube ticket shall be placed in the data recorder.
The information shall be recorded by setting the keys as follows:
RED KEY for type of fuel or oil, etc. in accordance with code on
ticket; TAN KEYS for the last 4 digits of the mileage; BLUE KEYS
for the amount dispersed. The printing knob shall be slid across
the recorder once, only, and released. The Fuel and Lube ticket
shall then be removed, the gasoline pump meter number shall be
entered on the face of the ticket immediately above the words
"Fuel & Lube" and the ticket shall be signed and dated. The hard
copy shall be placed in the storage box and the soft copy original
shall be kept by the driver for his record.

If gas and oil are obtained at the same transaction, a separate
ticket must be made for each item dispensed.

If for some reason a Fuel and Lube ticket must be voided due to
error, print the word "VOID" across the ticket and place the entire
ticket in the storage box. The Officer in Charge, on the 1st Platoon,
shall remove the cards from the storage box at 7:00 AM daily, shall
check them for completeness and accuracy and forward them to the
Mail Center.

In the event a member does not have his driver or vehicle I.D. card
at the time of a transaction, the same information may be hand
printed in the designated spaces on the ticket and forwarded as
provided.

CLE000489

## GENERAL POLICE ORDER

NO. __2-73__    HEADQUARTERS____January 23, __19__73

SUBJECT: __SUPPLEMENTARY SICK LEAVE PROCEDURES --__
__"WEEKEND RETURN TO DUTY ORDERS"__

TO THE MEMBERS OF THE DEPARTMENT

A member, on the sick list or sick leave over a weekend or
on a holiday when the Medical Bureau is closed, who feels
that he is well enough to return to duty shall call the
"Physician on Call" for that day, as designated on the
monthly teletype schedule, or in his absence one of the
alternates. Members shall advise him in complete detail
of the nature of the illness or injury for which he had been
placed on sick leave. The physician shall then determine
whether the member can be returned to duty, in either
regular or restricted capacity.

If directed to return to duty, the member shall notify the
Officer in Charge of his District or Unit. The Officer in
Charge shall call the "Physician on Call" to verify the
return to duty order before placing the member back on duty.

The physician shall complete "Duty Orders" - Surgical
Form #4 at the time of the next sick call at the Medical
Bureau and shall cause it to be forwarded to the member's
District or Unit of assignment.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

CLE000490

## GENERAL POLICE ORDER

NO. 1-73                    HEADQUARTERS January 12, 73

SUBJECT: BOOKING FORMS TO INCLUDE RC-1 NUMBERS

TO THE MEMBERS OF THE DEPARTMENT

Effective January 12, 1973 Booking Forms 125, 126 and
127 of all persons arrested for felonies and for Petit
Larcenies from homes, offices or buildings shall contain
the complaint number of the RC-1 report in connection
with which the arrest was made.

Members causing the booking of a prisoner shall provide
the booking officer with the related RC-1 Complaint
Number.

Booking officers shall enter this number in the space
titled "Complaint Number" located in the upper right
portion of the booking card.

Commanding Officers shall cause continued compliance
by members under their command to the requirements
of this order.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

CLE000491

## GENERAL POLICE ORDER

No. __44-72__                    HEADQUARTERS_____ November 16, 19__72__

SUBJECT: __SUBPOENAS (POLICE OFFICERS) - CONTROL__
                __& SERVICE PROCEDURE__

TO THE MEMBERS OF THE DEPARTMENT

A new control and service procedure governing
subpoenas issued for members of the Department by the
various courts, shall become effective Friday,
November 17, 1972.

It involves the maintenance of a separate Officer
Subpoena Record Book in which complete information on
the receipt and service of each subpoena shall be
entered. The entire context of this procedural order
has been separately printed for distribution to all
Divisions, Districts and Units as a permanent
reference.

Commanding Officers shall cause all members of their
commands to become thoroughly familiarized with the
provisions of this order and shall require full
compliance.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

GPO  44-72                              November 16, 1972
SUBJECT:  SUBPOENAS (POLICE OFFICERS) - CONTROL & SERVICE PROCEDURE

The County Prosecutor and Juvenile Court have both cited instances
of Cleveland Police Officers' failure to respond to subpoenas as
well as failure to bring physical evidence to Juvenile Court.

All members are expressly directed to respond whenever subpoenaed
and to take the physical evidence in the case to the court hearing.

In accordance with Rule 4, Paragraph 9 of the Manual of Rules and
General Police Order 16-64, Sections 47 and 49, Units shall keep a
record of all subpoenas received.  To fulfill this requirement and
to assure proper service, Divisions, Districts and Units shall
maintain a separate and exclusive Subpoena Book for Police Officer's
subpoenas, effective November 17, 1972.  All other subpoenas shall
continue to be recorded in the District or Unit Warrant Book.

Officer Subpoena Books are now available at the Supply Unit for Unit
distribution.

The first page of the Officer Subpoena Book has been preprinted
with the following Column headings.  All columns shall be maintained
and must be prepared by the Divisions, Districts and Units on all
succeeding pages and in replacement books.

        Column #1 - Date received at the Unit.
        Column #2 - Unit Officer receiving the subpoena and making
                    the entry in the book.
        Column #3 - Name of Officer subpoenaed.
        Column #4 - Court date.
        Column #5 - Court issuing subpoena.
        Column #6 - Offense charged (if noted in subpoena).
        Column #7 - Defendant's name.
        Column #8 - Subpoenaed Officer's signature.
        Column #9 - Serving Officer's signature.
        Column #10- Date.
        Column #11- Time of service.

The Officer in Charge at the Division, District or Unit shall be
responsible for the entry of all subpoenas into the book, shall
cause prompt service to be made and shall cause all column entries
to be made in each case.

In circumstances requiring immediate service upon members who are
off duty due to "V" days, furloughs, overtime, etc., notification
shall be made by office  personnel via telephone and so noted in
the Officer Subpoena Book.  In these cases, in the column requiring
the subpoenaed officer's signature, the notation "telephone" shall
be inserted in lieu of his signature.  All other column entries
shall be completed as though personal service was made.

CLE000493

Page Two

Members responding to subpoenas in Juvenile Court shall be responsible for producing all physical evidence in the case at the time of the hearing and shall return such evidence to the Property Room after completion of the case. In cases involving bulky evidence such as large office equipment, TV, etc., arresting officers shall ascertain whether a photograph will suffice by contacting the County Prosecutor's office.

Commanding Officers shall cause frequent checks of the Officer Subpoena Book by Superior Officers and full compliance with this order by all members.

CLE000494

## GENERAL POLICE ORDER

NO. __43-72__                    HEADQUARTERS____November 9,__ 19__72__

SUBJECT : ____OPERATION IDENTIFICATION PROGRAM____

TO THE MEMBERS OF THE DEPARTMENT

A program to reduce burglaries and facilitate return of
stolen property by citizen participation in a property
identification program has been made possible through the
gift of 150 engraving tools to the Cleveland Police
Department by the United Presbyterian Church.

This program which has reduced burglaries and aided in
recovering stolen property in other jurisdictions will be
placed into effect on Monday, November 13, 1972, and
will operate in the following manner:

Each District Headquarters Station and Police Outreach
Center will receive ten Vibro-Gravers, 1000 window decals,
1000 itemized property forms, 1000 release forms and 1000
explanatory pamphlets. Distribution will be made by the
Community Relations Unit.

Following are the locations of the Police Outreach Centers
involved:

| | |
|---|---|
| 3886 Lee Road | 11701 Buckeye Road |
| 2802 East 79th Street | 1021 East 105th Street |
| 8309 Quincy Avenue | 8610 Hough Avenue |
| 3311 East 55th Street | 12904 Lorain Avenue |

Each center is manned week days by a patrolman who will
be responsible for the distribution of equipment and
material and accounting for same.

(Continued on Page Two)

CLE000495

## GENERAL POLICE ORDER

NO. 43-72          HEADQUARTERS          November 9,  19 72

SUBJECT :   OPERATION IDENTIFICATION PROGRAM

(Page Two)

Commanding Officers of each District shall assign an officer on the First and Second Platoons to distribute and account for equipment and material at the stations.

All Vibro-Gravers have been marked with an identification number which shall be used for recording and accounting purposes.

The program is open to any adult citizen over 18 years of age residing in Cleveland.

Citizens should be directed to their own District area to borrow said tool. Before issuing the equipment, the officer in charge of same shall satisfy himself as to the identity of the citizen requesting it. He shall then issue him an Engraving Tool, and Instruction Pamphlet on use of the tool, and an Itemized Property Form in duplicate.

The citizen shall sign a Release Form in duplicate for the tool, then use the tool to etch his SOCIAL SECURITY NUMBER on valuable articles at his home, such as television sets, radios, cameras, small appliances, luggage, valuable cutware, lawnmowers, etc. He shall list each item marked for identification on the Itemized Property Form. Upon completion, he shall return the tool and the completed Itemized Property Form to the District Station or Police Outreach Center from which he received it, retaining a copy of the Itemized Property Form for his own files. Include the citizen's telephone number on the Release Form in order to contact him in the event he is late in returning the tool.

(Continued on Page Three)

CLE000496

# GENERAL POLICE ORDER

No. 43-72          HEADQUARTERS____ November 9, 19 72

SUBJECT : ___OPERATION IDENTIFICATION PROGRAM____

(Page Three)

The officer in charge of distribution shall verify the return
of the tool on the Release Form and give the citizen two
Operation Identification Decals to paste on the front and/or
rear windows or doors of his home.  Decals are of two
types, for pasting on glass or on wood -- the citizen should
request the type he needs.

Originals of the Itemized Property Forms shall be forwarded
to the Pawn Unit of the Division of Criminal Investigation
where they shall be kept on file for the purpose of
identifying stolen property.

Should an engraving tool be damaged, or the carbide point
require replacement, it shall be returned to the Community
Relations Unit for replacement.

Additional Forms and Decals will also be available at the
Supply Unit.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 42-72     HEADQUARTERS   October 31,   19 72

SUBJECT: BUREAU OF COMPLAINT FORMS

TO THE MEMBERS OF THE DEPARTMENT

The official five-part complaint forms which are forwarded to this Department from the Bureau of Complaints, City Clerk's Office, City Hall, shall be answered within one week from date of receipt. They are to be promptly and efficiently processed.

The following procedures which are necessary to control the distribution and return of these complaint forms shall be followed:

The File Copy (dark yellow) will remain in the Chief's Office. The Field Copy (white) shall be kept on file at the District or Division Office as a control copy. The remaining three copies -- Original (white), Complaint Bureau Copy (light yellow), and Department's Copy (Pink) shall be used by the investigating officer to record the results of his action taken and, when completed, returned to the Chief's Office. The answered complaint will then be compared with the Chief's Office File Copy and forwarded to the Bureau of Complaints.

Commanding Officers of Districts and Divisions shall cause prompt and proper action and returns to be made.

Memo 203 of 1954 and Memo 22 of 1956 are hereby rescinded.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

---

## GENERAL POLICE ORDER

No. __41-72__          HEADQUARTERS___ October 27, __19 72__

SUBJECT: __DRESS AND PERSONAL APPEARANCE CODE__

TO THE MEMBERS OF THE DEPARTMENT

The Departmental Dress and Personal Appearance Code shall become effective October 27, 1972. It shall govern officers, members and employees of the Division of Police and shall receive full compliance.

Commanding Officers shall cause frequent inspections to insure compliance and shall take proper action for violations.

The entire code has been separately printed for individual distribution and sufficient copies shall be forwarded to Commanding Officers for that purpose.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

CLE000499

GPO 41-72                                    October 27, 1972
SUBJECT: DRESS AND PERSONAL APPEARANCE CODE

All members of the Division of Police are governed by the
provisions of Rule 58 of the Manual of Rules which states:

1.  Officers and members of the Division of Police shall
    wear such uniforms as may be designated by the Chief
    of Police.

2.  Those on duty shall be completely and properly uniformed
    and equipped according to their rank or position and the
    duty to which they are assigned or detailed. When engaged
    in special duty, they may be permitted to wear civilian
    clothing, upon the approval of the Officer in Charge.

3.  Those assigned to uniform duty shall appear in court in
    uniform.

4.  Those in uniform shall wear them completely buttoned;
    and shall display the badge on the outside of the
    outermost garment, over the left breast.

5.  They shall be neat, clean and well groomed at all times.
    Uniform and civilian clothes shall be cleaned, pressed
    and kept in good condition.

The foregoing regulations and the following dress and appearance
code shall require strict compliance by all members and employees
who perform associate police functions:

A.  The uniform of the day shall be designated by the ranking
    Officer in Charge of the Unit or Platoon or special police
    detail at the commencement of the tour of duty in accordance
    with the following provisions:

    1.  The long or short overcoat shall be worn for outside
        duty during the months of November, December, January
        and February, and whenever the temperature drops or
        is anticipated to drop below fifty-five degrees (55°).
        Superior Officers of the rank of Lieutenant and above
        may wear the regulation officer's topcoat under the
        same conditions. Overcoats and topcoats need not be
        worn during any tour of duty when the temperature is
        above 55°.

    2.  The uniform blouse shall be worn for outside duty
        during March, April, May, September and October and
        whenever the temperature is 65° or lower or is anti-
        cipated to drop to that level. The uniform blouse
        need not be worn during any tour of duty when the
        temperature is above 65°.

Page Two

3.  The long sleeve shirt with tie shall be the standard
    and may be worn for outside duty without blouse or
    overcoat when temperature ranges between 65° and 75°.

    (a)  The blue uniform shirt and blue tie is
         designated for Patrolmen and Sergeants.

    (b)  The white shirt and black tie is desig-
         nated for the ranks of Lieutenant and
         above.

4.  The short sleeve shirt without tie may be worn whenever
    temperatures rise or are anticipated to rise above 75°
    during a given duty tour during the months of May, June,
    July, August and September.

5.  Officers assigned to indoor duty may substitute the
    short sleeve shirt with tie when outdoor temperatures
    are 75° or lower.

6.  Trousers shall be navy blue in color and of conventional
    cut, neither tapered excessively nor flared, nor shall
    they be the slim leg type or of any material other than
    15 ounce or 10 ounce wool material.  The black trouser
    braid or stripe shall be worn by the ranks of Lieutenant
    and above.

7.  Uniform caps shall be worn at all times in public and on
    patrol, except when inside police buildings, eating in
    restaurants, in court and other similar indoor Police
    functions.

8.  Other uniform clothing shall be subject to the following
    requirements:

    (a)  Shoes, gloves, overshoes and boots shall be
         black in color.

    (b)  Socks, sweaters and scarves shall be black
         or dark blue in color.

    (c)  Shoes shall be plain black leather without
         design, either Navy type oxfords or ankle
         height.

    (d)  Raincoats shall be reversible black and orange
         with the latter color reserved for use in
         traffic.

         Raincoats shall be kept available for instant
         use during or when inclement weather is antici-
         pated and whenever ordered by the Commanding
         Officer or the Officer in Charge.

CLE000501

Page Three

     (e)  Leather jackets and Eisenhower jackets may be worn by officers assigned to solo and three wheel motorcycles, and by Task Force personnel.

     (f)  While operating motorcycles, members shall wear the hard helmet.

B.  Personal appearance and grooming regulations:

   1.  Excessively long hair which prevents proper positioning of the uniform cap is prohibited. Hair shall be kept cut and trimmed above the level of the collar line.

   2.  Sideburns shall not extend below the ear lobe. They shall be kept neatly trimmed and mutton chop sideburns are prohibited.

   3.  Mustaches shall be kept neatly trimmed and shall not extend below the upper lip.

   4.  Beards and goatees are prohibited.

Deviation from these dress code and personal appearance regulations when required for special police purposes may be authorized by Commanding Officers, but only with the express approval of the Chief of Police.

CLE000503

## GENERAL POLICE ORDER

NO. 40-72     HEADQUARTERS_____ October 23, 19 72

SUBJECT: _____ VICE ENFORCEMENT UNIT _____

TO THE MEMBERS OF THE DEPARTMENT

There is hereby created a Vice Enforcement Unit with city wide jurisdiction and responsibility for the suppression and enforcement of gambling, prostitution, liquor laws and all other vice violations.

This Unit will be headquartered at the Am Stan Building, 1825 Lakeside Avenue.

All information and complaints concerning vice violations, upon which immediate enforcement action cannot be taken, shall be the subject of a Form #1 report forwarded through channels.  These will be referred to the Vice Enforcement Unit.

This shall not relieve any member of the Department of the responsibility to take the proper action upon those violations coming to their attention and requiring immediate action.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

CLE000504

## GENERAL POLICE ORDER

39-72                                   October   23,        72

No._____                 HEADQUARTERS_____19____

ENFORCEMENT OF SECTION 9.0936 (KEYS

SUBJECT: LEFT IN CARS)

TO THE MEMBERS OF THE DEPARTMENT

City Ordinance Section 9.0936 of the Traffic Code makes it
a violation of the Parking Section to park a motor vehicle on
any street unless he shall first lock the ignition, remove the
key therefrom and take such key with him.

Therefore, all members of the Department, irrespective of
their assignment, shall, whenever possible, make observation
of vehicles parked on the street.  Where ignitions are found
unlocked, or when keys are found in the ignition, a Notice
of Violation (parking ticket) shall be issued.

In cases where keys are found in the ignition, the member
shall remove and take same to the District Headquarters
without delay.  The keys should then be tagged listing the
make, type, and license number, as well as the location,
time and date of violation.  In the remarks section of the
parking ticket, a notation shall be inserted, that the key has
been removed and may be recovered at the District, adding
the address of the District Headquarters.

Violation of Section 9.0936 is subject to a $6.00 waiver
privilege, as are other parking violations of this type under
Section 9.3704 of the Traffic Ordinances of Cleveland.

General Police Orders 38-72, 9-70, 19-69 and 13-68 are
hereby rescinded.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

## GENERAL POLICE ORDER

NO. 38-72                HEADQUARTERS October 17, 19 72

SUBJECT: ENFORCEMENT OF SECTION 9.0936 (KEYS
LEFT IN CARS)

TO THE MEMBERS OF THE DEPARTMENT

General Police Order 38-72 is hereby rescinded and
replaced by General Police Order 39-72.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

CLE000506

## GENERAL POLICE ORDER

No. 37-72          HEADQUARTERS          October 17, 19 72

SUBJECT: VISITATIONS TO LIQUOR ESTABLISHMENTS

TO THE MEMBERS OF THE DEPARTMENT

Officers, members and employees shall not enter or visit any Bar, Cafe or other establishment wherein liquor, beer or wine are dispensed for consumption on the premises, while on duty or in uniform, except on official business or in response to a specific complaint or request for assistance.

This prohibition shall not apply to liquor permit premises which operate principally as restaurants and have separate dining facilities. These may be patronized for the purpose of having lunch.

Commanding Officers shall cause strict compliance with the provisions of this order. All Superior Officers shall closely supervise their subordinates and shall initiate disciplinary action for any violation.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

# GENERAL POLICE ORDER

No. 36-72        HEADQUARTERS   October 16,   19 72

SUBJECT: <u>AMENDMENT & SUPPLEMENT TO</u>
COMMUNICATIONS CONTROL CENTER
RADIO PROCEDURES (GPO 39-70)

TO THE MEMBERS OF THE DEPARTMENT

General Police Order 39-70 - CCC - Radio Procedures
shall be amended and supplemented as follows:

The paragraph beginning with the sentence "A radio
dispatcher is assigned to each Police District and is
responsible for the control of members, employees and
vehicles assigned to Radio Dispatch in that District.".…
shall be deleted and replaced with the following sentence
and additional procedural directive:

"A radio dispatcher is assigned to each Police
District and is responsible for the dispatching of
personnel and vehicles subject to radio dispatch
in that District.

The manner in which a field assignment is handled
shall be the responsibility of the personnel
dispatched.

Officers may not refuse an assignment except for
reasons of police necessity and greater priority
requirement of another police need.  In all such
cases, an explanatory report must be made and
forwarded.

(Continued on Page Two)

CLE000508

## GENERAL POLICE ORDER

No. 36-72  HEADQUARTERS  October 16, 19 72

SUBJECT: AMENDMENT & SUPPLEMENT TO
COMMUNICATIONS CONTROL CENTER
RADIO PROCEDURES (GPO 39-70)

(Page Two)

Field supervisory officers shall have the final
authority to control and reassign field units as
they deem necessary to satisfy police requirements
in each case.  They shall promptly notify the
Radio Dispatcher whenever such action is taken."

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

---

## GENERAL POLICE ORDER

No. 35-72                    HEADQUARTERS                    September 25,    72    19

SUBJECT JUVENILE ARREST, DETENTION, COMPLAINT
FILING AND REPORTING PROCEDURES
JUVENILE COURT LIAISON OFFICER

TO THE MEMBERS OF THE DEPARTMENT

The Ohio Rules of Juvenile Procedures have been amended
by the Ohio Supreme Court.  They govern all police
actions that involve the arrest or taking into custody of
juveniles, as well as the detention placement of
juveniles and the Juvenile Court Complaint Filing process.

In conformance with these new rules, Departmental
procedures have been modified and printed along with
Rules 6 and 7 of said Ohio Rules of Juvenile Procedure,
all of which shall constitute the controlling procedural
order.

All members shall comply with this order in every
detail.

Commanding Officers shall cause distribution  of a copy
to each member in his Division or District.

General Police Orders 26-66, 10-71 and 11-64 are
rescinded.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 34-72          HEADQUARTERS          September 12, 72

SUBJECT: SUPPLEMENT TO GPO 30-72 - PROCEDURE
FOR THE HANDLING & DISPOSITION OF
STOLEN, LOST OR OTHER DISPLACED
LICENSE PLATES.

TO THE MEMBERS OF THE DEPARTMENT:

Effective September 12, 1972 the following sentence
shall be part of procedural step number 4: "The
member completing this form shall place his name and
badge number or rank in the lower left hand corner
just above the numbers C of C 71-2102 B."

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

CLE000511

## GENERAL POLICE ORDER

No. 33-72        HEADQUARTERS     August 18, 1972

SUBJECT: EVIDENCE TECHNICIAN PROCEDURES

TO THE MEMBERS OF THE DEPARTMENT

Personnel trained as Evidence Technicians shall follow the procedures listed below as well as the duties described in G. P. O. 32-72.

1. Evidence Technicians shall report all assignment dispositions to the Scientific Identification Unit (SIU) by calling Lines 327, 328 or 329. These dispositions shall include: Complainant, address, specific details of the examination, type of crime, District of occurrence and the names of the examining officers.

2. Evidence Technicians shall complete, in triplicate, a structured Form C of C 71-10A after every examination. All evidence (trace, fingerprint and crime scene photos) shall be delivered to the SIU as soon as practical after the examination and before reporting off duty.

3. At the SIU, the Evidence Technician shall assign proper identifying numbers to this evidence, complete all necessary envelopes, complete Evidence Run Book entries and the necessary Form C of C 71-10A.

(Continued on Page Two)

CLE000512

## GENERAL POLICE ORDER

NO. 33-72                    HEADQUARTERS            August 18, 72 19

SUBJECT: EVIDENCE TECHNICIAN PROCEDURES

(Page Two)

4. The Form C of C 71-10A shall be made in all cases whether or not evidence is found.  It shall be approved by a Superior Officer of the SIU and filed as follows:

      a. Original to the SIU.
      b. First copy to the Detective Division.
      c. Second copy to the District involved.

In the event the examination discloses negative information, record this information on the Form C of C 71-10A and forward to the SIU by departmental mail.

Commanding Officers shall cause full compliance with the provisions of this order.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

CLE000513

# GENERAL POLICE ORDER

NO. 32-72          HEADQUARTERS_____ July 24, 1972

SUBJECT: ASSIGNMENT OF MODEL EVIDENCE SEDANS
　　　　　TO POLICE DISTRICTS

TO THE MEMBERS OF THE DEPARTMENT

Commencing July 24 1972, twelve marked police sedans
will be assigned to the Basic Patrol Division as part of
Federal Grant (LEAA) #70 DF 147 (Model Evidence
Technician Force). They will be assigned two to each of
the six Districts in the following manner.

| DISTRICT | ZONE | CODE NO. |
|----------|------|----------|
| 1 | 113 | 22 P 260 |
| 1 | 131 | 22 P 261 |
| 2 | 211 | 22 P 262 |
| 2 | 223 | 22 P 263 |
| 3 | 323 | 22 P 264 |
| 3 | 342 | 22 P 265 |
| 4 | 413 | 22 P 266 |
| 4 | 434 | 22 P 267 |
| 5 | 513 | 22 P 268 |
| 5 | 534 | 22 P 269 |
| 6 | 622 | 22 P 270 |
| 6 | 644 | 22 P 271 |

At least one officer trained as an Evidence Technician
shall be assigned to each vehicle at all times. Their
duties will be as follows:

(Continued on Page Two)

CLE000514

## GENERAL POLICE ORDER

NO. 32-72　　　　　　　　HEADQUARTERS　　　　　　　July 24, 19 72

SUBJECT: ASSIGNMENT OF MODEL EVIDENCE SEDANS

TO POLICE DISTRICTS

(Page Two)

A. Collection and preservation of scientific evidence
such as latent fingerprints, trace evidence and
photographs at crime scenes (except homicides,
safe jobs, bombings and other crimes requiring
long and intensive crime scene searches which
will be handled by the S. I. U. personnel).

B. Collection of scientific evidence, photographs and
measurements at scenes of fatal accidents, serious
non-fatals, hit-skip accidents and accidents
involving drunken drivers when no Accident
Investigation Unit car is available.

C. Field Booking in connection with mass arrests and
civil disturbances.

D. Crime preventive patrol in their Zones, subject
to regular radio assignments.

These vehicles shall be assigned to zone patrol duty only,
with the foregoing duty responsibilities.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

CLE000515

*Sgt. Breary*

G.P.O. 31-72                                                                                        July 20, 1972

## SUBJECT: MESSAGE RECORDING REPORT SYSTEM

A telephone Message Recording System has been established in the Record File Section of the Division of Services. The purpose of this system is to do away with the time delay in calling reports into the Report Center, thus giving more time for patrol. Districts will be phased into operation in accordance with the following schedule and instructions:

| | |
|---|---|
| 8:00 A.M. July 31 | 3rd District, Criminal Investigation Units at Central Station including Women's Unit and Juvenile Unit |
| 8:00 A.M. August 7 | 1st District, 2nd District, 4th District and Traffic Units. |
| 8:00 A.M. August 14 | 5th District, 6th District, Task Force, Criminal Investigation Units at the Amstan Building, and all other Units. |

The Message Recording System combines the RC-1 Reporting System with a new method of telephoning reports into the Report Center where they will be automatically received on recording devices. These recorded messages will then be typed onto RC-1 Report Forms by clerk typists.

The completed RC-1 Reports will then be forwarded to the reporting officer's Unit for examination and approval, after which the original shall be returned to the Report Center. Questionable reports will be accompanied by a check list form, itemizing errors and deficiencies in the reporting officer's manner of dictation. The immediate Supervisors shall cause the necessary corrections to be made and shall reinstruct the officers in reporting and dictation procedures, when necessary. He shall endorse the form and return it to the Report Center.

Complete report making procedural instructions have been prepared for individual distribution as an integral part of this order.

In addition to these permanent procedures, a training bulletin shall be issued to each member and shall require full compliance.

Prior to actual entry into the system, all Districts and Units will received closed circuit TV training and all members of Line Units will be required to call in at least two sample reports during the practice period.

The following General Police Orders are hereby rescinded: 14-58, 25-60, 12-64, 13-64, 19-65, 32-69, 36-69, 7-70.

By order of,

**GERALD J. RADEMAKER**
**CHIEF OF POLICE**

CLE000516

## GENERAL POLICE ORDER

NO. 31-72                    HEADQUARTERS_____ July  20, 19 72

SUBJECT: MESSAGE  RECORDING  REPORT  SYSTEM

TO THE MEMBERS OF THE DEPARTMENT

A telephone Message Recording System has been estab-
lished in the Record File Section of the Division of Services.
The purpose of this system is to do away with the time delay
in calling reports into the Report Center, thus giving more
time for patrol. Districts will be phased into operation in
accordance with the following schedule and instructions:

8:00 A.M. July 31    3rd District, Criminal Investigation
                     Units at Central Station including
                     Women's Unit and Juvenile Unit

8:00 A.M. August 7   1st District, 2nd District, 4th
                     District and Traffic Units

8:00 A.M. August 14  5th District, 6th District, Task Force,
                     Criminal Investigation Units at the
                     Amstan Building, and all other Units

The Message Recording System combines the RC-1
Reporting System with a new method of telephoning reports
into the Report Center where they will be automatically
received on recording devices. These recorded messages
will then be typed onto RC-1 Forms by clerk typists.

The completed RC-1 Reports will then be forwarded to the
reporting officer's Unit for examination and approval,
after which the original shall be returned to the Report
Center. Questionable reports will be accompanied by a

(Continued on Page Two)

CLE000517

## GENERAL POLICE ORDER

No. 31-72                    HEADQUARTERS_____ July 20, 19 72

SUBJECT: MESSAGE RECORDING REPORT SYSTEM

(Page Two)

check list form, itemizing errors and deficiencies in the
reporting officer's manner of dictation. The immediate
Supervisors shall cause the necessary corrections to be
made and shall reinstruct the officers in reporting and
dictation procedures, when necessary. He shall endorse
the form and return it to the Report Center.

Complete report making procedural instructions have been
prepared for individual distribution as an integral part of
this order.

In addition to these permanent procedures, a training
bulletin shall be issued to each member and shall require
full compliance.

Prior to actual entry into the system, all Districts and
Units will receive closed circuit TV training and all
members of Line Units will be required to call in at least
two sample reports during the practice period.

The following General Police Orders are hereby rescinded:
14-58, 25-60, 12-64, 13-64, 19-65, 32-69, 36-69 and
7-70.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

CLE000518

## GENERAL POLICE ORDER

NO. 30-72        HEADQUARTERS    July 13,    '72

SUBJECT: PROCEDURE FOR THE HANDLING AND
DISPOSITION OF STOLEN, LOST OR
OTHER DISPLACED LICENSE PLATES

TO THE MEMBERS OF THE DEPARTMENT

Effective July 15, 1972, stolen, lost or other displaced
license plates that come into the possession of the
members of the Department shall be tagged, entered
into the Property Book, returned to the owner or
forwarded to the Property Unit in accordance with the
detailed procedural instructions which have been
separately prepared for individual distribution as an
integral part of this order.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

CLE000519

## GENERAL POLICE ORDER

NO. 29-72                    HEADQUARTERS July 13, 19 72

SUBJECT REVISED PROPERTY TAG FORM #60-3 --
PROCEDURES

TO THE MEMBERS OF THE DEPARTMENT

Effective July 15, 1972, a revised Property Tag Form
#60-3 shall be placed into use by members of the
Department.

This tag shall be completed and attached to all property
which comes into the custody of the Department in the
categories of "Evidence/Confiscate/and Ret. to Owner"
except:

a)   Property which can be placed into an
     evidence envelope Form #68.

b)   Firearms which shall continue to be tagged
     with Form #60-2 with its attached bullet bag
     under procedures set forth in GPO 21-70 --
     "Firearms Seizure - Property Handling
     Procedures".

Separately printed detailed instructions for the completion
of this revised tag #60-3 shall be an integral part of
this procedural order.

Commanding Officers shall cause a copy to be issued to
each member in their respective Division, District, or
Unit.  Supplies are being forwarded for this purpose.

By order of,
GERALD J. RADEMAKER
CHIEF OF POLICE

G.P.O.  28-72                                    July 6, 1972

DETAILED INSTRUCTIONS FOR COMPLETION OF FORM C of C 71-2500 --
"STATUS OF ASSIGNED PORTABLE TRANSCEIVERS"


Forms for each Unit have been preprinted with the serial numbers
of the transceivers issued to them and are stapled together in
predetermined sets in accordance with each Unit's individual
needs. Each set of forms has numbered pages and each page is
imprinted with the District, Division or Unit to which the
serially listed transceivers are assigned. The last page of
each set is an extra sheet to be utilized to record the serial
numbers of additional or replacement transceivers and loaners
from Radio Repair or other Units.

Any questions as to assigned totals of equipment or their serial
numbers shall be referred to Radio Logistics.


THE FORM SHALL BE MAINTAINED IN THE FOLLOWING MANNER:

1.  The numbered column is for easy totaling.
2.  The "Serial No." column is preprinted in numerical sequence.
3.  Columns: "Used By", "Space", "Bad Order Date", and "Date Sent
    to E. 49th St. Repair" are the four status columns. Only
    one entry shall be made for each Radio unless the status of
    said Radio changes during a tour of duty. In this case, the
    change of a previous entry shall be made by interlineation
    (cross out), and an appropriate new entry inserted.

    a) The "Used By" column shall designate the vehicle or beat
       to which the individual user of the Radio is assigned.
    b) The "Spare" column shall be checked when that particular
       transceiver is serviceable, but not in use. A status
       change will necessitate interlineation and a new entry.
    c) The "Bad Order Date" column shall contain the date that
       the transceiver is turned in to its Unit in unserviceable
       condition. When a radio becomes unserviceable while in
       use, it shall be turned in, bad ordered, and signed for
       by a Superior Officer. The original status entry shall
       be crossed out and a "Bad Order Date" column entry made.
    d) In the "Date Sent to E. 49th St. Repair" column, record
       the date the transceiver or accessory is forwarded to
       E. 49th St. Radio Repair. If an entry has already been
       made in another status column and a radio is subsequently
       sent to Radio Repair, again, the first entry shall be
       crossed out and the new entry made.

4.  The "Sign-Out" column shall be signed by the officer to whom
    the transceiver is issued for use.
5.  The "Sign-In" column shall be signed by the Superior Officer
    to whom the transceiver is returned after usage.

Page Two

6. The line "TOTALS" shall be used as a status and inventory reference. The "TOTALS" entry in the "Serial No." column must balance with and equal the total of the remaining four status columns combined.

7. At the bottom of each page in each set of forms, the inventory summary "Radio/Accessories" shall contain the number of radios and accessories on that page as recorded in each of the categories specified on lines (a), (b) and (c).

8. The "Totals" of categories (a), (b) and (c) on each page shall be recorded on each page on the "Totals" line.

9. On Page 1, the (d) "Grand Totals" entry shall reflect the totals of all pages used in recording the inventory.

10. The section (e) "Totals Assigned" entries on Page 1 shall reflect the total number of radios and accessories assigned to the Unit and must equal the "Grand Totals" figures on the line immediately above them.

11. The section "Battery Chargers" shall reflect the number and kind on hand.

12. The "Approved By" line shall be signed by the relieving Officer-in-Charge after he has checked the inventory pages for correctness and accounted for all the listed items. Thereafter he will be the accountable officer.

13. Only the original copy of the C of C 71-2500 shall be required. It shall be kept by Administrative Units for record purposes for a period of not less than thirty days. If shortages occur, a prompt investigation and reports shall be made. In these cases, the copy of the C of C 71-2500 reflecting the shortage shall be retained and made part of the investigation's permanent file.

14. Administrative Units shall obtain from the Supply Unit a ledger which shall be maintained by the Unit as a means of control when transceivers or accessories are left at E. 49th St. Repair and, then again, when returned to the Unit.

CLE000522

## GENERAL POLICE ORDER

NO. __28-72__          HEADQUARTERS __July 6,__ 19 __72__

SUBJECT : __PORTABLE TRANSCEIVER CONTROL AND__ __INVENTORY PROCEDURES - "STATUS OF ASSIGNED PORTABLE TRANSCEIVERS" REPORT FORM C of C 71-2500__

TO THE MEMBERS OF THE DEPARTMENT

Effective Monday, July 10, 1972, the new form C of C 71-2500, "STATUS OF ASSIGNED PORTABLE TRANSCEIVERS" shall be placed into usage throughout the Department.

The form shall be used for the control and inventory of portable transceivers and their accessories by all Divisions, Districts and Units to which this equipment is assigned.

The forms for each Unit have been preprinted with the serial numbers of the transceivers issued to them and are stapled together in predetermined sets in accordance with each Unit's individual needs.

Detailed procedural instructions have been prepared for Unit distribution as an integral part of this order.

Commanding Officers shall cause full compliance with all provisions of this order.

Any question as to assigned totals of equipment or their serial numbers shall be referred to Radio Logistics.

Unit supplies are now available at the Supply Unit.

By order of,

LLOYD GAREY
ACTING CHIEF OF POLICE

CLE000523

## GENERAL POLICE ORDER

No. 27-72        HEADQUARTERS    June 30,    72

SUBJECT: TOWING PROCEDURES (AAA)

TO THE MEMBERS OF THE DEPARTMENT

Whenever a member causes a vehicle to be towed by AAA Tow Truck he shall remain on the scene until the tow truck arrives unless required to leave for reasons of urgent police necessity.

Said member shall complete Auto Tow Report C of C 71-174 in quadruplicate upon which he shall include the following information:

1) The location from which the vehicle was towed shall be inserted at the top center of the form.

2) The Vehicle Identification Number (VIN) shall be inserted immediately below the space provided for the "License No.".

3) In the space provided for "Personal Property in Car", a complete discription of the vehicle's condition and contents shall be entered.  This shall include an itemized list of all parts and accessories which are missing. If the vehicle is intact, a notation "Vehicle Intact" shall be inserted.  If damaged, the damage shall be briefly noted, eg: Front damaged - right side damaged, etc.  When the glove compartment and/or trunk are locked, it shall also be so noted. The back of the form shall be used to record this information, if necessary.

(Continued on Page Two)

CLE000524

## GENERAL POLICE ORDER

No. 27-72        HEADQUARTERS June 30, 72

SUBJECT: TOWING PROCEDURES (AAA)

(Page Two)

The member shall then obtain the signature of the Tow Truck Operator at the bottom of all copies of the completed form. When the back of the form is used to record an inventory of property or to list missing items, it shall also be signed by the Tow Truck Operator.

One copy of the report shall be given to the Tow Truck Operator, one copy shall be retained on file at the District or Unit Headquarters and the original and remaining copy shall be forwarded to the Auto Theft Unit. When the owner applies for the release of his auto, the copy shall be given to him along with his release.

If required to leave the vehicle for another higher priority police assignment, such as a crime in progress or one in which life or serious injury is at hazard, the member shall return to the scene; or, if the vehicle has been already towed, he shall go to the towing agency. He shall then complete the above required reporting procedures, reinspect the auto, and shall obtain the signature of the Tow Truck Operator or Towing Agency representative, leaving with them a copy of the form.

Members causing such tows to be made shall examine the vehicles carefully and shall accurately record the required information.

(Continued on Page Three)

CLE000525

---

## GENERAL POLICE ORDER

No. 27-72          HEADQUARTERS  June 30,       72

SUBJECT: TOWING PROCEDURES  (AAA)

(Page Three)

In every case, a Superior Officer shall examine and approve the Auto Tow Reports that are turned into the Unit Headquarters for filing and forwarding, and shall affix his signature.

Commanding Officers shall cause strict and continued compliance with the provision of this procedural order.

G. P. O. s 34-69 and 15-70 are hereby rescinded.

By order of,

LLOYD GAREY
ACTING CHIEF OF POLICE

CLE000526

## GENERAL POLICE ORDER

NO. 26-72                    HEADQUARTERS      June 22,    72
                                                              19

SUBJECT: NEW REVISED DUTY REPORT

TO THE MEMBERS OF THE DEPARTMENT

Effective Saturday, July 1, 1972, the new Revised Duty
Report Form C of C 71-ZC-1 REV. shall replace the
present Basic Patrol Duty Report.

The Revised Duty Report has incorporated some features
of the old Basic Patrol Duty Report, added an in-detail
equipment check and has eliminated non-essential
elements which are no longer considered essential.

A detailed instruction sheet has been prepared as an
integral part of this order.  Commanding Officers of
Districts, Divisions, and Units shall cause a copy to
be distributed to each member.

Supplies of the Duty Report form are now available at
the Supply Unit.

                    By order of,

                    GERALD J. RADEMAKER
                    CHIEF OF POLICE

CLE000527

G.P.O. #26-72

NEW REVISED DUTY REPORT -- INSTRUCTIONS FOR COMPLETION

DUTY REPORT

1.  In the column headed "source", four different designations
    are used to indicate the original source of the assignment.

    a)  B - Broadcast - indicates the assignment was originally
        received by actual voice broadcast from Radio.

    b)  T - Telephone - indicates the assignment was received
        directly by telephone communication.  This does
        include the assignment given by Radio broadcast,
        "Call Radio by land phone for assignment".

    c)  D - District - indicates the assignment was received
        from the District or Division to which the officers
        are assigned or from which they received an assignment.

    d)  O - On View - indicates the assignment was encountered
        on view by the officers or received from a citizen
        on the street or some similiar means.

2.  The time the assignment was received, the time of arrival and
    time completed shall be recorded to the nearest minute in the
    column headed for each entry.

3.  All duty time must be accounted for and there shall be no more than
    a 10 minute time lapse between Radio assignments or other police
    activities.

4.  The "location of the assignment" shall be designated by house number
    and street, or to the nearest intersection, or as given by Radio.

5.  The "nature of assignment" shall be recorded exactly as given by
    the Radio Dispatcher.

6.  The "disposition" column shall be completely and accurately filled.
    Additional lines shall be used when needed.  The disposition shall state
    the title of the report made with Complaint Number or it shall
    state No Report which can be abbreviated "N.R.".  Other abbreviations
    which will be acceptable for disposition are "G.O.A." - Gone on
    Arrival; "U.T.L." - Unable to Locate; "N.S.A." - No Such Address;
    "ADV. PROS." - Advised to See Police Prosecutor; "REF. J.C." -
    Referred to Juvenile Court.  The disposition "ADVISED" by itself
    will not be accepted.  The agency the complaint is referred to
    must always be designated.

- 2 -

If an arrest is made, the name of the person arrested shall be given. If more than one arrest is made, one name followed by the abbreviation "etal" will suffice. When a complaint is received, the name of the complainant shall be listed whether a report is made or not. (In cases of refusal to identify, it shall be reported, "ID - REFUSED".)

7. Lunch period shall be placed in the main body of the report and limited to twenty minutes.

8. Personnel will record the number of traffic citations and parking tickets issued, and the mileage and Radio assignment totals.

9. The car and equipment check section requires a detailed check of all equipment assigned to the vehicles and the signatures of the officers, both those reporting on and those reporting off duty. Squad Sergeants shall be responsible for their respective squad's inspections. Sector Lieutenants shall make periodic checks for compliance with this order.

10. In the cases of vehicles that are out of service, the Officer-in-Charge of the station on each platoon shall cause daily inspections to be made of both the vehicles and the equipment. These inspections must be carried out in the same manner as for a car in-service and a duty report shall be filled out with the proper entries and signature of inspecting officers. "Out-of-Service" shall be written across the body of the report. Since equipment shortages can easily occur while vehicles are out of service, the utmost care must be taken in making these inspections and in reporting thereon. The damage entry of cars which are out-of service and which have been placed in the shop shall be marked "Not Known - In Shop".

11. Vehicle damage entries shall be made in the book that is kept in each District to record vehicle washes and service. These damage notations shall include the date, time, and type of damage together with a statement as to whether reports have been made and it shall be signed by the officer making the entry.

12. When Units do not possess or carry all the items listed in the equipment section of the duty report, members shall place a dash (--) after each item not carried.

13. If inspections disclose any shortages in equipment or new damage to the vehicle, prompt investigation and reports must be made.

G.P.O. 7-65 is hereby rescinded.

CLE000529

## GENERAL POLICE ORDER

No. 25-72                    HEADQUARTERS  May 31,        72
                                                          19

SUBJECT: ESTABLISHMENT OF SEPARATE ROBBERY AND
SEX CRIMES UNITS

TO THE MEMBERS OF THE DEPARTMENT

G.P.O. 41-71 establishing a combined Robbery-Sex Unit
is hereby rescinded.  A separate Robbery Unit and a
separate Sex Crimes Unit have now been activated in
the Division of Criminal Investigation.

ROBBERY UNIT

The Robbery Unit shall serve as a clearing house of
information and coordinate police activity in the
investigation of Robberies, Assaults to Rob and
Purse Snatchings.

Personnel assigned shall make original investigations of
all robberies of banks and financial institutions and
conduct original or follow-up investigations of other
robberies when deemed necessary by the Officer in
Charge of the Unit or the Commanding Officer of the
Division of Criminal Investigation.

When Form #1 reports are made on robberies, copies
shall be forwarded promptly to the Robbery Unit.  When
the information requires immediate action, the Unit
shall be contacted by telephone.

(Continued on page Two)

CLE000530

## GENERAL POLICE ORDER

NO. 25-72     HEADQUARTERS May 31, 19 72

SUBJECT: ESTABLISHMENT OF SEPARATE ROBBERY AND SEX CRIMES UNITS

Page Two

### SEX CRIMES UNIT

The Sex Crimes Unit shall serve as a clearing house of information and coordinate police activity in the investigation of Sex Crimes.

Personnel assigned shall conduct follow up investigations of sex crime felonies and make original investigations when deemed necessary by the Officer in Charge of the Unit or the Commanding Officer of the Division of Criminal Investigation.

Prostitution, Pandering, Procuring and Misdemeanor Sex violations shall continue to be the responsibility of District personnel unless otherwise directed by the Chief or the Commanding Officer of the Division of Criminal Investigation.

Obscene telephone calls shall be the responsibility of the Technical Intelligence Unit of the Division of Criminal Investigation.

(Continued on page Three)

CLE000531

## GENERAL POLICE ORDER

No. 25-72        HEADQUARTERS      May 31,    19 72

SUBJECT: ESTABLISHMENT OF SEPARATE ROBBERY AND SEX CRIMES UNITS

Page Three

When Form #1 reports are made on sex crimes,
copies shall be forwarded promptly to the Sex Crimes
Unit.   When the information requires immediate
action, the Unit shall be notified by telephone.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

CLE000532

## GENERAL POLICE ORDER

No. 24-72     HEADQUARTERS     May 11, 19 72

SUBJECT: SPECIAL ATTENTION TO PLAYGROUNDS, SCHOOL YARDS AND RESIDENTIAL AREAS

TO THE MEMBERS OF THE DEPARTMENT

Members are hereby directed to give special attention to playgrounds, school yards and residential streets. Large groups of rowdies have been frequenting these areas and have become a constant source of annoyance and concern to residents.

Commanding Officers will, therefore, cause these areas to be inspected as frequently as possible by members of their command and take whatever enforcement action that is needed.

As authorized by Municipal Ordinance 7.032801, the Commissioner of Recreation has determined the hours of operation of recreational facilities to be 9:00 AM to 9:00 PM. This ordinance provides that no unauthorized person shall be or remain on or in any of said areas during the period that they are closed.

Violators shall be warned and dispersed; flagrant violators shall be arrested and charged.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 23-72                    HEADQUARTERS_____ May 9,_____ 19 72

SUBJECT: FEDERAL GRANT PROCEDURE

TO THE MEMBERS OF THE DEPARTMENT

It shall be the responsibility of the Planning &
Research Unit to maintain a master control file on
all federal grants received by the city.

All requisitions, tallies and vouchers for equipment
and services requested on federal grant program
shall be forwarded to the Planning & Research
Unit for verification against the file.

Upon approval, the Planning & Research Unit shall
forward such papers through the usual channels.

                    By order of,

                    GERALD J. RADEMAKER
                    CHIEF OF POLICE

CLE000534

## GENERAL POLICE ORDER

NO. 22-72                    HEADQUARTERS                    April 28, 19 72

SUBJECT: ANTI-LITTER ORDINANCE -- VIOLATORS TO BE PROSECUTED

TO THE MEMBERS OF THE DEPARTMENT

Members are hereby directed to enforce Anti-Litter
Ordinances, as provided in Chapter 54, Part 3 of the
Sanitary Code. Particular attention shall be given to
violators of Section 3.5413, "Litter on Vacant Lands".

When violations are observed, summary arrests shall
be made and prior to the next day's Court, papers shall
be obtained from the Prosecutor. A Form #1 report
describing the details of arrest shall be presented to the
prosecutor at the time he is consulted.

Copies of Chapter 54, "ANTI-LITTER ORDINANCE"
are being forwarded to Districts and Units for their
usage.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

## THE CALENDAR

The following measures will be on their passage at next meeting:

### ORDINANCES

**Ord. No. 1695-63.**

By Messrs. Katalinas, Pilch, Sinkiewicz, Gaines, Leo Jackson and M. Morris Jackson.

An emergency ordinance to supplement The Codified Ordinances of the City of Cleveland by enacting new Chapter 54, Sections 3.5401 to 3.5415, inclusive, thereof relating to littering on public and private property and penalties therefor.

Whereas, this ordinance constitutes an emergency measure providing for the immediate preservation of the public property and health by reason of the emergency which exists in the City of Cleveland in that public and private property is being littered with paper, trash, dirt and other debris and in order to eliminate this problem which depreciates property values and creates a health hazard to all citizens, provisions must be made to facilitate enforcement; now, therefore,

Be it ordained by the Council of the City of Cleveland:

**Section 1.** That The Codified Ordinances of the City of Cleveland be and they are hereby supplemented by enacting new Chapter 54, Sections 3.5401 to 3.5415, inclusive, to read as follows:

### CHAPTER 54

### Anti Litter Ordinance

**Section 3.5401. Definitions.**

For the purpose of this Chapter the following terms, phrases, words, and their derivations shall have the meaning given herein. When not inconsistent with the context, words used in the present tense include the future, words used in the **plural number include the singular number,** and words used in the singular number include the plural number. The word "Shall" is always mandatory and not merely directory:

(1) "Commercial Handbill" is any printed or written matter, any sample or devise, dodger, circular, leaflet, pamphlet, paper, booklet, or any other printed or otherwise reproduced original or copies of any matter of literature:

(a) Which advertises for sale any merchandise, product, commodity, or thing; or

(b) Which directs attention to any business or mercantile or commercial establishment, or other activity, for the purpose of either directly or indirectly promoting the interest thereof by sales; or

(c) Which directs attention to or advertises any meeting, theatrical performance, exhibition, or event of any kind, for which an admission fee is charged for the purpose of private gain or profit.

(2) "Garbage" is putrescible animal and vegetable wastes resulting from the handling, preparation, cooking and consumption of food.

(3) "Litter" is "garbage", "refuse", and "rubbish" as defined herein and all other waste material which, if thrown or deposited as herein prohibited, tends to create a danger to public health, safety and welfare.

(4) "Non-Commercial Handbill" is printed or written matter, any sample, or device, dodger, circular, leaflet, pamphlet, newspaper, magazine, paper, booklet, or any other printed or otherwise reproduced original or copies of any matter of literature not included in the aforesaid definitions of a commercial handbill.

(5) "Park" is a park, reservation, playground, beach, recreation center or any other public area in the City, owned or used by the City and devoted to active or passive recreation.

"(6) "Public property" or "public place" is all property owned, operated or controlled by any governmental agency, including but not limited to streets, sidewalks, treelawns, parks, playgrounds, parking lots, schools, libraries, post office, municipal transit facilities and other public lands and buildings."

(7) "Private property" or "private place" is all property not included in the aforesaid definition of "public property" including, but not limited to vacant land or to any land, building or other structure designed or used for residential, commercial, business, industrial, institutional or religious purposes, together with any yard, grounds, walk, driveway, fence, porch, steps, vestibule, mailbox and other structure appurtenant thereto."

(8) "Refuse" is all putrescible and nonputrescible solid wastes (except body wastes), including garbage, rubbish, ashes, street cleanings, dead animals, abandoned automobiles, and solid market and industrial wastes.

(9) "Rubbish" is nonputrescible solid wastes consisting of both combustible and non-combustible wastes, such as paper, wrappings, dirt, cigarettes, cardboard, tin cans, yard clippings, leaves, wood, glass bedding, crockery and similar materials.

(10) "Vehicle" is every devise in, upon, or by which any person or property is or may be transported or drawn upon a highway.

**Section 3.5402. Litter on Public Property.**

No person shall throw or deposit litter in or upon any streets, sidewalk or other public place within the City except in public receptacles or in authorized receptacles for collection.

**Section 3.5403. Placement of Litter in Receptacles so as to Prevent Scattering.**

Persons placing litter in public receptacles or in private receptacles shall do so in such a manner as to prevent it from being carried or deposited by the elements upon any street, sidewalk, or other public

**"Section 3.540301. Upsetting Public or Private Receptacles.**

No person shall upset a public or private receptacle designed or used for the deposit of litter or cause or permit its contents to be deposited or strewn in or upon public or private property."

CLE000536

### Section 3.5404. Sweeping Litter into Gutters Prohibited.

No person shall throw, deposit or sweep into any gutter, sidewalk, street or other public place within the City the accumulation of litter from any building or lot or from any public or private sidewalk or driveway. Persons owning or in control of occupying property shall keep the sidewalk in front of their premises free of litter.

### Section 3.5405. Litter Thrown by Persons in Vehicles.

No person, while a driver or passenger in a vehicle, shall throw or deposit litter upon any street or other public place within the City, or upon private property.

### Section 3.5406. Truck Loads Causing Litter.

No person shall drive or move any truck or other vehicle within the City unless such vehicle is so loaded as to prevent any load, contents or litter from being blown or deposited upon any street, alley or other public place.

### Section 3.5407. Litter in Parks.

No person shall throw or deposit litter in any park within the City except in public receptacles and in such a manner that the litter will be prevented from being carried or deposited by the elements upon any part of that park or upon any street or other public or private property. Where public receptacles are not provided, all such litter shall be carried away from the park by the person responsible for its presence and properly disposed of elsewhere.

### Section 3.5408. Litter in Lakes and Fountains.

No person shall throw or deposit litter in any fountain, pond, or any other body of water or natural watercourse in a park or elsewhere within the City.

### Section 3.5409. Throwing or Distributing Handbills in Public Places.

No person shall throw or deposit any commercial or non-commercial handbill in or upon any sidewalk, street or other public place within the City. Nor shall any person hand out or distribute or sell any commercial handbill in any public place. Provided, however, that it shall not be unlawful on any sidewalk, street, or other public place unless specifically prohibited by the controlling governmental agency for any person to hand out or distribute, without charge to the receiver thereof, any non-commercial handbill to any person willing to accept it, and provided further that the person making said distribution shall not hamper nor interfere with pedestrian or vehicular traffic.

### Section 3.5410. Placing Commercial and Non-Commercial Handbills on Vehicles.

No person shall throw or deposit any commercial or non-commercial handbill in or upon any vehicle. Provided, however, that it shall not be unlawful in any public place unless specifically prohibited by the controlling governmental agency for a person to hand out or distribute without charge to the receiver thereof, a non-commercial handbill to any occupant of a vehicle who is willing to accept it.

### Section 3.5411. Litter on Occupied Private Property.

No person shall throw or deposit any litter on any occupied private property except in properly maintained receptacles. The owner or person in control of private property must provide sufficient private receptacles for collection of litter. No person shall deposit litter in said receptacles in such a manner that it will be carried or deposited by the elements upon private property or any sidewalk, street or other public place.

### Section 3.5412. Owner to Maintain Premises Free of Litter.

The owner, occupant, or person in control of any private property shall at all times maintain the premises free of litter except that which is contained in receptacles for collection.

### Section 3.5413. Litter on Vacant Lands.

No person shall throw or deposit litter on any open or vacant private property within the City whether owned by such person or not.

### Section 3.5414. Penalty.

Whoever violates any of the provisions of this Chapter shall be guilty of a misdemeanor and upon conviction thereof shall be fined not less than ten dollars ($10.00) nor more than fifty dollars ($50.00).

Notwithstanding the penalty provisions of Section 3.5414, any person who has violated any of the provisions of this Chapter, upon executing before and filing with the Clerk of the Municipal Court, Criminal Branch, an instrument waiving the formal issuance of an affidavit and warrant, together with the reading of such affidavit and the right to be present personally at the trial of such action, and further waiving the right to appeal and error and authorizing a plea of guilty to be entered and the defendant submitted to the mercy of the Court, and upon depositing within forty-eight (48) hours after citation, with said Clerk, the sum of two dollars and fifty cents ($2.50) and the costs of Court or depositing within seventy-two (72) hours after citation, with said Clerk, the sum of four dollars and fifty cents ($4.50), and the costs of Court, may be fined said respective amounts by the Court; provided, however, that for the first 14 days after the effective date of this ordinance a warning notice shall be issued to any person violating any provisions of this ordinance and no cost shall be assessed and for the next thirty days subsequent thereto the sum to be deposited shall be a total of $1.00.

Section 2. That this ordinance is hereby declared to be an emergency measure and, provided it receives the affirmative vote of two-thirds of all the members elected to Council, it shall take effect and be in force immediately upon its passage and approval by the Mayor; otherwise it shall take effect and be in force from and after the earliest period allowed by law.

## GENERAL POLICE ORDER

No.___21-72___          HEADQUARTERS_____April 18, 19__72

SUBJECT: _REPORT VALUATION OF THEFT OF FOOD STAMP_

TO THE MEMBERS OF THE DEPARTMENT

The following letter from Chief Police Prosecutor Everett
A. Chandler, relative to the valuation to be placed upon
food stamps that become the subject of theft, is self-
explanatory:

"Whenever there is a complaint regarding the theft of
food stamps, the total amount involved in such theft will
be used in order to determine the charges to be placed
against anyone caught.  Therefore, if the amount of
food stamps is in excess of sixty dollars ($60.00), the
charge will be Grand Larceny and under sixty dollars
($60.00) will be Petit Larceny."

Members shall govern themselves accordingly.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

CLE000538

# GENERAL POLICE ORDER

No. 20-72          HEADQUARTERS          April 7,          1972

SUBJECT: NON-TRAFFIC ACCIDENT FORM C of C 71-1077
--- REVISED PROCEDURES

TO THE MEMBERS OF THE DEPARTMENT

The following revised procedures shall govern the completion of Form C of C 71-1077:

1. Form C of C 71-1077 shall be used to report all non-traffic accidents occurring on city property or in which the City is involved, e.g. accidents by falling on City sidewalks, injuries received on CTS buses, etc.

2. The Form is self-explanatory and must be either typed or printed in ink with only the original copy required.

3. A concise description of the incident shall be entered in the space provided on the lower part of the front of the form. The reverse side has space provided for statements from the complainant and one witness. If more witnesses are available, additional forms may be used.

4. Space is also provided on the front of the form for information regarding photographs taken. The report shall be held at the District until this information is obtained and then signed by the verifying Superior Officer.

(Continued On Page Two)

CLE000539

# GENERAL POLICE ORDER

No. 20-72      HEADQUARTERS      April 7,      19 72

SUBJECT :  NON-TRAFFIC ACCIDENT FORM C of C 71-1077 ---
REVISED PROCEDURES

(Page Two)

5. Personnel shall in all cases, including confinements, complete a RC#1 Face Sheet.  The descriptive narrative section shall be left blank.  No telephonic RC#1 report to the Report Center shall be necessary, however, when there is a hospital confinement, the Report Center shall be notified as required by Rule 80 - Paragraph 3 in order that the name may be placed on the hospital sheet.

6. The RC#1 shall be attached to the completed Form C of C 71-1077 and forwarded to the Report Center for a complaint number.  The Report Center will return the District Copy of the RC#1 and forward the Form C of C 71-1077 to the Law Department. In no event is the form C of C 71-1077 to be forwarded without the RC#1.

General Police Order 63-63 is hereby rescinded.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 19-72            HEADQUARTERS            April 7,        72
                                                           19

SUBJECT: REVISED SELECTIVE SERVICE REGULATIONS

TO THE MEMBERS OF THE DEPARTMENT

Selective Service Regulations have been revised. Members
shall be governed by the following summary of registration
requirements and enforcement procedures:

Eighteen year old males must be registered within
30 days after their 18th birthday.

Each must then have a draft card on person up to
age 26 years.

If the registered male is deferred at some time during
his period of draft eligibility, it then becomes a
requirement that he carry his draft card on person
up to age 35.

Excepted from these requirements are Veterans who
have discharged their military obligation. They do
not have to register nor carry a card.

Males of draft age who cannot show evidence of possessing
draft cards or of having discharged their military obligation
may be subject to arrest. They shall be held for investigation
and disposition by the Fugitive Unit of the Division of
Criminal Investigation.

By order of,
GERALD J. RADEMAKER
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 18-72          HEADQUARTERS          March 24, 1972

SUBJECT: OVERTIME REGULATIONS AMENDMENT

TO THE MEMBERS OF THE DEPARTMENT

The exclusionary provisions of GPO 6-72 which prohibit
the accumulation of overtime by members of the rank of
Chief, Inspectors, Deputy Inspectors, Commissioner of
Traffic and Captains are hereby rescinded.

In accordance with the provisions of GPO 5-72, said
members shall be restricted to the absolute minimum
amount of overtime as would be required to handle
emergencies, to complete essential police investigations,
which extend beyond a normal duty tour and to attend
authorized meetings.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

Resc'd by 15, 74

## GENERAL POLICE ORDER

NO. 17-72

HEADQUARTERS March 14, 19 72

SUBJECT: DISPOSITION OF FURLOUGH AND HOLIDAYS OF
MEMBERS ON SICK LEAVE

TO THE MEMBERS OF THE DEPARTMENT

When a member has been sick for the entire year, his
Furlough and Holidays may not be converted to
overtime and must be charged as taken during the
period of illness.

G.P.O. 15-72 is hereby rescinded.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

## GENERAL POLICE ORDER

NO. 16-72          HEADQUARTERS March 13, 19 72

SUBJECT: PROPERTY UNIT NOTIFICATION IN CRIMINAL
CASES TAKEN DIRECTLY TO THE GRAND JURY

TO THE MEMBERS OF THE DEPARTMENT

Whenever arresting officer take a criminal case
directly to the Grand Jury, either without
initiating process for a Preliminary Hearing in
Municipal Court or before the defendant is
"Bound Over" to the Grand Jury, they must notify
the Property Unit in order that the latter may
properly preserve all evidence for presentation
in Court.

A form #1 report shall be completed, identifying
the defendant, the offense charged and the
property involved. A copy of said report shall
be forwarded through channels to the Property
Unit.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

CLE000544

## GENERAL POLICE ORDER

**No.** 15-72          **HEADQUARTERS** March 13, 19 72

**SUBJECT:** USE OF FURLOUGH & HOLIDAYS WHILE ON SICK LEAVE

TO THE MEMBERS OF THE DEPARTMENT

In accordance with the following Safety Department Directive:

"In all instances, when a member under your command is on sick leave, and when his scheduled furlough comes up, this member will be removed from the sick list and placed on furlough, as scheduled.  this also applies to holidays."

All members shall govern themselves accordingly.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

CLE000545

Memorandum on Overtime

TO:      Mayor Ralph J. Perk        DATE: January 19, 1972
FROM:    Finance Director Andrew Putka

Mr. Mayor, I am submitting to you at this time one of a number of suggestions
or ideas which have been brought to my attention, or which I have observed require
correction or adjustment, especially in view of the current fiscal crisis facing
the City of Cleveland.

For many years the City has had a general policy concerning payment to officials
and employees for overtime work required in the performance of their duties. Until
1970 such overtime was payable at straight time rates, that is, annual salary divided
by 2080 hours, or the regular hourly rate for other than salaried employees. In 1970
by ordinance and labor union agreements, overtime in excess of 40 hours per week was
changed to time and a half for all workers except those in a supervisory capacity
who are not covered by any union agreement. As a matter of fact, no exceptions
have been actually made to the time and a half rule. Discrimination has been
practiced against certain groups of professional or administrative personnel by not
allowing them overtime under any conditions. This still prevails. Overtime may
optionally be covered by time off at a later date, but at straight hours.

The term "supervisory" has never been clearly defined, resulting in overtime
being granted in numerous cases to supervisors in a rather high capacity. This has
been especially true in the Department of Public Utilities. Overtime has been
granted also to a great degree at the Correction Farm to guards and other security
personnel. A study was made in 1971 showing tremendous overtime payments. Attempt
was made to reduce this, but with little success. A very recent study reveals also
large sums being paid, although the number of those receiving it has been greatly
reduced.

I highly recommend that the positions not eligible to receive paid overtime
or compensatory time be specifically set forth in print, and adhered to without
exception. Attached hereto is a list of positions and classifications which might
well be included.

You will note that various supervisory grades in the uniform ranks of police
and fire are included. It is my understanding that relatively little overtime is
ever accrued by the fire force. However, the police force accumulates and accrues
tremendous overtime. A thorough study is necessary as to the propriety of all the
overtime hours granted to the police. It has been a long standing rule, approved by
the City Law Department that police overtime is not paid when earned, but accrued

CLE000546

until retirement or resignation, then paid at a rate equal to their current annual rate, resulting in some very great sums being paid.  This has been previously discussed with you, and various excessive examples have been presented.  Supervisory police personnel should not be in any favored catagory, but rather within the same restrictions on overtime as other supervisors.  If incentive is necessary in one case, it is equally as necessary for morale in the other.

There should be no logical reason for overtime favoritism or discrimination among the various groups of city employees or officials.  Indeed, in this time of fiscal crisis, it is recommended that all paid overtime and compensatory time be eliminated.  If top level personnel are expected to devote considerably more than 40 hours per week to their job, then donate 10% of their pay back to the City, it is very discriminatory and costly to allow other employees overtime on either a compensatory or payment basis.

An executive order is all that is necessary to curb overtime, and set forth proper guide lines for emergency situations.

*C C Luttes*

- 2 -

CLE000547

## GENERAL POLICE ORDER

NO. 14-72          HEADQUARTERS  March 10, 19 72

SUBJECT : ABOLITION OF NINE DAY WORK SCHEDULE --
INITIATION OF DEFERRED WAGE PLAN

(Page Two)

The remaining ten percent (10%) of their gross compen-
sation shall be credited to the account of each employee
and affected officer as deferred compensation, which
deferred compensation shall be payable in full to all
affected officers and employees at any time at the option
of the Director of Finance upon said Director's
certification of availability of funds, or upon such officer
or employee's severance from employment with the City,
or on September 1,  1972, whichever first occurs;
provided however, that any elected official may
volunteer to participate in said deferred compensation
plan.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

# GENERAL POLICE ORDER

No. __14-72__                HEADQUARTERS____March 10,____19__72

SUBJECT : __ABOLITION OF NINE DAY WORK SCHEDULE __--
INITIATION OF DEFERRED WAGE PLAN

TO THE MEMBERS OF THE DEPARTMENT

The following letter from Mayor Ralph J. Perk is self-
explanatory"

"Pursuant to Ordinance 1.476001, the deferred wage plan
will be effective from March 11, 1972 through August 31,
1972 during which period all employees will work their
normal work week with 10% of their pay being deferred until
August 31, 1972. In accordance with this, my executive
order reducing the work week of all employees will expire
March 10, 1972.

I wish to personally thank all of the employees for their
cooperation and for the continued service which they have
and will continue to render to the citizens of Cleveland
during the coming months."

All members shall govern themselves accordingly.

ORDINANCE 1.476001 -- For the purpose of calculating the
amount of pay under Section 1.4760 during the period from
March 11, 1972 through August 31, 1972, all officers,
except elected officials, and employees of the City shall be
entitled to receive an amount equal to ninety percent (90%)
of the gross compensation earned by them during said
period.

(Continued on Page Two)

CLE000549

## GENERAL POLICE ORDER

No. 13-72          HEADQUARTERS March 1,       1972

SUBJECT: EMERGENCY USE OF THE EAST 19th STREET
              GASOLINE STATION

TO THE MEMBERS OF THE DEPARTMENT

The East 19th Street departmental gas facility shall be
opened whenever an emergency need for gasoline for
police vehicles arises after 4:00 PM on weekdays or at
anytime on Saturday or Sunday.

The authority to open the station shall lie with the
Operations Officers who shall be guided by the
availability of gasoline supplies at other District stations.
Normally gasoline would be obtained at a District
adjacent to the one which is out of gas.

The 3rd District shall have custody of the key and shall
provide the manpower necessary to operate the station
when so directed by the Operations Officer.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

## GENERAL POLICE ORDER

NO. 12-72        HEADQUARTERS February 29,    1972

SUBJECT: PROCEDURE IN SCHEDULING UNUSED "E" DAYS

TO THE MEMBERS OF THE DEPARTMENT

"E" days which were not taken during the pay period commencing February 12, 1972 and ending on February 25, 1972 shall be scheduled for the pay period commencing February 26, 1972 and ending March 10, 1972.

As of March 10, 1972 all members of the Police Department shall have received a total of two (2) "E" days.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

CLE000551

## GENERAL POLICE ORDER

No. 11-72      HEADQUARTERS February 28, 1972

SUBJECT: REINSTATEMENT OF NINE DAY PAY PERIOD
WORK PROCEDURES - GPO 9-72

TO THE MEMBERS OF THE DEPARTMENT

The 9 day pay period work procedures and all the
provisions of GPO 9-72 are hereby re-established
and shall be effective as of the original date,
February 12, 1972.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

CLE000552

## GENERAL POLICE ORDER

No. 10-72          HEADQUARTERS February 22,     72

SUBJECT: CANCELLATION OF NINE DAY PAY PERIOD
WORK PROCEDURES  -  GPO 9-72


TO THE MEMBERS OF THE DEPARTMENT

Effective immediately,  GPO 9-72, NINE DAY PAY
PERIOD WORK PROCEDURES, as it applies to sworn
personnel of the Division of Police is hereby
rescinded.

The provisions of the order shall remain in
effect for unsworn civilian employees, and
supervisory personnel shall continue to admin-
istrate it for them.


                    By order of,

                    STEVE SZERETO
                    ACTING CHIEF OF POLICE


CLE000553

# GENERAL POLICE ORDER

No. 9-72          HEADQUARTERS  February 14,  19 72

SUBJECT: NINE DAY PAY PERIOD WORK PROCEDURES

(Page Two)

the column must reflect a total of 23 days taken by each member.

Any Furlough Day that is displaced by an "E" day shall be added onto the end of the furlough period.

When a member is on the sick list any scheduled "E" day shall take precedence in the same manner as V days.

No member shall be permitted to work a tour of duty on a "E" day for overtime credit.

There shall be no exceptions to this order.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 9-72          HEADQUARTERS February 14, 72 19

SUBJECT: NINE DAY PAY PERIOD WORK PROCEDURES

TO THE MEMBERS OF THE DEPARTMENT

By Executive Order, effective February 12, 1972 and extending through the end of 1972, all employees of the City of Cleveland will be working a 9 day pay period. In the Division of Police, this shall be achieved by requiring each member to take one additional day off without pay during each two week pay period.

Pay periods begin on Saturday and extend through the Friday of the 2nd week thereafter.  The first pay period affected by this order spans the period of February 12 through February 25, 1972.

Commanding Officers shall be responsible for the efficient distribution of personnel.  Therefore, it is suggested that during each week of every pay period, half of the personnel in each Unit or Platoon be scheduled for their extra day off.

These extra days off may be grouped with each member's regular Vacation days.

The Form 1030 Time Sheet shall contain a complete record of the extra days taken.  The symbol "E" shall be utilized to designate such days and the total number taken by the end of each month shall be entered in a new colum which shall be drawn in next to the "Vacation Class" column.  At the end of the year 1972,

(Continued on Page Two)

CLE000555

## GENERAL POLICE ORDER

No 8-72        HEADQUARTERS February 10,    72 19

SUBJECT SNOW EMERGENCY PLAN AMENDMENT

TO THE MEMBERS OF THE DEPARTMENT

Paragraph 3 of the Snow Emergency Plan (GPO 7-71) shall be amended and the responsibility formerly placed upon the Officer of the Day now devolves upon the Operation Officer as follows:

During those hours that an Operations Officer is on duty, it shall be his duty to keep informed of threatening weather and road conditions and to initiate and supervise the implementation of the Snow Emergency Plan during the absence of the Traffic Commissioner.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

CLE000556

## GENERAL POLICE ORDER

NO. 7-72                         HEADQUARTERS February 3,     72 19

SUBJECT: USE OF UNAUTHORIZED UNIFORMS PROHIBITED

TO THE MEMBERS OF THE DEPARTMENT

As provided in the Manual of Rules, officers and
members of the Division of Police may wear only
such uniforms as may be designated by the Chief
of Police.

Nylon jackets have not been approved for wear as
a part of police uniform attire and their use as
such is expressly prohibited.

Commanding Officers and Superior Officers shall
cause compliance with this order by all subordinates.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

CLE000557

## GENERAL POLICE ORDER

No. 6-72          HEADQUARTERS          January 24, 72          19

SUBJECT: OVERTIME PAY EXCLUSION

TO THE MEMBERS OF THE DEPARTMENT

The following letter which was received through t
Office of the Director of Public Safety from the
Office of the Mayor is self-explanatory and shall
be considered the prevailing rule relative to the
exclusion of certain classifications from over-
time:

"To: All Appointing Authorities    Date: 1-20-72
From: Ralph J. Perk, Mayor    Subject: Overtime Pay
     per Philip S. Hamilton   Exemption
     Director of Personnel

The positions listed are exempt from overtime pay-
either cash or compensatory- as per the instruct-
ions of Mayor Ralph J. Perk.

          Division of Police

          Chief of Police
          Inspector
          Deputy Inspector
          Commissioner of Traffic Control
          Captain
          Surgeon of Police"

A memorandum on overtime from Finance Director
Andrew Putka to Mayor Ralph J. Perk is being
forwarded and shall be read at Roll Calls as
part of this directive.

                    By order of,
                    GERALD J. RADEMAKER
                    Chief of Police

## GENERAL POLICE ORDER

NO. 5-72  HEADQUARTERS January 24, 19 72

SUBJECT: OVERTIME REGULATIONS

TO THE MEMBERS OF THE DEPARTMENT

Members are hereby restricted in their accumul-
ation of overtime.    No more that the absolutely
essential overtime required to handle emergencies
and to provide the Department's minimum needs
shall be permitted.

Your attention is directed to GPO 42-71 concernir
which all members shall be reinstructed at roll
calls.

Commanding Officers shall cause strict compliance

By order of,

GERALD J.RADEMAKER
Chief of Police

CLE000559

## GENERAL POLICE ORDER

No. 4-72　　　　　　HEADQUARTERS　　　　　January 24,　　72　19

SUBJECT: AMENDED INVESTIGATION ARREST BOOKING
PROCEDURES; ELIMINATION OF REBOOKING
AT THE DIVISION OF CRIMINAL INVESTIGATION

(Page Three)

Paragraph #6 shall be changed to read: "The suspect shall
be booked at the District Headquarters on a Form 127
Arrest Card and sent to the Central Prison Unit without
delay.  Third District prisoners shall be booked directly at
the Central Prison Unit.  Upon arrival of the prisoner at the
Central Prison Unit, the booking officer shall promptly
notify the Officer in Charge of the Division of Criminal
Investigation who shall immediately notify the S.I.U.
personnel to process the prisoner in order that he may
be charged and subject to bail".

Paragraph #7 shall be changed to read: "The prisoner's
personal property shall be receipted for and held at the
Central Prison Unit.  Property held as evidence shall be
taken to the Division of Criminal Investigation along with
both hard copies of the Form 127 Arrest Card.  Perishable
evidence will be retained by the merchant, preserved and
brought to court by the merchant on the day of the trial".

Any other order or parts of orders in conflict with this
order are hereby rescinded.

By order of,
GERALD J. RADEMAKER
CHIEF OF POLICE

## GENERAL POLICE ORDER

NO. 4-72          HEADQUARTERS January 24, 19 72

SUBJECT: AMENDED INVESTIGATION ARREST BOOKING
PROCEDURES; ELIMINATION OF REBOOKING
AT THE DIVISION OF CRIMINAL INVESTIGATION

(Page Two)

The prisoner's personal property shall be receipted for
and held at the Central Prison Unit along with the two (2)
soft copies of the Form 127.

Property held as evidence, the two hard copies of the Form
127, and two (2) copies of Form 1 Investigation Arrest
Report shall be delivered to the Division of Criminal
Investigation by the conveying officers. Confiscated weapons
along with two (2) copies of the gun confiscation report
shall also be turned over to the Division of Criminal
Investigation at this time.

The Division of Criminal Investigation shall continue to
maintain its arrest and charge books and daily arrest
control sheets. Detective assigned to the case shall
commence their investigation without delay and continue
on same until the prisoner is either charged or released,
at which time they shall promptly notify the Central
Prison Unit.

G.P.O. 4-66 "Shoplifting Arrest Procedure" shall be
amended as follows:

(Continued on Page Three)

CLE000561

## GENERAL POLICE ORDER

No. 4-72          HEADQUARTERS  January 24, 1972

SUBJECT: AMENDED INVESTIGATION ARREST BOOKING
PROCEDURES; ELIMINATION OF REBOOKING
AT THE DIVISION OF CRIMINAL INVESTIGATION

TO THE MEMBERS OF THE DEPARTMENT

Commencing forthwith, persons arrested and held for
investigation in connection with a crime shall not be
rebooked at the Division of Criminal Investigation but
shall be booked at the Central Prison Unit.

When such persons are booked for investigation at the
District Stations, the District booking officers shall
notify the Officer in Charge of the Division of Criminal
Investigation, who shall assign a Superior Officer and/or
Detective team to the case. The names of the Detective
personnel assigned shall be typed on the Form 127 Arrest
Card in addition to the other information required. The
prisoner shall then be conveyed to the Central Prison
Unit without delay.

Upon arrival of the prisoner at the Central Prison Unit,
the booking officer shall note the date and time of arrival
in the section of the Form 127 Arrest Card reserved for
the Division of Criminal Investigation and at the bottom of
such card type, "HOLD FOR S.I.U. PROCESSING"; then
promptly notify the Officer in Charge of the Detective
Division of the arrival of the prisoner. (See G.P.O.
22-64)

(Continued on Page Two)

CLE000562

## GENERAL POLICE ORDER

No. 3-72          HEADQUARTERS      January 21,   19 72

SUBJECT: __AMENDMENT TO AUTO THEFT REPORT__
PROCEDURE --- G.P.O. 23-65

TO THE MEMBERS OF THE DEPARTMENT

The next to the last paragraph of GPO 23-65 - Auto
Theft Report Procedure - shall be amended as
follows:

When a stolen automobile is recovered, members shall
not turn it over to the owner without first obtaining
permission from the Auto Theft Unit.  Whenever the
recovered vehicle is not released to the owner at the
scene and is towed in the usual manner, members
shall not be required to call the Auto Theft Unit at
the time of recovery.  In these cases, the Auto Theft
Unit will obtain the details from the copy of the
R.C. #1 report.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

CLE000563

# VEHICLE PROCESSING REQUEST

COMP. NO. _____

TOW UNIT
CODE NO. _____

LIC. _ _ _ _ _ _ _ | YR. 19 ___ STATE ☐ OHIO    VIN. NO. _____    TIME _____    DATE _____

YEAR OF VEHICLE _____ MAKE _____ MODEL _____ STYLE _____ COLOR _____

CRIME INVOLVED: _____ VICTIM: _____ (NAME)

TOWED FROM: _____    AFTER PROCESSING _____ (ADDRESS)    RELEASE ☐
                                                                       HOLD ☐
OFFICERS REQUESTING
TOW _____ (NAME) _____ (BADGE #) _____ (NAME) _____ (BADGE #) _____ CAR # _____

TOWED BY TRUCK # _____ DRIVER _____ BADGE # _____ TIME _____

LISTED OWNER OF VEHICLE _____ (NAME) _____ ADDRESS _____

WITH WHOM FOUND _____ (NAME) _____ ADDRESS _____

A.T.U. NOTIFIED _____ (NAME) _____ (RANK) _____ DET. DIV. NOTIFIED _____ (NAME) _____ (RANK)

DETS. ASSIGNED: (Name) _____ (RANK) _____ (Name) _____ (RANK)

PROCESS FOR: ☐ Blood ☐ Photo ☐ Narc.
             ☐ Prints ☐ Semen ☐ Vin.No. ☐ OTHER _____

EVIDENCE MOST LIKELY FOUND AT: _____

OTHER REMARKS: _____

OTHER PROPERTY FOUND IN CAR: _____

EXAMINED & APPROVED BY: _____ (NAME) _____ (RANK) _____ TIME _____ (TIME) _____ DATE _____ (DATE)

TOWED TO LOT # _____ REC. BY: _____ (NAME) _____ (RANK)

LAB. NOTIFICATION VERIFIED _____ (LAB OFFICER) _____ VERIFICATION BY _____ (IMPOUND OFFICER)

PROCESSED BY _____ (NAME) _____ (RANK) _____ TIME _____ (TIME) _____ DATE _____ (DATE)

DIV. OF CRIMINAL INVESTIGATION AUTH. TO RELEASE _____ (NAME) _____ (RANK)

HOW OWNER NOTIFIED TO CLAIM AUTO _____ BY _____ DATE _____

C OF C 71-1061 REV.

CLE000564

## GENERAL POLICE ORDER

2-72                                      January 17,        72

No._____          HEADQUARTERS_____19___

VEHICLE PROCESSING PROCEDURE

SUBJECT: _____

Page Two

Commanding Officers shall cause copies to be
distributed to all members in their Divisions,
Districts and Units.

General Police Orders 21-68 and 15-64 are hereby
rescinded.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE