## GENERAL POLICE ORDER

No. 2-72 _____

HEADQUARTERS _____

January 17, 72

19 ___

SUBJECT : VEHICLE PROCESSING PROCEDURE _____

TO THE MEMBERS OF THE DEPARTMENT

Vehicles associated with crimes and requiring either
scientific processing for evidence, or special examination
to find the Vehicle Identification Number (VIN) and determine
ownership, are subject to pickup and impoundment for
processing.

Any officer of the Division of Police, with knowledge or the
necessary probable cause to believe that a vehicle is
connected with a crime and contains evidence or is stolen
and unidentified, shall request a Pick-up for processing.

The request first must be approved by the officer's
Superior Officer.

The vehicle shall be towed by Police Tow only. It shall be
safeguarded against contamination or destruction of evidence
and kept in police custody until processing is completed.

The revised Form C of C 71-1081 shall be utilized and it
shall be completed as fully and accurately as possible,
according to the detailed instructions contained in this
order. Superior Officers must examine and approve the
completed forms and shall be responsible for the compliance
and thoroughness of their subordinates.

As an integral part of this order, the controlling procedures
have been printed separately for individual distribution.

(Continued on Page Two)

CLE000566

STATE OF OHIO    )
                 ) ss                    IN THE CLEVELAND MUNICIPAL COURT
CUYAHOGA COUNTY  )

GPO - 1-72

J O U R N A L    E N T R Y

       In accordance with a determination of the Judges at a meeting held on
September 24th, 1971, the following action is taken, effective as of
January 10th, 1972.  The Rules - Criminal Branch, are hereby amended by the
addition of the following rule:

       15. Misdemeanor Procedure.

       A. First Hearing

       Whether the defendant appears with or without an attorney, no
       witnesses or police will appear.  The Court will either individ-
       ually or collectively advise the defendant/defendants of his or
       their constitutional rights, i.e. right to attorney (appointed
       when permitted), right to a jury and right to confront witnesses.

       1.  If the defendant pleads guilty, the Court will sentence the
           defendant or refer him to the Probation Department for a
           presentencing report.

       2.  (a) If the defendant appears without counsel, pleads not
           guilty and desires to retain an attorney, the case will be
           continued to a date certain for defendant to appear with
           counsel (second hearing)

           (b) If the defendant appears with counsel and pleads not
           guilty, the Court will set a trial date in accordance with
           procedure set forth below (see second hearing).

           1. Second hearing may be eliminated when defendant is
              represented by an attorney.

           (c) If the defendant appears without counsel, pleads not
           guilty and desires to proceed without an attorney, the Court
           will set a trial date in accordance with procedure set forth

– PAGE TWO –

2. (c) below (see second hearing).

    i. Second hearing is hereby eliminated.

3. If the defendant elects not to plead at this time, and
asks for a continuance, the case will be continued for a
date certain for the defendant to enter a plea (second
hearing).

4. The Court will set a bond if required or needed.

B. Second Hearing

No witnesses or police will appear.

1. If the defendant pleads guilty, with or without counsel, the
Court will sentence the defendant or refer the defendant to
the Probation Department for a presentencing report.

2. If the defendant pleads not guilty and asks for a non-jury
trial, the Court will set a trial date for the third hearing.

3. If the defendant pleads not guilty and asks for a jury trial,
the case will be sent to City Hall. (See specific rule per-
taining to Jury Trials).

C. Third Hearing

Witnesses and police must appear.

1. No continuances will be granted except for good cause shown
(See Rule 3 - Continuances). Trial and disposition of the
case will be made at this time. When a continuance is
granted, it will be the duty of the defendant or his attorney,
if he has one, to notify the Prosecutor's office of inability
to proceed on the date previously set. The Prosecutor's
office will then have the duty of notifying the witnesses that
the matter has been continued.

2. Prosecuting witnesses and police witnesses will be notified
by the Prosecutor's office of the continued hearing date.

D. Jury Trial

Prosecuting witnesses and police witnesses will not appear at the

CLE000568

- PAGE THREE -

first date set for jury trial.

1. At the aforesaid first jury trial date, the defendant may:

(a) Plead guilty, and the Judge will either sentence him or refer him to the Probation Department for a presentencing report.

(b) Waive his jury demand, in which event, the case will be scheduled for a trial date certain; at which time, all witnesses will appear.  The Court may, in its discretion, refer the case back to Central Police Station for trial.

(c) Proceed in accordance with his jury demand, in which event, the case will be referred to the Assignment Room for scheduling of a date certain for trial by jury.

E.  Dismissals

The Court will not dismiss a case for want of prosecution at any stage where witnesses are not required.

F.  Suspension of Rule

The Court may for good cause shown, suspend the operation of any part of this Rule where it is shown that the interests of justice will be served and that undue advantage is not being taken of the system.

Richard M. Brennan
Chief Justice

CLE000569

## GENERAL POLICE ORDER

NO. __1-72__          HEADQUARTERS____ January 6, ____19 72

SUBJECT: NEW MUNICIPAL COURT MISDEMEANOR
PROSECUTION PROCEDURES

TO THE MEMBERS OF THE DEPARTMENT

The Rules of the Criminal Branch of Municipal Court have
been amended by the addition of Rule 15, titled
"MISDEMEANOR PROCEDURE".

All members are advised that this shall be the controlling
procedure in misdemeanor cases and that they need appear
in Court only as specified in its provisions. However,
they shall not be prohibited from attending any Hearing
when they have a particular interest and can offer
significant and essential explanatory testimony.

The Prosecutor must still be consulted and affidavits
obtained and in each case the officer must leave a list of
witnesses at the Clerk's Office when the warrant is
obtained. Thereafter, the Prosecutor's Office will
initiate the issuance of all necessary subpoenas for
arresting officers and other witnesses.

Copies of the Municipal Court Journal Entry which sets
forth the provisions and details of the new procedure
shall be distributed to all Units for instructional purposes
and for retention as a permanent reference.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

CLE000570

## GENERAL POLICE ORDER

No. 46-71    HEADQUARTERS  December 31, 19  71

SUBJECT: ORGANIZATIONAL  STRUCTURE AMENDED

TO THE MEMBERS OF THE DEPARTMENT

Effective January 1,1972, the organizational
structure of the Department shall be amended
and the Task Force is placed under the Command
of the Division of Basic Patrol.

By order of,

GERALD J. RADEMAKER
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 45-71          HEADQUARTERS_____          December 31, 71
                                                              19___

SUBJECT: _____          OPERATIONS OFFICER

TO THE MEMBERS OF THE DEPARTMENT

Effective January 1, 1972, there shall be an
Operations Officer of the rank of Captain on
duty on the 2nd and 3rd Platoons throughout
the week and also on the 1st Platoon on
Saturdays and Sundays.

He shall be Headquartered at the Communications
Control Center (CCC) and shall be responsible
and submit his reports to the Inspector in
Command of the Division of Basic Patrol.

The Commanding Officer of the Division of
Basic Patrol shall arrange for the scheduling
of District Captains to this duty.

It shall be the duty of the Officer in Charge
of the CCC and Superior Officer to notify the
Operations Officer of all police matters of
major importance involving on-duty or off-duty
members of the Department, major crimes,
missing juveniles, crimes involving prominent
persons, disorders, disasters and other polic
incidents of a serious nature. It is the
responsibility of the Operations Officer to take
command of all such serious police incidents
and to ascertain that all necessary police
action and procedures are put into effect.

(Continued on Page Two)

CLE000572

## GENERAL POLICE ORDER

No. **45-71**   HEADQUARTERS __December 31,__ 19 __71__

SUBJECT : ___OPERATIONS OFFICER___

Page Two

~~When warranted by conditions and in the absence~~
at the scene of a Superior Officer of the rank of
Captain or above, the Operations Officer shall
personally report to the scene of the police incident
and assume command. The Operations Officer
shall notify the respective District Commander,
Inspector in Command of the Division of Basic
Patrol and the Chief of Police of major police
incidents, when it appears urgent that such
matters be called to their attention during such
tours of duty. The Operations Officer shall
include in his daily duty report a log of all
such incidents.

The Operations Officer shall notify CCC at the
start and conclusion of his tour of duty. Before
reporting off duty, he shall first confer with the
Operations Officer reporting on duty and shall
advise him of all major police matters occurring
during his tour of duty.

GPO 5-70 is hereby rescinded. ( O.D )

By order of,
GERALD J. RADEMAKER
CHIEF OF POLICE

GPO  44-71                                December 10, 1971

SUBJECT--USAGE OF REVISED TOW REQUISITION FORM C of C 2085 --
                ABANDONED VEHICLE HANDLING PROCEDURES

Form C of C 71-2085 Rev.-2, entitled "CLEVELAND POLICE TOW UNIT -
TOW REQUISITION" has been revised and shall be utilized in
connection with the removal of abandoned vehicles.

This form is divided into four sections:

Section #1    Pertains to the vehicle for which the tow is being
              requested and shall be fully completed by the officer
              requesting the tow.

Section #2    "AUTHORITY TO REMOVE VEHICLE FROM PRIVATE PROPERTY"
              shall be completed by the officer requesting the tow,
              only when the owner, manager, or lessee of the private
              property makes a complaint that a vehicle has been
              parked upon said premises in excess of 72 hours.  The
              owner, manager, or lessee shall be required to affix
              his signature on the designated line of the form.

Section #3    "TOW OFFICE USE ONLY - JUNKER DETAIL" shall be com-
              pleted only by the Tow Unit Junker Detail personnel.

Section #4    "RADIO DISPATCH" shall be completed by the Radio
              Dispatcher assigned to the Communications Control
              Center.  He shall make no entry in the box allocated
              to "PIN # ASSIGNED".  This box shall be completed by
              the computer operator that is assigned to the Tow Unit,
              at the time that the vehicle is entered into the NEOPIN
              Computer System.


PROCEDURES:

Complaints of abandoned vehicles shall be resolved by removal of the
vehicle; either by notification of the owner or by Police Tow or
when warranted by the condition of the vehicle through removal by a
contracting junk dealer, as follows:

A.  The Officer assigned to the complaint shall:

    1. Obtain the license number and vehicle identification number
       (VIN).

    2. Call the CCC or the District Station, and through the Computer
       Terminal Operator, obtain a listing and a check on the status
       of the vehicle.

    3. When there is no "Pickup" or "Stolen" status, mark the vehicle
       as the basis for a 72 hour recheck; and make every effort to
       contact the owner, particularly through inquiries in the vicinity.

CLE000574

Page Two

4. After expiration of the 72 hours, return to the scene and issue a "Notice of Violation" (Parking Ticket) for violation of Traffic Ordinance 9.0903 "Abandoned Vehicle".

   Parking Tickets shall not be issued to abandoned vehicles without plates and Step 5 shall be followed as soon as these vehicles are discovered.

5. Complete Tow Requisition Form C of C 71-2085 Rev.-2, Section #1 (original copy only) and forward it to the Tow Unit. In completing this form, the "Tow Unit Complaint #" shall be entered by the Tow Unit office.

B. The Officer assigned to the Tow Unit Junker Detail:

1. Shall make the follow-up investigation on each vehicle tow request, determining --

   a. Whether the vehicle is to be given to a contracting junk dealer; or
   b. Whether it should be impounded.

2. Shall then --

   a. If it is classified as junk per ORC Section 737.313, photograph the vehicle and assign it to a contracting junk dealer for removal; or
   b. If not within said description of a junk vehicle, cause the vehicle to be towed and impounded by the Police Tow Unit.

3. Shall complete Section #3 of Form 2085.

C. When the vehicle must be impounded, the Tow Unit personnel shall deliver the Tow Requisition to the CCC Radio Dispatcher.

D. The Radio Dispatcher shall --

1. Dispatch the POLICE Tow Truck to tow the vehicle to a Police Impound Lot.

2. Complete Section #4 of the Form 2085 and return it to the Tow Unit.

The Tow Unit shall maintain a reference file of these tow requisition forms and photographs, and shall prepare a weekly report listing the vehicles removed by contracting junk dealers with all the required information. This report shall be forwarded to the Chief's Office on each Monday.

GPOs 129-51, 4-68 and 11-68 are hereby rescinded.

By order of,

STEVE SZEREIO
ACTING CHIEF OF POLICE

# GENERAL POLICE ORDER

No. 44-71        HEADQUARTERS      December 10, 71 19

SUBJECT: USAGE OF REVISED TOW REQUISITION FORM
C of C 71-2085 -- ABANDONED VEHICLE
HANDLING PROCEDURES

TO THE MEMBERS OF THE DEPARTMENT

On December 13, 1971, the revised Tow Requisition Form
C of C 71-2085 and Abandoned Vehicle Handling Procedures
shall go into effect.

All members shall be governed by and shall comply with
these instructions and procedures which have been
prepared for individual distribution as an integral part
of this order.

Commanding Officers shall cause a copy to be issued to
each member in their Divisions, Districts or Units
and supplies are being forwarded for this purpose.

By order of,

STEVE SZERETO,
ACTING CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 43-71                    HEADQUARTERS  December 6,      '71

SUBJECT REINSTATEMENT OF RULE 86 - SECTION 3

TO THE MEMBERS OF THE DEPARTMENT

By order of the Acting Director of Public Safety, Rule

86 - Section 3 of the Manual of Rules is hereby reinstated.

The Firearms Proficiency Rating -- Days Off program

will therefore be resumed.

GPO 28-71 is hereby rescinded.


                        By order of,

                        STEVE SZERETO,
                        ACTING CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 42-71                    HEADQUARTERS  December 6,    71

SUBJECT OVERTIME REGULATIONS - GPO 27-71
       RESCINDED

TO THE MEMBERS OF THE DEPARTMENT

By directive of the Acting Director of Public Safety, OT
regulations established by a prior Safety Director's order
and contained in GPO 27-71 are hereby rescinded.

Members on Regular Duty shall accumulate no more
Overtime than needed for the efficient operation of the
Department and as necessary to satisfy all calls for
Police service.  Said OT shall be credited to the individual
and may be taken in equal time off at a later date upon
request of the member but only at the discretion of his
Superior or Commanding Officer who must first consider
the manpower needs for the period involved.

Limits upon the amount of Overtime that can be accumu-
lated and the length of time that Overtime can remain
unused shall be governed by the term reasonableness
and by the best interests of the Department.

Restricted Duty (RD) personnel shall not be permitted
to accumulate Overtime except those in essential assign-
ments directly related to the field operation of the
Department.

GPO 27-71 rescinded.

                              By order of,

                              STEVE SZERETO,
                              ACTING CHIEF OF POLICE

CLE000578

## GENERAL POLICE ORDER

No. 41-71                 HEADQUARTERS     December 3,     71    19

SUBJECT ROBBERY - SEX UNIT - DIVISION OF CRIMINAL INVESTIGATION

TO THE MEMBERS OF THE DEPARTMENT

A Robbery-Sex Unit has been activated in the Division of Criminal Investigation and shall consist of such members of that Division as designated and assigned by its Commanding Officer.

They shall serve as a clearing house of information and shall coordinate Police activity in the investigations of Robberies, Assaults to Rob, Purse Snatchings and Sex Offenses.

Personnel assigned shall conduct original investigations of all robberies of banks and other financial institutions.

They shall also conduct direct investigations whenever deemed necessary by the Officer in Charge of the Unit or Commanding Officer of the Division of Criminal Investigation.

All members of the Department shall submit all pertinent information on any of these crimes to this Unit, particularly any information that they may receive or develop relative to description and identity of possible suspects.

Police Ext. 432 and 433 shall be utilized for any telephonic communications.

By order of,
STEVE SZERETO,
ACTING CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 40-71                                    HEADQUARTERS November 19,          71

SUBJECT COMPLETED AUTO TOW REPORTS - FORM
C of C 71-174

TO THE MEMBERS OF THE DEPARTMENT

Whenever a member causes a vehicle to be towed by a
AAA tow truck, he shall complete the Auto Tow Report
Form C of C 71-174 as required by M 88-54 - May 21, 1954
and GPO 34-69 - December 18, 1969.

In completing this form, members shall supply all infor-
mation required by the Structured entries as listed on
the report.  Members shall also describe the condition
of the vehicle and its contents on the lines immediately
following the words "Personal Property in car".

Commanding Officers shall cause strict compliance with
this order.

By order of,

STEVE SZERETO
ACTING CHIEF OF POLICE

CLE000580

## GENERAL POLICE ORDER

NO. 39-71          HEADQUARTERS          October 7, 1971

SUBJECT: SUPPLEMENTARY OVERTIME RECORD KEEPING
         PROCEDURES

TO THE MEMBERS OF THE DEPARTMENT

~~Effective October 7,1971 and until a redesigned IBM~~
OT-Card is made available for timekeeping purposes
in this Department,all Districts and Divisions
shall reinstitute the use of the OT Card- C of C
71 OT-1 as follows:

1. One of these cards shall be completed every time
   a member works or takes overtime.

2. Entries must be accurate, and in recording over-
   time earned, the"Reason" must be specifically
   stated in terms of the nature of the incident
   or assignment together with the name of the
   principle person or complainant involved. When
   necessary the back of this card shall be util-
   ized.

3. Superior Officers shall approve the completed
   cards and shall be responsible for verification
   by diligent inquiry into the reason for the
   overtime worked.

4. Completed OT-1 Cards shall be kept on file at
   the District or Division office for one year.

The Commanding Officer of each District and Div-
ision shall personally review the overtime accum-
ulated by the individual members of his command;
and at the end of each month shall submit a report,
stating that he has done so and that said overtime
was necessary for the efficent operation of his
District or Division.

Continued on Page Two(2)

CLE000581

## GENERAL POLICE ORDER

No. 39-71          HEADQUARTERS          October 7, 1971

SUBJECT SUPPLEMENTARY OVERTIME RECORD KEEPING
PROCEDURES
         Page Two(2)

Exceptional cases in which the overtime appears
excessive shall be listed in the report together
with an explanation and the remedial action taken
thereon.

The Court Unit shall forward copies of the daily
Court Time Sheet to each District and Division by
9:00 AM the following day.

The use of the present IBM OT-1 Card shall be dis-
continued. A supply of the C of C 71 OT-1 Cards
are now available at the Supply Unit.

                    By order of,

                    LEWIS WM. COFFEY
                    CHIEF OF POLICE

CLE000582

## GENERAL POLICE ORDER

No. 38-71          HEADQUARTERS          September 22, 71
19___

SUBJECT: AMENDMENT TO PROCEDURES FOR DAILY SICK CALL
& MEDICAL TREATMENT OF MEMBERS BY THE
SAFETY DEPARTMENT MEDICAL BUREAU

TO THE MEMBERS OF THE DEPARTMENT

Procedures governing Sick Call and other vists to
the Medical Bureau for treatment shall be amended
as follows:

Whenever required, all members shall report to the
Medical Bureau between 8:00 AM and 10:30 AM on the
days that it is open.  This includes members re-
porting for "SICK CALL", as well as those already
on sick leave who are fulfilling their obligation
to report for treatment or for either convalescent
period or return to duty examinations.

Members reporting after 10:30 AM will be reguarded
as not having reported as ordered and shall be
subject to disciplinary action.

Whenever a member has notified the proper Superior
Officer of his Division, District or Unit that he
will report to the Medical Bureau on the next day
and then finds that he is too ill to report as re-
quired, he shall cause notification of the Medical
Bureau before 8:30 AM of the morning that he is
required to report.

Physicians shall be at the Medical Bureau between
8:00 AM and 12 Noon daily except Saturday, Sunday
and Holidays. Members requiring emergency treat-
ment of injuries shall report during these hours
to the Medical Bureau,

CONTINUED ON PAGE TWO(2)

CLE000583

## GENERAL POLICE ORDER

No. 38-71                    HEADQUARTERS September 22, 19 71

SUBJECT: AMENDMENT TO PROCEDURES FOR DAILY SICK CALL
& MEDICAL TREATMENT OF MEMBERS BY THE
SAFETY DEPARTMENT MEDICAL BUREAU

PAGETWO(2)

except in those cases of severe injuries requiring
immediate treatment at the nearest Hospital Emerg-
ency Room.

The Following GPO's are rescinded:

GPO 10-50
GPO 24-50
GPO 46-52

By order of

LEWIS WM.COFFEY
CHIEF OF POLICE

CLE000584

## GENERAL POLICE ORDER

37-71
NO.

September 20th,  71
HEADQUARTERS_____19___

SUBJECT: ARSON & SUSPECTED ARSON INVESTIGATIVE &
REPORTING PROCEDURES

PAGE THREE(3)

In those cases, the Police Arson Detail personnel
shall bear the responsibility to undertake an
investigation without delay.

Police Arson Detail Radio Call numbers are 9225
and 9226 and the Superior Officer in Charge 9202.
The Detail's Headquarters will be at the Juvenile
Unit Office- 2nd District Station, Police Exten-
sion 518, 519, 520 and 521.


By order of,

Lewis Wm.Coffey
Chief of Police

## GENERAL POLICE ORDER

No. 37-71                    HEADQUARTERS            September 20th, 71    19

SUBJECT: ARSON &SUSPECTED ARSON INVESTIGATIVE &
REPORTING PROCEDURES

### PAGE TWO(2)

As in all crimes, inquiries are of the greatest
importance and this aspect must be pursued at the
time of the orginal investigation. All possible
witnesses must be contacted, identified and quest-
ioned. Those who offer evidence or information of
value shall not be identified in the RC-1 report;
but, rather, shall be the subject of a seperate
Form 1 report, a clear copy of which shall be for-
warded to the Police Arson Detail.

Trace or real evidence found at the scene shall be
properly handled, tagged, and marked, and safe-
guarded as well as transferred by signed receipt
to preserve the chain of custody.

Evidence Technicians shall be called whenever
possible, if thers is any scientific evidence.
As far as possible all evidence shall be turned
over to one investigative unit or team for marking,
tagging and transfer to the Police Laboratory.

In the most serious fires, those wherein there is
loss of life. serious injury or great monetary
loss, if the Police Arson Detail is not at or
enroute to the scene, the Division of Criminal
Investigation shall be apprised and another
Detective team assigned. If no members of the
Police Arson Detail are on duty at the time, the
Officer in Charge or another member of that Detail
shall be contacted and notified by the Division of
Criminal Investigation.

Continued on Page#3

## GENERAL POLICE ORDER

37-71                                    September 20th, 71

NO._____    HEADQUARTERS_____19____

ARSON & SUSPECTED ARSON INVESTIGATIVE &

SUBJECT REPORTING PROCEDURES

TO THE MEMBERS OF THE DEPARTMENT

The Division of Criminal Investigation shall be
responsible for the coordination of all police
investigative activity on all arson and suspected
arsons, fraudulent burnings of property, and relat-
ed offenses. Division of Criminal Investigation
personnel shall be detailed to these specific
duties.

PROCEDURES:

When a Fire Department Battalion Chief or other
Fire Officer in Charge suspects arson at the scene
of a fire, he will notify the Fire Exchange which
in turn will notify the Communications Control
Center.

The CCC shall then assign a Zone Car and a Super-
ior Officer to investigate. If the evidence and
information developed establishes either the ele-
ments of an arson or related offense, or a well
founded suspicion of arson, an RC-1 report shall
be completed. These RC-1 reports shall be titled
"Arson" or "Suspected Arson" in accordance with
the weight of evidence and information developed.

A copy of each such report shall be forwarded to
the Police Arson Detail.  In all cases in which a
report is required, uniformed investigating officers
shall notify the Arson Detail or the Division of
Criminal Investigation of the incident.

Continued on Page#2

CLE000587

## GENERAL POLICE ORDER

No. 36-71                    HEADQUARTERS September 15,    71

SUBJECT: SUPPLEMENT TO GPO 55-71

WARRANT & WANT INFORMATION BY COMPUTER
INQUIRY PROCEDURE FOR CANCELLATION OF
WARRANT & WANTS

TO THE MEMBERS OF THE DEPARTMENT

Whenever any person is arrested on the basis of
a warrant or as a result of a want placed
against him, the Booking Officer shall notify
the personnel of the Warrant & Suspect Unit,
Police Line 227, without delay!

Upon notification that a wanted person has been
arrested, personnel of the Warrant & Suspect
Unit shall cancel the active warrant or want in
both the Computer files and manual office files.

Whenever a warrant is ordered returned by an
official of the Court, the police officer of the
Warrant Unit, that is so notified, shall cancel
the active warrant data in the Warrant &
Suspect Unit manual and Computer files.

By order of,

LEWIS WM. COFFEY
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 35-71                        HEADQUARTERS                        September 13    71    19

SUBJECT: WARRANT & WANT INFORMATION BY COMPUTER
INQUIRY — MODIFICATION OF GPO 22-64

TO THE MEMBERS OF THE DEPARTMENT

Information concerning all persons sought by
this Department on warrants or as a result of
RC-1 Suspect Wanted Reports, or Missing Person
Reports is now entered into computer on-line
files.  Effective September 14, 1971, members
shall utilize the Computer Inquiry method to
obtain this information.  Personnel equipped
with Radios shall make their computer inquiry
by Radio; and all members are encouraged to
make frequent use of this want check system in
all routine investigations.  Operation and
inquiry methods are contained in the "Computer
Terminal Operating Manual", a copy of which has
been distributed to each District, Division and
Unit that has a computer terminal.

As an integral part of this order, booking
procedures in GPO 22-64, under the title
"Division of Detention" are amended to enable
effective implementation of this new inquiry
method.  Copies of these amendments have been
prepared and forwarded to all Divisions, Districts
and Units for individual distribution.  Com-
manding Officers shall assure completeness of
distribution as well as familiarization and
implementation of these procedures by all
members under their command.

By order of

LEWIS WM. COFFEY
CHIEF OF POLICE

## GENERAL POLICE ORDER

NO. __34-71__          HEADQUARTERS __September 1,__ 19__71__

SUBJECT: _____BANK ALARM CAMERAS_____

TO THE MEMBERS OF THE DEPARTMENT

Effective immediately whenever a holdup has actually
taken place, the manager of the bank shall, after
making sure that the film has been completely run
through the camera, remove such film from the camera
and turn it over to the FBI.  If the manager is unable
to remove the film from the camera, he shall make sure
that the remaining film is completely run through the
camera, after which he shall turn the entire camera
over to the FBI.

The responsibility of the removal of the film and the
immediate processing will be assumed by the FBI.  They
shall assume the responsibility of maintaining the
chain of custody of the film.

Upon the availability of the copy film from the FBI,
and if it is a satisfactory photo, it will be shown to
all available detectives and uniform personnel, and to
witnesses at the robbery, to see if immediate identi-
fication can be made.  A projector is available in the
police Photo Lab if the film is 16mm.

The Commanding Officer of the Division of Criminal
Investigation and the FBI shall determine if the film
is to be released to the various news agencies.  All
news agencies receiving the film or photograph must
agree to either air or print the following:

    "If you recognize the wanted persons in this
    film or photograph, telephone the Cleveland
    Police Department - 621-1234 or the Federal
    Bureau of Investigation at 522-1400, at once."

CLE000590

# GENERAL POLICE ORDER

NO. 34671    HEADQUARTERS September 1, 19 71

SUBJECT : ___ BANK ALARM CAMERAS ___

Page Two

This must be insisted on for the benefit of the public.

The processing of the crime scene for prints and other physical evidence will be performed in its entirety by either the FBI or members of the Cleveland Police Forensic Lab depending on the processing team that is first on the scene.

GPO 19-63 is hereby rescinded.

By order of,

LEWIS WM. COFFEY
CHIEF OF POLICE

ks:TELETYPE

## GENERAL POLICE ORDER

No. _____ 33-71 _____          HEADQUARTERS _____ August 2, _____ 19__ 71

SUBJECT : ___RULE 103 - MANUAL OF RULES - RESCINDED

TO THE MEMBERS OF THE DEPARTMENT

The following correspondence from George W. O'Connor,

Director of Public Safety, is self-explanatory and member

shall govern themselves accordingly.

"Effective this date, July 30, 1971, Rule 103 of the

Manual of Rules is hereby rescinded. All members

shall make appropriate notation in their copies of the

Manual of Rules, noting the effective date."

By order of,

LEWIS WM. COFFEY,
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 32-71                    HEADQUARTERS_____ July 20,        71

SUBJECT RESPONSIBILITY FOR GUARDING OF PRISONERS
         AT HOSPITALS

TO THE MEMBERS OF THE DEPARTMENT

The following placement of responsibility and procedures
shall prevail whenever a prisoner, whose custody must
be maintained, requires hospitalization and for some
reason cannot be confined in the Metropolitan General
Hospital Prison Ward:

1. At the <u>time of the arrest</u>, the immediate responsibility
   for guarding the prisoner shall lie with the uniformed
   officers of the <u>District that made the arrest or the
   investigation</u>.

2. During <u>subsequent tours</u> of duty and except as herein-
   after provided, the basic responsibility shall lie with
   the <u>District wherein the hospital is located.</u>  This
   District shall be notified by the Officer in Charge of
   the District or Unit that initially arranged for the
   hospitalization of the prisoner.

   a. <u>In every case, Restricted Duty personnel shall be
      utilized for these guard duties.</u>

   b. <u>No Regular Duty member shall be so detailed unless
      there is no Restricted Duty man available.</u>

   c. <u>Restricted Duty personnel from another District shall
      be utilized before any Regular Duty man is used.</u>

(CONTINUED)

## GENERAL POLICE ORDER

No. 32-71        HEADQUARTERS       July 20,    71₁₉

SUBJECT: RESPONSIBILITY FOR GUARDING OF PRISONERS
AT HOSPITALS

- 2 -

3. When necessary, Policewomen shall be assigned to
   guard female prisoners.

During the day the Basic Patrol Commander through his
Coordinator - and at other times the O. D. - shall resolve
all questionable cases, remaining within these guidelines.

The Basic Patrol Coordinator shall examine the Daily Duty
Assignment Reports to verify compliance with this order.

By order of,

LEWIS WM. COFFEY,
CHIEF OF POLICE

## GENERAL POLICE ORDER

NO. 31-71                    HEADQUARTERS_____ July 14, ____ 71 19____

SUBJECT: UTILIZATION OF FORM 71-49 (PRISONER'S
RECEIPT) AND FORM 71-49A (PRISONER'S
RECEIPT FOR PROPERTY HELD IN EVIDENCE)

TO THE MEMBERS OF THE DEPARTMENT

On July 15, 1971, revised Forms 71-49 and 71-49A shall
become the official forms for Prisoner's Receipt and
Prisoner's Receipt for Property Held in Evidence.

As an integral part of this order, detailed procedures
have been prepared and forwarded to all administrative
units in sufficient number of copies for Roll Call instruc-
tional purposes and retention as a permanent reference.

Supplies of these forms are available at the Supply Unit.

By order of,

LEWIS WM. COFFEY,
CHIEF OF POLICE

GENERAL POLICE ORDER  31-71 ,                    July 14, 1971

SUBJECT:   UTILIZATION OF FORM 71-49 (PRISONER'S RECEIPT) and
           FORM 71-49A (PRISONER'S RECEIPT FOR PROPERTY HELD IN
           EVIDENCE.

On July 15, 1971, revised Forms 71-49 and 71-49A shall become the
official forms for Prisoner's Receipt and Prisoner's Receipt for
Property Held in Evidence.

A. The Form 71-49 shall be utilized as follows:

   1.   Every prisoner who has personal property taken from him for
        any reason except evidence shall be given a receipt Form
        71-49, properly completed.

   2.   All spaces to be completed are self explanatory and the
        Booking Officer shall be held responsible for the proper
        completion of the receipt.

   3.   Name, rank and badge number of arresting officers shall be
        entered by the Booking Officer.

   4.   Cash property shall always be designated as bills or change
        and the total entered.

   5.   Personal property shall include all items taken from the
        prisoner and unused spaces shall be lined out, so as to
        prevent a prisoner from making a fraudulent entry.

   6.   A prisoner shall sign the receipt in the presence of the
        Booking Officer and the Conveying Officers.

   7.   The Booking Officers shall sign the receipt in the presence
        of the prisoner and the Conveying Officers.

   8.   The Conveying Officers shall sign the receipt in the presence
        of the Booking Officer and the prisoner.

   9.   After the receipt has been completed, the property shall be
        placed in a Property Envelope - Form 69 or 70, or otherwise
        appropriately tagged.  An entry shall then be made in the
        Prisoner's Receipt Book, including the name of the prisoner
        and the enumeration of all items of property.

  10.   If a prisoner is released for any reason before being trans-
        ferred to the Jail Unit , he shall receipt for property
        returned to him by affixing his signature in the "Delivered
        to" column, after his name and enumerated property.

  11.   If the prisoner is released on Bond, the proper entry shall
        be made after the prisoner's name in the "Bond" column,  The
        officer at the Jail unit who accepts the Bond in lieu of the
        prisoner shall sign his name in the "Bond" column as a receipt
        for the Bond.

CLE000596

GENERAL POLICE ORDER  31-71                          PAGE TWO

12.  When prisoners with property are transferred, the
     "Delivered to" column shall continue to be signed by the
     receiving officer.

13.  If for any reason a prisoner is unable to sign his receipt,
     the Officer in Charge of the District or Division doing
     the booking shall sign in the space allocated for the
     prisoner's signature and state the reason for the prisoner's
     inability to sign.

B.  The Form 71-49A shall be utilized as follows:

   1.  Every prisoner, who has taken from him any property which is
       to be used as evidence or is presumed to be evidence, shall
       be given a receipt Form 71-49A, properly completed.

   2.  All spaces to be completed are self explanatory and the
       Booking Officer shall be held responsible for the proper
       completion of the receipt.

   3.  Name, rank and badge number of arresting officers shall be
       entered by the Booking Officer.

   4.  Cash property shall always be designated as bills or change
       and the total entered.

   5.  The Personal Property section shall be utilized to designate
       the property being held in evidence and the unused spaces
       shall be lined out so as to prevent a prisoner from making
       a fraudulent entry.

   6.  A prisoner shall sign the receipt in the presence of the
       Booking Officer and Conveying Officers.

   7.  The Booking Officer shall sign the receipt in the presence
       of the prisoner and Conveying Officers.

   8.  The Conveying Officers shall sign the receipt in the
       presence of the Booking Officer and the prisoner.

   9.  The officers finding the evidence held shall sign in the
       presence of the prisoner, Booking Officer and Conveying
       Officers.

  10.  If for any reason a prisoner is unable to sign his receipt,
       the Officer in Charge of the District or Division doing the
       booking shall sign in the space allocated for the prisoner's
       signature and state the reason for the prisoner's inability
       to sign.

GENERAL POLICE ORDER   31-71                              PAGE THREE

11.   After completion of the prisoner's receipt, the property
      to be held as evidence that is taken from a prisoner shall
      be entered in the Property Book completely and accurately.
      The property shall then be transferred to the proper Unit
      as determined by the type of the evidence, tests, and use
      to be made of it, insuring the proper chain of custody by
      obtaining the signature of the member who receives it.

12.   Whenever property is transferred, the Property Book shall
      be receipted by the receiving officer.  Similarly a receipt
      in the Property Book shall be obtained in the event that
      property, that is being held as evidence, is returned to
      the owner or to the prisoner prior to his transfer.

13.   If a partial return of property is to be made, the entry
      shall be rewritten so that only that property which is
      given to any one individual is listed and receipted for
      on the same line.

14.   Whenever possible, property held in evidence shall be
      placed in and forwarded in a Property Envelope - Form 68,
      and otherwise, appropriately tagged.

15.   Size and kind of evidence shall be the determinents of the
      method used to prevent contamination and insure the chain
      of custody.

   If for any reason a District or Division Commander desires, or
   an Officer in Charge believes it necessary, prisoner receipts
   for property, both Form 71-49 and 71-49A, can be made in dupli-
   ate so that a copy can be held at the place of booking to
   document the fact that the prisoner and the officers have
   signed the receipt form as required.

D.  Any officer who accepts a receipt for property under any condi-
    tion shall enter his initials immediately above or over the
    signature of the recipient of the property.

Memo 22-62, dated May 1, 1962 (Receipts for Property Held as
Evidence and Personal Property Taken from Prisoners), is hereby
rescinded.

                                    By order of,


                                    LEWIS WM. COFFEY
                                    CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 30-71      HEADQUARTERS      July 8,    19 71

SUBJECT: NEW NOTICES TO APPEAR (MOVING TRAFFIC CITATIONS)

TO THE MEMBERS OF THE DEPARTMENT

Effective 12:01 A.M., Saturday, July 10, 1971 Notices to
Appear (Moving Traffic Citations) containing court costs
and changing the hours of the Waiver Bureau are to be
issued by members of the Department to cited traffic
law violators.  These new Notices to Appear are numbered
212001 and up.  They are to be picked up at the Department
Supply Unit, 1600 East 19th Street, on Friday, July 9, 1971
between 7:00 A.M. and 1:00 P.M. by all Districts, Divi-
sions and Units needing them for distribution.

These new Notices to Appear are the only Notices to
Appear that are to be issued by members of the Department
after 12:01 A.M., July 10, 1971.  All old Notices to Appear,
partially used books and books not used, are to be returned
to the Data Processing Unit on or before July 30, 1971.

By order of,

LEWIS WM. COFFEY,
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 29-71          HEADQUARTERS          June 4,          71
                                                          19

SUBJECT: INSTRUCTIONS FOR PERSONAL-PORTABLE
RADIO TRAINING BULLETIN 12.2

TO THE MEMBERS OF THE DEPARTMENT

Training Bulletin 12.2 - Instructions for Personal-Porta-

ble Radio - has been prepared and a copy is being distrib-

uted to each member which he shall retain as a permanent

reference.

This Training Bulletin shall be considered an integral

part of this order and shall be observed by all members.

By order of,

LEWIS WM. COFFEY,
CHIEF OF POLICE

CLE000600

## GENERAL POLICE ORDER

No. 28-71          HEADQUARTERS_____ June 1,    71

SUBJECT: RULE 86 (3)

TO THE MEMBERS OF THE DEPARTMENT

The following directive was received from the Director
of Public Safety. George W. O'Connor:

"Effective this date, (May 27, 1971) Rule 86, Paragraph
(3), which states: "They shall be granted days off upon
attaining certain proficiency ratings on the range.  The
schedule for ratings and days off shall be established by
the Chief of Police." is hereby rescinded.

(Signed)                    George W. O'Connor "

All members shall govern themselves accordingly.

                            LEWIS WM. COFFEY,
                            CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 27-71                                    HEADQUARTERS                         June 1,        71
                                                                                              19

SUBJECT: _____ OVERTIME _____

The following order from the Director of Public Safety,
George W. O'Connor, is self-explanatory:

" 1.  Effective this date (May 27, 1971) and excepting com-
      pensatory time previously accrued, no member will
      accrue more than forty (40) hours of time due at any
      given time.

  2.  Members who are authorized to work overtime and
      who have more than 40 hours time due on the books
      must be given compensatory time off within thirty
      (30) calendar days of the date on which they received
      authorization to work or receive overtime.

  3.  Members with less than forty (40) hours time due may
      accrue overtime up to the forty-hour limit. Overtime
      earned beyond the limit shall be treated as in para-
      graph 2 above.

  4.  Members may add their time due to their annual fur-
      lough if they choose, provided the furlough is not
      extended by more than five days.

  5.  Superior Officers, in granting the taking of time due,
      must exercise such discretion as to assure that basic
      services of the Division are maintained during the days
      and hours of greatest need.

(Signed)                                   George W. O'Connor  "
All members of this Department shall govern themselves
accordingly.

                                 By order of,

                                 LEWIS WM. COFFEY,
                                 CHIEF OF POLICE

## GENERAL POLICE ORDER

NO. 26-71                    HEADQUARTERS               May 21,      71 19

SUBJECT: SUPPLEMENT TO GPO 39-68 - SPEEDING
VIOLATIONS IN SCHOOL ZONES & RESIDENTIAL
ZONES - NOT WAIVERABLE OFFENSES

TO THE MEMBERS OF THE DEPARTMENT

Traffic violations of speeding in school or residential
zones are NOT WAIVERABLE OFFENSES.

Officers issuing Notices to Appear for speed violations
in school zones and residential zones shall mark the
"YES" block after "Unusual Situation" at the bottom of
the face of the ticket.  This will assist the violator in
interpreting the wording of the instructions located on
the back of the citation.

By order of,

LEWIS WM. COFFEY,
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 25-71          HEADQUARTERS_____ May 11, 19 71

SUBJECT RESOLUTION 329-69 - SICK LEAVE PROCEDURES
MEMBER OF FAMILY ILLNESSES

TO THE MEMBERS OF THE DEPARTMENT

The following procedures shall be followed when sick leave
is taken because of serious illness in a member's family
as provided for in Board of Control Resolution 329-69:

1. There must be a "SERIOUS ILLNESS" of a member's
   family. Immediate family shall include the member's
   mother-in-law and father-in-law. (Note: Maternity
   cases generally are NOT a "SERIOUS ILLNESS").

2. The member must get permission for Sick Leave under
   Resolution 329-69 from his Superior Officer. It is in-
   cumbent upon the Superior Officer to grant this leave
   after determining that there is a serious illness in the
   member's immediate family.

3. A Pink Sick Slip (Disability Report C. of C. Surg. 3)
   must be made out as for any member reporting sick,
   and it must be called into the Safety Department Med-
   ical Bureau. The Pink Slip must be then forwarded to
   the Medical Bureau.

4. It will be the duty of the Superior Officer granting per-
   mission for the member to be off under Resolution
   329-69 to send a Form 1 departmental information
   report through channels to the Chief's Office with one
   copy being forwarded directly to the Medical Bureau.

(CONTINUED)

## GENERAL POLICE ORDER

No. 25-71          HEADQUARTERS          May 11,    71

SUBJECT: RESOLUTION 329-69 -- SICK LEAVE PROCEDURES
MEMBER OF FAMILY ILLNESSES

- 2 -

This will notify the Chief and the Medical Bureau of this
permission and absence of the member.

5. The maximum sick leave time allowed under Resolution
329-69 is three days within the State and five days out
of the State.

6. Before a member can return to work, he must

   a. Have a certificate or letter from the doctor attend-
      ing the member of his family in his or her serious
      illness. This letter or statement can be brief out-
      lining the nature and diagnosis of the illness.
   b. This letter or statement shall then be turned in to
      the Medical Bureau to Dr. D'Alessandro or an
      assistant physician.
   c. A Surgical Form 4 "Duty Orders" will be made out
      at the Medical Bureau and this slip must be returned
      to the member's District, Bureau or Unit before
      the member can return to work.

If there are any further inquiries, the member or his
Superior Officer can contact the Safety Department Med-
ical Bureau - Police Ext. 296, 297 or 298 or present
himself at the Medical Bureau, 2475 East 22nd Street,
basement level.

(CONTINUED)

CLE000605

## GENERAL POLICE ORDER

No. 25-71           HEADQUARTERS_____ May 11,  71

SUBJECT RESOLUTION 329-69 - SICK LEAVE PROCEDURES
MEMBER OF FAMILY ILLNESSES

- 3 -

General Police Orders 31-69 and 3-71 are hereby
rescinded.

By order of,

LEWIS WM. COFFEY,
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 24-71          HEADQUARTERS          May 10, 19 71

SUBJECT METROPOLITAN GENERAL HOSPITAL PRISON
WARD ADMISSION ARRANGEMENT PROCEDURES

TO THE MEMBERS OF THE DEPARTMENT

The following procedures shall govern all Metropolitan
General Hospital Prison Ward admission arrangements:

1. Whenever the prisoner is at a hospital, the doctor
   in charge at that hospital must contact the "CHIEF
   SURGICAL RESIDENT" at Metro General Hospital
   and obtain permission to make the transfer.

2. When a police officer must send or take a prisoner
   to the Prison Ward at Metro General Hospital, he
   shall first contact the "CHIEF SURGICAL RESIDENT"
   for permission.

This type admission would be necessary when a prisoner
at Central Prison or at a District Jail requires hospitaliza-
tion at Metro General Hospital and there is no doctor
present at the site of the detention.

For emergency medical treatment, prisoners shall be taken
to the nearest hospital under proper guard. In such cases,
if the prisoner requires hospitalization and can be trans-
ferred to Metro Prison Ward, Step # 1 must be followed.

Other Police Departments and Law Enforcement Agencies
must make their own arrangements and are governed by
the same procedures (Steps 1 & 2). Additionally, because of
(CONTINUED)

## GENERAL POLICE ORDER

No. 24-71        HEADQUARTERS_____    May 10,     71

SUBJECT METROPOLITAN GENERAL HOSPITAL PRISON
WARD ADMISSION ARRANGEMENT PROCEDURES

- 2 -

space limitations and the need for administrative control,
Metro General Hospital authorities also require that these
other Departments and agencies obtain permission from
the Cleveland Police Department to use the Prison Ward
facilities. The Officer in Charge of the Second District
shall discharge this responsibility and is the authority that
must be contacted for this purpose -- (621-1270 Ext. 512).
The Second District Officer in Charge shall be guided by
space availability and the priorities of seriousness of the
offense and the immediate needs of the Cleveland Police
Department.

Prisoner patients at Metro General Hospital Prison Ward
that require more nursing care, treatment or equipment
than is available in the Prison Ward will be placed on a
General Medical or Surgical floor or in an Intensive Care
Unit.

     If such prisoner is the responsibility of the Cleveland
     Police Department, the Second District shall be notified
     and they shall maintain the 24 hour guard duty.

     Other Police Departments or the Sheriff's Department
     with such prisoners at the Hospital shall be responsible
     for their security and shall furnish their own guards.

GPO 145-51 is hereby rescinded.

(CONTINUED)

## GENERAL POLICE ORDER

No. 24-71                    HEADQUARTERS_____ May 10, __71__
                                                              19

SUBJECT: METROPOLITAN GENERAL HOSPITAL PRISON
         WARD ADMISSION ARRANGEMENT PROCEDURES

- 3 -

Provisions of GPO 27-61 and 30-61 -- PRISONER REGISTRA-
TION FORM (CLEVELAND METROPOLITAN GENERAL
HOSPITAL) remain in effect and all members shall continue
to comply.

                              By order of,

                              LEWIS WM. COFFEY,
                              CHIEF OF POLICE

CLE000609

# GENERAL POLICE ORDER

No. 3-71          HEADQUARTERS          May 10,     71

SUBJECT BUMPER STICKERS AND POLITICAL SIGNS ON
        POLICE VEHICLES

TO THE MEMBERS OF THE DEPARTMENT

Per the administrative directive received in October 1970
which was then the subject of Departmental Notice 70-210,
all members are hereby notified that the posting of
political oriented bumper stickers and similar signs ad-
vocating political issues or candidates is strictly prohibited
and a violation of departmental rules. Any violation shall
be the subject of disciplinary action.

Commanding and Superior Officers shall cause frequent
inspections of police vehicles for any such signs.


                              By order of,

                              LEWIS WM. COFFEY,
                              CHIEF OF POLICE

CLE000610

## GENERAL POLICE ORDER

No. 22-71                    HEADQUARTERS                    May 5,           71
                                                                              19

SUBJECT: PERSONAL APPEARANCE OF MEMBERS

TO THE MEMBERS OF THE DEPARTMENT

Effective immediately, on the advice and instructions from
the Cleveland Law Department, the provisions of GPO
23-69, dated July 24, 1969, and paragraph 3, page one of
GPO 38-68, dated December 9, 1968, are unenforceable
and not legally defensible.  Accordingly, GPO 23-69 and
paragraph 3, page one of GPO 38-68 which specifies
limitations on hair dress, beards and mustaches are
rescinded.

Rule 58 of the Manual of Rules of the Division of Police
shall continue to be observed.  A new General Police
Order defining the limitations of hair dress within the
meaning of "well groomed" shall be forthcoming which
will comply with the legal opinion of the Law Department.

By order of,

LEWIS WM. COFFEY,
CHIEF OF POLICE

CLE000611

## GENERAL POLICE ORDER

NO. 21-71                    HEADQUARTERS_____ May 3,    71
19

SUBJECT: SUPPLEMENT TO GPO 33-70 - FIELD
TRAINING PROGRAM PROCEDURES

TO THE MEMBERS OF THE DEPARTMENT

Field Training Program Procedures, GPO 33-70, shall
be amended as follows:

In Section B - Assignment Procedures, Article # 2 is
superseded by new Article # 2:

> Assignments of Probationary Patrolmen shall be
> rotated among the Field Training Officers within
> the Unit or Platoon.  The frequency of this rotation
> shall be based upon the recruit's progress and the
> need for developement of a consensus in rating his
> performance.  In no event shall it be done more often
> than once a month, nor less often than once every
> 3 months.  A Rating Form shall be completed by the
> Field Training Officer upon each such occasion of
> rotation re-assignment.

By order of,

LEWIS WM. COFFEY,
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 20-71                    HEADQUARTERS                    April 29,    71
                                                                         19

SUBJECT : SECURITY OF PORTABLE RADIO
          (Supplement to GPO 39-70)

TO THE MEMBERS OF THE DEPARTMENT

When portable radios are issued to members of the

Department, each member must maintain personal

custody and keep his radio with him at all times.  Portable

radios shall not be left unattended in police vehicles or

anywhere else.

By order of,

LEWIS WM. COFFEY,
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 19-71                    HEADQUARTERS  April 12,    71 19

SUBJECT: CASE PREPARATION & PROSECUTION PROCE-
DURES FOR SECOND AND SUBSEQUENT
OFFENDERS - NOTIFICATIONS TO BUREAU OF
CRIMINAL IDENTIFICATION AND INVESTIGATION
(BCI) PER OHIO REVISED CODE (ORC) 109.60

TO THE MEMBERS OF THE DEPARTMENT

A number of misdemeanors in the Ohio Revised Code be-
come felonies upon second and subsequent offenses. A
list containing most of these sections has been provided
by the Ohio Attorney General through the BCI, and it
shall be considered an integral part of this order. ORC
Section 2923.012 is not on this list, but shall be included
and also subject to the following procedures. Section
2923.012 "Carrying Other Concealed Weapons" prohibits
the carrying of a bowie knife, dirk, blackjack, billyclub,
brass knuckles, or other weapons capable of inflicting
bodily harm concealed on or about his person and becomes
a felony whenever there has been a previous conviction
for any one of the offenses enumerated in it.

Case preparation and processing of all such cases shall
be governed by the following procedures:

Every member who learns of a prior offense with con-
viction on a person who has been arrested for violation
of any of these Sections of the Ohio Revised Code shall
make a written report.

> Whenever appropriate, this report shall be in the
> form of an additional RC-1 report made to the
> Report Center, or the information may be included
> in an original RC-1 report.
>                    (CONTINUED)

## GENERAL POLICE ORDER

NO. 19-71          HEADQUARTERS          April 12,          71
                                                          19

SUBJECT: CASE PREPARATION & PROSECUTION PROCE-
DURES FOR SECOND AND SUBSEQUENT
OFFENDERS - NOTIFICATIONS TO BUREAU OF
CRIMINAL IDENTIFICATION AND INVESTIGATION
(BCI) PER OHIO REVISED CODE (ORC) 109.60

- 2 -

In other cases, he shall submit a Form # 1 report
detailing the circumstances.

Copies of these reports shall be kept with the case file.
In addition, the Detective Division shall be notified ver-
bally and the name of the Detective that was notified
shall be included in the aforementioned reports.

The Detective Division shall have the responsibility for:

1. Proper case preparation.
2. Completion of the proper record checks through
   both the Record Section and the Detective
   Division Identification Unit.
3. Acquisition of felony warrants whenever there is
   a record of a previous conviction.

The Detective Division Identification Unit shall have the
responsibility of forwarding to the BCI, London, Ohio,
the fingerprint record and other information as required
by ORC 109.60.

Copies of the list of offenses are being distributed.

By order of,

LEWIS WM. COFFEY,
CHIEF OF POLICE

CLE000615

## GENERAL POLICE ORDER

NO. 18-71      HEADQUARTERS      April 9,      71
19

SUBJECT: DIVISION & DISTRICT LEVEL DISCIPLINARY PROCEDURES - (WARNING NOTICES & CHARGES HEARINGS)

### TO THE MEMBERS OF THE DEPARTMENT

Minor rules violations by members and employees of the Department may be the subject of District or Division level disciplinary action. This action may vary in form from a written warning by the member's immediate supervisor to a Charges Hearing before the District or Division Commander. In all cases, the incident and action thereon will become a permanent part of personnel records with copies placed in the individual's jacket.

### WARNING NOTICE PROCEDURE:

Minor rules infractions may be the subject of a written Warning Notice by any Superior Officer of higher rank than the offending officer.

Subject to the Commanding Officer's approval, the Warning Notice shall be a discretionary alternative to Departmental Charges whenever -- after considering the nature of the violation, the individual's record of conduct and performance and other extenuating circumstances -- the Superior Officer feels that it is the best and most beneficial course of action.

Written Warning Notices shall be prepared on a partially structured Form # 1 report form and format shall include:
(CONTINUED)

## GENERAL POLICE ORDER

NO. __18-71__          HEADQUARTERS_____ April 9, ____71__
                                                        19__

SUBJECT DIVISION & DISTRICT LEVEL DISCIPLINARY
       PROCEDURES - (WARNING NOTICES & CHARGES
       HEARINGS)

- 2 -

> Subject
> Observation & Investigation
> Violation
> Notification
> Endorsements

The Subject shall include the offender's name, rank or
job title and/or badge or identification number.

The Observation & Investigation section will document the
actions observed and facts developed by the reporting
supervisor or will list any enclosures such as:
> Copies of formal complaints
> Prior investigations
> Duty Reports
> Offending officer's report, if any

The Violation section will consist of two paragraphs. The
first stating the specific instruction, order, policy, proce-
dure or rule that was violated. The second paragraph will
briefly state the action(s) of which the violation consisted.

The offending officer shall always have the option to reply
with an explanation or defense in writing; or he may be
compelled to submit a Form # 1 report at the discretion
of the Investigating Officer. These reports shall be kept

(CONTINUED)

CLE000617

## GENERAL POLICE ORDER

No. **18-71**        HEADQUARTERS        April 9,    19 **71**

SUBJECT: DIVISION & DISTRICT LEVEL DISCIPLINARY
PROCEDURES - (WARNING NOTICES & CHARGES
HEARINGS)

- 3 -

in the permanent file with the Warning Notice.

The Notification section will state concisely the fact that
the offense was discussed with the offending officer(s) and
will briefly record any reply he might wish to document.
The last paragraph of this section will consist of the hand
written time, date and signature of the offending officer(s)
as a receipt for the third copy of the Disciplinary Notice.

The Endorsement section will be for the required en-
dorsements of each level of command, Sector, Platoon,
District or Division. These supervisors, officers in
charge and commanders may approve, disapprove,
comment or afix their signature as evidence of command
notice.

The second copy of the report shall be kept on file in the
District or Section. The original copy will be forwarded to
the Internal Affairs Section for staff review and then to
the Personnel Unit of the Chief's Office to become a per-
manent record in the offending officer's personnel file.

A sample of a completed Warning Notice shall be forward-
ed to all for administrative use.

(CONTINUED)

CLE000618

# GENERAL POLICE ORDER

No. 18-71        HEADQUARTERS_____ April 9,    71

SUBJECT DIVISION & DISTRICT LEVEL DISCIPLINARY
        PROCEDURES - (WARNING NOTICES & CHARGES
        HEARINGS)

– 4 –

## IMMEDIATE COMMAND LEVEL DISCIPLINARY (CHARGES) HEARINGS

Whenever charges are preferred, the District or Division
Commander may, in his own good judgement and with the
acquiescence of the offending member, conduct the
Hearing at the District.

Penalties may vary from a reprimand to a maximum of
the cancellation of two vacation days.

In case of flagrant violations, habitual offenders and when
opted by the offender, charges shall be referred to the
Chief of Police for the Hearing.

In every instance complete reports must be forwarded to
the Chief's Office to become an official part of the
member's personnel file.

By order of,

LEWIS WM. COFFEY,
CHIEF OF POLICE

C OF C. FORM 71-1

# POLICE DEPARTMENT
## CLEVELAND, OHIO
### DEPARTMENTAL INFORMATION

March 12, ___ 19 71

DIST. 5 ZONE

EXAMINED BY_____ RANK_____                    _____19____

FROM    John J. Roe, Sgt.           TO    John Jones, Lt.

SUBJECT    WARNING NOTICE, Ptl. John Doe #0000 & James Jackson #000

COPIES TO

---

OBSERVATION/INVESTIGATION

        At 3:30 PM, March 11, 1971, while assigned supervisor of Squad 1
on the first platoon and monitoring the Police Radio, I noted that
Car 531 had failed to respond to the third broadcast of an assignment
directed to them.

        At 3:33 PM, March 11, 1971, I observed Ptl. Doe & Jackson, assigned
to Car 531, entering the locker room.  I questioned them as to their
assignment and was informed that they had been on a disturbance for the
past hour.  I asked them why they had not responded to the dispatcher's
call since they had a radio in good working order.  They had no valid
excuse.

        Copies of my Daily Report for January 12, 1971 and January 20, 1971
are attached and show that these same two officers had been instructed
on both of those days for being delinquent in the same manner.

VIOLATION

        Rule 44(3) "They shall promptly acknowledge and respond to all
calls directed to them by the Radio Dispatcher."

        Specification:  On January 12, 1971, January 20, 1971 and March 11,
1971, Patrolmen Doe & Jackson failed to comply with Rule 44(3) by
ignoring the repeated calls of the Radio Dispatcher at the termination
of their tour of duty.

NOTIFICATION

        At 8:00 AM, March 12, 1971, I discussed this report with Patrolmen
Doe & Jackson.  They had no reasonable explanation for these delinquencies.
The proper radio procedures were reviewed with them in detail and I am
assured they are now aware of their duties and responsibilities concerning
prompt response to the Radio Dispatcher's call for their car.

        These officers had no remarks they wished to document.

2:55 pm MAR. 12, 1971  John Doe #0000, James Jackson #000

ENDORSEMENTS

        John J. Roe, Sgt.

CLE000620

## GENERAL POLICE ORDER

NO. 17-71                     HEADQUARTERS April 7, 71

SUBJECT DECENTRALIZED CAR WASH PROGRAM - NEW CONTRACT

TO THE MEMBERS OF THE DEPARTMENT

The new Decentralized Car Wash Program will go into effect April 12, 1971. There are three locations which shall be utilized by the various Districts, Bureaus and Divisions as follows:

Pearl Brookpark Car Wash, Inc., at 5133 Pearl Road, Cleveland, will wash sedans and station wagons assigned to the 1st and 2nd Districts and such other vehicles that originate at these Districts or are assigned to such general location for duty. The hours for washing police vehicles shall be Monday thru Friday, 8:30 AM to 5:30 PM.

Super Clean Auto Wash, Inc., at 14709 Kinsman Road, Cleveland, will wash sedans and station wagons assigned to the 4th District, certain cars of the 5th District (to be designated by the District) and such other cars that originate at the 4th and 5th Districts or are assigned to such general locations for duty. The hours for washing police vehicles shall be Monday thru Friday, 8:00 AM to 6:00 PM.

Mr. Magic Auto Wash, at 1851 Carnegie Avenue, Cleveland, will wash sedans and station wagons assigned to the 3rd District, 6th District, certain cars from the 5th District (to be designated by the District), and those cars emanating from Central Station and the Traffic Bureau.

(CONTINUED)

## GENERAL POLICE ORDER

No. 17-71                    HEADQUARTERS        April 7,        71

SUBJECT: DECENTRALIZED CAR WASH PROGRAM - NEW CONTRACT

- 2 -

The hours for washing police cars shall be Monday thru Friday, 8:00 AM to 6:00 PM., and Sunday, 8:00 AM to 1:30 PM.  Please note the difference in days at this location.

Vehicles are to be washed no more often than once each week.

No Department of Public Safety vehicle is to be washed after April 9, 1971, at Freeway Auto Wash.

All previous conflicting Departmental Orders and Notices are rescinded.

By order of,

LEWIS WM. COFFEY,
CHIEF OF POLICE

CLE000622

## GENERAL POLICE ORDER

NO. 16-71        HEADQUARTERS March 31        71

SUBJECT REVISED PROCEDURES FOR DELLIVERY AND
DISPENSING OF GASOLINE, OIL AND ANTI-
FREEZE AT DISTRICT STATIONS

responsible for proper completion of these
disbursement forms.  At the end of each tour
of duty, this officer shall sign and forward
the completed form through channels to the
office of the Director of Public Safety.

GPO 45-53 is hereby rescinded.  Old forms and
registers shall be sent to the Supply Unit.

By order of,

LEWIS WM. COFFEY
CHIEF OF POLICE

CLE000623

## GENERAL POLICE ORDER

No. 16-71            HEADQUARTERS March 31, 71

SUBJECT REVISED PROCEDURES FOR DELIVERY AND
DISPENSING OF GASOLINE, OIL AND ANTI-FREEZE
AT DISTRICT STATIONS

TO THE MEMBERS OF THE DEPARTMENT

Effective April 1, 1971 the following procedure
shall govern the delivery and dispensing of
gasoline, oil and anti-freeze at District Stations.
The 3rd District and the facilities at East 19th
& Payne Avenue are excepted.

### DELIVERY TO DISTRICTS

The Division of Motor Vehicles will deliver the
gasoline, oil and anti-freeze to the Districts in
bulk quantities. The driver will present two
dray tickets for signature. He will retain the
original and the Officer in Charge of the
Station shall forward the copy through channels
to the Office of the Director of Public Safety.

### DISPENSING GAS AND OIL

A yellow "Daily Disbursement Record" form shall
be utilized to record all disbursements of gas,
oil and anti-freeze to police cars and other city
vehicles. In each case the driver shall furnish
the information necessary for a complete and
accurate entry, including the name of the
Department of non-police recipients.

The Commanding Officer shall designate the
Officer in Charge of the Station or another
officer on each platoon to supervise and be

CONTINUED

## GENERAL POLICE ORDER

No. 15-71        HEADQUARTERS March 31,    71

SUBJECT SUPPLEMENT TO GPO 14-71--
REQUISITION FORMS C of C 71-64
STANDARD & EMERGENCY ORDERING PROCEDURES

TO THE MEMBERS OF THE DEPARTMENT

The following information shall be included on
Requisition Forms C of C 71-64 when ever ap-
plicable and in all cases of expendable items
and supplies:

1. The amount on hand at the beginning of the
   previous year (e.g. 1970)
2. The amount used during the previous  year
(e.g.1970).
3. The amount on hand at the beginning of the
   current year.
4. The amount used so far in the current year.
5. The amount presently on hand.
6. Anticipated lifetime or expenditure of the
   items being requisitioned.

The Officer in Charge of the Unit shall sign the
form just as he does on Form #1 reports and the
Commanding Officer  shall affix his signature in
the space provided at the lower right hand corner.

In addition to GPO 8-68, GPO 7-69 is hereby
rescinded.

By order of,

LEWIS WM. COFFEY
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 14-71                    HEADQUARTERS March 30,         71.

SUBJECT REQUISITION FORMS C of C 71-64 --
STANDARD & EMERGENCY ORDERING PROCEDURES

PAGE (2)

All emergency requisitions for either equipment,
supplies or services must be approved by and
arranged through the Chief's Office.  In no case
may any member  initiate a purchase or services
transaction without first obtaining this clear-
ance.

GPO 8-68 is hereby rescinded.

By order of,

LEWIS WM. COFFEY
CHIEF OF POLICE

CLE000626

## GENERAL POLICE ORDER

NO. 14-71          HEADQUARTERS March 30,          71 19

SUBJECT: REQUISITION FORMS C of C 71-64---
STANDARD & EMERGENCY ORDERING PROCEDURES

TO THE MEMBERS OF THE DEPARTMENT

~~Requisition Forms C of C 71-64 shall be utilized~~
to obtain material or services. Complete infor-
mation must be included on the form in order
that the  Division of Purchasing & Supplies  can
intelligently handle bids and purchases.

In every case, the item must be described with
specific details as follows:

1. Type, name, and grade of item or service.
2. Model number and color, if pertinent;
   catalogue number, if available; and any
   other necessary descriptive information.
3. Purchase price.
4. Name and address of supplier.

To facilitate deliver, the delivery site must be
specifically described on the Requisition Form
by address, floor and room number, etc..

Whenever in doubt as to proper descriptions of
items, or any other matter concerning the pre-
paration of the requisition, members shall
contact the Purchasing Division for advice and
direction.

Routine and non-emergency requisitions shall be
forwarded by Departmental mail through normal
channels to the Chief's Office. When necessary,
these shall be accompanied by a separate Form #1
report outlining the need or justification.

(Continued)

## GENERAL POLICE ORDER

No. 13-71                    HEADQUARTERS_____ March 19,    71_19___

SUBJECT NEW RADIO CALL NUMBERS FOR POLICE
VEHICLES

TO THE MEMBERS OF THE DEPARTMENT

A list of the new radio call numbers for police vehicles is
being distributed to each District, Division and Unit. They
shall the official radio call numbers for the police depart-
ment.

These call numbers serve to set forth the basic duty
assignment or responsibility of the respective radio-equip-
ed units together with the District and Zone or Unit to which
they are assigned.

Except temporarily and for good cause, the approval of the
Chief shall be required:

    (1) to adopt or use a different or new number.
    (2) to alter the duty responsibility or basic function of
        any Unit listed in this schedule.

Whenever such a temporary change is made, the initiating
Officer shall inform the Officer in Charge of the Commun-
ications Control Center, and in addition he shall forward a
report through channels to the Chief's Office.

In their Radio broadcasts, Base Stations at District Head-
quarters shall identify themselves with the term "Base",
followed by the District number; eg:

      Base 6 to Car 623
      Base 2 to Car 211

All members shall continue to strictly comply with the
provisions of Rule 4 - Section 21 of the Manual of Rules
and G. P. O. 39-70.        By order of,

                    LEWIS WM. COFFEY,
                    CHIEF OF POLICE

CLE000628

GPO 12-71                                    March 19, 1971
NOTICES OF VIOLATION (PARKING TICKETS) --
AFFIDAVIT COMPLETION PROCEDURES


Effective March 22, 1971 Notices of Violation (Parking Tickets)
shall be signed and sworn to before an officer of the Department,
sworn as a deputy clerk of the court, in each District and Unit
of the Department before such Notices of Violation are forwarded
by locked box to the Data Processing Unit.

All members of the Department upon being issued a book of Notices
of Violation from a District, Division or Unit shall:

1. Complete the face sheet receipt by writing his name, rank, unit
   of assignment, and the date received in the spaces allotted for
   this information. He shall then sign this receipt and forward
   it to the Data Processing Unit by locked box without delay.

2. When issued, the Notice of Violation shall be correctly and
   legibly completed. The correct ordinance violation number must
   be inserted in the oath section at the bottom of the Notice in
   the space following the words "In Violation of Ordinance O."
   This must correspond with the traffic violation block as
   checked.

3. Issuing officers, either during their tour of duty or at the
   end of their tour of duty, shall be sworn and shall swear to
   the information on the Notice according to the following
   procedure:

   a. The officer-deputy clerk shall examine for legibility,
      completeness, and correctness each Notice presented to
      him for swearing. He shall cause the issuing officer
      to correct the Notice of any defects if the defects are
      correctable. He shall then administer the oath as
      follows:

      "Please raise your right hand."

      "Do you solemnly swear that the testimony you are about
      to give, in the matter before the Court, to be the
      truth, the whole truth, and nothing but the truth as
      you shall answer to God."

      "Please say: I do."

   b. The issuing officer shall respond with "I do".

   c. The officer-deputy clerk shall sign his name on the
      line above the words "Deputy Clerk" on the Notice.
      The Notice of Violation is now an affidavit.

CLE000629

CLE000630

GPO  12-71                                    Page Two

> When there are defects in the Notice that are not
> correctable, the oath shall not be taken and the
> affidavit not completed.  <u>The issuing officer shall
> explain the discrepancies in a Form #1 report which
> shall be forwarded through regular channels with
> the defective Notice of Violation.</u>

4. The issuing officer shall take the Notice of Violation
   affidavit and place it into the locked box for forwarding
   to the Data Processing Unit.  This must be done either
   during or at the end of his tour of duty.

   The officer in charge of the Data Processing Unit shall:

   a. Maintain a file of Notice of Violation book receipts
      of Notice of Violation books issued.

   b. Process the issued Notice of Violations from time of
      receipt via locked box until final disposition.

   c. Obtain warrants of arrest for delinquent listed owners
      of vehicles who have violated the parking laws of the
      City of Cleveland.

GPO 24-67 titled "Custody and Control of Notice to Appear and
Notice of Violation" is in full force and effect and is not
modified by this order.

GPO 14-68 is hereby rescinded.

                              By order of,


                              LEWIS WM. COFFEY
                              CHIEF OF POLICE

CLE000631

INSTRUCTION SHEET
G.P.O. 12-71

DO NOT FOLD, SPINDLE
OR MUTILATE THIS CARD

Check when signs are
required and in place

Departmental Notice
71-34 (1971)

THE STATE OF OHIO
CUYAHOGA COUNTY
IN THE
CLEVELAND MUNICIPAL COURT
} SS P00014

THE UNDERSIGNED BEING DULY SWORN, UPON HIS OATH SAYS

| ON THE | MONTH | DAY | YEAR | | H | 3:15 |
|---|---|---|---|---|---|---|
| | 1 | 27 | 71 | | | |

AT (PLACE) 2001 PAYNE AVE

| MAKE | LICENSE NUMBER | YEAR | STATE |
|---|---|---|---|
| FORD | ZZ-999 | 71 | OHIO |

IN THE CITY OF CLEVELAND IN SAID COUNTY AND STATE WAS
PARKED CONTRARY TO LAW GOVERNING.

SIGNS POSTED

| | |
|---|---|
| ☐ BUS STOP | ☐ ABANDONED 72 HRS |
| ☐ CAB STAND | ☐ AWAY FROM CURB |
| ☐ CITY PROPERTY | ☐ CROSSWALK |
| ☐ FIRE HAZARD | ☐ DOUBLE PARKED |
| ☐ FIRE STATION | ☐ DRIVEWAY WITHIN 6' |
| ☒ NO PARKING ANYTIME | ☐ EXPIRED METER ] METER NO. 1234 |
| ☐ OVERTIME PARKING | ☐ FIRE HYDRANT |
| ☐ THEATER EXIT | ☐ HAZARDOUS PLACE |
| ☐ TRUCK ZONE | ☐ INTERSECTION |
| ☐ STREET CLEANING | ☐ KEY IN CAR |
| ☐ RUSH HOUR | ☐ TREELAWN |
| ☐ SNOW EMERGENCY | OR DRIVEWAY BETWEEN CURB AND SETBACK |
| | ☐ SIDEWALK |

Meter No.

The Block Checked and
Violation Ordnance
Number MUST Correspond

DATE OF ISSUE
P00014 TICKET NUMBER
ZZ-999 LICENSE NUMBER

☐ OTHER
☐ REMARKS:
☐ COMPLAINT

IN VIOLATION OF ORDINANCE NUMBER 9.0244

SWORN TO BEFORE ME THIS DAY OF 19

MUST be inserted only
as shown AND NOT

ZZ-999

OATH SECTION →

| OFFICER | NUMBER |
|---|---|
| | |

DEPUTY CLERK

NOTE:
(TO FASTEN IN BOOK AT THIS END)

CLE000632

## GENERAL POLICE ORDER

No. 11-71          HEADQUARTERS          March 12,          71
                                                            19

SUBJECT: SUPPLEMENT TO GPO 39-70 -, COMMUNICATIONS
COORDINATION & CONTROL PROCEDURES FOR
MAJOR POLICE INCIDENTS

TO THE MEMBERS OF THE DEPARTMENT

The following procedures shall govern police activity in all
incidents of a serious and widespread, or urgent and
hazardous nature which involved patrol or investigative
units from more than one District or Unit that are nor-
mally on different Radio channels.

Whenever a civilian Radio Dispatcher learns of such a
major incident, either impending or commenced, he shall
immediately notify the Superior Officer on duty and in
charge of the Communications Control Center (CCC).

The Sergeant or Lieutenant in charge of the CCC shall
then assume the responsibility for all Radio Dispatch
operations connected with the incident. By a simulcast
on all channels, he shall cause all Units in the Districts,
Detective Division or Task Force that are, or will be,
involved to switch to Channel 7, and they shall comply.
(Channel 7 shall be used for this purpose until Channel
8, the planned City-wide Major Emergency Channel,
becomes operational at some future date.)

This Superior Officer in the CCC shall then personally
dispatch assignments and coordinate communications
activities. In this function his authority shall remain
subordinate to the Field Commander who shall retain

(CONTINUED)

CLE000633

GENERAL POLICE ORDER

No. 11-71            HEADQUARTERS_____ March 12, 南

SUBJECT SUPPLEMENT TO GPO 39-70 - COMMUNICATIONS
COORDINATION & CONTROL PROCEDURES FOR
MAJOR POLICE INCIDENTS

- 2 -

control at the scene with the full responsibility and author-
ity for the filed activity and the decisions and orders that
conditions make necessary.

The Superior Officer in Charge of the CCC shall effect
notification of the ranking officer in the District concerned.
The ranking District Officer shall assume the Field Com-
mand responsibility. In operations of great magnitude,
this direct command responsibility may ascend through
the District Commander or Officer of the Day, Commanding
Officer of the Patrol Division and Deputy Chief to the
Chief himself.

When the police operation is completed, all police units
shall revert to their regular Radio Communication
Channel.

By order of,

LEWIS WM. COFFEY,
CHIEF OF POLICE

# GENERAL POLICE ORDER

NO. 10-71           HEADQUARTERS____March 11,____19 71

SUBJECT: JUVENILE COURT FILING PROCEDURES (AMENDED) --
         JUVENILE COURT LIAISON OFFICER

TO THE MEMBERS OF THE DEPARTMENT

Effective March 15, 1971, the green, three page
Cuyahoga County, Juvenile Court Police Complaint Form
shall be replaced with a new yellow, one page form.
The Supply Unit will stock these forms and initial
supplies will be distributed to all Districts,
Division and Units.

This new form necessitates amendments to the original
Juvenile Court Filing Procedures as contained in
GPO 36-70.  The principal changes occur in Step #3.

This revised procedural order supersedes the original
GPO 36-70 and shall be reproduced in quantity and
forwarded to all Districts and Units.

Commanding Officers shall cause issuance of one copy
to each member.  They shall also cause sufficient Roll
Call instruction  as needed to assure compliance.

General Police Order 36-70 is hereby rescinded.

By order of,

LEWIS WM. COFFEY
CHIEF OF POLICE

ks:TELETYPE

GPO  10-71                                      March 11, 1971
JUVENILE COURT FILING PROCEDURES (AMENDED) --
JUVENILE COURT LIAISON OFFICER

There shall be a Police-Juvenile Court Liaison Officer.  He
shall file Juvenile Complaints for the entire Department --
Juvenile Unit, Women's Unit and Detective Division included.
He shall assist the Prosecutor and cause issuance of subpoenas
as required.

Members who investigate juvenile crimes and apprehend juvenile
offenders are relieved of the responsibility of personally
filing routine Juvenile complaints and of appearing for the
court hearing, unless subpoenaed.

However, nothing shall prohibit the personal appearance at
Juvenile Court by the arresting or investigating officer to
either file a Juvenile complant or to attend and testify at the
hearing.  This action should be taken in complicated and some
other serious cases.  In this event, the liaison officer shall
be so notified.

In accord with these new and modified responsibilities, all
members shall comply with the following Juvenile Complaint
Filing Procedures:

1.  Whenever a member apprehends a juvenile offender or receives
    a citizen's complaint of a crime or chargeable misconduct by
    a known juvenile suspect, he shall obtain all necessary
    information on each such juvenile.  This information is
    required to complete reports and provide essential information
    to Juvenile Court.  In addition to details of the incident, it
    shall include:

            Name, address, race, sex, age, D.O.B., nicknames,
            mother's and father's name -- and the name and address
            of the legal guardian or other individual (other than
            the natural parents) with whom the juvenile may be
            living.

2.  Pink 127 Arrest Cards shall be completed on each juvenile
    apprehended or upon whom a complaint will be filed.

3.  In every case when a complaint is to be filed in Juvenile
    Court, the arresting or investigating officer shall complete
    the yellow Cuyahoga County Juvenile Court Police Complaint
    Form in its entirety, with particular attention to the
    following entries:

    (a)  After inserting his name on the line provided, the
         arresting officer shall enter his furlough classifi-
         cation and V-Day schedule.  Hearings may then be
         scheduled for regular working days.

CLE000636

GPO 10-71                                          Page Two

The complaint number, zone and date of occurrence must be entered.  GPO 5-65 requires a RC-1 report to be telephoned to the Report Center in all cases of juvenile arrests.

(b)  The "Details of Offense" section shall be used to report information not included in the original RC-1 report.  Important details that should be included in cases of multiple arrests for auto theft include:  whether the subject was driving the auto, who stole the auto, and who was trespassing in the auto.

(c)  The "Party Admits" or "Party Denies" section shall be specific.  In the case of an auto theft, proper entries would be:  "Party Admits stealing" or "Party Admits operating" or "Party Admits trespassing in the auto" or "Party Denies stealing", etc.

In cases of admission of guilt by the arrested party, subpoenas will not be issued for the appearance of the arresting officer.

Subpoenas will be issued in cases of denial.  Should the juvenile admit the commission of the crime to the arresting or investigating officer and at a later date deny the act to his Probation Officer or other court official, it will be necessary to subpoena the arresting officer to testify at the hearing.

(d)  The "List of Witnesses" section shall be carefully completed to enable the liaison officer to issue subpoenas for all concerned parties.

(e)  All items of physical evidence shall be listed along with the place of custody, each properly associated with the witness who will present it.

4.  One copy of the Pink 127 arrest card and the yellow Cuyahoga County Complaint Form shall be forwarded to the Juvenile Unit without delay.  The Juvenile Unit will then forward them to the Juvenile Court.

5.  The officer shall phone the crime or a Juvenile Complaint to the Report Center giving all of the required information on the Juvenile, along with a detailed description of the offense committed.  This will enable the liaison officer to make a proper filing at Juvenile Court.

CLE000637

GPO  10-71                                    Page Three

He shall include in this report that the arrest slip and
the yellow Cuyahoga County Complaint Form has been
completed and forwarded to the Juvenile Unit.  If, for
any reason, the juvenile is not to be filed upon, this
notation must be included in the RC-1 report.  In this
latter instance, the yellow Cuyahoga County Complaint
Form is not required.

The disposition of the juvenile, whether taken to the
Detention Home, released to the parents, or any other
disposition, shall also be included in the RC-1 reports.

6.   Upon receipt of the properly completed reports, the liaison
     officer will proceed with the filing.  When the filing has
     been completed, the liaison officer shall return the Pink 127
     arrest card to the arresting officer, with the notation,
     "Filed on for HB & L or A & B", or whatever crime is involved.
     He shall also indicate on this form the date of the filing
     and the date of the court hearing.

     Upon receiving the arrest slip with this information, the
     arresting officer shall call a Clean-Up Report to the Report
     Center, using the original complaint number.

     Under no circumstances shall any citizen be referred to
     Juvenile -Court to file a juvenile complaint unless the crime
     report has been phoned to the Report Center, and the citizen
     has all of the required information for a filing.

     The liaison officer can be reached on Police Line 236 or by
     calling Juvenile Court at 771-8400, Ext. 248.

                                   By order of,


                                   LEWIS WM. COFFEY
                                   CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 9-71        HEADQUARTERS     March 10,     19 71

SUBJECT: VISITATION RIGHTS OF PRISONERS WHILE
HOSPITAL PATIENTS -- CONTROL PROCEDURES

TO THE MEMBERS OF THE DEPARTMENT

Visitation rights of prisoners that are confined in the
Prison Ward at Metropolitan General Hospital or confined
in other hospitals and under Police guard, as well as
those arrested and undergoing treatment at Medical
Emergency Rooms, shall be governed by Rule 7 - Section
2 and Rule 8 - Section 7 of the Manual of Rules.

Rule 7 - Section 2
"No person, not an officer or member of the Division of
Police or of the City Hospital Staff, shall be permitted
to enter the prison ward or to visit or communicate with
a prisoner unless such person presents a permit issued
by the Chief of Police or the officer in charge of the
Bureau of Detectives."

Rule 8 - Section 7
"No person, not an officer or member of the Division of
Police, except a physician, near relative or spiritual
or legal advisor of a prisoner, shall be permitted to
enter the prison for the purpose of communicating with
or visiting any prisoner."

No member shall allow any person named in Rule 8 -
Section 7 or anyone else to visit any prisoner in any
Hospital or Emergency Room without the permission of
the Officer in Charge of the General Investigation Section
(CONTINUED)

# GENERAL POLICE ORDER

NO. 9-71                    HEADQUARTERS, March 10,    71 19

SUBJECT: VISITATION RIGHTS OF PRISONERS WHILE
HOSPITAL PATIENTS - - CONTROL PROCEUDRES

- 2 -

of the Detective Division or the Officer of the Day in
charge of the Department at the time.

Hospital authorities shall be informed of the prisoner
status of the patient immediately following his arrest
or placement into their medical care.  This shall be
the responsibility of either the arresting or transporting
officers, dependent upon which the situation applies.

Hospital visiting regulations and schedules shall be
observed insofar as applicable and possible.

By order of,

LEWIS WM. COFFEY,
CHIEF OF POLICE

CLE000640

## GENERAL POLICE ORDER

No. 8-71          HEADQUARTERS    March 9,    1971

SUBJECT: DRUG ABUSE INFORMATION - -
DETECTION AND ARREST PROCEDURES
DEPARTMENTAL TRAINING BULLETIN 12.1

TO THE MEMBERS OF THE DEPARTMENT

A Training Bulletin 12.1 containing Drug Abuse Information
and Procedures governing the arrest and handling of
offenders and evidence has been prepared for distribution
to each member. Members shall become thoroughly
familiarized with its contents and shall comply with its
procedure provisions.

Commanding Officers shall cause distribution to all
members, each of whom shall retain his copy as a
permanent reference.

By order of,

LEWIS WM. COFFEY,
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 7-71          HEADQUARTERS.      March 3.      7⅙

SUBJECT : ___ SNOW EMERGENCY PLAN

TO THE MEMBERS OF THE DEPARTMENT

The purpose of the Snow Emergency Plan is to coordinate
police efforts to maintain traffic flow conditions as near
normal as possible when snow or ice conditions create a
hazardous and congested driving situation.

It shall be the responsibility of the Traffic Commissioner
to keep informed of threatening weather and road condi-
tions and to initiate the plan when the situation requires
it or when ordered to do so by the Chief. The Traffic
Commissioner shall coordinate and supervise Department
efforts and implement this general plan with further
detailed planning as needed.  It shall be the duty of all
Department members to assist the Traffic Division and
to cooperate with the Service Department and other city
divisions in controlling the situation.

During those hours that the Officer of the Day is in com-
mand of the Department, it shall be his duty to keep in-
formed of threatening weather and road conditions and to
initiate and supervise the implementation of this plan
during the absence of the Traffic Commissioner.

    1. The Traffic Commissioner shall designate a unit
       within the Division of Traffic which shall have
       the responsibility of maintaining a daily, round
       the clock weather monitoring watch and which
       shall keep continually informed of congested
       and hazardous road conditions throughout the
       city.          (CONTINUED)

CLE000642

## GENERAL POLICE ORDER

No. 7-71            HEADQUARTERS        March 3,    71

SUBJECT : ___ SNOW EMERGENCY PLAN
                        - 2 -

It shall be the duty of all members of the Depart-
ment to inform the Traffic Division of such
conditions.

2. When in a period of 24 hours or less, snow
   accumulates to a depth of 2" or more, it shall
   be the responsibility of the unit designated to
   notify the Traffic Commissioner, the Officer
   in Charge of the Communications Control Center
   and the Chief or the Officer of the Day.

3. The Traffic Commissioner or, in his absence,
   the Officer of the Day, shall notify the Safety
   Director of the above conditions and recommend
   that the provisions of "Snow"Ordinances 9.090301
   and 9.090302 be placed into effect.

4. If the Safety Director declares a snow emergency
   to be in effect, the Traffic Commissioner shall
   cause the following teletype to be sent out and
   broadcast:

   "SNOW EMERGENCY DECLARED      Time
         Date

A snow emergency has been declared to exist by the
Director of Public Safety.  Emergency parking regulations
become effective one hour after the emergency announce-
ment.                    (CONTINUED)

CLE000643

## GENERAL POLICE ORDER

No. 7-71                    HEADQUARTERS_____ March 3, 71s

SUBJECT : _____ SNOW EMERGENCY PLAN

- 3 -

It is, therefore, unlawful to park or cause to be parked
or permit to be parked any vehicle upon any state route,
bus route or through highways designated by ordinance.
Any vehicle parked in violation of Ordinance 9.090302
shall be subject to ticketing and towed pursuant to law."

All uniformed police personnel shall ticket vehicles in
violation and call for a police tow. Where a police tow
is not readily available, an AAA tow truck shall be
dispatched.

Special attention shall be given to enforcing Ordinance
9.1108 "Blocking Intersections".

Where congestion has developed at intersections or appears
likely to develop, members shall assist with the movement
of traffic and notify Radio of their actions.

Special attention shall be directed first at all main ar-
teries to clear them of parked vehicles so that snow
removal equipment will be able to clean the streets.
Special attention shall also be given to streets with a grade,
or other locations that vehicles find difficult to negotiate
and salt trucks or snow plows shall be requested.

Members shall see to it that they are properly clothed
and equipped for the weather conditions prevailing and
that police vehicles are fully gassed and in proper
condition.                    (CONTINUED)

CLE000644

## GENERAL POLICE ORDER

No. 7-71 _____ HEADQUARTERS March 3, _____ 71 19 ___

SUBJECT : _____ SNOW EMERGENCY PLAN _____

– 4 –

5. Upon declaration of the snow emergency, the
Traffic Commissioner or, in his absence, the
~~Officer of the Day shall cause to be notified~~
the following agencies;

The Director of Public Services (who will
detail an official from his department to
the Communications Control Center for the
purpose of coordinating activity of his
department with the Police Department and
to expedite the deployment of the proper
equipment.)
The Chief Telephone Operator at City Hall.
The State Weather Forecaster at Hopkins
Airport
CTS (who may also assign an official to the
Communications Control Center to
coordinate activities of the Transit System
with the Police Department.)
Cleveland Automobile Club
The Cleveland Press and Plain Dealer
TV Stations, Channels 3, 5, and 8
Major AM Radio Stations
Ohio Bell Telephone Company

It shall be the responsibility of the Traffic
Commissioner and the Officer in Charge of the
Communications Control Center to cause to be
maintained up-to-date lists of business and

(CONTINUED)

## GENERAL POLICE ORDER

No. 7-71          HEADQUARTERS March 3,          71

SUBJECT : ____ SNOW EMERGENCY PLAN ____

- 5 -

home telephone numbers of persons or agencies
required to be notified.

6. Upon declaration of the snow emergency, the
Traffic Commissioner or, in his absence, the
Officer of the Day shall designate a Super-
visory Officer of the Traffic Division to
establish a Command Post in the Communications
Control Center, using Channel #7 as the
Command Post Frequency.

During the hours that the Officer of the Day
is in command of the Department, he shall
station himself at the Communications Control
Center for the purposes of supervision and
control.

7. All information on traffic conditions and
requests for tows, salt trucks, snow plows or
other equipment, or for personnel shall be
called into the Command Post on Channel #7.

8. The Officer in Charge of the Command Post
shall keep a log of all notifications and requests
for equipment and personnel, and shall make
the necessary notifications to the proper
Departments and Divisions for the equipment
and personnel requested.

9. In order to keep the public fully informed of
(CONTINUED)

CLE000646

# GENERAL POLICE ORDER

No. 7-71                      HEADQUARTERS  March 3,             71

SUBJECT:              SNOW EMERGENCY PLAN

- 6 -

traffic situations, the Traffic Commissioner
or the Officer of the Day shall utilize the
communications media of TV, Radio and the
press to urge the citizens to listen to car
and home radios for traffic condition reports.
The Traffic Commissioner or Officer of the Day
shall make use of the Radars Network or other
TV and Radio networks to make spot announce-
ments of congested locations, alternate routes
and other information of assistance to
motorists.

10. For the purposes of expediting control of a
serious traffic condition, the Officer in
Command of the Communications Control Center
may assign a Priority #1 classification to
incidents involving serious traffic congestion
or hazards, and less serious complaints may be
moved to a lower Priority classification than
originally assigned.

11. The Traffic Commissioner shall cause to be
maintained a list of potential hazardous and
congested locations throughout the city and it
shall be his duty to dispose his forces at
such locations in advance of a developing
serious situation. To this end he may hold
over or extend the working hours of Traffic
personnel.

( CONTINUED )

# GENERAL POLICE ORDER

No. 7-71          HEADQUARTERS  March 3,       71₉

SUBJECT :       SNOW EMERGENCY PLAN

- 7 -

He shall consult with the Director of Public
Service in advance when a serious situation
appears likely to develop and shall keep the
Chief informed as to the situation.

If the conditions appear likely to escalate
beyond the ability of the Traffic Division to
contain, he shall evaluate the situation,
estimate the approximate number of additional
men needed and so inform the Chief or the
Officer of the Day, who shall make the deter-
mination of assigning Basic Patrol and Task
Force personnel, holding over of personnel
assigned to these division, mobilizing, of
off-duty personnel, or mobilizing of auxiliary
police.

12. When the traffic situation has returned to
normal and,       in the opinion of the Traffic
Commissioner, it is no longer necessary to
continue to enforce provisions of the "Snow"
Ordinances, he shall consult with the Director
of Public Services and then inform the
Director of Public Safety as to the results of
such consultation.

13. When the snow emergency is called off by the
Safety Director, a teletype and broadcast
shall be made to that effect, noting the time

(CONTINUED)

CLE000648

## GENERAL POLICE ORDER

No. 71                              HEADQUARTERS March 3,          71  19

SUBJECT: _____ SNOW EMERGENCY PLAN _____

- 8 -

and date called off.

By order of.

LEWIS WM. COFFEY
CHIEF OF POLICE

CLE000649

GENERAL POLICE ORDER

No. 6-71                          HEADQUARTERS February 24,      71
                                                            19

SUBJECT: SUPPLEMENT TO GPO 39-70

TO THE MEMBERS OF THE DEPARTMENT

Members of the Department shall be governed by the
following procedures:

All personnel assigned to radio equipped patrol
vehicles and beats subject to Radio Dispatch
shall leave their headquarters immediately after
Roll Call. In every instance they shall notify
Radio Dispatch that they are going on the air and
proceeding to their assigned patrol area or zone.

Whenever such members are required to remain at
their headquarters for any reason, Radio Dispatch
must be notified of the delay.

If they return to their headquarters for any
reason, including the purpose of reporting off
duty, they shall notify the Radio Dispatcher, and
the Officer in Charge of the station, of their
return and the reason therefor.

When they leave the station to resume patrol, they
shall again notify the Officer in Charge and the
Radio Dispatcher.  These communications with
Radio Dispatch shall be made by radio.

The Officer in Charge of the station shall inquire
into the reason for the return and allow none to
remain in the station for any purpose except
necessary police business. He shall require
prompt completion of said police business and the
resumption of patrol without further delay.

CLE000650

# GENERAL POLICE ORDER

NO. 6-71      HEADQUARTERS February 24. 19 71

SUBJECT: SUPPLEMENT TO GPO 39-70

-2-

Whenever members engage in an on-view police activity which may involve contact with violators or suspects, they shall notify Radio Dispatch of the nature and location of the incident.

The proper Duty Report entry including license numbers, complainant's name, etc., shall be made according to procedures in GPO 7-65.

Mobile patrol cars when on patrol shall follow these same procedures.

Commanding Officers and Superior Officers shall require strict compliance with the provisions of this order.

They shall thoroughly investigate all violations or suspected violations concerning which complete reports shall be made and forwarded through channels to the Inspection Unit, thence to the Chief' s Office.

Departmental charges shall be initiated for culpable violations of this order as well as for neglect by Superior Officers in requiring compliance.

By order of,

LEWIS WM.COFFEY
CHIEF OF POLICE

CLE000651

## GENERAL POLICE ORDER

No. 5-71          HEADQUARTERS February 23,      71
                                              19

SUBJECT: OUTSIDE EMPLOYMENT INFORMATION CARD

TO THE MEMBERS OF THE DEPARTMENT

An outside employment data card has been developed for administrative use.

All members who have received permission to engage in part time jobs or self employed businesses which have not at this time been terminated, whether or not they are currently or regularly working or actively so self employed, shall complete and sign a data card. The card shall then be examined and signed by the member's Superior Officer and forwarded to the Chief's Office, Headquarters Staff, no later than March 15, 1971.

In cases of new part time job requests, the member shall complete and forward the card within three days after receipt of the notification that permission has been granted.

Members who have no outside employment or business shall submit a signed card which shall bear the entry "NONE" at the top of the card next to the heading "Outside Employment".

Supplies of cards shall be forwarded to all Units.

Procedures requiring Form # 1 reports to request permission to engage in part time employment and to report termination of such employment shall remain in effect.

By order of,

LEWIS WM. COFFEY,
CHIEF OF POLICE

CLE000652

## GENERAL POLICE ORDER

NO. 4-71       HEADQUARTERS       February 19, 71  19

SUBJECT : POLICE PARTICIPATION IN CHARTER AMEND-MENT

TO THE MEMBERS OF THE DEPARTMENT

The following letter from Cleveland Law Director Clarence
L. James, Jr. is self-explanatory and members of this
department shall govern themselves accordingly:

"This is in response to your letter of February 16, 1971,
requesting an opinion on the legality of Cleveland Police
circulating petitions in support of a proposed Charter
Amendment to make the election of the Cleveland mayor
non-partidan.

It is my opinion that such conduct is political in nature and,
therefore, is in violation of Rule 47 of the Manual of Rules,
Section 140 of the Charter and Section 143.41 of the Ohio
Revised Code.  The prohibitions of Revised Code Section
143.41 and Charter Section of 140 are very similar:

Section 143.41 - Ohio Revised Code

"***nor shall any officer or employee in the classified
service of the state, the several counties, cities, and
city school districts thereof, be an officer in any
political organization or take part in politics other than
to vote as he pleases and to express freely his political
opinions."

Section 140 - Charter

"***No person in the classified service of the city
(CONTINUED)

## GENERAL POLICE ORDER

No. 4-71                 HEADQUARTERS                 February 19,  71  19___

SUBJECT: POLICE PARTICIPATION IN CHARTER AMEND-
MENT

- 2 -

shall act as an officer of a political organization or take
part in a political campaign, or serve as a member of
a committee of any such organization or circulate or
seek signatures to any petition provided for by primary
or election laws, or act as a worker in favor of or in
opposition to any candidate for public office."

Very briefly, the basis of amy opinion may be found in the
case State ex rel Green, et al vs. City of Cleveland, 33 N. E.
(2) 35, reinforced by State ex rel John T. Corrigan vs.
Cleveland Cliffs Iron Co., 152 N. E. (2) 1, wherein it was
held that the influence of voters "to vote for or against
issues or propositions presented at election were in violation
of the law to the same extent as contributions to support a
candidate for public office or organize political parties."

For the above reasons I suggest that those members of the
Police Force who contemplate circulating petitions for a
Charter Amendment  should be advised that such activity
will be in violation of both local and state law."

Very truly yours,

/s/   Clarence L. James,

By order of,
LEWIS WM. COFFEY,
CHIEF OF POLICE

CLE000654

## GENERAL POLICE ORDER

No. 3-71                    HEADQUARTERS          February 10,  71   19

SUBJECT AMENDMENT TO SICK LEAVE PROVISIONS AND RULE 56

TO THE MEMBERS OF THE DEPARTMENT

Resolution 329-69 governing sick leave as outlined in General Police Order 22-69, dated July 23, 1969, has been amended to include time off for death or serious illness of a member's mother-in-law and father-in-law.

Rule 56 of the Manual of Rules shall also be interpreted accordingly.

By order of,


LEWIS WM. COFFEY
CHIEF OF POLICE

# GENERAL POLICE ORDER

No. 2-71        HEADQUARTERS        January 25, 71
                                                        19

SUBJECT: RECORD AND WANT CHECKS -- PERTINENT
         PROCEDURES

TO THE MEMBERS OF THE DEPARTMENT

Foreign Police Department Record & Want Check requests
shall be handled expeditiously, utilizing the information
resources of the Record Room, Detective Division Identi-
fication Records and the Warrant & Suspect Unit.

PROCEDURES:

    The Patrolman responsible for the operation of the
Leads Terminal, upon receipt of a message for a record
and want check, shall be responsible for immediate
inquiries:

    1. Into the General Record Room files.
    2. To the Detective Division Identification
       Records by telephone, exercising care to
       assure accurate transmission of the subject's
       identity.
    3. Into the Warrant & Suspect want files by
       delivering a copy of the Teletype message.

He shall note the results of the check upon the original
Teletype message from the foreign Police Department
along with the name and number of the members contacted
at each, the Detective Identification Records and Warrant
& Suspect Unit, adding his own signature and time.  This
message shall be retained in a permanent file.
                    (CONTINUED)

## GENERAL POLICE ORDER

NO. __2-71__          HEADQUARTERS_____ January 25, 19_71_

SUBJECT : RECORD AND WANT CHECKS - PERTINENT PROCEDURES

- 2 -

When there is "NO WANT", the Leads Terminal Patrolma shall cause the Police Record information to be returned to the requesting authority.

When a "WANT" exists in connection with an inquiry from a foreign Police Department, the responsibility for the proper action shall be determined by the factor of whether a felony or misdemeanor is involved.

When the <u>want consists of felony</u> suspects or felony warrants, the Officer in Charge of the Detective Division shall be responsible for the proper action relative to the want and for the proper response, which <u>response can be made by the Detective Division</u> or delegated back to the Message Center.

When <u>positive misdemeanor</u> want information is on file and the suspect is within the boundaries of Cuyahoga County, <u>the Warrant & Suspect Unit</u> shall be responsible for either the immediate return of the suspect by the Uniform Patrol Division or for the placement of the necessary "HOLD" in the event that the return of the suspect is to be delayed.

When the person wanted on the misdemeanor warrant is located outside the boundaries of Cuyahoga County, the action taken shall be governed by the type or

(CONTINUED)

## GENERAL POLICE ORDER

NO. 2-71                    HEADQUARTERS                January 25, 19 71

SUBJECT: RECORD AND WANT CHECKS - PERTINENT
PROCEDURES

- 3 -

seriousness of the offense, the distance involved and the
possibility of the suspect's implication or involvement
in more serious crimes.  These cases shall be referred
to the duty officer of the Detective Division who shall
cause both the proper action and the reply to be made.
The return of wanted persons and replies to the requesting
agencies may be completed by the Detective Division or
delegated to the Patrol Division and Message Center,
respectively, as required by the circumstances in each
instance.

Foreign messages of an urgent nature, such as when a
suspect is being held in the field by another department,
shall be brought to the attention of the Sergeant in Charge
of the Record Room who shall then be responsible for
initiating the proper record check action and the comple-
tion of the response.  In the absence of the Sergeant in
Charge of the Record Room, the inquiries shall be
referred to the Duty Officer of the Detective Division.
In these cases he shall be responsible for the proper
action and response to the inquiring agency by the most
appropriate means.

(CONTINUED)

CLE000658

## GENERAL POLICE ORDER

NO. 2-71                    HEADQUARTERS January 25, 19 71

SUBJECT: RECORD AND WANT CHECKS - PERTINENT PROCEDURES

- 4 -

All telephone inquiries for record and want checks received at the Warrant & Suspect Unit shall be recorded and retained.

Calls from suburban and other foreign Police Departments shall be recorded in a log book.

Calls from within the Department shall be recorded on the standard inquiry form and kept on file.

This order supersedes any conflicting order, procedure or part thereof.

By order of,

LEWIS WM. COFFEY,
CHIEF OF POLICE

## GENERAL POLICE ORDER

NO. __1-71__        HEADQUARTERS____ January 4, __19 71__

SUBJECT: STANDARDIZED PHONETIC ALPHABET - RADIO
COMMUNICATIONS S. O. P.

TO THE MEMBERS OF THE DEPARTMENT

The Phonetic Alphabet of the Public Safety Communica-
tions Officers Association as contained in their Standard
Operating Procedure Manual shall be adopted by the
Department as part of our Radio Communications
Standard Operating Procedure.

It shall be used by all members in the transmission of
names and license numbers or other important and
critical information where accuracy is required.

Each member shall receive a copy which he shall
permanently retain for future reference.

Commanding Officers shall assure distribution to each
member within their commands and shall cause the
supervisory action necessary for instruction and
proper utilization.

By order of,

LEWIS WM. COFFEY,
CHIEF OF POLICE

CLE000660

# PHONETIC ALPHABET

The phonetic alphabet should be used for spelling out unusual names of persons and locations. The names used after each letter have been found to be the most understandable over the air. They should always be given as: "A" - Adam, "B" - Boy . . . never "A" as in Adam or "B" as for boy, etc. The alphabet is easily memorized.

Standard Alphabet

A ......... Adam
B ......... Boy
C ......... Charles
D ......... David
E ......... Edward
F ......... Frank
G ......... George
H ......... Henry
I ......... Ida
J ......... John
K ......... King
L ......... Lincoln
M ......... Mary

N ......... Nora
O ......... Ocean
P ......... Paul
Q ......... Queen
R ......... Robert
S ......... Sam
T ......... Tom
U ......... Union
V ......... Victor
W ......... William
X ......... X-ray
Y ......... Young
Z ......... Zebra

---

# GENERAL POLICE ORDER

NO. 1-71          HEADQUARTERS     January 4,      19 71

SUBJECT: STANDARDIZED PHONETIC ALPHABET -- RADIO COMMUNICATIONS S.O.P.

TO THE MEMBERS OF THE DEPARTMENT

The Phonetic Alphabet of the Public Safety Communications Officers Association as contained in their Standard Operating Procedure Manual shall be adopted by the Department as part of our Radio Communications Standard Operating Procedure.

It shall be used by all members in the transmission of names and license numbers or other important and critical information where accuracy is required.

Each member shall receive a copy which he shall permanently retain for future reference.

Commanding Officers shall assure distribution to each member within their commands and shall cause the supervisory action necessary for instruction and proper utilization.

By order of,

LEWIS WM. COFFEY
CHIEF OF POLICE

CLE000661

## GENERAL POLICE ORDER

NO. ___42-70___          HEADQUARTERS _____ December 17, 19 __70

SUBJECT : ___ NEW PAY ROLL SCHEDULE - PAY ROLL PRO-
CEDURES (POLICE UNIFORM PERSONNEL)

TO THE MEMBERS OF THE DEPARTMENT

Beginning January 1, 1971, the City of Cleveland will con-
vert to 26 pay periods per year. Members of this depart-
ment will be paid on every other Wednesday starting
January 20, 1971.

Payroll sheets will be forwarded to each Division, District
Bureau and Unit by the Data Processing Unit several days
prior to the official pay day. These sheets will be arranged
in alphabetical order and will include badge number or
identification number, first initial, last name and
sequence number.

All members shall affix their signature in full, given name
and surname alongside their name printed on the payroll
sheet. This signature is not a receipt for having received
a pay check. It is an authorization for the City Treasurer
to give the member's pay check to the person who is desig-
nated as his agent to receive his pay check.

Payroll authorization sheets shall be completed by each
Division, District, Bureau and Unit involved. The
following information must be typed on this sheet:

    1) Name of the Division, District, Bureau or Unit
       involved.

(CONTINUED)

## GENERAL POLICE ORDER

No. **42-70**           HEADQUARTERS_____ December 17, 19 70

SUBJECT : NEW PAY ROLL SCHEDULE - PAY ROLL PRO-
CEDURES (POLICE UNIFORM PERSONNEL)

- 2 -

2) Names of the members designated as authorized
agents to pick up the checks.

3) Date of pay period ending . (Schedule supplied)

These payroll authorization sheets are for the next suc-
ceeding pay period.

The person named as agent to pick up the payroll checks
will sign the authorization sheet as a receipt after re-
ceiving the checks at the City Treasurer's Office.

The completed authorization sheet shall be attached to the
signed sheets and forwarded to the Chief's Office by the
Friday following each pay day.

Members who fail to sign the payroll sheet will be re-
quired to pick up their checks at the Treasurer's Office.

Checks which cannot be delivered to the member shall be
promptly returned to the City Treasurer's Office.

Improperly filled out authorization sheets and payroll
sheets will not be honored by the City Treasurer.

GENERAL POLICE ORDER 17-66 is hereby rescinded.
By order of,
LEWIS WM. COFFEY,
CHIEF OF POLICE

CLE000663

PER GPO 42-70

## SCHEDULE OF PAY PERIODS

| PAY NO | PAY PERIOD | PAY DATE |
|---|---|---|
| 1 | JAN. 1-15 | JAN. 20 |
| 2 | JAN. 16-29 | FEB. 3 |
| 3 | JAN. 30 - FEB. 12 | FEB. 17 |
| 4 | FEB. 13-26 | MAR. 3 |
| 5 | FEB. 27 - MAR.12 | MAR. 17 |
| 6 | MAR. 13-26 | MAR. 31 |
| 7 | MAR. 27 - APR. 9 | APR. 14 |
| 8 | APR. 10-23 | APR. 28 |
| 9 | APR. 24 - MAY 7 | MAY 12 |
| 10 | MAY 8-21 | MAY 26 |
| 11 | MAY 22 - JUNE 4 | JUNE 9 |
| 12 | JUNE 5-18 | JUNE 23 |
| 13 | JUNE 19 - JULY 2 | JULY 7 |
| 14 | JULY 3-16 | JULY 21 |
| 15 | JULY 17-30 | AUG. 4 |
| 16 | JULY 31 - AUG. 13 | AUG. 18 |
| 17 | AUG. 14-27 | SEPT. 1 |
| 18 | AUG. 28 - SEPT. 10 | SEPT. 15 |
| 19 | SEPT. 11-24 | SEPT. 29 |
| 20 | SEPT. 25 - OCT. 8 | OCT. 13 |
| 21 | OCT. 9-22 | OCT. 27 |
| 22 | OCT. 23 - NOV. 5 | NOV. 10 |
| 23 | NOV. 6-19 | NOV. 24 |
| 24 | NOV. 20 - DEC. 3 | DEC. 8 |
| 25 | DEC. 4-17 | DEC. 22 |
| 26 | DEC. 18-31 | JAN. 5 |

CLE000664

## GENERAL POLICE ORDER

NO. 41-70                    HEADQUARTERS                    December 4, 19 70

SUBJECT: ARREST AND POLICE INCIDENT INVESTIGATION
PROCEDURES - DEPARTMENTAL TRAINING
BULLETIN 81.55

TO THE MEMBERS OF THE DEPARTMENT:

The increasing prevalence of criminality and frequent
deadly violence directed against Police Officers require
alertness and a carefully considered and proper approach
in all police field activities and investigations.

Proper procedural police tactics must be used. They have
been set forth in Training Bulletin 81.55 as part of this
order and copies shall be distributed to all members.

Commanding Officers shall cause distribution and the
Roll Call instruction necessary to assure the thorough
familiarization of each member. In Conjunction with this
directive, Training Bulletin 81.54 SNIPER ATTACK shall
also be renewed as a subject of Roll Call training.

The importance of these orders cannot be overstressed.

By order of,

LEWIS WM. COFFEY,
CHIEF OF POLICE

CLE000665

## GENERAL POLICE ORDER

NO. 40-70          HEADQUARTERS          December 4, 19 70

SUBJECT : SUPPLEMENT TO G. P. O. 39-70
COMMUNICATIONS CONTROL CENTER (CCC)
NEW RADIO

The following order shall be considered a supplement to
G. P. O. 39-70 and shall take effect immediately:

Officers assigned to cars must report back dispositions
of assignments to Radio promptly and without fail.  They
shall be specific and concise in reporting the disposition.
They shall include the code designation according to the
following table as part of the disposition, however, the
code designation alone shall not be considered sufficient
but must be accompanied by the concise disposition.

Code Disposition Table

Code O - Designates there was no contact with the
complainant. The disposition shall state
the reason for no contact, i.e., NSA (No
such address), UTL (Unable to locate),
GOA (Gone on arrival), etc.

Code 1 - Designates a minimum of contact with the
complainant. The disposition shall state the
action taken, i.e., Report made by other
unit (designate the car), One female to
Hospital (name the hospital), Special Attention,
etc. Note: The disposition TCO (taken car of)
is too vague and shall not be used in any case.
(CONTINUED)

CLE000666

## GENERAL POLICE ORDER

No. 40-70          HEADQUARTERS          December 4, 1970

SUBJECT: SUPPLEMENT TO G.P.O. 39-70
COMMUNICATIONS CONTROL CENTER (CCC)
NEW RADIO

- 2 -

Code 2 - Designates Advised. Specify whether advised
to consult prosecutor, juvenile court, other
agency, etc.

Code 3 - Designates that after contact was made with
the complainant, the investigation revealed
no cause, therefore no report is needed.
The disposition "Code 3-No cause" will
suffice in this case.

Code 4 - Designates Field Report: Traffic Form 1 B
or Dog Bite. Specify which.

Code 5 - Designates Form 1 report, or any report
made at the station except RC 1 or Form 10.
Specify type of report.

Code 6 - Designates Parking Tickets issued. Specify
number of tickets.

Code 7 - Designates moving violation citation (UTT),
Litter Ordinance ticket, etc. issued. Specify
number and type.

(CONTINUED)

## GENERAL POLICE ORDER

No. 40-70          HEADQUARTERS_____ December 4, 19 70

SUBJECT: SUPPLEMENT TO G. P. O. 39-70
                COMMUNICATIONS CONTROL CENTER (CCC)
                NEW RADIO

- 3 -

    Code 8 - Designates an RC 1 or Form 10 report made.
            Specify title of report.

    Code 9 - Designates physical arrest was made.
            Specify number and sex.

    Examples:
        Code 0 - NSA...........Acceptable
        Code 0 -...............Not acceptable
        Code 2 -Advised to consult Prosecutor
                ..........Acceptable
        Code 2 - Advised.......Not acceptable

The disposition shall include information about casualties
or property hauled, vehicles towed or recovered,
whether investigation was conducted at places other than
at the scene (hospital, morgue), etc.

These codes represent various levels of response, an
arrest or Code 9 being the highest and Code 0, the lowest.
Use the highest code applicable to the disposition.

                By order of,

                LEWIS WM. COFFEY,
                CHIEF OF POLICE

CLE000668

# GENERAL POLICE ORDER

No. 39-70          HEADQUARTERS          November 13, 19 70

SUBJECT: COMMUNICATIONS CONTROL CENTER (CCC)
NEW RADIO

TO THE MEMBERS OF THE DEPARTMENT

The new Communications Center involves different and
complex equipment and new concepts of radio dispatching
which necessitate a new detailed procedural directive
which shall be considered an integral part of this order.
Copies of this directive shall be provided in booklet form
and all members shall thoroughly familiarize themselves
with its contents and strictly comply with its provisions.

In the near future, visual training aids will become
available and in-service training in these new radio
procedures will be conducted.

The Mail Center shall furnish supplies of these booklets
to Bureaus, Divisions and Districts whose Commanding
Officers shall cause distribution, one to each member.

By order of,

LEWIS WM. COFFEY,
CHIEF OF POLICE

CLE000669

INSTRUCTIONS FOR USE OF RADIO

Cleveland Police Department

G. P. O. 39-70

LEWIS Wm. COFFEY

Chief of Police

November 13, 1970

CLE000670

CLE000671

GENERAL POLICE ORDER NO. 39-70      NOVEMBER 12, 1970

SUBJECT: COMMUNICATIONS CONTROL CENTER (CCC) NEW RADIO

The provisions of GENERAL POLICE ORDER NO. 13-61, REVISED INSTRUCTIONS FOR USE OF RADIO still apply to all members and employees operating vehicles and equipment in which the old style radios are installed. However, in the near future new radio equipment will be installed in all vehicles and equipment, and from time to time Departmental Notices will be issued assigning certain zone cars, mobile patrols, supervisors, accident cars, traffic cars, general duty detectives, etc., to a specific radio dispatcher in the CCC, thereby making such vehicles, and the members and employees assigned to such vehicles, subject to radio dispatch.

The provisions of this General Police Order apply to all members and employees assigned to vehicles thus listed, or otherwise operating vehicles equipped with new radios and subject to radio dispatch.

When all members, employees and equipment have been provided with new radio equipment, General Police Order 13-61 is rescinded, and the provisions of this general police order shall apply to all members and employees of the Division of Police.

In contrast to the old radio system, where a single radio dispatcher has communication with all radio equipped cars, the new CCC will have a separate radio dispatcher for each of the six police districts, traffic and certain city-wide cars. Therefore, in the CCC there will be eight (8) separate radio systems. In addition to the radio in the vehicle (called a mobile radio), vehicles will also be assigned portable radios which members and employees will carry when they are not in their assigned vehicles. By this means the radio dispatcher will be in constant communication with all personnel assigned to radio dispatch.

In the CCC system there will be no radio, and there will be no need to use land-lines, telephones (man-large-in) or otherwise to maintain communication between field personnel and the radio dispatcher. All communications between CCC and field personnel shall be made over the air by radio.

Each of the eight radio dispatchers makes use of a radio channel, which provides two way radio communication between the CCC and the field personnel. Although each vehicle has the capability of operating on more than one channel, all vehicles, members and employees subject to radio dispatch shall remain on the channel to which they are assigned, and be subject to the radio dispatcher in charge of that channel.

Under conditions requiring the services of many vehicles and officers, specific instructions will be given by CCC to use other channels for specific reasons.

The radio dispatcher is assigned to each Police District and is responsible for the control of members, employees and vehicles assigned to radio dispatch in that district. The dispatcher receives the complaint card from the complaint clerk by conveyor belt, then he checks the vehicle status board for a vehicle available to handle the specific category of complaint, and then he contacts the selected vehicle or personnel assigned to that vehicle and transmits the assignment. Upon acknowledgement of the assignment, the dispatcher time-stamps

1

the complaint card and places it in the car status file. Insertion of the card into the car status file changes the vehicle status board to indicate the vehicle is now "on assignment". Upon completion of the assignment, the police officer in the vehicle assigned notifies the dispatcher, who removes the complaint card from the car status file, enters the disposition of the assignment, and again time-stamps the complaint card to indicate the completion of the assignment. The complaint card, is then forwarded to data processing.

Each of the vehicle status boards for the six police districts contain sixty (60) places for vehicles or personnel assigned to radio dispatch. The Traffic Dispatcher has 160 places for vehicles and/or personnel, and the Radio Supervisor has 120 places for city wide vehicles. Each of these vehicle spaces includes a plate which indicates the number of the vehicle involved, and a series of three lights which indicate the status of the vehicle. These lights are operated by switches under the control of the radio dispatcher, or operate automatically by the insertion of the complaint card in the car status file.

When the vehicle, the number of which remains on the vehicle status board, is not in service, none of the lights is associated with that vehicle are visible or operative. All lights out. When the vehicle is in service, but is not available for radio assignment, the WHITE LIGHT is turned on for that vehicle by the Radio Dispatcher. When the vehicle is on the air and available for assignment the GREEN LIGHT appears, and as shown, above, the RED light appears when the vehicle is "on-assignment".

Therefore, all members, employees and superior officers subject to radio dispatch shall report themselves "out" and "off" the air by means of the mobile or portable radio equipment available to them.

All superior officers of any rank or of any assignment shall report "out" and "off" the air to the dispatcher to which they are assigned.

All marked vehicles of the Division of Police shall be identified by a number which is relative to the District or Bureau, squad, and unit within the squad to which the vehicle is normally assigned. This identification number will consist of four (4) numbers:

1st number - identification of radio dispatcher in control,

2nd number - district or bureau to which assigned

3rd number - squad, but provision has been made to identify traffic cars, detective cars, task force cars, vice cars, mobile patrols, supervisors cars and details.

4th number - unit within squad, which also indicates capability of vehicle to handle stretcher cases. (SW & MP).

The Departmental Notice assigning specific vehicles to radio dispatch will identify those specific vehicles by both the present and the new identification numbers. The new identification numbers will represent the present districts, sectors, squad and police zones.

In communication with the radio dispatcher, except when under special conditions when numerous vehicles are on city wide channel or on a channel to which not normally assigned, cars may identify themselves to their dispatcher

2

85E000672

by means of the last three numbers of their identification number.

The CGC materially increases the capability of field supervisors to exercise control and supervision of the personnel under their command. Field supervisors include platoon captains, sector lieutenants, squad and beat sergeants, and any other superior officer who is in charge of personnel operating radio equipped vehicles or equipped with portable radios.

Such field supervisor upon hearing broadcasts to the personnel under their command which indicate their team will need direction, assistance, supervision or advice, shall proceed at once to the scene of the complaint, and carry out such supervisory duties as may be required. Such field supervisor shall immediately inform his radio dispatcher that he is responding to the complaint.

If the immediate superior of the men receiving such an assignment is unable to respond at once to such an assignment, he shall inform the radio dispatcher of that fact.

Field supervisors shall also monitor all radio messages directed to personnel under their command, and shall ascertain the reason for failure to answer promptly, or failure to report dispositions promptly.

When any officer gives an assignment to vehicles or personnel subject to radio dispatch, such officer shall immediately notify the radio dispatcher. When such vehicles or personnel are "out" the air, they shall inform the radio dispatcher of their location, and their relative availability for radio assignments or messages.

RESPONSES

Upon receipt of a broadcast members and employees shall respond as follows: "Car III-car, 150th and Lorain," Locations shall be as specific as practicable. Such phrases as "leaving last assignment" are too indefinite to be acceptable.

When members and personnel subject to radio dispatch fail to answer the third broadcast of an assignment or message, the radio dispatcher shall notify the radio supervisor of the identity of the vehicle or personnel involved. The radio supervisor shall then notify the officer in charge of the District, Bureau or Unit to which such personnel are assigned.

The officer in charge shall then order a specific field supervisor to begin a search for the missing personnel or vehicle. This field supervisor shall continue the search until the missing crew is located and the radio dispatcher is notified of this fact.

All members and personnel subject to radio dispatch shall be held strictly accountable for keeping their radio dispatcher advised of their whereabouts and availability for assignments. This information shall be given to the radio dispatcher by radio. Disciplinary action must be taken for failure to comply with this order.

A dispatcher may dispatch more than one car on a single assignment. He may designate the cars dispatched by number; he may dispatch an entire squad; or he may dispatch "any car in the vicinity". The dispatcher also has the capability of broadcasting an assignment on several, or all eight (8) channels. It should not be necessary in these cases for the dispatcher to broadcast subsequently to each individual car and ask for an acknowledgement. Each car specifically dispatched should acknowledge in the order it was dispatched, or by

3

its number in the squad. Any other car "in the vicinity" should also acknowledge and respond to the assignment without waiting for specific instructions.

In every instance all field supervisors shall consider all multiple car assignments as broadcasts which will require the services of a superior officer, and they shall respond without being requested. The immediate superiors of field supervisors shall take disciplinary action against field supervisors who fail to respond to such assignments.

The first car on the scene shall give a brief preliminary description of the events, suspects, etc. by radio as soon as possible. This preliminary information shall be followed by more detailed information as it becomes available.

Final dispositions shall be give to the radio dispatcher as soon as possible. Dispositions should be brief and precise, for example "Car 110, 149th and Puritas, Damage Report Made,"

All requests for information, service, etc. shall be made via radio to the radio dispatcher.

When field personnel request information about the status of a vehicle by license number and/or vehicle identification number, the radio dispatcher records the request of a complaint card, and forwards the request card to a data position in CCC via the conveyor unit. Upon receipt of a card, the data Operator orders the query into the information system via a computer terminal in CCC. Upon a response from the computer, the data operator records the reply/response on the same card and returns it to the radio dispatcher via the conveyor. The dispatcher then transmits the information to the field personnel who requested the information.

When the computer indicates that a vehicle is in a "stolen" status, the data operator shall further inquire of the system, and obtain the complaint number, originating agency of the complaint, and for Cleveland reports, the name and address of the owner of the vehicle. This information shall be given by radio to the field officer making the request, in order that he may quickly and accurately make the necessary reports.

It is hoped that the computer will also be able to give information on wanted subjects when CGC is fully operational.

Complaint clerks who answer telephone requests from citizens for police services shall classify all such requests into four categories of priority:

Priority 1 - This category of complaint requires an immediate response by the Cleveland Police Department. This priority covers complaints in which a casualty has been sustained by a citizen or a police officer, a suspect is present or a crime is being committed, or there is grave danger to life and limb.

Priority 2 - This category of complaint will be handled in the order received, after Priority 1 complaints.

Priority 3 - This category of complaint will be handled after priority 1 and 2 complaints, and therefore, may be "stacked" to be handled by another platoon.

Priority 4 - This category of complaint will be handled in some manner other than by dispatching a vehicle to the scene. Telephone reports will be taken by radio police clerks about certain minor complaints and misdemeanors.

4

CLE000673

The Commanding Officer of Radio Dispatch may assign a higher priority to any complaint if circumstances warrant it.

When a radio dispatcher receives a Priority 1 complaint and the zone car covering the location of the assignment is unavailable for assignment, the dispatcher shall:

1. Assign the nearest car in the same district which is available for assignment.

2. Assign the nearest car in an adjacent district which is available for assignment OR

Assign the nearest car which has been given a lower priority assignment. Therefore, personnel must retain radio contact with radio dispatcher at all times.

Priority 2 complaints shall normally be assigned to the car in whose territory it originates or, if not open for assignment, to any available car in the squad covering the area.

Priority 3 complaints shall normally be assigned to the zone car in whose territory it originates.

A field supervisor may cause any car to handle priority 2 and priority 3 assignments.

Members and employees given assignments by radio dispatcher shall in every instance, for every category of complaint, inform the radio dispatcher of the final disposition of the assignment. This is true even if the original assignment was made on another platoon or on another day.

No radio equipment other than official police issue may be used in vehicles equipped with police radios, so-called "personalized" radios on the regular broadcast bands are specifically prohibited. No unauthorized radio equipment shall be permitted in the spaces occupied by the radio dispatch office, radio repair or maintenance, or any space used by personnel engaged in radio dispatching.

This order shall be an integral part of all manuals for radio dispatchers and/or complaint clerks.

By order of:
LEWIS W. COFFEY
CHIEF OF POLICE

---

Rule 44 – Manual of Rules                                    NO CHANGES REQUIRED

(1) Officers and members assigned to the radio equipped police vehicles shall remain in the territory to which they are assigned unless directed otherwise by the Radio Dispatcher.

(2) If required to leave their territory for reasons of police necessity, they shall promptly notify the Radio Dispatcher.

(3) They shall promptly acknowledge and respond to all calls directed to them by the Radio Dispatcher. When acknowledging such calls, they shall state their location.

(4) They shall carefully investigate all matters directed to their attention by the Radio Dispatcher, or otherwise; and take proper police action. They shall keep the Radio Dispatcher advised of their activities or the progress of any investigation; and furnish a preliminary description of persons, property or motor vehicles wanted. They shall immediately notify the Radio Dispatcher by radio (or telephone) when completing any assignment.

(5) Employees assigned to radio equipped police towing vehicles shall keep the Radio Dispatcher informed of the completion and disposition of assignments. (Also see New Rule 22).

5

6

GENERAL POLICE ORDER NO. 39-70          NOVEMBER 12, 1970

SUBJECT: COMMUNICATIONS CONTROL CENTER (CCC) NEW RADIO

   The provisions of GENERAL POLICE ORDER NO. 13-61, REVISED
INSTRUCTIONS FOR USE OF RADIO still apply to all members and employees
operating vehicles and equipment in which the old style radios are installed.
However, in the near future new radio equipment will be installed in all vehicles
and equipment, and from time to time Departmental Notices will be issued
assigning certain zone cars, mobile patrols, supervisors, accident cars, traffic
cars, general duty detectives, etc. to a specific radio dispatcher in the CCC,
thereby making such vehicles, and the members and employees assigned to such
vehicles, subject to radio dispatch.
   The provisions of this General Police Order apply to all members and
employees assigned to vehicles thus listed, or otherwise operating vehicles
equipped with new radios and subject to radio dispatch.
   When all members, employees and equipment have been provided with
new radio equipment, General Police Order 13-61 is rescinded, and the provisions
of this general police order shall apply to all members and employees of the
Division of Police.
   In contrast to the old radio system, where a single radio dispatcher
has communication with all radio equipped cars, the new CCC will have a separate
radio dispatcher for each of the six police districts, traffic and certain city-wide
cars. Therefore, in the CCC there will be eight (8) separate radio systems.
In addition to the radio in the vehicle (called a mobile radio), vehicles will also
be assigned portable radios which members and employees will carry when they
are not in their assigned vehicles. By this means the radio dispatcher will be
in constant communication with all personnel assigned to radio dispatch.
   In the CCC system there will be no recalls, and there will be no need
to use land-lines, telephones (open-barge-in) or otherwise to maintain communi-
cation between field personnel and the radio dispatcher. All communications
between CCC and field personnel shall be made over the air by radio.
   Each of the eight radio dispatchers makes use of a radio channel, which
provides two way radio communication between the CCC and the field personnel.
Although each vehicle has the capability of operating on more than one channel,
all vehicles, members and employees subject to radio dispatch shall remain
on the channel to which they are assigned, and be subject to the radio dispatcher
in charge of that channel.
   Under conditions requiring the services of many vehicles and officers,
specific instructions will be given by CCC to use other channels for specific
reasons.
   A radio dispatcher is assigned to each Police District and is responsible
for the control of members, employees and vehicles assigned to radio dispatch
in that district. The dispatcher receives the complaint card from the complaint
clerk by conveyor belt, then he checks the vehicle status board for a vehicle
available to handle the specific category of complaint, and then he contacts the
selected vehicle or personnel assigned to that vehicle and transmits the assign-
ment. Upon acknowledgement of the assignment, the dispatcher time-stamps

1

the complaint card and places it in the car status file.  Insertion of the card into the car status file changes the vehicle status board  to indicate the vehicle is now "on assignment".  Upon completion of the assignment, the police officer in the vehicle assigned notifies the dispatcher, who removes the complaint card from the car status file, enters the disposition of the assignment, and again time-stamps the complaint card to indicate the completion of the assignment.  The complaint card, which is a machine-processable card, is then forwarded to data processing.

Each of the vehicle status boards for the six police districts contain sixty (60) places for vehicles or personnel assigned to radio dispatch.  The Traffic Dispatcher has 160 places for vehicles and/or personnel, and the Radio Supervisor has 120 places for city wide vehicles.  Each of these vehicle  spaces includes a plate which indicates the number of the vehicle involved, and a series of three lights which indicate the status of the vehicle.  These lights are operated by switches under the control of the radio dispatcher, or operate automatically by the insertion of the complaint card in the car status file.

When the vehicle, the number of which remains on the vehicle status board, is not in service, none of the lights associated with that vehicle are visible or operative.  All lights out.  When the vehicle is in service, but is not available for radio assignment, the WHITE LIGHT is turned on for that vehicle by the Radio Dispatcher.  When the vehicle is on the air and available for assignment the GREEN LIGHT appears, and as shown, above, the RED light appears when the vehicle is "on-assignment".

Therefore, all members, employees and superior officers subject to radio dispatch shall report themselves "on" and "off" the air by means of the mobile or portable radio equipment available to them.

All superior officers of any rank or of any assignment shall report "on" and "off" the air to the dispatcher to which they are assigned.

All marked vehicles of the Division of Police shall be identified by a number which is related to  the District or Bureau, squad, and unit within the squad to which the vehicle is normally assigned.  This identification number will consist of four (4) numbers:

> 1st number - identification of radio dispatcher in control.
> 2nd number -  district or bureau to which assigned
> 3rd number -  squad, but provision has been made to identify
> traffic cars, detective cars, task force cars,
> vice cars, mobile patrols, supervisors cars
> and details.
> 4th number - unit within squad, which also indicates capability
> of vehicle to handle stretcher cases. (SW & MP).

The Departmental Notice assigning specific vehicles to radio dispatch will identify these specific vehicles by both the present and the new identification numbers.  The new identification numbers will represent the present districts, sectors, squad and police zones.

In communication with the radio dispatcher, except when under special conditions when numerous  vehicles are on city wide channel or on a channel to which not normally assigned, cars may identify themselves to their dispatcher

2

CLE000675

by means of the last three numbers of their identification number.

The CCC materially increases the capability of field supervisors to exercise control and supervision of the personnel under their command. Field supervisors include platoon captains, sector lieutenants, squad and beat sergeants, and any other superior officer who is in charge of personnel operating radio equipped vehicles or equipped with portable radios.

Such field supervisors upon hearing broadcasts to the personnel under their command which indicate their men will need direction, assistance, supervision or advice, shall proceed at once to the scene of the complaint, and carry out such supervisory duties as may be required. Such field supervisor shall immediately inform his radio dispatcher that he is responding to the complaint.

If the immediate superior of the men receiving such an assignment is unable to respond at once to such an assignment, he shall inform the radio dispatcher of that fact.

Field supervisors shall also monitor all radio messages directed to personnel under their command, and shall ascertain the reason for failure to answer promptly, or failure to report dispositions promptly.

When any officer gives an assignment to vehicles or personnel subject to radio dispatch, such officer shall immediately notify the radio dispatcher. When such vehicles or personnel are "on" the air, they shall inform the radio dispatcher of their location, and their relative availability for radio assignments or messages.

## RESPONSES

Upon receipt of a broadcast members and employees shall respond as follows: "Car 111-OK, 150th and Lorain." Locations shall be as specific as practicable. Such phrases as "leaving last assignment" are too indefinite to be acceptable.

When members and personnel subject to radio dispatch fail to answer the third broadcast of an assignment or message, the radio dispatcher shall notify the radio supervisor of the identity of the vehicle or personnel involved. The radio supervisor shall then notify the officer in charge of the District, Bureau or Unit to which such personnel are assigned.

The officer in charge shall then order a specific field supervisor to begin a search for the missing personnel or vehicle. This field supervisor shall continue the search until the missing crew is located and the radio dispatcher is notified of this fact.

All members and personnel subject to radio dispatch shall be held strictly accountable for keeping their radio dispatcher advised of their whereabouts and availability for assignments. This information shall be given to the radio dispatcher by radio. Disciplinary action must be taken for failure to comply with this order.

A dispatcher may dispatch more than one car on a single assignment. He may designate the cars dispatched by number; he may dispatch an entire squad; or he may dispatch "any car in the vicinity". The dispatcher also has the capability of broadcasting an assignment on several or all eight (8) channels.

It should not be necessary in these cases for the dispatcher to broadcast subsequently to each individual car and ask for an acknowledgement. Each car specifically dispatched should acknowledge in the order it was dispatched, or by

3

its number in the squad. Any other car "in the vicinity" should also acknowledge and respond to the assignment without waiting for specific instructions.

In every instance all field supervisors shall consider all multiple car assignments as broadcasts which will require the services of a superior officer, and they shall respond without being requested. The immediate superiors of field supervisors shall take disciplinary action against field supervisors who fail to respond to such assignments.

The first car on the scene shall give a brief preliminary description of the events, suspects, etc. by radio as soon as possible. This preliminary information shall be followed by more detailed information as it becomes available.

Final dispositions shall be give to the radio dispatcher as soon as possible. Dispositions should be brief and precise, for example:"Car 110, 140th and Puritas, Damage Report Made."

All requests for information, service, etc. shall be made via radio to the radio dispatcher.

When field personnel request information about the status of a vehicle by license number and/or vehicle identification number, the radio dispatcher records the request of a complaint card, and forwards the request card to a data position in CCC via the conveyor unit. Upon receipt of a card, the data Operator enters the query into the information system via a computer terminal in CCC. Upon a response from the computer, the data operator records the reply/response on the same card and returns it to the radio dispatcher via the conveyor. The dispatcher then transmits the information to the field personnel who requested the information.

When the computer indicates that a vehicle is in a "stolen" status, the data operator shall further inquire of the system, and obtain the complaint number, originating agency of the complaint, and for Cleveland reports, the name and address of the owner of the vehicle. This information shall be given by radio to the field officer making the request, in order that he may quickly and accurately make the necessary reports.

It is hoped that the computer will also be able to give information on wanted subjects when CCC is fully operational.

Complaint clerks who answer telephone requests from citizens for police services shall classify all such requests into four categories of priority:

Priority 1 - This category of complaint requires an immediate response by the Cleveland Police Department. This priority covers complaints in which a casualty has been sustained by a citizen or a police officer, a suspect is present or a crime is being committed, or there is grave danger to life and limb.

Priority 2 - This category of complaint will be handled in the order received, after Priority 1 complaints.

Priority 3 - This category of complaint will be handled after priority 1 and 2 complaints, and therefore, may be "stacked" to be handled by another platoon.

Priority 4 - This category of complaint will be handled in some manner other than by dispatching a vehicle to the scene. Telephone reports will be taken by radio police clerks about certain minor complaints and misdemeanors.

4

CLE000677

The Commanding Officer of Radio Dispatch may assign a higher priority to any complaint if circumstances warrant it.

When a radio dispatcher receives a Priority 1 complaint and the zone car covering the location of the assignment is unavailable for assignment, the dispatcher shall:

1. Assign the nearest car in the same district which is available for assignment.
2. Assign the nearest car in an adjacent district which is available for assignment OR

Assign the nearest car which has been given a lower priority assignment.

Therefore, personnel must retain radio contact with radio dispatcher at all times.

Priority 2 complaints shall normally be assigned to the car in whose territory it originates or, if not open for assignment, to any available car in the squad covering the area.

Priority 3 complaints shall normally be assigned to the zone car in whose territory it originates.

A field supervisor may cause any car to handle priority 2 and priority 3 assignments.

Members and employees given assignments by radio dispatcher shall in every instance, for every category of complaint, inform the radio dispatcher of the final disposition of the assignment. This is true even if the original assignment was made on another platoon or on another day.

No radio equipment other than official police issue may be used in vehicles equipped with police radios, so-called "personalized" radios on the regular broadcast bands are specifically prohibited. No unauthorized radio equipment shall be permitted in the spaces occupied by the radio dispatch office, radio repair or maintenance, or any space used by personnel engaged in radio dispatching.

This order shall be an integral part of all manuals for radio dispatchers and/or complaint clerks.

By order of,

LEWIS WM. COFFEY
CHIEF OF POLICE

5

CLE000678

Rule 44 - Manual of Rules          ——          <u>NO CHANGES REQUIRED</u>

(1) Officers and members assigned to the radio equipped police vehicles shall remain in the territory to which they are assigned unless directed otherwise by the Radio Dispatcher.

(2) If required to leave their territory for reasons of police necessity, they shall promptly notify the Radio Dispatcher.

(3) They shall promptly acknowledge and respond to all calls directed to them by the Radio Dispatcher.  When acknowledging such calls, they shall state their location.

(4) They shall carefully investigate all matters directed to their attention by the Radio Dispatcher, or otherwise; and take proper police action. They shall keep the Radio Dispatcher advised of their activities or the progress of any investigation; and furnish a preliminary description of persons, property or motor vehicles wanted.  They shall immediately notify the Radio Dispatcher by radio (or telephone) when completing any assignment.

(5) Employees assigned to radio equipped police towing vehichles shall keep the Radio Dispatcher informed of the completion and disposition of assignments.  (Also see New Rule 22).

6

CLE000679

## GENERAL POLICE ORDER

No. ___38-70___        HEADQUARTERS_____        October 16,    70
                                                                          19___

SUBJECT: ___LEGAL LITIGATION INVOLVING THE CITY OF___
              CLEVELAND -- SUPPLEMENTAL PROCEDURE

TO THE MEMBERS OF THE DEPARTMENT

The new Rules of Civil Procedure impose an added responsibility upon the Law Department to obtain detailed information.

Whenever a member  is involved in a civil action that has been brought against the City and the Law Department has requested certain information, the member shall forthwith submit a full reply by Form 1 report.

These reports shall be forwarded to the Chief's Office within five (5) days.

This procedure supplements existing requirements of Rule 69 of the Manual of Rules, Division of Police, and standing G. P. O. 's.

                              By order of,

                              LEWIS WM. COFFEY,
                              CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 37-70          HEADQUARTERS      October 7,      19 70

SUBJECT: PERSONNEL RECORDS INFORMATION - -
POLICE & PUBLIC REPORTING

TO THE MEMBERS OF THE DEPARTMENT

In accord with the August 23, 1968 directive of the Chief of Police, the following procedure shall control the maintenance and use of personnel records information:

1. All personnel information shall be securely retained as confidential departmental information under the supervision of a Superior Officer, and none may be released without his permission. This shall include photos and shall specifically prohibit any release to unauthorized persons outside the Department.

   Doubtful matters shall be resolved by the Chief, his Staff, or Officer in Charge of the Department.

2. Home addresses and/or telephone numbers of members shall be available only for legitimate police purposes and any release requires the approval of the ranking superior officer in charge.

3. Official police reports shall bear the address and telephone number of the police officer's place of assignment whenever the nature of the report requires it.

Cooperation of members of the news media shall be requested to avoid all use of members' residence addresses and phone numbers.

By order of,

STEVE SZERETO,
DEPUTY CHIEF

## GENERAL POLICE ORDER

NO. 36-70          HEADQUARTERS September 30, 19 70

SUBJECT: JUVENILE COURT LIAISON OFFICER -
JUVENILE COMPLAINT FILING PROCEDURES

TO THE MEMBERS OF THE DEPARTMENT

Effective October 5, 1970, a Police-Juvenile Court Liaison
Officer will be assigned to Juvenile Court. He shall file
Juvenile Complaints for the entire Department, initiate
subpoenas as required and assist the Prosecutor in case
preparation.

Complaint filing procedures are amended. Arresting offi-
cers are relieved of the responsibility of personally filing
routine Juvenile Complaints and need not appear at Court
Hearings, unless subpoened. However, members shall
exercise good judgement in appearing whenever, within
their own knowledge, the importance or complexity of the
case or the evidence indicates the necessity.

Printed copies of the amended Juvenile Complaint Filing
Procedures shall be forwarded to all Divisions, Districts,
and Units for distribution to each member. These shall
be considered an integral part of this order.

Commanding Officers and Officers in Charge shall cause
full compliance by closely supervising Juvenile enforce-
ment and investigative activities and carefully examining
required reports, which shall not be forwarded when in-
complete or incorrect.

This order supersedes GPOs or parts thereof which con-
flict with its provisions.

By order of,

LEWIS WM. COFFEY,
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. __35-70__          HEADQUARTERS____ September 23, 19 70

SUBJECT : ___MONTHLY VEHICLE MILEAGE REPORTS___

TO THE MEMBERS OF THE DEPARTMENT

In order to arrive at monthly cost figures and to project
future cost figures, it will be necessary for administrative
units of the department to submit monthly reports of
police vehicles.

IBM cards indicating code number, year, radio call number
and unit, together with the month and year, will be for-
warded to the Commanding Officers of administrative
units for the purpose of recording such mileage. It is
imperative that the CODE NUMBER of the vehicle is the
same as the CODE NUMBER on the IBM card upon which
the odometer reading is recorded.

The Commanding Officer of each administrative unit shall
designate a Superior Officer or officers who shall record
the odometer readings for the last day of the month, in
the space provided, on the respective IBM card describing
such vehicle by CODE NUMBER. The officer recording
the mileage on the IBM cards shall sign such cards, in-
cluding his rank and the date.

If a vehicle is not in service on the last day of the month
due to being in the Repair Shop, etc., such Superior
Officer or officers shall make arrangements for and
obtain the correct odometer reading.

(CONTINUED)

## GENERAL POLICE ORDER

No.___35-70___                HEADQUARTERS_____September 23, 19 70

SUBJECT: ____MONTHLY VEHICLE MILEAGE REPORTS____

- 2 -

IBM cards having the mileage recorded shall be forwarded
to the Record Process Section by the third day of the
following month, so that the mileage report can be com-
pleted on or before the set deadline.  The IBM cards may
be forwarded in the "locked box" provided for parking
tickets and moving violations citations.

Commanding Officers shall be responsible for the
compliance of the provisions of this order.

G. P. O.  27-68 is hereby rescinded.

By order of,

LEWIS WM. COFFEY,
CHIEF OF POLICE

CLE000684

## GENERAL POLICE ORDER

No. __34-70__                    HEADQUARTERS_____ September 16, 19 __70__

SUBJECT : __RELEASE OF DEPARTMENTAL ARREST__
              RECORDS -- PROCEDURE

TO THE MEMBERS OF THE DEPARTMENT

By Law Department ruling, confidential and/or quasi-
confidential arrest records may be released only to
official governmental agencies.

Arrest records of this Department may not be given to
any other agency, business firm or person unless ex-
pressly requested by affidavit by an individual who wishes
to release information concerning himself to a third
party. This affidavit will be the only exception to the
rule and the form has been developed and is available
for this purpose.

The General Record Room shall maintain a permanent
file of all such affidavits together with a copy of the
record information that was provided.

By order of,

LEWIS WM. COFFEY,
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 33-70    HEADQUARTERS____September 10, 19 70

SUBJECT: RESPONSIBILITIES, AND OPERATIONAL AND
ASSIGNMENT PROCEDURES OF THE FIELD
TRAINING PROGRAM

TO THE MEMBERS OF THE DEPARTMENT

A) PROCEDURES AND RESPONSIBILITIES OF THE FIELD
TRAINING OFFICER --

1) He shall be the Officer in Charge of the Field
Training Officer/Probationary Patrolman team.
He shall direct all its activities.

2) He shall delegate the performance of routine
police functions and report making to the trainee.

3) He shall provide advice and assistance as required.

4) He shall provide instruction in:
   a) Police Vehicle Operation
   b) Operational Procedures.
   c) District Geography and District Conditions and
      and the Special and Routine Police Action Re-
      quired.

5) He shall examine and initial all reports prepared by
the trainee.

6) He shall submit periodic performance rating reports.

(CONTINUED)

## GENERAL POLICE ORDER

NO. 33-70     HEADQUARTERS September 10, 1970

SUBJECT: RESPONSIBILITIES, AND OPERATIONAL AND
ASSIGNMENT PROCEDURES OF THE FIELD
TRAINING PROGRAM

- 2 -

7) Field Training Officers' duties which require extra
duty (OT), such as in the examination and prepara-
tion of reports, shall be credited in accord with
standard overtime procedures.

B)  ASSIGNMENT PROCEDURES --

1) During their probationary period, new Patrolmen
shall be assigned only with a Field Training Officer
or a Superior Officer.

2) Each Probationary Patrolman shall be assigned with
the same Field Training Officer throughout the
probationary period unless supplanted by a Superior
Officer.

3) Each Field Training Officer/Probationary Patrolman
team shall be assigned the same weekly vacation
day schedule.

4) A Sergeant or another available Field Training
Officer shall be assigned during unscheduled ab-
sences of OTT, sick leave, furlough, etc.

## GENERAL POLICE ORDER

No. 33-70     HEADQUARTERS   September 10,   19 70

SUBJECT: RESPONSIBILITIES, AND OPERATIONAL AND
ASSIGNMENT PROCEDURES OF THE FIELD
TRAINING PROGRAM

- 3 -

SUPERIOR & COMMAND OFFICER RESPONSIBILITIES --

1) They shall cause implementation of the program and
compliance with the provisions of this order.

2) They shall evaluate the performance of each Field
Training Officer under his supervision or command
and submit reports with recommendations twice
annually on June 30 and December 31 respectively.

By order of,

LEWIS WM. COFFEY,
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. __32-70__          HEADQUARTERS_____ September 10, 19 70

SUBJECT : ____FIELD TRAINING OFFICERS_____

### TO THE MEMBERS OF THE DEPARTMENT

Departmental Field Training Duties shall be assigned to Patrolmen designated as Field Training Officers. They shall receive the same extra pay increment as the members assigned to the Bureau of Criminal Investigation.

The following Patrolmen are hereby so designated and assigned to these duties:

| 92 | Stanely Acela | District 3 |
|---|---|---|
| 237 | Frank Wolf | " |
| 1346 | Joseph Dietz | " |
| 1142 | Robert Vanek | " |
| 1109 | Robert Pollack | " |
| 1890 | Paul Mullins | " |
| 774 | Paul Guba | " |
| 432 | Steve Petrov | " |
| 444 | Michael Kocet | " |
| 343 | James Murphy | " |
| 1605 | William Richards | " |
| 284 | Melvin Stroud | " |
| 499 | Anthony Karnowski | " |
| 1010 | George Walter | " |
| 1983 | Francis Kiousis | " |
| 1806 | Richard Sichau | " |
| 140 | Gerald Ruckgaber | " |
| 387 | Charles Casper | " |
| 2124 | Edward Kish | " |
| 1964 | Walter Sheahan | " |
| 1146 | William Lehmann | " |
| 701 | James Mullen | (CONTINUED) |

## GENERAL POLICE ORDER

No. 32-70     HEADQUARTERS     September 10, 19 70

SUBJECT :     FIELD TRAINING OFFICERS

- 2 -

| | | |
|---|---|---|
| 1797 | Conrad Sandell | District 3 |
| 1669 | James O'Connor | " |
| | | |
| 258 | Donald Bellew | District 4 |
| 1836 | Reginald Kinsey | " |
| 1683 | William Bishilany | " |
| 1822 | Anthony Zarenko | " |
| 1228 | Lawrence Visocky | " |
| 1659 | Richard Vlk | " |
| 1718 | John Mooney | " |
| 1267 | Arnold Hovan | " |
| 1747 | John Kohanyi | " |
| 1988 | George Early | " |
| 1727 | Raymond Wierszylo | " |
| 1278 | John Conroy | " |
| 435 | Edward Coleman | " |
| 286 | James Chaloupka | " |
| 2111 | Michael Higgins | " |
| 871 | Thomas Hightower | " |
| 1807 | Paul Klepatzki | " |
| 2126 | Geza Kovacs | " |
| 1925 | Donald Kupiecki | " |
| | | |
| 1354 | Thomas Kostura | District 5 |
| 1361 | Franklyn Poledna | " |
| 115 | Robert Wood | " |
| 1358 | Thomas Liptak | " |
| 859 | Wylie Farrier | " |
| 304 | Delmar O'Hare | " |

(CONTINUED)

## GENERAL POLICE ORDER

No. 32-70                    HEADQUARTERS_____19__    September 10,    70

SUBJECT: _____ FIELD TRAINING OFFICERS _____

- 3 -

| 2309 | Roy Varner | District 5 |
|------|------------|------------|
| 1176 | Thomas Branch | " |
| 1198 | David Wise | " |
| 2057 | James Svekric | " |
| 1181 | Michael Savage | " |
| 433 | Thomas Kelly | " |
| 157 | Robert Soroky | " |
| 1884 | Henry Johnson | " |
| 757 | Steve Lecso | " |
| 1753 | Leonard Mack | " |
| 333 | Harry Pappas | " |
| 903 | John Patton | " |
| 1950 | Ronald Weber | " |
| 1163 | Robert Young | " |
| 102 | Norman Beighey | District 6 |
| 705 | James Howard | " |
| 326 | Joseph Papesch | " |
| 743 | Wilfred Bernhardt | " |
| 590 | John Butler | " |
| 598 | Gerald Schetterer | " |
| 209 | Michael Skorich | " |
| 1372 | Melvin Mitchell | " |
| 338 | Christopher Kirk | " |
| 1976 | Paul Falzone | " |
| 991 | John Bozich | " |
| 474 | Anderson Ridenour | " |
| 1882 | William Candow | " |

( CONTINUED )

# GENERAL POLICE ORDER

No. __32-70__          HEADQUARTERS____ September 10, __19_70__

SUBJECT : _____ FIELD TRAINING OFFICERS _____

### - 4 -

| | | |
|---|---|---|
| 351 | William Busse | District 6 |
| 1808 | Edward Babey | " |
| 152 | Morton Bernard | " |
| 2051 | Amos Floyd | " |
| 851 | Raymond Gullo | " |
| 2035 | George Utlak | " |
| 298 | Joseph Colan | " |
| 1601 | Thomas McNally | " |
| 2108 | John Hatala | " |
| 562 | Paul Pavia | " |

By order of,

LEWIS WM. COFFEY,
CHIEF OF POLICE

CLE000692

# GENERAL POLICE ORDER

No. __31-70__          HEADQUARTERS_____     September 1, 19 __70__

SUBJECT: BOMB THREATS - CLARIFICATION OF DISASTER
PLAN - GPO 39-63

TO THE MEMBERS OF THE DEPARTMENT

Threats of bombs placed or secreted in places of public
gathering, inhabited structures, or in any other place
shall be initially reported only by telephone except when
the circumstances are of such an emergency nature that the
imminence of an explosion and the hazard to safety of
human life, well being and property preclude the advisabil-
ity of this method. In this rare exceptional situation,
notifications shall be made by the most expeditious means
available.

Notification procedures outlined on Pages 10 and 11 of the
Disaster Plan shall be followed. Stated in part, they are:

> Members acquiring bomb threat or placement
> information shall --
>
> 1. Notify Police Radio immediately by TELEPHONE.
>
> 2. The Police Radio shall notify the Bomb Squad at
>    the Police Lab (SIU) - Line 312 or 327 - and the
>    Detective Division - Line 361 by TELEPHONE.
>
> 3. Most importantly, no publicity shall be given nor
>    made possible by the transmission of any informa-
>    tion beyond the necessary police duty channels

(CONTINUED)

## GENERAL POLICE ORDER

31-70                                        September 1, 70

No._____              HEADQUARTERS_____19___

BOMB THREATS - CLARIFICATION OF DISASTER

SUBJECT : _____ PLAN - GPO 39-63

- 2 -

until police action is underway to neutralize the
hazard and it has been authorized by the Chief of
Police or his designee.

Other procedures outlined in the Disaster Plan shall be
followed as and if they apply.

Commanding Officers shall cause thorough instruction of
all members in the provisions of these procedural
orders.

By order of,

LEWIS WM. COFFEY
CHIEF OF POLICE

CLE000694

## GENERAL POLICE ORDER

NO. 30-70          HEADQUARTERS          September 1, 19 70

SUBJECT: USE OF CITY CARS

TO THE MEMBERS OF THE DEPARTMENT

All members shall comply with the following directive

from the office of the Director of Public Safety.

"All departments have been advised that city cars are not

to be used for personal business without express consent

from this office.

Charges will be preferred against any employee in the

Safety Department who is detected using a city car on

personal business."

By order of,

LEWIS WM. COFFEY
CHIEF OF POLICE

CLE000695

## GENERAL POLICE ORDER

NO. 29-70                     HEADQUARTERS  August 17, 70  19

SUBJECT: UNUSUAL ACTIVITY PLANNING & CONTROL

TO THE MEMBERS OF THE DEPARTMENT

Copies of G. P. O. 29-70 Unusual Activity Planning and
Control are being forwarded to each District and Division.
They shall be distributed to each member.

Copies of Form C of C 71-1014 UNUSUAL ACTIVITY
REPORT and Form C of C-71-1015 AFTER ACTION REPORT
are also being forwarded to the Districts and Divisions.
They shall be used in conjunction with the operation of
this order.

By order of,

LEWIS WM. COFFEY,
CHIEF OF POLICE

CLE000696

## GENERAL POLICE ORDER

NO. 28-70                    HEADQUARTERS                July 30,        70
                                                                        19

SUBJECT : USE OF TRAFFIC SUMMONS FOR WATER CODE

- 2 -

The following numbered paragraphs of Training Bulletin
9.01 do not apply to Watercraft and shall be left blank

    Paragraphs 11-12-18-19-20-26-36

General Police Order 39-68 shall govern the Setting of
Court Date, Forwarding of Citations, Proper Completion
of Affidavit and any other required action not conflicting
with a Citation for a Moving Violation as opposed to Water
Traffic Code Violation.

By order of,

LEWIS WM. COFFEY,
CHIEF OF POLICE

CLE000697

## GENERAL POLICE ORDER

No. 28-70          HEADQUARTERS July 30,          19 70

SUBJECT: USE OF TRAFFIC SUMMONS FOR WATER CODE

TO THE MEMBERS OF THE DEPARTMENT

Effective August 1, 1970, the standard Notice to Appear
(Moving Traffic Citation) shall be issued to operators of
watercraft violating the Water Traffic Code (Sections 9.5501
to 9.6310 of the Codified Ordinances).

The Notice to Appear shall be completed according to
provisions of GPO 39-68 and Training Bulletin 9.01 of
December 27, 1968 with the following exceptions:

TRAINING BULLETIN 9.01

Paragraph 10  "LICENSE NUMBER"- These words to be
              crossed out and the word "WATERCRAFT"
              inserted in the space allocated for the number.
Paragraph 21(H) "BODY" - In this section the length of the
              Watercraft shall be inserted by the use of
              numbers, in feet and inches.
Paragraph 21(L) "UPON PUBLIC HIGHWAY, NAMELY"-
              These words shall be crossed out so that
              only the word "UPON" remains and then the
              appropriate name of the body of water in-
              serted where the violation occurred, i. e.,
              Lake Erie, Cuyahoga River, etc.

(CONTINUED)

## GENERAL POLICE ORDER

No. 27-70                    HEADQUARTERS           July 17,          1970

SUBJECT:  USE OF PRIVATE AUTOS FOR DISTRICT
          CIVILIAN DRESS SQUADS AND OTHER
          POLICE DUTIES,

TO THE MEMBERS OF THE DEPARTMENT

Members shall not use their private autos for under-
cover work as a routine, on-going procedure, This
restriction includes District Civilian Dress Squad
vice enforcement activities.  Liability insurance
requirements and the absence of general provisions
for mileage reimbursement are the prohibitive
factors necessitating this policy.

Use of private autos shall continue to be authorized
on an individual basis and for specified police
activties.

Mileage reimbursement requests must be made by
Form #1  report and upon special forms available at
the Chief's Office.

                         By order of,
                         LEWIS WM. COFFEY
                         CHIEF OF POLICE

CLE000699

# GENERAL POLICE ORDER

NO. __26-70__          HEADQUARTERS_____ __July 16,__ 19 __70__

SUBJECT: __TRAFFIC SIGNAL OUTAGES__

## TO THE MEMBERS OF THE DEPARTMENT

When a traffic signal is completely out, the message shall be transmitted "SIGNAL ALL OUT".

For partial outages or partly inoperative traffic signal lights, the malfunction shall be transmitted as East Bound red out, North Bound green out, etc.

Reports of traffic signal lights out of order shall be given by radio as the most direct measure of preventing accidents.

Strict compliance with above instructions is necessary to establish priorities in assignments to assure the dispatch of a properly equipped repair crew.

By order of,

LEWIS WM. COFFEY,
CHIEF OF POLICE

CLE000700

## GENERAL POLICE ORDER

No. __25-70__          HEADQUARTERS_____July 14._____19_70_

SUBJECT: __LITIGATION AGAINST POLICE PERSONNEL --__
CITY INVOLVED

TO THE MEMBERS OF THE DEPARTMENT

Effective immediately all original copies of law suits
brought against this department or individual members
shall be forwarded to the Chief's Office with the report
requesting representation by the Law Department of the
City of Cleveland.

Rule 69 of the Manual of Rules, referring to a "Copy of
all legal service" shall be interpreted as meaning the
"Original Copy".

By order of,

LEWIS WM. COFFEY,
CHIEF OF POLICE

GENERAL POLICE ORDER

No. 24-70          HEADQUARTERS_____ July 9,     70___

SUBJECT: ILLEGAL DRUG LABORATORY INVESTIGATIONS
         -- POLICE OPERATIONAL PROCEDURES

- 3 -

with water by flushing down a toilet or by pouring water
on them.

8. NO ONE BY THE POLICE CHEMIST IS TO HANDLE
   ANY SUSPECTED CHEMICALS.

9. THE NEED FOR EXTREME CAUTION CANNOT BE
   OVER EMPHASIZED.


                    By order of,

                    LEWIS WM. COFFEY,
                    CHIEF OF POLICE

CLE000702

## GENERAL POLICE ORDER

NO. __24-70__          HEADQUARTERS_____ July 9, ___19 70

SUBJECT: ILLEGAL DRUG LABORATORY INVESTIGATIONS
-- POLICE OPERATIONAL PROCEDURES

- 2 -

shall be notified to call one to the scene.
c. Narcotics Unit
d. Fire Department, to provide stand-by fire protection

2. Evacuate and detain any persons found in the suspected laboratory.

3. Do not -re-enter the premises until the arrival of the Police Chemist.

4. Do not smoke or use or permit fire or flames on or in the immediate vicinity of the premises.

5. No photographer, Police, civilian, or news media shall use any electrically operated device such as electrically operated cameras, flashbulbs, strobes, or solenoids until the premises has been secured and approval given for their use by the Police Chemist.

6. No operational equipment or switches of any kind shall be handled or turned On or Off by anyone other than the Police Chemist.

7. Under no circumstances should any of the chemicals found in a search of this nature be places in contact

(CONTINUED)

CLE000703

# GENERAL POLICE ORDER

No. 24-70          HEADQUARTERS_____ July 9,      ,70

SUBJECT: ILLEGAL DRUG LABORATORY INVESTIGATIONS
--POLICE OPERATIONAL PROCEDURES

TO THE MEMBERS OF THE DEPARTMENT

The illegal manufacture of drugs in unlicensed and unauthor-
ized laboratories involves processes which present great
potential hazard to life and property of citizens and the
officers who become involved in their discovery or investi-
gation.

Illicit laboratories are usually inadequately ventilated and
unsafe. The vapors and the chemicals present may be
subject to spontaneous violent explosion or could be
noxious and quickly render a person unconscious.

These illegal laboratories can be identified by the presence
of laboratory equipment such as chemicals in jars or bottles
(often brown in color) or in cans with labels, the smell
of ether or other organic material, glassware (beakers,
jars, test tubes, etc.), rubber tubing or plastic tubing,
hotplates, Bunsen burners, etc.

Members shall be governed by and comply with the follow-
ing instructional directives, whenever a suspected illegal
laboratory is discovered:

1. Notify Radio immediately.  Radio shall immediately
   notify the following:
   a. District Supervisory Officers.
   b. Police Chemist at the Laboratory. If none is on duty,
      the office of the Division of Criminal Investigation

(CONTINUED)

CLE000704

## GENERAL POLICE ORDER

NO. __23-70__          HEADQUARTERS_____ July 2, ___19__70__

SUBJECT: SNIPER ATTACK PROCEDURES - DEPARTMENTAL TRAINING BULLETIN 81.54

TO THE MEMBERS OF THE DEPARTMENT

Procedural guidelines for sniper attack incidents have been prepared in the form of Training Bulletin 81.54 which shall be considered an integral part of this order.

Each member shall receive a copy which he shall permanently retain for future reference.

Commanding Officers shall assure distribution to each member within their commands.

Copies of this Training Bulletin have been forwarded to all Line Units for immediate use of Superior Officers who shall thoroughly instruct members in these procedures at Roll Calls until all are thoroughly familiarized.

By order of,

LEWIS WM. COFFEY,
CHIEF OF POLICE

CLE000705

## GENERAL POLICE ORDER

NO. 22-70                    HEADQUARTERS_____ June 30, 19 70

SUBJECT : COMMUNICATIONS FROM FOREIGN SOURCES
CONCERNING ALIENS

TO THE MEMBERS OF THE DEPARTMENT

All mail from foreign sources concerning aliens in the

United States shall be forwarded to the Immigration and

Naturalization Service via the Chief's Office.

These inquiries usually request assistance in locating

an alien and the local office of the Immigration and

Naturalization Service will take appropriate action in

response to such communications.

By order of,

LEWIS WM. COFFEY,
CHIEF OF POLICE

---

## GENERAL POLICE ORDER

NO. __21-70__          HEADQUARTERS_____ June 24, __1970__

SUBJECT: __FIREARMS SEIZURE PROPERTY HANDLING__
          PROCEDURES

- 2 -

Sections of the tag that are captioned "Property Room"
and "S.I.U." shall be left blank for the use of those units.

Firearms with tag and bag attached, shall be forwarded to
the Division of Criminal Investigation for Laboratory
processing before being taken to the Property Unit for
safe keeping.

The Form 60-1 Bag and Tag are available at the Supply
Unit and shall be requisitioned by all Line Units.

                    By order of,

                    LEWIS WM. COFFEY,
                    CHIEF OF POLICE

CLE000707

## GENERAL POLICE ORDER

NO. 21-70          HEADQUARTERS _____ June 24, 70 19 __

SUBJECT : FIREARM SEIZURE PROPERTY HANDLING PROCEDURES

TO THE MEMBERS OF THE DEPARTMENT

Effective July 1, 1970 all members shall be governed by the following property handling procedures when a firearm is seized or acquired in any manner.

A combination cloth bag and tag, identified as Departmenta Form 60-1, shall be utilized. The tag portion shall be completed to serve as the identifying property tag and the bag shall serve as the container for any live cartridge, empty cartridge cases, spent pellets, cartridge clips or other related item or pertinent part of the firearm.

The member who originally acquires possession of the firearm shall record the data on the tag, attach it to the trigger guard of the weapon, enclose the related property items in the bag along with a folded copy of the Firearms Seizure Report and make the necessary Property Book entry. At no time shall the firearm be inserted into the bag.

In completing the tag, members must be accurate and thorough in their entries. The description of the "Article" on the second line shall include brand name, guage or caliber, serial number and list of the items placed in the bag.

{CONTINUED}

GENERAL POLICE ORDER

No. 20-70                    Headquarters      June 5, 1970

Subject:    AMENDMENTS TO THE MANUAL OF RULES

TO THE MEMBERS OF THE DEPARTMENT

By the authority of Lt. Gen. Benjamin O. Davis, Jr., Director of Public Safety,
the Manual of Rules of the Department of Public Safety, Division of Police shall
be revised as follows:

Under ORGANIZATION--PERSONNEL

### Section 1

The order of rank in the Division of Police shall be as follows:

(1) Chief of Police
(2) Deputy Chief
(3) Inspectors
(4) Deputy Inspectors
(5) Captains
(6) Lieutenants
(7) Sergeants
(8) Patrolmen

No person holding any of the above ranks in the Department of Public Safety shall
perform any work which is of the same nature as, or included within, the duties
of other classified employees of the City, except such as is immediately essential
to the performance of the duties of such rank as is necessarily incidental thereto.

Section IX--ACTING CHIEF amended to:

### Section IX

### DEPUTY CHIEF

The Chief of Police shall designate an Inspector to serve in the capacity of Deputy
Chief and he shall perform such duties as are assigned by the Chief. During the
absence of the Chief of Police, the Deputy Chief shall serve in the capacity of
Acting Chief.

These revisions shall become effective June 5, 1970 and copies shall be distributed
to all members.

By order of,

LEWIS WM. COFFEY,
CHIEF OF POLICE



THE CLEVELAND POLICE DEPARTMENT
ORGANIZATION CHART
LEWIS WM.COFFEY, CHIEF OF POLICE

CLE000710

# GENERAL POLICE ORDER

NO. 19-70                  HEADQUARTERS_____ June 5, __18 70

SUBJECT: __DEPARTMENTAL ORGANIZATION__

TO THE MEMBERS OF THE DEPARTMENT

Copies of the new Police Department Organization Chart

have been prepared and will be forwarded to the Districts

and Divisions. .

The new Organization Structure becomes effective June

5, 1970.

All members shall familiarize themselves with the

Organization Chart and the chain of command outlined

and shall govern themselves accordingly.

By order of,

LEWIS WM. COFFEY,
CHIEF OF POLICE

## GENERAL POLICE ORDER

NO. 18-70          HEADQUARTERS          May 25, 19 70

SUBJECT: CLARIFICATION OF G.P.O. #9-69 - PHYSICAL
TRAFFIC ARRESTS

TO THE MEMBERS OF THE DEPARTMENT.

That section of G.P.O. #9-69 which begins with "Whenever
the Prosecutor must be consulted" and ends with, "shall not
be sworn to or signed by the Sergeant or Lieutenant Deputy
Clerk", shall be interpreted as follows: The Affidavit section
of the Notice to Appear shall not be signed in the cases of
physical booking when the Prosecutor must be consulted for
the specific charge of Driving While Intoxicated, Reckless
Driving, Traffic Manslaughter, Drag Racing and any other
violation which shall require a ruling by a Prosecutor and
the appearance of an arresting officer at both the Prosecu-
tor's Office and in Court. In all other instances the affidavit
section of the Notice to Appear shall be completed by the
Sergeant or Lieutenant designated as a Deputy Clerk of Court

By order of,

LEWIS WM. COFFEY,
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. __18-70__          HEADQUARTERS_____ May 25, __19 70__

SUBJECT: _ CLARIFICATION OF G. P. O. #9-69 - PHYSICAL
          TRAFFIC ARRESTS

TO THE MEMBERS OF THE DEPARTMENT.

That section of G. P. O. #9-69 which begins with "Whenever
the Prosecutor must be consulted" and ends with, "shall not
be sworn to or signed by the Sergeant or Lieutenant Deputy
Clerk", shall be interpreted as follows: The Affidavit section
of the Notice to Appear shall not be signed in the cases of
physical booking when the Prosecutor must be consulted for
the specific charge of Driving While Intoxicated, Reckless
Driving, Traffic Manslaughter, Drag Racing and any other
violation which shall require a ruling by a Prosecutor and
the appearance of an arresting officer at both the Prosecu-
tor's Office and in Court. In all other instances the affidavit
section of the Notice to Appear shall be completed by the
Sergeant or Lieutenant designated as a Deputy Clerk of Court

By order of,

LEWIS WM. COFFEY,
CHIEF OF POLICE

## GENERAL POLICE ORDER

NO. 17-70          HEADQUARTERS_____ May 13, _____19 70

SUBJECT: PROMOTION BIOGRAPHICAL SKETCH
         INFORMATION

TO THE MEMBERS OF THE DEPARTMENT

When a member receives notification to appear for
promotion, he shall forthwith submit a Form # 1 report
through channels containing a short biography which
shall include the following information: Age, years in
service, present address, wife's name and the names
and ages of their children.

Members to be promoted shall appear in uniform for
the administration of the oath of office.


By order of,

LEWIS WM. COFFEY,
CHIEF OF POLICE

# GENERAL POLICE ORDER

No. 16-70                    HEADQUARTERS_____    May 8,    1970

SUBJECT: ___ PARKING RESTRICTIONS _____

TO THE MEMBERS OF THE DEPARTMENT

Parking on the garage roof and the adjacent ground level
lots between the ramp leading to the garage roof and the
building shall be restricted to police vehicles only and to
those persons who have been given permission to park
there by the Chief of Police.

Parking in the area between the garage roof ramps and
the garage entrance ramp shall also be restricted by
special permit.

Vehicles parked in these areas will be subject to
ticketing and removal.

By order of,

LEWIS WM. COFFEY,
CHIEF OF POLICE

CLE000715

## GENERAL POLICE ORDER

NO. 15-70          HEADQUARTERS          May 7,          19 70

SUBJECT: SUPPLEMENT TO GPO 34-69 - AMENDED AAA
TOW PROCEDURES - "NO WAIT" RULE

TO THE MEMBERS OF THE DEPARTMENT

During the night season, particularly between midnight

and 6:00 A.M., members who have occasion to order a

AAA Tow shall remain on the scene and await the arrival

of the tow truck whenever their presence appears necessary

This decision shall be based upon the need for protection

of the auto and the assistance and/or protection of the

Tow Truck operators.

By order of,

LEWIS WM. COFFEY,
CHIEF OF POLICE

## GENERAL POLICE ORDER

NO. 14-70          HEADQUARTERS          May 1, 19 70

SUBJECT: REQUESTS FOR TRANSFER - PERSONNEL ROTATION

TO THE MEMBERS OF THE DEPARTMENT

For effective furtherance of an equitable system of assign-
ments and rotation of personnel it is essential that there
be a free flow of information to the Chief's Office.

RULE 96 of the RULES & REGULATIONS provides:

"Officers and members desiring a transfer or special
assignment or wishing to express dissatisfaction with the
treatment accorded them by their Superior Officers, shall
make a report in writing, which shall be forwarded to the
Chief of Police."

These reports shall not require a Superior Officer's approv-
al. They shall be forwarded via locked box, in sealed en-
veopes, to the Commanding Officer of Headquarters Staff
where they will be considered confidential and only for use
in determining assignments fairly and in a manner which
will serve the best interests of the Department.

Form 1 requests for transfer shall contain all pertinent
information, including:

(1) Date of Appointment
(2) Number of years in current assignment
(3) Reason for request
(4) New Assignment preferred and qualifications

By order of,

LEWIS WM. COFFEY,
CHIEF OF POLICE

CLE000717

## GENERAL POLICE ORDER

No. 13-70                    HEADQUARTERS                    April 15, 19 70

SUBJECT: STOLEN AUTO PROSECUTIONS - PROCEDURES
FOR SECOND AND SUBSEQUENT OFFENSES OF
ORC. SECTION 4549.04

- 2 -

Whenever an arrest is made for any of these offenses,
a complete record check shall be made by the arresting
officers and the details included in reports, along with the
names of the officers who made the record search.

Detectives assigned to Auto Theft investigations are
charged with the responsibility of assuring the inclusion
of the fact of a former conviction of ORC. Section 4549.04
into the affidavit which shall state that it is a second or
subsequent offense.

They shall be further charged with the responsibility of
the presentation into evidence of the Court Record of such
prior conviction by obtaining a copy or transcript from
local courts or from other counties throughout the State.

By order of,

LEWIS WM. COFFEY,
CHIEF OF POLICE

CLE000718

## GENERAL POLICE ORDER

No. 13-70          HEADQUARTERS          April 15,          19 70

SUBJECT: STOLEN AUTO PROSECUTIONS - PROCEDURES
FOR SECOND AND SUBSEQUENT OFFENSES OF
ORC. SECTION 4549.04

TO THE MEMBERS OF THE DEPARTMENT

ORC. SECTION 4549.04 - No person shall commit any of
the following acts:

    A. Steal any motor vehicle;

    ----(See "B" below)

    C. Buy or conceal any motor vehicle that has been
       stolen, knowing it to have been stolen;

    D. Knowingly conceal a person who has stolen any
       motor vehicle.

       PENALTY FOR VIOLATIONS --
       1st OFFENSE -- not less than one nor more than
       twenty years.
       EACH SUBSEQUENT OFFENSE -- not less than
       five nor more than thirty years.

    B. Purposely take, drive, or operate any motor
       vehicle without the consent of the owner.

       PENALTY FOR VIOLATIONS --
       1st OFFENSE -- $500.00 - not more than six months.
       EACH SUBSEQUENT OFFENSE -- not less than one
       nor more than twenty years.
                (CONTINUED)

## GENERAL POLICE ORDER

No. 12-70          HEADQUARTERS          April 15,          19 70

SUBJECT: FIREARM SEIZURE REPORT FORM - REPORTING
PROCEDURE

- 4 -

Commanding Officers shall cause compliance with this
order through the direct supervision by Superior Officers
in their respective commands and their careful examina-
tion of reports.

By order of,

LEWIS WM. COFFEY,
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 12-70                    HEADQUARTERS            April 15,        70

SUBJECT: FIREARM SEIZURE REPORT FORM - REPORTING
PROCEDURE

- 3 -

Describe in detail the circumstances under which the
firearm was confiscated, at the bottom of the report form,
using a second page if necessary. Such information shall
be concise, yet detailed, providing sufficient information
concerning the circumstances for the seizure so that a
decision can be made whether to confiscate the firearm
or return it to the owner.  The officer charged with the
responsibility to make the decision to confiscate or re-
turn to the owner, should not be required to make further
inquiries, such as reviewing crime reports, etc., in
order to obtain the information necessary for such decision.
In order to reach such decision, additional information
could often be included in such report which could not or
should not be included in an official report.

The property tags attached to the firearms seized shall
be completed in their entirety, as nearly as possible,
including the names and rank, or numbers, of the arrest-
ing officers or officers who seized, found or otherwise
obtained the weapon, as well as the name and rank of the
officer in charge.

When an arrest is made in connection with a Firearm
Seizure, the Form # 1 Investigation Arrest report shall be
attached to the Firearm Seizure report except the two
copies which must be forwarded to the Detective Division
with the person arrested.

(CONTINUED)

CLE000721

GENERAL POLICE ORDER

No. 12-70     HEADQUARTERS     April 15, 19 70

SUBJECT: FIREARM SEIZURE REPORT FORM - REPORTING
PROCEDURE

– 2 –

if other than the owner. When principals have no middle
name, the letters "N.M.N." shall be entered between the
first and last name for verification of this fact. All other
items required on the report shall be supplied as com-
pletely as possible,

It is important that the firearm be described as to type,
caliber or guage with foreign makes appropriately express-
ed in millimeters, color of metal finish and serial number,
in the following general categories:

1) Revolver
2) Automatic Pistol
3) Derringer
4) Rifle -- Sliding, bolt or lever action repeater, automa-
        tic, single shot.
5) Shotgun -- Sliding or bolt action repeater, automatic
        double barrel, single barrel.

Note: Serial numbers of some of the old hand guns are
        located under the grips.

Should such firearm be a machine gun, a sawed-off shot-
gun or rifle, the barrel length and overall length or other
description, shall be given to show whether or not such
firearm is in violation of the Ohio Revised Code - Sections
2923.03 or 2923.04.

(CONTINUED)

CLE000722

## GENERAL POLICE ORDER

No. __12-70__          HEADQUARTERS____April 15,_____ 1970

SUBJECT : FIREARM SEIZURE REPORT FORM - REPORTING
PROCEDURE

TO THE MEMBERS OF THE DEPARTMENT

A standardized form has been prepared for Firearm
Seizure reports and supplies shall be forwarded to all
Districts, Divisions, and Units of Line Operations.

Its purpose is to provide uniformity and to assure acqui-
sition of all information needed to process firearms that
come into custody of the Department, in order that a proper
determination can be made as to the disposition of the
weapon in each case.

The Firearm Seizure report shall be made in every case
regardless of the manner in which Departmental custody
or control occurs, including those seized, found or turned
over to members of the Department.

Four copies of such report, an original and three copies,
shall be made. The original and one copy is to be for-
warded to the Mail Unit. A copy shall be attached to the
firearm and forwarded to the Ballistics Unit as is present-
ly being done, and the final copy shall be retained in
District, Division or Unit files where the report was made.

In order to establish proper identity, the first, middle
and last name, alias if any, and address of the owner must
be entered in such firearm seizure reports, as well as
that of the person from whom taken or otherwise obtained,

(CONTINUED)

# GENERAL POLICE ORDER

NO. __11-70__                  HEADQUARTERS_____ April 14, __19__ 70

SUBJECT : __ARREST AND BOOKING PROCEDURES IN CIVIL__
          DISORDERS AND RIOTS

- 2 -

2. When possible, short signed statements shall
   be obtained from them and they shall be ad-
   vised to appear before the prosecutor and/or
   in court.

3. Whenever possible, two officers should make
   the arrest together in order to provide cor-
   roboration of each other's testimony.

4. Officers shall gather evidence and record in
   their notebooks the details which establish the
   elements of the offense, defendants statements
   and witnesses identities.

5. The Field Booking process shall be completed
   at the scene of the arrest.

Field Booking responsibilities fall upon S.I.U. personnel
and A.I.U. personnel of the Traffic Division. Upon receipt
of information of impending or potential civil disturbance,
the Commanding Officers or Officers in Charge shall
dispatch teams of these officers to the scene with the
necessary equipment which shall include Field Booking
forms, polaroid or regular cameras and fingerprint inkpads

This order requires strict compliance and Commanding
Officers shall cause sufficient instruction of all sub-
ordinates to thoroughly familiarize them with its
provisions.

                              By order of,

                              LEWIS WM. COFFEY,
                              CHIEF OF POLICE

## GENERAL POLICE ORDER

No.___11-70___          HEADQUARTERS_____ April 14,____19_70

SUBJECT : __ARREST AND BOOKING PROCEDURES IN CIVIL__
DISORDERS AND RIOTS

TO THE MEMBERS OF THE DEPARTMENT

During riot and civil disturbances when arrests are made
it is essential that the prisoner be booked to the officers
who actually initiated the arrest action.

It shall be the responsibility of transporting officers to
obtain the names and rank or badge number of the
arresting officers in addition to the nature and details of
each offense.

No circumstances of turmoil or confusion shall excuse
any failure to secure the information, and in its absence,
the transporting officers shall bear the legal responsi-
bility of the arrest and prosecution which will then be
charged to them.

Departmental policy continues to require total restraint
in face of verbal abuse, an amount and type of force that
does not exceed the minimum amount necessary to effect
an arrest or overcome an assailant, and arrests for
clear-cut violations of the law as they become necessary
to protect life and property or to restore order.

As outlined in Training Bulletin 82.53, Paragraphs 41-46,
the following additional procedures shall prevail:

> 1. Complainants and witnesses shall be
>    identified and named in the affidavit.

2909.26    No person shall enter without legal justification upon the
           premises of another during a public emergency arising out of
           riot, insurrection, invasion, storm, flood, or other disaster,
           or when such premises are damaged by reason of vandalism, riot,
           insurrection, invasion, fire, explosion, callapse, storm, flood,
           or other calamity. Whoever violates this section is guilty of
           trespass upon damaged premises, and shall be fined not more than
           five hundred dollars or imprisoned not more than six months, or
           both.

2917.211   No person shall trespass, loiter, or remain in the building or
           upon the grounds of any school, in violation of the rules and
           regulations of the board of education or other authority of the
           school district in which such school is located. Whoever violates
           this section shall be fined not more than ten dollars or
           imprisoned not more than ten days, or both.

2917.45    No person, either alone or in company with others, shall appear
           on any street or highway, or in other public places or any
           place open to view by the general public, with his face partially
           or completely concealed by means of a mask or other regalia or
           paraphernalia, with intent thereby to conceal his identity.
           Section does not cover concealment in good faith for the purpose
           of amusement or entertainment. Whoever violates this section
           shall be fined not more than one thousand dollars or imprisoned
           not more than six months, or both.

2921.05    No person shall contemptuously print, paint or place a word,
           figure, mark, picture, or design, upon a flag, standard, color,
           or ensign of the United States or this state, or cause it to be
           done, or expose or cause to be exposed, such flag, standard,
           color, or ensign upon which is printed, painted, or placed, or
           to which is attached or appended a word, or figure, mark, picture,
           or design. No person shall manufacture or have in his possession
           an article of merchandise upon which is placed or attached a
           contemptuous representation of such flag, standard, color, or
           ensign, or publicly mutilate, burn, destroy, defile, deface,
           trample upon, or otherwise cast contempt upon such flag, standard,
           color, or ensign. Whoever violates this section shall be fined
           not less than one hundred dollars nor more than one thousand
           dollars or imprisoned not less than thirty days nor more than one
           year, or both.

2923.43    No person shall willfully obstruct, impede, or hamper in any way
           the lawful operations of the sheriffs, policemen, or other law
           enforcement officers, or firemen, rescue personnel, medical
           personnel, or other authorized persons, at the scene of fires,
           accidents, disasters, or emergencies of any kind, and no person
           shall willfully fail to obey the lawful orders of sheriffs,
           policemen, or other law enforcement officers, engaged in the
           performance of their duties at the scene of or in connection with
           fires, accidents, disasters, or emergencies of any kind. Whoever
           violates this section shall be fined not less than fifty dollars
           nor more than five hundred dollars, or imprisoned in the county
           jail or workhouse not less than thirty days nor more than six
           months, or both. Section does not apply to the news media in
           the lawful excercise of their duties.

The following laws supplement those listed under paragraph 45, training bulletin 82.53, issued for the purpose of instructing officers in mob control techniques.

2901.251    No person shall willfully and maliciously throw, or by other means propel, a stone or other hard substance at or towards any person. Whoever violates this section shall be fined not less than ten dollars nor more than five hundred dollars or imprisoned in the county jail not more than six months, or both.

2901.252    A. No person shall knowingly assault and strike or wound a law enforcement officer or fireman in the lawful performance of his official duties.

B. No person shall knowingly assault and strike or wound a law enforcement, officer, fireman, or member of the organized militia or armed forces of the United States, in the lawful performance of his official duties during a riot.

C. Whoever violates division (A) of this section shall be fined not more than one thousand dollars and imprisoned not less than fifteen days nor more than one year, and no court shall suspend the first five days of the sentence of imprisonment. Whoever violates division (B) of this section shall be fined not more than one thousand dollars and imprisoned not less than thirty days nor more than one year, or imprisoned not less than one year nor more than three years, and no court shall suspend the first thirty days of such sentence of imprisonment. When the badge of a uniformed officer engaged in riot control is obscured, such officer shall display some other individually identifying marking.

2907.021    No person shall possess the materials for the manufacture of fire bombs with the intention of using such materials for the manufacture of fire bombs.
No person shall manufacture, distribute, possess or use fire bombs. A fire bomb means a container containing gasoline, kerosene, fuel oil, or similar substance with a flash point of one hundred seventy degrees fahrenheit or less, having a wick or other device capable of igniting such liquid. Whoever violates this section shall be imprisoned not less than one year nor more than five years.

2907.08    No person shall maliciously, with intent to cause damage or injury to persons or public or private property, tamper with, destroy, cut, smash, or in any way interfere with communication equipment, electrical wiring, devices, or equipment, or gas, natural or otherwise, or water mains, lines, fire hydrants, reservoirs, or storage tanks. Whoever violates this section shall be fined not more than ten thousand dollars or imprisoned not less than one nor more than twenty years, or both.

2909.12    No person shall willfully and maliciously throw a stone or other hard substance or shoot a missile at or from a railway car, train, locomotive, cable car, or street railway car, trolley bus, motor bus, or other motor vehicle, or at or from a steam vessel or watercraft on any of the waters within or bordering on this state. Whoever violates this section shall be fined not less than fifty nor more than five hundred dollars or imprisoned in the county jail not more than six months, or both.

CLE000727

2923.55    Police officers, special police officers, sheriffs, deputy
sheriffs, highway patrolmen, other law enforcement officers,
members or the organized militia, members of the armed forces
of the United States, and firemen, when engaged in suppressing
a riot or in dispersing or apprehending rioters and after an
order to desist and disperse has been issued pursuant to section
2923.51 of the Revised Code, are guiltless for killing, maiming,
or injuring a rioter as a consequence of the use of such force
as is necessary and proper to suppress the riot or disperse or
apprehend rioters.  This section does not relieve a member of
the armed forces of the United States or organized militia from
prosecution by court-martial for a military offense.

3761.16    The chief administrative officer of a political subdivision
with police powers, when engaged in suppressing a riot, or when
there is a clear and present danger of a riot,
A. may cordon off any area or areas threatened by such riot
and prohibit persons from entering such area or areas except
when carrying on necessary and legitimate pursuits,
B. and may prohibit the sale, offering for sale, dispensing, or
transportation of firearms or other dangerous weapons,
ammunition, dynamite, or other dangerous explosives in, to,
or from such areas.
C. No person shall willfully fail to obey a lawful order of any
sheriff, municipal police officer, or other officer, given
pursuant to this section.
Whoever violates this section shall be fined not more than
five hundred dollars or imprisoned not less than thirty days
nor more than one year, or both.

3761.13 to 3761.15 Repealed.  See now 2923.51 to 2923.55.

2909.09    VANDALISM
No Person shall maliciously injure or deface a church ediface,
schoolhouse, library, tombstone or other cemetary property,
dwelling house, or other building, its fixtures, books, or
appurtances, or commit a nuisance therein, or purposely and
maliciously commit a trespass upon the enclosed grounds attached
thereto or fixtures placed thereon, or an enclosure or side-
walk about such grounds.
Whoever violates this section shall be fined not more than
five hundred dollars or imprisoned for not more than one year,
or both.

4511.02    COMPLIANCE WITH ORDER OF POLICE OFFICER
No person shall fail to comply with any lawful order or
direction of any police officer invested with authority to
direct, control, or regulate traffic.
No person shall operate a motor vehicle so as to willfully
elude or flee a police officer after receiving a visible or
audible signal from a police officer to bring his motor vehicle
to a stop.

THE ABOVE TWO SECTIONS UP-DATE THE SECTIONS  IN PARAGRAPH 45 of 82.53

2923.51   Where five or more persons are engaged in violent or tumultuous
          conduct which creates a clear and present danger to the safety
          of persons or property, a law enforcement officer, or commissioned
          officer of the organized militia or armed forces of the United
          States called to duty to protect against domestic violence, shall
          forthwith upon view, or as soon as may be on information, and
          unless prevented by such persons, order such persons to desist
          and disperse to their several homes or lawful employment.  Such
          order shall be given by such means and as often as necessary to
          reasonably insure that it is heard, unless the giving or hearing
          of such order is prevented by such persons.  Whoever refuses or
          knowingly fails to obey such order shall be fined not more than
          fifty dollars.

2923.52   Second degree riot.

          No person shall participate with four or more others in violent
          or tumultuous conduct;
               A. To do a lawful act with unlawful force and violence
          in such a manner as to create a clear and present danger to
          the safety of persons or property;
          B. With intent to prevent or coerce official action, or to hinder,
          impede, or obstruct a function of government;
          C. With intent to commit or facilitate the commission of a
          misdemeanor.
          Whoever violates this section is guilty of riot in the second
          degree, and shall be fined not more than one thousand dollars
          or imprisoned not more than one year, or both.

2923.53   First degree riot.

          No person shall participate with four or more others in violent
          or tumultuous conduct;
          A. With intent to commit or facilitate the commission of a
          felony;
          B. With intent to commit or facilitate the commission of any
          offense involving force or violence against persons, whether
          such offense is a misdemeanor or felony;
          C. When the actor or any participant to the knowledge of the
          actor uses or intends to use a firearm or other deadly weapon,
          or dynamite or other dangerous explosive, or any incendiary
          device.
          Whoever violates this section is guilty of riot in the first
          degree, and shall be fined not more than one thousand dollars or
          imprisoned not more than one year, or both, or shall be
          imprisoned not less than one year nor more than three years.

2923.54   No person shall purposely or knowingly urge, incite, or encourage
          another to riot in violation of section 2923.53 of the Revised
          Code, when such conduct proximately results in the commission of
          such offense, or is under circumstances which produce a clear
          and present danger that any such offense will be committed.
          Whoever violates this section is guilty of inciting to riot,
          and shall be fined not more than one thousand dollars or
          imprisoned not more than one year, or both, or shall be imprisoned
          not less than one nor more than three years.

2923.41   DISTURBING THE PEACE; PENALTIES

No person shall, after a request to desist, make,
continue or cause to be made by the use of any horn,
bell, radio, loudspeaker, or by the operation of
any instrument or device, any unreasonable loud,
disturbing, and unnecessary nois or noises of such character
intensity and duration as to disturb the peace and
quiet of the community, or to be detrimental to the
life and health of any individual, and no person
shall willfully conduct himself in a noisy, boisterous
or other disorderly manner by either words or acts
which disturb the good order and quiet of the
community. Any person so offending shall be fined
for each offense not less than ten dollars nor more
than fifty dollars.

2923.42   GIVING FALSE INFORMATION TO OFFICIALS

No person shall knowingly give or assist in giving
a false or fictitious call or report to the state
highway patrol or to any police department, fire
department, sheriff, constable, or other law en-
forcement officer, or to any person dispatching or
operating an ambulance or other emergency vehicle
with intent to mislead, misdirect, or improperly
summon said officer or person.

No person shall knowingly give a false or fictitious
call or report to school officials or other persons
in charge of locations where groups of persons
assemble when the nature of such false or fictitious
call or report results in a law enforcement action.

Whoever violates this section shall be fined not
more than one thousand dollars or imprisoned for
not more than one year, or both.

**2923.43  Interfering at scene of fire, accident, or other disaster.**

No person shall willfully obstruct, impede, or hamper in any way the lawful operations of sheriffs, policemen, or other law enforcement officers, or firemen, rescue personnel, medical personnel, or other authorized persons, at the scene of fires, accidents, disasters, or emergencies of any kind, and no person shall willfully fail to obey the lawful orders of sheriffs, policemen, or other law enforcement officers, engaged in the performance of their duties at the scene of or in connection with fires, accidents, disasters, or emergencies of any kind.

Whoever violates this section shall be fined not less than fifty nor more than five hundred dollars, or imprisoned in a county jail or workhouse not less than thirty days nor more than six months, or both. Nothing in this section shall be construed to limit access or deny information to any news media representatives in the lawful exercise of their duties.  (132 v H 332. Eff. 11-8-67)

**2923.51  Dispersing of riotous group.**

Where five or more persons are engaged in violent or tumultuous conduct which creates a clear and present danger to the safety of persons or property, a law enforcement officer, or commissioned officer of the organized militia or armed forces of the United States called to duty to protect against domestic violence, shall, forthwith upon view or as soon as may be on information, and unless prevented by such persons, order such persons to desist and disperse to their several homes or lawful employments. Such order shall be given by such means and as often as necessary to reasonably insure that it is heard, unless the giving or hearing of such order is prevented by such persons. Whoever refuses or knowingly fails to obey such order shall be fined not more than fifty dollars.  (132 v H 996.  Eff. 6-13-68)

Annotations from former analogous section

RC 3761.13

Helping to Cool the Long Hot Summers, Frederick Bernays Wiener.  53 Am Bar Asso Jour 713 (1967).

A municipal ordinance which forbids anyone from making "himself a part of any noisy, boisterous or disorderly assemblage of persons, countenancing the same by his presence, which annoys the inhabitants of the city, or any portion thereof," constitutes an unreasonable infringement on the right of free assembly as guaranteed by the U.S. Constitution, Am I. and Ohio Const Art I, § 3.  Cleveland v Anderson, 13 App(2d) 83, 234 NE(2d) 304 (1968).

RC 3761.14

Any police officer called upon to help suppress a riot would be performing an official duty and would be eligible for pension or disability payments under the terms and provisions of the police and firemens disability and pension fund; in the unlikely event that it was found reasonable and necessary so to call upon an entire police agency, all police officers responding would be under such coverage. OAG 66-179.

**2923.52  Riot, second degree.**

No person shall participate with four or more others in violent and tumultuous conduct:

(A) With intent to do a lawful act with unlawful force and violence in such a manner as to create a clear and present danger to the safety of persons or property;

(B) With intent to prevent or coerce official action, or to hinder, impede, or obstruct a function of government;

(C) With intent to commit or facilitate the commission of a misdemeanor.

Whoever violates this section is guilty of riot in the second degree, and shall be fined not more than one thousand dollars or imprisoned not more than one year, or both.  (132 v H 996.  Eff. 6-13-68)

**2923.53  Riot, first degree.**

No person shall participate with four or more others in violent or tumultuous conduct:

(A) With intent to commit or facilitate the commission of a felony;

(B) With intent to commit or facilitate the commission of any offense involving force or violence against persons, whether such offense is a misdemeanor or felony;

(C) When the actor or any participant to the knowledge of the actor uses or intends to use a firearm or other deadly weapon, or dynamite or other dangerous explosive, or any incendiary device.

Whoever violates this section is guilty of riot in the first degree, and shall be fined not more than one thousand dollars or imprisoned not more than one year, or both, or shall be imprisoned not less than one nor more than three years.  (132 v H 996.  Eff. 6-13-68)

**2923.54  Inciting to riot.**

No person shall purposely or knowingly urge, incite, or encourage another to riot in violation of section 2923.53 of the Revised Code, when such conduct proximately results in the commission of any such offense, or is under circumstances which produce a clear and present danger that any such offense will be committed.

Whoever violates this section is guilty of inciting to riot, and shall be fined not more than one thousand dollars or imprisoned not more than one year, or both, or shall be imprisoned not less than one nor more than three years.  (132 v H 996.  Eff. 6-13-68)

**2923.55  Liability of law enforcement officer for use of force during riot.**

Police officers, special police officers, sheriffs, deputy sheriffs, highway patrolmen, other law enforcement officers, members of the organized militia, members of the armed forces of the United States, and firemen, when engaged in suppressing a riot or in dispersing or apprehending rioters and after an order to desist and disperse has been issued pursuant to section 2923.51 of the Revised Code, are guiltless for killing, maiming, or injuring a rioter as a consequence of the use of such force as is necessary and proper to suppress the riot or disperse or apprehend rioters. This section does not relieve a member of the organized militia or armed forces of the United States from prosecution by court-martial for a military offense.  (132 v H 996. Eff. 6-13-68)

CLE000731

## GENERAL POLICE ORDER

No. 10-70     HEADQUARTERS     April 14, 19 70

SUBJECT: AMENDMENT TO TRAINING BULLETIN 82.53 - "RIOT FORMATIONS AND MOB HANDLING TECHNIQUES" EFFECTIVE UNDER DN 64-56 (May 1, 1964)

TO THE MEMBERS OF THE DEPARTMENT

Recent legislation has necessitated changes in Training Bulletin 82.53, Section 45 which lists the statutes and ordinances applicable to riots and unlawful assemblies.

Training Bulletin 20 contains all new legislation and the statutes which have been amended and repealed.

Each member shall receive a copy which he shall permanently retain for future reference.

Commanding Officers shall assure distribution to each member in their command.

Copies of the changes have been forwarded to each Administrative Unit as an integral part of this order.

By order of,

LEWIS WM. COFFEY,
CHIEF OF POLICE

CLE000732

## GENERAL POLICE ORDER

NO. __9-70__          HEADQUARTERS_____April 3,___19_70_

SUBJECT: __ENFORCEMENT OF SECTION 9.0936 (KEYS__
          LEFT IN CARS)

- 2 -

Violations of Section 9.0936 are subject to a waiver such
as in other non-moving traffic violations under authority
of Section MC. . 9.3704.

This order is to be read at roll call for the next 3 days.

By order of,

STEVE SZERETO, INSPECTOR
ACTING CHIEF OF POLICE

## GENERAL POLICE ORDER

No. __8-70__  HEADQUARTERS _____ March 30, 19 __70__

SUBJECT: _____ ON DUTY INJURY REPORTS _____

- 2 -

occurs while engaged in outside employment and is not the
responsibility of the City of Cleveland, he shall so in-
dicate to the hospital.

If this procedure is followed, it will expedite payment and
will eliminate a great deal of confusion.

By order of,

LEWIS WM. COFFEY
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. **9-70**        HEADQUARTERS_____ April 3,    19**70**

SUBJECT: ___ENFORCEMENT OF SECTION 9.0936 (KEYS
              LEFT IN CARS)

TO THE MEMBERS OF THE DEPARTMENT

Section 9.0936 of the Traffic Code of the City of Cleveland
makes it an offense punishable by a fine of not more that
$25.00 to leave a car on the streets with the ignition un-
locked or to leave the keys in the car.

Therefore, all members of the department, irrespective
of their assignments - Detective Division, Traffic, Patrol
Division, Civilian Dress Detail, Juvenile, Community
Relations, etc., will, whenever possible, make obervation
of vehicles parked on the streets or public places and where
ignition keys are found in the ignition lock, or in the case
of those cars where the key can be removed and the ig-
nition switch can be used to start the motor, they will re-
move the key when it is left in the car, place a traffic
citation ticket on the car, citing a violation of M.C. 9.0936
and note on this citation that the operator can recover
the key at the District Headquarters of the District in
which the violation occurs.

The officer will, without delay, take such key to that
District Headquarters and place a tag on it listing the make,
style, and license number of the car, as well as the
location, time, and date where the violation took place.

- 1 -

CLE000735

## GENERAL POLICE ORDER

NO. 8-70    HEADQUARTERS    March 30, 70 19

SUBJECT: ON DUTY INJURY REPORTS

TO THE MEMBERS OF THE DEPARTMENT

The following procedure is to be adopted immediately concerning proper procedure when an employee of this department is injured while on duty.

The injury must be reported promptly regardless of the extent of the injury.

The officer or supervisor must immediately fill out an E. A. C. -3 Form and forward it without any undue delay. All other necessary reports can be forwarded at a later date.

When it is necessary to consult a private physician, he must give the physician the following information:

>Date of Injury
>Nature of Injury (part of the body)
>Identification Number, if he has one

The physician must forward this information, together with his fee, to Mr. Ben Himmel, Room 121, City Hall.

If an employee is treated for an injury at a hospital for an on duty injury, he shall so state. However, if the injury

(CONTINUED)

CLE000736

## GENERAL POLICE ORDER

NO. __7-70__          HEADQUARTERS_____March 13_____19 70

SUBJECT AUTO THEFT (VALUABLE CARGO) REPORTING
PROCEDURES SUPPLEMENT

TO THE MEMBERS OF THE DEPARTMENT

Supplemental to GPO 14-58 and 30-65, the following
Auto Theft Reporting Procedures shall become
effective March 14, 1970.

When an automobile or truck contains valuable
personal property or cargo, other than accessories,
the title of the RC-1 report shall be AUTO THEFT
(Valuable Cargo).  In reporting property values on
the RC-1 report, the provisions of GPO 13-64 shall
be followed, i.e., the vehicle and any property that
it contained shall be assembled into groups and
evaluated separately, followed by a total value for
the aggregate of all groups.

Record clerks engaged in the preparation of the
daily brevity for the Chief of Police and other
Command Officers shall include such Auto Theft -
(Valuable Cargo) reports in the daily brevity, indi-
cating the value and the type of valuable cargo
involved.

By order of,

LEWIS WM. COFFEY
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 6-70                    HEADQUARTERS                    March 6    70
                                                                    19

SUBJECT: TRAFFIC ENFORCEMENT

- 2 -

Members on vehicular patrol must take action on
violations which they observe while enroute to or
engaged in nonemergency assignments and activities,
whenever possible.  Often the dangerous types of
violations are seen under these circumstances.
These cannot be ignored lest motorists acquire the
notion that they can often violate without fear of
apprehension by a passing and otherwise occupied
Police Vehicle.

Increased random enforcement action of this kind
should serve as the greatest violation deterrent
and accident preventive measure.

The duties of Zone Patrol officers include traffic
enforcement and an increase of this activity must
be demonstrated by positive daily results by
every car.

Commanding Officers and Supervisory Officers
shall be responsible for increased productivity,
through observation and examination of daily duty
reports, taking whatever action is necessary.

By order of,

LEWIS WM. COFFEY
CHIEF OF POLICE

CLE000738

## GENERAL POLICE ORDER

NO.____6-70____          HEADQUARTERS____March 6____19 70

SUBJECT: ____TRAFFIC ENFORCEMENT____

TO THE MEMBERS OF THE DEPARTMENT

The continuing high and increasing traffic accident
fatality rate and the general disregard of the
traffic laws which results in accidents of all types
mandate increased enforcement activity.

The Traffic Division, and more importantly the
Division of Basic Patrol, must exert greater effort
in the citation and arrest of violators.

While none should be excluded, enforcement,
activity must be concentrated upon violations of
speed, failure to yield to vehicles and failure to
yield to pedestrians, particularly at intersections
and by motorists making turns, as well as change
of course violations and intoxicated and reckless
drivers.

Common violations involving trucks over 7,000
pounds whose drivers illegally operate along
Through Highways other than in the curb lane, often
several abreast, and parking violations of all types
shall also be enforced.

- Continued -

## GENERAL POLICE ORDER

No. 5-70                    HEADQUARTERS                    February 20, 70 19

SUBJECT: OFFICER OF THE DAY

-2 -

matters be called to their attention during such tours of
duty. The Officer of the Day shall include in his daily
duty report a log of all such incidents. District Command-
ers detailed to the assignment as Officer of the Day shall
use their respective District Stations as their Headquar-
ters and command their own districts during such tours
of duty unless their presence is required elsewhere as
Commanding Officer of the Department.

The Officer of the Day shall notify police radio at the
start and conclusiion of his tour of duty. Before reporting
off duty, he shall first confer with the Officer of the Day
reporting on duty and shall advise him of all major police
matters occurring during his tour of duty.

By order of,

LEWIS WM. COFFEY
CHIEF OF POLICE

## GENERAL POLICE ORDER

NO.  5-70          HEADQUARTERS          February 20,      70
                                                           19

SUBJECT:      OFFICER OF THE DAY

Effective immediately there shall be an Officer of the
Day, of the rank of Deputy Inspector or above, on duty
24 hours a day, seven days a week, who will be in com-
mand of the entire department.  The Chief of Police or
his designate will assume these duties during the normal
hours that the Chief's Office is open.  The Commanding
Officer of the Bureau of Basic Patrol shall arrange for
detailing these tours of duty as Officer of the Day to the
ranking officers under his control during the other hours
of the day and week that the Chief's Office is not open
for normal police business.

It shall be the duty of police radio and Superior Officers
to notify the Officer of the Day of all police matters of
major importance involving on duty or off duty members
of this department, major crimes, missing juveniles,
crimes involving prominent persons, disorders,
disasters, and other police incidents of a serious nature.
It is the responsibility of the Officer of the Day to take
command of all such serious police incidents and to
ascertain that all necessary police action and procedures
are put into effect.

Where conditions warrant, the Officer of the Day shall
personally report to the scene of the police incident and
assume command.  The Officer of the Day will notify
the Director of Public Safety and the Chief of Police of
major police incidents, when it appears urgent that such

(CONTINUED)

## GENERAL POLICE ORDER

NO. 4-70                    HEADQUARTERS    February 20,    70
                                                            19

SUBJECT: NEW PROCEDURES FOR MEMBERS ATTENDING
         SCHOOLS AT CITY EXPENSE

- 4 -

Members who complete courses or seminars at the
Department's request shall still be required to submit a
Form # 1 report within 5 days; containing an accounting
of expenses and requesting reimbursement, together
with all original expense receipts.

Evaluation reports as required by GPO 10-69 shall con-
tinue to be   made.

The following Orders and Notices are hereby rescinded:

            GPO  4-69      DN 69-57
            GPO 28-69      DN 68-240


                    By order of,

                    LEWIS WM. COFFEY
                    CHIEF OF POLICE

CLE000742

## GENERAL POLICE ORDER

No. 4-70                    HEADQUARTERS  February 20,    ,70

SUBJECT NEW PROCEDURES FOR MEMBERS ATTENDING
SCHOOLS AT CITY EXPENSE
- 3-

Administrative needs require the following information
in these reports:

(1) Name of College or School
(2) Title of Course, Seminar or Conference
(3) Dates, Term or Quarter involved
(4) Cost of Tuition and an account of other expenses,
if any.
(5) Whether attendance is requested during on duty or
off duty hours.
(6) The Commanding Officer's recommendation as to
whether he approves and whether attendance dur-
ing either on duty or off duty time is most feas-
ible and proper.  Manpower needs, any conflict
between work and school schedules, the location
of the school, and the type of course shall all be
considered.

Eg: Attendance at CCC or CSU for several classes
a week must on off duty time.

A local seminar of several days duration at the
member's request should be attended on his own
time.

A full time course or seminar at the request of
the Department would be attended on City time.
(CONTINUED)

CLE000743

## GENERAL POLICE ORDER

No. 4-70                    HEADQUARTERS  February 20,    70

SUBJECT NEW PROCEDURES FOR MEMBERS ATTENDING
        SCHOOLS AT CITY EXPENSE

- 2 -

on file at the Chief's Office for this purpose.

Reimbursement for tuition fees for accredited college
courses shall require attainment of at least a "C" grade.

No other request for reimbursement shall be required
in these cases.

The new forms shall be available at the personnel desk
in the Chief's Office.

The foregoing procedures shall not apply to members who
are sent to schools, conferences, seminars and meetings
as a duty assignment necessary to the function and im-
provement of the Department.

Nor shall they apply to schools and seminars which are
attended under L.E.A.A. or other grants at no cost to
the city.

In all cases, however, whether attendance at the course
is initiated by the member's request or by the Depart-
ment, a Form # 1 report shall also be completed at the
time of the request.

(CONTINUED)

## GENERAL POLICE ORDER

No. 4-70          HEADQUARTERS February 20, 1970

SUBJECT: NEW PROCEDURE FOR MEMBERS ATTEND-
ING SCHOOLS AT CITY EXPENSE

TO THE MEMBERS OF THE DEPARTMENT

Two new forms must be used by members who initiate
requests to attend colleges and other schools or seminars
at city expense.

(1) Application Form C of C 3-55-69 which is pre-
pared in sets of 4 copies shall be completed and
forwarded to the Safety Director's office at least
3 weeks prior to the opening date of the course.

If certified by the Commissioner of Accounts as
being within the $200.00 maximum annual allow-
ance, and approved by the Director of Public
Safety, the application will be returned to the
Chief's Office and the employee's copy forwarded
to him as his notification of such approval.

(2) Within 5 days after completion of the course the
"Request for Tuition Reimbursement" Form
#7-12-69 shall be completed by the member and
forwarded to the Chief's Office along with a copy
of his grade report and the original receipts for
tuition payment.

These will then be forwarded to the Director's
Office along with the copies of the original appli-
cation (forms 3-55-69) which will have been kept
(CONTINUED)

CLE000745

## GENERAL POLICE ORDER

NO. 3-70                          HEADQUARTERS                    February 17, 19 70

SUBJECT: SUPPLEMENTAL SICK LEAVE PROCEDURES

- 2 -

      (3) Order him to submit a Form # 1 report, explaining his earlier failure to report.

In cases of illness and minor injuries while on duty, the member shall promptly notify his Superior Officer and report to the Medical Bureau, if it is open. Thereafter, the preceding sick leave procedures shall apply.

Commanding Officers shall cause random checks by a Superior Officer at the homes of all members on sick leave, particularly at those times when the Medical Bureau is not open.

Commanding Officers shall, also, periodically review cases of chronic absentees, personally interviewing them, for the purpose of determining the possible causes, including the effect of off-duty activities.

Originals and two copies of all reports shall be forwarded to the Chief's Office.

Commanding Officers shall cause compliance with the provisions of this order, related procedural orders and new Rule 32. Disciplinary action in the form of Departmental Charges shall be initiated for any willful violations.

              By order of,

              LEWIS WM. COFFEY,
              CHIEF OF POLICE

## GENERAL POLICE ORDER

NO. 3-70          HEADQUARTERS          February 17, 70    19

SUBJECT: SUPPLEMENTAL SICK LEAVE PROCEDURES

TO THE MEMBERS OF THE DEPARTMENT

The following supplemental Sick Leave procedures shall become effective February 18, 1970:

Any member absenting himself from duty due to illness or injury shall:

(1) Notify the Officer in Charge of the Unit to which he is assigned, prior to the commencement of his tour of duty.

(2) Report in person to the Medical Bureau at the next sick call.

If physically unable to report, he shall communicate by telephone with the Chief Medical Director, or a staff physician, between 8:00 A.M. and 10:00 A.M. on the day he is to report.

He shall, then, further contact or report to the Medical Bureau as ordered by the Chief Medical Director or assistant physician.

If the member, who has so absented himself, fails to either telephone or appear at Sick Call, the Medical Bureau shall notify the Superior Officer in Charge of his Unit. The Officer in Charge shall than cause a Superior Officer of the member's residing or nearest District to visit his place of residence. This Superior Officer shall:

(1) Determine the reason for his failure to report to the Medical Bureau.

(2) Order him to report to the Medical Bureau at the next Sick Call.

(CONTINUED)

CLE000747

## GENERAL POLICE ORDER

No. 2-70                    HEADQUARTERS_____ February 13, 1970

SUBJECT: COLOR PHOTOGRAPHS OF ASSAULTED OR
INJURED MEMBERS

TO THE MEMBERS OF THE DEPARTMENT

Whenever any member of this department is assaulted
or injured during the performance of duties, such member
shall have color photographs taken of the injuries.

The injured member shall report to the Photo Unit at
9:00 AM on the day after receiving the injuries. In the
event the member is incapacitated by the injuries, the
Photo Unit shall be notified by the investigating Superior
Officer and a member of that unit shall be dispatched to
take the color photographs.

By order of,

LEWIS WM. COFFEY
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. __1-70__                    HEADQUARTERS __January 28,__ 19 __70__

SUBJECT : _____ ACCUMULATED OVERTIME _____

### TO THE MEMBERS OF THE DEPARTMENT

Because they worked extra hours when the City required their services, many members of the Department have accumulated large amounts of overtime.

It is only fitting that, when conditions permit it, these members be allowed to use up some of said accumulated overtime.

Therefore, the Commanding Officers of Districts, Bureaus and Units shall make suitable arrangements for the granting of overtime to members entitled to same.

It goes without saying, the Commanding Officers shall use sound discretion in the granting of said overtime. We must bear in mind that our primary responsibility is to provide adequate police protection for the public.

By order of,

WILLIAM P. ELLENBURG
CHIEF OF POLICE

CLE000749

## GENERAL POLICE ORDER

No. 23-64          HEADQUARTERS          December 1, 19 64

SUBJECT: PAYMENT OF MEDICAL EXPENSES FOR SERVICE INCURRED
           DISABILITIES

Albert C. Wallace, Inspector,
Executive Officer.

Any member of this department who becomes disabled or in-
jured while in the performance of his duties, who selects
his own physician or surgeon for the treatment of such
disability or injury, other than those provided or re-
commended by the surgeon of police, will be personally
obligated to pay for such fees.

No exceptions will be made without the express approval of
the surgeon of police.

                        By order of,

                        RICHARD R. WAGNER,
                        CHIEF OF POLICE

## GENERAL POLICE ORDER

No. **22-64**          HEADQUARTERS **October 30,** 19 **64**

SUBJECT: _____ DIVISION OF DETENTION _____

#### - 2 -

Whenever any prisoner is booked, whether adult or juvenile, the Warrant and Suspect Unit shall promptly be notified and a Want Search made <u>before</u> the release of the prisoner.

A detailed explanation of the procedures, which shall be considered a part and parcel of this order will be distributed to all members.

Each member of the department is to receive a copy of this instruction sheet which shall be combined with his Manual of Rules and Regulations governing the Division of Police. Each officer will be issued a copy of this order and will sign a payroll sheet upon receipt of his copy.

By order of


RICHARD R. WAGNER
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 21-64          HEADQUARTERS          October 20, 1964

SUBJECT:    OFF DUTY TRAFFIC ACCIDENTS

Albert C. Wallace, Inspector,
Executive Officer.

Members of the department involved in an off duty traffic
accident shall make a written report stating full par-
ticulars of the accident.

All such off duty traffic accidents shall be investigated
by a superior officer of the district in which the
accident occurs, who shall forward a written report con-
taining the results of his investigation.  This report
shall state that he has examined the original traffic
accident report facts as determined by him through his
investigation.  Any variance or conflict of statements
shall be explained.

All reports, including the Traffic Accident Report Form
1-B, shall be forwarded without unnecessary delay to the
Accident Investigation Unit for distribution.

By order of,

RICHARD R. WAGNER,
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 20-64          HEADQUARTERS          October 20, 1964

SUBJECT: INSPECTION AND ORDERING OF WINTER AND SUMMER UNIFORMS AND ACCESSORIES

Albert C. Wallace, Inspector,
Executive Officer.

Sir:

The inspection of uniforms worn by officers and members shall be conducted once annually in the month of October of each year, at which time both summer and winter uniforms shall be inspected.

This inspection shall be personally supervised by the Commanding Officer of the District or, Bureau to which the members are assigned, and these officers will be charged with the responsibility of seeing that all members have serviceable uniforms and they shall be required to order new uniforms only when the need for them exists. If a member has a uniform or part of uniform, either summer or winter, which is in good condition and serviceable he is not to be permitted to order another uniform or part of uniform unless at his own personal expense. The supply of uniforms by the Department of Public Safety is to be based on need only and not on the desire of any member for additional uniforms.

Each member shall be required to have one long uniform overcoat; and if he already has a long overcoat, he may be permitted to order a short overcoat and shall not be permitted to order more than one additional long or short overcoat in a three year period thereafter.

Members shall also be required to have the regulation summer uniform consisting of blouse and trousers; and if

(CONTINUED)

CLE000753

# GENERAL POLICE ORDER

No. 18-64     HEADQUARTERS     September 15, 19 64

SUBJECT: PRE-PUNCHED IBM TRAFFIC CITATIONS AND PARKING TICKETS

Albert C. Wallace, Inspector,
Executive Officer.

Effective 12:01 A.M., Thursday, September 17, 1964, pre-punched IBM Moving Traffic Citation Books and Parking Violation Books will replace those presently in use.

A detailed instruction sheet has been prepared and is being issued as an integral part of this General Police Order (18-64) and is to be so regarded in its entirety. It shall be included in the official binder of General Orders of each command.

Each member of the department is to receive a copy of this instruction sheet which shall be combined with his Manual of Rules and Regulations governing the Division of Police. Sufficient copies are being forwarded to each command. Each officer will be issued a copy of this order prior to Wednesday, September 16, 1964, and will sign a payroll sheet upon receipt of his copy.

Moving Citation Books and Parking Violation Books currently in use shall be turned in to the district or unit at the end of the tour of duty on Wednesday, September 16, 1964. These discontinued books shall then be forwarded to the Storeroom no later than September 21, 1964.

By order of,

RICHARD R. WAGNER,
CHIEF OF POLICE

# GENERAL POLICE ORDER

No. _____ 17-64 _____          HEADQUARTERS _____ September 9, 19__ 64

SUBJECT : _____ OUTSIDE EMPLOYMENT _____

Albert C. Wallace, Inspector,
Executive Officer.

Officers and members of this department, having permission
to engage in outside employment in uniform, shall govern
themselves in strict accordance with all Rules and
Regulations of the Division of Police dealing with person
conduct which are applicable.

In all instances officers and members so employed shall
cooperate immediately with  any request of a regularly
assigned officer to enforce laws or ordinances or to
quell any disturbance.  They shall comply with any law-
ful order given by a superior or commanding officer.

Failure to comply with any of these orders shall auto-
matically terminate such permission to engage in outside
employment.

By order of,

RICHARD R. WAGNER,
CHIEF OF POLICE

# GENERAL POLICE ORDER

No. 16-64          HEADQUARTERS_____ July 15, 64
                                      19___

SUBJECT: _____ WARRANT AND SUSPECT UNIT

Albert C. Wallace, Inspector,
Executive Officer.

There is hereby established a Warrant and Suspect Unit
which shall be in the Bureau of Technical Services and
located in the Record Room, Room 104.

All warrants and subpoenas shall be directed to and pro-
cessed in the Warrant and Suspect Unit instead of the
Property Room as in the past.

Traffic warrants shall also be filed in the Warrant and
Suspect Unit instead of the Traffic Division and the
Traffic Warrant Squad shall be incorporated into the
Warrant and Suspect Unit.

The Registered Warrant and Suspect File, presently in the
Detective Bureau shall be relocated in the Warrant and
Suspect Unit.

Inquiries regarding warrants outstanding or suspects
wanted shall be directed to the Warrant and Suspect Unit:

     Police Extension 227 or outside coin return
     line MAin 1-9993.

A detailed explanation of the procedures, which shall be
considered a part and parcel of this order, is being
printed; and copies will be distributed to all members
at a later time.

                         By order of,

                         RICHARD R. WAGNER,
                         CHIEF OF POLICE

## GENERAL POLICE ORDER

No. __15-64__         HEADQUARTERS_____ July 7, 19__64__

SUBJECT: __VEHICLE PROCESSING FORM CC 71-1081__

Albert C. Wallace, Inspector,
Executive Officer.

The new Vehicle Processing Form CC 71-1081 is now available and shall henceforth be used when vehicles are towed in for processing by the S.I.U.

Whenever a vehicle is picked up on the street, which officers believe should be processed by the Scientific Identification Unit, they shall notify the S.I.U. and call for a police tow truck as in the past.

Copies of the new form will be carried on the police tow trucks and will also be available at the district stations. Upon arrival of the tow truck, officers shall fill out the form in duplicate.

The copy shall be placed on the vehicle to be processed and remain on the vehicle. The original shall be turned over to the officer in charge of the 2nd District station where vehicles are presently being taken for processing. The officer in charge of the station shall retain this form until the vehicle is processed and disposed of.

By order of,

RICHARD R. WAGNER,
CHIEF OF POLICE

CLE000757

## GENERAL POLICE ORDER

No. 13-64          HEADQUARTERS          June 9, 19 64

SUBJECT: SUPPLEMENT TO G. O. 12-64

Inspector Albert C. Wallace,
Executive Officer.

In reference to General Police Order 12-64, issued

June 5, 1964, relative to reporting procedures, "clothing"

should be included as one of the items classified as a

group.

Therefore items may only be classified in the following

groups:

Currency, notes, etc.
Jewelry and precious metals
Furs
Clothing
Stolen autos
All other items

By order of,

RICHARD  R. WAGNER,
CHIEF OF POLICE

# GENERAL POLICE ORDER

No.___12-64___          HEADQUARTERS_____    June 5, ___19 64

SUBJECT: <u>REPORTING PROCEDURES; CHANGES TO ORIGINAL REPORT</u>

Inspector Albert C. Wallace,
Executive Officer.

These reporting procedures are in addition to the ones
set  forth in Rule 77, G.O. 14-58, G.O. 26-59, G.O. 29-59
and G.O. 21-61.

When the title of a crime is changed, the crime cleared
by arrest or  otherwise, property recovered, additional
property reported stolen, or the complaint is unfounded,
this information shall be telephoned to the Report Center,
using the original complaint number.

Clean-up reports will be made when the offender is
known to the police and the victim will not prosecute.  A
clean-up will also be reported when the offender is arrested
in connection with an  offense but is charged with a lesser
crime.  (EXAMPLE: Arrested for Grand Larceny and charged
with Petit Larceny.)

Should an offense be reported and  the complaint later
be discovered to have no basis in fact, the report will be
changed to "Unfounded."  The term "No Report" is no longer
acceptable as a change to an original report.

In any report each item of property or group of items
must be identified and given a dollar value.  For Report
Center purposes items may <u>only</u> be classed in groups as
follows:

Currency, notes, etc.
Jewelry and precious metals
Furs
Stolen autos
All other items
      (CONTINUED)

GENERAL POLICE ORDER

No. 12-64          HEADQUARTERS          June 5, 19 64

SUBJECT: REPORTING PROCEDURES: CHANGES TO ORIGINAL REPORT

-2-

Describe each item in detail in the supplementary report. If no supplementary report is made, such as in a Petit Larceny investigation, describe the items of property in detail to the Report Center.

When additional property is reported stolen, it will be described by item or group with a dollar value for each; and the previous total and the new total with a statement "Not Previously Reported" shall be included.

When the value of property is to be reported later, it will be reported by item or approved group with a dollar value for each and a statement "Value Not Previously Reported."

By order of,

RICHARD R. WAGNER,
CHIEF OF POLICE

# GENERAL POLICE ORDER

No. __11-64__          HEADQUARTERS_____ May 6,____ 19̲64

SUBJECT: ___ FILING PROCEDURE IN JUVENILE COURT

Albert C. Wallace, Inspector,
Executive Officer.

Members of the department shall fill out one soft copy of the pink arrest card — Form 127 — for each person filed on in Juvenile Court for any offense except traffic. The receiving clerk at Juvenile Court will furnish this form from a supply on hand.

The completed forms will be forwarded by the Juvenile Court to the Detective Bureau for further processing.

By  order  of,

RICHARD R. WAGNER,
CHIEF OF POLICE

CLE000761

## GENERAL POLICE ORDER

No. __10-64__     HEADQUARTERS_____ April 10, 1964

SUBJECT : __NEW REPORTING TIME FOR ROLL CALL__

Albert C. Wallace, Inspector,
Executive Officer.

In order to have uniformity and better zone coverage in the Basic Patrol and to simplify Radio Unit's dispatching of cars, the following procedure will govern the reporting times for roll calls at the six districts by uniformed personnel:

All ODD numbered cars are to report for the first roll call.

All EVEN numbered cars are to report for the second roll call.

Starting times by platoons as follows:

| | |
|---|---|
| 1st Platoon | 7:00 A.M. and 8:00 A.M. |
| 2nd Platoon | 3:00 P.M. and 4:00 P.M. |
| 3rd Platoon | 11:00 P.M. and 12 midnight |

Sector Officers are to report for duty thirty minutes before the roll call time to correct assignments, prepare teletype and other roll call material and to discuss pertinent police matters with superior officers reporting off duty.

Previous orders to the contrary are hereby rescinded.

By order of,
RICHARD R. WAGNER,
CHIEF OF POLICE

CLE000762

## GENERAL POLICE ORDER

No. **9-64**          HEADQUARTERS_____ April 6, ____19**64**___

SUBJECT : ___RE-ORDERING OF PERSONAL IDENTIFICATION CARDS____

Albert C. Wallace, Inspector,
Executive Officer.

All members of the department shall adhere to the following procedure when personal identification cards are being re-ordered.

A Form I report containing the name, rank or badge number, sex, height, weight, color of hair, color of eyes and birthdate shall be made by the member requesting a replacement. This report shall be delivered by the member, in person, to the General Records Unit where the member shall affix his signature to the new card and pay a fee of fifty ($.50) cents.

There is no charge to members when promoted; however, members must pay for lost or mutilated card replacements.

These personal identification cards may be ordered at any time but they will be issued only three (3) times per year.

Personal identification cards are issued as part of equipment furnished by the police department and any loss, displacement or mutilation of this card must be reported as provided for in Rule # 82, as in the loss of any other equipment issued by the department.

By order of,

RICHARD R. WAGNER,
CHIEF OF POLICE

CLE000763

## GENERAL POLICE ORDER

No. 8-64          HEADQUARTERS          April 3, 1964

SUBJECT:  NEW SECTOR ZONE ASSIGNMENTS

Inspector Albert C. Wallace,
Executive Officer.

    The following shall be the manner of assignment of
zones to the sectors in the districts under the new
zone patrol system:

| 1st DISTRICT | | 2nd DISTRICT | |
|---|---|---|---|
| Sector 1 | Sector 2 | Sector 1 | Sector 2 |
| Zone 101 | Zone 105 | Zone 201 | Zone 205 |
| 102 | 106 | 202 | 206 |
| 103 | 107 | 203 | 207 |
| 104 | 108 | 204 | 208 |
|  | 109 |  | 209 |

| 3rd DISTRICT | | 4th DISTRICT | |
|---|---|---|---|
| Sector 1 | Sector 2 | Sector 1 | Sector 2 |
| Zone 301 | Zone 305 | Zone 401 | Zone 407 |
| 302 | 306 | 402 | 408 |
| 303 | 307 | 403 | 409 |
| 304 | 308 | 404 | 410 |
|  | 309 | 405 | 411 |
|  |  | 406 | 412 |

(CONTINUED)

CLE000764

# GENERAL POLICE ORDER

No. __8-64__                HEADQUARTERS_____ April 3, ____19__64__

SUBJECT : __NEW SECTOR ZONE ASSIGNMENTS_____

-2-

|  5th DISTRICT  |          |  |  6th DISTRICT  |          |
|-----------|-----------|--|-----------|-----------|
| Sector 1  | Sector 2  |  | Sector 1  | Sector 2  |
| Zone 501  | Zone 504  |  | Zone 601  | Zone 605  |
| 502       | 505       |  | 602       | 606       |
| 503       | 506       |  | 603       | 607       |
| 508       | 507       |  | 604       | 608       |
| 509       | 510       |  |           | 609       |

By order of,

RICHARD R. WAGNER,
CHIEF OF POLICE

# GENERAL POLICE ORDER

7-64                                                    March 31,      64

No._____                    HEADQUARTERS_____19____

SUBJECT: NEW ZONE PATROL SYSTEM AND OPERATION OF STATION
WAGONS AND MOBILE PATROLS
_____

Inspector Albert C. Wallace,
Executive Officer.

At 12:01 A.M., April 1, 1964, the new zone patrol
system will go into effect. Henceforth cars shall be dis-
patched and incidents shall be recorded according to the
new zone patrol maps and street zone directories.

The following rules shall govern the operation of
the station wagons and mobile patrols:

### STATION WAGONS

1. In addition to their usual duties, station wagons shall
   be used to transport injured persons, sick persons and
   prisoners, except that not more than three shall be
   carried at any one time.

2. When a report is required, the crew transporting the
   injured person shall make it, except:

   (a) In non-fatal traffic accident cases, an A.I.U.
       car shall be dispatched to make the investiga-
       tion and report.

   (b) Where serious crimes are involved, an additional
       unit shall be dispatched to make the investiga-
       tion and report. The first unit on the scene
       shall transport the injured person to the hos-
       pital irrespective of zone assigned.

3. When prisoners are detained in the station wagon, one
                        (CONTINUED)

## GENERAL POLICE ORDER

7-64                                   March 31,     64

No._____          HEADQUARTERS_____10____

SUBJECT: NEW ZONE PATROL SYSTEM AND OPERATION OF STATION WAGONS AND MOBILE PATROLS

-2-

officer shall remain with the prisoners at all times and the rear passenger doors kept locked.

4. When not in use, the stretcher shall be kept folded and the rear collapsible seat back kept in an upright position.

5. Prior to returning to the station with prisoners, the station wagon crew shall notify Radio of its location and intentions.

MOBILE PATROL WAGONS

1. Mobile Patrol Wagons shall continue to be dispatched on injured, sick or prisoner runs as in the past.

2. In addition, Mobile Patrol Wagons shall be used in the following cases:

   (a) For hauling psychopathic cases of extremely violent prisoners.

   (b) For hauling persons whose physical condition (personal filth, vomiting, etc.) creates a problem.

   (c) Property hauls.

(CONTINUED)

CLE000767

## GENERAL POLICE ORDER

7-64                                                March 31,          64

No._____          HEADQUARTERS_____19____

SUBJECT: NEW ZONE PATROL SYSTEM AND OPERATION  OF STATION
WAGONS AND MOBILE PATROLS_____

-3-

(d) Prisoner transfers of more than three prisoners
and other prisoner transfers at the direction
of Radio.

(e) Dead Bodies as far as practicable shall be
transported by Mobile  Patrol Wagons but good
judgement must be used.

Where death has not been definitely determined
or where it occured on the streets or in a
public place, the nearest available unit shall
be dispatched whether station wagon or mobile
patrol.

* * * * * * * * * * * * *

Officers must be observant and diligent in exercising
all necessary precautions while detaining and transporting
prisoners.

ALL FELONS, SUSPECTED FELONS, AND ANY PRISONER WHO
MAY CREATE A PROBLEM, OR ATTEMPT TO INJURE HIMSELF OR THE
OFFICERS MUST BE HANDCUFFED, PREFERABLY HANDS BEHIND BACK.

By order of,

RICHARD R. WAGNER,
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. __6-64__                    HEADQUARTERS_____ March 27, __19 64__

SUBJECT: NEW POLICE VEHICLES NOT TO BE PUSHED_____

Laurence J. Choura, Inspector,
Acting Executive Officer.

No member of the department shall push or cause to
be pushed the 1964 Ford Police Station Wagons in an
effort to start the engine. Pushing of this vehicle
would seriously affect the automatic transmission.

All districts are equipped with battery jumper
cables and should use these cables to start the police
car if at a district station. Where these vehicles
breakdown on the road, the Tow Truck Office should be
contacted and they will use the cables on their trucks
to start such cars.

Memorandum 1-59, issued January 6, 1959, explains
the uses and handling of jumper cables.

                                    By order of,

                                    RICHARD R. WAGNER,
                                    CHIEF OF POLICE

CLE000769

# GENERAL POLICE ORDER

No. 5-64     HEADQUARTERS     March 10, 19 64

SUBJECT: INVESTIGATION OF MUSIC PERMIT APPLICATIONS

Laurence J. Choura, Inspector,
Acting Executive Officer.

A new form has been developed specifically for the
purpose of recording investigations of Music Permit
Applications. The new form number is C of C 71-1079 and
is available at the Departmental Store Room, located at
1600 East 19th Street.

Effective March 16, 1964, this form shall be used
as the record of investigation for Music Permit Applica-
tions.

By order of,

RICHARD R. WAGNER,
CHIEF OF POLICE

CLE000770

## GENERAL POLICE ORDER

3-64                                                         January 31,    64

No._____                    HEADQUARTERS_____19___

SUBJECT : ___INTERPRETATION OF RULE # 8, SECTION 6.___
          ___BOOK OF RULES AND REGULATIONS_____

Albert C. Wallace, Inspector,
Executive Officer.

Rule # 8, Section 6, states "No male person shall enter the female cell block unless accompanied by a police-woman or matron."

Cell block shall be interpreted as meaning all the area beyond the door to the office of the women's section of the jail.

No male person shall be permitted in the office of the women's section of the jail except on police business, which shall be conducted quickly and without unnecessary delay.

Male members of the department requiring anything from the women's section shall have the policewoman or matron on duty deliver same to him.

Matrons and policewomen assigned to the jail shall report any violations of this order to the officer in charge of the policewomen's unit in writing.

By order of,

RICHARD R. WAGNER,
CHIEF OF POLICE

CLE000771

# GENERAL POLICE ORDER

No. ___2-64___          HEADQUARTERS_____January, 28_ 19__64_

SUBJECT : _____MENTAL PATIENTS _____

Albert C. Wallace, Inspector,
Executive Officer.

Mental institutions permit patients to be placed on
"Family Care" to a sponsor or on "Trial Visit" to their
respective families.

On occasion these mental platients become upset or
disturbed and create a threat to their sponsor or family.

When requested by a sponsor or a responsible member of
the family of such mental patient, to return the patient
to a hospital, members of the department shall check with
this hospital whether such patient shall be returned.
In the event hospital personnel request return of the
patient, members shall immediately take the patient into
custody and return him to the institution from which he
came.

By order of,

RICHARD R. WAGNER,
CHIEF OF POLICE

# GENERAL POLICE ORDER

NO._____ I-64 _____          HEADQUARTERS_____ January 28,  19  64

SUBJECT: SAMPLES FOR ANALYSIS TAKEN ON LIQUOR PERMIT PREMISES

Albert C. Wallace, Inspector.
Executive Officer.

You will cause all members of the department to be notified that effective this date the following procedure shall be followed in all cases where an Ohio Department of Liquor Control Permit Premises is to be cited for violations.

In all cases where whiskey, wine or beer is to be used as evidence against a permit holder in a hearing before the Ohio Board of Liquor Control, two (2) samples of each item of evidence shall be collected and placed in separate containers.

One sample shall be delivered to the City Chemist for analysis and then used as evidence in Cleveland Municipal Court.

The second sample shall be delivered to the Cleveland District Office, Ohio Department of Liquor Control, 1300 West 9th Street, where it will be taken to their Columbus office for analysis by their chemist, who will then be available for citation hearings before the Ohio Board of Liquor Control.

The Court of Common Pleas of Franklin County requires the testimony of a chemist and the above procedure will obviate the necessity of our City Chemist going to Columbus, Ohio, to testify.

General Police Order 16-54, issued March 22, 1954, is hereby rescinded.

By order of,

RICHARD R. WAGNER,
CHIEF OF POLICE

CLE000773

## GENERAL POLICE ORDER

No. 68-63          HEADQUARTERS          December 31, 19 63

SUBJECT: _____ REINSTATEMENT AND ASSIGNMENT _____

Albert C. Wallace, Inspector,
Executive Officer.

Raymond Uzell, who resigned as a member of the department on September 5, 1963, has been reinstated effective January 1, 1964 and is assigned to the 6th District. His badge number will be 1876.

By order of,

RICHARD R. WAGNER,
CHIEF OF POLICE

# GENERAL POLICE ORDER

No. __67-63__          HEADQUARTERS_____ December 31, 19 63

SUBJECT : __PROMOTIONS, ASSIGNMENTS AND TRANSFERS__

Albert C. Wallace, Inspector,
Executive Officer.

The following promotions, assignments and transfers
will become effective January 1, 1964:

Sergt. Edward Anderson promoted to Lieutenant and assigned
        to District 6.
Sergt. Thomas Brown promoted to Lieutenant and assigned
        to District 4.
1160    Henry Wrona promoted to Sergeant and assigned to
        the Detective Bureau
1323    Thomas Waterwash promoted to Sergeant and assigned
        to the A.I.U.
Lieut. Frank Koenig      Dist. I to Tech. Serv. Bureau
Lieut. William Shardell  Dist. 6 to Dist. I
Sergt. Joseph Mengel     Dist. I to Records Unit
Sergt. Robert Walter     Det. Bureau to District I
763     James Mackall    Dist. 6 to Detective Bureau
1029    Raymond Ressler  Dist. 3 to Detective Bureau
1821    Lawrence Worz     Dist. 2 to Detective Bureau
1018    Frederick Johnson Dist. 5 to Detective Bureau
66      Harvey Behrendt   Detective Bureau to Dist. I
1285    James Burke       Dist. 3 to Dist. 5
223     Joseph Bruner     Dist. I to Dist. 3
429     Clarence Huff     Motorcycle Unit to Dist. 5
1712    Samuel Reese      Dist. 5 to Motorcycle Unit
3032    Margaret Kilbane  Womens Unit to S.I.U.

                        By order of

                        RICHARD  R. WAGNER,
                        CHIEF OF POLICE

## GENERAL POLICE ORDER

NO.____66-63____        HEADQUARTERS.____December 30,____19_63_

SUBJECT: ____ABANDONED VEHICLES ON PRIVATE PROPERTY____

Albert C. Wallace, Inspector,
Executive Officer.

The Council of the City of Cleveland recently enacted
a new ordinance relating to abandoning vehicles on private
property, effective December 18, 1963, a copy of which is
given below. Members are to govern themselves accordingly.

"Section 13.2515, Abandoned Vehicles on Private
Property:
It shall be unlawful  for any person, firm or corpora-
tion to abandon or to place or cause to be placed or permit
to be placed or permit to remain any vehicle, any part of
a vehicle, junk automobile or debris of any kind on any
private property or vacant lot without the permission of
the owner of said property. Any person violating the
provisions of this section shall, upon conviction thereof,
be fined $25.00 for the first offense and $50.00 for each
subsequent offense. For the purposes of this section each
day shall be considered a separate offense."

By order of,

RICHARD R. WAGNER,
CHIEF OF POLICE

CLE000776

## GENERAL POLICE ORDER

No. ___65-63___       HEADQUARTERS___ December 24, ___19_63_

SUBJECT: _____ JUVENILE RUN-AWAY ARRESTS _____

Albert C. Wallace, Inspector,
Executive Officer.

Effective January 1, 1964, any member of this department receiving information that a run-away juvenile is being held for this department, shall make or cause to be made an arrest card (Form 125, 126 or 127) upon each such juvenile run-away outside the City of Cleveland.

This arrest card shall then be forwarded to the Unit of Records.

By order of,

RICHARD R. WAGNER,
CHIEF OF POLICE

CLE000777

## GENERAL POLICE ORDER

No. 64-63                    HEADQUARTERS             December 23, 19 63

SUBJECT: SIDEWALKS TO BE CLEARED OF SNOW AND ICE

Albert C. Wallace, Inspector,
Executive Officer.

The removal of snow and ice from the sidewalks through-
out the city is provided for under Section 7.3910 (2376) of
the Codified Ordinances of the City of Cleveland, Ohio.

You will cause the Commanding Officers of the Six
Districts to instruct members of their commands to enforce
this ordinance pertaining to the removal of snow and ice,
etc. from sidewalks in their respective districts. Where
sidewalks    are covered with snow and ice and there is a
violation of Section 7.3910, the owner, occupant or person
in charge of the property shall be warned of this condition
and upon failure to comply with this warning, the member
issuing such warning shall consult the Police Prosecutor at
Central Station for further prosecution.

The removal of snow and ice from the sidewalks is
essential to the safety and convenience of pedestrians and
the public in general, and it is mandatory that the District
Commanders comply with the provisions of this order and see
that Section 7.3910 of the Codified Ordinances of the City
of Cleveland is enforced whenever conditions require.

By order of,

RICHARD R. WAGNER,
CHIEF OF POLICE

## GENERAL POLICE ORDER

63-63                                                    December 20,      63

No._____                    HEADQUARTERS_____19____

NON-TRAFFIC ACCIDENT FORM CC 71-1077

SUBJECT: _____
Inspector Albert C. Wallace,
Executive Officer.

A new form, CC 71-1077, has been designed for use in
reporting non-traffic accidents occurring on city property
or in which the city is involved, such as accidents by fall-
ing on sidewalks, injuries received on CTS buses, etc.

This form, which is self-explanatory, shall be used
commencing Saturday, December 21, 1963, in place of the
usual Form 10 Supplementary. It shall be filled out in
triplicate and may be typed or a ball point pen used, taking
care that the writing is legible and copies easily read.

A concise description of the incident shall be entered
in the space provided on the lower part of page 1. The
reverse side of the form has space provided for statements
from the complainant and one witness. If more witnesses
are available, additional forms may be used.

Space is also provided on the front of the form for the
information regarding photographs taken. The report shall be
held at the district until this information is obtained and
then signed by the desk sergeant or supervisory officer
verifying same.

The telephone report to the Report Center stating when,
where and to whom the accident happened shall continue to
be made, as in the past.

Districts shall have their supplies of copies picked up
promptly at the Storeroom, also two sample copies which have
been prepared illustrating the method of filling out the forms.

By order of,
RICHARD R. WAGNER,
CHIEF OF POLICE

CLE000779

## GENERAL POLICE ORDER

NO. ___62-63___          HEADQUARTERS____December 19,____1963

SUBJECT: _____REINSTATEMENT AND ASSIGNMENT_____

Albert C. Wallace, Inspector,
Executive Officer.

Sergeant Vince L. Ardito has been reinstated to this department effective December 19, 1963, and is assigned to the 3rd District.

By order of,

RICHARD R. WAGNER,
CHIEF OF POLICE

# GENERAL POLICE ORDER

NO. 61-63                    HEADQUARTERS                    December 19, 63
                                                                      19____

SUBJECT : _____ APPOINTMENTS — ASSIGNMENTS _____

Albert C. Wallace, Inspector,
Executive Officer.

The following persons have been appointed to the position of Patrolman, Division of Police, Department of Public Safety, effective Monday, December 16, 1963, and assigned to the Police Academy until further notice:

| | | | |
|---|---|---|---|
| 258 | Donald W. Bellew | 1030 | Walter Muniak, Jr. |
| 269 | Andrew J. Bodrock | 1037 | Frank Piks, Jr. |
| 303 | Robert L. Bolton | 1093 | Nephtali R. Ramos |
| 415 | Louis J. Caplick | 1120 | Donald J. Rieder |
| 444 | Robert J. Czaplicki | 1187 | Russell J. Sabat |
| 452 | John M. Dedich | 1195 | Michael W. Santon |
| 99 | John C. Delaney | 1200 | Michael Simcic |
| 478 | Roger J. Dennerll | 1206 | Alan J. Simon |
| 536 | Robert A. Donovan | 1232 | Thomas J. Smith |
| 615 | Richard L. Fulkerson | 1248 | Kenneth P. Stachowski |
| 626 | Thomas M. Gibbons | 1258 | Leonard B. Szalkiewicz |
| 659 | James R. Hearns | 1303 | James R. Tattar |
| 705 | James E. Howard | 1331 | Paul J. Thomas |
| 731 | Thomas R. Iglewski | 1520 | Donald M. Timithy |
| 1792 | Shelby C. Kellogg | 1526 | Joseph E. Torok |
| 734 | Richard F. Kelly | 1599 | John W. Trappenberg |
| 756 | John L. Kincaid, Jr. | 1643 | William F. Vokac |
| 759 | John T. Kroeger | 1695 | Richard D. Wendell |
| 904 | Rudolph S. Kula | 1726 | James E. White |
| 799 | Richard A. Krueger | 1731 | Ralph C. Witty |
| 913 | John F. McCaffrey | 1740 | Willard J. Wolff |
| 949 | John P. McNamara | 1780 | Dennis R. Yurik |
| 962 | Robert A. Molnar | 16 | Jerrold L. Zarlenga |

By order of,
RICHARD R. WAGNER,
CHIEF OF POLICE

CLE000781

## GENERAL POLICE ORDER

No. 60-63    HEADQUARTERS    December 17, 19 63

SUBJECT: REINSTATEMENT AND ASSIGNMENT

Albert C. Wallace, Inspector,
Executive Officer.

Raymond Ollie, who resigned as a member of the department December 4, 1962, has been reinstated effective December 16, 1963, and is assigned to District 5. His badge number will be 1801.

By order of,

RICHARD R. WAGNER,
CHIEF OF POLICE

CLE000782

## GENERAL POLICE ORDER

No. __59-63__          HEADQUARTERS_____ December 13, 19_63_

SUBJECT : _____ TRANSFERS _____

Albert C. Wallace,
Executive Officer.

    The following transfers will be effective December 16, 1963:

        Sergt. Vincent Ginley  — Radio Unit to District 5
        Sergt. Robert Schottke — District 5 to Radio Unit

        306  Adam Kukoleck    — Detective Bureau to Motorcycle Unit
        627  James Magas      — Motorcycle Unit to Dist. 4
        884  James Marinich   — District 6 to Detective Bur.
        1690 John Hughes     — District 4 to Traffic Bur.
        1178 Nick Magas      — Traffic Bureau to Dist. 6
        121  Leland Hough     — District 3 to Sanitary Unit
        56   Harold Gircsis    — District 3 to Radio Unit
        125  Anthony Sherbinski— Radio Unit to  District 3

        By order of,

        RICHARD R. WAGNER,
        CHIEF OF POLICE

CLE000783

# GENERAL POLICE ORDER

No. 58-63                    HEADQUARTERS                    December 10, 63
                                                                        19

SUBJECT: NOTIFICATION OF POLICE APPLICANTS

-4-

## FIFTH DISTRICT

Robert J. Czaplicki                 Richard A. Krueger
14601 Strathmore Avenue             2643 Euclid Heights Blvd.
East Cleveland 12, Ohio             Cleveland Heights 6, O.

## SIXTH DISTRICT

John M. Dedich                      John C. Delaney
674 East 160 Street                 # 9 Colonial, Euclid
Cleveland 10, Ohio                  Beach Park
                                    Cleveland 8, Ohio

Thomas M. Gibbons                   James E. Howard
1101 East 145 Street                1195 East 82 Street
Cleveland 10, Ohio                  Cleveland 3, Ohio

John L. Kincaid, Jr.                Rudolph S. Kula
15702 Halliday -- Up                1125 East 66 Street
Cleveland 10, Ohio                  Cleveland 3, Ohio

Frank Piks, Jr.                     Michael W. Santon
1028 East 169 Street                545 Easr 232 Street
Cleveland 10, Ohio                  Euclid 23, Ohio

Michael Simcic
1032 East 76 Street
Cleveland 3, Ohio

                                    By order of,

                                    RICHARD R. WAGNER,
                                    CHIEF OF POLICE

# GENERAL POLICE ORDER

No. 58-63          HEADQUARTERS        December 10, 1963

SUBJECT: NOTIFICATION OF POLICE APPLICANTS

-3-

## SECOND DISTRICT

Joseph E. Torok
3206 Vega Avenue
Cleveland 13, Ohio

Richard D. Wendell
4259 West 21 Street
Cleveland 9, Ohio

James E. White
11635 Glendora Lane
Parma Heights 30, Ohio

Willard J. Wolff
7278 Neville Avenue
Cleveland 2, Ohio

Dennis J. Yurik
3909 Theota Avenue
Parma 34, Ohio

Jerrold L. Zarlenga
2460 Dentzler
Parma 34, Ohio

## FOURTH DISTRICT

Robert L. Bolton
18819 Waterbury Avenue
Maple Heights 37, Ohio

Thomas R. Iglewski
9704 Easton Avenue
Cleveland 4, Ohio

Robert A. Molnar
9613 Manor Avenue
Cleveland 4, Ohio

Leonard B. Szalkiewicz
4250 East 126 Street
Cleveland 5, Ohio

William F. Vokac
4286 East 119 Street
Cleveland 5, Ohio

## FIFTH DISTRICT

Donald W. Bellew
2223 Murray Hill Rd — Up
Cleveland 6, Ohio

Louis J. Caplick
6706 Superior Avenue
Cleveland 3, Ohio

(CONTINUED)

# GENERAL POLICE ORDER

NO. __58–63__                   HEADQUARTERS_____ December 10, 19 63

SUBJECT : ____NOTIFICATION OF POLICE APPLICANTS____

## –2–
## FIRST DISTRICT

Alan J. Simon
3827 West 136 Street
Cleveland 11, Ohio

Kenneth P. Stachowski
2128 Chesterland
Lakewood 7, Ohio

James R. Taffar
3200 West 73 Street
Cleveland 2, Ohio

Paul J. Thomas
10716 Thrush Avenue
Cleveland 11, Ohio

Donald M. Timithy
3043 West 114 Street
Cleveland 11, Ohio

John W. Trappenberg
14206 Parkdale Avenue
Cleveland 11, Ohio

Ralph C. Witty
3411 West 91 Street
Cleveland 2, Ohio

## SECOND DISTRICT

Andrew J. Bodrock
4103 Clybourne Avenue
Cleveland 9, Ohio

Robert A. Donovan
3433 Krather
Cleveland 9, Ohio

Walter Muniak, Jr.
3709 Poe Avenue
Cleveland 9, Ohio

Nephtali Ramos
1931 West 50 Street # 3
Cleveland 2, Ohio

Russell J. Sabat
2217 Portman Avenue
Cleveland 9, Ohio

Thomas J. Smith
5832 Gilbert Court
Cleveland 2, Ohio

(CONTINUED)

## GENERAL POLICE ORDER

No. 58-63          HEADQUARTERS  December 10,        63

SUBJECT: NOTIFICATION OF POLICE APPLICANTS

The various districts will immediately notify the following police applicants to report for duty at 8:30 A.M., Monday, December 16, 1963, at the Office of the Safety Director, Room 230, City Hall, East 6th Street and Lakeside Avenue.

This verbal notification will be made at the residence of the applicant by a uniform officer, in person, who will forward a Form One Report stating the time, place and person notified.  These reports will be forwarded to the Office of the Chief of Police no later than 9:00 A.M., Friday, December 13, 1963.

### FIRST DISTRICT

Roger J. Dennerll
13802 Highlandview Avenue
Cleveland 35, Ohio

Richard L. Fulkerson
5393 Big Creek Parkway#8
Parma 29, Ohio

James R. Hearns
14182 Thompson Blvd
Brookpark, Ohio

Richard F. Kelly
1575 Cohassett Avenue
Lakewood 7, Ohio

John T. Kroeger
11839 Edgewater Drive
Lakewood 7, Ohio

John F. McCaffrey
629 Parkside Drive
Bay Village 40, Ohio

John P. McNamara
2212 Bunts Road
Lakewood 7, Ohio

Donald J. Rieder
3791 West 132 Street
Cleveland 11, Ohio

(CONTINUED)

## GENERAL POLICE ORDER

NO.___57-63___          HEADQUARTERS_____December 2,___19_63

SUBJECT: ___RETURN OF ESCAPEES FROM MENTAL HOSPITALS___

Inspector Albert C. Wallace,
Executive Officer.

    Escapees from local mental hospitals, apprehended
by this department, shall be returned without unnecessary
delay to the institution which they left.  The hospitals
indicated are as follows:

        (1) Cleveland State Hospital
           4455 Turney Road

        (2) Cleveland Metro General
           3395 Scranton Road

        (3) Fairhill Psychiatric Unit
           12200 Fairhill Road

        (4) Hawthornden State Hospital
           Sagamore Road
           Macedonia, Ohio

                    By order of,

                    RICHARD R. WAGNER,
                    CHIEF OF POLICE

CLE000788

## GENERAL POLICE ORDER

No. __56-63__          HEADQUARTERS___ November 15, 1963

SUBJECT : ISSUANCE AND EXECUTION OF PROBATE WARRANTS

MEMBERS OF THE DEPARTMENT:

Deputy Clerks of Probate Court, attached to that court's Psychiatric Unit and located at the state mental hospitals, are empowered to issue Probate Warrants.  In extreme emergencies, when necessary to bypass normal distribution procedures and where there are no relatives or other persons available to deliver a particular warrant to a district station, the following procedure will be followed:

The Deputy Clerk will contact the Police Radio, explain the emergency and request that the police pick up the warrant at the hospital.  Police Radio personnel will dispatch a zone car to secure the warrant and deliver it to the district headquarters of the address contained therein.  The Officer in Charge will accept and arrange for its execution in compliance with G.P.O. 18-59 of July 28, 1959.

At present the Probate Court representatives who may call for such service are:

Miss Eleanor Blackley  — Fairhill Psychiatric Hospital
Mr. James Zika         — Fairhill Psychiatric Hospital
Miss Eleanor Bohacek   — Cleveland Psychiatric Hospital
Mrs. Dorothy Thorne    — Cleveland State Hospital

By order of,

ALBERT C. WALLACE, INSPECTOR
ACTING CHIEF OF POLICE

CLE000789

## GENERAL POLICE ORDER

NO. __55-63__          HEADQUARTERS_____ November 15, 1963

SUBJECT : ____ MISSING JUVENILE REPORTS _____

Inspector Albert C. Wallace,
Executive Officer

Effective immediately, all members making Missing
Person reports on juveniles shall include in such reports
(1) the date of birth of such juvenile and (2) the full
name of each parent.

By order of,

RICHARD R. WAGNER,
CHIEF OF POLICE

CLE000790

## GENERAL POLICE ORDER

No. __54—63__          HEADQUARTERS_____ November 13, 19 63

SUBJECT : _____ PERSONNEL ON LIGHT DUTY _____

Inspector Albert C. Wallace,
Executive Officer

    Effective immediately, no member of this department
who is on light duty shall have or shall receive per—
mission to engage in outside employment while said
member is on light duty.

By order of,

RICHARD R. WAGNER,
CHIEF OF POLICE

CLE000791

## GENERAL POLICE ORDER

No. 52-63                    HEADQUARTERS    November 8,    1963

SUBJECT:        TRANSFERS

Albert C. Wallace, Inspector
Executive Officer.

     The following transfers will be effective November
11, 1963:

Sergt. Arthur Pagel      — AIU to Juvenile Unit
Sergt. Henry Doberstyn  — Juvenile Unit to Chief's Office

834    Frank Pirronelli — District 3 to Mail Unit
179    Anthony Kemsel   — District 3 to Tow Truck Unit
936    James Coyne      — District 3 to Court Officer Unit

                                By order of,

                                RICHARD R. WAGNER,
                                CHIEF OF POLICE

# GENERAL POLICE ORDER

No. 51-63      HEADQUARTERS      November 7, 19 63

SUBJECT:      ANNUAL FURLOUGH — YEAR 1964

## - 3 -

leaving the balance of that furlough period open to repay other men for overtime due them.

Men entitled to a two week furlough may select part A or part B in any one furlough period that is left open to them. In no event can a four or three week furlough man take part B of one furlough period and part A of another furlough period.

The selection of part A and/or part B in any furlough period shall be noted in the A-B column of the drawing sheet.

An IBM card has been prepared for each member of the department and will be forwarded to the District/ Bureau with the furlough drawing sheet. A Superior Officer of the District/ Bureau will draw a circle (with red or blue pencil) about the number and letter representing the furlough selected by the member whose badge and name appear on the card. The furlough number circled must coincide with the furlough number on the furlough drawing sheet.

A two week furlough shall have the number with only "A" or "B" circled, as the case may be.

There a member is entitled to a greater or lesser number of furlough weeks due to prior city service,

CONTINUED

CLE000793

## GENERAL POLICE ORDER

No. 51-63          HEADQUARTERS          November 7, 19 63

SUBJECT: ANNUAL FURLOUGH — YEAR 1964

— 2 —

specified by the Commanding Officer, or Officer-in-charge, as the case may be.

Inspectors will select furloughs at the Office of the Chief at a date to be specified later.

Where Deputy Inspectors, Captains, Lieutenants or Sergeants have been promoted on the same date, the order of selection shall be determined by the length of service in the department, the one having the greater length of service being given first choice. Where Patrolmen have been appointed on the same date, the order of selection shall be by lot.

Each Furlough Drawing sheet shall indicate, in a column provided for that purpose, whether a member is entitled to a two week, a three week or a four week furlough.

Each furlough period of the 1964 furlough shall be divided into part A and part B. The first two weeks shall be part A and the second two weeks part B.

Men entitled to a four week furlough may select part A and part B in any one furlough period.

Men entitled to a three week furlough may select part A and one half of part B in any one furlough period, thus

CONTINUED

## GENERAL POLICE ORDER

No. 51-63      HEADQUARTERS      November 7, 19 63

SUBJECT :      ANNUAL FURLOUGH — YEAR 1964

Albert C. Wallace, Inspector
Executive Officer

Commanding Officers of the various Districts and Bureaus and the Officers-in-charge of the "Special Services" as designated in the Furlough Plan (a copy of which will be forwarded to the various Districts and Bureaus) shall forward a schedule showing the total number of Officers in each rank and the total number of Patrolmen that are to be allotted to each furlough period. This schedule shall be in the office of the Chief of Police on or before 9:00 A.M., November 15, 1963.

The names of Officers and Patrolmen, or their badge numbers, are not to be included in this list.

The official November beat list is to be used for the purpose of preparing this schedule.

Furloughs shall be drawn in accordance with submitted schedule.

For rule determing seniority in drawing furloughs refer to G. O. 50-63, issued 11-7-63.

The selection of furloughs will be held at the various District and Bureau headquarters and the offices of the "Special Services", as indicated in the mimeographed plan, on Monday, November 25, 1963, at times to be

CONTINUED

## GENERAL POLICE ORDER

50-63                                               November 7,      63

NO._____          HEADQUARTERS_____19___

SUBJECT:  RULE FOR DETERMINING SENORITY FOR THE ORDER OF
DRAWING DURLOUGHS AND RULE FOR DETERMINING THE
NUMBER OF WEEKS FURLOUGH TO WHICH MEMBERS ARE
ENTITLED.

- 2 -

for drawing and the number of weeks furlough to which
they are entitled calculated thereafter for the time
they actually served in the department from the date of
original appointment.

This shall not affect those who were suspended under
charges and who were later found not guilty and rein-
stated as of the day of suspension.

This order supersedes General Order #28-61 issued
November 15, 1961.

By order of

RICHARD R. WAGNER,
CHIEF OF POLICE

## GENERAL POLICE ORDER

50-63                                    November 7,      63

No._____HEADQUARTERS_____19____

SUBJECT: RULE FOR DETERMINING SENIORITY FOR THE ORDER OF DRAWING FURLOUGHS AND RULE FOR DETERMINING THE NUMBER OF WEEKS FURLOUGH TO WHICH MEMBERS ARE ENTITLED.

Albert C. Wallace, Inspector
Executive Officer.

Members will draw for furloughs in their order of seniority. Patrolmen from the date of regular (not temporary) appointment to the Department: Officers from date of promotion to rank held.

The number of weeks of furlough to which they are entitled will be calculated from the date on which this person entered the city's service.

City service includes employment with the City of Cleveland prior to appointment to the Department, EXCEPTING prior service, either under the old Cleveland Railway System or the present Cleveland Transit System.

Such service must have been continuous with the exception of temporary lay-offs over which the person have no control and no credit will be given for that period of time during which the member did not work.

Those members who were reinstated within 30 days of their resignation or dismissal shall have the time calculated from the date of their original appointment.

Those members who were reinstated after 30 days of their resignation or dismissal, shall have their senority

CONTINUED

CLE000797

## GENERAL POLICE ORDER

No. 49-63                    HEADQUARTERS          October 31, 19 63

SUBJECT : _____ TRANSFERS

Albert C. Wallace, Inspector
Executive Officer.

     The following transfers are effective November 1, 1963:

```
Sergt. Robert Schottke    - Det. Bur. to Dist. 5
Sergt. Richard Vina       - Dist. 5 to Det. Bur.

1202   William Safewright - Det. Bur. to Dist. 4
1785   John Stoyka        - Dist. 4 to Det. Bur.
1281   Chester Burmeister - Det. Bur. to Traffic
497    Lee Kenney         - Traffic to Det. Bur.
```

                    By order of,

                    RICHARD R. WAGNER,
                    CHIEF OF POLICE

CLE000798

# GENERAL POLICE ORDER

NO. 48-63                    HEADQUARTERS_____ 19___        October 21,    63

SUBJECT: CANCELLATION OF G. O. 47-63 — CASES INVOLVING JUVENILE OFFENDERS

TO THE MEMBERS OF THE DEPARTMENT:

General Order 47-63, issued October 17, 1963, is hereby corrected to read as follows:

All cases involving juveniles where any member of this department has been assaulted, hindered, obstructed or abused by such juveniles, the member so affected or abused shall consult with Chief Police Prosecutor Richard Matia or the assigned member of his staff, so that the proper charges may be had in Juvenile Court.

By order of,

RICHARD  R. WAGNER,
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 47-63          HEADQUARTERS October 17, 19 63

SUBJECT : _____ CASES INVOLVING JUVENILE OFFENDERS _____

TO THE MEMBERS OF THE DEPARTMENT:

In all cases involving juvenile offenders in which members of this department are concerned, notice of the date of such hearing and the circumstances surrounding such offence shall be given to Chief Prosecutor Richard Matia, or a member of his staff assigned to handle such matters. In addition, all cases involving juveniles where any member of this department has been assaulted, hindered, obstructed or abused by such juveniles, the member so affected shall consult with Chief Prosecutor Richard Matia or the assigned member of his staff, so that the proper charges may be had in Juvenile Court.

By order of,

RICHARD R. WAGNER,
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 45-63             HEADQUARTERS_____ September 13, 19 63

SUBJECT: ____ PROMOTIONS — ASSIGNMENTS — TRANSFERS ____

Albert C. Wallace, Inspector,
Executive Officer.

        The following promotions, assignments and transfers
are effective September 16, 1963:

| | | |
|---|---|---|
| Lieut. | Thomas Fitzgerald | Promoted to Captain and assigned to District 3. |
| Sergt. | Eugene Orenski | Promoted to Lieutenant and assigned to District 3. |
| 101 | Vincent Ardito | Promoted to Sergeant and assigned to Police Academy. |
| 1695 | John Kukula | Promoted to Sergeant and assigned to District 5. |

| | | |
|---|---|---|
| Capt. | William Birmingham | Dist. 3 to Dist. 2 |
| Sergt. | Vince Ginley | Dist. 5 to Radio Unit |
| Sergt. | Michael Ahrens | Radio Unit to Det. Bur. |
| 358 | Robert Gaughan | Dist. 2 to Dist. 5 |
| 708 | Dennis Murphy | Dist. 5 to Dist. 2 |
| 1215 | Robert Cavell | Dist. 5 to Bur. Adm. Serv. |
| 1719 | John Yezerski | A I U to Det. Bur. |
| 50 | Ernest Sabo | Dist. 4 to Det. Bur. |
| 1600 | Raymond Lanigan | Dist. 6 to Det. Bur. |
| 1272 | Edward Toth | Dist. 6 to Telephone Exchange |

                        By order of,

                        RICHARD R. WAGNER,
                        CHIEF OF POLICE

CLE000801

# GENERAL POLICE ORDER

No. __44-63__              HEADQUARTERS____ August 15, ___1963___

SUBJECT: ____ PROMOTION AND TRANSFERS _____

Inspector Albert C. Wallace,
Executive Officer.

The following promotion and transfers are effective
August 16, 1963:

680 Walter M. Kreps promoted to rank of Sergeant and
                   assigned to Accident Invest. Unit.

Lieut. Ernest Willcocks transferred from Juvenile Unit to
                   Detective Bureau

883 Albert Tekautz transferred from District 6 to Bureau
                   Criminal Investigation, S.I.U.

By order of,

RICHARD R. WAGNER,
CHIEF OF POLICE

## GENERAL POLICE ORDER

No.  43-63                    HEADQUARTERS          August 1,        19  63

SUBJECT :                          TRANSFERS

Inspector Albert C. Wallace,
Executive Officer.

The following transfers are effective August 2, 1963:

Lieut. James Fitzgerald – District 1 to District 3

Lieut. Harry Weitzel    – District 3 to District 1

By order of,

RICHARD R. WAGNER,
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 42-63          HEADQUARTERS_____ July 31,      ,1963

SUBJECT: _____ PROMOTIONS AND TRANSFERS

Inspector Albert C. Wallace,
Executive Officer.

    The following promotions and transfers are effective
August 1, 1963:

| | | |
|---|---|---|
| Lieut. Patrick Gerity | | promoted to Captain and assigned to Detective Bureau |
| Sergt. Louis Kulis | | promoted to Lieutenant and assiged to Detective Bureau |
| Sergt. James Fitzgerald | | promoted to Lieutenant and assigned to District 1 |
| 1331 | Joseph Mengel | promoted to Sergeant and assigned to District 1 |
| 246 | Peter J. Balega | promoted to Sergeant and assigned to Radio Unit |
| Sergt. Leo Peters | | from A.I.U. to Detective Bureau |
| Sergt. John Hughes | | from Radio Unit to Detective Bur. |
| Sergt. Arthur Pagel | | from Dist. 3 to A.I.U. |
| Sergt. Thomas Kilbane | | from Det..Bur. to Dist. 3 |
| 141 | Ernest Herskowitz | from Traffic to Dist. 4 |
| 567 | Lawrence Hernandez | from Dist. 4 to Det. Bur. |
| 875 | Wm. Gabelein | from Rec. Room to W.S. Traffic |
| 398 | Frank Lisiecki | from Dist. 4 to Tech. Services, Record Unit |
| 306 | Adam Kukoleck | from Traffic Bur. to Det. Bur. |
| 394 | Vitus Zelinskas | from W.S. Traffic to Dist. 4 |

                        By order of,

                        RICHARD R. WAGNER,
                        CHIEF OF POLICE

## GENERAL POLICE ORDER

No. __41-63__    HEADQUARTERS_____ July 25, ____1963__

SUBJECT : _____ REINSTATEMENT _____

Albert C. Wallace, Inspector,
Executive Officer.

    Barbara A. Campbell, who resigned from the department
July 13, 1962, has been reinstated effective July 26, 1963.
She is assigned to the Women's Bureau and will have badge
number 3003.

By order of,

RICHARD R. WAGNER,
CHIE OF POLICE

## GENERAL POLICE ORDER

No. 40-63          HEADQUARTERS          July 19,          63
                                                           19

SUBJECT: RETRAINING PROGRAM FOR BUREAU OF PATROL

-2-

    This retraining program will be conducted for sixteen weeks. Some of the districts will have retrained their entire complement in twelve weeks. The Port and Harbors personnel will fill out the classes during the last four weeks.

    In addition, each district shall send one supervisory officer, either a sergeant or a lieutenant, per week until all of the field supervisory officers of the rank of sergeant and lieutenant have been so retrained.

               By order of

               RICHARD R. WAGNER,
               CHIEF OF POLICE

CLE000806

## GENERAL POLICE ORDER

No. 40-63          HEADQUARTERS_____ July 19,  63
                                                    19____

SUBJECT : ____RETRAINING PROGRAM FOR BUREAU OF PATROL_____

Inspector Albert C. Wallace,
Executive Officer.

The Cleveland Police Department retraining program
for the Bureau of Patrol will commence at 9:00 A.M.,
Monday, July 22, 1963. All patrolmen assigned to the
Bureau of Patrol who are performing active duty on zone
cars, mobile patrols and boats will receive 40 hours
(one week) training with a view to retraining them to
man the new 3-way zone patrols which will become oper-
able by the end of this year.

Each district will, therefore, send nine patrolmen
per week to the Cleveland Police Academy at the 5th
District Headquarters where they will receive this in-
struction from 9:00 A.M. until 5:00 P.M., Monday through
Friday. They are to report in uniform and with batons.
The district commanders will continue to send nine
patrolmen per week until all of the eligible personnel
under their command have had this training.

The district complement of men to be sent to the
retraining session can best be obtained by taking a
different zone car or mobile patrol out of service each
week and sending the entire complement of men who man
that vehicle to the school. Where some of these men
are on furlough, the complement of nine men may be
attained by filling in beat patrolmen for those members
on furlough.

(CONTINUED)

CLE000807

# GENERAL POLICE ORDER

No. 39-63          HEADQUARTERS          July 22,      19 63

SUBJECT :          DISASTER   PLAN

Inspector Albert C. Wallace,
Executive Officer.

This disaster plan has been formulated as a guide to
be followed by the Cleveland Police Department in disasters
of all types.

Copies are now ready for distribution at the Bureau
of Administrative Services, Central Station. Each Unit
and Bureau shall send a representative there to pick up
it's copies. Each member shall sign a payroll sheet as a
receipt to acknowledge receiving his copy. Completed
payroll sheets shall be returned to the Bureau of Admin-
istrative Services by August 1, 1963.

Supervisory officers copies contain an additional
section, an index, and will have the name of the supervi-
sory officer on same.

Members should protect their copies with a suitable
three ring binder as additional material will be issued in
the future.

By order of,

RICHARD R. WAGNER,
CHIEF OF POLICE

## GENERAL POLICE ORDER

NO. __38-63__          HEADQUARTERS_____ __July 15,__ 19 63

SUBJECT: MOVING VIOLATION. CITATION, COURT DATES

Inspector Albert C. Wallace,
Executive Officer

Effective, Wednesday, July 17, 1963, the Moving Viola-
tion Citation Court Dates will be announced daily in the
Traffic Death Bulletin.

The announcements in the Traffic Death Bulletin will
conform to Paragraph 1, General Police Order 25-62, dated
September 27, 1962.

By order of,

RICHARD R. WAGNER,
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 37-63                    HEADQUARTERS                    July 15,        63

SUBJECT :              TRANSFERS

Inspector Albert C. Wallace,
Executive Officer.

    The following transfers will be effective July 16, 1963:

1307 Richard Homulos     — Property Room to Store Room

20   Stanley Bencina     — District 6 to Property Room


                                By order of,

                                RICHARD R. WAGNER,
                                CHIEF OF POLICE

CLE000810

## GENERAL POLICE ORDER

NO. __36-63__          HEADQUARTERS_____ July 3, ___19 63

SUBJECT : _____ TRANSFERS _____

Albert C. Wallace, Inspector
Executive Officer

The following transfers will be effective
July 5, 1963:

1837  Kenneth Kuntz — Radio to Dist. 4
1875  Joseph Toigo   — Radio to Dist. 6
1647  John Stys      — Dist. 4 to Dist. I

By order of

RICHARD R. WAGNER,
CHIEF OF POLICE

CLE000811

# GENERAL POLICE ORDER

No. 35-63                 HEADQUARTERS                July 2,           63
                                                                  19____

SUBJECT: _____ PUBLIC PLAYGROUND CHECK _____

> Albert C. Wallace, Inspector
> Executive Officer.
>
> Effective immediately no juveniles or adults
> shall be permitted in any public playground after
> dark on any day of the week. Zone cars shall check
> to insure that such playgrounds are clear and shall
> record such checks on their duty reports. The
> visits required by this Order shall be in addition
> to the regular visits to prevent vandalism and
> rowdyism..
>
>                          By order of
>
>                          RICHARD R. WAGNER,
>                          CHIEF OF POLICE

# GENERAL POLICE ORDER

NO. __34-63__          HEADQUARTERS_____ July 2, __19 63

SUBJECT : _____ AMENDMENTS TO GO  23-62 and 14-63 _____

Albert C. Wallace, Inspector
Executive Officer

  Effective July 3, 1963, all reference to the
Unit of Records or the General Records Division in
General Police Orders #23-62 and #14-63--(#23-62---
New Traffic Citation Form-Distribution and usage
and #14-63--New Juvenile Traffic Offense Citation
Form-Distribution and usage)--shall be amended to
read: Inspection, Planning and Research Division.

        By order of

        RICHARD R. WAGNER,
        CHIEF OF POLICE

## GENERAL POLICE ORDER

NO. ___33-63___          HEADQUARTERS_____June 28,_____19__63

SUBJECT : _____TRANSFERS_____

Albert C. Wallace, Inspector
Executive Officer.

The following transfers will be effective
July 1, 1963:

| | | | | | | |
|---|---|---|---|---|---|---|
| Sergt. | Harry Clark | — Dist. 1 | | to Radio | | |
| 1810 | Paul Bell | — | " | 6 | " | Dist. 4 |
| 737 | Thos. Graven | — | " | 5 | " | " 1 |
| 481 | Robt. Shiever | — | " | 4 | " | " 2 |
| 636 | Robt. Mangan | — | " | 1 | " | " 5 |
| 866 | John Slattery | — | " | 2 | " | " 1 |
| 914 | James A. Sands | — Traffic | | " | Adm. Serv. |
| 1704 | Gerald Mullen | — A I U | | " | Motorcycle |
| 1818 | Robt. Bush | — Dist. 1 | | " | A I U |
| 409 | Michael Kachinski | — | " | 3 | " | Dist. 1 |
| 885 | James Derby | — | " | 3 | " | " 1 |
| 1296 | Elmer Witzke | — | " | 1 | " | " 3 |
| 1291 | Fred Mueller | — | " | 1 | " | " 3 |

By order of


RICHARD R. WAGNER,
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 32-63          HEADQUARTERS          June 18,          19 63

SUBJECT : _____ REINSTATEMENT _____

Albert C. Wallace, Inspector,
Executive Officer.

Richard M. Downing, who resigned as a member of the
department September 18, 1962, has been reinstated
effective June 19, 1963 and is assigned to the Sixth
District.  He will have badge No. 873.

By order of,

RICHARD R. WAGNER,
CHIEF OF POLICE

CLE000815

## GENERAL POLICE ORDER

No. __31-63__          HEADQUARTERS_____ June 17, ____19 63

SUBJECT : __MEMBERS WITNESS FOR DEFENSE ON SUBPOENA__

Inspector Albert C. Wallace,
Executive Officer.

In any criminal prosecution in which this department
is involved, no member of the department shall be witness
for the defense except on subpoena lawfully issued.  In
every such instance the member so subpoenaed shall forth-
with notify the Prosecutor conducting such prosecution
of such service and give him imformation concerning the
time of such service and the testimony required, if known.
The member so subpoenaed shall forward a Form I report to
his Commanding Officer, giving the same information as
given to the Prosecutor.

By order of,

RICHARD R. WAGNER,
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 29-63                    HEADQUARTERS                    June 5, 1963                    19

SUBJECT: NEW MOVING VIOLATION CITATION FORM:  ADDITIONAL INSTRUCTION ON USAGE AND ACCOUNTING.

Albert C. Wallace, Inspector.
Executive Officer.

You will cause all members of the Department to refer to General Police Order 25-62, dated September 27, 1962, with the same subject as this Order.

Effective June 6, 1963, for reasons of economy, the words "Memo Book 65-70" will be substituted for the words "Prisoner Receipt Book" in section II paragraph one, line 4, and paragraph three, line 2 and section V paragraph (b) line 3, of General Police Order 25-62.

Memo Book 65-70 may be obtained on the monthly supply order from the Store Room. One such book is being sent with this order to all units issued Moving Violation Citation Forms.

By order of


RICHARD R. WAGNER,
CHIEF OF POLICE

## GENERAL POLICE ORDER

No.  28-63                    HEADQUARTERS_____  May 15,  _1963

SUBJECT : _____  PROMOTION — TRANSFERS

Inspector Albert C. Wallace,
Executive Officer.

    The following promotion and transfers will be effective
May 16, 1963:

| | | |
|---|---|---|
| 1520 | William C. Stuber | — Promoted to Sergeant and assigned to District 2. |
| 1700 | Raymond Michol | — From Dist. 3 to Det. Bureau |
| 983 | James Mangan | — From Radio to Traffic |
| 954 | Carl Almgren | — From Traffic to Radio |
| 673 | Phillip DeLaine | — From Dist. 6 to Juvenile Bureau |
| 1307 | Richard Homulus | — From Traffic Bur. to Property Room |
| 394 | Vitus Zelinskas | — From Property Room to Traffic Bureau |

By order of,

RICHARD R. WAGNER,
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. __27-63__          HEADQUARTERS_____ April 30, __19 63__

SUBJECT : _____ AUTO CLUB TOWS _____ ___ ____ _____ _____

Inspector Albert C. Wallace,
Executive Officer.

To prevent undue inconvenience to owners and operators
of autos to be towed in to an Auto Club garage through the
Auto TheftUnit, by request of some member of this department,
when contact is made with either the owner or operator of
said auto the following procedure is to be maintained:

The titled owner must present his title for the release.
If the owner cannot appear, he must furnish the title and
a written authorization.signed by him to the person pre-
senting the title.  If the car is financed and the title is
beingheld by the finance company, a memorandum certificate
of title may be presented in lieu of the title.

If the car has just recently been purchased from a
dealer and the title is in the process of being transferred,
a letter, containing serial and title number, from the
dealer on his stationery showing that said party is the
owner will be accepted.

When a car is found occupied and is to be towed, in-
formation must be obtained as to the name and address of
the owner and whether the car is to be held or released.
This information must be telephoned in to the Auto Theft
Unit as soon as possible after the car has been towed.

A new printed Form # 1069 will be distributed to the
Districts and Units.  This form is printed on both sides;
one side is NOTICE TO OWNER of cars ordered towed to an
"AAA" garage by members of the police department and on
the opposite side is the authorization to release the car
to someone other than the owner upon presentation of the
(CONTINUED)

CLE000819

## GENERAL POLICE ORDER

No. __27-63__          HEADQUARTERS_____ April 30, ___63___

SUBJECT : _____ AUTO CLUB TOWS _____

-2-

TITLE or MEMO CERTIFICATE. A Form # 1069 is to be given to the operator of any automobile ordered towed to an "AAA" garage by members of this department.

If there is to be no "HOLD" on the car and it is not creating a traffic hazard, the operator or owner upon presentation of proper ownership credentials, may be allowed to have the car towed to a specific garage of his own choice. In this case it will not be necessary to obtain a release from the Auto Theft Unit.

General Police Order No. 52-55, issued September 12, 1955, is hereby rescinded.

By order of,   .

RICHARD R. WAGNER,
CHIEF OF POLICE

CLE000820

## GENERAL POLICE ORDER

No. 26-63            HEADQUARTERS        April 30,        1963

SUBJECT : _____        TRANSFERS

Albert C. Wallace, Inspector,
Executive Officer.

    The following transfers will be effective May 1, 1963:

| | | |
|---|---|---|
| Lieut. Wm. Halloran | | – Dist. 3 to Dist. I |
| Lieut. Raymond Moran | | – Dist. I to Dist. 3 |
| 900 | Robert Paisley | – Traffic Bureau to Arms Unit |
| 196 | James Holliday | – Dist. 6 to Traffic |
| 903 | John Patton | – A.I.U. to Dist. 5 |
| 1539 | James Oliver | – Dist. 5 to A.I.U. |
| 842 | Robert Horschler | – A.I.U. to Dist. 4 |
| 512 | Fred Bolden | – Dist. 4 to A.I.U. |
| 1772 | Tom Richissin | – Dist. 4 to Radio |
| 126 | George Albrecht | – Radio to Dist. 4 |
| 1765 | Lawrence Muraski | – Dist. 5 to Dist. 6 |

                      By order of,

                      RICHARD R. WAGNER,
                      CHIEF OF POLICE

CLE000821

## GENERAL POLICE ORDER

No. 25-63            HEADQUARTERS    April 26,        ,63

SUBJECT:       BUILDING PERMITS

Inspector Albert C. Wallace,
Executive Officer.

During tours of duty, members of the Basic Patrol are
to be on the lookout for any evidence of building construc-
tion, alteration or repair. This shall include building
or garage construction, porch or room additions to ex-
isting structures, addition or removal of interior par-
titions, plumbing, heating or wiring installations.

When a member observes such work being done, he shall
ascertain whether a permit has been obtained and posted.
If no permit has been obtained, the member shall ascertain
the name of the owner, address and type of work and shall
notify the Sanitary Unit, police line 375, between the
hours of 8:00 A.M. and 4:00 P.M. During the hours this
office is closed, the officer in charge of the station
house of the district concerned is to be notified and
he shall record this information. It shall be the duty
of the officer in charge of the station house on the
first platoon to notify the Sanitary Unit of the violation
the following morning.

All such inspections are to be included on the member's
daily duty report.

No further action or reports will be required and
previous orders or parts of orders in conflict are hereby
rescinded.

By order of,

RICHARD R. WAGNER,
CHIEF OF POLICE

CLE000822

## GENERAL POLICE ORDER

No. 24-63          HEADQUARTERS_____ April 15,      63

SUBJECT : _____ TRANSFERS _____

Inspector Albert C. Wallace,
Executive Officer.

    The following transfers will be effective April 16,
1963:

Lieut. Walter Davenport   — Dist. 2 to Bureau of Administra-
                             tive Services
Lieut. Harold Schwaerzle — Dist. 6 to Dist. 2
Lieut. Thomas White       — Detective Bureau to Dist. 6

                              By order of,

                              RICHARD R. WAGNER,
                              CHIEF OF POLICE

CLE000823

## GENERAL POLICE ORDER

No. _____23-63_____      HEADQUARTERS_____April 12, ___19 63___

SUBJECT : ___REINSTATEMENT AND ASSIGNMENT___

Inspector Albert C. Wallace,
Executive Officer.

Sebastian T. Midolo, who resigned from the department
May 21, 1962, has been reinstated effective April 16, 1963
and is assigned to the Detective Bureau.  He will have
badge number 1615.

By order of,

RICHARD R. WAGNER,
CHIEF OF POLICE

CLE000824

## GENERAL POLICE ORDER

No. 22-63                    HEADQUARTERS          April 5,          63

SUBJECT: SOLICITATION OF CONTRIBUTIONS OR SALE OF TICKETS

Inspector Albert C. Wallace,
Executive Officer.

　　Effective immediately, no member of the Cleveland
Police Department, whether on or off duty, shall
solicit or accept contributions or sell tickets for
any purpose whatsoever.

By order of,

RICHARD R. WAGNER,
CHIEF OF POLICE

CLE000825

## GENERAL POLICE ORDER

No. __21-63__          HEADQUARTERS____April 1,_____19__63__

SUBJECT: PROMOTIONS – ASSIGNMENTS – TRANSFERS

Inspector Albert C. Wallace,
Executive Officer.

The following promotions, assignments and transfers
are effective April 1, 1963:

Captain James Limber promoted to Deputy Inspector and
        assigned in Command of the Detective Bureau.

Lieutenant Eugene Pfaff promoted to Captain and assigned
        to the Detective Bureau.

Sergeant William Huntington promoted to Lieutenant and
        assigned to District 3.

Patrolman Peter Mihalic No. 901, promoted to Sergeant and
        assigned to District 2.

Lieutenant Lloyd Garey transferred from District 3 to
        Police Academy.

By order of,

RICHARD R. WAGNER,
CHIEF OF POLICE

CLE000826

## GENERAL POLICE ORDER

No. __20-63__          HEADQUARTERS_____ March 29, _____ 19 63

SUBJECT : _____ TRANSFERS _____

Inspector Laurence Choura,
Acting Executive Officer.

The following transfers will be effective April 1, 1963:

| | | |
|---|---|---|
| 136 | William Kaiser | — From Detective Bur. to Dist. 4 |
| 678 | Geo. Gackowski | — From Detective Bur. to Dist. 6 |
| 640 | Lawrence Doran | — From Detective Bur. to Dist. 5 |
| 917 | Frank Kiraly | — From Detective Bur. to Dist. 6 |
| 1804 | John Kaminski | — From Dist. 5 to Detective Bur. |
| 748 | John Kane | — From Dist. 4 to Detective Bur. |
| 310 | James Fuerst | — From Dist. 6 to Detective Bur. |
| 1154 | Theo. Swintek | — From Dist. 6 to Detective Bur. |
| 1661 | Chas. Wright | — From Dist. 5 to Dist. 2 |
| 983 | James Mangan | — From Dist. 2 to Radio |
| 199 | Leroy Brinkhoff | — From Radio to Dist. 2 |
| 275 | Wm. Bostelman | — From A.I.U. to Labor Relations Unit |
| 968 | Michael Barrett | — From Labor Relations to A.I.U. |
| 331 | Thomas E. Mahon | — From Dist. 2 to Special Investigation Unit |

By order of,

RICHARD R. WAGNER,
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 19-63          HEADQUARTERS        March 26,       1963

SUBJECT: _____ BANK ALARM CAMERAS _____

-2-

The Commanding Officer of the Detective Bureau, upon being so notified, will dispatch a detective to Lab-Craft to return the film to him as soon as it is processed. The Commanding Officer of the Detective Bureau, upon receipt of the film, will make a determination as to its use. If the film is satisfactory, it will be shown to all available detectives and uniform personnel, and to witnesses at the robbery, to see if immediate identity can be made. A projector is available in the police Photo Lab.

A copy of the film will be made immediately available to the FBI.

It will then be determined by the Commanding Officer of the Detective Bureau if the films are to be released to the various news agencies. All new agencies receiving the film must agree to either air or print the following:

"If you recognize the wanted persons in this film or photograph, telephone the Cleveland Police Department at MA 1-1234 at once."

This must be insisted upon for the benefit of the public

If, for some reason, no one is on duty at Lab-Craft, a list of telephone numbers of Lab-Craft personnel to be contacted is on file at the Detective Bureau.

By order of,

RICHARD R. WAGNER,
CHIEF OF POLICE

CLE000828

# GENERAL POLICE ORDER

No. 19-63          HEADQUARTERS          March 26,          63

SUBJECT : _____ BANK ALARM CAMERAS _____

Laurence Choura, Inspector,
Acting Executive Officer.

Effective Immediately, whenever a bank alarm is re-
ceived from a bank which has a bank camera installed, the
Exchange operator telephoning the alarm to Radio shall in-
form Radio of the presence of the camera in the bank. The
radio dispatcher shall advise all vehicles dispatched to
the scene of the presence of the camera.

When a holdup has actually taken place, the manager
of the bank shall, after making sure that all the film has
been completely run through the camera, remove such film
from the camera and turn it over to the police. If the
manager is unable to remove the film from the camera, he
shall make sure that the remaining film is completely run
through the camera, after which he shall turn the entire
camera over to the police.

The Officer then in charge at the scene shall see to
it that this film, or the film and camera, shall immediately
be dispatched in a police vehicle to the Lab-Craft, Inc.,
4019 Prospect Avenue and he shall inform Radio by 'phone
or radio broadcast, that this has been done. Radio shall
immediately 'phone Lab-Craft at UT 1-4334 and advise them
that a bank holdup film is on the way to them and that they
should make immediate preparation for its developement.
Radio shall also notify the Commanding Officer of the
Detective Bureau that such film is on the way to Lab-Craft
and inform him what vehicle is conveying it.

(CONTINUED)

## GENERAL POLICE ORDER

No. 18-63          HEADQUARTERS          March 26,          19 63

SUBJECT: _____ CITY LICENSES

Inspector Laurence Choura,
Acting Executive Officer.

License Commissioner Stanley Nemec advises that under a new ruling a violation under a prior license would not be applied to current licenses or permits for revocation purposes.

In the past we have awaited the court disposition where an arrest has been made on premises holding licenses sought to be revoked as a result of that arrest. In the interim, prior to the hearing of the case, the license expires, is renewed and is invulnerable.

Therefore, effective immediately, when any arrest is made, as a result of which arrest licenses will be in jeopardy, a copy of such arrest report shall be forwarded to License Commissioner Stanley Nemec, via the Chief's Office, as a stopper against renewal of such licenses. Upon final disposition of the case, notice of such disposition shall be sent to License Commissioner Stanley Nemec, via the Chief's Office, together with revocation request, or a request that the stopper be removed.

By order of,

RICHARD R. WAGNER,
CHIEF OF POLICE

CLE000830

## GENERAL POLICE ORDER

No. 17-63          HEADQUARTERS          March 14,          19 63

SUBJECT : _____ TRANSFER _____

Laurence Choura, Inspector,
Acting Executive Officer.

The following transfer will be effective March 15,

1963:

Robert Reynolds No. 127  Radio to 4th District

By order of,

RICHARD R. WAGNER,
CHIEF OF POLICE

CLE000831

## GENERAL POLICE ORDER

No. ___ 16-63 ___          HEADQUARTERS _____ March 14, ___ 19 __ 63

SUBJECT : _____ POLICE EDUCATION FOUNDATION _____

Inspector Laurence Choura,
Acting Executive Officer.

All members of this department are hereby advised of the permanent establishment of a Police Education Foundation, the president of which is Mr. Birkett L. Williams.

The purpose of this foundation is to provide a scholarship with either full or part tuition, depending on need, for a son or daughter of any active, retired or deceased full time Cuyahoga County police officer.

Candidates for this scholarship must have been accepted for admission to either Baldwin Wallace, Case Tech, Fenn, John Carroll or Western Reserve University, and must have been recently graduated from high school, must be un-married and must be  full time students.  A scholarship is renewable, contingent upon satisfactory performance. Candidates will be screened by the Director of Admissions of each college, and the selection of the candidates will be made by these directors acting in concert.  The award will be made each spring.

Interested members may contact Sergeant George Pollick, Division of Records, for any further particulars.

By order of,

RICHARD R. WAGNER,
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 15-63          HEADQUARTERS        March 13,        1963

SUBJECT: _____TRANSFERS_____

Inspector Laurence Choura,
Acting Executive Officer.

The following transfers will be effective March 15,
1963:

    359  John Carman        — District 6 to District 4

    1083 Sheldon Friedland — District 4 to District 6

By order of,

RICHARD R. WAGNER,
CHIEF OF POLICE

CLE000833

## GENERAL POLICE ORDER

No. 14-63    HEADQUARTERS   March 11,  63

     NEW JUVENILE TRAFFIC OFFENSE CITATION FORM
SUBJECT:  DISTRIBUTION USAGE

Laurence Choura, Inspector,
Acting Executive Officer.

   Effective 12:01 A.M., March 17, 1963 the new type of
Juvenile Traffic Offense Citation form shall be used when
apprehending juvenile traffic offenders.  It is a four part
form which includes the Juvenile Court Petition and Affidavit.
Citations are serially numbered and are bound ten sets per
book.  Each book is also numbered.  Citation books will be
available on and after March 13, 1963 at the Traffic Office.
   A detailed instruction sheet entitled, "NEW JUVENILE
TRAFFIC OFFENSE CITATION FORM — DISTRIBUTION AND USAGE", is
being prepared and will be distributed.  It is to be con-
sidered an integral part of this General Order (14-63) and
is to be so regarded in its entirety.  It shall be included
in the official binder of General Police Orders of each
command.
   Each member of the department is to receive a copy
of this instruction sheet which shall be combined with his
book of Rules and Regulations governing the Division of
Police.  Sufficient copies of the instruction sheet will
be forwarded to each command.
   The type of Juvenile Traffic Citation, now in use, is
to be discontinued at 12:00 Midnight, March 16, 1963.  The
books or portions thereof are to be collected, packaged
and returned to the General Records Division on or before
March 22, 1963.
   The following orders are hereby rescinded:- Chief's
Memo. 109-58 of September 19, 1958 and General Police
Order 9-62 of March 14, 1962.

       By order of,

       RICHARD R. WAGNER,
       CHIEF OF POLICE

CLE000834

## GENERAL POLICE ORDER

No. 13-63                    HEADQUARTERS____February 28, ____1963

SUBJECT: __PROMOTIONS, ASSIGNMENTS AND TRANSFERS__

-6-

| | | | |
|---|---|---|---|
| 865 | John F. Martich, Jr. | — Police Academy to District 3 |
| 910 | Ronald A. Piar | — Police Academy to District 3 |
| 919 | Edward Pischel | — Police Academy to District 3 |
| 945 | Theodore M. Poluka | — Police Academy to District 3 |
| 990 | Howard E. Rudolph | — Police Academy to District 3 |
| 1043 | Gary W. Spoerke | — Police Academy to District 3 |
| 881 | Eugene R. Patena | — Police Academy to District 3 |
| 512 | Fred E. Bolden | — Police Academy to District 4 |
| 872 | Joseph J. Hudec | — Police Academy to District 4 |
| 761 | Thomas Janiszewski | — Police Academy to District 4 |
| 798 | Joseph A. Katonka | — Police Academy to District 4 |
| 1110 | Alfred D. Zellner | — Police ACademy to District 4 |
| 1054 | William J. Blakemore | — Police Academy to District 5 |
| 1176 | Thomas Branch | — Police Academy to District 5 |
| 588 | William R. David | — Police Academy to District 5 |
| 647 | James T. Farmer | — Police Academy to District 5 |
| 681 | Edward Glinski | — Police Academy to District 5 |
| 892 | Robert F. Phillips | — Police Academy to District 5 |
| 961 | William J. Robinson | — Police Academy to District 5 |
| 1007 | James J. Scully | — Police Academy to District 5 |
| 1036 | Louis J. Sladewski | — Police Academy to District 5 |
| 399 | William F. Vargo | — Police Academy to District 5 |
| 564 | Patrick B. Clarke | — Police Academy to District 6 |
| 601 | Thomas E. Diemert | — Police Academy to District 6 |
| 683 | Melvyn Goldsterin | — Police Academy to District 6 |
| 877 | Steven J. Merencky | — Police Academy to District 6 |
| 1019 | William J. Sharp | — Police Academy to District 6 |

By order of,

RICHARD R. WAGNER,
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 13-63      HEADQUARTERS February 28, 19 63

SUBJECT: PROMOTIONS, ASSIGNMENTS AND TRANSFERS

-5-

| | | |
|---|---|---|
| 610 | Richard Craig | — District 3 to A.I.U. |
| 1724 | George Sekerak | — District 4 to Bureau Traffic |
| 1790 | Donald Vallo | — District 4 to District 1 |
| 765 | John Malloy | — District 4 to District 2 |
| 15 | James Avon | — District 5 to District 2 |
| 200 | Louis Barracato | — District 5 to District 4 |
| 662 | Raymond Mahoney | — District 5 to District 1 |
| 527 | John Krane | — District 5 to District 6 |
| 1050 | Fred Bartlett | — Radio to Police Exchange |
| 1575 | Thomas Moviel | — Police Exchange to District 3 |
| 978 | Raymond Seuffert | — Bureau Traffic to District 1 |
| 3004 | Delphine Kniola | — Bureau Traffic to Women's Bureau |
| 139 | Henry Cavanagh | — Sanitary Unit to District 2 |
| 866 | John Slattery | — Bureau Services to District 2 |
| 1626 | Emil Paliwoda | — Public Relations to Chief's Off. |
| 1121 | Charles Brynak | — Public Relations to District 5 |
| | | |
| 370 | Robert Barens | — Police Academy to District 1 |
| 828 | Edward F. Kelly | — Police Academy to District 1 |
| 849 | Earle S. Kratzer | — Police Academy to District 1 |
| 953 | William F. Reiber | — Police Academy to District 1 |
| 554 | William E. Boretsky | — Police Academy to District 2 |
| 768 | Paul Jurcisin | — Police Academy to District 2 |
| 863 | Daniel J. McDonald | — Police Academy to District 2 |
| 501 | Frederick E. Bognar | — Police Academy to District 3 |
| 1174 | Tom L. Burton | — Police Academy to District 3 |
| 691 | Richard C. Goralski | — Police Academy to District 3 |
| 661 | Ronald C. Gelb | — Police Academy to District 2 |

(CONTINUED)

CLE000836

## GENERAL POLICE ORDER

No. 13-63                    HEADQUARTERS_____February 28,____19 63

SUBJECT : __PROMOTIONS, ASSIGNMENTS AND TRANSFERS__

—4—

| | | |
|---|---|---|
| 1160 | Henry Wrona | — AIU to Detective Bureau |
| 101 | Vince Ardito | — Academy to Detective Bureau |
| 66 | Harvey Behrendt | — District 1 to Detective Bureau |
| 1695 | John Kukula | — District 2 to Detective Bureau |
| 485 | James Cofield | — District 3 to Detective Bureau |
| 1520 | William Stuber | — District 3 to Detective Bureau |
| 487 | Robert Hanlon | — District 4 to Detective Bureau |
| 1872 | Thomas Smith | — District 4 to Detective Bureau |
| 1032 | Cleveland Sims | — District 5 to Detective Bureau |
| 1554 | Lloyd Patterson | — District 5 to Detective Bureau |
| 901 | Peter Mihalic | — District 6 to Detective Bureau |
| 23 | Joseph Gleason | — District 6 to Detective Bureau |
| | | |
| 675 | Thomas Murphy | — Det. Bur. to Director's Office |
| 30 | Gilbert Batman | — Detective Bureau to District 2 |
| 264 | Arthur Blythin | — Detective Bureau to District 2 |
| 758 | John Oiler | — Detective Bureau to District 2 |
| 324 | John Papp | — Detective Bureau to District 3 |
| 706 | Martin Lowry | — Detective Bureau to District 3 |
| 1397 | Jos. Johnson | — Detective Bureau to District 3 |
| 435 | Edward Coleman | — Detective Bureau to District 4 |
| 541 | Wendell Grant | — Detective Bureau to District 4 |
| 1314 | Carmen Naso | — Detective Bureau to District 4 |
| 86 | James Brewer | — Detective Bureau to District 5 |
| 819 | Andrew Hovan | — Detective Bureau to District 6 |
| 1822 | Anthony Zarenko | — Dist. 1 to Radio Dispatcher |
| 912 | Eugene Sullivan | — District 2 to Sanitary Unit |
| 1342 | Steven Mercek | — District 2 to Radio |
| 1789 | Edward Vacca | — Dist. 3 to Radio Dispatcher |
| 860 | Augustus Malloy | — Dist. 3 to Court Officers Unit |
| 63 | Daniel Balogh | — District 3 to AIU |

(CONTINUED)

CLE000837

# GENERAL POLICE ORDER

No. __13-63__                    HEADQUARTERS____ February 28, __19__63__

SUBJECT: __PROMOTIONS, ASSIGNMENTS AND TRANSFERS__

-3-

Sergt. George Brady      – District 1 to Ports and Harbors

| | | |
|---|---|---|
| 1282 | George Cooper | – District 1 to Ports and Harbors |
| 176 | Vincent Gallagher | – District 1 to Ports and Harbors |
| 1300 | Wm. Urbanek | – District 1 to Ports and Harbors |
| 947 | Patrick Malloy | – District 1 to Ports and Harbors |
| 317 | Nicholas Pyrtko | – District 1 to Ports and Harbors |
| 893 | Joseph Sepesy | – District 1 to Ports and Harbors |
| 412 | John Prokop | – District 1 to Ports and Harbors |
| 589 | Robert Goebel | – District 1 to Ports and Harbors |
| 1427 | Chester McGinty | – District 1 to Ports and Harbors |
| 1523 | James Patton | – District 1 to Ports and Harbors |
| 1623 | Peter O'Malley | – District 1 to Ports and Harbors |
| 1048 | Peter Stavrenos | – District 1 to Ports and Harbors |
| 1828 | Harold Fox | – District 1 to Ports and Harbors |
| 925 | Charles Berkey | – District 3 to Ports and Harbors |
| 191 | John Darmos | – District 3 to Ports and Harbors |
| 1841 | Leon Palevich | – District 3 to Ports and Harbors |
| 573 | Richard Ryan | – District 3 to Ports and Harbors |
| 1503 | Edmund D'Auito | – District 3 to Ports and Harbors |
| 1364 | Alex Zaremba | – District 3 to Ports and Harbors |
| 1838 | Edward Lentz | – District 5 to Ports and Harbors |
| 417 | Ralph McClure | – District 5 to Ports and Harbors |
| 260 | Booker Bledsoe | – District 5 to Ports and Harbors |
| 89 | Abelino Campos | – Distrcit 6 to Ports and Harbors |
| 508 | William Brown | – AIU to Ports and Harbors |
| | | |
| 246 | Peter Balega | – Radio to Detective Bureau |
| 1601 | Harold Laubenthal | – Radio to Detective Bureau |
| 1331 | Joseph Mengel | – AIU to Detective Bureau |

(CONTINUED)

CLE000838

## GENERAL POLICE ORDER

No. 13-63          HEADQUARTERS_____February 28,____1963

SUBJECT: PROMOTIONS, ASSIGNMENTS AND TRANSFERS

-2-

Inspector Laurence Choura — Bureau of Services and Welfare
                    to Commanding Bureau of Technical Ser-
                    vices
Dep. Insp. Carl Bare — Traffic Bureau to Youth Aid Bureau
Dep. Insp. George Lucas — Public Rel. to Night Chief
Dep. Insp. George Smith — Dist. 4 to Bureau of Technical
                    Services
Capt. Ernest Hauschild — Det. Bureau to District 2
Capt. David Kerr       — Det. Bureau to District 1
Capt. James Limber     — Det. Bureau to Administrative
                    Services Bureau (Inspect. & Planning)
Lieut. Wesley Denzine  — District 3 to District 6
Lieut. Wm. Shardell    — District 2 to District 6
Lieut. Walter Davenport—District 6 to District 2
Lieut. Carl Delau      — District 5 to Detective Bureau
Lieut. Jack Dudek      — Public Relations to District 4
Lieut. Henry Abel      — District 4 to Traffic Bureau
Sergt. Clarence Daughenbaugh — Chief's Office to Bureau
                    Technical Serv. (Motor Transport Div.)
Sergt. William Schroeder— A.I.U. to Technical Serv. Bureau
                    (Office Equipment Unit)
Sergt. Howard Blackwell — Det. Bureau to Administrative
                    Serv. Bureau (Personnel Div.)
Sergt. Rudolph Marik   — Detective Bureau to Radio
Sergt. Daniel Kepp     — Detective Bureau to Traffic Bureau
Sergt. Lloyd Schempp   — Radio to District 2
Sergt. Charles Megraw  — District 4 to District 2
Sergt. William Hanton  — District 5 to District 4
Sergt. George Tramell  — Juvenile Unit to District 1
Sergt. Leroy Jones     — Dist. 1 to Ports and Harbors
Sergt. Louis Kopacka   — Dist. 1 to Ports and Harbors
                    (CONTINUED)

CLE000839

# GENERAL POLICE ORDER

No. __13-63__          HEADQUARTERS_____ February 28, __1963__

SUBJECT: __PROMOTIONS, ASSIGNMENTS AND TRANSFERS__

Albert C. Wallace, Inspector
Executive Officer.

The following Promotions, Assignments and Transfers
will become effective March 1, 1963:

Dep. Insp. Stephen Szereto promoted to Inspector and
              assigned to Commanding Bureau of
              Administrative Services

Captain Reinhold Apelt promoted to Deputy Inspector and
              assigned to District 4.

Lieutenant Donald McNea promoted to Captain and assigned
              to District 1.

Sergeant Gerald Gilmore promoted to Lieutenant and assigned
              to District 3
Sergeant Wilmer Kutina promoted to Lieutenant and assigned
              to District 5

1377  Henry E. Doberstyn promoted to Sergeant and assigned
              to Juvenile Unit
904   Albert Peiper promoted to Sergeant and assigned to
              District 5
303   Cassimer Mack promoted to Sergeant and assigned to
              Detective Bureau
994   Casimer Zekoski promoted to Sergeant and assigned to
              District 3
615   Leonard Malloy promoted to Sergeant and assigned to
              Detective Bureau

(CONTINUED)

# GENERAL POLICE ORDER

NO. __12-63__     HEADQUARTERS_____ February 28, __19 63__

SUBJECT : _____ REORGANIZATION ORDER _____

-3-

2.   Inspection, Planning and Research Division, which
     shall include these units:

     (a) Unit of Personnel, Facilities, Equipment and
         Procedures Inspection
     (b) Unit of Internal Improvement, Planning and
         Researching

3.   External Affairs Division, which shall include the
     following units:

     (a) Public Relations Unit
     (b) Labor Relations Unit
     (c) Civil Defense Unit
     (d) Sanitary Unit

     There is hereby established, effective March 1, 1963,
a Youth Aid Bureau in the Cleveland Police Department.
The Commanding Officer of this bureau shall be responsible
for the proper functioning of the following units:

     (a) Juvenile Unit
     (b) Women's Unit

                    By order of,

                    RICHARD R. WAGNER,
                    CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 12-63          HEADQUARTERS          February 28, 19 63

SUBJECT: _____ REORGANIZATION ORDER _____

-2-

3. Motor Transport Division, which shall include the
   following units:

   (a) Specifications and Requisition Unit
   (b) Acceptance and Outfitting Unit
   (c) Allocation, Reassignment and Refurbishing Unit
   (d) Repair and Maintenance Unit
   (e) Disposal by Resale, Junking or Transfer Unit

4. Property and Supplies Division

   (a) Unit of Arms
   (b) Bicycle Unit
   (c) Tailor Shop
   (d) Office Equipment Unit
   (e) Mail and Property Unit
   (f) Storeroom Unit

      There is hereby established, effective March 1, 1963,
a Bureau of Administrative Services in the Cleveland
Police Department. The Commanding Officer of this bureau
shall be responsible for the proper functioning of the
following divisions:

1. Personnel Division, which shall include these units:

   (a) A Personnel Records Unit
   (b) Complaint Investigation Unit
   (c) Police Academy

                    (CONTINUED)

## GENERAL POLICE ORDER

No. 12-63        HEADQUARTERS_____ February 28, 19 63

SUBJECT : _____ REORGANIZATION ORDER _____

Albert C. Wallace, Inspector,
Executive Officer.

Effective March 1, 1963, the Bureau of Services and
Welfare is hereby abolished and its component units are
transferred to the following bureaus as hereinafter pro-
vided:

There is hereby established a Bureau of Technical Ser-
vices in the Cleveland Police Department. The Commanding
Officer of this bureau shall be responsible for the proper
functioning of the following divisions:

1. General Records and Statistics Division, which shall
   include these units:
   (a) General Records Unit
   (b) Crime Statistics Unit
   (c) Traffic Statistics Unit
   (d) Report Center and Teletype Unit
   (e) Photostat Unit
   (f) Microfilm Unit
   (g) Record Search Unit
   (h) Record Storage Unit
   (i) Courts Officers' Unit
   (j) Warrant Squad Unit
2. Communications Division, which shall include the
   following Units:
   (a) Officer in Charge of Dispatchers
   (b) Dispatchers
   (c) Superintendent of Radio Communications
   (d) Radio Communications Unit
   (e) Telephone Unit
   (f) Radio Repair Unit
   (g) Research Unit

                      (CONTINUED)

CLE000843

## GENERAL POLICE ORDER

No. 11-63                    HEADQUARTERS     February 15,      63
                                                                19

SUBJECT: ACCIDENT REPORTS TO CONTAIN SEAT BELT INFORMATION

Albert C. Wallace, Inspector,
Executive Officer.

Effective immediately, all motor vehicle accident re-
ports (Form I-B) shall include the following information,
which shall be inserted under the heading "Describe what
happened:"

Vehicle No. 1 - Equipped with seat belts or not
equipped with seat belts. If equipped with seat belts,
which passengers used same and which did not.

This information is to be completed for each vehicle
involved in the accident.

By order of,

RICHARD R. WAGNER,
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 10-63          HEADQUARTERS____February 15,____19 63

SUBJECT: _____REINSTATEMENT_____

Albert C. Wallace, Inspector,
Executive Officer.

Edmund A. Rossman, who resigned from the department
on August 22, 1962, has been reinstated as Patrolman,
Badge No. 1776, effective February 16, 1963. He will be
assigned to the Accident Investigation Unit.

By order of,

RICHARD R. WAGNER,
CHIEF OF POLICE

CLE000845

# GENERAL POLICE ORDER

No. **9-63**        HEADQUARTERS_____ February 8, ₁₉ **63**

SUBJECT: PROCEDURE — INVESTIGATION OF PRIVATE POLICE COMMISSIONS

Albert C. Wallace, Inspector,
Executive Officer.

    Effective immediately, all existing procedures for the investigation of Private Police Commissions are hereby cancelled. Hereafter these investigations will be made by the Police Department personnel assigned to the Safety Director's Office, with the assistance of the Scientific Identification Unit on fingerprint and record checks.

    The Safety Director's office will keep the Chief's Office informed as to the issuances and denials of all Private Police Commissions. The Chief's Office will notify the Districts concerned of the issuance of all Private Police Commissions pertaining to them.

By order of,

RICHARD R. WAGNER,
CHIEF OF POLICE

## GENERAL POLICE ORDER

NO. 8-63                HEADQUARTERS_____ February 4,  63
                                                    19____

SUBJECT: ESTABLISHMENT OF PORTS AND HARBORS UNIT

-2-

make necessary inspections in connection with enforcing
safety regulations, and shall enforce all applicable
City Ordinances and State Laws.

4. He shall be in charge of the proper making and filing of
   all records and requisitions necessary for the conduct
   of the Unit of Ports and Harbors.

5. He shall require that the Unit of Ports and Harbors co-
   operate with all bureaus of the Cleveland Police Depart-
   ment and with all Ohio State and Federal agencies re-
   quiring such cooperation.

6. He shall perform such other duties as may be required
   by law or as may be assigned to him by the Chief of
   Police.

By order of,

RICHARD R. WAGNER,
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 8-63          HEADQUARTERS   February 4,      1963

SUBJECT: ESTABLISHMENT OF PORTS AND HARBORS UNIT

Inspector Albert C. Wallace,
Executive Officer.

There is hereby established a Ports and Harbors Unit
in the Bureau of Patrol.  The headquarters of this unit
shall be located in the Administration Building, Burke
Lakefront Airport.

This unit shall consist of a Commanding Officer who
shall be directly responsible to the Commanding Officer
of the Bureau of Patrol, supervisory officers, and such
patrolmen as are necessary for the performance of the
duties of the unit.

The Commanding Officer of the Ports and Harbors Unit
shall be responsible for the following:

1.  He shall be in charge of the assignment and maintenance
    of the Airport Details at Cleveland Hopkins and Burke
    Lakefront Airports, which details shall be charged
    with the policing of these airports.

2.  He shall be in charge of the assignment and maintenance
    of the Dock Patrol, which will police the commercial
    docks on the Lakefront in the commercial harbor area.

3.  He shall be in charge of the assignment and maintenance
    of the Harbor Patrol and the operation and maintenance
    of all vessels assigned thereto.  The Harbor Patrol
    shall regulate marine traffic in the Cleveland harbor
    and off the ramps and beaches of the city and shall

(CONTINUED)

CLE000848

# GENERAL POLICE ORDER

No.  7-63                    HEADQUARTERS    February 1,     1963

SUBJECT :                    TRANSFERS

Albert C. Wallace, Inspector,
Executive Officer.

The following transfers are effective February 2, 1963:

Lieut. John Delaney      - District 6 to Ports and Harbors
                           Unit
Lieut. Walter Davenport  - Bureau of Communications to
                           District 6

By order of,

RICHARD R. WAGNER,
CHIEF OF POLICE

CLE000849

## GENERAL POLICE ORDER

No. _____6-63_____          HEADQUARTERS_____ January 31, _____ 19___ 63

SUBJECT : _____ TRANSFERS _____

Albert C. Wallace, Inspector.
Executive Officer.

The following transfers will be effective February 1, 1963:

| | | |
|---|---|---|
| 464 | Gus Zukie | — Dist. 1 to Civil Defense |
| 184 | John Gruhn | — Bur. Traffic to Dist. 5 |
| 926 | Elmer Tomasek | — Bur. Traffic to Dist. 3 |
| 1371 | William McGrath | — Bur. Traffic to Dist. 6 |
| 362 | Frederick Roth | — Dist. 5 to Bur. Traffic |
| 618 | William McNeff | — Dist. 3 to Bur. Traffic |
| 954 | Carl Almgren | — Dist. 6 to Bur. Traffic |
| 1662 | Stanley Wrona | — Pub. Relations to A.I.U. |
| 778 | James Payne | — Dist. 4 to Dist. 3 |
| 174 | Governor Faust | — Dist. 3 to Dist. 4 |
| 147 | Albert Blaha | — Dist. 5 to Bur. Traffic |
| 71 | Wayne Airey | — Bur. Traffic to Dist. 5 |
| 1071 | Leon Palevich | — Dist. 3 to Bur. Services |
| 1067 | Edward G. Walsh | — Bur. Services to Dist. 3 |

By order of,

RICHARD R. WAGNER,
CHIEF OF POLICE

CLE000850

## GENERAL POLICE ORDER

No. 5-63        HEADQUARTERS_____ January 30, ____ 19 63

SUBJECT: ____ NAME PLATES TO BE WORN AS PART OF UNIFORM ____

Albert C. Wallace, Inspector,
Executive Officer.

    Metal Name Plates have been obtained for uniformed
police personnel. You will cause Bureau and District
Commanders to issue these name plates to members under
their command and receipted for on the old style payroll
sheets by member receiving same. Payroll sheet is to be
forwarded to the Chief's Office upon completion of
issuance.

    The plates bear the first and last names of the in-
dividual and shall be worn on the outermost garment,
centered one-half inch below the police badge. It is to
be considered as an official part of the uniform and worn
at all times the member appears in uniform.

               By order of,

               RICHARD R. WAGNER,
               CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 4-63                    HEADQUARTERS_____ January 16,   63
                                                              19___

SUBJECT: TRANSFER — SUPPLEMENT TO G. O. 3-63

Albert C. Wallace, Inspector,
Executive Officer.

    The following transfer will be effective January

17, 1963:

546  Vincent Fiebig  —  From Civil Defense to District I.


                        By order of,

                        RICHARD R. WAGNER,
                        CHIEF OF POLICE

## GENERAL POLICE ORDER

NO. _____3-63_____          HEADQUARTERS_____January 15,_____ 19___63___

SUBJECT : _____TRANSFERS_____

Albert C. Wallace, Inspector,
Executive Officer.

The following transfers are effective January 16, 1963:

| | | |
|---|---|---|
| Lieut. | Steve Siket | — Dist. 2 to Bureau of Traffic |
| Lieut. | Wm. Spellacy | — Dist. 3 to Dist. 2 |
| Sergt. | Michael Haney | — Dist. 6 to Detective Bureau |
| Sergt. | James Murray | — Dist. 1 to Police Academy |
| 503 | Elijah West | — Dist. 1 to Dist. 3 |
| 944 | Frank Milota | — Dist. 1 to Dist. 3 |
| 1032 | Lewis Daniels | — Dist. 1 to Dist. 3 |
| 551 | Anton Plute | — Dist. 4 to Bureau of Welfare Court Sgt. Office |
| 121 | Leland Hough | — Dist. 4 to Dist. 3 Treasurer's Office |
| 1688 | Charles Wargo | — Dist. 4 to Bur. Communications Police Exchange |
| 386 | Willard Aitchison | — Det. Bur. to Dist. 2 |
| 979 | Edwin Bonza | — Dist. 2 to Det. Bureau |
| 337 | Willard Melton | — Bur. Traffic to Dist. 3 |
| 789 | Howard Wise | — Dist. 3 to Bur. Traffic |
| 3004 | Delphine Kniola | — Women's Bureau to Bureau of Traffic |

By order of,

RICHARD R. WAGNER,
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 2-63          HEADQUARTERS          January 7, 63
                                                    19___

SUBJECT: SUPPLEMENT TO G. O. 37-62 — RE-ALIGNMENT OF BASIC PATROL ZONES

Albert C. Wallace, Inspector,
Executive Officer.

The following is a supplement to G. O. 37-62 of December 27, 1962, teletype message No. 68:

Present 636 A will become 636

Present 533 B will become 533

Present 531 A will become 531

Present 531 B will become 531 C

Present 532 C will become 532

By order of,

RICHARD R. WAGNER,
CHIEF OF POLICE

CLE000854

## GENERAL POLICE ORDER

No. 2-63                                                    January 7, 63
                    HEADQUARTERS_____19____

SUBJECT: SUPPLEMENT TO G. O. 37-62 - RE-ALIGNMENT OF BASIC PATROL ZONES

Albert C. Wallace, Inspector,
Executive Officer.

The following is a supplement to G. O. 37-62
of December 27, 1962, teletype message No. 68:

Present 636 A will become 636

Present 533 B will become 533

Present 531 A will become 531

Present 531 B will become 531 C

Present 532 C will become 532

By order of,

RICHARD R. WAGNER,
CHIEF OF POLICE

CLE000855

## GENERAL POLICE ORDER

No. 1-63                     HEADQUARTERS                    January 3,  63  19

SUBJECT: SUPPLEMENT TO G. O. 37-62 — REALIGNMENT OF BASIC PATROL ZONES

Albert C. Wallace, Inspector
Executive Officer.

The following is a supplement to G.O. 37-62 of December 27, 1962, teletype message No. 68:

212 E will be known as 212.

By order of,

RICHARD R. WAGNER,
CHIEF OF POLICE

CLE000856

## GENERAL POLICE ORDER

No. 37-62          HEADQUARTERS_____ December 27, 19 62

SUBJECT: RE-ALIGNMENT OF BASIC PATROL ZONES

Albert C. Wallace, Inspector,
Executive Officer.

You will cause the following re-alignment of Basic Patrol Zones to be effective as of 12:01, A.M., Tuesday, January 1st, 1963:

101N and 102W will be consolidated and known as 101.

103W and 103E will be consolidated and known as 103.

211N and 211S will be consolidated and known as 211.

209W and 209C will be consolidated and known as 209C.

424N and 424S will be consolidated and known as 424.

423N will be known as 423.

By order of,

FRANK W. STORY,
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 36-62          HEADQUARTERS_____ November 30, 62
                                              19____

SUBJECT: _____ REINSTATEMENT AND ASSIGNMENT

Albert C. Wallace, Inspector,
Executive Officer.

Ladis Lisy, Jr., who resigned as a member
of the department August 1, 1962, has been
reinstated effective December 1, 1962 and is
assigned to District 2.  His badge number will
be 1604.

By order of,

FRANK W. STORY,
CHIEF OF POLICE

CLE000858

## GENERAL POLICE ORDER

NO. 35-62          HEADQUARTERS  November 27, 62
                                            19___

SUBJECT: APPOINTMENT AND ASSIGNMENT

Inspector Albert C. Wallace,
Executive Officer.

Charles Zingale, badge #705, was
appointed to the position of Patrolman
in the Division of Police, effective
November 9, 1962. He is assigned to the
Police Academy.

By order of

FRANK W. STORY,
CHIEF OF POLICE

CLE000859

## GENERAL POLICE ORDER

No. 34-62          HEADQUARTERS                    November 16,  62
                                                            19

SUBJECT: _____ REINSTATEMENT – TRANSFERS _____

Albert C. Wallace, Inspector
Executive Officer.

        1704 Gerald Mullen, who resigned from the
Department July 19, 1962, has been reinstated
effective November 16, 1962 and assigned to the
Bureau of Traffic.
        The following transfers are to be effective
Monday, November 19, 1962:

| | | |
|---|---|---|
| Sergt. | John Schmidt | From Dist. 2 to Dist. 5 |
| Sergt. | Wilmer Kutina | From Dist. 5 to Dist. 2 |
| | | |
| 233 | John Campbell | From Dist. 2 to Dist. 5 |
| 1057 | Edward Sullivan | From Dist. 2 to Dist. 5 |
| 55 | Harry Rasmusson | From Dist. 5 to Dist. 2 |
| 1695 | John Kukula | From Dist. 5 to Dist. 2 |
| 1673 | William Hubbard | From Dist. 5 to Dist. 4 |
| 1332 | Ernest Price | From Dist. 4 to Dist. 3 |
| 610 | Richard Craig | From Dist. 4 to Dist. 3 |
| 778 | James Payne | From Dist. 3 to Dist. 4 |
| 1874 | William Sullivan | From Dist. 3 to Dist. 1 |
| 866 | John Slattery | From Dist. 1 to Bur.Welf. |
| 1767 | Benjamin Kozitke | From Dist. 5 to Traffic |
| 1618 | Wm. Mojzisik | From Traffic to Dist. 5 |
| 795 | Edward Drew | From Traffic to Dist. 1 |
| 351 | William Busse | From Dist. 1 to Traffic |
| 1787 | Maynard Tescar | From Dist. 4 to Dist. 1 |
| 765 | John Malloy | From Dist. 1 to Dist. 4 |
| 1156 | Ralph Loucka | From Dist. 1 to Det. Bur. |
| 30 | Gilbert Batman | From Radio to Det.Bur. |
| 134 | Louis Ardo | From Dist. 4 to Radio |

                        By order of,
                        FRANK W. STORY,
                        CHIEF OF POLICE

CLE000860

## GENERAL POLICE ORDER

NO. 33-62        HEADQUARTERS        November 13,  .62
_____19___

SUBJECT: PLACING OF JUVENILES IN THE DETENTION HOME

-2-

to their parents and release them to the parents
upon the parents' promise to produce them in
Juvenile Court upon notice.

If for some good reason the officers believe
it would be advisable to do so, they may deliver
or refer girls to the Women's Bureau.  The officer
in charge of the Women's Bureau shall inquire into
the matter, cause the parents to come to the
Women's Bureau for an interview and, depending on
the result of this interview, either release the
child to the parent or make arrangements to have
them admitted to the Detention Home.

By order of,
FRANK W. STORY,
CHIEF OF POLICE

CLE000861

## GENERAL POLICE ORDER

No. 33-62          HEADQUARTERS          November 13, 62

SUBJECT: PLACING OF JUVENILES IN THE DETENTION HOME

Inspector Albert C. Wallace,
Executive Officer.

You will cause all members of the department
to be informed that they shall comply with the
following regulations concerning the placing of
juveniles in the Detention Home of the Juvenile
Court, Cuyahoga County.  The judges of Juvenile
Court have requested on numerous occasions, that
whenever possible members of this department, who
in the course of their duties have occasion to
investigate the delinquency on the part of minor
children, shall release them in the custody of
their parents upon the parents' promise to pro-
duce the child or children in Juvenile Court when
requested to.  Only in exceptional cases, where
this procedure appears to be inadvisable, shall
they take these delinquent juveniles to the
Detention Home.

Apparently this request has been frequently
ignored and children, in one specific instance
girls between ages of 9 and 12, were brought to
the Detention Home.  In this connection I direct
your attention to a teletype notice on this
subject, promulgated on March 14, 1960; which
notice embodies the provisions of Section 2151.31,
Revised Code of Ohio, entitled, "Release of Child
Pending Hearing."  To comply more fully with
these requests, except in unusual circumstances,
members of this department having in custody
juveniles, either boys or girls, shall take them

(CONTINUED)

CLE000862

# GENERAL POLICE ORDER

NO. __32-62__          HEADQUARTERS __November 9,__ __19 62__

SUBJECT : _____ APPOINTMENTS – ASSIGNMENTS _____

-2-

| | |
|---|---|
| #863 | Daniel J. MacDonald |
| 865 | John F. Martich |
| 877 | Steve J. Merencky |
| 881 | Eugene R. Patena |
| 892 | Robert F. Phillips |
| 910 | Ronald A. Piar |
| 919 | Edward D. Pischel |
| 945 | Theodore M. Poluka |
| 949 | Frank W. Pressey |
| 953 | William F. Reiber |
| 961 | William J. Robinson |
| 990 | Howard E. Rudolph Sr. |
| 1007 | James J. Scully |
| 1019 | William J. Sharp |
| 1036 | Louis J. Sladewski Jr. |
| 1043 | Gary W. Spoerke |
| 399 | William F. Vargo |
| 1110 | Alfred D. Zellner |

By order of


FRANK W. STORY
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 32-62  HEADQUARTERS  November 9, 62  19___

SUBJECT: APPOINTMENTS - ASSIGNMENTS

Albert C. Wallace, Inspector
Executive Officer

The following persons have been appointed to the position of Patrolman, Division of Police, Department of Public Safety, effective Friday, November 9, 1962, and assigned to the Police Academy until further notice.

```
#370   Robert J. Barens
1054   William J. Blakemore
 501   Frederick E. Bognar
 512   Freddy E. Bolden
 554   William E. Boretsky
1176   Thomas J. Branch
1174   Tom L. Burton
 564   Patrick B. Clarke
 588   William R. David
 601   Thomas E. Diemert
 647   James T. Farmer
 661   Ronald C. Gelb
 681   Edward J. Glinski
 683   Melvyn K. Goldstein
 691   Richard C. Goralski
 761   Thomas J. Janiszewski
 872   Joseph J. Hudec
 768   Paul Jurcisin
 798   Joseph A. Katonka
 828   Edward F. Kelly
 839   Richard J. Kmetz
 849   Earl S. Kratzer
```

(CONTINUED)

CLE000864

## GENERAL POLICE ORDER

No. 31-62        HEADQUARTERS        November 9,    62    19

SUBJECT :      ANNUAL FURLOUGH - YEAR 1963

-4-

Any Officer or Patrolman unable to be present at the time of selection or drawing, by reason of illness or disability, may delegate another member to make the selection for him.

Exchanges in furloughs after these selections have been completed will only be allowed in cases of hardship or for the best interest of the Department and then only by special request approved by the member's Superior Officer, and forwarded to the Chief of Police via regular channel.

Furlough drawings shall be approved by the Commanding Officer before forwarding to the Chief's Office.

By order of


FRANK W. STORY
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 31-62          HEADQUARTERS    November 9,    1962

SUBJECT: _____ ANNUAL FURLOUGH - YEAR 1963 _____

-3-

Men entitled to a three week furlough may select part A and one half of part B in any one furlough period, thus leaving the balance of that furlough period open to repay other men for overtime due them.

Men entitled to a two week furlough may select part A or part B in any one furlough period that is left open to them. In no event can a four or three week furlough man take part B of one furlough period and part A of another furlough period.

The selection of part A and/or part B in any furlough period shall be noted in the A-B column of the drawing sheet.

An IBM card has been prepared for each member of the department and will be forwarded to the District/Bureau with the Furlough Drawing sheet. A Superior Officer of the District/Bureau will draw a circle (with red or blue pencil) about the number and letter representing the furlough selected by the member whose badge and name appear on the card. The furlough number circled must coincide with the furlough number on the Furlough Drawing sheet.

The cards and Furlough Drawing sheet are to be in the Chief's Office on or before 9:00 AM, Dec. 3, 1962. Care should be taken not to crease, bend or damage the cards in any way.

(CONTINUED)

CLE000866

## GENERAL POLICE ORDER

NO. 31-62

HEADQUARTERS                    November 9,  62
                                                      19

SUBJECT :                    ANNUAL FURLOUGH – YEAR 1963

-2-

November 26, 1962, at times to be specified by
the Commanding Officer, or Officer-in-charge,
as the case may be.

Inspectors will select furloughs at the
Office of the Chief at a date to be specified
later.

Where Deputy Inspectors, Captains, Lieuten-
ants or Sergeants have been promoted on the same
date, the order of selection shall be determined
by the length of service in the department, the
one having the greater length of service being
given first choice. Where Patrolmen have been
appointed on the same date, the order of selec-
tion shall be by lot.

Each Furlough Drawing sheet shall indicate,
in a column provided for that purpose, whether
a member is entitled to a two week, a three week
or a four week furlough.

Each furlough period of the 1963 Furlough
shall be divided into part A and Part B. The
first two weeks shall be part A and the second
two weeks part B.

Men entitled to a four week furlough may
select part A and part B in any one furlough
period.

(CONTINUED)

CLE000867

MEMORANDUM

FROM

*Frank W. Story*

CHIEF OF POLICE

M-50-60                                                    August 2, 1960

Inspector Albert G. Wallace,
Executive Officer

    Refer to Memorandum M-44-60, issued July
6, 1960.

    This memo provided for the issuance of per-
mits for parking on the police parking lots at
Police Headquarters, and stickers indicating that
a permit had been issued to those persons who
qualified.  These stickers were to be moistened
on the face side and attached to the lower right
hand corner of the windshield.

    A survey has been made of the lots and it
was found that many cars did not have a sticker
affixed while others have them placed everywhere
except on the place designated.

    Proper signs have now been erected designa-
ting that these areas are "City Property" and
therefore unauthorized parking is prohibited
under provisions of Sec. 9.0926 of the Codified
Ordinances of the City of Cleveland.

    All police officers using this lot will
issue a Traffic Parking Citation ticket when
they discover an unauthorized vehicle parked in
there.  When a persistent violator is found the
vehicle shall be ticketed and towed to the police
pound.

    Police Officers who have been granted a
parking permit and neglect to place the sticker
on their car in the prescribed place will be the
subject of charges for disobeying a lawful order.

                   By order of,

                   FRANK W. STORY,
                   CHIEF OF POLICE

# MEMORANDUM

FROM

*[signature]*

CHIEF OF POLICE

M-44-60                                                      July 6, 1960

Inspector Albert Wallace,
Executive Officer.

    The following regulations governing the parking of private automobiles by members employed in this department and other personnel whose employment requires them to be present in this building will be effective as of July 15, 1960:

    New parking permits for the year 1960 are now ready for distribution.

    These are round gummed stickers and are consecutively numbered.

    Starting Friday, July 15, 1960, only those private cars bearing these new stickers or labels will be authorized to be parked in any of the police parking areas in or around the Headquarters Building. This will include the area in rear of the Traffic Building.

    These permit stickers will be issued in the following priority order:

    1.  To police personnel assigned to duty in these buildings.

    2.  To police or safety department civilian personnel assigned to duty in these buildings.

    3.  To personnel of the prosecutor's office, municipal clerk's office and municipal court probation office who are assigned to duty in the Headquarters Building.

(CONTINUED)

MEMORANDUM

FROM

CHIEF OF POLICE

M-44-60                    -2-              July 6, 1960

4. To newspaper personnel who are regular-
ly assigned in this building.

5. To any persons in the above categories
who are not regularly assigned to duty in these
buildings but whose official duties require them
to come to these buildings on regular and fre-
quent intervals.

NOTE: The number of permits issued in this
classification will be limited and
contingent upon the number that will
be required for the first four
classifications.

Persons desiring parking permits who qualify
under any of these five classifications will
apply for an application card to either Sergeant
Kranek or Sergeant Stein of the Chief's Office;
fill it out and deposit it with either of these
officers.

These applications will then be processed
and the permit stickers will be forwarded to the
central point to which the applicants are assign-
ed. Those who have no central point of assembly
or assignment will contact Sergeant Kranek who
will supply the sticker.

There will be no cost to the individual for
these permits and will be valid for the year
1960 only. New applications will have to be made
and new stickers issued early in 1961.

(CONTINUED)

## MEMORANDUM

FROM

*[signature: Frank W. Story]*

CHIEF OF POLICE

M-44-60                    -3-                    July 6, 1960

The stickers are gummed on the face side and should be lightly moistened before applying to the lower right hand corner of the windshield.

Only one sticker will be supplied to any individual.

Stickers found on unauthorized vehicles will be removed, the permit canceled and the person to whom it was issued will not be eligible for another permit.

By order of,

FRANK W. STORY,
CHIEF OF POLICE

CLE000871

MEMORANDUM

FROM

CHIEF OF POLICE

M-40-60

June 23, 1960

SUBJECT: REPORTS ON FIREARMS SEIZED OR
CONFISCATED

Inspector Albert Wallace,
Executive Officer.

You will cause all members of the department
to become familiar with the following regulations
regarding the reporting of firearms or other
weapons seized or confiscated.

In all cases where firearms have been seized,
members of the department shall indicate in their
Firearm Seized report, the name (alias if any),
birth date, race and sex of the person involved,
the precise type of weapon, serial number and date
it was seized. Members shall include the last
two places of employment of the person. Recom-
mendation for the disposition of the weapon by
the officer concerned is to be incorporated in
this report.

Because of the record search and firearm
examination, it is obvious that at least one week
must elapse before any disposition of the weapon
can be made. Members shall refrain from inform-
ing the persons from whom the firearms are seized
to go the the Chief's Office the following day
or two and obtain the seized weapons.

FRANK W. STORY,
CHIEF OF POLICE

CLE000872

## GENERAL POLICE ORDER

NO. __14__          HEADQUARTERS_____  May 12, __59__
                                                            19____

SUBJECT: __ACCIDENTS, CITY PROPERTY, NECESSITY OF__
         __COMPLETE INVESTIGATION - PHOTOGRAPHS,__
         STATEMENTS AND INSPECTIONS

Timothy J. Costello, Inspector
Executive Officer

        The following procedure must be followed
in all accidents occuring on City Property or
which involve City Property:

        1. Investigating members of the Division of
Police shall interview the injured party and
all witnesses and obtain from them a description
of the accident and other pertinent particulars.

        2. The investigating members shall reduce to
writing the statements of the injured party and
all witnesses.  The statement shall include a
description of what caused the injury, such as
ice, snow, defect, foreign object.  If the injury
was caused by a foreign object it should be iden-
tified.  The statement shall also include in the
case of a witness, whether the witness felt that
the injured party was at fault and the reason.
If there is a refusal to give a written state-
ment or if the injured party is physically un-
able to give a statement the reason should be
set forth on the supplementary investigation re-
port.  Persons unable to sign with their usual
writing hand shall sign with the other hand or
make a mark such as "X" or "OK" and the mark
should be witnessed by the investigating officer.

                    (CONTINUED)

## GENERAL POLICE ORDER

No. __14__          HEADQUARTERS_____ May 12, 19__59__

SUBJECT: ____ACCIDENTS - CITY PROPERTY, ETC.____

-2-

The injured party often states that the accident
was caused by snow or ice on the sidewalk and
that there was no defect in the street or side-
walk. Should any information similar to this
be discovered it should be included in the sign-
ed statement obtained from him.

3. The investigating members shall make an
immediate inspection of the scene of the accident.
The report of this inspection on the supplementary
investigation report should include a detailed
description of what caused the injury. For in-
stance, if there was a hole, the dimensions and
depth should be given or if there was a differ-
ence in elevation of sidewalk slabs this dif-
ference should be calculated. The investigating
officer should indicate what the injured party
was doing, i.e. running, walking, etc. If the
injured party had been drinking, this fact
should be included.

4. Photographs shall be taken of the scene
at the time of the investigation or as soon
afterward as possible. They should be taken
even though the investigation discloses no de-
fects or obstructions. If the injury was at
night pictures should be taken and should be
followed up the next day with daylight photo-
graphs. Barricades and flares placed at the
scene _after_ the accident shall be set aside un-
til the photographs are taken and then replaced.
Barricades and flares placed at the scene _before_
the accident shall remain in place when the
(CONTINUED)

# GENERAL POLICE ORDER

No. 14     HEADQUARTERS     May 12, 19 59

SUBJECT: ACCIDENTS - CITY PROPERTY, ETC.

-3-

pictures are taken.  Officers in uniform should
not place themselves in the photographs unless
it is absolutely necessary to do so to control
traffic.  Photographs involving accidents on
C.T.S. buses or C.T.S. property need not be taken
unless specifically requested by the Law Depart-
ment or by C.T.S.  The investigating members shall
be responsible for seeing that the exact location
of the scene is transmitted to members assigned
to take photographs.  The negatives shall be sent
to the Law Department for filing and the report
of the photographer should also be sent to the
Law Department.

    5. In the original report to the Report
Center, investigating members shall state where,
when and to whom the accident happened.  They
shall make, in addition to the report to the
Report Center, a supplementary investigation re-
port on all such accidents.  This supplementary
report shall contain the detailed investigation
information.  All reports and copies thereof shall
be sent to the Department of Law for permanent
filing.  The Record Room shall make a memorandum
card of the accident with the information that
the report is filed with the Department of Law.

    Commanding Officers shall see that the mem-
bers under their command are familiar with the
provisions of this Order and that they comply
strictly.

(CONTINUED)

## GENERAL POLICE ORDER

No. __14__          HEADQUARTERS_____  May 12, 19 59

SUBJECT: _____ ACCIDENTS - CITY PROPERTY, ETC.

-4-

This Order shall be read at roll calls for the next three (3) days.

General Orders 191-46, issued December 23, 1946; 113-50 issued November 14, 1950; 119-51 issued July 12, 1951 and 153-54 issued September 10, 1954 are hereby rescinded.

By order of,

FRANK W. STORY,
CHIEF OF POLICE

## GENERAL POLICE ORDER

NO. (24-59)        HEADQUARTERS November 2,     19 59

SUBJECT: INJURY OR DEATH TO POLICE OFFICER, ACCIDENTS, CITY PROPERTY, NECESSITY OF COMPLETE INVEST-IGATION - PHOTOGRAPHS, STATEMENTS AND IN-SPECTIONS.

Albert C. Wallace, Inspector
Acting Executive Officer.

The following procedure must be followed in all cases of serious injury or death to a police officer in performance of duty and all accidents occuring on City Property or in which City Prop-erty is involved:

1. Investigating members of the Division of Police shall interview the injured party and all witnesses and obtain from them a description of the accident and other pertinent particulars.

2. The investigating members shall reduce to writing the statements of the injured party and all witnesses. The statements shall include a description of what caused the injury, such as ice, snow, defect, foreign object. If the in-jury was caused by a foreign object it should be identified. The statement shall also include in the case of a witness, whether the witness felt that the injured party was at fault and the rea-son. If there is a refusal to give a written statement or if the injured party is physically unable to give a statement the reason should be set forth on the supplementary investigation re-port. Persons unable to sign with their usual writing hand shall sign with the other hand or mark such as "X" or "OK" and the mark should be witnessed by the investigating officer.

(CONTINUED)

## GENERAL POLICE ORDER

No. 24-59       HEADQUARTERS      November 2, 1959

SUBJECT : _____

-2-

The injured party often states that the accident
was caused by snow or ice on the sidewalk and
that there was no defect in the street or side-
walk.  Should any information similar to this
be discovered it should be included in the signed
statement obtained from him.

3. The investigating members shall make an
immediate inspection of the scene of the accident.
The report of this inspection on the supplementary
investigation report should include a detailed
description of what caused the injury.  For in-
stance, if there was a hole, the dimensions and
depth should be given of if there was a differ-
ence in elevation of sidewalk slabs that differ-
ence should be calculated.  The investigating
officer should indicate what the injured party
was doing, i.e. running, walking, etc.  If the
injured party had been drinking, this fact should
be included.

4. Photographs shall be taken of the scene
at the time of the investigation or as soon after-
wards as possible.  They should be taken even thoug
the investigation discloses no defects or ob-
structions.  If the injury was at night, pictures
should be taken and should be followed up the next
day with daylight photographs.  Barricades and
flares placed at the scene after the accident
shall be set aside until the photographs are
taken and then replaced.  Barricades and flares
placed at the scene before the accident shall re-
main in place when the pictures are taken.
(CONTINUED)

CLE000878

## GENERAL POLICE ORDER

No. 24-59      HEADQUARTERS     November 2, 1959

SUBJECT: _____

-3-

Officers in uniform should not place themselves
in the photographs unless it is absolutely neces-
sary to do so to control traffic.  Photographs in-
volving accidents on CTS buses or CTS property
need not be taken unless specifically requested by
the Law Department or by CTS.  The investigating
member shall be responsible for seeing that the e(
act location of the scene is transmitted to mem-
bers assigned to take photographs.  The negatives
shall be sent to the Law Department for filing and
the report of the photographer should also be sent
to the Law Department.

    5. In the original report to the Report
Center investigating members shall state where,
when and to whom the accident happened.  They
shall make, in addition to the report to the Re-
port Center, a supplementary investigation report
on all such accidents.  This supplementary report
shall contain the detailed investigation informa-
tion.  All reports and copies thereof shall be
sent to the Department of Law for permanent fil-
ing.  The Record Room shall make a memorandum
card of the accident with the information that
the report is filed with the Department of Law.

    Commanding Officers shall see that the mem-
bers under their command are familiar with the
provisions of this Order and that they comply
strictly.

    This Order shall be read at roll calls for
the next three (3) days.
             (CONTINUED)

CLE000879

## GENERAL POLICE ORDER

No. 24-59        HEADQUARTERS November 2,      1959

SUBJECT: _____

—4—

General Order #14-59, issued May 12, 1959
is hereby rescinded.

By Order of,


FRANK W. STORY
CHIEF OF POLICE

CLE000880

## GENERAL POLICE ORDER

NO. 7-56          HEADQUARTERS  February 20,  56

SUBJECT:  SIGNATURE - TRAFFIC ACCIDENT FORM 1-B

Timothy M. Costello, Inspector
Executive Officer

Officers in command of stations are required
to examine and sign all reports turned in to them
by subordinate officers.

This procedure has not been followed in the
making of traffic accident reports. On traffic
accident report Form 1-B, the reason for this being
that this form is one that has been devised by the
National Safety Council and has no provision on it
for the signature of the reviewing officer. There-
fore, all Form 1-B reports made after this date
that are submitted by subordinate officers, will
bear the signature of the Officer-in-Charge of the
station, or to whom the report has been submitted.
This signature should be on the bottom line of the
first page of this report showing that it has been
reviewed by him and the date when he has examined it.

Superior Officers assigned to investigate a
traffic accident in which a member of this depart-
ment, in a police vehicle, is involved, will state
in his special report on the investigation of such
accident, that he has examined the original traf-
fic accident report and that the facts therein
coincide with the facts as determined by him
through his investigation, or where there is a
variance, explain the reason for this variance or
conflict of statements.

By order of

[signature]

FRANK W. STORY
CHIEF OF POLICE

FWS:EB

CLE000881

# MEMORANDUM

## FROM

*[signature]*

CHIEF OF POLICE

103-49 & 151-49 Re Issue    Mess 31    May 22, 1950

Commanding Officers;

Re-Issue and reteletype of order 103-49 and
151-49 originally issued and teletyped under date
of July 9, 1949, is being re-i..sued in order to
familiarize recently appointed personnel with the
provisions thereof.

It is mandatory that complete accident
reports be forwarded promptly to the Accident
Prevention Unit since completeness of such reports
is necessary and required before distribution of
such reports to their proper destination can be
effected by the Accident Prevention Unit.
Correction on above paragraph should read
first order 151-49 originally issued and teletyped
under date of October 25, 1949, is being re-issued
and re-teletyped for the following reasons.

Particular emphasis must be given to the
reports required in item five of Order 151-49,
(Reports on estimate of damage and ruling of
prosecutor.) And item six ( Reports on final
disposition of case in Police Court in the event
of prosecution.) Commanding officers shall see
to it that order 151-49 is strictly complied with
particularly items five (5) and six (6) Thereof.

By Order of
Geo. J. Matowitz
Chief of Police.

Page 50

CLE000882

MEMORANDUM

FROM

*Frank W. Story*

CHIEF OF POLICE

G P O 151-49   (PageTwo)

All copies of the above traffic accidents
reports shallbe forwarded to the accident
prevention unit office with the following
exception;

One copy(not the orininal)of the
form 1 report made by the officer driving
or in charge of the police vehicle involved
in the traffic accident, which copy shall be
forwarded to the police repair shop in com-
pany with the damaged vehicle so that an
estimate of the damage can be immediately
made. Further the damaged vehicle shall and
must be taken to the police repair shop
without delay. A notation shall also be
forwarded to the accident Prevention Unit
and attached to the copies of the reports to
indicate that the required copy was forwarded
to the police repair shop.

The Lieutenant in charge of the Accid-
ent Unit office, upon receipt of all the above
specified traffic accident reports, shall
effect the distribution of teh various reports
to their prpper destination, as outlined in
a procedural memorandum on file at that office.

A record shall be kept at the Accident
Prevention Unit office showing the date,
location, type(fatal,non-fatal-or damage)
and code number and type of police vehicle
of each accident case involving police vehicles
and /or police personnel while on duty, and
of the distribution of the copies of such
reports.

Commanding officers shall see to it
that there is strict compliance with the pro-
visions of this order, also that all copies
of the various traffic accident reports are
legible.                       BY ORDER OF Geo J Matowitz
                 Page 51           Chief of Police

CLE000883

## GENERAL POLICE ORDER

No. 31-62          HEADQUARTERS November 9,     62

SUBJECT: _____ ANNUAL FURLOUGH - YEAR 1963

Albert C. Wallace, Inspector
Executive Officer

Commanding Officers of the various Districts
and Bureaus and the Officers-in-charge of the
"Special Services" as designated in the Furlough
Plan (a copy of which will be forwarded to the
various Districts and Bureaus) shall forward a
schedule showing the total number of Officers in
each rank and the total number of Patrolmen that
are to be allotted to each furlough period.
This schedule shall be in the office of the Chief
of Police on or before 9:00 A.M., November 15,
1962.

The names of Officers and Patrolmen, or
their badge numbers are not to be included in
this list.

The official November beat list is to be
used for the purpose of preparing this schedule.

Furloughs shall be drawn in accordance with
submitted schedule.

For rule determining seniority in drawing
furloughs refer to General Order 28-61, Nov.
15, 1961, teletype message #85.

The selection of furloughs will be held at
the various Districts and Bureau headquarters and
the Officers of the "Special Services", as in-
dicated in the mimeographed plan, on Monday,
(CONTINUED)

Rescinded by G.P.O 17-66

# GENERAL POLICE ORDER

No. 30-62          HEADQUARTERS                    November 6, 62
                                                              19

SUBJECT : _____ PAYROLL SHEETS _____

-2-

    If for any reason none of the persons listed to act as agents is available to receive these pay checks, a form entitled "Designation of Substitute to Pick Up Pay Checks" is to be filled out and signed by one of those originally named as agent.

    The person named as agent to pick up these pay roll checks will sign for them on the bottom of the pay roll sheet which will be made available for this signature and receipt by the City Treasurer.

    These pay roll sheets are to be forwarded to the Chief's Office as at present.

By order of,

FRANK W. STORY,
CHIEF OF POLICE

CLE000885

## GENERAL POLICE ORDER

No. 30-62          HEADQUARTERS          November 6, 62
                                                    19

SUBJECT : PAYROLL SHEETS

Inspector Albert C. Wallace,
Executive Officer.

You will cause all members of the department
to be notified of the following:

In the future pay rolls will be made up by
I. B. M. accounting machines in the Detective
and Traffic Bureaus and will be forwarded to the
District, Bureau or Unit several days prior to
the official payday.

These new pay roll sheets are to be signed
by each member on the pay roll sheet of his
District, Bureau or Unit.  This signature is not
signed as a receipt for having received a pay
check.  It is a signature authorizing the City
Treasurer to pay to the person whose name appears
thereon as his agent to receive his pay check.

These pay roll authorization sheets are made
up for the next succeeding two week work period.
For instance:- One dated and signed November 3,
1962, is for the work period ending November
15, 1962.

The names of two or three persons who are
to be authorized to act as agent for the signa-
tories are to be entered or listed on these sheets.

(CONTINUED)

CLE000886

## GENERAL POLICE ORDER

No. 29-62                    HEADQUARTERS _____ October 24, __ 62
                                                          19___

SUBJECT : _____ TRANSFERS

Albert C. Wallace, Inspector,
Executive Officer.

You will cause the following transfers to
be effective Thursday, October 25, 1962:

626  Elmer Cummins  from Traffic to Dist. 4
151  John P. O'Donnell from Traffic to Dist. 6
1210 William Greller from Dist. 1 to Dist. 5

By order of,

FRANK W. STORY,
CHIEF OF POLICE

# GENERAL POLICE ORDER

No. 28-62                       HEADQUARTERS _____ October 15, 62
                                                              19____

SUBJECT: _____ TRANSFERS AND ASSIGNMENTS _____

Albert C. Wallace, Inspector,
Executive Officer.

The following transfers are effective
Tuesday, October 16, 1962:

Dep. Insp. Mel Massey      — District 5 to District
                             3 (Night Command)

Dep. Insp. H. Antel        — District 3 (Night Com-
                             mand)to District 2.

Dep. Insp. G. Rademaker    — District 2 to District
                             5.

By order of,

FRANK W. STORY,
CHIEF OF POLICE

CLE000888

## GENERAL POLICE ORDER

NO. 26-62

HEADQUARTERS September 28, 62 19

SUBJECT: ELECTION DAY SALES OF ALCOHOLIC BEVERAGES

Inspector Albert C. Wallace,
Executive Officer

You will cause all members of the department to be informed of the following communication from Richard F. Matia, Chief Police Prosecutor, and they are directed to conduct themselves accordingly:

"Pursuant to your request for an interpretation of the Ohio Attorney General's ruling in regard to the sale of alcoholic beverages on Election Days, this is to advise you that the law applicable to the non-sale of alcoholic beverages by permit holders is restricted on the first Tuesday after the first Monday in the month of November of the odd-numbered years; and that the sale of said beverages is prohibited on the Primary Election Day held in May and the General Election Day held in November of the even-numbered years. The sale of alcoholic beverages is not prohibited on any other election days during the year."

The Attorney General's Opinion referred to is No. 2451. A copy of this opinion is on file at this Office.

By order of,

FRANK W. STORY,
CHIEF OF POLICE

CLE000889

## GENERAL POLICE ORDER

25-62                                September 27,  62

No._____                  HEADQUARTERS_____19___

SUBJECT: NEW MOVING VIOLATION CITATION FORM:- ADDI-TIONAL INSTRUCTION ON USAGE AND ACCOUNTING.

-4-

Where other valid reasons exist for void-ing a citation, the issuing officer may use the reverse side of the form for his explanation.

V.  (a) All voided forms must be signed by the Officer in Charge.

(b) All voided forms when properly marked and signed by the Officer in Charge are to be entered in the Prisoner Receipt Book and forwarded in proper numerical order as in the case of a valid citation form.

By order of,

FRANK W. STORY,
CHIEF OF POLICE

CLE000800

## GENERAL POLICE ORDER

25-63                                        September 27,  62

NO._____      HEADQUARTERS_____19____

SUBJECT:  NEW MOVING VIOLATION CITATION FORM:- ADDI-
TIONAL INSTRUCTION ON USAGE AND ACCOUNTING.

-3-

Hard copies are not legible due to failure
to replace worn carbon sheet or lack of
pencil pressure.  This occurs in about
10% of the cases.

III.  Voiding of Citation Form:-

Because of error in violator signing in
improper space;

Issuing officer made clerical error for
any reason;

Cited person found to be a Juvenile after
citation form had been started;

Where officer finds it necessary to make
physical arrest after form has been started.

IV.  Method of Voiding Citation Form:-

Should it be found necessary to void a ci-
tation for any reason, including above, the
citation shall be marked VOID in large
letters across the face of the form and a
new form shall be filled out and the number
of the new form shall be noted on the face
of the voided form.  Where a Juvenile Cita-
tion Form is substituted, the entry shall
read "Juvenile Form number...." and shall
appear on the face of the voided form.
(CONTINUED)

## GENERAL POLICE ORDER

25-62                                  September 27,    62

No._____          HEADQUARTERS_____19___

SUBJECT: NEW MOVING VIOLATION CITATION FORM:- ADDI-
TIONAL INSTRUCTION ON USAGE AND ACCOUNTING.

-2-

(e) Accident citations shall be for the 10th
    day following the issuance date, Sunday
    and Holidays excluded.

II.  Officers in Charge shall require all citations
     turned in by each individual officer at con-
     clusion of his tour of duty to be entered
     in the Prisoner Receipt book in numerical
     order; i.e. Ticket # Z-798 - 799 - 800 - 801,
     and citations shall be maintained and de-
     livered to Unit of Records in that order.

     This will expedite the proper accounting of
     citations by Record Room personnel and will
     minimize loss and confusion.

     Officers in Charge of stations shall check
     Prisoner Receipt books to determine that
     this regulation is complied with and shall
     not forward them until it has.

     Some of the errors and/or omissions, but not
     necessarily all, are as follows:-

     Issuing officers fail to enter their names,
     rank or number and unit of assignment.

     Signatures of cited persons are missing or
     entered in wrong area such as the Affidavit
     Form.

                         (CONTINUED)

CLE000892

## GENERAL POLICE ORDER

25-62                                    September 27,  62

NO._____            HEADQUARTERS_____19____

SUBJECT: NEW MOVING VIOLATION CITATION FORM:- ADDI-
TIONAL INSTRUCTION ON USAGE AND ACCOUNTING.

Inspector Albert C. Wallace,
Executive Officer.

You will cause all members of the department
to be advised that the above captioned regulations
will be effective as of Friday, September 28, 1962,
and that they are hereby directed to comply with
them as of that date.

I.  (a)  Schedule for setting Court Days:-

| Day of Week issued | Court Day |
|---|---|
| Monday | Friday |
| Tuesday | Saturday (A.M. Only) |
| Wednesday | Monday |
| Thursday | Tuesday |
| Friday | Wednesday |
| Saturday & Sunday | Thursday |

   (b)  Speeding cases shall be set for 1:00 P.M.
        All other moving violations shall be set
        for 9:00 A.M.  No exceptions.

   (c)  In the event the court is closed on regu-
        larly scheduled court day, citations shall
        be set for the day immediately following
        the closed court day (Holiday, etc.)

   (d)  All citations shall be delivered to the
        Unit of Records prior to 9:00 A.M. of the
        day immediately following the issuance
        date, excluding Sundays or Holidays.

(CONTINUED)



## GENERAL POLICE ORDER

No. 24-62                    HEADQUARTERS September 18,      62

SUBJECT: _____ TRANSFERS

Albert C. Wallace, Inspector
Executive Officer

The following transfers are effective

forthwith:-

Sgt. Albert Landreth    Traffic Bureau to
                        District 5

Sgt. Leo Peters         District 5 to the
                        Traffic Bureau

By order of

FRANK W. STORY
CHIEF OF POLICE

CLE000894

## GENERAL POLICE ORDER

23-62                                August 24,    62

No._____        HEADQUARTERS_____19\_\_\_

SUBJECT: NEW TRAFFIC CITATION FORM – DISTRIBUTION AND USAGE

Albert C. Wallace, Inspector,
Executive Officer.

Effective 12:01 A.M., September 1, 1962 the new type of traffic citation form shall be used when making traffic violation arrests. It is a three part form which embodies an affidavit. The citations are serially numbered and bound twenty citations per book. Each book is also numbered.

A detailed instruction sheet entitled "NEW TRAFFIC CITATION FORM – DISTRIBUTION AND USAGE", has been prepared and is being issued as an integral part of this General Order (23-62) and is to be so regarded in its entirety. It shall be included in the official binder of General Orders of each command.

Each member of the department is to receive a copy of this instruction sheet which shall be combined with his book of Rules and Regulations governing the Division of Police. Sufficient copies of the instruction sheet are being forwarded to each command.

The old type of traffic citation, in use at the present time, is to be discontinued at 12:00 Midnight, August 31, 1962. The books or portions thereof of this discontinued traffic citation are to be collected, packaged and returned to the departmental Store Room, 1600 East 19 St., on or before September 10, 1962.

By order of,

FRANK W. STORY,
CHIEF OF POLICE

Rescinded by G.P.O - 8-67

CLE000895

## GENERAL POLICE ORDER

22-62                                                    August 14,  62

No._____                    HEADQUARTERS_____19____

SUBJECT: ___VEHICLES SENT TO HEADQUARTERS FOR
PROCESSING BY S.I.U._____

-2-

2. The officer at the Scientific Identifi-
cation Unit receiving the call shall
make a short memo of the information
received.  If received at the Detective
Bureau (line 361) the officer receiving
the information shall immediately, or
soon after as is possible, convey the
information received to personnel at the
Scientific Identification Unit.

3. A Form 1 report shall be made by the re-
questing officer and forwarded to per-
sonnel of the Scientific Identification
Unit before such officer reports off
duty.

By order of,

FRANK W. STORY,
CHIEF OF POLICE

CLE000896

## GENERAL POLICE ORDER

No. 22-62      HEADQUARTERS      August 14, 62   19

SUBJECT: VEHICLES SENT TO HEADQUARTERS FOR PROCESSING BY S.I.U.

Albert C. Wallace, Inspector,
Executive Officer.

You will cause all members of the department to be notified of the following change in procedure in the processing of motor vehicles by members of the Scientific Identification Unit:

Whenever any motor vehicle is sent to the headquarters garage for processing, the member requesting the examination shall:-

1. Call the Scientific Identification Unit by telephone at the earliest convenient time on departmental line 327, or, if no one is available at the time, call the Detective Bureau on line 361 giving the following information:

    A. The nature of the processing desired (fingerprint, firearms, sperm, blood as the case may be indicated).

    B. The crime involved.

    C. The name of the victim.

    D. The name (s) of associates of the victim.

    E. The names of all personnel whose prints may be on or in the car. (The last three for purposes of elimination of prints that may be found.)
        (CONTINUED)

CLE000897

## GENERAL POLICE ORDER

No. 21-62                                    August 7,    62

HEADQUARTERS _____ 19___

SUBJECT: SUSPENSION OF PATROLMEN JOSEPH E. BROWN
NO. 155 AND LEON JACKSON NO. 268

Albert C. Wallace, Inspector,
Executive Officer.

    Patrolman Joseph E. Brown No. 155 and

Patrolman Leon Jackson No. 268 have been sus-

pended this date by me for violation of the

Rules and Regulations of this Department, for

hearing before the Director of Public Safety.

                    By order of,

                    FRANK W. STORY,
                    CHIEF OF POLICE

CLE000898

## GENERAL POLICE ORDER

No. __20-62__          HEADQUARTERS_____ August 1, __62__
                                                      19___

SUBJECT : _____ REINSTATEMENT AND TRANSFER _____

Inspector Albert C. Wallace,
Executive Officer.

    In accordance with the mandate from the
Civil Service Commission of the City of Cleve-
land, Kenneth Orlowe, Patrolman 1625, is this
day, August 1, 1962, restored to duty and will
be assigned to the 6th District.

### TRANSFER

    The following transfer will be effective
as of August 2, 1962:

1105 Howard Filler   1st District to Bureau of
                     Communications


        By order of,

        FRANK W. STORY,
        CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 19-62          HEADQUARTERS _____ July 31, 1962

SUBJECT : __PROMOTIONS - ASSIGNMENTS - TRANSFERS__

--2--

| | | | |
|---|---|---|---|
| Sergt. | Edward Kozelka | From Dist. 3 to Dist. 1 |
| Sergt. | Bernard Schweter | From Dist. 5 to Dist. 3 |
| Sergt. | Leroy Jones | From Dist. 2 to Dist. 1 |
| Sergt. | Wm. Huntington | From Dist. 1 to Dist. 2 |
| 449 | Victor Kovacic | From Dist. 6 to S.I.U. |
| 963 | William Traine | From Dist. 6 to Communica. |
| 1602 | Robert Lee | From Dist. 3 to Dist. 6 |

By order of,

FRANK W. STORY,
CHIEF OF POLICE

## GENERAL POLICE ORDER

NO. 19-62          HEADQUARTERS          July 31, 19 62

SUBJECT: PROMOTIONS – ASSIGNMENTS – TRANSFERS

The following promotions, assignments and transfers are effective August 1, 1962:

Lieut. Geo. Sperber promoted to Captain and
    assigned to the Detective Bureau.

Sergt. Daniel Jamieson promoted to Lieutenant
    and assigned to Bureau of Traffic.

Sergt. Wesley Denzine promoted to Lieutenant and
    assigned to District 3.

1643    Anthony Slezak promoted to Sergeant and
    assigned to District 3.

1258    Thomas McGinty promoted to Sergeant and
    assigned to District 4.

1628    Leo Peters promoted to Sergeant and
    assigned to District 5.

128    Frank Sereika promoted to Sergeant and
    assigned to Bureau of Communications.

### TRANSFERS

| | |
|---|---|
| Capt. Jos. Skala | From Dist. 1 to Dist. 2 |
| Capt. Norman Raymer | From Dist. 2 to Dist. 4 |
| | |
| Sergt. Russell Springstubb | From Dist. 5 to Dist. 1 |
| Sergt. Stanley Deka | From Dist. 4 to Det. Bur. |
| Sergt. John Salzgeber | From Dist. 3 to A.I.U. |
| Sergt. James Bruen | From AIU to Pub. Rel. |
| Sergt. Richard Vlna | From Bur. Comm to Dist. 5 |

(CONTINUED)

## GENERAL POLICE ORDER

No. 18-62          HEADQUARTERS      July 13,      62

SUBJECT :      TRANSFERS

MEMBERS OF THE DEPARTMENT:

The following transfers are effective

July 16, 1962:

630  James Brindza - From Dist. 4 to Det. Bur.

610  Richard Craig - From Det. Bur. to Dist.4

By order of,

ALBERT C. WALLCE, INSPECTOR
EXECUTIVE OFFICER
ACTING CHIEF

## GENERAL POLICE ORDER

No. 17-62          HEADQUARTERS  July 7,          19 62

SUBJECT: PROMOTIONS - ASSIGNMENTS - TRANSFERS

MEMBERS OF THE DEPARTMENT:

The following promotions, assignments
and transfers are effective July 9, 1962:

Captain Harry Antel promoted to Deputy Inspector
    and assigned as Night Chief
Lieut. James Birmingham promoted to Captain and
    assigned to District 5
Sergt. Carl Delau promoted to Lieutenant and
    assigned to District 5
#1396 Russell Springstubb promoted to Sergeant
    and assigned to District 5

Captain John Fitzgerald transferred from
    District 5 to District 6
Lieut. Lloyd Garey transferred from District
    5 to District 3
Sergeant Thomas Dever transferred from District
    5 to Bureau Special Investigation -
    Detective Bureau.

By order of


ALBERT C. WALLACE, INSPECTOR
EXECUTIVE OFFICER
ACTING CHIEF

CLE000903

## GENERAL POLICE ORDER

No. 16-62                    HEADQUARTERS_____ June 19, 19___ 62

SUBJECT : _____ TRANSFER _____

Albert C. Wallace, Inspector,
Executive Officer

    The following transfer will be effective

June 20, 1962:

    Patrolman Edward Hyson No. 1391 from District
3 to Record Unit.


                By order of,

                FRANK W. STORY,
                CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 15-62          HEADQUARTERS          May 31,    62
                                                    19

SUBJECT: _____ REINSTATEMENT

Albert C. Wallace, Inspector,
Executive Officer.

Jay Howard who resigned from the Department
as of February 12, 1962, has been reinstated
effective June 1, 1962.  He will have badge
No. 407 and is assigned to the 3rd District.

By order of,

FRANK W. STORY,
CHIEF OF POLICE

CLE000905

## GENERAL POLICE ORDER

14-62                                          May 28,    62

No._____          HEADQUARTERS_____19___

SUBJECT : MINOR INJURIES TO BE TREATED AT MEDICAL
          AND SURGICAL UNIT

Inspector Albert C. Wallace,
Executive Officer.

    You will cause all members of the department
to be notified of the following:

    Any member of this department sustaining
any minor injury, either on or off duty, and for
which he desires medical attention without cost
to himself, will report for such treatment to
the Medical and Surgical Unit of this department.

    Should the injury be sustained during the
hours the Medical and Surgical Unit is not open,
the member shall report for such treatment the
next time it is open.

    Where the injury is of so serious a nature
that immediate medical attention is urgent, the
member shall be taken to the nearest hospital
for emergency treatment.

    Any member receiving medical attention other
than above outlined will do so at his own cost.
Bills for such service will not be honored by
the department.

    Nothing herein contained shall be construed
to mean or imply that members injured on or off
duty are prohibited from obtaining medical
attention at a hospital, where the injury is of a

(CONTINUED)

## GENERAL POLICE ORDER

No. 13-62          HEADQUARTERS          May 15, 19 62

SUBJECT: PROMOTIONS – ASSIGNMENTS – TRANSFERS

Albert C. Wallace, Inspector,
Executive Officer.

The following promotion, assignments and
transfers are effective May 16, 1962:

1603 Edward H. Lehane – Promoted to Sergeant and
                        assigned to Record Unit.

 638 James Wandra    – Det. Bur. – Assigned to
                        Spec. Investigation
1546 Richard Dierker – From Dist. 2 to Det. Bur.
 394 Vitus Zelinskas – From Bur. Traffic to
                        Bur. Services and Welfare
1589 William Vannucci – From Dist. 3 to Dist. 1

By order of,

FRANK W. STORY,
CHIEF OF POLICE

CLE000907

## GENERAL POLICE ORDER

NO. 12-62      HEADQUARTERS      April 24,   19 62

SUBJECT: TRANSPORTING OF COMMUNICABLE DISEASE
PATIENTS AND DECONTAMINATION OF VEHICLE.

- 4 -

All previous orders and memoranda issued
in this connection prior to this date are here-
by rescinded.

By order of


FRANK W. STORY,
CHIEF OF POLICE

CLE000908

## GENERAL POLICE ORDER

No. 12-62 _____                                    April 24,        62
_____HEADQUARTERS_____19___

SUBJECT : TRANSPORTING OF COMMUNICABLE DISEASE
PATIENTS AND DECONTAMINATION OF VEHICLE

### - 3 -

discovered that a prisoner transported was suf-
fering from a communicable disease.

The Health Department should be contacted
immediately in the rare instances when smallpox,
diptheria or poliomyelitis is encountered.   The
Health Department will then advise any further
action to be taken; however, the vehicles should
be scrubbed out with soap and water as above de-
scribed in addition to any other measures recom-
mended by the Health Department at a later time.

In every case where a person suffering from
any communicable disease is encountered, the Med-
ical Bureau is to be advised by the Radio Dis-
patcher's Office as soon as possible for deter-
mining what prophlatic treatment, if any, is in-
dicated for the members who have come in contact
with the communicable disease.

The members who have handled the communic-
able disease shall make a Form 1 report as soon
as possible and forward it to the Medical &
Surgical Bureau.  This report should contain all
particulars as to the nature of the disease,
where the patient was transported from, whether
or not he had been incarcerated in any of our
jails, where the patient was finally transported
and whether or not the vehicle was decontaminated
as herein described.

(CONTINUED)

CLE000909

## GENERAL POLICE ORDER

No. 12-62
April 24, 62
HEADQUARTERS 19

SUBJECT: TRANSPORTING OF COMMUNICABLE DISEASE
PATIENTS AND DECONTAMINATION OF VEHICLE

– 2 –

Where in the event of any emergency, persons suffering from a communicable disease are transported in a regular police vehicle and where the disease is believed to be either one of the so-called childhood minor contagion cases or one of the major cases of communicable disease, then the interior of the vehicle, upon the advice of J. Glenn Smith, M.D., Commissioner of Health of the City of Cleveland, is to be thoroughly scrubbed with soap and water, using a long-handled brush, and the vehicle is to be aired out for approximately one hour before being returned to service. Vehicles and equipment which cannot be scrubbed with soap and water should be aired out for a longer period of time, approximately two to three hours. Linen and blankets used in transporting the case should be placed in a separate laundry bag and marked "used in handling communicable disease," and then returned to the Ambulance Supply Room. Doctor Smith further advises that cellblocks where these prisoners may have been confined should be decontaminated in the same manner.

A long handle brush will be supplied to each district. Where the vehicle is stationed in a sub-station, it is to be taken to the district headquarters for decontamination. This should be done by the crews assigned to the vehicle immediately upon completion of the transportation of the prisoner or immediately upon it being

(CONTINUED)

## GENERAL POLICE ORDER

NO. 12-62                          HEADQUARTERS                April 24, 62 19

SUBJECT: TRANSPORTING OF COMMUNICABLE DISEASE
PATIENTS AND DECONTAMINATION OF VEHICLE

Inspector Albert C. Wallace,
Executive Officer.

You will cause the following regulations
and techniques regarding the transportation of
patients found to be suffering from a commun-
icable disease to become effective as of this
date.

The following procedures are to be used in
the event that any type police vehicle is used
in the transportation of persons known, suspected,
or later determined to have been infected with
a communicable disease.

No persons known to be infected with any
communicable disease are to be transported in
any of our police vehicles unless there are
other complications which make it mandatory that
this patient be treated as an emergency case, or
where the nature of regular police work neces-
sitates such transportation.

All requests for the transportation of per-
sons suffering with a communicable disease and
where no emergency exists are to be referred to
Metropolitan General Hospital, Admitting Doctor
at Toomey Pavilion, or to the Sanitary Unit of
the Police Department who is equipped to trans-
port certain types of communicable disease.

(CONTINUED)

CLE000911

## GENERAL POLICE ORDER

NO. 11-62

HEADQUARTERS _____ April 5, 62

19___

SUBJECT : TRANSFERS – ASSIGNMENTS

-3-

| | | |
|---|---|---|
| 414 | Ronald Fort | Dist. 4 |
| 278 | Andrew N. Kastak | Dist. 5 |
| 361 | Heinrich J. Ortag | Dist. 5 |
| 382 | Rudolf A. Scuro | Dist. 5 |
| 463 | Ralph Tescar | Dist. 5 |
| 72 | Kenneth Childers | Dist. 5 |
| 240 | Ralph J. Howard | Dist. 5 |
| 160 | Ronald F. Heinz | Dist. 6 |
| 196 | James C. Holliday | Dist. 6 |
| 449 | Victor Kovacic | Dist. 6 |
| 280 | Dennis N. Kehn | Dist. 6 |
| 372 | Guy V. Ricketti | Dist. 6 |
| 376 | Charles M. Schwandt | Dist. 6 |
| 395 | Anthony E. Zalar | Dist. 6 |
| 401 | Edward Ziegelmeyer | Dist. 6 |
| 301 | Kenneth E. Luzius | Dist. 5 |

By order of,

FRANK W. STORY,
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 11-62     HEADQUARTERS  April 5,     62
                                        19

SUBJECT: ___TRANSFERS - ASSIGNMENTS___

-2-

| | | |
|---|---|---|
| 660 | Richard Wargo | Dist. 4 to Communications |
| 1190 | Chester Peltz | Communications to Dist. 4 |
| 1800 | Aloysius Jezior | Dist. 2 to Traffic Bur. |
| 344 | Russell Cappelletti | Dist. 2 to Traffic Bur. |
| 397 | Mathew Pitesa | Dist. 2 to Traffic Bur. |
| 1253 | Daniel Mahon | Dist. 3 to Traffic Bur. |
| 1721 | Albert Innocenzi | Dist. 4 to Traffic Bur. |
| 842 | Robert Horschler | Dist. 4 to Traffic Bur. |
| 1063 | Francis Viancourt | Dist. 5 to Traffic Bur. |
| 1713 | Eugene Withers | Dist. 6 to Traffic Bur. |
| 998 | Alvin Character | Dist. 6 to Traffic Bur. |
| 1675 | Frank Coan | Dist. 6 to Traffic Bur. |

FROM POLICE ACADEMY

| | | |
|---|---|---|
| 63 | Daniel J. Balogh | Dist. 3 |
| 67 | Anthony Basta | Dist. 3 |
| 93 | Gordon Cockrell | Dist. 3 |
| 423 | Joseph Gallo | Dist. 3 |
| 106 | Ernest Hayes | Dist. 3 |
| 94 | Lloyd J. Douglass | Dist. 3 |
| 341 | Philip P. Meli | Dist. 3 |
| 343 | James Murphy | Dist. 3 |
| 354 | Michael J. Myers | Dist. 3 |
| 251 | Robert Hunt | Dist. 2 |
| 331 | Thomas E. Mahon | Dist. 2 |
| 388 | John T. Staimpel | Dist. 2 |
| 356 | Patrick O'Brien | Dist. 2 |
| 371 | Robert E. Patton | Dist. 2 |
| 45 | Anthony Ambris | Dist. 4 |
| 62 | Ronald T. Baker | Dist. 4 |
| 105 | Frank W. Faragone | Dist. 4 |

(CONTINUED)

## GENERAL POLICE ORDER

No. **11-62**          HEADQUARTERS_____          April 5,          62
                                                                    19____

SUBJECT : ____ TRANSFERS - ASSIGNMENTS

Inspector Albert C. Wallace
Executive Officer.

    The following transfers and assignments are
effective April 7, 1962:

| | | |
|---|---|---|
| Lieut. | Edward Grieger | Dist. 6 to Det. Bur. |
| Lieut. | Michael Sirkot | Det. Bur. to Sanitary Unit |
| Lieut. | John Delaney | Dist. 3 to Dist. 6 |
| Sergt. | Melvin Stahley | Comm. Bur. to Bur. Svcs. |
| Sergt. | Michael Ahrens | Dist. 1 to Communications |
| Sergt. | Wm. Huntington | Dist. 2 to Dist. 1 |

| | | |
|---|---|---|
| 1396 | Russell Springstrub | Traffic to Dist. 5 |
| 1271 | Albert Lasch | Dist. 5 to Traffic |
| 1662 | Stanley Wrona | AIU to Pub. Rel. |
| 300 | Robert Hearns | Det. Bur. to AIU |
| 1611 | Wm. Marriner | Det. Bur. to Dist. 1 |
| 840 | Lloyd Van Gunten | Dist. 2 to Dist. 4 |
| 996 | Nicholas Schilla | Dist. 4 to Dist. 2 |
| 1786 | Dan Szucs | Dist. 3 to Dist. 2 |
| 1233 | Robert F. Ruddy | Dist. 1 to Dist. 3 |
| 1283 | Raymond Wohl | Dist. 2 to Dist. 1 |
| 474 | Anderson Ridenour | Dist. 6 to Dist. 3 |
| 1060 | Louis Garcia | Dist. 3 to Det. Bur. |
| 1757 | Edward Matuszak | Dist. 6 to Det. Bur. |
| 700 | Edward Kovacic | Dist. 6 to Det. Bur. |
| 598 | Nicholas Lusk | Dist. 5 to Det. Bur. |
| 1593 | Melvin Zapo | Dist. 3 to Det. Bur. |
| 1862 | Harry Leisman | Dist. 6 to Det. Bur. |
| 1072 | John Vidmar | Dist. 3 to Det. Bur. |

                 (CONTINUED)

# GENERAL POLICE ORDER

NO. 10-62                    HEADQUARTERS                    March 22,     62
                                                                           19

SUBJECT: SUPPLEMENT TO GENERAL ORDER 13-61

Inspector Laurence Choura,
Acting Executive Officer.

You will cause all members of the department
to be notified of the following requirement and
that commanding officers will be required to see
to it that such order is complied with:

Personnel assigned to all radio patrol cars,
Basic Patrol, Detective Bureau, Traffic and
Accident Investigation Unit, will be required to
leave their headquarters as promptly as possible
after roll call.  Whenever the members assigned
to these cars are required to remain at their
headquarters for any protracted period, the radio
dispatcher's office must be notified by telephone
of such delay.

Mobile Patrol cars when on patrol will follow
this procedure at time of leaving their quarters
and upon return to them.

When any members assigned to these cars have
occasion to return to their headquarters for any
reason, including reporting off duty, they shall
notify the officer in charge of the station of
such return and the reason thereof; and members
so assigned shall also notify the radio dispatcher
by telephone of their whereabouts.

These members shall also notify their officer
in charge and the radio dispatcher when they again
leave to resume their patrol.

(CONTINUED)

## GENERAL POLICE ORDER

No. 10-62          HEADQUARTERS_____ March 22, 19 62

SUBJECT: __ SUPPLEMENT TO GENERAL ORDER 13-61

-2-

The officer in charge of the station shall inquire as to the reason for such return and allow none to remain in the station for other than police business and see to it that such police business is promptly completed and the members to resume patrol as soon as possible.

The officer in charge of the radio dispatche office will notify the officer in charge of any station whenever the dispatcher is unable to contact for any reason the men assigned to any radio patrol car as above designated. The officer in charge of any station so notified will make every effort to locate the personnel assigned to such car and determine the reason for their not responding to radio broadcasts directed to them.

By order of,

FRANK W. STORY,
CHIEF OF POLICE

CLE000916

# GENERAL POLICE ORDER

NO. __9-62__   HEADQUARTERS_____19__   March 14,   62

SUBJECT: __USE OF JUVENILE TRAFFIC CITATION
SUPPLEMENTAL FORM__

Inspector Laurence Choura,
Acting Executive Officer.

You will cause all members of the department
to be advised of the following:

Memorandum No. 109-58 issued by this office
on September 19, 1958, is hereby rescinded and
the following procedure shall be effective
immediately:

The Juvenile Court of Cuyahoga County re-
quires information in addition to that provided
in the present Juvenile Traffic Citation.

A specific Juvenile Traffic Citation Sup-
plementary Form has been developed which will
meet the requirements of the Court.  It is a two
part form (WHITE ORIGINAL and GREEN DUPLICATE).
This form shall supersede the use of the Juvenile
Form 107 in TRAFFIC VIOLATION CASES ONLY.

The Juvenile Citation Supplementary Form
shall be used whenever a Juvenile Traffic Citation
is issued, it shall be legible, accurate and as
nearly complete as possible.  The WHITE COPY
(original) shall be STAPLED to the white copy
(original) of the Juvenile Traffic Citation and
together with the "hard" or third copy of the
citation be delivered to the Unit of Records
which shall record necessary information and
forward proper copies to Juvenile Court.  In the

(CONTINUED)

CLE000917

## GENERAL POLICE ORDER

9-62                                                March 14,    62

No._____                   HEADQUARTERS_____19___

SUBJECT :  USE OF JUVENILE TRAFFIC CITATION
           SUPPLEMENTAL FORM

-2-

event a traffic accident is involved in the
issuance of a Juvenile Traffic Citation, a copy
of the traffic accident report shall also
accompany the juvenile citation when delivered
to the Unit of Records.  The GREEN COPY (duplicate)
of the Juvenile Traffic Citation Supplementary
Form shall be forwarded, directly, to the
JUVENILE UNIT at the Second District Headquarters.

An adequate supply of Juvenile Traffic
Citation Supplementary Forms will accompany each
book of Juvenile Traffic Citations issued.
Bureaus, Districts and Units having a supply of
Juvenile Citation books on hand and in use shall
draw a supply of the Juvenile Traffic Citation
Supplementary Form 71-1061 from the Store Room
to accommodate their needs, one pad of Juvenile
Traffic Citation Supplementary Forms for each
book of Juvenile Traffic Citations.

By order of,

FRANK W. STORY,
CHIEF OF POLICE

CLE000918

## GENERAL POLICE ORDER

NO. __8-62__          HEADQUARTERS __March 5,__  19 __62__

SUBJECT: ___TRAFFIC ACCIDENT REPORTS___

ADDITIONAL INFORMATION REQUIRED

Inspector Laurence Choura,
Acting Executive Officer.

    You will cause all members of the department
to be notified that reports on traffic accidents
will be required to show the name of the employer
of the individual in whose name the report is
made.  The employer's name should be entered in
the reports just below the occupation of the
driver.

By order of,

FRANK W. STORY,
CHIEF OF POLICE

CLE000919

### GENERAL POLICE ORDER

NO. __7-62__          HEADQUARTERS_____ February 27, __62__
                                                              19____

SUBJECT : _____ REINSTATEMENT _____

Laurence Choura, Inspector,
Acting Executive Officer.

Joseph Peri who resigned from the Depart-
ment as of January 27, 1962, has been reinstated
effective March 1, 1962.  He will have badge
No. 1865 and is assigned to District 1.

By order of,

FRANK W. STORY,
CHIEF OF POLICE

CLE000920

## GENERAL POLICE ORDER

No. 6-62        HEADQUARTERS February 15, 19 62

SUBJECT PROMOTIONS – ASSIGNMENTS – TRANSFERS

MEMBERS OF THE DEPARTMENT:

　　　The following promotions, assignments and transfers are effective February 16, 1962:

Capt. Albert Luzius promoted to Deputy Inspector and assigned to District 1.

Lieut. Edward Baloga  promoted to Captain and assigned to District 3.

Sergt. Herbert Dregala promoted to Lieutenant and assigned to District 2.

1526　Michael Ahrens promoted to Sergeant and assigned to District 1 (Airport).

D. Insp. George Smith transferred from 3rd District nights to District 4.

D. Insp. Stephen Szereto transferred from District 4 to District 3 nights in Command of the Department.

Lieut. Edward Becker from District 2 to W. S. Traf.

84　　Frank Hanus from E.S. Traffic to Dist. 5.
39　　Edward Wagner from Dist. 5 to E.S. Traffic.
1296　Elmer Witzke from Det. Bur. to Dist. 1.
151　　John O'Donnell from Dist. 1 to A.I.U.
1000　Alexander Massiello from A.I.U. to Det. Bur.
610　　Richard Craig from Dist. 3 to Det. Bur.
1080　William Friderich from Dist. 1 to Civ. Def.

　　　　　　　By order of,
　　　　　　　ALBERT C. WALLACE, INSPECTOR
　　　　　　　EXECUTIVE OFFICER
　　　　　　　ACTING CHIEF

## GENERAL POLICE ORDER

No. 5-62          HEADQUARTERS          February 1      62
                                                         19

SUBJECT: Physical Fitness Program

Page 2-

Such person shall continue to reduce his weight
each succeeding 30 days or such other period of
time at the direction of the Police Surgeon until
his weight has been reduced to or below the max-
imum allowable weight for his age and height.

The weight of each individual will be deter-
mined by the Police Surgeon on the scale at the
Medical and Surgical Bureau, which will be the
official department scale; and all loss or gain
of weight will be dtermined by the Police Surgeon
on this official scale.

By order of

FRANK W. STORY
CHIEF OF POLICE

CLE000922

# GENERAL POLICE ORDER

No. 4-62       HEADQUARTERS January 17,   62

SUBJECT: CHANGE IN BOUNDARIES, ZONES 314, 315, 316 AND 318

-2-

ZONE 316

Payne Ave. at E. 18th St.
SOUTH on E. 18th St. to Euclid Ave.
EAST on Euclid Ave. to E. 55th St.
NORTH on E. 55th St. to Payne Ave.
WEST on Payne Ave. to E. 18th St. - point of origin.

ZONE 318

From Ontario St. and south side of Public Square
EAST on Euclid Ave. to E. 22nd St.
SOUTH on E. 22nd St. to Orange Ave.
EAST on Orange Ave. to Mayflower.
EAST on Mayflower to Kingsbury Run.
WEST on Kingsbury Run to Cuyahoga River.
NORTH on Cuyahoga River to Stone's Levee to
    Eagle Ave. and Ontario St.
NORTH on Ontario St. to Euclid Ave. and Public
    Square - point of origin.

    For the purpose of patrol these boundaries
will be effective with the first platoon, Thurs-
day, January 18, 1962.

    For statistical purposes, the change will be
retroactive to 12:01 AM January 1st, 1962.  The
Bureau of Records will reconcile all reports
made this year to conform to the revised bound-
aries.

                BY ORDER OF,
                FRANK W. STORY,
                CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 3-62                    HEADQUARTERS  January 16, 62
                                              19

SUBJECT:        APPOINTMENTS

Albert C. Wallace, Inspector
Executive Officer.

    The following named men have been appointed
to the position of Patrolman in the Cleveland
Police Department, effective January 16, 1962,
and will be assigned to the Police Academy un-
til further orders:

            414 Ronald J. Fort
            423 Joseph Gallo
            449 Victor E. Kovacic
            463 Ralph C. Tescar

            By order of,

            FRANK W. STORY,
            CHIEF OF POLICE

CLE000924

## GENERAL POLICE ORDER

NO. __2-62__     HEADQUARTERS _____ January 15, __62__ 19__

SUBJECT: __PROMOTIONS - ASSIGNMENTS - TRANSFERS__

Albert C. Wallace, Inspector
Executive Officer.

    The following promotions, assignments and
transfers are effective January 16, 1962:

Lieut. Sidney Kershaw promoted to Captain and
    assigned to District 5.
Sergt. Harold Schwaerzle promoted to Lieutenant
    and assigned to District 6.
1090   Robert M. Gallagher promoted to Sergeant
    and assigned to District 3.

Dep. Insp. James Basta from Record Unit to
    Bureau of Patrol (Special)
Captain Harry Antel     From Dist. 5 to Dist. 6
Sergt.  Thomas Brown     From Dist. 3 to AIU

1764 Daniel Mullen     Communications to Dist. 2
814  Robert Richardson Communications to AIU
1654 Frank Horvath     Communications to Dist. 4
107  Henry Bielniak    Communications to Dist. 4
271  Edwin Donovan     Communications to Dist. 3
223  Joseph Bruner     Communications to Dist. 1
523  James Koelliker   AIU to Det. Bur.
1168 Charles LaMarca   Dist. 3 to Det. Bur.

            By order of,

            FRANK W. STORY,
            CHIEF OF POLICE

CLE000925

## GENERAL POLICE ORDER

NO. 1-62        HEADQUARTERS  Janusry 3, 19 62

SUBJECT :        APPOINTMENTS

Albert C. Wallace, Inspector,
Executive Officer.

The following named men have been appointed
to the position of Patrolman in the Cleveland
Police Department, effective January 2, 1962, and
will be assigned to the Police Academy until fur-
ther orders:

| | | | |
|---|---|---|---|
| 45 | Anthony Ambris | 301 | Kenneth E. Luzius |
| 62 | Ronald T. Baker | 331 | Thomas E. Mahon |
| 63 | Daniel J. Balogh | 341 | Philip P. Meli |
| 67 | Raymond Basta | 343 | James E. Murphy |
| 72 | Kenneth R. Childers | 354 | Michael J. Myers |
| 93 | Gordon L. Cockrell | 356 | Patrick O'Brien |
| 94 | Lloyd J. Douglass | 361 | Heinrich J. Ortag |
| 105 | Frank W. Faragone | 371 | Robert E. Patton |
| 106 | Ernest D. Hayes | 372 | Guy V. Ricketti |
| 160 | Ronald F. Heinz | 376 | Chas. M. Schwandt |
| 196 | James C. Holliday, Jr. | 382 | Rudolf A. Scuro |
| 240 | Ralph J. Howard | 388 | John T. Staimpel |
| 251 | Robert W. Hunt | 395 | Anthony E. Zalar |
| 278 | Andrew N. Kastak, Jr. | 401 | Edw.H.Ziegelmeyer |
| 280 | Dennis N. Kehn | | |

By order of,

FRANK W. STORY,
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. __32-61__        HEADQUARTERS __December 29,__ 19__61__

SUBJECT: __PROMOTIONS – ASSIGNMENTS – TRANSFERS__

-2-

| | | |
|---|---|---|
| 399 | Robert Haymond | From Det. Bur. to Dist. 4 |
| 628 | James Helbig | From Dist. 1 to Det. Bur. |
| 254 | Wm. Domenick | From Dist. 4 to Det. Bur. |
| 415 | John J. Sullivan | From Det. Bur. to Dist. 4 |
| 3 | Peter Comodeca | From Dist. 4 to Det. Bur. |
| 1865 | Joseph Peri | From Det. Bur. to Dist. 1 |

By order of,

FRANK W. STORY,
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 32-61          HEADQUARTERS          December 29, 19 61

SUBJECT: PROMOTIONS - ASSIGNMENTS - TRANSFERS

Albert C. Wallace, Inspector
Executive Officer.

The following promotions, assignments and transfers will be effective January 1, 1962:

| | | |
|---|---|---|
| Sergt. | John Delaney | Promoted to Lieutenant and assigned to District 3 |
| 1519 | Stanley Slivka | Promoted to Sergeant and assigned to Det. Bureau |
| 258 | Michael Haney | Promoted to Sergeant and assigned to District 6 |
| 691 | Jack Latko | Promoted to Sergeant and assigned to Bur. Comm. |
| 849 | Patrick Corrigan | Promoted to Sergeant and assigned to District 1 |
| 1262 | Stanley Deka | Promoted to Sergeant and assigned to District 4 |
| | | |
| Capt. | Joseph Strauss | From Dist. 6 to Juv. Unit |
| Lieut. | Ernest Willcocks | From Dist. 3 to Juv. Unit |
| Lieut. | Harry Weitzel | From Juv. Unit to Dist. 3 |
| Sergt. | John Salzgeber | From Dist. 6 to Dist. 3 |
| Sergt. | Arthur Pagel | From Det. Bur. to Dist. 3 |
| Sergt. | Edward Manney | From Bur. Comm. to Det.Bur. |
| | | |
| 56 | Harold Gircsis | Dist. 2 to Dist. 3 |
| 1788 | Arthur Thomas | From Dist. 3 to Dist. 2 |
| 300 | Robert Hearns | From AIU to Spec.Inv.Unit |
| 398 | Frank Lisiecki | From Dist. 1 to Dist. 4 |
| 1760 | Robert McKenna | From Dist. 4 to Dist. 1 |
| 968 | Michael Barrett | From Dist. 3 to Bur. Serv. and Welfare |

(CONTINUED)

CLE000928

## GENERAL POLICE ORDER

NO. __31-61__          HEADQUARTERS_____ November 30, 19 61

SUBJECT : _____ PROMOTIONS — TRANSFERS _____

Inspector Albert C. Wallace,
Executive Officer.

    The following promotions and transfers will
be effective December 1, 1961:

Sergt. Alex Kozak promoted to Lieutenant and
        assigned to District 4.
452   George Seitz promoted to Sergeant and
        assigned to District 4.

621   Daniel Donovan — From Dist. 6 to Bur. Traf.
47    Thomas Barrett — From Bur. Traf. to Dist. 6
1575  Thomas Moviel — Dist. 3 to Bur. Comm.

By order of,

FRANK W. STORY,
CHIEF OF POLICE

CLE000929

# GENERAL POLICE ORDER

NO. 30-61     HEADQUARTERS November 29, 19 61

SUBJECT: PRISONER REGISTRATION FORM (CLEVELAND METROPOLITAN GENERAL HOSPITAL)

Inspector Albert C. Wallace,
Executive Officer.

Refer to General Police Order No. 27 61

When a prisoner is sent to Cleveland Metropolitan General Hospital by a member of this department, either from a district jail or the jail at Central Station Headquarters, for treatment at the emergency room or as on out patient, the officer-in-charge of the Second District shall be notified in the same manner as if the prisoner were confined in the prison ward.

Above paragraph shall be inserted between paragraphs four and five of original order.

By order of,

FRANK W. STORY,
CHIEF OF POLICE

CLE000930

## GENERAL POLICE ORDER

NO. __29-61__  HEADQUARTERS_____ November 15, 19__61__

SUBJECT: _____ TRANSFERS _____

Albert C. Wallace, Inspector
Executive Officer.

The following transfers will be effective
November 16, 1961:

| | | |
|---|---|---|
| Sergt. | Peter Kilbane | – Bur. Comm. to Dist. 6 |
| Sergt. | John Hughes | – Dist. 6 to Bur. Comm. |
| 645 | Herbert Gau | – Dist. 5 to Pub. Rel. |
| 1086 | Robert Foley | – Dist. 5 to Det. Bur. |
| 1617 | William Misch | – Traffic Mounted to Dist.3 |
| 876 | Arthur Lettierie | – Dist. 3 to Troop C |
| 500 | Robert Neary | – Dist. 1 to A.I.U. |
| 180 | Emil Cielec | – Dist. 2 to A.I.U. |
| 1620 | Robert Musil | – A.I.U. to Dist. 1 |
| 1581 | Anthony Sabolik | – A.I.U. to Dist. 2 |

By order of,

FRANK W. STORY,
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 28-61                    HEADQUARTERS _____ November 15, 19 61

SUBJECT : _____

                              -2-

or dismissal, shall have their seniority for
drawing and the number of weeks furlough to which
they are entitled calculated from the date on
which they were reinstated as members of the
Department.

     Those members who were reinstated within
30 days of their resignation or dismissal shall
have the time calculated from the date of their
original appointment.

     This shall not effect those who were sus-
pended under charges and were later found not
guilty and reinstated as of the day of suspension.

     General Order No. 27-59, teletyped under
Message No. 31 of November 12, 1959, is hereby
rescinded.

     The last paragraph of General Order No. 26-61
of November 3, 1961 - ANNUAL FURLOUGH - YEAR 1962-
and referring to General Order No. 27-59, is to
be disregarded.


                              By order of,

                              FRANK W. STORY,
                              CHIEF OF POLICE

## GENERAL POLICE ORDER

No. __28-61__          HEADQUARTERS__ November 15, __61
                                                       19___

SUBJECT: RULE FOR DETERMINING SENIORITY FOR THE
ORDER OF DRAWING FURLOUGHS AND RULE FOR
DETERMINING THE NUMBER OF WEEKS FURLOUGH
TO WHICH MEMBERS ARE ENTITLED

Albert C. Wallace, Inspector,
Executive Officer.

Members will draw for furloughs in their or-
der of seniority.  Patrolmen from the date of
regular (not temporary) appointment to the
Department.  Officers from date of promotion to
rank held.

The number of weeks of furlough to which
they are entitled will be calculated from the
date on which this person entered the city's
service.

City service includes employment with the
City of Cleveland prior to appointment to the
Department, EXCEPTING prior service, either under
the old Cleveland Railway System or the present
Cleveland Transit System.

Such service must have been continuous with
the exception of temporary lay-offs over which
the person had no control and no credit will be
given for that period of time during which the
member did not work.

Members who have resigned or have been dis-
missed from the department and were later rein-
stated after thirty (30) days of such resignation

(CONTINUED)

## GENERAL POLICE ORDER

27-61                                    November 7,    61

No._____   **HEADQUARTERS**_____19____

SUBJECT:   PRISONER REGISTRATION FORM (CLEVELAND
METROPOLITAN GENERAL HOSPITAL)

-4-

politan General Hospital.

By order of,

FRANK W. STORY,
CHIEF OF POLICE

CLE000934

GENERAL POLICE ORDER

HEADQUARTERS

PRISONER REGISTRATION FORM (CLEVELAND METROPOLITAN GENERAL HOSPITAL)

Officer-in-Charge of the station at the Second District and the committing office of the hospital so that they are aware of the fact that the prisoner is no longer a responsibility of the Department. The Officer-in-Charge of the station at the Second District shall note on his third (pink) copy in the file, the date and the time of the release together with the name of the person so notifying him. The same procedure shall be followed in the event a prisoner is released from custody by reason of expiration of sentence.

When prisoners are being detained in the prison ward of the hospital for "investigation" the nature of the crime for which said prisoner is being held shall be clearly stated on the form (investigation in connection with _____

Personnel assigned to the Mobile Patrol or other police vehicle shall not convey a prisoner from or to areas outside of the Cleveland Police Department such as County Jail, Juvenile Court or Detention home, workhouse, etc., without the white and blue (first and second) copies of the prisoner registration form accompanying the prisoner. This prisoner registration form must be filled out by a representative of the agency sending such prisoner to the Cleveland Metro-

(CONTINUED)

GENERAL POLICE ORDER

7 5                                   November 7.  61

HEADQUARTERS

PRISONER REGISTRATION FORM (CLEVELAND
METROPOLITAN GENERAL HOSPITAL)

2

District Headquarters.

In all other instances, the officer ordering
the commitment of a prisoner to the prison ward
shall immediately notify the Officer-in-Charge
of the station at the Second District and shall
furnish him with all pertinent information nec-
essary to properly fill in the registration form.
The Officer-in-Charge of the station at the
Second District shall record all available in-
formation on the registration form and shall, in
the same manner as mentioned above, forward the
first and second (white and blue) copies to the
admitting officer at Cleveland Metropolitan
General Hospital.  The third (pink) copy shall be-
come a part of the file in the Second District
Headquarters.

It shall be the duty of the Officer-in-Charge
of the station, first platoon, at the Second
District, to forward before noon of each day, all
Prisoner Registration Forms made out during the
previous twenty-four hours.

When a prisoner being held by this depart-
ment in the Prison Ward at Cleveland Metropolitan
General Hospital is released from custody by
reason of a properly executed bond presented to
the Officer in charge of the jail or the prison
ward, the officer shall immediately notify the

(CONTINUED)

CLE000936

GENERAL POLICE ORDER

97-55                                    November 7,

HEADQUARTERS

PRISONER REGISTRATION FORM (CLEVELAND
METROPOLITAN GENERAL HOSPITAL)

Inspector Albert G. Wallace,
Executive Officer,

You will require all members of the Department to comply with the following procedure when prisoners are to be confined in the prison ward of Cleveland Metropolitan Hospital.

A prisoner registration form is being placed into use by the Cleveland Metropolitan General Hospital.  The purpose of this form is to properly place the financial responsibility for the hospital care of the prisoner.  It is a three part form: the first copy is white, the second is blue and the third is pink.

In emergency cases when the prisoner is sent by members of this department directly to the prison ward from the scene of the crime or accident "it shall be the duty of the arresting officer" to immediately notify the Officer-in-Charge of the station at the Second District headquarters and provide him with the essential information to enable him to properly fill in the prisoner registration form.  The Officer-in-Charge of the station at the Second District, shall properly fill in all required information on the registration form and forward the first and second (white and blue) copies of the registration form to the admitting office of the Cleveland Metropolitan General Hospital.  He shall retain the third (pink) copy which shall become part of a permanent file to be maintained at the Second

(CONTINUED)

1 & 2 COPIES TO METRO GEN HOSP

## GENERAL POLICE ORDER

No. <u>26-61</u>          HEADQUARTERS <u>November 3,</u> 19 <u>61</u>

SUBJECT : <u>ANNUAL FURLOUGH — YEAR 1962</u>

-4-

    Furlough drawings shall be approved by the
Commanding Officer before forwarding to the
Chief's Office.

    For rule for determining seniority for the
order of drawing furloughs and rule for deter-
mining the number of weeks furlough to which
members are entitled, refer to General Order
No. 27-59, teletyped under message No. 31,
November 12, 1959.

                  By order of,

                  FRANK W. STORY,
                  CHIEF OF POLICE

CLE000938

**GENERAL POLICE ORDER**

No. 26-61       HEADQUARTERS __November 3,__ 19 61

SUBJECT: __ANNUAL FURLOUGH - YEAR 1962__

-3-

furlough period open to repay other men for
overtime due them.

    Men entitled to a two week furlough may
select part A or part B in any one furlough
period that is left open to them. In no event
can a four or three week furlough man take part
B of one furlough period and part A of another
furlough period.

    The selection of Part A and/or Part B in
any furlough period shall be noted in the A-B
column of the drawing sheet.

    Any officer or Patrolman unable to be present
at the time of selection or drawing, by reason
of illness or disability, may delegate another
member to make the selection for him.

    Exchanges of furloughs after these selections
have been completed will only be allowed in cases
of hardships or for the best interest of the
Department and then only by special request
approved by the member's Superior Officer and
forwarded to the Chief of Police via regular
channel.

    Furlough draw sheets are to be in the Chief's
Office by 9:00 A.M., Monday, December 4, 1961.

(CONTINUED)

CLE000939

## GENERAL POLICE ORDER

No. 26-61                    HEADQUARTERS                November 3, 19 61

SUBJECT:    ANNUAL FURLOUGH - YEAR 1962

-2-

Deputy Inspectors, Captains, Lieutenants and Sergeants will make their selection according to rank and seniority in rank. Patrolmen will make their selection in order of seniority as determined by date of legal civil service appointment.

Where Deputy Inspectors, Captains, Lieutenants or Sergeants have been promoted on the same date, the order of selection shall be determined by the length of service in the Department, the one having the greater length of service being given first choice, etc. Where Patrolmen have been appointed on the same date, the order of selection shall be by lot.

Each Furlough Drawing sheet shall indicate in a column provided for that purpose, whether a member is entitled to a two week, a three week or a four week furlough.

Each furlough period of the 1962 Furloughs shall be divided into part A and part B. The first two weeks shall be part A and the second two weeks part B.

Men entitled to a four week furlough may draw parts A and B in any one furlough period.

Men entitled to a three week furlough may select part A and one half of part B in any one furlough period, thus leaving the balance of that

(CONTINUED)

CLE000940

## GENERAL POLICE ORDER

NO. 26-61          HEADQUARTERS  November 3, 19 61

SUBJECT : ANNUAL FURLOUGH - YEAR 1962

Albert C. Wallace, Inspector,
Executive Officer.

The Commanding Officers of the various Districts and Bureaus and the Officers-in-charge of the "Special Services" as designated in the Furlough Plan (a copy of which will be forwarded to the various Districts and Bureaus), shall forward a schedule showing the total number of Officers in each rank and the total number of Patrolmen that are to be allotted to each furlough period.  This schedule shall be in the office of the Chief of Police on or before 9:00 A.M., Monday, November 13, 1961.

The names of Officers and Patrolmen, or their badge numbers are not to be included in this list.

The official November beat list is to be used for the purpose of preparing this schedule.

The selection of furloughs will be held at the various District or Bureau Headquarters and the Officers of the "Special Services", as indicated in the mimeographed Plan, on Monday, November 27, 1961 at times to be specified by the Commanding Officers or Officer-in-charge, as the case may be.

Inspectors will select furloughs at the Office of the Chief at a date to be specified later.

( CONTINUED )

CLE000941

## GENERAL POLICE ORDER

No. __25-61__    HEADQUARTERS____October 31,__ ₁61

SUBJECT : _____TRANSFERS_____

Albert C. Wallace, Inspector
Executive Officer.

The following transfers will be effective
Wednesday, November 1, 1961:

| | | |
|---|---|---|
| Lieut. Peter Allen | from Dist. 1 to Dist. 4 | |
| Lieut. Edward Cisar | from Dist. 4 to Dist. 1 | |
| | | |
| Sergt. John Salzgeber | from Comm. Bur. to Dist. 6 | |
| Sergt. George Novak | from Comm. Bur. to Dist. 4 | |
| Sergt. Lloyd Schempp | from Dist. 4 to Comm. Bur. | |
| Sergt. Richard Vlna | from Dist. 6 to Comm. Bur. | |
| | | |
| 1533 Andrew Brunkala | from Comm. Bur. to Dist. 6 | |
| 114 Richard Beaver | from Dist. 6 to Comm. Bur. | |
| 1198 David Wise | from Dist. 4 to Dist. 1 | |
| 748 John Kane | from Dist. 1 to Dist. 4 | |

By order of,

FRANK W. STORY,
CHIEF OF POLICE

CLE000942

## GENERAL POLICE ORDER

No.  24-61                          HEADQUARTERS  September 28, 19 61

SUBJECT :  TRANSFERS

Inspector Albert C. Wallace,
Executive Officer.

You will cause the following transfers to
be effective Sunday, October 1, 1961:

464   Gus Zukie        Record Room to District 1

1029  Raymond Ressler  Bureau of Communications to
                       District 3

1387  Joseph Moynihan  District 6 to Bureau of
                       Communications

441   Robert White     District 3 to District 6


By order of,

FRANK W. STORY,
CHIEF OF POLICE

CLE000943

## GENERAL POLICE ORDER

No. __23-61__                    HEADQUARTERS____September 28, 19 61

SUBJECT: __ELECTION DAY SALES OF ALCOHOLIC BEVERAGES__

Inspector Albert C. Wallace,
Executive Officer.

You will cause all members of the department
to be informed of the following communication
from Richard F. Matia, Chief Police Prosecutor
and they are directed to conduct themselves
accordingly:-

"Pursuant to your request for an interpre-
tation of the Ohio Attorney General's ruling in
regard to the sale of alcoholic beverages on
Election Days, this is to advise you that the
law applicable to the non-sale of alcoholic bev-
erages by permit holders is restricted on the
first Tuesday after the first Monday in the
month of November of the odd-numbered years;
and the sale of said beverages is prohibited on
the Primary Election Day held in May and the
General Election Day held in November of the
even-numbered years. The sale of alcoholic bev-
erages is not prohibited on any other election
days during the year."

The Attorney General's Opinion referred to
is No. 2451. A copy of this opinion is on file
at this office.

By order of,

FRANK W. STORY,
CHIEF OF POLICE

## GENERAL POLICE ORDER

No._____ 22-61      HEADQUARTERS_____ September 27, 61 ___19

SUBJECT : _____ TRAFFIC ENFORCEMENT _____

-3-

can and do create a situation where it is exceed-
ingly dangerous to operate a motor vehicle at
much lower rates of speed than stated herein
and good judgement must always be exercised in
these situations.  In no case shall a person be
brought to the station and booked merely because
he became saucy to a police officer.  Where a
violator becomes very abusive and refuses to
accept or sign the citation, he should be brought
to a station for booking.  There, if he or she
recants and admits being abusive, the officer-
in-charge of the station may, at his discretion,
permit the violator to sign the citation and
be released.  An entry should then be made in the
Golden Rule Book indicating such disposition.

Police officers are expected to withstand
a certain amount of abuse but are not required
to be subjected to violent, profane or vicious
abuse.

By order of,

FRANK W. STORY,
CHIEF OF POLICE

CLE000945

## GENERAL POLICE ORDER

NO. _____ 23-61 _____          HEADQUARTERS _____ September 27,  61 _____ 19 __

SUBJECT: _____ TRAFFIC ENFORCEMENT _____

-2-

they are to make court appearances.

Desperate situations require drastic rem-
edies, therefore, all members are hereby directed
to increase their vigilence to detect violators
and issue court citations or where an exceedingly
dangerous violation has been committed, arrest
and hold for bail.

Where citations are issued, the issuing
officer shall, where the violator does not have
an operator's license or does not have it on his
person, first determine if such person has re-
liable identification on his person, such as
letters addressed to him at the address given,
other cards or papers which bear his written
signature, etc.  Care must be taken to compare
such signature with one signed on the citation
or sample submitted, also that the name and
description on the operator's license are identi-
cal.  In case of doubt hold for bail.  Too many
persons in the 16 to 22 year old bracket, who
have no operator's license on their person, have
given fictitious names and addresses then fail
to appear and cannot be located.

Persons operating motor vehicles in an
exceedingly dangerous manner or are driving 50
M.P.H. in a 35 M.P.H. speed limit zone or 60
M.P.H. in a 50 M.P.H. zone, such as the shoreways
or other limited access thoroughfares  shall be
arrested and held for bail.  It must be under-.
stood that weather conditions or heavy traffic
(CONTINUED)

CLE000946

# GENERAL POLICE ORDER

NO. _____ 22-61 _____    HEADQUARTERS _____    September 27, 61
19___

SUBJECT : _____ TRAFFIC ENFORCEMENT _____

Inspector Albert C. Wallace,
Executive Officer.

All members of the department are to be a-
ware of the provisions contained herein:

It has again been cruelly demonstrated that
there is no substitute for stern and relentless
enforcement of traffic regulations.

The fact that we had a remarkable decrease
in traffic fatalities during the first six and
one half months of this year has been erroneous-
ly attributed, in part, to the conclusion that
motorists and pedestrians alike had accepted the
theory that obedience to traffic laws would save
them from death or injury.  Consequently arrests
for traffic violations decreased.  Also it has
been said that this decrease was due to the fact,
that obedience was such that officers could not
detect many violations warranting citation or
arrest.  How wrong this concept was is now ap-
parent to nearly everyone.  This was, of course,
but one of the causes.  Other causes were the
persistent demand for police at the many and
varied civic demonstrations, parades, ball games
and other public recreation was enormous, vaca-
tions also reduced available manpower.  In the
opinion of some people, the attitude of law
enforcement, that all moving traffic violators
would have to appear in court, was unrealistic.
Therefore, a price in money was substituted for
appearance in court.  Money alone cannot prevent
traffic accidents.  Motorists seem to be willing
to part with money with greater alacrity than
(CONTINUED)

CLE000947

## GENERAL POLICE ORDER

No. 21-61

HEADQUARTERS_____19____

August 31,  61

SUBJECT: TITLING OF CRIME REPORTS ON SECTIONS 4549.041 and 4549.05 OF THE GENERAL CODE OF OHIO

Albert C. Wallace, Inspector,
Executive Officer.

You will cause all members of the Department to conform to the following directive beginning Friday, September 1, 1961:

Crime reports involving violations of R. C. 4549.041 and R. C. 4549.05 shall be entitled as enumerated below:
SECTION R. C. 4549.041 – "Breaking and entering motor vehicle or trailer".
Attempts to break in or an actual break in where nothing is stolen shall be titled – "AUTO BREAK-IN".
When anything of value is stolen subsequent to a break-in the report shall be titled – "AUTO BREAK-IN & LARCENY".
SECTION R. C. 4549.05 – "Stealing parts from motor vehicle".
Reports of crimes involving the theft of auto accessories and/or parts from a motor vehicle shall be titled –"LARCENY – AUTO ACCESSORIES". Reports of this type were formerly titled – Petit or Grand Larceny (Auto Accessories).
Copies of these sections of the General Code have been forwarded to all Districts and Bureaus.

By order of,

FRANK W. STORY
CHIEF OF POLICE

CLE000948

## GENERAL POLICE ORDER

NO. 20-61                    HEADQUARTERS    August 31,    61
                                                          19

SUBJECT :  TRANSFERS

Albert C. Wallace, Inspector
Executive Officer

    You will cause the following transfer
of assignment to become effective Friday,
September 1, 1961:

| 1057 | Edward Sullivan | from Dist 3 to Dist 2 |
| 233 | John Campbell | from Dist 3 to Dist 2 |
| 1060 | Louis Garcia | from Dist 2 to Dist 3 |
| 1589 | William Vannucci | from Dist 2 to Dist 3 |
| 1434 | Bernard Masterson | from Dist 1 to Bur of Serv |
| 1665 | William Steele | from Det. Bur to Dist 2 |
| 1737 | Arthur Wood | from AIU to Det. Bur. |
| 1776 | Edmund Rossman | from Dist 2 to AIU |

By order of

FRANK W. STORY
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. **19-61**          HEADQUARTERS_____ August 21, 19 __61__

SUBJECT : ____ PROMOTIONS - ASSIGNMENTS - TRANSFERS

Albert C. Wallace, Inspector,
Executive Officer.

    The following promotions and transfers of
assignment will be effective Monday, August 21,
1961:

Capt. Gerald J. Rademaker promoted to Deputy
    Inspector and assigned to District 2.
Lieut.Lewis W. Coffey promoted to Captain and
    assigned to Medical & Surgical Bureau.
Sergt.Lloyd F. Garey promoted to Lieutenant and
    assigned to District 5.
# 647 Lloyd A. Schempp promoted to Sergeant and
    assigned to District 4.

### TRANSFERS

Capt. George Ballard    from Dist. 3 to Dist. 4
Capt. Wm. Birmingham    from Dist. 4 to Dist. 3
Capt. Albert Luzius    from Dist. 2 to Dist. 3

Lieut.Harry Weitzel    from Dist. 5 to Juvenile

        By order of,

        FRANK W. STORY,
        CHIEF OF POLICE

**GENERAL POLICE ORDER**

No. ___18-61___          HEADQUARTERS_____ August 15, 19 61

SUBJECT:  PROMOTION — ASSIGNMENT — TRANSFERS

Albert C. Wallace, Inspector,
Executive Officer.

The following promotion, assignment and
transfers will be effective, Wednesday, August
16, 1961:

| | | |
|---|---|---|
| 1631 | Eugene Polk | Promoted to Sergeant and assigned to Bureau of Traffic |
| Sgt. | Charles Vrana | Communications to Dist. 4 |
| Sgt. | Peter Kilbane | Dist. 4 to Communications |
| 230 | Walter Kalina | Dist. 5 to East Side Traf. |
| 96 | George Scott | Communications to Dist. 4 |
| 12 | Anthony Barle | Communications to Dist. 5 |
| 902 | Frank Rocha | Communications to Dist. 3 |
| 1732 | George Pavlac | Communications to Dist. 3 |
| 126 | George Albrecht | Dist. 4 to Communications |
| 246 | Peter Balega | Dist. 5 to Communications |
| 107 | Henry Bielniak | Dist. 3 to Communications |
| 125 | Anthony Sherbinski | Dist. 3 to Communications |

By order of,

FRANK W. STORY,
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. **17-61**                                         July 31,       61
                        HEADQUARTERS_____19____

SUBJECT: _____TRANSFERS_____

Albert C. Wallace, Inspector,
Executive Officer.

The following transfers will be effective
August 1, 1961:

Lieut. Henry Abel          Juvenile Unit to Dist. 4
Lieut. George Zicarelli     Dist. 4 to Bur. Services

1256   Delwood Jackson     Dist. 6 to Record Unit
1843   Robert Reynolds     Dist. 1 to Bur. Comm.
793    Franklin Harris     Bur. Comm. to Dist. 1


By order of,

FRANK W. STORY,
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. 16-61            HEADQUARTERS_____  July 15,  ___ 19 61

SUBJECT: _____ PROMOTION AND ASSIGNMENT _____

Albert C. Wallace, Inspector,
Executive Officer.

    The following promotion and assignment will
be effective July 16, 1961:

Patrolman Richard F. Vlna #1674 promoted to
Sergeant and assigned to the Sixth District.

By order of,

FRANK W. STORY,
CHIEF OF POLICE

CLE000953

## GENERAL POLICE ORDER

15-61                                    July 10, 1961

No._____                    HEADQUARTERS_____19___

SUBJECT:

Inspector Albert C. Wallace,
Executive Officer.

You will cause all members of the
department to become aware of the provisions of
this General Order.

Commanding Officers of Districts
or Bureaus who receive information of or requests
for permission to:

1.    Erect any structure or place an obstruc-
tion in any street of the City which may cause a
dangerous condition, or
2.    Engage in any stunt or activity origina-
ting or terminating on any street or public or
private property which may result in danger to life
or limb or damage to public or private property,

shall advise such persons or committees that a
special permit is required from the Director of
Public Safety.

The Chief of Police or the Executive
Officer shall be notified by telephone without un-
necessary delay of such event and this shall be
followed by a Form I report.  The Director of Pub-
lic Safety shall be immediately notified by the
Chief or Executive Officer so that no permit shall
be issued until a complete investigation has been
made.

By order of

FRANK W. STORY,
CHIEF OF POLICE

## GENERAL POLICE ORDER

NO._____       HEADQUARTERS_____ June 30, 61
           14-61                                            19

           TRANSFERS

SUBJECT:_____

Albert C. Wallace, Inspector
Executive Officer.

      The following transfers will be effective
July 1, 1961:

| | | |
|---|---|---|
| Sergt. | James Bruen | Dist. 3 to Traffic, AIU |
| Sergt. | Edward Kozelka | Traffic to Dist. 3 |
| 174 | Governor Foust | Det. Bur. to Dist. 3 |
| 1392 | Jack T. Morris | Det. Bur. to Dist. 5 |
| 1397 | Joseph Johnson | Dist. 3 to Det. Bur. |
| 657 | Richard Innocenzi | Dist. 5 to Det. Bur. |
| 1240 | Nicholas Grillo | Comm. to Dist. 1 |
| 199 | LeRoy Brinkhoff | Dist. 1 to Comm. |
| 164 | Allen Behrend | Comm. to Dist. 2 |
| 1837 | Kenneth Kuntz | Dist. 2 to Comm. |
| 1839 | Robert Massiello | Dist. 5 to Traffic, AIU |
| 39 | Edward Wagner | Traffic to Dist. 5 |

                    By order of,

                    FRANK W. STORY,
                    CHIEF OF POLICE

CLE000955

## GENERAL POLICE ORDER

13-61                                            June 30,  61

No._____                HEADQUARTERS_____19___

SUBJECT: BROCHURE ENTITLED: "INSTRUCTIONS FOR USE OF RADIO"

Inspector Albert C. Wallace,
Executive Officer.

You will cause all members of this department to be informed of the provisions of this General Order.

A brochure entitled "Instructions for Use of Radio" has been prepared and is being issued as a General Order and is to be so regarded in its entirety.  It shall be included in the official binder of General Orders of each command.

Each member of the department is to receive a copy which shall be combined with his book of Rules and Regulations governing the Division of Police.  Sufficient copies are being forwarded to each command.

Commanding officers and officers in charge of stations or units will obtain a receipt for this brochure from each member under his command. This receipt shall be on a payroll sheet.  The heading shall be as follows: "We, the undersigned, hereby acknowledge receipt of the brochure referred to in General Order No. 13-61."  These receipts shall be forwarded to the Chief's Office after all members of their command have obtained a copy.

By order of,

FRANK W. STORY,
CHIEF OF POLICE

## GENERAL POLICE ORDER

NO. __12-61__          HEADQUARTERS_____    May 31, 19__61__

SUBJECT: ____TRANSFERS____

Albert C. Wallace, Inspector,
Executive Officer.

You will cause the following transfers to
be effective June 1, 1961:

```
   6 Patrick Anderson    - Juv. Bur. to Dist. 3
1208 Norbert Parkowski   - Dist. 3 to Juv. Bur.
1096 Thomas Murphy       - Dist. 3 to Dist. 5
1380 Stanley Houska      - Dist. 3 to Dist. 6
1182 Assad Solomon       - Dist. 5 to Dist. 3
 236 Louis Begany        - Dist. 6 to Dist. 3
1548 Stephen Dulka       - AIU to Record Room
```

By order of,

FRANK W. STORY,
CHIEF OF POLICE

CLE000957

## GENERAL POLICE ORDER

No. 11-61                         HEADQUARTERS                         May 8,    61
                                                                              19

SUBJECT:  RELEASE OF CERTAIN INFORMATION TO
          NEWSPAPERS RE:  INJURED PERSONS

Albert C. Wallace, Inspector,
Executive Officer.

        You will notify all members of the department
of the following:
        The hospitals in Cleveland who are associated
with the Cleveland Hospital Council have entered
into an agreement with the newspapers and other
media of public information in a "code of ethics"
in which certain information can be properly
given to these publications.
        One of these regulations requires the hospi-
tal to give to these agencies the name and address
of any person who has been brought into an emer-
gency ward, and has been the victim of an accident
or an injury by criminal means.
        The hospitals want to cooperate with the
Cleveland Police Department in any manner possible
and where a police officer believes that the
identity of any such person should be withheld
from the newspapers, television or radio for a
short period of time to enable the police to make
a more complete investigation, they will do so.
Where a police officer requests the officials of
the hospital to withhold such information, he
should place such request in writing, which need
not be on official police stationery, and give it
to the hospital.
        This is solely for the purpose of protecting
the hospital against any charge of failure to
abide by their agreement.
                          By order of,
                          FRANK S. STORY,
                          CHIEF OF POLICE

**GENERAL POLICE ORDER**

NO. **10-61**    HEADQUARTERS    April 28, **61**    19___

SUBJECT : ___WARRANT REGISTRY OFFICE___

-3-

District Mail cars will continue to pick up warrants at the Property Room.  When a registered warrant is received by a District or Unit for execution, the 2nd copy which is marked "District Control Copy" shall be retained by the District or Unit until such time as the warrant is executed or returned to the Warrant Registry Office because of non-execution.  If the warrant is executed, the District Control Copy shall be forwarded to the Warrant Registry Office and the third copy shall remain attached to the warrant.  If the warrant is not executed after 30 days, the 2nd and 3rd copies of the Warrant Register Form and the warrant shall be returned to the Warrant Registry Office.  A record of the handling of the warrant shall be made in the warrant book of the District or Unit.

All required information to the right side of the double line on both copies of the Warrant Register Form shall be provided by District or Unit personnel.  The Officer-in-Charge of the station shall review both forms before they are forwarded and make any corrections or changes which may be necessary.

Inquiries regarding the wanted status of persons being investigated by members of the department are to be directed to the Detective Bureau.

(CONTINUED)

CLE000959

## GENERAL POLICE ORDER

No. 9-61                    HEADQUARTERS        April 26,        61
                                                                19

TO CLARIFY G.O. 8-61 ISSUED APRIL 18, 1961
SUBJECT: SEPARATION FROM POLICE DEPARTMENT SERVICE

Inspector Albert C. Wallace,
Executive Officer.

    The purpose intended to be accomplished by the letter written to me by the Director of Public Safety under date of April 17th was simply to say that all members who are 70 years of **age** or over would be honorably retired as of January 1, 1962, and further that all overtime, vacation periods and holidays, including the 18 days of Janet Blood time, must be absorbed within the department prior to January 1, 1962. It does not mean that they would be separated from the payroll at any earlier date as would seem to have been indicated in the listing "cease active duty."

    Therefore, commanding officers will see to it that all overtime of any kind be taken by these affected members prior to December 31, 1961, and that such affected members may remain on the payroll up to and including December 31, 1961. Their resignation and request to be placed on the pension rolls must be effective as of January 1, 1962.

              By order of,

              FRANK W. STORY,
              CHIEF OF POLICE

CLE000960

## GENERAL POLICE ORDER

No. **8-61**            HEADQUARTERS _____ April 18, ____ **61**
                                                              19

SUBJECT: SEPARATION FROM POLICE DEPARTMENT SERVICE

-2-

A review of the records of this office and infor-
mation furnished by your office reflect that the
following employees will be affected by Title 1,
Section 2523 of the Codified Ordinances of the
City of Cleveland.  Based upon the information as
to overtime due as of December 31, 1960 the "cease
active duty" date is indicated.  This date does
not include the annual vacation for 1961, but does
include the "Janet Blood" days."

The Commanding Officer will see to it that the
individuals enumerated on this list have taken
whatever overtime may be due them, as explained
in the letter, prior to the date of their separa-
tion from the service because of superannuation.
It is to be noted that some of these dates of
separation extend from September 13, 1961 to
December 5, 1961.

Commanding Officers will forward report when these
men have taken the overtime due them.

By order of,

FRANK W. STORY,
CHIEF OF POLICE

## GENERAL POLICE ORDER

NO. <u>8-61</u>        HEADQUARTERS <u>April 18, 1961</u>

SUBJECT: <u>SEPARATION FROM POLICE DEPARTMENT SERVICE</u>

Inspector Albert C. Wallace,
Executive Officer.

　　　The following is a letter, addressed to me as
Chief of Police, with reference to the compulsory
retirement of certain members of this department;
the list is appended herewith:

　　　　　　　　　　　　　　　　　　"April 17, 1961

Frank W. Story, Chief
Division of Police

Dear Chief:

As you are aware from our previous discussions and
communication, January 1, 1962 is the effective
date of the Compulsory Retirement Legislation for
the Cleveland Police Department.

In order that this ordinance can be complied with,
each employee affected by this law must have taken
all overtime and other such days which are or will
be due him by December 31, 1961.

The Law Department has ruled that the affected
employees must be off the payroll on the effective
date as it applies to each employee.

　　　This rule will necessitate that new procedures
be instituted by the Department to assure that
each employee upon leaving, will have no addition-
al pay coming to him.

　　　　　　　　　　(CONTINUED)

CLE000962

## GENERAL POLICE ORDER

7-61                                              March 31,    61

NO._____                    HEADQUARTERS_____19___

SUBJECT: PROMOTION, REINSTATEMENT AND TRANSFERS
_____

Inspector Laurence Choura,
Acting Executive Officer.

  You will cause the department to be notified
that the following promotion, reinstatement and
transfers will be effective as of April 1, 1961:

93  Michael Quinn promoted to Sergeant and
   assigned to District 4.

3015 Jessie Antel reinstated as Policewoman and
   assigned to Women's Bureau.

| | | |
|---|---|---|
| Sergt. | John Schmidt | – Comm. to Dist. 2 |
| Sergt. | Edward Manney | – Dist. 2 to Comm. |

| | | |
|---|---|---|
| 98 | Leonard Beil | – Comm. to Dist. 1 |
| 223 | Joseph Bruner | – Dist. 1 to Comm. |
| 813 | Michael Carosielli | – Comm. to Dist. 2 |
| 271 | Edwin Donovan | – Dist. 2 to Comm. |
| 1371 | William McGrath | – Unit Rec. to Bur. Traf. |
| 619 | Joseph Vamos | – Bur. Traf. to Dist. 2 |
| 875 | Wm. Gaeblein | – Dist. 2 to Unit Rec. |
| 1067 | Edward Walsh | – Dist. 3 to Prop. Room |
| 808 | Chas. Krokey | – Pub. Rel. to Traf. Mtd. |
| 1360 | Anthony Governale | – Traf. to Pub. Rel. |
| 1269 | Norman J. Sperling | – Dist. 6 to Traf. Bur. |
| 1025 | Ronald Simon | – Dist. 2 to Traf. Bur. |
| 193 | Richard Cielec | – Dist. 1 to Traf. Bur. |
| 590 | John Butler | – Traf. Bur. to Dist. 6 |
| 99 | Kenneth Downing | – Traf. Bur. to Dist. 2 |
| 1062 | Lewis Daniels | – Traf. Bur. to Dist. 1 |

      By order of,

      FRANK W. STORY,
      CHIEF OF POLICE

CLE000963

## GENERAL POLICE ORDER

NO. __6-61__          HEADQUARTERS____March 1,____ 19 61

SUBJECT: DISMISSAL OF JAMES F. HAKEY, PTL # 1248

Inspector Albert C. Wallace,
Executive Officer.

    You will cause the records of this depart-
ment to reflect that James F. Hakey, Ptl # 1248,
assigned to duty in the 2nd District, and who
had been suspended for violation of the rules
on February 24, 1961, was dismissed by the
Director of Public Safety as a patrolman in the
Division of Police, Department of Public Safety,
this date, March 1, 1961.

              By order of,

              FRANK W. STORY,
              CHIEF OF POLICE

CLE000964

## GENERAL POLICE ORDER

No. 5-61          HEADQUARTERS  February 15, 1961

SUBJECT: RETURN FROM LEAVE OF ABSENCE

Albert C. Wallace, Inspector
Executive Officer.

Wilbert M. Hauser, Patrolman No. 263, will
return to duty from his leave of absence
effective February 16, 1961 and will be assign-
ed to the Sixth District.

By order of,

FRANK W. STORY,
CHIEF OF POLICE

## GENERAL POLICE ORDER

No. __4-61__          HEADQUARTERS __January 31,__ __61__

SUBJECT: __PROMOTIONS - TRANSFERS - ASSIGNMENTS__

-3-

| | | |
|---|---|---|
| 12 | Anthony Barle | Dist. 5 to Communications |
| 1875 | Joseph Toigo | Dist. 6 to Communications |
| 558 | Jerry Zilina | Dist. 5 to Bur. Traf. |
| 1783 | Lawrence Scully | Bur. Communications to Dist. 6 |
| 1533 | Andrew Brunkala | Dist. 6 to Bureau of Communications |

By order of,

FRANK W. STORY,
CHIEF OF POLICE

CLE000966

# GENERAL POLICE ORDER

NO. __4-61__          HEADQUARTERS __January 31, __ 1961

SUBJECT: __PROMOTIONS -TRANSFERS - ASSIGNMENTS__

-2-

| | | |
|---|---|---|
| 22   | Ralph Walchek    | Det. Bur. to Dist. 1 |
| 430  | Kenneth Doran    | Det. Bur. to Dist. 6 |
| 441  | Robert White     | Det. Bur. to Dist. 3 |
| 180  | Emil Cielic      | Bur. Traf. to Dist. 2 |
| 760  | Robert Oravec    | Bur. Traf. to Dist. 2 |
| 1625 | Kenneth Orlowe   | Bur. Traf. to Dist. 6 |
| 452  | George Seitz     | Bur. Traf. to Dist. 3 |
| 1332 | Earnest Price    | Bur. Traf. to Dist. 4 |
| 1639 | Dudley Saltzman  | Bur. Traf. to Dist. 1 |
| 904  | Albert Peiper    | Bur. Traf. to Dist. 5 |
| 1060 | Louis Garcia     | Bur. Traf. to Dist. 2 |
| 1589 | William Vannucci | Bur. Traf. to Dist. 2 |
| 1593 | Melvin Zapo      | Bur. Traf. to Dist. 3 |
| 876  | Arthur Lettieri  | Bur. Traf. to Dist. 3 |
| 273  | James Kennedy    | Bur. Traf. to Dist. 6 |
| 1356 | John Hageman     | Bur. Traf. to Dist. 5 |
| 1178 | Nick Magas       | Dist. 2 to Bur. Traf. |
| 1780 | David Schilling  | Dist. 3 to Bur. Traf. |
| 131  | George Butala    | Dist. 6 to Bur. Traf. |
| 213  | Donald Griffith  | Dist. 3 to Bur. Traf. |
| 61   | Michael Demeter  | Dist. 4 to Bur. Traf. |
| 715  | William O'Connor | Dist. 1 to Bur. Traf. |
| 165  | Herbert Burns    | Dist. 5 to Bur. Traf. |
| 1817 | Daniel Bobby     | Dist. 2 to Bur. Traf. |
| 1802 | Paul Jones       | Dist. 2 to Bur. Traf. |
| 1794 | Joel Zarlenga    | Dist. 3 to Bur. Traf. |
| 1750 | Donald Kuchar    | Dist. 6 to Bur. Traf. |
| 4    | Arthur Bambush   | Dist. 3 to Bur. Traf. |
| 1791 | Andrew Vanyo     | Communications to Dist. 5 |
| 332  | Robert Bucey     | Communications to Dist. 6 |

(CONTINUED)

CLE000967

## GENERAL POLICE ORDER

NO. **4-61**                    HEADQUARTERS    January 31,  **61**
                                                                    19

SUBJECT:  PROMOTIONS - TRANSFERS - ASSIGNMENTS

Albert C. Wallace, Inspector,
Executive Officer.

    The following promotions, assignments and
transfers are effective February 1, 1961:

Sergt. Donald McNea        - Promoted to Lieutenant and
                             assigned to District 6
395    John F. Andes       - Promoted to Sergeant and
                             assigned to S.I.U.
1244   William T. Hanton   - Promoted to Sergeant and
                             assigned to District 5
1232   Charles Mauk        - Promoted to Sergeant and
                             assigned to District 6
280    Steve Vrabel        - Promoted to Sergeant and
                             assigned to Det. Bureau
1354   Edward Manney       - Promoted to Sergeant and
                             assigned toDistrict 2
45     James Bruen         - Promoted to Sergeant and
                             assigned to District 3

### TRANSFERS

Sergt. Patrick Gallagher    Det. Bur to Traffic
Sergt. Frank Tallarovic     Dist. 2 to Traffic
Sergt. Patrick Mooney       Dist. 6 to Dist. 1

751    Nick Massiello       AIU to Det. Bur.
951    Christopher Schloupt  AIU to Det. Bur.
581    Edwin McCarthy       Dist. 1 to Det. Bur.
54     Nicholas Baratucci   Dist. 6 to AIU
1110   Gerald Mullen        Dist. 3 to AIU

       (CONTINUED)

CLE000968

## GENERAL POLICE ORDER

NO. __3-61__          HEADQUARTERS __January 27,__ 19__61__

SUBJECT: __MILITARY LEAVE SAFETY REGULATION__

-2-

If a city employee's military pay during such a
period of leave of absence is less than his city
pay would have been for such period, he shall be
paid by the city the difference between the city
pay and his military pay for such period.  In
determining employee's military pay allowance
for travel, food or housing shall not be consider-
ed, but any other pay or allowances of whatever
nature, including longevity pay, shall be con-
sidered.

Member or employee wishing to claim the dif-
ference between his military pay and what his
normal city pay would have been during his period
of leave of absence, shall submit a statement of
his military pay on a form to be provided by the
Department of Finance.

If a member or employee wishes to charge the
period of absence to vacation or to any time off
for overtime due, he may do so by making such a
request in writing prior to his leave, in which
case he may receive full city pay and military
pay for the time absent on vacation or overtime
leave.

By order of,

FRANK W. STORY,
CHIEF OF POLICE

CLE000969

# GENERAL POLICE ORDER

NO. 3-61    HEADQUARTERS    January 27, 19 61

SUBJECT: MILITARY LEAVE SAFETY REGULATION

Albert C. Wallace, Inspector,
Executive Officer.

In response to your request a ruling has been
secured from the Department of Law interpreting
Section 5923.05, Revised Code, State of Ohio, re-
lating to leave of absence for employees on field
training or active duty with the Ohio National
Guard, Ohio Defense Corps, Ohio Naval Militia or
other reserve components of the armed forces of
the United States.

The Law Department has ruled that"the City's
obligation under the statute extended only to the
reimbursement of an employee on temporary military
service for the difference between sums received
from his military organization and the normal re-
muneration he would have received from the City
of Cleveland during a like period of time on the
City payroll."

Pursuant to this ruling, effective February
1, 1961 City policy shall be as follows:

Members or employees who are members of the
Ohio National Guard, The Ohio State Guard, the
Ohio State Naval Militia, or members of other
reserve components of the Armed Forces of the
United States, shall be entitled to leave of
absence from their respective duties for such time
as they are in the military service on field
training or active duty for periods not to exceed
thirty-one (31) days in any one calendar year.

(CONTINUED)

**GENERAL POLICE ORDER**

NO. ___2-61___          HEADQUARTERS_____January 25,___19__61__

SUBJECT _CLEVELAND MUNICIPAL CODE 13.1339 & 13.0941_
        _DECLARED UNCONSTITUTIONAL_

Albert C. Wallace, Inspector,
Executive Officer.

The Appellate Court of the County of Cuyahoga
has recently declared unconstitutional the pro-
visions of the following mentioned Cleveland
Municipal Ordinances:

M.C. 13.1339 POSSESSION OF EVIDENCE OF WAGER.
This has to do with the possession of slips or
other evidence used in recording results of a
trial, combat, speed or power of endurance of man
or beast.

M.C. 13.0941, UNLAWFUL CONGREGATION ON SIDE-
WALKS, commonly referred to as the "Sidewalk
Ordinance."

Arrests shall not be made for either of
these ordinances.  In the case of M.C. 13.1339,
this should not be confused with M.C. 13.1318
which deals specifically with possession of
policy slips.

Commanding Officers shall see that this order
is read at roll calls for the next three days.

By order of,

FRANK W. STORY,
CHIEF OF POLICE

CLE000971

## GENERAL POLICE ORDER

No. 1-61          HEADQUARTERS  January 6,  61

SUBJECT : REINSTATEMENT - TRANSFERS

Inspector Lawrence Choura,
Acting Executive Officer.

Sergeant Joseph Peplowski who was suspended
on November 1, 1960 for violation of rules 87-1
and 101 was, this day, found guilty of both
charges by the Director of Public Safety and
sentenced to suspension from the date of original
suspension to and including Friday, January 6, 1961.

He will return to duty on January 7, 1961 and
the following transfers are effective Janury 7,
1961:

Sergt. Jos. Peplowski - Dist. 3 to Dist. 2
Sergt. Melvin Stickney - Dist. 2 to Dist. 3

By order of,

FRANK W. STORY,
CHIEF OF POLICE

CLE000972

## GENERAL POLICE ORDER

No. 14-60      HEADQUARTERS      June 2,  ,60

SUBJECT: USE OF CLEVELAND POLICE UNIFORM IN OUTSIDE
EMPLOYMENT PROHIBITED

Albert C. Wallace, Inspector,
Executive Officer

     You will cause all officers and members of the
department to be notified of the contents of the
following letter from the Director of Public Safety
     "For sometime the use of the Cleveland Police
uniform has been permitted in outside employment
by members of the department.
     Due to the ever increasing number of requests
for such employment, it becomes obvious that the
clothing will take a severe beating because of
this use, etc...the use of the Cleveland Police
Department uniform will not be permitted for out-
side employment after July 1, 1960."
     Therefore, no officer or member of the depart-
ment will be permitted to wear the official Cleve-
land Police uniform on service rendered in em-
ployment outside of the department after July 1,
1960.
     Those officers and members having permission to
engage in police services outside of the depart-
ment and who still wish to engage in such outside
employment will have to provide themselves with a
uniform as approved by the Director of Public
Safety and which differs from the official Cleve-
land Police Uniform.

                 By order of,

                 FRANK W. STORY,
                 CHIEF OF POLICE

CLE000973

## GENERAL POLICE ORDER

18-59       HEADQUARTERS      July 28,      19 59      NO.

UECT:   Processing of warrants other than for      SU
          Municipal Court

Inspector Timothy Costello,
Executive Officer

Sir:

You will cause all officers and patrolmen
to be informed of the following procedure in
re: the serving of warrants and other legal
process other than those issued by our Munici-
pal Court:

All warrants or other legal process issued
by any court is to be first routinely forwarded
to Police Headquarters where such warrant or
other process will be forwarded to the proper
Bureau or District for service.

Where an immediate urgency for service
arises, the warrant or other process may be
accepted by the Officer-in-charge of any Bureau
or District and such Officer-in-charge shall
exercise his best judgement as to who, when
or how such warrant or other process is to be
served.

In no event shall any police officer, on or
off duty, in the field take any official action
on any such warrant or other legal process
handed him by a citizen or any other person
except a duly appointed officer of this depart-
ment.

In such event the person requesting such
service shall be directed to the Officer-in-

CLE000974

# GENERAL POLICE ORDER

18-59      HEADQUARTERS_____ 7-29 _____ 19 59

BJECT: _____ -2- _____

charge of the nearest Bureau or District.

All such warrants or other legal process
from any court in this county shall be rec-
orded in the Property Room as are warrants
from Cleveland Municipal Court.

Where such warrant or process, for whatever
reason, is presented at a Bureau or District
Headquarters and is accepted by the Officer-
in-charge, a memorandum of such warrant or
process shall be forwarded to the Property
Room for proper record.

This order shall not apply to warrants
forwarded to this department by other depart-
ments or enforcement agencies. These warrants
are to be processed by the Bureau of Criminal
Investigation as in the past.

By order of

        FRANK W. STORY,
        CHIEF OF POLICE

CLE000975

CHIEF'S MEMO'S

CLE000976