IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO, EASTERN DIVISION

| | | |
|---|---|---|
| RICKY JACKSON, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | No. 1:15-CV-989 |
| v. | ) | |
| | ) | |
| CITY OF CLEVELAND, et al., | ) | Judge Christopher A. Boyko |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT JEROLD
ENGLEHART'S MOTION FOR SUMMARY JUDGMENT [Dkt. 100]**

Jon Loevy
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Fl.
Chicago, IL 60607
O: 312.243.5900
jon@loevy.com

Elizabeth Wang
LOEVY & LOEVY
2060 Broadway, Ste. 460
Boulder, CO 80302
O: 720.328.5642
elizabethw@loevy.com

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................1

STATEMENT OF MATERIAL FACTS........................................................................................2

LEGAL STANDARDS ..................................................................................................................2

ARGUMENT..................................................................................................................................2

I.      Englehart Is Not Entitled to Qualified Immunity on Plaintiff's Claim that He
Fabricated Evidence in Violation of Due Process .............................................................2

      A.      There is sufficient evidence for a reasonable jury to conclude that Englehart
fabricated evidence against Plaintiff....................................................................2

      B.      It was clearly established in 1975 that fabrication of evidence is a due process
violation ...............................................................................................................4

II.     Englehart Is Not Entitled To Qualified Immunity on Plaintiff's *Brady* Claim....................5

      A.      There is sufficient evidence for a reasonable jury to conclude that Englehart
violated Plaintiff's *Brady* right to exculpatory and impeachment evidence............6

      B.      It was clearly established in 1975 that withholding of exculpatory and
impeachment evidence by police officers is a *Brady* violation .............................6

III.    Englehart Is Not Entitled to Qualified Immunity on Plaintiff's Fourth Amendment
Claims for Continued Detention without Probable Cause.....................................................6

      A.      There is sufficient evidence for a reasonable jury to conclude that Englehart
violated Plaintiff's Fourth Amendment rights .........................................................6

            1.      Englehart influenced the decision to prosecute .........................................6

            2.      There was a lack of probable cause .............................................................8

      B.      It was clearly established in 1975 that police officers violate the Fourth
Amendment when they cause continued detention without probable cause............9

IV.    Englehart Is Not Entitled to Qualified Immunity on Plaintiff's § 1983
Conspiracy Claim..................................................................................................................9

V.     Plaintiff Is Entitled to a Trial on His State-Law Claims....................................................10

i

A.      Malicious Prosecution.........................................................................................10

B.      Intentional Infliction of Emotional Distress ........................................................10

C.      Civil Conspiracy ..................................................................................................11

CONCLUSION.......................................................................................................................11

## TABLE OF AUTHORITIES

*Ayers v. City of Cleveland*, 2013 WL 775359 (N.D. Ohio Feb. 25, 2013) ...................................10

*Brady v. Maryland*, 373 U.S. 83 (1963) ..............................................................................5

*Crowder v. Lash*, 687 F.2d 996 (7th Cir. 1982)...................................................................3

*Fillmore v. Page*, 358 F.3d 496 (7th Cir. 2004) .................................................................3

*France v. Lucas*, 836 F.3d 612 (6th Cir. 2016)....................................................................8

*Gregory v. City of Louisville*, 444 F.3d 725 (6th Cir. 2006).............................................2, 6

*Kyles v. Whitley*, 514 U.S. 419 (1995)................................................................................5

*Malley v. Briggs*, 475 U.S. 335 (1986) ..............................................................................7

*Mooney v. Holohan*, 294 U.S. 103 (1935) ..........................................................................5

*Napue v. State of Illinois*, 360 U.S. 264 (1959) ................................................................5

*Painter v. Robertson*, 185 F.3d 557 (6th Cir. 1999) ..........................................................8

*Pyle v. State of Kansas*, 317 U.S. 213 (1942)....................................................................5

*Robertson v. Lucas*, 753 F.3d 606 (6th Cir. 2014).............................................................8

*Spurlock v. Satterfield*, 167 F.3d 995 (6th Cir. 1999)........................................................2

*Stemler v. City of Florence*, 126 F.3d 856 (6th Cir. 1997) ................................................2

*Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010) ..........................................................6, 7

*United States v. Bagley*, 473 U.S. 667 (1989) ...................................................................5

*Webb v. United States*, 789 F.3d 647 (6th Cir. 2015) ......................................................2, 8

**Statutes**

R.C. 2744.03(A)(6) ............................................................................................................10

iii

**INTRODUCTION**

Three innocent men spent decades in prison based on the statements of a 12-year-old boy named Eddie Vernon. He never saw the crime, but he later testified that police fabricated his statements and forced him to falsely claim to have seen these men commit the crime. Prosecutors never knew that he actually had not seen the crime, and they had no idea police knew this and had fabricated his statements and testimony.

Plaintiff's response brief in opposition to Defendant Lamendola's Motion for Summary Judgment provides the underlying facts regarding the misconduct of all the individual officers involved in this travesty, because a constitutional violation committed by any individual officer can serve as the requisite constitutional violation for the *Monell* claim against the Defendant City of Cleveland. This is true regardless of whether any individual officer (or his estate administrator) is a named defendant or ultimately found liable. The *Monell* claim is separately addressed in Plaintiff's response brief to the City's motion for summary judgment.

This brief specifically addresses Jerold Englehart's liability. Taking the facts in the light most favorable to Plaintiff and crediting Vernon's testimony, Englehart acted in concert with Detectives Stoiker and Staimpel to violate Plaintiff's clearly established constitutional rights. Stoiker and Staimpel consulted with Englehart when he typed the fabricated statement that said Vernon identified Plaintiff as one of the perpetrators. And, contrary to his practice, Englehart typed the statement without Vernon present. Among other misconduct, this requires a jury trial on Plaintiff's various constitutional claims, including violation of due process for fabricating evidence and violation of *Brady* for failing to disclose any of this exculpatory information. If Vernon's testimony is true, egregious constitutional violations occurred here. Defendant Englehart's motion for summary judgment must be denied.

1

## STATEMENT OF MATERIAL FACTS

Plaintiff incorporates by reference the facts as stated in his response brief in opposition to Defendant Lamendola's Motion for Summary Judgment, pp. 2–15.

## LEGAL STANDARDS

Plaintiff incorporates by reference the legal standards as stated in his response brief in opposition to Defendant Lamendola's Motion for Summary Judgment, pp. 15–16.

## ARGUMENT

**I.      Englehart Is Not Entitled to Qualified Immunity on Plaintiff's Claim that He Fabricated Evidence in Violation of Due Process.**

      **A.      There is sufficient evidence for a reasonable jury to conclude that Englehart fabricated evidence against Plaintiff.**

"It is well established that a person's constitutional rights are violated when evidence is knowingly fabricated and a reasonable likelihood exists that the false evidence would have affected the decision of the jury." *Gregory v. City of Louisville*, 444 F.3d 725, 737 (6th Cir. 2006); *see also id.* at 744–45 (denying qualified immunity to police crime lab analyst for fabricating notes); *Spurlock v. Satterfield*, 167 F.3d 995, 998–99, 1005–06 (6th Cir. 1999) (police fabrication of witness testimony violates due process and is not entitled to qualified immunity); *Webb v. United States*, 789 F.3d 647, 667–70 (6th Cir. 2015) (false statements in police reports give rise to a due process fabrication of evidence claim). Moreover, "a claim of fabrication of evidence does not require a conclusion that the state did not have probable cause to prosecute the claimant." *Stemler v. City of Florence*, 126 F.3d 856, 872 (6th Cir. 1997).

Viewing the evidence and inferences in Plaintiff's favor, a reasonable jury could conclude that the detectives, including Defendant Englehart, fabricated Vernon's false statement

and testimony against Plaintiff. Vernon never saw who killed Mr. Franks, yet the detectives, starting with Terpay and Farmer, fed him information about the crime. And when Vernon did not pick Jackson and Bridgeman out of the lineup, Staimpel and Stoiker were furious. Staimpel threatened Vernon and said "we'll fix it." Dkt 99-1 at 80. Staimpel and Stoiker left the room and came back some time later with a typed-up statement for Vernon to sign. Englehart admits that he typed this crucial statement. This statement contained information that was false and fabricated, and Vernon signed it only out of fear of the detectives. Englehart denies ever fabricating any witness's statement, but Englehart did not have any independent recollection of the circumstances surrounding the creation of Vernon's typed statement. Ex. 26 at 24–25. He could only testify that his normal practice was to type statements in the statement unit *while witnesses were present* and being asked questions. Here, of course, Vernon was not present when the statement was typed. A reasonable jury could infer that after Staimpel and Stoiker left the room, they fabricated the statement with Englehart using information that was already in the investigative file. A reasonable inference is that Englehart knew that statement was false or fabricated because the witness (Vernon) was not present and giving his version of events. Englehart's argument otherwise improperly asks the Court to credit *his* testimony. That is up to the jury. "[An] official satisfies the personal responsibility requirement of § 1983 if she acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights," *Fillmore v. Page*, 358 F.3d 496, 506 (7th Cir. 2004), "or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent," *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982).

Englehart argues that there is insufficient evidence of fabrication because, at his deposition, Vernon could not identify the unsigned copy of his statement as the one that he

3

signed after the lineup with Staimpel and Stoiker. Dkt. 100 at 7–8. But Vernon identified it at the criminal trials, *see* Ex. 6 at J1588–89, and there is no genuine dispute that the signed statement is the only statement that Vernon signed.[1] Vernon recalls signing only one statement relating to the robbery and murder of Harold Franks. Ex. 25 ¶ 5. Significantly, Vernon was not shown a signed copy of the statement at his deposition so that he could verify his signature. *See* Dkt. 99-9; Ex. 25 ¶ 4; Dkt. 99-1. After seeing a signed copy of the statement, Vernon said that it appears to be his signature. Ex. 25 ¶ 2. Vernon also did testify at his deposition that he could have signed a copy of this statement, and that he did not get a chance to read the statement that Staimpel and Stoiker showed him. Dkt. 99-1 at 84, 105.

Furthermore, even if Vernon's signed statement had not itself been introduced as evidence at Plaintiff's trial, Vernon testified consistently with it at the trial and was asked questions about it at trial. As Vernon explained, after the false statement was created, he felt that he had to stick with what was in it, and he was coerced into testifying consistently with it through each of the criminal trials of Jackson, Bridgeman and Ajamu.

> **B.      It was clearly established in 1975 that fabrication of evidence is a due process violation.**

Plaintiff incorporates by reference herein the discussion of clearly established law on fabrication of evidence claims in his response brief in opposition to Defendant Lamendola's Motion for Summary Judgment, pp. 19-20.

In addition, Plaintiff states: Englehart argues that the question is whether "a typist can be held liable for merely typing a witness statement," but that is simply his version of how he will

---

[1] Oddly, Englehart seems to imply that Vernon signed two statements. But if that is so, then Plaintiff's *Brady* claim is only strengthened because only one statement was produced by police to the prosecutor. *See* Ex. 29 at 70.

present his argument to the jury, based on *his* view of the facts. Dkt. 100 at 17–18. Summary judgment is not proper.

## II.     Englehart Is Not Entitled To Qualified Immunity on Plaintiff's *Brady* Claim.

### A.     There is sufficient evidence for a reasonable jury to conclude that Englehart violated Plaintiff's *Brady* right to exculpatory and impeachment evidence.

In its 1963 *Brady* decision, the Supreme Court held that the State's withholding of exculpatory evidence (a witness statement) deprived the criminal defendant of his constitutional right to due process, regardless of the good faith or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). This holding was based on the well-established principles of *Mooney v. Holohan*, 294 U.S. 103 (1935), *Pyle v. State of Kansas*, 317 U.S. 213 (1942), and *Napue v. State of Illinois*, 360 U.S. 264 (1959).  *See Brady*, 373 U.S. at 86–87; *United States v. Bagley*, 473 U.S. 667, 679 n.8 (1989). *Brady* had been firmly in place for more than a decade when the events underlying this case occurred in 1975.

There is sufficient evidence to reach a jury on whether Englehart violated *Brady*. A reasonable jury could credit Vernon's testimony that Vernon did not sit in a room and answer questions from Staimpel and Stoiker while Englehart simply typed, as Englehart would have it. Instead, a jury could conclude—as Vernon testified—that Staimpel, Stoiker, and Englehart created Vernon's false statement outside of his Vernon's presence (contrary to Englehart's standard practice), and then Staimpel and Stoiker returned to the room where Vernon was sitting to make him sign it. Viewing the facts in Plaintiff's favor, Englehart's failure to disclose the circumstances of Vernon's statement to the prosecution was the suppression of evidence favorable to Plaintiff, and if it had been disclosed, there is a reasonable probability that Plaintiff would not have been convicted. *See Brady*, 373 U.S. at 87; *Kyles v. Whitley*, 514 U.S. 419, 435 (1995).

Simply put, exactly what Englehart knew about the false statement he typed is for a jury to decide. Summary judgment is not authorized.

**B.      It was clearly established in 1975 that withholding of exculpatory and impeachment evidence by police officers is a *Brady* violation.**

Plaintiff incorporates by reference herein the discussion of clearly established law on *Brady* claims in his response brief in opposition to Defendant Lamendola's Motion for Summary Judgment, pp. 21–23.

**III.     Englehart Is Not Entitled to Qualified Immunity on Plaintiff's Fourth Amendment Claims for Continued Detention without Probable Cause.**

**A.      There is sufficient evidence for a reasonable jury to conclude that Englehart violated Plaintiff's Fourth Amendment rights.**

Plaintiff has a right to be free from continued detention without probable cause under the Fourth Amendment. *Gregory*, 444 F.3d at 750; *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010). Englehart argues only that he did not influence or participate in the decision to prosecute and that there was probable cause for the prosecution. There is sufficient evidence that Englehart influenced the decision to prosecute or caused the detention to be unlawfully continued by fabricating evidence and withholding exculpatory evidence. *See Gregory*, 444 F.3d at 747.

**1.      Englehart influenced the decision to prosecute.**

To show an officer influenced the commencement of criminal proceedings, a plaintiff can present evidence that the impact of an officer's misstatements and falsehoods in his investigatory materials extended beyond the initial arrest and ultimately influenced the plaintiff's continued detention. *Sykes*, 625 F.3d at 316. Such "influence" can be based on "misstatements … to the prosecutor" or "pressure or influence" over an individual who either made the decision to prosecute or testified at the preliminary hearing. *Id.* That is satisfied where the officer's

6

investigatory materials, which were in the prosecutor's file, contained "knowing misstatements," and the prosecutor relied on them in filing criminal charges. *Id.* at 316–17. A plaintiff does not have to show that the officer actually spoke to the officer. *Id.*

A reasonable jury could conclude that Englehart influenced the decision to prosecute because he participated in the fabrication of Vernon's false statement. As Del Balso testified, Vernon's statement was the only inculpatory evidence against Plaintiff, and the statement was in the prosecution's file. Moreover, Stoiker and Staimpel's police report shows that they conferred with the police prosecutor about filing charges against Jackson, Bridgeman, and Ajamu, and she decided to bring charges against them as a result. This, according to Del Balso, set in motion the grand-jury proceedings.

A reasonable inference is that Stoiker and Staimpel conferred with the police prosecutor about Vernon's fabricated statement, which Englehart helped create. But, as noted, Plaintiff need not show that Englehart actually spoke with prosecutor who initiated proceedings to satisfy the "knowing misstatements" prong. Instead, Plaintiff has provided sufficient evidence that Englehart made "knowing misstatements" through Vernon's statement, which—taking the evidence and inferences in Plaintiff's favor—was (1) fabricated by Stoiker and Staimpel with Englehart, and (2) given to the prosecutor's office. The impact of the misstatements and falsehoods occurred *after* Plaintiff's arrest (because Plaintiff was arrested prior to the lineup) and ultimately influenced Plaintiff's continued detention. *Malley v. Briggs*, 475 U.S. 335, 337 (1986) (normal causation principles apply to Section 1983 actions); *accord Sykes*, 625 F.3d at 314–15.

Furthermore, a reasonable jury could also find that Englehart caused Plaintiff's detention to be continued beyond his initial seizure because he withheld the fabrication and exculpatory evidence from the prosecutor. As Del Balso testified, if he had known that Vernon's testimony

7

was fabricated, he would have told the head prosecutor, and the prosecution would have been stopped.

### 2.     There was a lack of probable cause.

"In section 1983 cases, the existence of probable cause usually poses a jury question." *Painter v. Robertson*, 185 F.3d 557, 570 (6th Cir. 1999); *Webb*, 789 F.3d at 665. The entire basis of Plaintiff's arrest and prosecution was Vernon's fabricated statement—and the fact that the prosecutor had no idea Vernon told police he never saw Jackson and the Bridgeman brothers commit the crime. The grand jury indicted Plaintiff on the basis of Vernon's fabricated testimony. As Vernon explained, he falsely testified at the grand jury because he had been threatened into doing so by the detectives, and his testimony was fabricated by the detectives. Ex. 30. According to Del Balso, there was no other inculpatory evidence against Plaintiff.[2] A reasonable inference is that Vernon's false testimony, fabricated by Englehart and the other detectives, was the sole basis for the grand jury's finding of probable cause. A reasonable jury could find that Englehart participated in the fabrication of Vernon's false statement with Staimpel and Stoiker. And, as Englehart concedes in his brief, an indictment does not establish probable cause when it "was obtained wrongfully by police officers who knowingly presented false testimony to the grand jury …." *France v. Lucas*, 836 F.3d 612, 626 (6th Cir. 2016). This includes the situation where a defendant officer "'either knew or w[as] reckless in not knowing that [a witness] gave false testimony that tainted the finding of probable cause." *Id.* at 626 (quoting *Robertson v. Lucas*, 753 F.3d 606, 619 (6th Cir. 2014) (issue is whether any of the

---

[2] Moreover, as discussed above, neither Karen Smith nor Anna Robinson would have provided inculpatory testimony at the grand jury. It is also reasonable to infer that if any of the detectives (such as Terpay) testified at the grand jury, their testimony would have been false as well, and they would only have been testifying falsely to what Vernon supposedly told them, since none of the detectives had any independent knowledge of the crime. Plaintiff attempted, but was unable to, obtain a copy of the grand jury hearing transcript. *See* Ex. 55 (Decl. of Elizabeth Wang with Exs. A & B).

8

defendants influenced the witness's grand jury testimony, "causing him to lie or mislead the grand jury")). Here, a reasonable jury could find that Englehart either knew or was reckless in not knowing that Vernon gave false testimony that tainted the grand jury's finding of probable cause. Moreover, a reasonable officer in Englehart's position would have known that there was no probable cause for Plaintiff's prosecution because the only inculpatory evidence was Vernon's fabricated statement.

**B.      It was clearly established in 1975 that police officers violate the Fourth Amendment when they cause continued detention without probable cause.**

Plaintiff incorporates by reference herein the discussion of clearly established law on Plainitff's Fourth Amendment claim in his response brief in opposition to Defendant Lamendola's Motion for Summary Judgment, pp. 26-27.

**IV.     Englehart Is Not Entitled to Qualified Immunity on Plaintiff's § 1983 Conspiracy Claim.**

Plaintiff incorporates by reference herein the discussion of his conspiracy claim in his response to Defendant Lamendola's Motion for Summary Judgment, pp. 27-29. Plaintiff further states:

There is sufficient evidence for this conspiracy claim to proceed, as the detectives all contributed to ensuring that Vernon gave his false statement and testified to it accordingly, even though he had not seen the crime. With regard to Englehart in particular, circumstantial evidence requires that this claim be decided by the jury: Vernon did not sit in a room while Englehart typed his statement (contrary to Englehart's standard practice); after threatening Vernon, Staimpel told Vernon that they would "fix it," and Staimpel and Stoiker left the room; when Staimpel and Stoiker returned after some time, they had a typed up statement full of false statements for Vernon to sign; Englehart typed that statement that Vernon, Staimpel and Stoiker

9

signed. In light of these facts, and with the inferences viewed in Plaintiff's favor, the evidence regarding whether Englehart conspired with others is to be decided by a jury.

## V. Plaintiff Is Entitled to a Trial on His State-Law Claims

Englehart agrees he is not entitled to immunity under R.C. 2744.03(A)(6) if he acted "with malicious purpose, in bad faith, or in a wanton or reckless manner." Dkt. 100 at 26. As discussed above, there is sufficient evidence that he acted in such a manner.

### A. Malicious Prosecution

Plaintiff has presented sufficient evidence of Englehart's influencing or continuing the prosecution and lack of probable cause, as discussed above. Under Ohio law, Plaintiff also has to show malice. There is sufficient evidence of malice because a reasonable jury could conclude that Englehart fabricated Vernon's false statement and withheld exculpatory evidence.

### B. Intentional Infliction of Emotional Distress

Given the evidence that Englehart knowingly fabricated Vernon's false statement and withheld exculpatory evidence, there is sufficient evidence for a reasonable jury to conclude that Englehart: (1) intended to cause Plaintiff serious emotional distress and that (2) it was extreme and outrageous. There is also sufficient evidence of causation because Vernon's statement was used against Jackson at his trial, and Vernon's testimony ultimately resulted in Jackson's conviction and wrongful imprisonment for 39 years. This caused Jackson serious emotional distress. *See* Ex. 56; *Ayers v. City of Cleveland*, 2013 WL 775359, at *14 (N.D. Ohio Feb. 25, 2013) (denying summary judgment to defendants who engaged in conduct intended to inculpate a man for which there was insufficient evidence of guilt).

10

### C.      Civil Conspiracy

Jackson is entitled to a trial on his state-law conspiracy claim for the same reasons as he

is entitled to a trial on his Section 1983 conspiracy claim.

### CONCLUSION

Concrete evidence demands a trial against Defendant Englehart on Jackson's claims. This

case is one in which all material facts are disputed. Defendant's motion for summary judgment

should be denied.

Respectfully submitted,

s/ Elizabeth Wang

One of Plaintiff's Attorneys

Jon Loevy
LOEVY & LOEVY
311 N. Aberdeen St., 3rd Fl.
Chicago, IL 60607
O: 312.243.5900
jon@loevy.com

Elizabeth Wang
LOEVY & LOEVY
2060 Broadway, Ste. 460
Boulder, CO 80302
O: 720.328.5642
elizabethw@loevy.com

11

## CERTIFICATE OF SERVICE

I, Elizabeth Wang, an attorney, hereby certify that on March 1, 2017, I served the foregoing Plaintiff's Response in Opposition to Defendant Englehart's Motion for Summary Judgment [Dkt. 100] on all counsel of record via CM/ECF.

s/ Elizabeth Wang

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(f), I hereby certify that the foregoing complies with the 30-page limitation for memoranda relating to dispositive motions in complex cases. This case has been assigned to the complex track. Dkt. 42.

s/ Elizabeth Wang

12